JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

The Middle East Forum

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Sidney L. Gold, Sidney L. Gold & Associates, P.C., 1835 Market Street, Suite 515, Philadelphia, PA 19103, (215) 569-1999

## DEFENDANTS

Lisa Reynolds-Barbounis

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Seth D. Carson, Derek Smith Law Group, PLLC, 1835 Market Street, Suite 2950, Philadelphia, PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☒ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
CFAA, 18 U.S.C. § 1030(g); DTSA, 18 U.S.C. § 1836(b)(1); Stored Communications Act, 18 U.S.C. § 2701.

Brief description of cause:
Action for breach of contract, theft of trade secrets, and misappropriation of confidential information.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
12/03/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/Sidney L. Gold, Esquire

Attorney for Plaintiff

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____The Middle East Forum:  1650 Market St., Suite 3600, Phila., PA 19103_____

Address of Defendant: _____Reynolds-Barbounis: 2601 Pennsylvania Avenue, Suite 1153, Phila., PA 19130_____

Place of Accident, Incident or Transaction: _____1650 Market St., Suite 3600, Phila., PA 19103_____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __12/03/2019__          __/s/ Sidney L. Gold, Esq.__          __21374__
                                  *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
     *(Please specify):*   __Other Statutory Actions__

**B.   Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __SIDNEY L. GOLD, ESQUIRE__, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: __12/03/2019__          __/s/ Sidney L. Gold, Esq.__          __21374__
                                  *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___The Middle East Forum:  1650 Market St., Suite 3600, Phila., PA 19103___

Address of Defendant: ___Reynolds-Barbounis: 2601 Pennsylvania Avenue, Suite 1153, Phila., PA 19130___

Place of Accident, Incident or Transaction: ___1650 Market St., Suite 3600, Phila., PA 19103___

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___12/03/2019___   ___/s/ Sidney L. Gold, Esq.___   ___21374___
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☒ 11. All other Federal Question Cases
  *(Please specify):*  ___Other Statutory Actions___

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___SIDNEY L. GOLD, ESQUIRE___, counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: ___12/03/2019___   ___/s/ Sidney L. Gold, Esq.___   ___21374___
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| The Middle East Forum | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Lisa Reynolds-Barbounis | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (☑)


| | | |
|---|---|---|
| 12/03/19 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM
1650 Market Street, Suite 3600
Philadelphia, PA 19103,

            Plaintiff,

vs.

LISA REYNOLDS-BARBOUNIS
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,

            Defendant.

Civil Action No.: _____

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT

Plaintiff The Middle East Forum ("MEF"), by counsel, files this Verified Complaint against Defendant Lisa Reynolds-Barbounis ("Barbounis"), and states as follows:

## INTRODUCTION

1.     This case involves the misappropriation of MEF's corporate assets, including MEF trade secrets and highly confidential business information, by Barbounis, MEF's former Director of Communications.

2.     As the Director of Communications at MEF, Barbounis had access to highly confidential information that belonged to MEF, as well as trade secrets of MEF.

3.     Among other things, Barbounis has disclosed confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF. Barbounis has also converted trade secrets and confidential information of MEF by improperly electronically mailing documents and attachments to a non-MEF e-mail account belonging to a third party, including a confidential document containing the master list of donor information compiled by MEF. Barbounis was not

1

authorized to e-mail this information to a private e-mail account or to third persons and exceeded her authorized use of MEF computer systems to do so.

4.      Accordingly, MEF files this Verified Complaint against Barbounis to pursue remedies for her: (i) breach of the Confidentiality & Non-Disclosure Agreement; (ii) breach of the Bring Your Own Device Agreement; (iii) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g); (iv) violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a); (v) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1); (vi) violation of the Stored Communications Act, 18 U.S.C. § 2701; (vii) conversion of MEF's confidential information; (viii) breach of fiduciary duty; and (ix) a declaratory judgment that Barbounis is obligated to provide an inventory of the MEF data she possesses, that she is obligated to work with a mutually agreeable vendor to create an inventory of the MEF data she has deleted from her devices and to recover such data to the extent possible, that she is obligated to inventory all disclosures of MEF data, and that she is prohibited from further destroying or disclosing MEF data.

## JURISDICTION

5.      Barbounis is subject to personal jurisdiction in this Court because she resides in the Commonwealth of Pennsylvania, and she has conducted business related to this case in or about Philadelphia, Pennsylvania.

6.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. This dispute raises claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Defend Trade Secrets Act, 18 U.S.C. § 1836, the Stored Communications Act, 18 U.S.C. § 2701, and the Declaratory Judgment Act, 28 U.S.C. § 2201, all of which are laws of the United States. Further, the Defend Trade Secrets Act grants the district courts of the United States original

jurisdiction of civil actions.  *See* 18 U.S.C. § 1836(c).

7.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over MEF's remaining claims as those claims relate to the federal statutory claims in this action and form part of the same case or controversy under Article III of the United States.

## VENUE

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district, and since the venue is in Pennsylvania, it is consistent with the parties' choice-of-forum clause.

## PARTIES

7.      Plaintiff The Middle East Forum is a foreign-policy think tank and 501(c)(3) non-profit organization.   MEF's primary place of business is 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

8.      Defendant Lisa Reynolds-Barbounis is a former employee of MEF.  On information and belief, she is a resident and citizen of Pennsylvania, and lives in Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

### I.      Barbounis' Employment Agreement with MEF

9.      MEF was founded in 1994 as a think tank that promotes American interests in the Middle East and works to protect Western values from Middle Eastern threats through academic research, media engagement, as well as government and general public outreach.

10.      On September 25, 2017, MEF entered into an employment agreement with Barbounis in which Barbounis agreed to serve as an Executive Liaison.  *See* Exhibit A, Employment Agreement, dated September 25, 2017.

11.     The parties agreed in the employment agreement that, as a condition of Barbounis' employment, she was required to sign a Personnel Manual and Confidentiality & Non-Disclosure Agreement. *See id.*

12.     On September 25, 2017, Barbounis signed to acknowledge that she had received a copy of MEF's Personnel Manual. *See id.*

13.     Beginning on or around January 3, 2019, Barbounis became Director of Communications at MEF.

14.     In her positions as Executive Liaison and then as Communications Director, Barbounis was in a relationship of trust with MEF, who justifiably relied on Barbounis to perform her duties with loyalty and care.

15.     As a consequence of her positions at MEF, and in reliance upon her representations and commitments as a director of MEF, Barbounis was granted access to MEF's confidential and proprietary information, trade secrets, donor lists, and business relationships.

16.     At no time was Barbounis authorized, as a consequence of her position or employment at MEF, to utilize, collect, or disclose e-mail communications or personal e-mail accounts used by other MEF principals.

17.     During the term of her employment, Barbounis agreed that she was a qualified candidate for the position based on her "[d]iscretion and confidentiality". *See* Exhibit A.

18.     Barbounis also agreed in the employment agreement that "[t]his position serves as the primary point of contract for internal and external constituencies on all matters pertaining to the President and Director. The Liaison also serves as a liaison to the board of directors and senior management and must be able to work under pressure to handle a wide variety to activities and confidential matters with competence and discretion." *See id.*

4

19.     Additionally, one of the roles and responsibilities that Barbounis agreed to undertake in the position of Executive Liaison was to "[a]ttend meetings to take notes and assign tasks; track progress of projects by coordinating with staff; follow up on results." *See id.*

## II.     Barbounis' Confidentiality & Non-Disclosure Agreement with MEF

20.     In accordance with the employment agreement, on October 16, 2017, Barbounis signed MEF's Confidentiality & Non-Disclosure Agreement ("NDA"), in which the parties acknowledged that Barbounis would have access to Confidential Information in the course of and as a result of her employment with MEF.   Exhibit B, Confidentiality & Non-Disclosure Agreement, dated October 16, 2017.

21.     Specifically, Barbounis agreed to:

take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of Confidential Information.  Without limiting the foregoing, Barbounis shall take at least those measures that it takes to protect its own most highly confidential information and shall promptly notify MEF of any misuse or misappropriation of Confidential Information of which it becomes aware.

Exhibit B.

22.     The NDA required Barbounis to not "disclose any Confidential Information to *any* third party, *including but not limited to family members, relatives, significant others, and friends*, unless (i) MEF provides prior written consent; *and* (ii) MEF and the third party execute a confidentiality agreement."  Exhibit B. (emphasis in original).

23.     The NDA defined "Confidential Information" to include:

(a)     The names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF.

(b)     Any address (residential or business) utilized by: (i) MEF President Daniel Pipes; (ii) any MEF board member; (iii) any MEF officer; (iv) any MEF employee; and/or (v) any MEF contractor.

(c)     Any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation. Confidential Information under this subsection [(c)] shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation.

(d)     Any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private. Confidential Information under this subsection (h) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

Exhibit B.

24.     Barbounis further agreed that, by signing the NDA, her breach of the NDA would entitle MEF to "seek injunctive relief *in addition to* all legal remedies." *See* Exhibit B (emphasis in original).

25.     Barbounis was required to uphold such obligations set out in MEF's NDA "in perpetuity (and shall remain regardless of whether or not the parties end any such professional relationship), *or until* such time as all Confidential Information becomes *widely publicly known* and made *generally available* through no action or inaction of [Barbounis]. *See* Exhibit B (emphasis in original).

### III.     Barbounis Acknowledgement of MEF's Personnel Manual

26.     On September 25, 2017, Barbounis acknowledged and agreed to abide by the Middle East Forum Employee Handbook ("Personnel Manual"). *See* Exhibit C, Acknowledgment of Personnel Manual, dated September 25, 2017.

27.     The Personnel Manual states that:

All information and technology of MEF, the unauthorized disclosure of which would be detrimental to the interests of MEF ("MEF Confidential Information"), is solely the property of MEF. Employees must maintain all MEF Confidential Information in strict confidence and protect against its disclosure or dissemination. MEF Confidential Information is considered to include confidential information obtained from third parties.

The foregoing obligations of confidentiality and non-disclosure continue to apply after termination of employment with MEF.

Employees must not remove any MEF Confidential Information from MEF's premises or make copies of such materials except for use in MEF business.

Employees must return to MEF all MEF Confidential Information, and copies of the foregoing, at any time upon the request of MEF and, in any event and without such request, prior to or upon the termination of employment by MEF.  Employees agree not to retain any copies of any MEF Confidential Information, in any form, after termination of employment for any reason.

If Employees is unsure as to whether any particular information is MEF Confidential Information, Employees shall treat it as such unless and until the employee has been advised otherwise by an authorized representative of MEF.

28.     The MEF Personnel Manual also provided that:

E-mail and voice mail systems are available to assist Employees in performing their work.  Like the other software, hardware, and tools made available to and used by Employees, the e-mail and voice mail systems and the information, work, and data contained therein are the property of MEF.

Electronic and voice mail communications are not private.  They are business records that may be subject to subpoena or other legal investigation and may be introduced as evidence in a legal proceeding.  MEF requires Employees to use passwords to gain access to e-mail and voice mail.  The use of a password is for the protection of MEF, not Employees.  Messages are not considered confidential even though a private password is used . . . .

Employees must exercise special care to protect the proprietary and/or confidential information of MEF.  Unauthorized transmission and/or disclosure of any confidential or proprietary information is strictly prohibited.

Use of MEF equipment for e-mail and/or voice mail communications constitutes Employees agreement to abide by the terms of this policy and consent to MEF's access, monitoring, and disclosure described herein.  As with all of its policies, MEF reserves the right to change or revoke this policy at any time, in its discretion, with or without notice.

29.     Barbounis' signature acknowledged that she had received, read, and understood these terms in the Personnel Manual, and she agreed to abide by those terms.

**IV.    Barbounis' Unauthorized Disclosure of MEF's Confidential Information and Misappropriation of MEF's Trade Secrets to Personal E-mail Accounts**

30.     During her employment at MEF, Barbounis forwarded MEF Confidential Information located on her MEF computer to her personal e-mail account.

31.     Upon information and belief, Barbounis also improperly e-mailed trade secrets and confidential information contained on her computer to the personal e-mail account of a then employee of MEF and other third parties.

32.     On January 8, 2019, Barbounis executed a Bring Your Own Device Agreement in which she agreed to have her device password protected at all times; to ensure that no other person other than herself would access the computer or MEF data (including emails, documents, spreadsheets, contacts, calendars, or other MEF proprietary information) contained on the computer; to segregate MEF data residing on the computer to the best of her ability and subject that data to a litigation hold; and to not use the device for illegal or unlawful purposes. *See* Exhibit D, Bring Your Own Device Agreement, dated January 8, 2019.

33.     Pursuant to the Bring Your Own Device Agreement, the computer that Barbounis used to send this information to her personal e-mail account was password protected. *Id.*

34.     MEF had administrator privileges for the computer pursuant to its Bring Your Own Device Policy.

35.     Barbounis conducted her work for MEF on this computer from the date of purchase until her resignation from MEF on August 7, 2019.

36.     The computer, therefore, contained MEF proprietary and confidential information and trade secrets, including but not limited to MEF's fundraising practices, funding sources, donor information, project and donor proposals, policy positions and statements, media member lists, and marketing initiatives.

37.     Additionally, MEF e-mail accounts are used by MEF employees and MEF's principals to conduct work on behalf of MEF. Barbounis was never authorized to use her MEF e-mail account for non-business purposes.

8

38.     MEF did not require Barbounis to use her personal e-mail accounts, and Barbounis was not authorized to use her personal e-mail accounts for MEF business, in accordance with the Personnel Manual.

39.     MEF has learned since conducting an internal investigation, that the Confidential Information Barbounis either accessed without MEF authorization or sent to her personal e-mail account includes, but is not limited to:

   a.     A General Operating Support master document and e-mail listing organizations and donors that had been approached or sent proposals for donations, sent on April 10, 2019;

   b.     A sensitive MEF document on countering violent extremism, composed on MEF's letterhead, sent on September 17, 2018;

   c.     A proprietary MEF paper on United Nations Relief and Works Agency for Palestine Refugees ("UNRWA") funding sent on September 8, 2018;

   d.     MEF proprietary communications resources, including, but not limited to, multiple media contact lists and the Organization's Meltwater account; and

   e.     Accessing e-mail data files for Daniel Pipes, the President of MEF.

The internal investigation also uncovered that Barbounis had improperly accessed the confidential MEF master donor and e-mail distribution list containing 64,836 contacts and electronically backed this up on her personal computer.

40.     The confidential MEF master donor and e-mail distribution list was subject to reasonable measures by MEF to protect its confidentiality and its contents are a closely guarded secret of MEF.

41.     Barbounis was not authorized to save this confidential document to her personal electronic device.

42.     Upon information and belief, Barbounis utilized MEF's Confidential Information and her MEF e-mail account to support political activities of Paul Harris (formerly known as Tommy Robinson, also known as Stephen Christopher Yaxley-Lennon), in direct contravention of MEF's policies and directives, and potentially jeopardizing the organization's tax-exempt status.

43.     Upon information and belief, Barbounis also possesses MEF Confidential Information contained in audio recordings made during MEF meetings in which Confidential Information was discussed, written notes Barbounis made during MEF meetings, notes made on Barbounis' personal cellphone during MEF meetings, including audio and textual notes, calendar entries, including, but not limited to, Mr. Gregg Roman's activities and travels, MEF shared electronic drive documents containing MEF Data, and University of Pennsylvania accounts used for MEF research.

## V.     Barbounis is Reminded of Her Obligations Under the NDA Ahead of Staff Meeting on November 15, 2018

44.     In a written memorandum dated November 3, 2018, MEF expressly requested Barbounis to sign a new NDA ahead of a staff meeting on November 5, 2018 and reminded the recipients of their ongoing obligations under the existing NDAs.

45.     In a second memorandum sent on November 15, 2018, after it came to the attention of MEF that Confidential Information had been improperly discussed after the staff meeting, Barbounis was reminded of the definition of Confidential Information and her obligation to comply with the signed NDA.

## VI.     MEF Sends Out Document Preservation Notice to All Staff

46.     On June 26, 2019, MEF sent a Document Preservation Notice to all MEF officers and administrative staff.  Barbounis received and knew of the Document Preservation Notice.

47.     The preservation notice explicitly state that MEF staff were obligated to "take steps to preserve all potentially relevant information, including hard-copy documents and all forms of electronically stored information ("ESI") that could relate in any way to… communications, documents, and/or information regarding: (i) job performance; (ii) professional interactions; and (iii) personal interactions" with administrative employees.

48.     All MEF staff were obligated not to "destroy, discard, alter, modify, or delete any paper documents or ESI that relate" to the identified topics "and that were created, modified, sent, or received on or after June 1, 2016, including drafts, work papers, personal notes, emails (both sent and received), and other electronically stored documents."

49.     This obligation applied to both existing documents and documents that were created or received after the preservation notice was issued.

50.     Among the materials that were required to be preserved included:

emails and attachments; calendar entries, meeting invitations, and contacts; Microsoft Word, Excel, PowerPoint, Access, Project, and Visio documents; PDF files; photographs and images; e-faxes; text messages, instant messages, Telegram messages, other electronic messages, and voicemails; video, audio, and other multimedia files; databases, data extracts, and reports; and social media content.

51.     In order to comply with the preservation notice, all employees were required to send Marc Fink, In-house counsel of MEF, an email stating that the employee acknowledged receiving the notice and understood the obligations outlined.

## VII.     Barbounis Resigns from MEF

52.     On August 7, 2019, Barbounis submitted her resignation from MEF via e-mail, noting that her resignation was effective immediately.

53.     As of August 7, 2019, Barbounis was no longer authorized to access MEF's

Proprietary and Confidential Information or trade secrets.

54.     MEF made reasonable efforts to cut off Barbounis' access to MEF's shared electronic storage drive, Barbounis' MEF e-mail account, and all other sources of proprietary electronic information.

**VIII.   MEF's Correspondence with Counsel for Barbounis**

55.     MEF, through counsel, has made multiple attempts to resolve this claim amicably with Barbounis and her counsel.

56.     Having demonstrated its willingness to engage in discussions on multiple occasions, MEF has sought to obtain the reassurances it is entitled to under the NDA and Personnel Manual, including a confirmation that MEF Confidential Information still exists on Barbounis' personal devices and e-mail accounts, a register of what Confidential Information still resides on these personal devices and accounts, what information may have been deleted already from Barbounis' personal devices and accounts, and has sought to work with Barbounis to permanently delete this Confidential Information from Barbounis' personal devices and accounts in a forensically sound manner.

57.     On October 25, 2019, MEF sent Barbounis a cease and desist letter that explained her obligations under the NDA and Personnel Manual, with the objective of preventing the further collection and dissemination of any MEF Confidential Information.

58.     In response, Barbounis, through counsel, indicated that she had every intention of cooperating with MEF and complying with her legal obligations, inducing MEF not to proceed with legal action.

59.     After further assurances from counsel for Barbounis, MEF forwarded an affidavit to Barbounis' counsel on November 12, 2019 that outlined the steps Barbounis would take in order

to amicably resolve the dispute, including making a register of the Confidential Information on her personal devices and accounts, imaging her personal accounts and computer to understand what information resides on the accounts and devices, selecting a mutually agreed upon vendor to conduct such services as well as to permanently delete any MEF Confidential Information still residing on Barbounis' personal accounts and devices.

60.     After sending the affidavit, Barbounis' counsel requested word documents of the affidavit in order to propose revisions that would be agreeable to Barbounis, which MEF through its counsel provided on November 17, 2019.

61.     On November 18, 2019, Barbounis indicated to MEF that she was no longer willing to cooperate or execute the affidavits provided.

62.     Additionally, Barbounis' counsel indicated that Barbounis had destroyed almost all of the MEF confidential documents and material in her possession.

63.     MEF further attempted to resolve this matter amicably on November 25, 2019 by proposing that MEF and Barbounis agree to a stipulated Temporary Restraining Order that would protect MEF's confidential information and trade secrets.

64.     MEF received no response to this proposal.

65.     As a result, MEF files this Verified Complaint to protect its interests under the law.

## COUNT I
### (Breach of Contract – Confidentiality & Non-Disclosure Agreement)

9.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

10.     MEF and Barbounis, for valuable consideration, entered into a valid and enforceable contract on October 16, 2017 called the Confidentiality & Non-Disclosure Agreement. *See* Exhibit B.

13

11.    Per the contract, "Confidential Information" was defined as including: the names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF; any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential" or materials and/or information clearly and prominently marked with some similar designation; and any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

12.    Pursuant to the contract, Barbounis agreed not to disclose any Confidential Information to any and all Third Parties unless (i) MEF gave prior written consent; and (ii) MEF and the Third Party executed a confidentiality agreement.

13.    Pursuant to the contract, Barbounis also agreed to take reasonable measures to protect the secrecy of and avoid disclosure of Confidential Information.

14.    MEF has at all times performed and fulfilled its obligations under the Confidentiality & Non-Disclosure Agreement.

15.    Barbounis breached and continues to breach her obligations under the Confidentiality & Non-Disclosure Agreement by directly or indirectly, disclosing, revealing, transferring, copying, or using information obtained by or disclosed to Barbounis as a result of her employment by MEF.  Specifically, Barbounis disclosed and used Confidential Information to support political activities of Paul Harris (aka Stephen Christopher Yaxley-Lennon) and disclosed Confidential Information via e-mail to other third parties without authorization while employed by MEF.

16.     As a proximate result of Barbounis' breach of the Confidentiality & Non-Disclosure Agreement, MEF has suffered, and is continuing to suffer, harm and loss of its confidential information and goodwill in the marketplace.

## COUNT II
### (Breach of Contract – Bring Your Own Device Agreement)

8.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

9.     MEF and Barbounis, for valuable consideration, entered into a valid and enforceable contract on January 8, 2019 called the Bring Your Own Device Agreement. *See* Exhibit D.

10.     Pursuant to the contract, Barbounis agreed to ensure that no person other than herself would see or have access to MEF data that was accessed either through her web browser or MEF data that was downloaded or saved onto the computer.

11.     Barbounis also agreed to segregate MEF data that was saved or downloaded to her computer and acknowledged that she would not be able to erase the data should it become subject to a litigation hold.

12.     MEF has at all times performed and fulfilled its obligations under the Confidentiality & Non-Disclosure Agreement.

13.     Barbounis breached Bring Your Own Device Agreement by failing to ensure that no other person would see or have access to the MEF data that was downloaded onto her computer.

14.     Barbounis also breached the Bring Your Own Device Agreement by failing to segregate the MEF data residing on her device and by erasing data from her device after she was notified of a legal hold.

15.     As a proximate result of Barbounis' breach of the Bring Your Own Device Agreement, MEF has suffered, and is continuing to suffer, harm and loss of its confidential information.

## COUNT III
### (Computer Fraud and Abuse Act, 18 U.S.C. § 1080(g))

66.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

80.     MEF provides services electronically through the use of its computers across the United States and globally.   MEF also communicates electronically through the use of its computers across the United States, as well as globally.

67.     MEF email accounts are "protected computers" under 18 U.S.C. § 1030(e)(2), because they are data storage facilities or communications facilities that are entirely contained on and accessed via the internet and operate in conjunction with computers that are used in or affecting interstate or foreign commerce or communication.

68.     Barbounis was not authorized to access MEF email for the purpose of forwarding confidential information to her personal account and third parties without authorization, and thus converting MEF property.

69.     Nonetheless, Barbounis knowingly and intentionally accessed MEF's email accounts without authorization, or by exceeding authorized access, and thereby obtained information from those computers and accounts, in violation of 18 U.S.C. § 1030(a)(2)(C).

70.     Further, Barbounis intentionally accessed MEF's email accounts without authorization, or by exceeding authorized access, and, as a result of such conduct, caused damage and loss, in violation of 18 U.S.C. § 1030(a)(5)(C).

71.     As a result of Barbounis' unlawful conduct, MEF has suffered harm, and will

continue to suffer harm, including but not limited to interference with clients and business contacts and the loss of proprietary and confidential information and trade secrets.

72.     MEF, therefore, is entitled to such relief as this Court deems appropriate to prevent further harm to MEF.

## COUNT IV
**(Pennsylvania Uniform Trade Secrets Act 12 Pa. Cons. Stat. § 5304(a))**

73.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

74.     Barbounis accessed without authorization and misappropriated MEF's confidential information and trade secrets, contained on MEF's confidential systems, shared during meetings at MEF, and contained in the email communications and attachments that Barbounis copied or otherwise obtained from MEF email accounts, including but not limited to MEF's donor lists and contacts, media contact lists, the MEF President's email data files, and other highly sensitive competitive information.

75.     The information that Barbounis misappropriated constitutes trade secrets because it includes financial, business, and economic information, as well as a compilation of secret information *i.e.* a donor list. *See* 12 Pa. Cons. Stat. § 5302.

76.     MEF is the owner of the trade secrets misappropriated by Barbounis because MEF has a rightful legal or equitable title to the trade secrets. *See* 12 Pa. Cons. Stat. § 5302.

77.     The trade secrets stolen by Barbounis derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. *See* 12 Pa. Cons. Stat. § 5302. For example, the email communications contain documents that list MEF's donor financial information, donor contacts, and proprietary business

information contained in the General Operating Support master document.

78.     The information and trade secrets misappropriated by Barbounis were at all times the subject of reasonable efforts by MEF to maintain its secrecy, including confidentiality requirements in Barbounis' Confidentiality & Non-Disclosure Agreement. *See* 12 Pa. Cons. Stat. § 5302.

79.     Barbounis misappropriated MEF's trade secrets because Barbounis copied, disclosed, and used MEF's trade secrets without MEF's express or implied consent, and Barbounis used improper means to acquire the trade secrets and owed a duty to MEF to maintain the secrecy of the trade secrets or limit the use of the trade secrets. *See* 12 Pa. Cons. Stat. § 5302. The improper means utilized by Barbounis in acquiring the trade secrets include, but are not limited to, theft and breach of a duty to maintain secrecy. *See* 12 Pa. Cons. Stat. § 5302.

80.     As a direct result of Barbounis' misappropriation of MEF's trade secrets, MEF has been harmed, and will continue to be harmed, and is therefore entitled to relief as this Court deems appropriate. 12 Pa. Cons. Stat. § 5304(a).

## COUNT V
### (Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1))

81.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

82.     MEF provides services across the United States and globally.

83.     MEF's trade secrets, therefore, are related to a product or service used in, or intended for use in, interstate and foreign commerce.

84.     Barbounis accessed without authorization and misappropriated MEF's confidential information and trade secrets, contained on MEF's confidential systems, shared during meetings at MEF, and contained in the email communications and attachments that Barbounis copied or

otherwise obtained from MEF email accounts, including but not limited to MEF's donor lists and contacts, media contact lists, the MEF President's email data files, and other highly sensitive competitive information.

85.     The information that Barbounis misappropriated constitutes trade secrets because it includes financial, business, and economic information.  *See* 18 U.S.C. § 1839(3).

86.     MEF is the owner of the trade secrets misappropriated by Barbounis because MEF has a rightful legal or equitable title to the trade secrets.  *See* 18 U.S.C. § 1839(4).

87.     The trade secrets stolen by Barbounis derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  *See* 18 U.S.C. § 1839(3).   For example, the email communications contain documents that list MEF's donor financial information, donor contacts, and proprietary business information contained in the General Operating Support master document.

88.     The information and trade secrets misappropriated by Barbounis were at all times the subject of reasonable efforts by MEF to maintain its secrecy, including confidentiality requirements in Barbounis' Confidentiality & Non-Disclosure Agreement.  *See* 18 U.S.C. § 1839(3).

89.     Barbounis misappropriated MEF's trade secrets because Barbounis copied, disclosed, and used MEF's trade secrets without MEF's express or implied consent, and Barbounis used improper means to acquire the trade secrets and owed a duty to MEF to maintain the secrecy of the trade secrets or limit the use of the trade secrets. *See* 18 U.S.C. § 1839(5).   The improper means utilized by Barbounis in acquiring the trade secrets include, but are not limited to, theft and breach of a duty to maintain secrecy.  *See* 18 U.S.C. § 1839(6).

90.     As a direct result of Barbounis' misappropriation of MEF's trade secrets, MEF has been harmed, and will continue to be harmed, and is entitled to such relief as this Court deems appropriate.

## COUNT VI
### (Stored Communications Act, 18 U.S.C. § 2701)

91.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

92.     MEF's email server is a facility through which an electronic communication service is provided, because the email server allows its users the ability to send or receive electronic communication, specifically e-mail. *See* 18 U.S.C. § 2510(15).

93.     Barbounis obtained access to and copied, via forwarding to personal accounts, the email communications and attachments contained in the MEF principals' email accounts, which are located on the email server, while they were in storage by an electronic communication service for purposes of backup protection, and were, therefore, in protected "electronic storage," as defined by 18 U.S.C. § 2510(17).

94.     Barbounis was not authorized to copy the email communications and attachments contained in MEF email accounts.

95.     Nonetheless, Barbounis intentionally accessed MEF email accounts in excess of her authorized access, and thereby obtained confidential electronic communications and attachments, in violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701(a).

96.     As a direct result of Barbounis' unlawful conduct, MEF has suffered harm, and will continue to suffer harm, including the loss of proprietary and confidential information and trade secrets.

97.     MEF, therefore, is entitled to relief pursuant to 18 U.S.C. § 2707(c), and/or such

other and further relief as this Court deems appropriate.

98.     Further, Barbounis willfully and intentionally accessed without authorization, or by exceeding authorized access, MEF's principals' email accounts and copied or otherwise obtained the email communications and attachments contained in those email accounts, and MEF is therefore also entitled to punitive damages. *See* 18 U.S.C. § 2707(c).

## COUNT VII
### (Conversion of Confidential Information)

99.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

100.    MEF employees use their MEF email accounts for their work at MEF and, as a result, the email accounts contain MEF's confidential and proprietary information.

101.    MEF is the owner of property rights in the contents of MEF's business email accounts, as well as to the confidential and proprietary information contained in those email accounts.

102.    During her employment at MEF, Barbounis wrongfully took control of the email communications and attachments contained in the MEF email accounts, and the confidential and proprietary information contained in those email accounts, and she failed to return these email communications and attachments to MEF.

103.    Barbounis' wrongful exercise of dominion and control over MEF's email communications and attachments, and MEF's confidential and proprietary information deprives MEF of use and control of those items, in violation of MEF's rights in and to those items.

104.    As a result of Barbounis' conversion and use of MEF's email communications and attachments, and MEF's confidential and proprietary information, MEF has been and will be harmed.

105.     MEF is therefore entitled to such relief as this Court deems appropriate.

## COUNT VIII
### (Breach of Fiduciary Duty)

106.     MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

107.     While employed at MEF, Barbounis held the positions of Executive Liaison and Director of Communications.

108.     In her positions as Executive Liaison and Director of Communications, Barbounis undertook and assumed responsibilities, duties, and obligations on behalf of and to MEF, including without limitation, duties of loyalty, care, fidelity, good faith, and to act in the best interests of MEF.

109.     As Director of Communications, Barbounis owed fiduciary duties to MEF to exercise due care in the company's management and to act in the best interests of MEF.

110.     Barbounis' fiduciary duties included, without limitation, the duty to act in a manner that was loyal to MEF and its best interests and not act adversely to MEF's interests.

111.     Barbounis breached her duties to MEF by engaging in the acts described in this Verified Complaint, including but not limited to converting and disclosing trade secret, confidential, and proprietary information of MEF for her own benefit and to the detriment and injury of MEF.  These actions were intentional, wanton and willful, and done with the intent to harm MEF.

112.     As a direct and proximate result of these breaches of duty and willful misconduct, MEF has suffered harm, and will continue to suffer harm, including but not limited to damage to its reputation, and to its current and prospective relationships, interference with and misappropriation of its trade secrets, contracts, and other property interests.

113.    MEF is therefore entitled to such relief as this Court deems appropriate.

## COUNT IX
### (Declaratory Judgment)

114.    MEF repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

115.    In misappropriating and disclosing MEF's confidential information and trade secrets that were contained in e-mail and stored electronically on computers, Barbounis has breached her contractual obligations to MEF, violated of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), violated the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1), violated the Stored Communications Act, 18 U.S.C. § 2701, converted MEF's confidential information, and breached her fiduciary duties owed to MEF.

116.    As a result of Barbounis' action, MEF was harmed and continues to be harmed.

117.    MEF has attempted to vindicate its rights and seek redress for the past and ongoing harm caused by Barbounis through engaging with Barbounis and her counsel to resolve this dispute.

118.    Barbounis and her counsel have indicated that she is not willing to resolve this dispute amicably or continue to engage with MEF outside of court.

119.    As a result, there now exists an actual and present controversy between MEF and Barbounis regarding: (1) whether Barbounis is obligated to provide an inventory of the MEF data she possesses; (2) whether she is obligated to work with a mutually agreeable vendor at MEF's cost to create an inventory of the MEF data she has deleted from her devices and to recover such data to the extent possible; (3) whether she is obligated to inventory all disclosures of MEF data; and (4) whether she is prohibited from further destroying or disclosing MEF data.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff MEF respectfully requests that the Court enter judgment against Barbounis and grant the following relief:

(a)     A temporary restraining order, preliminary injunctive relief, and permanent injunctive relief;

(b)     Declare that Barbounis is obligated to provide an inventory of the MEF data she possesses, that she is obligated to work with a mutually agreeable vendor at MEF's cost to create an inventory of the MEF data she has deleted from her devices and to recover such data to the extent possible, that she is obligated to inventory all disclosures of MEF data, and that she is prohibited from further destroying or disclosing MEF data.

(c)     An award of reasonable attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest to MEF to the extent permitted by law or contract; and

(d)     Award such other and further relief as the Court may deem just and appropriate.

### DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MEF hereby demands a jury trial on issues triable by a jury.

### Verification

As the Director for Plaintiff The Middle East Forum, I have read the foregoing Verified Complaint and certify that the allegations contained therein are true and accurate to the best of my knowledge and belief.

Gregg Roman
Director, MEF

Dated: December 3, 2019

Dated:  December 3, 2019

THE MIDDLE EAST FORUM
By counsel,

/s/ Sidney L. Gold
Sidney L. Gold, Esquire
I.D. No.: 21374
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
*sgold@discrimlaw.net*
*Counsel for Plaintiff The Middle East Forum*

# Exhibit A

Lisa Reynolds, Barbounis

2601 Pennsylvania Avenue, 1153

Philadelphia, PA  19130

September 25, 2017


Dear Lisa,


On behalf of the Middle East Forum, I am pleased to offer you the position of Executive Liaison as a full-time, exempt employee.


Start Date and Salary

You will commence employment on October 16, 2017, at the all-inclusive annual salary of $60,000 subject to a one time increase to reflect 50% of your medical premium. Your salary will be payable in accordance with the Forum's standard payroll practice and subject to applicable withholding taxes. Because your position is exempt from overtime pay, your salary will compensate you for all hours worked.


Optional Benefits

You will be eligible to participate in the following benefit plans after 30 days of employment:

- Group medical health, dental and vision insurance plans. (Please note: participation could *reduce* the amount of your all-inclusive salary.)

- 403(b) retirement plan.

- Commuter benefit plan. (Allows employees to allocate pre-tax dollars to pay for eligible work-related transit and parking expenses. Please note: we will *not* otherwise reimburse for travel associated with commuting.)


Reimbursements

We will consider reimbursement of non-commuting travel costs and other expenses on a case-by-case basis.

Work Location

You will be a resident employee working in the Forum's Center City office in Philadelphia.

Personnel Manual and Confidentiality Agreement

As a condition of your employment, you will be required to sign a Personnel Manual and a Confidentiality Agreement.

Responsibilities

Your responsibilities will be as referenced in the Executive Assistant job description, below.

Employment-at-Will

If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Forum may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Forum, its agents, or representatives, are superseded by this offer letter.

Performance Review

If you accept our offer of employment, we will provide you with a performance review within six months. The purpose of the review is to evaluate your overall fit for the position and calibrate our working relationship. In no way does the performance review affect your at-will status; either before or after the review. Positive remarks made during a performance review do not in any way guarantee future employment or added benefits/ compensation.

Contingencies

This offer is contingent upon a reference check; disclosure by you of any contractual employment restrictions (e.g., non-competition or non-solicitation agreements); and, at our option, background check clearance.

Additional Provisions

If you accept this offer, the terms described in this letter will be the terms of your employment, and this letter supersedes any previous discussions, offers and/or terms. Any additions to or modifications of these terms must be in writing and signed by you and an officer of the Forum.

If you wish to accept employment with the Forum, please indicate so by signing two copies of this letter, returning one copy to me. You may do this by regular mail or by scanning the documents and emailing.

This offer and all terms of employment stated in this letter will expire at 5:00 PM Eastern Daylight Time on Thursday, September 28, 2017.

— — — — —

I hope that you will accept this offer and look forward to a productive and mutually beneficial working relationship. Please let me know if I can answer any questions for you about any of the matters outlined in this letter.

With the signature below, I accept employment with the Middle East Forum, under the terms set forth in this letter.

I accept this offer letter/agreement.

Employee

*Lisa E R. Barbounis*

Lisa Reynolds-Barbounis
Dated: 09/25/2017

Accepted and agreed to:
Middle East Forum

By:

Name: Gregg Roman
Title: Director

**Executive Assistant**

**Job description:**

This Executive Liaison works in fast-paced environment providing support in two one-on-one working relationships. This position serves as the primary point of contact for internal and external constituencies on all matters pertaining to the President and Director. The Liasion also serves as a liaison to the board of directors and senior management and must be able to work under pressure to handle a wide variety of activities and confidential matters with competence and discretion.

**Roles and responsibilities:**

·   Maintain executives' appointment schedules.

·   Keep the President and Director informed of forthcoming commitments and responsibilities, following up as needed.

·   Write first drafts.

·   Attend meetings to take notes and assign tasks; track progress of projects by coordinating with staff; follow up on results.

·   Serve as the President and Director's liaison to the Forum's lay leadership.

·   Work with the development team in coordinating outreach activities of the President and Director.

·   Prepare travel expense and reimbursement reports.

- Follow up on new contacts and support ongoing relationships.

- Contribute to team effort by filling in for other staff, as needed.

- Fulfill other duties as assigned.

**Candidate qualifications:**

- Agreement with MEF's mission and outlook (for more, see here)

- Experience as an executive administrative assistant or in a comparable position

- Knowledge of office management systems and procedures: MS Office, Slack, Asana, Salesforce

- Proficiency in English

- Communications skills, both verbal and written

- Planning and time management skills

- Ability to multitask and prioritize

- Discretion and confidentiality

# Exhibit B

### *CONFIDENTIALITY & NON-DISCLOSURE AGREEMENT*

This Confidentiality and Non-Disclosure Agreement ("Agreement") is executed effective _10/14/17_ , between the Middle East Forum ("MEF"), which is based in Philadelphia, PA, and _Lisa Barbounis_ ("EMPLOYEE"), who is an employee of MEF (collectively, "the Parties").

WHEREAS, MEF and Employee have a professional relationship, whereby employee performs services for MEF in exchange for compensation.

NOW, THEREFORE, in consideration of the mutual promises contained herein, as well as other good and valuable consideration, the parties hereto agree as follows:

1.  **Purpose**. The parties have a professional relationship of mutual interest as described herein. In connection with this professional relationship, MEF may disclose to EMPLOYEE certain Confidential Information which MEF desires EMPLOYEE treat as confidential.

2.  **Definition**. For purposes of this Agreement, "Confidential Information" shall mean any of the following:

    (a)  The address, floor, suite number, and/or General Location of commercial office space utilized by MEF (for this Section 2, the term "General Location" includes, but is not limited to, the names of streets surrounding commercial office space utilized by MEF).

    (b)  The address, floor, suite number, and/or General Location of any potential and/or future commercial office space to be utilized by MEF.

    (c)  Any information and/or materials provided to EMPLOYEE by MEF concerning the address, floor, suite number, and/or General Location of commercial office space utilized by MEF (this includes any potential and/or future commercial office space to be utilized by MEF).

    (d)  Notes taken and materials produced by EMPLOYEE concerning the address, floor, suite number, and/or General Location of commercial office space utilized by MEF (this includes any potential and/or future commercial office space to be utilized by MEF).

    (e)  The names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF.

    (f)  Any address (residential or business) utilized by: (i) MEF President Daniel Pipes; (ii) any MEF board member; (iii) any MEF officer; (iv) any MEF employee; and/or (v) any MEF contractor.

    (g)  Any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation. Confidential Information under this subsection (g) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or

materials and/or information clearly and prominently marked with some similar designation.

(h) Any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private. Confidential Information under this subsection (h) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

3. **Access to Confidential Information**. The parties acknowledge that EMPLOYEE, in the course of its relationship with MEF, described herein, will have access to Confidential Information.

4. **Non-Disclosure**. EMPLOYEE agrees not to disclose any Confidential Information to *any* third party, *including but not limited to family members, relatives, significant others, and friends*, unless (i) MEF provides prior written consent; *and* (ii) MEF and the third party execute a confidentiality agreement.

5. **Exception to Non-Disclosure**. EMPLOYEE *may* provide the address of commercial office space utilized by MEF to a vendor and/or supplier, *only if* (i) such disclosure would be necessary in the performance of EMPLOYEE's services and obligations to MEF; *and* (ii) EMPLOYEE uses the entity name "Savannah Mercantile and Trading Company" as part of the address, and *not* "MEF," "Middle East Forum," "The Forum," or any name of any staff member or contractor of MEF, including but not limited to "Daniel Pipes"; *and* (iii) EMPLOYEE, to the best of his/her ability, knows that any such vendor and/or supplier is *not* aware that the address provided is utilized by MEF.

6.. **Maintenance of Confidentiality**. EMPLOYEE shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of Confidential Information. Without limiting the foregoing, EMPLOYEE shall take at least those measures that it takes to protect its own most highly confidential information, and shall promptly notify MEF of any misuse or misappropriation of Confidential Information of which it becomes aware.

7. **Term**. The obligations described herein shall survive in perpetuity (and shall remain regardless of whether or not the parties end any such professional relationship), *or until* such time as all Confidential Information becomes *widely publicly known* and made *generally available* through no action or inaction of EMPLOYEE.

8. **Violations; Termination**. MEF has the right to take disciplinary action against Employee, up to and including termination, for any violation of this Agreement.

9. **Violations; Legal Remedies**. Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief *in addition to* all legal remedies.

10. **Failure to Enforce**. A failure to enforce any provision of this Agreement will not constitute a waiver thereof or of any other provision.

11. **Modifications**. This Agreement cannot be terminated, amended or otherwise modified except in a writing signed by both parties.

12. **Entire Agreement**. This Agreement shall supersede any prior oral or written understandings or communications between the parties with respect to its subject matter

hereof, and constitutes the entire agreement of the parties with respect to the subject matter hereof.

13.   **Severability**. If any provision of this Agreement is declared void, invalid, or illegal by any governmental, judicial or arbitral authority, the validity or legality of any of the other provisions and of the entire Agreement shall not be affected thereby and the remaining provisions shall remain in full force and effect.

14.   **Pennsylvania Law**. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, and performed entirely within such State. Jurisdiction and venue for any claim arising out of this Agreement shall be made in the Commonwealth of Pennsylvania.

In witness whereof, the parties hereto have executed this Agreement as of the day and year first written above.

**Middle East Forum (MEF):**

_____, Director
By:   [Name, Title]

_____ **(EMPLOYEE):**

Lisa Barbounis, EX Liasin
[Name, Title]

Exhibit C

I acknowledge that I have received a copy of the Middle East Forum Employee Handbook.

Employee

Lisa Reynolds-Barbounis
Dated: 09/25/2017

# Exhibit D

# MIDDLE EAST FORUM

## Bring Your Own Device Agreement

I, *Lisa Barbounis*, have read MEF's BYOD policy, accept all associated terms and conditions, and choose to participate.

1. *Stipend:* I acknowledge that I will receive $1,500 (Fifteen Hundred Dollars) in the form of a stipend from MEF, all of which must be used to purchase: a device of my choosing, associated warranty, and antivirus software. If the cost of my device, warranty, and antivirus (including all taxes) is less than $1,500 I will return the balance to MEF to save for me, or save it myself for any repairs, enhancements, or accessories (protective covering, carrying case, adaptors, etc.) that I may want or need during the 3-year term.

2. *Compatibility:* I will inform MEF prior to making any purchases to ensure the devices and equipment are compatible with existing office hardware and adhere to the guidelines set forth in the BYOD policy.

3. *Proof of Purchase:* I will provide MEF with receipts for my device, proof of warranty, and the name/edition of my antivirus software (or request MEF provide the antivirus software).

4. *Loss or Damage:* I understand that if my device is lost or becomes unusable before the 3-year term, I must replace it at my own expense or revert to the desktop setup that was in place before entering into this Agreement.

5. *Recompense:* I understand that if I leave for any reason before the 3-year term, a payroll deduction will be applied for the prorated amount of my device, or I can forfeit the device to MEF.

6. *Forfeiture:* If I forfeit my device at any time, for any reason, I promise to notify MEF of any passwords or other information that may be needed to access the device and make it usable for other personnel.

7. *Responsibility:* I agree to bring my device to and fro when working in the office.

8. *Liability:* I understand that my device it is my personal property and therefore my responsibility to care for it at all times, both in and out of the office.

9. *Security:* I promise to have my device password protected at all times.

10. *Privacy:* I promise that no person other than myself will see or have access to MEF data (email, documents, spreadsheets, contacts, calendars, chats, Salesforce, or other MEF proprietary information) that is being accessed via my web browser. If I do download, install, or save any MEF data onto my device, for any reason, I will ensure that no person other than myself will see or have access to it.

11. *E-Discovery*: To the extent MEF data (as defined above) resides on my device, I agree to segregate that data to the best of my ability; and acknowledge and accept that such data may be subject to a litigation hold (meaning I would not be able to erase it) and may be subject to legal discovery. If such data is subject to legal discovery, I acknowledge and accept that MEF will need to extract such data from my device.

12. *Lawful Use*: When using the device at MEF's office, or when the device is connected to MEF resources, I will not use the device for illegal or unlawful purposes.

_Lisa Barbounis_
Name

_(signature)_
Signature

_1/8/2019_
Date

_HH1BB_

1. Serial # : FVFXQ5KK HV27
2. Apple Care : 3 years from 1-8-19
3. Anti Virus : Bit defender