**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM | : | CIVIL ACTION NO.: 19-5697 |
| *Plaintiff* | : | |
| | : | Hon. Juan R. Sánchez |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | |
| *Defendant* | : | |
| | : | JURY TRIAL DEMANDED |

## ORDER ON MOTION FOR A PRELIMINARY INJUNCTION

AND NOW, on this _____ day of December, 2019, upon the motion for entry of a Preliminary Injunction, filed by Plaintiff, The Middle East Forum ("MEF"), against Defendant, Lisa Reynolds-Barbounis ("Barbounis") the Court finds that:

1.    The Court has jurisdiction over the parties and subject matter of this case.

2.    Venue lies properly with this Court.

3.    Plaintiff MEF has demonstrated a likelihood of success on the merits that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

4.    Plaintiff MEF has demonstrated a likelihood of success on the merits that Barbounis has converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

5.    Plaintiff MEF has demonstrated that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

6. Plaintiff has demonstrated that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction and/or disclosure of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

7. The entry of this Order is in the public interest.

## ORDER

IT IS THEREFORE ORDERED that:

A. Plaintiff's Motion for a Preliminary Injunction is hereby GRANTED;

B. Barbounis shall preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

C. Barbounis shall immediately return to MEF all documents and materials (hard copy and electronic) belonging to MEF and/or its donors;

D. Barbounis shall allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, the cost to be split evenly between the parties, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

E.      Barbounis shall identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

F.      Barbounis shall take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.


SO ORDERED this _____ day of _____, 2019.


By:     _____
        Hon. Juan R. Sánchez
        United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM | : | CIVIL ACTION NO.: 19-5967 |
| *Plaintiff* | : | |
| | : | Hon. Juan R. Sánchez |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | |
| *Defendant* | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |

**PLAINTIFF, THE MIDDLE EAST FORUM'S,**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Plaintiff, The Middle East Forum, by and through its undersigned counsel, moves this Court for a Preliminary Injunction against Defendant, Lisa Reynolds-Barbounis, pursuant to Rule 65 (a) of the Federal Rules of Civil Procedure, and in support thereof submits the following:

1. its Verified Complaint;

2. the accompanying Exhibits; and

3. the accompanying Memorandum of Law;

A proposed form of Order is also included with this Motion.

WHEREFORE, Plaintiff respectfully requests that the Court grant its Motion for a Preliminary Injunction in the form submitted herewith.

Respectfully submitted,

<u>/s/Sidney L. Gold, Esquire</u>
Sidney L. Gold, Esquire
I.D. No.: 21374
1835 Market St., Ste 515
Philadelphia, PA 19103
<u>sgold@discrimlaw.net</u>
Attorney for Plaintiff

Dated:  12/05/19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM | : | CIVIL ACTION NO.: 09-5697 |
| *Plaintiff* | : | |
| | : | Hon. Juan R. Sánchez |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | |
| *Defendant* | : | |
| | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR A PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

The blatant violations by Defendant, Lisa Reynolds-Barbounis ("Barbounis"), of her employment agreements, necessitate the granting of an injunction against Barbounis.  As set forth in detail below, Barbounis entered into a "Confidentiality & Non-Disclosure Agreement" ("NDA") and "Bring Your Own Device Agreement" as a condition of her employment with Plaintiff, The Middle East Forum ("Plaintiff"), that prevents her from, among other things, improperly accessing or disclosing confidential information.

After Plaintiff discovered that Barbounis breached her obligations under the aforesaid Agreements, by forwarding Plaintiff's trade secrets and confidential information to her personal email account and personal electronic devices, Plaintiff attempted on multiple occasions to resolve this issue amicably before seeking this injunctive relief in court.  Having been unable to secure the necessary assurances from the Defendant, Plaintiff now asks the Court for an injunction against Barbounis to abate the immediate and irreparable harm that she has inflicted upon Plaintiff, and will continue to inflict, with her actions.

1

## II.    FACTUAL BACKGROUND[1]

### A.    Barbounis' Employment Agreement with MEF

MEF was founded in 1994 as a think tank that promotes American interests in the Middle East and works to protect Western values from Middle Eastern threats through academic research, media engagement, as well as government and general public outreach.

On September 25, 2017, MEF entered into an employment agreement with Barbounis in which Barbounis agreed to serve as an Executive Liaison. *See* Barbounis Executed Onboarding Documents, p. 7. The parties agreed in the employment agreement that, as a condition of Barbounis' employment, she was required to sign a Personnel Manual and Confidentiality & Non-Disclosure Agreement. *See id.* at 8. On September 25, 2017, Barbounis signed to acknowledge that she had received a copy of MEF's Personnel Manual. *See id.* at 13.

Beginning on or around January 3, 2019, Barbounis became Director of Communications at MEF. In her positions as Executive Liaison and then as Communications Director, Barbounis was in a relationship of trust with MEF, who justifiably relied on Barbounis to perform her duties with loyalty and care.

As a consequence of her positions at MEF, and in reliance upon her representations and commitments as a director of MEF, Barbounis was granted access to MEF's confidential and proprietary information, trade secrets, donor lists, and business relationships. At no time was Barbounis authorized, as a consequence of her position or employment at MEF, to utilize, collect, or disclose e-mail communications or personal e-mail accounts used by other MEF principals.

---

[1] All of the facts set forth herein are derived from Plaintiff's Verified Complaint, filed contemporaneously herewith.

During the term of her employment, Barbounis agreed that she was a qualified candidate

for the position based on her "[d]iscretion and confidentiality." *See* Barbounis Executed

Onboarding Documents, p. 11.  Barbounis also agreed in the employment agreement that "[t]his

position serves as the primary point of contract for internal and external constituencies on all

matters pertaining to the President and Director.  The Liaison also serves as a liaison to the board

of directors and senior management and must be able to work under pressure to handle a wide

variety to activities and confidential matters with competence and discretion." *See id.* at 10.

Additionally, one of the roles and responsibilities that Barbounis agreed to undertake in

the position of Executive Liaison was to "[a]ttend meetings to take notes and assign tasks; track

progress of projects by coordinating with staff; follow up on results." *See id.*

**B.      Barbounis' Confidentiality & Non-Disclosure Agreement with MEF**

In accordance with the employment agreement, on October 16, 2017, Barbounis signed

MEF's Confidentiality & Non-Disclosure Agreement ("NDA"), in which the parties

acknowledged that Barbounis would have access to Confidential Information in the course of

and as a result of her employment with MEF.  NDA § 3.

Specifically, Barbounis agreed to:

> take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized
> use of Confidential Information.  Without limiting the foregoing, Barbounis shall take at
> least those measures that it takes to protect its own most highly confidential information
> and shall promptly notify MEF of any misuse or misappropriation of Confidential
> Information of which it becomes aware.

NDA § 6.

The NDA required Barbounis to not "disclose any Confidential Information to *any* third

party, *including but not limited to family members, relatives, significant others, and friends*,

unless (i) MEF provides prior written consent; *and* (ii) MEF and the third party execute a

confidentiality agreement." NDA § 4 (emphasis in original).

3

The NDA defined "Confidential Information" to include:

  (a) The names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF.

  (b) Any address (residential or business) utilized by: (i) MEF President Daniel Pipes; (ii) any MEF board member; (iii) any MEF officer; (iv) any MEF employee; and/or (v) any MEF contractor.

  (c) Any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation. Confidential Information under this subsection [(c)] shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation.

  (d) Any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private. Confidential Information under this subsection (h) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

NDA § 2(e)-(h).

Barbounis further agreed that, by signing the NDA, her breach of the NDA would entitle MEF to "seek injunctive relief *in addition to* all legal remedies." *See id.* at § 9 (emphasis in original).

Barbounis was required to uphold such obligations set out in MEF's NDA "in perpetuity (and shall remain regardless of whether or not the parties end any such professional relationship), *or until* such time as all Confidential Information becomes *widely publicly known* and made *generally available* through no action or inaction of [Barbounis]. *See id.* at § 7 (emphasis in original).

4

C.      **Barbounis' Acknowledgement of MEF's Personnel Manual**

On September 25, 2017, Barbounis acknowledged and agreed to abide by the Middle

East Forum Employee Handbook ("Personnel Manual").  *See* Barbounis Executed Onboarding

Documents, p. 13.

The Personnel Manual states that:

> All information and technology of MEF, the unauthorized disclosure of which
> would be detrimental to the interests of MEF ("MEF Confidential Information"),
> is solely the property of MEF.  Employees must maintain all MEF Confidential
> Information in strict confidence and protect against its disclosure or
> dissemination.  MEF Confidential Information is considered to include
> confidential information obtained from third parties.  The foregoing obligations of
> confidentiality and non-disclosure continue to apply after termination of
> employment with MEF.
>
> Employees must not remove any MEF Confidential Information from MEF's
> premises or make copies of such materials except for use in MEF business.
>
> Employees must return to MEF all MEF Confidential Information, and copies of
> the foregoing, at any time upon the request of MEF and, in any event and without
> such request, prior to or upon the termination of employment by MEF.
> Employees agree not to retain any copies of any MEF Confidential Information,
> in any form, after termination of employment for any reason.
>
> If Employees is unsure as to whether any particular information is MEF
> Confidential Information, Employees shall treat it as such unless and until the
> employee has been advised otherwise by an authorized representative of MEF.

Personnel Manual at 11-12.

The MEF Personnel Manual also provided that:

> E-mail and voice mail systems are available to assist Employees in performing
> their work.  Like the other software, hardware, and tools made available to and
> used by Employees, the e-mail and voice mail systems and the information, work,
> and data contained therein are the property of MEF.
>
> Electronic and voice mail communications are not private.  They are business
> records that may be subject to subpoena or other legal investigation and may be
> introduced as evidence in a legal proceeding.  MEF requires Employees to use
> passwords to gain access to e-mail and voice mail.  The use of a password is for
> the protection of MEF, not Employees.  Messages are not considered confidential
> even though a private password is used . . . .

Employees must exercise special care to protect the proprietary and/or confidential information of MEF.  Unauthorized transmission and/or disclosure of any confidential or proprietary information is strictly prohibited.

Use of MEF equipment for e-mail and/or voice mail communications constitutes Employees agreement to abide by the terms of this policy and consent to MEF's access, monitoring, and disclosure described herein.  As with all of its policies, MEF reserves the right to change or revoke this policy at any time, in its discretion, with or without notice.

Personnel Manual at 15-16.

Barbounis' signature acknowledged that she had received, read, and understood these terms in the Personnel Manual, and she agreed to abide by those terms.

### D.    Barbounis' Unauthorized Disclosure of MEF's Confidential Information and Misappropriation of MEF's Trade Secrets to Personal E-mail Accounts

During her employment at MEF, Barbounis forwarded MEF Confidential Information located on her MEF computer to her personal e-mail account.  Upon information and belief, Barbounis also improperly e-mailed trade secrets and confidential information contained on her computer to the personal e-mail account of a then employee of MEF and other third parties.

On January 8, 2019, Barbounis executed a Bring Your Own Device Agreement in which she agreed to have her device password protected at all times to ensure that no other person other than herself would access the computer or MEF data (including emails, documents, spreadsheets, contacts, calendars, or other MEF proprietary information) contained on the computer; to segregate MEF data residing on the computer to the best of her ability and subject that data to a litigation hold; and to not use the device for illegal or unlawful purposes.

Pursuant to the Bring Your Own Device Agreement, the computer that Barbounis used to send this information to her personal e-mail account was password protected.  MEF had administrator privileges for the computer pursuant to its Bring Your Own Device Policy.

Barbounis conducted her work for MEF on this computer from the date of purchase until

6

her resignation from MEF on August 7, 2019.  The computer, therefore, contained MEF proprietary and confidential information and trade secrets, including but not limited to MEF's fundraising practices, funding sources, donor information, project and donor proposals, policy positions and statements, media member lists, and marketing initiatives.

Additionally, MEF e-mail accounts are used by MEF employees and MEF's principals to conduct work on behalf of MEF.  Barbounis was never authorized to use her MEF e-mail account for non-business purposes.  MEF did not require Barbounis to use her personal e-mail accounts, and Barbounis was not authorized to use her personal e-mail accounts for MEF business, in accordance with the Personnel Manual.

MEF has learned since conducting an internal investigation that the Confidential Information Barbounis either accessed without MEF authorization or sent to her personal e-mail account includes, but is not limited to:

- A General Operating Support master document and e-mail listing organizations and donors that had been approached or sent proposals for donations, sent on April 10, 2019;

- A sensitive MEF document on countering violent extremism, composed on MEF's letterhead, sent on September 17, 2018;

- A proprietary MEF paper on United Nations Relief and Works Agency for Palestine Refugees ("UNRWA") funding sent on September 8, 2018;

- MEF proprietary communications resources, including, but not limited to, multiple media contact lists and the Organization's Meltwater account;

- The MEF master donor and e-mail distribution list containing over 65,000 contacts; and

- E-mail data files for Daniel Pipes, the President of MEF.

The internal investigation uncovered that Barbounis had improperly accessed the confidential MEF master donor and e-mail distribution list containing 64,836 contacts and

electronically backed this up on her personal computer.  The confidential MEF master donor and

e-mail distribution list was subject to reasonable measures by MEF to protect its confidentiality

and its contents are a closely guarded secret of MEF.  Barbounis was not authorized to save this

confidential document to her personal electronic device.

Upon information and belief, Barbounis utilized MEF's Confidential Information and her

MEF e-mail account to support political activities of Paul Harris (formerly known as Tommy

Robinson, also known as Stephen Christopher Yaxley-Lennon), in direct contravention of MEF's

policies and directives.  *See* E-mail Sent November 23, 2018; E-mail Sent March 18, 2019; *see*

*also* E-mails from Daniel Pipes, MEF President.

Upon information and belief, Barbounis also possesses MEF Confidential Information

contained in audio recordings made during MEF meetings in which Confidential Information

was discussed, written notes Barbounis made during MEF meetings, notes made on Barbounis'

personal cellphone during MEF meetings, including audio and textual notes, calendar entries,

including, but not limited to, Mr. Gregg Roman's activities and travels, MEF shared electronic

drive documents containing MEF Data, and University of Pennsylvania accounts used for MEF

research.

**E.      Barbounis is Reminded of Her Obligations Under the NDA Ahead of a Staff
         Meeting on November 15, 2018**

In a written memorandum dated November 3, 2018, MEF reminded the recipients of their

ongoing obligations under the existing NDAs.

In a second memorandum sent on November 15, 2018, after it came to the attention of

MEF that Confidential Information had been improperly discussed by Barbounis after the staff

meeting, she was reminded of the definition of Confidential Information and her obligation to

comply with her obligations to maintain strict confidentiality.

**F.     MEF Sends Out Document Preservation Notice to All Staff**

On June 26, 2019, MEF sent a Document Preservation Notice to all MEF officers and administrative staff.  *See* Document Preservation Notice, Dated June 26, 2019.  The preservation notice explicitly states that MEF staff are obligated to "take steps to preserve all potentially relevant information, including hard-copy documents and all forms of electronically stored information ("ESI") that could relate in any way to… communications, documents, and/or information regarding: (i) job performance; (ii) professional interactions; and (iii) personal interactions" with administrative employees.  *See id.*

All MEF staff is obligated not to "destroy, discard, alter, modify, or delete any paper documents or ESI that relate" to the identified topics "and that were created, modified, sent, or received on or after June 1, 2016, including drafts, work papers, personal notes, emails (both sent and received), and other electronically stored documents."  *See id.*  This obligation applied to both existing documents and documents that were created or received after the preservation notice was issued.

Among the materials that were required to be preserved included:

emails and attachments; calendar entries, meeting invitations, and contacts; Microsoft Word, Excel, PowerPoint, Access, Project, and Visio documents; PDF files; photographs and images; e-faxes; text messages, instant messages, Telegram messages, other electronic messages, and voicemails; video, audio, and other multimedia files; databases, data extracts, and reports; and social media content.

Preservation Notice, Dated June 26, 2019 at 2.

In order to comply with the preservation notice, all employees are required to send Marc Fink, In-house counsel of MEF, an email stating that the employee acknowledged receiving the notice and understood the obligations outlined.  *See id.*

**G.     Barbounis Resigns from MEF**

On August 7, 2019, Barbounis submitted her resignation from MEF via e-mail, noting

that her resignation was effective immediately.  *See* Barbounis Resignation Notice E-mail, Dated

August 7, 2019.  As of August 7, 2019, Barbounis was no longer authorized to access MEF's

Proprietary and Confidential Information or trade secrets.  MEF made reasonable efforts to cut

off Barbounis' access to MEF's shared electronic storage drive, Barbounis' MEF e-mail account,

and all other sources of proprietary electronic information.

**H.     MEF's Correspondence with Counsel for Barbounis**

MEF, through counsel, has made multiple attempts to resolve this claim amicably with

Barbounis and her counsel.  Having demonstrated its willingness to engage in discussions on

multiple occasions, MEF has sought to obtain the reassurances it is entitled to under the NDA

and Personnel Manual, including a confirmation that MEF Confidential Information still exists

on Barbounis' personal devices and e-mail accounts, a register of what Confidential Information

still resides on these personal devices and accounts, what information may have been deleted

already from Barbounis' personal devices and accounts, and has sought to work with Barbounis

to permanently delete this Confidential Information from Barbounis' personal devices and

accounts in a forensically sound manner.

On October 25, 2019, MEF sent Barbounis a cease and desist letter that explained her

obligations under the NDA and Personnel Manual, with the objective of preventing the further

dissemination of any MEF Confidential Information. In response, Barbounis, through counsel,

indicated that she had every intention of cooperating with MEF and complying with her legal

obligations, inducing MEF not to proceed with legal action.

After further assurances from counsel for Barbounis, MEF forwarded an affidavit to

Barbounis' counsel on November 12, 2019 that outlined the steps Barbounis would take in order

to amicably resolve the dispute, including making a register of the Confidential Information on

her personal devices and accounts, imaging her personal accounts and computer to understand what information resides on the accounts and devices, selecting a mutually agreed upon vendor to conduct such services as well as to permanently delete any MEF Confidential Information still residing on Barbounis' personal accounts and devices.

After sending the affidavit, Barbounis' counsel requested word documents of the affidavit in order to propose revisions that would be agreeable to Barbounis, which MEF through its counsel provided on November 17, 2019.  On November 18, 2019, Barbounis indicated to MEF that she was no longer willing to cooperate or execute the affidavits provided.  Additionally, Barbounis' counsel claimed that Barbounis, despite her earlier receipt of a preservation notice, destroyed "almost" all of the MEF confidential documents and material in her possession.

MEF further attempted to resolve this matter amicably on November 25, 2019 by proposing that MEF and Barbounis agree to a stipulated Temporary Restraining Order that would protect MEF's confidential information and trade secrets.  MEF received no response to this proposal.

## III.   ARGUMENT

### A.   A Preliminary Injunction is Necessary to Restore the Status Quo that Existed Prior to Defendant's Wrongful Conduct.

This Court should grant Plaintiff's Motion for a Preliminary Injunction to prevent Barbounis from continuing to violate her employment agreements and disclose Plaintiff's trade secrets.  District Courts must consider four factors in deciding whether to grant a preliminary injunction:

1. the likelihood that the moving party will succeed on the merits;
2. the extent to which the moving party will suffer irreparable harm without injunctive relief;
3. the balance of equities does not disfavor granting an injunction; and
4. the public interest.

11

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Plaintiff can satisfy each of these elements and is entitled to a preliminary injunction.

### 1.    Plaintiff Is Likely to Succeed on the Merits.

Plaintiff is likely to succeed on the merits of its claims. In particular, Barbounis has clearly breached the covenants contained in her "Confidentiality & Non-Disclosure Agreement" (attached hereto as "Exhibit A") and "Bring Your Own Device Agreement" (attached hereto as "Exhibit B"). In addition, Barbounis has violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b) ("DTSA") and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA").[2]

### (a)    Plaintiff is Likely to Succeed with Its Breach of Contract Claims

Plaintiff is likely to succeed on its breach of contract claims against Barbounis. Under Pennsylvania law, a cause of action for breach of contract can be established by showing: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Corestates Bank, N.A. v. Cutillo*, 1999 PA Super 14, P16 (Pa. Super. Ct. 1999).

Here, Barbounis has breached both the "Confidentiality & Non-Disclosure Agreement" ("NDA") and "Bring Your Own Device Agreement." In regard to the NDA, Barbounis agreed that she would have access to confidential information as a result of her employment with MEF and promised to not "disclose any Confidential Information to *any* third party, *including but not*

---

[2] While Plaintiff is likely to prevail on each claim in its Verified Complaint, for purposes of the present Motion, Plaintiff only seeks an injunction for breach of contract and violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b) and Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a).

*limited to family members, relatives, significant others, and friends*, unless (i) MEF provides prior written consent; *and* (ii) MEF and the third party execute a confidentiality agreement." Exhibit A § 4 (emphasis in original).

Similarly, under the "Bring Your Own Device Agreement," Barbounis agreed to have her device password protected at all times; to ensure that no other person other than herself would access the computer or MEF data (including emails, documents, spreadsheets, contacts, calendars, or other MEF proprietary information) contained on the computer; to segregate MEF data residing on the computer to the best of her ability and subject that data to a litigation hold; and to not use the device for illegal or unlawful purposes.

Plaintiff has uncovered that Barbounis has breached **both** Agreements, by accessing Confidential Information without Plaintiff's authorization and sending Confidential Information to her personal e-mail account including:

a.      A General Operating Support master document and e-mail listing organizations and donors that had been approached or sent proposals for donations, sent on April 10, 2019;

b.      A sensitive MEF document on countering violent extremism, composed on MEF's letterhead, sent on September 17, 2018;

c.      A proprietary MEF paper on United Nations Relief and Works Agency for Palestine Refugees ("UNRWA") funding sent on September 8, 2018;

d.      MEF proprietary communications resources, including, but not limited to, multiple media contact lists and the Organization's Meltwater account;

e.      The MEF master donor and e-mail distribution list containing over 65,000 contacts; and

      f.      E-mail data files for Daniel Pipes, the President of MEF.

Due to Barbounis' blatant violations of her Agreements, Plaintiff is entitled to injunctive relief. *See generally Tyco Fire Products, L.P. v. Fuchs*, Case No. 20-EDA-2017, 2017 WL 5509889 (Pa. Super. Nov. 17, 2017) *citing John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369, A.2d 1164, 1167 (Pa. 1977) ("it is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention"); *National Bus. Servs. v. Wright*, 2 F. Supp. 2d 701, 708 (E.D. Pa. Apr. 21, 1998) (granting permanent injunction to plaintiff because the former employee "had access to confidential information regarding [their] customers, products, technical details, and marketing strategies, both present and future." As a result, the court concluded it was "inconceivable that [the employee] would be able to avoid utilizing the confidential information she learned at [the former employer] and exploiting [their] customer goodwill").

      **(b)**      **Plaintiff is Also Likely to Succeed on the Merits of Its Claims for Violations of the Defend Trade Secrets Act of 2016 and the Pennsylvania Uniform Trade Secrets Act.**

Plaintiff is also likely to succeed on its claims against Barbounis for violations of the Defend Trade Secrets Act of 2016 ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"). The DTSA defines a "trade secret" as:

> "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

(A) the owner thereof has taken reasonable measures to
keep such information secret; and

(B) the information derives independent economic value,
actual or potential, from not being generally known to, and not
being readily ascertainable through proper means by, another
person who can obtain economic value from the disclosure or use
of the information"

18 U.S.C.A. § 1839(3).[3]

The DTSA forbids the misappropriation of trade secrets. "The 'use' of another's trade
secret explicitly qualifies as an act of misappropriation under the DTSA." *Brand Energy &
Infrastructure Servs. v. Irex Contr. Grp.*, 2017 U.S. Dist. LEXIS 43497 at *11 (E.D. Pa. Mar. 23,
2017). The DTSA defines misappropriation as the "acquisition of a trade secret of another by a
person who knows or has reason to know that the trade secret was acquired by improper means;
or disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C.
§1839(5). Moreover, the DTSA expressly provides for the issuance of injunctions to maintain
the sanctity of trade secrets. *See* 18 U.S.C. § 1836(3).[4]

---

[3] The same analysis supports injunctive relief under the Pennsylvania Uniform Trade Secrets Act
("PUTSA"). See, e.g., EXL Laboratories, LLC v. Egolf, Civ. Act. No. 10-6282, 2010 WL 5000835
(E.D. Pa. Dec. 7, 2010) (granting temporary restraining order where former employees unlawfully used
plaintiff's trade secrets).

[4] Pursuant to the DTSA's *ex parte* seizure remedy under 18.U.S.C. 1836(b)(2), Plaintiff reserves its
right to petition the Court to authorize the seizure of Defendant's computers, because these devices
likely contain Plaintiff's confidential and trade secret information, and they are likely to (1) continue
to misappropriate Plaintiff's confidential information and (2) destroy, move, hide or otherwise make
inaccessible the trade secret.

Based on Defendant's substantial dishonest conduct, as detailed above, Plaintiff believes a seizure
remedy is appropriate if the devices are not immediately surrendered for forensic examination. See e.g.
Solar Connect, LLC v. Endicott, No. 2:17-CV-1235, 2018 WL 2386066, at *2 (D. Utah Apr. 6, 2018)
("defendants have also shown a willingness to provide false and misleading information, including false
information to conceal their identity [and] a willingness to hide information and move computer files rather
than comply with requests to cease use of Plaintiff's proprietary materials."); Mission Capital Advisors LLC
v. Romaka, Civ. Action No. 16-cv-5878 (S.D.N.Y. July 29, 2016) (defendant claimed he deleted files but
forensics later discovered a "trove" of misappropriated files).

Here, Plaintiff seeks protection of, among other things, "Confidential Information" defined by the NDA to include:

    a. The names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF.

    b. Any address (residential or business) utilized by: (i) MEF President Daniel Pipes; (ii) any MEF board member; (iii) any MEF officer; (iv) any MEF employee; and/or (v) any MEF contractor.

    c. Any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation. Confidential Information under this subsection [(c)] shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation.

    d. Any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private. Confidential Information under this subsection (h) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

Verified Complaint at ¶23.

This information is precisely the kind of carefully curated and protected information that is considered a trade secret under the DTSA and PUTSA. *See Henry Schein, Inc. v. Cook*, 2016 WL 3212457, at *3 (N.D. Cal. June 10, 2016) (analyzing application for TRO under DTSA and other claims and holding that "[c]ustomer information such as sales history and customer needs and preferences constitute trade secrets").

Furthermore, Plaintiff reasonably protects the confidentiality of this information by, among other things, requiring employees who have access to confidential information to sign agreements, acknowledging the confidentiality of this information, agreeing to keep the

information confidential; and agree to not improperly use or disclose any confidential, proprietary and/or trade secret information. Such measures are sufficient to demonstrate trade secret status under the DTSA. *See Epiq Class Action and Claims Sols., Inc. v. Prutsman*, 2009 WL 3923413, at *4 (D. Or. Nov. 13, 2009) ("ECA's attempt to keep such information secret is demonstrated through its policy of requiring employees, particularly sales people, to sign noncompetition agreements").

Barbounis received Plaintiff's confidential information while in a position of trust and confidence, and was only allowed to use this information to carry out her obligations as the Executive Liaison and Communications Director of MEF. Moreover, Barbounis promised to return this information after her employment terminated, but has not done so, in order to strengthen her connections and political career, support political candidates, and to blacken the reputation of Management. Verified Complaint ¶ 27.

Accordingly, Plaintiff can demonstrate all of the factors necessary to demonstrate a likelihood of success on the merits of its DTSA and PUTSA claims. As a result, Barbounis should be enjoined from further misappropriating and misusing Plaintiff's confidential information. She should also be ordered to return all such information and property to Plaintiff.

**2. Injunctive Relief Is Necessary to Prevent Immediate and Irreparable Harm to Plaintiff That Cannot Be Adequately Compensated by Damages.**

Unless the Court grants immediate relief, Plaintiff will suffer further irreparable harm that cannot be adequately compensated by monetary relief. "Irreparable harm is injury that cannot be adequately compensated by monetary relief." *Analytic Recruiting, Inc. v. Analytic Res., LLC*, 156 F. Supp. 2d 499, 519 (E.D. Pa. 2001). Here, Barbounis is attempting to use her intimate knowledge of Plaintiff's donors and their requirements --cultivated at the expense of Plaintiff, for her own personal economic benefit. The longer this conduct is permitted to go on,

the greater the potential harm will be to Plaintiff's interests. Unabated, Defendant will irretrievably damage Plaintiff's trade secrets and goodwill.

Damage to business relationships and goodwill, especially through the use of intimate knowledge of a donor's habits and requirements, is the very type of harm that this and other courts recognize as irreparable and worthy of injunctive relief. *Quaker Chem. Corp.*, 509 F. Supp. 2d at 479 ("Here, Varga possesses extensive knowledge of Quaker's trade secrets and other confidential information, including specific information regarding existing customers and potential customers ....   Varga also carries with him Quaker's goodwill ... [and] has a very real opportunity to harm Quaker's legitimate business interests by working for Stuart, and thus Quaker will likely suffer irreparable harm if Varga is allowed to work for Stuart."); *Fisher Bioservices, Inc. v. Bilcare, Inc.*, 2006 WL 1517382, at *20 (E.D. Pa. May 31, 2006) ("[I]njury to goodwill and the use of a company's confidential information are the types of injuries which would constitute irreparable harm that cannot be compensated with monetary damages."); *GeoDecisions v. Data Transfer Solutions, LLC*, 2010 WL 5014514, *10 (M.D. Pa. Dec. 3, 2010) ("The employees at issue had developed goodwill and business relationships on behalf of GeoDecisions. Their defection to DTS will significantly harm GeoDecisions in the market. GeoDecisions's current business relationships have been put into jeopardy, and its source of gaining future relationships will be significantly hindered. These are classic examples of irreparable injuries. Therefore, if the preliminary injunction is not entered, GeoDecisions will suffer irreparable injury in the loss of goodwill with its customers."); *Wright Med. Tech., Inc. v. Somers*, 37 F. Supp. 2d 673, 683 (D.N.J. 1999) (finding irreparable harm where "[The] evidence is sufficient to establish that [the former employee] is using his familiarity with [the former employer's] customers to solicit new business opportunities for [the new employer] ... these

18

solicitations themselves are bound to weaken [the former employer's] relationships with its customers, and the value of the customer relationships [the former employer] has lost and may continue to lose is difficult to quantify").

### 3.      The Balance of Equities Favors Granting an Injunction.

As set forth above, Plaintiff will suffer substantial harm if Defendant's wrongful conduct is not enjoined.  Defendant, on the other hand, would not suffer any legitimate injury by this Court's restoring the status quo ante.  Plaintiff seeks no more in this Motion than to have Barbounis live up to her obligations under the Agreements.

To the extent an order from this court restraining Defendant's wrongful conduct would cause her injury, such injury is not worthy of protection because it is a result of the voluntary decision of Barbounis to violate her obligations under her Agreements.  *See Quaker Chern. Corp.*, 509 F. Supp. 2d at 480 ("[T]he fact that Varga, by resigning from Quaker and joining Stuart in spite of knowing about the non-compete covenant, brought this dispute on himself weighs against him here"); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano*, 85 F. Supp. 2d 491,498  (E.D. Pa. 2000) ("Significantly, any harm to Napolitano would be self-inflicted; he anticipated that Merrill Lynch immediately would seek to enforce its unambiguous employment contract, and chose to breach it nevertheless.  The self-inflicted nature of any harm suffered by the wrongdoer (Napolitano) weighs heavily in favor of granting preliminary injunctive relief").

Accordingly, any self-inflicted harm in this case is far outweighed by the great and irreparable harm that Plaintiff is suffering and will continue to suffer by Defendant's unlawful conduct.

### 4.    Granting A Preliminary Injunction Is in the Public Interest.

"[I]t is generally in the public interest to uphold an agreement freely entered into by the parties." *Vector Sec., Inc. v. Stewart*, 88 F. Supp. 2d 395, 401 (E.D. Pa. 2000).

> "Unless the court enforces the terms of the contracts entered into by the sophisticated parties and entities in this case, the court will be undermining the legitimate business expectations not only of the parties here, but of all contracting parties. It is the knowledge that valid and enforceable contractual agreements will be enforced in courts of competent jurisdiction which allows our competitive marketplace to thrive."

*Napolitano*, 85 F. Supp. 2d at 499.

The foregoing principles apply just the same in this case, if not more so in light of Defendant's unabashed disregard for her obligations.  Therefore, it is in the public interest for this Court to enforce the valid covenants in Barbounis' Agreements and grant Plaintiff's Motion for A Preliminary Injunction. *See Quaker Chem. Corp.*, 509 F. Supp. 2d at 481 (finding that public interest in enforcing restrictive covenants outweighs the ever-present interest of letting an individual work in a chosen field, especially where the individual violated the agreement).

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for a Preliminary Injunction and enter an order in the form submitted herewith.

**SIDNEY L. GOLD & ASSOCIATES, P.C.**

By:    /s/ Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
Attorney I.D. No.: 21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
Attorney for Plaintiff

Dated:  December 5, 2019

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 5, 2019, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

Seth D. Carson, Esquire
DEREK SMITH LAW GROUP PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
<u>seth@dereksmithlaw.com</u>
Counsel for Defendant Lisa Reynolds-Barbounis

<u>/s/ Sidney L. Gold</u>
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
*Counsel for The Middle East Forum*