## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | NO.    2:19-cv-05697-JS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | MOTION FOR SANCTIONS |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Seth D. Carson, Esquire
DEREK SMITH LAW GROUP, PLLC
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

*Attorney for Defendant*
*Lisa Barbounis*

## TABLE OF CONTENTS

I.      INTRODUCTION....................................................................................3

II.     SUMMARY OF FACTUAL ALLEGATIONS .........................................................3

III.    STANDARD OF REVIEW ...................................................................8

IV.     ARGUMENT ...................................................................................9


A.  Plaintiff's Complaint does not pass the standards promulgated in Twombly and Iqbal…9
B.  Plaintiff has not alleged facts to support Count I of Plaintiff's Complaint……………12
C.  Plaintiff has not alleged facts to support Count II of Plaintiff's Complaint……………14
D.  Plaintiff has not alleged facts to support Count III of Plaintiff's Complaint……………18
E.  Plaintiff has not alleged facts to support Count IV of Plaintiff's Complaint……………20
F.  Plaintiff has not alleged facts to support Count V of Plaintiff's Complaint……………22
G.  Plaintiff has not alleged facts to support Count VI of Plaintiff's Complaint……………23
H.  Plaintiff has not alleged facts to support Count VII of Plaintiff's Complaint…………25
        i.      Gist of the Action Doctrine……………………………………………….……27
I.  Plaintiff has not alleged facts to support Count IX of Plaintiff's Complaint……………29




V.      CONCLUSION  .........................................................................................30

## I.      INTRODUCTION

Defendant, Lisa Barbounis ("Lisa Barbounis" or "Defendant") hereby moves to dismiss all Claims presented in Plaintiff's Civil Action Complaint including Count I through Count IX pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.     SUMMARY OF FACTUAL ALLEGATIONS

Although it numbered incorrectly, Plaintiff, The Middle East Forum's ("MEF" or "Plaintiff") Complaint includes approximately 136 allegations, most of which simply describe Lisa Barbounis's onboarding process in executing documents including the MEF Employee Handbook and Ms. Barbounis's Non-Disclosure and Confidentiality Agreement ("NDA"). Moreover, the MEF Complaint is predicated upon allegations that Ms. Barbounis engaged in unlawful conduct when she allegedly shared five documents with herself over a span of more than two years of employment.  Plaintiff's Complaint is verified and has the force and effect as sworn testimony at trial.  Plaintiff's Civil Action Complaint is legally deficient because Plaintiff has failed to state a claim upon which relief can be granted.  The facts presented fail to support the nine causes of action, as Plaintiff's Complaint is devoid of facts indicating a violation of the NDA.

Plaintiff's Complaint generally alleges that Lisa Barbounis disclosed confidential information in breach of her Confidentiality & Non-Disclosure Agreement, and converted trade secrets and MEF's confidential information by emailing documents and attachments during Lisa Barbounis's employment with MEF.  (Complaint, at ¶¶ 3.).  Plaintiff's Complaint is based entirely on general conclusory allegations, because Ms. Barbounis is accused only of sharing MEF information with herself or another MEF employee. (Complaint, at ¶¶ 3, and 39a – 39e.).

Plaintiff's Complaint is replete with causes of action that have no relation to the facts pled, including (i) breach of the Confidentiality & Non-Disclosure Agreement; (ii) breach of the Bring Your Own Device Agreement;  (iii) violation  of the Computer Fraud  and Abuse Act,  18 U.S.C. § 1030(g); (iv) violation of the Pennsylvania Uniform Trade  Secrets Act, 12 Pa. Cons. Stats. § 5304(a); (v) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(l);  (vi) violation of the Stored Communications Act, 18  U.S.C. § 2701; (vii) conversion of MEF's confidential information; (viii) breach of fiduciary duty; and (ix) a declaratory judgment that requires Ms. Barbounis to provide an inventory of the MEF data she possesses, work with a mutually agreeable vendor to create an inventory of the MEF data she has deleted from her devices and recover such data to the extent possible, inventory all disclosures of MEF data, and prohibits Ms. Barbounis from further destroying or disclosing MEF data. (Complaint, at ¶ 4.).

Lisa Barbounis began her employment for MEF September 25, 2017 as an Executive Liaison. (Complaint, at ¶ 10.).  Lisa Barbounis became the Director of Communications for MEF sometime around January 3, 2019. (Complaint, at ¶ 13.).  Plaintiff's Complaint sets fourth the job description of Lisa Barbounis and describes the MEF Non-Disclosure Agreement and language contained in the MEF Personal Manual related to the Non-Disclosure Agreement. (Complaint, at ¶¶ 18 – 29; see also generally, Compl.

Plaintiff accuses Lisa Barbounis of sharing MEF information with herself and identifies five documents that Ms. Barbounis shared with herself during her more than two years of employment.  Plaintiff is unable to allege facts that even suggest Lisa Barbounis converted, shared, disclosed, revealed, or divulged, trade secrets or confidential information. (Complaint, at ¶¶ 31, 42, and 43.).  Accordingly, Plaintiff's Civil Action Complaint relies entirely upon general accusations supported by Plaintiff's "information and belief." (Complaint, at ¶¶ 31, 42, and 43.).

Plaintiff's Complaint accuses Ms. Barbounis of sharing information with MEF coworkers and fails to include specificity regarding the trade secrets or confidential information that Plaintiff claims Lisa Barbounis shared with "other third parties." (Complaint, at ¶ 31.).

Plaintiff's Civil Action Complaint includes only five allegations spanning Ms. Barbounis's more than two years of employment where Ms. Barbounis allegedly breached her NDA. (Complaint, at ¶ 39a - e.). These five allegations contained in Paragraph 39a - 39e of Plaintiff's Complaint fail to raise a right to relief. After the Complaint was filed, Plaintiff conceded that information contained in Paragraph 39a through 39e of the Complaint is incorrect. Specifically, Plaintiff sent a letter to Defendant dated December 26, 2019, where Plaintiff admitted that Lisa Barbounis worked with an MEF owned laptop and returned this computer to MEF upon discontinuing her employment. A true and accurate copy of Plaintiff's December 26, 2019 letter to Lisa Barbounis is attached and marked Exhibit "A". This is highly relevant as Paragraph 39e of Plaintiff's *Verified Complaint* accuses Ms. Barbounis of backing up a donor list on her personal computer. (Complaint, at ¶ 39e.).

The five allegations which form the basis of Plaintiff's entire case begin with Paragraph 39a, where Lisa Barbounis is accused of emailing herself a General Operating Support Master ("GOM"). (Complaint, at ¶ 39a.). A GOM is a document that Lisa Barbounis worked with regularly during her employment with MEF. As Director of Communications, Ms. Barbounis contributed to authoring GOMs. Lisa Barbounis is only accused with sharing this document with herself. Id. see also generally, Compl. Sharing this document with herself in no way supports the nine causes of action in the MEF Complaint. Plaintiff's Complaint fails to provide any specificity describing how sharing this document with herself violated the NDA. Id. see also generally, Compl.

Paragraph 39b of Plaintiff's Complaint accuses Ms. Barbounis of sharing another document with herself in September 2018. (Complaint, at ¶ 39b.).   Ms. Barbounis is accused of emailing herself a "sensitive MEF document on countering violent extremism." Id.  During her employment, Lisa Barbounis worked with research papers like those referenced in Paragraph 39b of Plaintiff's Complaint.  Lisa Barbounis is accused only of emailing herself of paper during her employment for MEF. Id.  Ms. Barbounis shared this document with herself about fifteen months before Plaintiff's Complaint was filed. Id.  Plaintiff fails to describe how sharing a research paper with herself violated her NDA. Id. see also generally, Compl.  Plaintiff relies entirely upon generalized allegations predicated on so called "information and belief." Id. see also (Complaint, at ¶¶ 31, 42 and 43).  The same is true for all five allegations upon which Plaintiff's Complaint is based. (Complaint, at ¶¶ 31, 39a – e, 42 and 43).

Paragraph 39c of Plaintiff's Complaint accuses Lisa Barbounis of sharing another document with herself in September 2018 – about fifteen month before the Complaint was filed. This time Ms. Barbounis is accused of sharing with herself, an MEF paper on United Nations Relief. (Complaint, at ¶ 39c.).  Lisa Barbounis authored this paper and it is Ms. Barbounis's intellectual property.  Plaintiff's own Complaint confirms that intellectual property is not subject to the NDA.  See Paragraph 23-c of Plaintiff's Complaint. ("Confidential Information under this subsection [(c)] shall not include intellectual  property of EMPLOYEE, unless such intellectual property contains any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation."). (Complaint, at ¶ 23c.).  Notwithstanding, Plaintiff's Complaint is devoid of specificity describing how sharing this paper with herself amounts to a breach of the NDA. Id. see also generally, Compl.  Ms. Barbounis is not accused of sharing this

document with any third parties. Id.  Moreover and importantly, this document was written for and submitted to the United States State Department and is subject to a Freedom of Information Act request.  Accordingly, this paragraph as much as any indicates Plaintiff's bad faith in filing the instant Verified Complaint.  It is not Plaintiff's property and cannot be labeled as confidential or proprietary information.

Paragraph 39d of Plaintiff's Complaint accuses Lisa Barbounis of accessing MEF's "proprietary communications resources" (Complaint, at ¶ 39d.).  The proprietary communications resources referenced in Paragraph 39d of Plaintiff's Complaint is MEF's Meltwater Account.  Meltwater is an online subscription service that any company can license. Meltwater provides multi-media tools.  For example, if a company wanted to contact Brad Pitt's press agent, Meltwater will delivery that information.  As the Director of Communications, Lisa Barbounis was the primary MEF employee who worked with MEF's Meltwater subscription.  A significant part of her job was traveling to Washington D.C. and New York City and meeting press agents.  Lisa Barbounis obtained press agents' contact information and shared this information with herself for access in the field.  Notwithstanding, Plaintiff's Complaint is devoid of specificity describing how sharing this information with herself amounts to a breach of MEF's NDA. see generally, Compl.  Plaintiff has not alleged that Ms. Barbounis shared this information with any third parties. see generally, Compl.

The final allegation upon which Plaintiff's Complaint is based relates to MEF's donor list, which Lisa Barbounis worked with during her employment for Defendants. (Complaint, at ¶ 39e.).  Lisa Barbounis is accused of downloading an MEF Master Donor list on her "personal computer." Id.  In a letter dated December 26, 2019, Plaintiff has conceded that Lisa Barbounis did not download the Donor List on her personal computer, because Lisa Barbounis did not work

7

with her a personal computer during her employment for MEF. <u>A true and accurate copy of</u> <u>Plaintiff's December 26, 2019 letter to Lisa Barbounis is attached and marked Exhibit "A"</u>. Thus MEF's Verified Complaint presents false and misleading information. <u>Id.</u> <u>see</u> <u>also</u> Complaint, at ¶ 39e.  MEF purchased and provided Lisa Barbounis with a computer. <u>Exhibit A</u>. Lisa Barbounis left the computer with MEF when her employment ended. <u>Id.</u>  Accordingly, Plaintiff Complaint accuses Ms. Barbounis of downloading information onto an MEF computer which Ms. Barbounis no longer has access to. (Complaint, at ¶ 39e.) <u>and</u> <u>see</u> Exhibit A. Notwithstanding, Plaintiff's Complaint is devoid of specificity that describes how saving company information on a company computer amounts to a breach of the NDA. <u>see</u> <u>generally</u>, Compl.  Plaintiff has not alleged that Plaintiff shared this information with any third parties. <u>see</u> <u>generally</u>, Compl.

The five allegations presented in Paragraph 39a through 39e of Plaintiff's Complaint accuse Lisa Barbounis of accessing, utilizing, and working with company information over a two year period during her employment for MEF (Complaint, at ¶ 39).  These allegations fail to state a claim upon which relief can be granted.

In an attempt to salvage an otherwise deficient Complaint, Plaintiff includes Paragraphs 31, 42 and 43.  As these paragraphs are based upon Plaintiff's "information and belief," they are legally insufficient and cannot be afforded merit. (Complaint, at ¶¶ 31, 42 - 43).

Plaintiff's Complaint substantively ends at Paragraph 43.  Paragraphs 44 through 65 do not support any of the causes of action upon which Plaintiff's Complaint is based.

### III.    STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted.  A plaintiff must plead "enough facts to state a claim for

relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007);

see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff must plead "more than labels

and conclusions, and a formulaic recitation of the elements of the cause of action will not do."

Twombly, 550 U.S. at 555.  Conclusory allegations are "not entitled to be assumed true." Iqbal,

556 U.S. at 681 (citing Twombly, 550 U.S. at 554-55).  Moreover, the factual allegations in a

plaintiff's complaint must be enough to "raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555.  Thus, allegations based upon a plaintiff's "information and belief"

are insufficient because they are based on mere speculation. See, e.g., Advanced Oral Techs.,

LLC v. Nutrex Research, Inc., No. 10-5303, 2011 WL 1080204, at *4 n. 6 (D.N.J. Mar. 21,

2011) ("Allegations made upon information and belief—which are little more than conjecture

and wishful thinking—have little hope of salvaging an otherwise defective complaint.").

The Third Circuit uses a three-step process for determining the sufficiency of a complaint.  First,

this Court should "'tak[e] note of the elements a plaintiff must plead to state a claim.'" Malleus

v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675).  Second, this Court

"should identify those allegations that 'because they are no more than conclusions, are not

entitled to the assumption of truth.'" Id. (quoting Iqbal, 556 U.S. at 679).  Third, "'w[hen] there

are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement for relief.'" Id

## IV.   ARGUMENT

### A.   Plaintiff's Complaint does not pass the standards promulgated in Twombly and Iqbal.

The three part process for determining the sufficiency of a Complaint requires the Court

to first identify the elements a Plaintiff must plead to state a claim upon which relief can be

granted. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675).

Plaintiff's Complaint is predicated upon an alleged breach of a Non-Disclosure and Confidentiality Agreement.  Plaintiff's Complaint fails to describe in any manner the nature of the supposed breach.  When all allegations based on Plaintiff's information and belief are disregarded, Ms. Barbounis only of sharing information with herself.  Accordingly, Plaintiff's Complaint does not state how Lisa Barbounis violated the NDA.  Without "information and belief," Plaintiff's Complaint fails to include the name of a single party with whom Lisa Barbounis shared any confidential information.

Plaintiff includes only four paragraphs that even attempt to accuse Defendant, Lisa Barbounis of sharing Confidential Information or Information that was subject to the MEF Non-Disclosure Agreement.  They are Paragraph 3, Paragraph 31, Paragraph 42, and Paragraph 43 of Plaintiff's Complaint.  Plaintiff will address each in turn.

Paragraph 3 of Plaintiff's Complaint is a legal conclusion couched as a factual allegation. Plaintiff alleges that sending emails to herself constitutes a breach of the NDA and constitutes conversation of trade secrets.  Twombly notes that a Plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. This Honorable Court need not accept Plaintiff's legal conclusions and is not bound "to accept as true a legal conclusion couched as a factual allegation."  Customers Bank, 942 F.Supp.2d at 539. Moreover, Paragraph 3 sets forth the generalized allegation which is explained more thoroughly in Paragraph 39a through 39e.  When Plaintiff attempts to provide specific examples, every example provided describes only Ms. Barbounis's sharing of information with herself. Importantly, Plaintiff has not described any actions that Ms. Barbounis undertook since her employment for MEF ended.  All of Ms. Barbounis alleged violations occurred between September 2018 through May 2019, months before Ms. Barbounis's employment ended.

10

Accusing Ms. Barbounis of accessing and utilizing MEF information during her employment amounts to a job description. Plaintiff is unable to accuse Ms. Barbounis of any unlawful acts that occurred after her employment ended. Plaintiff is unable to accuse Ms. Barbounis of any unlawful act indicating the sharing of MEF information with anyone other than Ms. Barbounis or another MEF employee. Plaintiff attempts to hide this deficiency in its pleading by using "and" "or" language.

Paragraphs 31, 42 and 43 of Plaintiff's Complaint are based entirely on "information and belief." However, "[T]he factual allegations in a plaintiff's complaint must be enough to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Thus, allegations based upon a plaintiff's "information and belief" are insufficient because they are based on mere speculation. See, e.g., Advanced Oral Techs., LLC v. Nutrex Research, Inc., No. 10-5303, 2011 WL 1080204, at *4 n. 6 (D.N.J. Mar. 21, 2011) ("Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little hope of salvaging an otherwise defective complaint.").

The second step for determining the sufficiency of a complaint requires the Court to identify those allegations that are not entitled to the assumption of truth. See Iqbal, 556 U.S. at 679 ("Second, this Court "should identify those allegations that 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 556 U.S. at 679).

When the allegations presented in Paragraphs 3, 31, 42, and 43 of Plaintiff's Complaint are removed, Plaintiff's Complaint fails entirely. Plaintiff's Complaint becomes nothing but a description of the onboarding process and a description of Ms. Barbounis doing her job during a timeframe when she held the position of Director of Communications.

### B.  Plaintiff has not alleged facts to support Count I of Plaintiff's Complaint.

Plaintiff's Complaint alleges that Defendant, Lisa Barbounis violated the Confidentiality and Non-Disclosure Agreement, however, Plaintiff is unable to provide any facts to support this cause of action.  MEF's Complaint relies on "information and belief" and fails to provide the required specificity to state a claim upon which relief can be granted.  Plaintiff does not explain what information was disclosed.  Plaintiff does not even allege that information was disclosed. Plaintiff merely pleads that it thinks information may have been disclosed to support "political activities" of another individual.  Plaintiff fails to provide a timeframe for any of these alleged unlawful acts and all of these alleged acts are supported only by "information and belief."

### C.  Plaintiff has not alleged facts to support Count II of Plaintiff's Complaint.

Plaintiff's Complaint alleges that Plaintiff violated a "Bring Your Own Devise Agreement" which was an agreement that Lisa Barbounis purportedly executed sometime around January 9, 2019.  Plaintiff has alleged no facts that would even come close to implicating the Bring Your Own Device Agreement.  Plaintiff's Complaint is based on allegations that Plaintiff shared information with herself by email and download onto a computer described by Plaintiff as a "personal computer" in its Verified Complaint, that Plaintiff now concedes was a company computer which was returned to MEF when Ms. Barbounis's employment ended. Exhibit A. Notwithstanding, the cause of action in Count II is based upon an identified "Bring Your Own Device Agreement."

This agreement was executed when Plaintiff purchased a computer for Defendant, Lisa Barbounis to use during her employment.  Language contained in the Bring Your Own Device agreement restricted Ms. Barbounis's use of her company computer.  Ms. Barbounis agreed that

she would not allow any third parties to view her web browser or use her device.  This is the
"Privacy" provision which states:

> "I promise that no person other than myself will see or have access to MEF data
> (email, documents, spreadsheets, contacts, calendars, chats, Salesforce, or other
> MEF proprietary information) that is **being accessed via my web browser**.  If I do
> download, install, or save any MEF data onto my device, for any reason, I will
> ensure that no person other than myself will see or have access to it." (Complaint,
> at Exhibit D.).

The Bring Your Own Device agreement specifically and expressly relates to the

physical device that MEF purchased for Lisa Barbounis's use.  This privacy clause

expressly relates to the physical piece of equipment.  Ms. Barbounis purportedly agreed

not to allow third parties access to MEF confidential information via the computer's web

browser.  There are only two ways to access a computer's web browser: through physical

in person access or by remote access.  There are no allegations in Plaintiff's Complaint that

indicate Ms. Barbounis allowed physical access or remote access to her company

computer.

In fact, Plaintiff's Complaint contains no allegations that Lisa Barbounis

compromised the physical device in any way, or breached the Bring Your Own Device

agreement.  A review of Plaintiff's Complaint reveals no facts implicating the Bring Your

Own Device Agreement other than a general description. (Complaint, at ¶¶ 32 - 36.).

The allegations presented in Plaintiff's Complaint accuse Ms. Barbounis of sharing

information with herself by email and download during a period of time when Ms.

Barbounis was employed by MEF.  Plaintiff then claims upon information and belief that

Ms. Barbounis may have shared information with third parties after her employment ended.

As there are no allegations that Ms. Barbounis compromise the physical device or allowed

any third party access to the physical device, this cause of action if legally deficient.  Thus

Count II of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

### D.  <u>Plaintiff has not alleged facts to support Count III of Plaintiff's Complaint.</u>

Count III of Plaintiff's Complaint claims that Lisa Barbounis violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1080(g) (sic).  Plaintiff's claims in Count III under the Computer Fraud and Abuse Act ("CFAA") are legally insufficient at every level.

The CFAA is generally an anti-hacker statute that prohibits unauthorized access or the exceeding of authorized access of computers connected to interstate commerce and subjects such violators to criminal and/or civil liability. <u>See</u> <u>Dresser-Rand Co. v. Jones</u>, F.Supp.2d, 2013 WL 3810859, at *3 (E.D.Pa. July 23, 2013) ("<u>Dresser-Rand</u>"); <u>Shamrock Foods Co. v. Gast</u>, 535 F.Supp.2d 962, 965 (D.Ariz. 2008) ("[t]he general purpose of the CFAA was to create a cause of action against computer hackers (e.g., electronic trespassers)").

The scope of the CFAA has been expanded in recent years and "[e]mployers . . . are increasingly taking advantage of the CFAA's civil remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system." <u>P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC</u>, 428 F.3d 504, 510 (3d Cir. 2005) (citations omitted).

Plaintiff's allegations under the Computer Fraud and Abuse Act seem to be predicated upon § 1030(e)(2), § 1030(a)(2)(C), and § 1030(a)(5)(C).

Subsection (e)(2) simply defines the term "protected computer," and states:

> "[T]he term "protected computer" means a computer (A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or (B) which is used in or affecting interstate or foreign commerce or communication, including

a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. § 1030(e)(2).

Plaintiff's attempt to classify its email accounts as a "protected computer" under the statute fails as MEF's email accounts do not satisfy any part of the definition. MEF email accounts do not satisfy Subsection (e)(2)(A) as they are not exclusively for the use of a financial institution of the United States Government and are not used by or related to either a financial institution of the United States Government. MEF emails accounts also do not satisfy Subsection (e)(2)(B). MEF does not undertake to effect interstate commerce. By its own definition MEF is "a think tank that promotes American interests in the Middle East and works to protect Western values from Middle Eastern threats through academic research, media engagement, as well as government and general public outreach." (Complaint, at ¶ 9). MEF email accounts to not effect foreign commerce or communication as required by the definition.

Subsection 1030(a)(2) of the Computer Fraud and Abuse Act prohibits (1) intentionally accessing a computer (2) without authorization or exceeding authorized access and (3) thereby obtaining information (4) from any protected computer (if the conduct involved an interstate or foreign communication) where (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

Plaintiff's complaint should be dismissed for failure to allege damage or loss under the CFAA. Although the CFAA imposes criminal penalties, it provides for civil penalties in limited situations in which a person "suffers damage or loss by reason of a violation of" the CFAA. 18 U.S.C. § 1030(g).

Section 1030(g) of the CFAA authorizes a private cause of action for any person "who suffers damage or loss by reason of a violation" but "only if the conduct involves [one] of the

factors set forth in" subsection 1030(c)(4)(A)(i). 18 U.S.C. § 1030(g) (emphasis added).
Because Section 1030(g) is disjunctive, a plaintiff meets its burden by showing either loss or
damage.  Plaintiff, MEF has failed to sufficiently plead such loss or damage as Defendant, Lisa
Barbounis has only been accused of sharing information with herself during her employment for
MEF.

Additionally, "district court decisions in the [Court of Appeals for the] Third Circuit have
held that to fall within this definition of 'loss,' the 'alleged "loss" must be related to the
impairment or damage to a computer or computer system.'" Brooks v. AM Resorts, LLC, 954
F.Supp.2d 331, 338 (E.D.Pa. 2013) (quoting Sealord Holdings, Inc. v. Radler, 2012 WL 707075,
at *4 (E.D.Pa. Mar. 6, 2012) (additional citations omitted)).  Therefore, loss under the CFAA is
compensable if "the cost of remedial measures taken to investigate or repair the damage to the
computer, or loss is the amount of lost revenue resulting from a plaintiff's inability to utilize the
computer while it was inoperable because of a defendant's misfeasance." Clinton Plumbing &
Heating of Trenton, Inc. v. Ciaccio, 2011 WL 6088611, at *5 (E.D.Pa. Dec. 7, 2011) (emphasis
added).

Plaintiff, MEF cannot plead that any of Lisa Barbounis's actions caused such loss or
damage as all alleged unlawful acts occurred between September 2018 and May 2019, months
before Ms. Barbounis ended her employment.  At no time did Plaintiff suffer an inability to
utilize the computer while it was inoperable because of any alleged malfeasance and MEF has
not even attempted to present such a claim.  Moreover, Plaintiff, MEF does not and cannot allege
that Defendant deleted any data or otherwise caused harm to the computer system, nor does it
assert that her conduct rendered the system inoperable.  MEF has not adequately pled that it
incurred a loss under the CFAA due to Defendant's actions.

Plaintiff has also failed to present facts indicating that Lisa Barbounis either obtained access to a computer without authorization or exceeded her authorized access when she shared information with herself while employed by MEF, or downloaded information on a company laptop.  It is clear from Plaintiff's Complaint that Ms. Barbounis was an employee of MEF when all of the alleged unlawful conduct occurred.  Ms. Barbounis was the Director of Communications and accessed the MEF email server through an email account that Ms. Barbounis was provided as an employee.  MEF's Complaint claims that Ms. Barbounis exceeded her authorization when she shared information with herself using a personal email address, however, this allegation is legally insufficient to support a cause of action under the CFAA.

Under the narrow view, an employee given access to a work computer is authorized to access that computer regardless of his or her intent to misuse information and any policies that regulate the use of information. See WEC Carolina Energy Solutions LLC v. Miller, 687 F.3d 199 (4th Cir. 2012); U.S. v. Nosal, 676 F.3d 854 (9th Cir. 2012) (en banc); LVRC Holdings, LLC v. Brekka, 581 F.3d 1127 (9th Cir. 2009).

The Eastern District of Pennsylvania has generally adopted the narrow interpretation of the CFAA. See Synthes, Inc. v. Emerge Medical, Inc., 2012 WL 4205476 (E.D.Pa. Sept. 19, 2012); Grant Mfg. & Alloying, Inc. v. McIlvain, 2011WL 4467767 (E.D.Pa. Sept. 23, 2011) aff'd 499 Fed. App'x 157 (3d Cir. 2012); Clinton Plumbing and Heating of Trenton, Inc. v. Ciaccio, 2010 WL 4224473 (E.D.Pa. Oct. 22, 2010); Integrated Waste Solutions, Inc. v. Goverdhanam, 2010 WL 4910176 (E.D.Pa. Nov. 30, 2010); Bro-Tech Corp. v. Thermax, Inc., 651 F.Supp.2d 378 (E.D.Pa. 2009); Brett Senior & Assoc., P.C. v. Fitzgerald, 2007 WL 2043377 (E.D.Pa. July 13, 2007).

Plaintiff's Complaint fails to plead that Lisa Barbounis's access to her own email account was unauthorized under the CFAA.   Courts in the Court of Appeals for the Third Circuit when faced with this same issue have held that employees who are authorized to access the data at issue do not exceed their authority if they copy that data for their own benefit.  It is the access to the information, rather than the use of the information, that must be unauthorized in order to constitute a civil violation under the CFAA.  Therefore, Plaintiff has failed to plead facts to support the cause of action under the CFAA.

**E.   Plaintiff has not alleged facts to support Count IV of Plaintiff's Complaint.**

Count IV of Plaintiff's Complaint claims that Lisa Barbounis violated the Pennsylvania Uniform Trade Secrets Act 12 Pa. Cons. Stat. § 5304(a).

Plaintiff has failed to plead sufficient facts to identify the trade secrets in Lisa Barbounis's possession and to show that Ms. Barbounis has or likely will disclose those trade secrets.

Pennsylvania has adopted the Uniform Trade Secrets Act (UTSA) where a "trade secret" is defined to include: Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. 12 Pa. Cons. Stat. Ann. § 5302.

"Misappropriation" is defined to include: disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or

had reason to know that his knowledge of the trade secret was . . . acquired under circumstances

giving rise to a duty to maintain its secrecy or limit its use. 12 Pa. Cons. Stat. Ann. § 5302.

In assessing whether particular information is a protected trade secret, Pennsylvania

courts consider six factors:

> (1) the extent to which the information is known outside of the company's
> business; (2) the extent to which the information is known by employees and
> others involved in the company's business; (3) the extent of the measures taken
> by the company to guard the secrecy of the information; (4) the value of the
> information to the company and its competitors; (5) the amount of effort or
> money the company spent in developing the information; and (6) the ease or
> difficulty with which the information could be acquired or duplicated
> legitimately by others. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102,
> 109 (3d Cir. 2010).

"[T]rade secrets need not be technical in nature to be protected fully by Pennsylvania

law." Id. at 112 (internal quotation marks omitted).

Considering the legal elements required to support a cause of action under Pennsylvania

law for misappropriation of trade secrets, Plaintiff's Complaint fails to state a claim upon which

relief can be granted.  Plaintiff's Complaint merely sets fourth general allegations that Ms.

Barbounis stole confidential information, however Plaintiff's Complaint describes the so called

confidential information in Paragraph 39a through 39e.  Plaintiff's Complaint sets forth the time

period when Plaintiff was employed by MEF from September 25, 2017 until August 7, 2019.

(Complaint, at ¶¶ 10 and 52.).  The five allegations of Ms. Barbounis's unlawful conduct all

occurred during the time period when Ms. Barbounis was an  employee of MEF and held the

position of Executive Liaison and Director of Communications. (Complaint, at ¶ 39a – 39e.).

The allegation that Ms. Barbounis shared information with herself during her employment  for

MEF or downloaded information onto an MEF company computer is legal insufficient and does

not satisfy the elements of Pennsylvania's UTSA.  Accordingly Count IV of Plaintiff's

Complaint must be dismissed.

**F.**   **Plaintiff has not alleged facts to support Count V of Plaintiff's Complaint.**

Count V of Plaintiff's Complaint claims that Lisa Barbounis violated the Defend Trade

Secrets Act 18 U.S.C. § 1836(b)(1) ("DTSA").

The DTSA was enacted by Congress in May 2016 to provide a federal statutory claim for

misappropriation of trade secrets. 18 U.S.C. §§ 1831, et seq.

In order to pursue a claim under the DTSA for misappropriation of a trade secret, the

trade secret must be "related to a product or service used in, or intended for use in, interstate or

foreign commerce." 18 U.S.C. §§ 1836(b)(1).

Plaintiff's claims under the DTSA are insufficient as Plaintiff has failed to allege a nexus

between the supposed trade secrets that Plaintiff claims were misappropriated and interstate

commerce.  Plaintiff relies entirely on general a formulaic recitation of the elements of a cause of

action and fails to provide any specificity regarding the relationship between the trade secrets

and interstate commerce. See Government Employees Ins. Co. v. Nealey, No. 17-807, 262 F.

Supp. 3d 153 (E.D. Pa. June 13, 2017), (the Court dismissed a DTSA claim because the plaintiff

failed to allege a nexus between the trade secrets that were the subject of its claim and interstate

commerce).  See also Hydrogen Master Rights, Ltd. v. Weston, 228 F. Supp. 3d 320 (D. Del.

2017), (the court dismissed a DTSA claim without prejudice where the plaintiff failed to allege a

nexus between the alleged trade secret and interstate commerce).

The most basic element of a claim under DTSA is a showing that the allegedly

misappropriated information qualifies as a "trade secret."  The DTSA and PUTSA define trade

secrets in a different manner, although the statutes protect the same information.  That is,

information that: (i) the owner has taken reasonable means to keep secret; (ii) derives

independent economic value, actual or potential, from being kept secret; (iii) is not readily

ascertainable by proper means; and (iv) cannot be readily accessed by others and would obtain

economic value from its disclosure or use. Pharmerica Corp., Sturgeon, No. 2:16cv1481, 2018

U.S. Dist. LEXIS 43236, at *10-11 (W.D. Pa. Mar. 16, 2018); accord,123 Exteriors, 2018 U.S.

Dist. LEXIS 128748 at *22.

      Ways that a misappropriation can be established under the DTSA, include (i) the

acquisition of a trade secret of another by a person who knows or has reason to know that the

trade secret was acquired by improper means, and (ii) when one discloses or uses another's trade

secret without the consent of the trade secret owner. Brand Energy, 2017 U.S. Dist. LEXIS

43497 at 8-9, citing18 U.S.C. § 1839(5)(A), (B).

      Plaintiff's cause of action under Count V of Plaintiff's Complaint fails for the same

reasons as Count IV.  Plaintiff has not alleged facts that satisfy the definition of

"misappropriation."  Plaintiff's Complaint accuses Ms. Barbounis only of sharing information

with herself or downloading information onto a company computer.  The act of viewing or

accessing information that one has authority to view and access, during their employment for an

organization does not constitute a violation of the DTSA.  Plaintiff's Complaint is devoid of facts

to indicate that Ms. Barbounis ever undertook an unlawful act.  Plaintiff attempts to salvage

these deficiencies by using "information and belief" and relying on mere labels and conclusory

allegations.  When these deficient paragraphs are removed from Plaintiff's Complaint, we are

left with a description of Lisa Barbounis viewing and accessing information she was required to

work with during a period of time when she was employed by MEF.  Accordingly, Plaintiff's

fifth cause of action must be dismissed for failure to state a claim upon which relief can be granted.

### G. __Plaintiff has not alleged facts to support Count VI of Plaintiff's Complaint.__

Count VI of Plaintiff's Complaint claims that Lisa Barbounis violated the Stored Communications Act, 18 U.S.C § 2701.

The general purpose of the Stored Communications Act was to "create a cause of action against 'computer hackers (e.g. electronic trespassers).'" International Ass'n of Machinists and Aerospace Workers v. Werner-Masuda, 390 F. Supp.2d 479, 495 (D. Md. 2005) (quoting Sherman & Co. V. Salton Maxim Housewares, Inc., 94 F. Supp.2d 817, 820 (E.D. Mich. 2000)).

The federal Stored Communications Act, 18 U.S.C. § 2701, et seq., is a criminal statute that makes it an offense to "intentionally access without authorization a facility through which an electronic communication service is provided and thereby obtain . . . access to an . . . electronic communication while it is in electronic storage  . . . ."  It also creates a civil cause of action for such offenses, however, Plaintiff's Complaint fails to state a claim pursuant to the Stored Communications Act ("SCA") as Ms. Barbounis is only accused of accessing her company email during a period of time when she was employed by MEF.

Plaintiff's Complaint does not deny that Ms. Barbounis was an employee of MEF during the relevant period and that as Director of Communications she "had access to highly confidential information." (Complaint, at ¶ 2).   Plaintiff claims that Ms. Barbounis exceeded her authority when used her company email account five times over approximately two year to share information with herself through email and download, however, this does not give rise to a claim under the SCA.

Using a company email to send documents to a personal email account by no means constitutes a violation of the SCA.  Plaintiff provides five examples of unlawful conduct that Plaintiff claims to have learned during an "internal Investigation" after Ms. Barbounis's employment ended (Complaint, at ¶ 39).  All five allegations occurred during the time period when Ms. Barbounis was employed by MEF and was authorized to access her email account. The SCA does not provide a cause of action when an employee is given access to a work computer, is authorized to access that computer, and misuses information or violates company policy.  Nor does the SCA provide a cause of action for when an employee who is authorized to access certain data., exceeds their authority or copy that data for their own benefit.

The Stores Communications Act 18 U.S. Code § 2701(a) provides:

"Offense.—Except as provided in subsection (c) of this section whoever— (1)intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section. 18 U.S. Code § 2701(a).

### H. **Plaintiff has not alleged facts to support Count VII of Plaintiff's Complaint.**

Count VII of Plaintiff's Complaint claims that Lisa Barbounis converted MEF Confidential information is predicated upon Pennsylvania law governing conversation.

Conversion, under Pennsylvania law, is defined as "the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification." Chrysler Credit Corp. v. B.J.M., Jr., Inc., 834 F. Supp. 813, 844 (E.D Pa. 1993); see also Stillwagon v. Innsbrook Golf & Marina, LLC, No. 11-cv-1338, 2013 WL 1180312, at

*12 (W.D. Pa. Mar. 20, 2013) ("Under Pennsylvania law, the required elements of a conversion claim are: [(1)] the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, [(2)] without the owner's consent, and [(3)] without lawful justification.").

"While specific intent is not required, an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights is necessary to establish the tort." Chrysler Credit, 834 F. Supp. at 844.  Conversion can therefore result only from an act intended to affect the chattel. See id. (citing Project Development Group v. O.H. Materials Corp., 766 F. Supp. 1348, 1355 (W.D. Pa. 1991); Shonberger v. Oswell, 365 Pa. Super. 481, 530 A.2d 112, 114 (1987)). A plaintiff may bring a conversion claim "if he or she had either actual or constructive possession or an immediate right to possession of the chattel at the time of the conversion." Id. (citing Eisenhauer v. Clock Towers Associates, 399 Pa. Super. 238, 582 A.2d 33, 36 (1990)).

Plaintiff's Complaint alleges that Lisa Barbounis converted MEF property when she shared it with herself during her employment. Conversation cannot stand when the intent requirement is not satisfied. Ms. Barbounis shared MEF information with herself was authorized to do so. (Complaint, at ¶ 3).  Authorization cannot be withdrawn eight (8) to fifteen (15) months after the purported conversion in an attempt to sustain a civil action Complaint. Accordingly, Ms. Barbounis did not convert MEF property at the time she shared it with herself.

Plaintiff's Complaint fails to explain when the alleged conversation took place.  As Plaintiff is unable to plead any facts indicating Ms. Barbounis undertook to unlawfully act or acted in any way against MEF interests after her employment for MEF ended, Plaintiff's Complaint is deficient.  Learning that Lisa Barbounis shared information she was required to work with during her employment does not satisfy the elements of conversion as Plaintiff is unable to sufficiently

plead the intent requirement.  At no time did Ms. Barbounis intend to exercise dominion or control over MEF property.  To the contrary, Ms. Barbounis acted in a manner that was consistent with her job requirements.  Moreover, MEF has failed to satisfy that last element of conversion, that Ms. Barbounis acted without lawful justification.

At no time did Ms. Barbounis interfere with the property rights of MEF.  Ms. Barbounis was employed by MEF for over two years, during which Ms. Barbounis's job required travel and work in the field.  As Director of Communications, Ms. Barbounis managed public relations and fund-raising campaigns, communicating with media representatives, and authoring papers.  During her two years of employment, Ms. Barbounis sent four (4) emails to her personal email account and downloaded a donor list on a company computer that was returned to MEF.  Exhibit A.  Lisa Barbounis's actions were undertaken on behalf of MEF and were intended to further MEF interests and objectives.  All allegations contained in Plaintiff's Complaint that Ms. Barbounis shared MEF information are based upon speculation and fail the specificity requirements promulgated by Iqbal and Twombly.

When all general conclusory allegations are stricken, Plaintiff is left with a deficient Complaint that fails to satisfy the elements of conversion, as all acts undertaken by Lisa Barbounis were in the course and scope of her employment and do not indicate intent to interfere with Plaintiff's property rights.

### I.   **Plaintiff has not alleged facts to support Count VIII of Plaintiff's Complaint.**

Count VIII of Plaintiff's Complaint claims that Lisa Barbounis breached a fiduciary duty. Plaintiff's claim under the eighth cause of action fails as Lisa Barbounis never owed Plaintiff a fiduciary duty of care and any allegations that she breached such a duty are legally insufficient.

A fiduciary relationship arises under Pennsylvania law where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." Becker v. Chicago Title Ins. Co., No. 03-2292, 2004 U.S. Dist. LEXIS 1988 at 23, 2004 WL 228672 (E.D. Pa. 2004) (quoting PennDOT v. E-Z Parks Inc., 620 A.2d 712, 717 (Pa. Commw. Ct. 1993)).  By virtue of the respective strength and weakness of the parties in such a relationship, one has the power to take advantage of or exercise undue influence over the other. Etoll, Inc. v. Elias/Savion Adver., 811 A.2d 10, 22 (Pa. Super. Ct. 2002) (quoting Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc., 28 F. Supp. 2d 947, 952-53 (E.D. Pa. 1998)).

Under Pennsylvania law, attorneys owe a fiduciary duty to their clients, as do majority shareholders to minority shareholders and joint venturers to their associates. Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1283 (Pa. 1990); Ferber v. Am. Lamp Corp., 469 A.2d 1046, 1050 (Pa. 1983); Snellbaker v. Herrmann, 462 A.2d 713, 718 (Pa. Super. Ct. 1983).

A fiduciary duty is the highest standard of any duty implied by law, and will not be automatically inferred from the existence of an arm's-length business contract. Etoll, Inc., 811 A.2d at 22-23 (quoting Valley Forge Convention & Visitors Bureau, 28 F. Supp. 2d at 952-53); Zaborowski v. Hospitality Care Ctr. of Hermitage, Inc., 60 Pa. D. & C.4th 474, 488 (Pa. Com. Pl. 2002).  This Court has held that there is a "crucial distinction" between surrendering control of one's affairs to a fiduciary in a position to exercise undue influence and entering into an arm's-length commercial agreement, however important its performance may be. Valley Forge Convention & Visitors Bureau, 28 F. Supp. 2d at 952-53.  The Pennsylvania Superior Court

26

Inc., 49 F. Supp. 2d 430, 432 (E.D. Pa. 1999).  The Gist of the Action Doctrine operates to bar

all tort claims brought by Plaintiff including Count VII and Count VIII.

      To determine where the gist of the action lies, a court must ascertain whether the parties'

obligations have been defined by mutual consensus, or rather by larger social policies embodied

in the law of torts, with the contract being merely collateral or incidental. See Quorum Health

Res., Inc., 49 F. Supp. 2d at 432; Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d

79, 103-04 (3rd Cir. 2001) (quoting Redevelopment Auth. Of Cambria County v. Int'l Ins. Co.,

685 A.2d 581, 590 (Pa. Super. Ct. 1996)).

      A tort claim is barred by the gist of the action doctrine if it arises solely from a contract

between the parties, if the duties allegedly breached were grounded in the contract itself, or if the

claim's success is wholly dependent on the terms of a contract. Williams v. Hilton Group, PLC,

261 F. Supp. 2d 324, 327-28 (E.D. Pa. 2003) (citing Etoll, Inc., 811A.2d at 19); see also Factory

Mkt. v. Schuller Int'l., 987 F. Supp. 387, 394-95 (E.D. Pa. 1997) (holding that the gist of the

action doctrine barred fraud and negligence claims brought against a roofing contractor for

failing to properly seal a roof, because his obligation to do so was imposed by the terms of the

contract, and plaintiff would have had no cause of action had there been no contract).

      Typically, a breach of fiduciary duty claim will survive the gist of the action doctrine

only where the fiduciary relationship in question is well-established and clearly defined by

Pennsylvania law or policy.  For example, the social policy which defines relationships among

majority and minority shareholders. See, e.g., Bohler-Uddeholm Am., Inc., 247 F.3d at 104-05.

      The relationship at issue in the instant action is between a non-profit organization and a

former employee.  This is not among those relationships generally identified by Pennsylvania

policy as fiduciary in nature.  The obligations owed by a w2 Director of Communications are

defined by the terms of the employer-employee contract, rather than by grander social policies embodied in the law of torts.  Furthermore, the success of Plaintiffs' fiduciary duty claim is wholly dependent on the existence of purported contracts (Exhibit A, B, C, and D of Plaintiff's Complaint).   These purported contracts and the terms therein are the basis for Plaintiff's Complaint.  Indeed, Count I and Count II of Plaintiff's Complaint alleged breach of these contracts.

Similar to the failed roofing installation at issue in Factory Mkt. v. Schuller Int'l, 987 F. Supp. 387, 394-95 (E.D. Pa. 1997), the failures cited by Plaintiff, MEF as evidence of Lisa Barbounis's fiduciary breach also form the basis of Plaintiffs' breach of contract claim.  As Lisa Barbounis's fiduciary duty claim arises directly from a failure to satisfy contractual obligations, the "gist of the action" plainly sounds in contract law, rather than tort.

As such, Count VII and Count VII fail to state a claim upon which relief can be granted, and must be dismissed.

### J.   Plaintiff has not alleged facts to support Count 1 of Plaintiff's Complaint.

Count IX of Plaintiff's Complaint requests a Declaratory Judgment in favor of Plaintiff.  As the honorable Court has Ordered a hearing date in relation to this cause of action, Defendant, Lisa Barbounis will respond to the ninth cause of action separately.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss with prejudice all claims presented in Plaintiff's MEF's Civil Action Complaint.  Notwithstanding, Plaintiff's cause of action under Count IX of Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to the arguments presented above.  When all general conclusory allegations are stricken, Plaintiff's Complaint cannot stand.

**DEREK SMITH LAW GROUP, PLLC**

By:  _____

Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED: January 1, 2020

30

# EXHIBIT A

LAW OFFICES OF

# SIDNEY L. GOLD & ASSOCIATES

A PROFESSIONAL CORPORATION

1835 MARKET STREET, SUITE 515
PHILADELPHIA, PA 19103
(215) 569-1999   FAX (215) 569-3870

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

\*    ALSO ADMITTED IN NEW JERSEY
\*\*   ALSO ADMITTED IN NEW YORK
++   ALSO ADMITTED IN DISTRICT OF COLUMBIA

December 26, 2019

**Via E-mail Only:**
seth@dereksmithlaw.com

Seth D. Carson, Esquire
DEREK SMITH LAW GROUP PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103

> RE:   **The Middle East Forum v. Lisa Reynolds-Barbounis**
> **C.A. No.: 19-5697-JS**

Dear Seth:

I hope you had a nice holiday.  I waited to send this response until after the holiday so that you would not claim that my client was somehow acting improperly (as you seem to posture unfairly in every communication).  My client is merely trying to protect its confidential information, as it is entitled to do.

The direction from Judge Sanchez last Friday was clear and explicit.  Your client is to allow a third-party vendor to image all hardware, storage devices, and online information so that we both will have the ability to conduct our due diligence on the MEF confidential information your client possesses, as well as the metadata on access and recovery of deleted files.  As discussed with Judge Sanchez, any confidentiality concerns of your client can be handled with a stipulated protective order governing confidentiality.  To further accommodate you and your client and to demonstrate MEF's reasonableness, we will allow you an extra day until tomorrow to provide your client's devices to the vendor.  MEF is hopeful that your client's production of the expedited discovery will be conducted in a cooperative and productive manner.

1

We have some concerns based on your comments, and this detailed e-mail is designed to provide clarity and avoid confusion. While our expedited discovery is narrowly tailored to 5 interrogatories and 4 document requests, it is not limited to one phone as you suggest. To ensure completeness, it must include her physical and cloud based digital history across multiple platforms she used (see below), as they relate to the information we believe she has in her possession and as that relates to the claims we have made about her time at the MEF.

With regard to your client's devices, we know that your client has hardware beyond a single cell phone used by your client from September, 2017 to the present, including:

**Physical Devices**

You claim that Ms. Barbounis used one device. It appears that your client has not provided you with all of the background facts, including the identification of her various devices. Based on evidence we have to date, Ms. Barbounis has used at least 3 cell phones (at least one iPhone (black cover), another iPhone (white cover), and a third phone (we're not sure of the model), one iWatch, one iPad, one Microsoft Surface, two disc on keys (SanDisk, black with a red fob and another used to access MEF computers), and any other electronic devices/external hard drives she may have used or on which she stored MEF information. If necessary, we will provide the judge with evidence proving she used these devices while at MEF. We also have the Apple computer she returned to MEF, but she wiped its contents, thereby leading to the spoliation of evidence, but we believe she may have a backup with the iCloud account that was associated with the computer; so that backup is also requested and of course all relevant metadata to the devices.

The images of the devices will ensure that both of us can review all documents from these physical devices connected to our litigation, meaning all materials within the full scope of Fed.R.Civ.P. 34, including but not limited to all writings and recordings, notes, diaries, interoffice and intraoffice communications, and metadata, from September 2017 through present that:

- Refer or relate to allegations set forth in the Complaint;
- Refer or relate to individuals your client was in contact with or spoke to or spoke about connected to MEF; and
- Refer or relate to confidential information your client dealt with or was made privy to at MEF.

All productions of electronic documents from hardware should at minimum contain certain basic metadata fields, including:

- File name
- File created and modified dates
- Email sent date
- Custodian
- Author
- Last modified by

- Recipients (including blind copies (bcc))
- Source path
- Subject line

We also expect your client to produce for imaging backup storage devices containing email and other electronic data related to this action from September 2017 to present; copies (i.e., bit-by-bit mirror image copies) of all hard drives on the desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, smart phones, and other electronic media related to this action from September 2017 to present; and copies of all relevant disks, CDs, DVDs and other removable media related to this action from September 2017 to present.

Let's coordinate as soon as possible so that both of us can identify and locate each device that has been, or is currently, in use by defendant (including desktop computers, PDAs, portable, laptop and notebook computers, cell phones, etc.), including but not limited to the following:

1. type, brand and model number;
2. devices that have been re-formatted, had the operating system reinstalled or been overwritten and identify the date of each event;
3. The current location of each device identified in your response to this interrogatory;
4. The brand and version of all software, including operating system, private and custom-developed applications, commercial applications and shareware for each device identified;
5. The communications and connectivity for each device, including but not limited to terminal-to-mainframe emulation, data download and/or upload capability to mainframe, and computer-to-computer connections via network, modem and/or direct connection; and
6. All devices that have been used to store, receive or generate data related to the subject matter of this litigation.

## Email

We also need to identify all email systems used by your client, including but not limited to the following:

1. email software, online systems, and versions presently and previously used by your client and the dates of use;
2. hardware that has been used or is currently in use as a server for the email system including its name;
3. types of hardware that was used as terminals into the email system (including home PCs, laptops, desktops, cell phones, personal digital assistants, etc.) and its current location;

at the MEF.  In general, we will need information for a third party to access any social media websites used by your client for the time period September, 2017 to present; and information to access any email account, messaging service, cloud storage, or web blog or similar/related electronically accessed internet or remote location used for communicating with others or posting communications or pictures, during the time period September, 2017 to present.

Just to affirm again, within the narrow scope of our request, we are seeking **communications and documents related to or containing MEF information and/or with MEF employees, MEF donors, MEF contractors, reporters, and MEF grantees such as:** Text messages, iMessages, Facebook Messenger, Twitter Direct Comms, WhatsApp, Signal, Telegram, and/or Wickr and any other messaging or e-mail platforms from her start of employment September 2017 to present.

To be more specific, we believe your client still has MEF's confidential information on:

1. Her personal **Google Drives**.
2. Her personal **G-Mail addresses** (lisa.e.reynolds@gmail.com AND lisabarbounis/lisa.barbounis@gmail.com) to which she sent herself confidential information from her @MEForum.org e-mail address and which she has other communications with other @MEForum.org email addresses.
3. Her **WhatsApp accounts**.  As you confirmed in your December 19 letter, she used to communicate with members of MEF's staff.
4. Her **Telegram accounts**, which were used to communicate confidential information.
5. **Her Skype account**, Lisa.e.reynolds, which she used to speak with MEF staff.
6. Her **Wickr account**, which she used to receive confidential information.
7. Her **Facebook profiles**, both the profile she uses now, and the Facebook account that was disabled because she violated the social network's policy and procedures.
8. Her **University of Pennsylvania E-mail Account** - lisarey@sas.upenn.edu – which is connected to cloud storage accounts online and which is the registered name for her iCloud account on her iPhone that she used to work on MEF projects.
9. **iCloud accounts** – for access to the cloud storage she used for MEF calendaring, notes, minutes and backing up audio and video recordings of MEF's staff – especially private meetings with MEF director Gregg Roman and president Daniel Pipes.
10. **Instagram:** _lisabeth_ - The posts from Ms. Barbounis' Instagram account, specifically those of her participating in trips to Brussels, London, Amsterdam, Washington DC, and Philadelphia – including the GPS coordinates and meta data from her cell phone each day she put Instagram pictures OR Instagram- related to her delivery of information to third parties and use of multiple devices.
11. Her **TR.news e-mail account** (press@TR.news) she used in a European Union Parliament election campaign and the accounts of Tommy Robinson (her candidate, his e-mail is connected to iCloud tommy2711robinson@icloud.com), Danny Tommo (an MEF grantee, who received thousands of dollars and the assistance of Ms. Barbounis, and his e-mail: danielthomas@tes-uk.co.uk) and Avi Yemeni (who Ms. Barbounis asked the Forum's president to assist with legal action before her departure, his e-mail being avi@trnews.com).  This will demonstrate that she used MEF's confidential information and client lists. **Keywords and communications of interest to us in this narrow**

5

      **aspect of her extracurricular political work**– communications with or about Tommy Robinson, TR Online, TR News, Janice Atkinson, Danny Tommo, Russel Thomas, and Daniel Thomas.

12. Her **Twitter account**, through the use of Twitter direct messages.
13. Her **multiple Dropbox accounts**, which she used to store MEF's confidential information.
14. Her **Lisa.reynolds@mail.house.gov e-mail address** – and its contents related to information she generated while an employee of the MEF and transferred to her new place of work.
15. **All phone records related to Lisa Barbounis' cell phone (GPS, text messages, iMessages, metadata, and phone call records)** numbers (we believe she had at least two numbers, including 215-910-2154).

For each online account maintained by your client, our expedited discovery requests include any and all documents, e-mails, messages, audio recordings, videos, tweets, snapchats, wall posts, messages, digital images, notes, diaries, logs, journals, letters, text messages, instant messages, calendars, social media messages, postings, status updates, writings, drawings, graphs, charts, photographs, and other data or data compilations that are stored in any medium from which information can be obtained or comments and any other digital communications from September 2017 through present that will allow us capture all information and data that:

- Refer or relate to allegations set forth in the complaint;
- Refer or relate to individuals your client spoke to or spoke about connected to MEF; and
- Refer or relate to confidential information your client dealt with or was made privy to at MEF.

These accounts were identified as being connected to these social and digital storage account platforms, and we are only interested in the time period previously mentioned: Facebook (2), iCloud, Google Drive, Box.com, Dropbox, Instagram, Snapchat, Twitter (@LisaElizabeth), researchgate.net, Foursquare, Skype (2 handles), LinkedIn, Myspace, Pinterest, Medium, and Flickr.

Of course, any communications with (sending or receiving) from @MEForum.org e-mail addresses will need to be searched. Also, the personal e-mails and cell phone numbers will need to be checked for every current and former MEF employee to determine what confidential information was exchanged.

We are willing to be reasonable, and under the circumstances the imaging process above is the most efficient way to obtain the information from the time she started working at the MEF through today. We will try to work with you to facilitate discovery on an expedited basis, that both protects your client's privacy and does not compromise our client's rights to be made whole and to recover its confidential information while reserving all rights. All digital information which references the MEF, its information, its current and former employees, its donors, its grantees, its associates, and any of her other MEF connected information thereto must be provided – your client agreed to this when she entered into multiple contractual agreements with the plaintiff. You must be aware of the importance of discovery in resolving these outstanding issues.

We look forward to receiving your discovery materials promptly as contemplated by Judge Sanchez, starting with the imaged files from the discovery vendor. If all devices are delivered to Cornerstone Discovery tomorrow morning, we can both have the imaged materials by the end of the day tomorrow. Please confirm that you have the devices mentioned above and that we can have them delivered to Cornerstone by 10:00 a.m. tomorrow.

Thank you.

Very truly yours,

*Sidney L. Gold*

SIDNEY L. GOLD

SLG/dd
cc: Attison L. Barnes, III, Esquire