## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, *Plaintiff* | : : : | CIVIL ACTION NO.: 19-5697<br>Hon. Juan R. Sánchez |
| v. | : | |
| LISA REYNOLDS-BARBOUNIS, *Defendant* | : : | JURY TRIAL DEMANDED |

### ORDER

**AND NOW**, this _____ day of _____, 2020, that upon consideration of Defendant's Motion for Reconsideration of this Court's Order and Plaintiff's Memorandum of Law in Opposition thereto, it is hereby **ORDERED AND DECREED** that Defendant's Motion for Reconsideration is **DENIED**.

BY THE COURT:

_____
Hon. Juan R. Sánchez
United States District Court Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | Civil Action No.: 2:19-cv-5697 |
| LISA REYNOLDS-BARBOUNIS, | : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF AGREED ORDER**

Despite negotiating an agreed order with the assistance of her counsel during a three-hour court appearance on January 15, 2020 (the "Agreed Order"), Defendant Lisa Barbounis ("Defendant" or "Barbounis") now seeks reconsideration of that Agreed Order after it has been entered by the Court. As the Court will recall, the parties and their counsel devoted at least 90 minutes to negotiating the Agreed Order in the courtroom—including defense counsel's meticulous crafting of provisions he specifically designed to protect his client's privacy. But in an all-too-familiar pattern (pledges of cooperation followed by inaction and backtracking), Barbounis and her counsel have spun about-face on the Agreed Order they negotiated. Worse still, even though Plaintiff, The Middle East Forum ("Plaintiff" or "MEF"), alerted defense counsel to concerns about document preservation and spoliation by Defendant three months ago, defense counsel did not take possession of, or otherwise preserve, Barbounis's multiple devices and storage media. In fact, while defense counsel represented to the Court on January 15 that his client only had one device (one phone, even as Plaintiff demonstrated at that January 15 hearing that multiple devices exist), his client thereafter submitted a declaration admitting possession of multiple devices. Thus, even months after this case was filed, either: (1) defense counsel had not investigated what devices his client possessed; (2) Defendant was not forthcoming with her counsel; or (3) defense counsel was not forthcoming with the Court. Either way, this conduct is a waste of Plaintiff's and the Court's valuable time, and it reflects an unfortunate lack of forthrightness and delay that has plagued this case from the outset. Enough is enough.

Due to Barbounis's disregard of the Court's directions, Plaintiff continues to be irreparably harmed by the misappropriation of its highly confidential information and the loss of valuable electronic data. Plaintiff has been substantially prejudiced by the delay in getting access to electronic data (which the Court directed Defendant to provide on two separate occasions), and the

unjust and unreasonable delay of Plaintiff's hearing for a Preliminary Injunction.[1] There is an extremely high risk of further spoliation as Barbounis has made a habit of destroying information. Plaintiff has attempted for months to secure its confidential information and trade secrets, and Barbounis's shell game, in which she constantly changes her story and refuses to obey the Court's direction, continues to harm Plaintiff.

## BACKGROUND

This case concerns Barbounis's computer fraud and misappropriation of MEF's trade secrets and highly confidential business information. *See* Complaint, Dkt. 1. Before filing its Complaint, MEF attempted in good faith to resolve this matter with Defendant and requested written assurances that Defendant would return and not disclose its confidential information. *See* Ex. 1, Nov. 8, 2019 Letter; Ex. 2, Nov. 12, 2019 Letter.

Unable to obtain cooperation from Defendant and having learned from Defendant that she had erased relevant materials from at least one device, Plaintiff filed a Motion for Expedited Discovery on December 5, 2019. *See* Motion, Dkt. 6. On December 20, 2019, during a telephonic conference to address the Motion, *see* Dkt. 12, the Court directed Defendant to respond to Plaintiff's limited discovery requests and produce all electronic devices in her possession to a mutually agreed vendor for imaging by January 6, 2020. After setting a compliance deadline of January 6, the Court confirmed that Plaintiff needed ten days after receipt to review the imaged devices and set a preliminary injunction hearing for January 27, 2020.

By January 2, 2020, it became clear that Defendant would not comply with the Court's

---

[1] Although Plaintiff filed and served its Motion for a Preliminary Injunction on December 5, 2019, Defendant has never responded or otherwise opposed that motion. Pursuant to Local Rule 7.1, Defendant's response was due on December 19, 2019, more than a month ago. When the Court alerted Defendant to her failure to respond on January 15, Defendant committed to file a response on January 17. More than 10 days later, Defendant has still failed to respond. Plaintiff's Motion should thus be granted as unopposed. *Id.*

2

deadline. MEF informed the Court of this by letter on January 2, explaining that Defendant had multiple devices in her possession, that Defendant's counsel had not collected *any* of those devices for imaging, and that those devices had not been preserved. Ex. 3, Jan. 2, 2020 Letter. By January 6, 2020, and contrary to the Court's direction, Defendant failed to comply.

On January 7, 2020, after learning that the Defendant had failed to comply with the Court's direction, the Court ordered a hearing to address Defendant's violation and failure to produce devices to be imaged in a timely manner. *See* Order, Dkt. 19. By the date of the hearing, still no devices had been provided for imaging, and it became clear that Defendant's counsel still had not taken possession of his client's devices and storage media.

On January 15, 2020, the parties appeared before the Court regarding Defendant's failure to comply with the Court's December 20, 2019 Order. Prior to the hearing, MEF gathered, and then presented detailed evidence, in support of its discovery request and, including that

- Defendant is in possession of MEF's confidential and proprietary information on various devices and cloud-based systems, *see* Ex. 4, Trans. at 19-21;

- Defense counsel had conceded that MEF information may still reside in Barbounis's Google Drive account or Sent Mail folders, Ex. 5, Dec. 17, 2019 Letter at 2;

- Defense counsel further admitted that Barbounis still has MEF documents and proprietary information in her possession, Dkt. 23-4, Exhibit C at 3 ("There are many communications and documents that Lisa Barbounis may still inadvertently have access to . . . ."); *id.* at 5 (listing several MEF documents still in Defendant's possession, including documents referenced in the Complaint, as well voice memos of confidential meetings); and

- Defense counsel also admitted that Barbounis had used her personal Gmail account for work purposes, including regularly emailing MEF work documents and research papers to her personal account and downloading MEF's donor list to her personal laptop. Dkt. 16-1 at 5-8.

And, MEF presented evidence that Barbounis owned and used at least four separate devices, in addition to an Apple computer, for work at MEF (*see* Ex. 6, Pictures) and that Defendant worked on MEF documents on her personal Microsoft Surface device (*see* Ex. 7, picture showing MEF

3

document on Microsoft Surface screen).

After both parties presented argument, the Court asked the parties to prepare an *agreed* order in the courtroom that would set forth terms for discovery and device imaging in a manner that would satisfy Defendant's concerns about privacy and overbreadth. Pursuant to the Court's instruction, counsel for parties spent more than 90 minutes in the courtroom, drafting the Agreed Order. During that time, counsel for both parties negotiated the contents of the Agreed Order, including defense counsel's detailed crafting of discovery carve-outs, which the parties agreed would not be collected specifically to protect any alleged privacy concerns and to ensure that the Order was narrowly tailored to the needs of the case. Prior to the submission of the Agreed Order to the Court for entry, Defense counsel discussed the terms of the Agreed Order with Barbounis – in the presence of Plaintiff's counsel. Defense counsel read the Agreed Order aloud to Barbounis; he discussed potential confidentiality issues with his client and the above-mentioned carve-outs; and ultimately, defense counsel obtained Barbounis's consent to the Agreed Order. Following the lengthy conference, the parties provided the Agreed Order to the Court via email—specifically describing the Order as "agreed," Ex. 8, Jan. 15, 2020 Email[2] —and the Court signed and entered the Agreed Order in the identical form agreed by the parties. Dkt. 21.

The terms of the Agreed Order expressly required that:

> On or before 5:00 PM EST on Thursday, January 16, 2020, Defendant shall verify under oath her answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents and produce all remaining responsive documents and things to Plaintiffs, including, but not limited to, the voice recordings. . . . On or before 5:00 PM EST Friday, January 17, 2020, Defendant shall supply to the discovery vendor Cornerstone Discovery ("Cornerstone") (attention Lou Cinquanto) all electronic devise(s) [sic], including, but not limited to, cellular telephones (including, but not limited to, the three devices depicted in her social

---

[2] At no time has defense counsel disagreed with or attempted to characterize the Order as anything other than "agreed." Thus, the Court's "impression that both parties had agreed" to the January 15, 2020 Order is entirely correct. Dkt. 26.

4

media post dated on or around November 27, 2019), all laptops and computers (including the Microsoft Surface that was depicted in her social media post dated November 22, 2018), and any other devices, and any cloud-based storage accounts connected to those devices (including, but not limited to, iCloud accounts, Dropbox, WhatsApp backups, Telegram, Google Drive, Facebook, and Wickr).

*Id.* ¶¶ 1-3.

The Agreed Order provided that the devices would be imaged[3] and that broad categories of personal information and conversations would be excluded from review:

> Cornerstone shall only exclude from its imaging of these devices the following: (1) emails, texts, and other communications to or from Seth Carson, Derek Smith Law Group (e-mail: seth@dereksmithlaw.com and phone: 484-678-2210 ), Mike Yoder (phone: 202-595-4504), Patrick Sandman (phone: 609-457-6029); (2) emails, texts, and other communications to or from Vasili Barbounis (phone: 215.439.1002), Jane Reynolds (phone: 856-287-1436), Greg Reynolds (267-761-8622), David Reynolds (856-287-1602), and email addresses coming to or from a state.gov domain, except if such emails, texts, and other communications mention The Middle East Forum ("MEF") or its principals Daniel Pipes, Gregg Roman, or Marc Fink, and if a text message chain to or from Vasili Barbounis mentions such entity or individuals, the text chain for a 12 hour period before and after that time shall be captured; (3) emails, texts, and other communications with Randy Weber (email: randy@randyweber.org, phone: 281-744-7300, 281-480-8914), Ryan Costello (phone: 610-504-3296), Chara McMicheal, except if such emails, texts, and other communications mention The Middle East Forum ("MEF") or its principals Daniel Pipes, Gregg Roman, or Marc Fink, and if a text message chain to or from Randy Weber, Ryan Costello, and/or Chara McMicheal mentions such entity or individuals, the text chain for a 12 hour period before and after that time shall be captured.

*Id.* ¶ 5.

Despite negotiating the Agreed Order, and the Court's entry of the Agreed Order, Defendant and her counsel have violated the Court's Order. By January 16, 2020 at 5:00 PM EST, Plaintiff had not received any verified answers to Plaintiff's interrogatories or document requests. Additionally, by January 17, 2020 at 5:00 PM EST, Defendant and her counsel had failed to turn

---

[3] Contrary to defense counsel's assertions that imaging will provide Plaintiff with unfettered access to Defendant's private information, "imaging" a device is a bit-by-bit copy to preserve a device's storage and memory space to prevent data alteration and to preserve the device "as is."

over any devices for imaging. Instead of complying with the Agreed Order, Barbounis and her counsel argue that an *Agreed* Order negotiated at arm's length by the parties is somehow manifestly unjust. Dkt. 23-1 at 1.

Defendant's motion is yet another disturbing rejection of Plaintiff's good faith efforts to resolve the present dispute and its concerns about spoliation. Indeed, Plaintiff has repeatedly attempted to resolve this issue amicably, both at the hearing and directly with counsel. *See* Ex. 1; Ex. 9, Nov. 25, 2019 Letter. Defendant has already engaged in spoliation, as Defendant concedes that she applied a factory reset to the Apple computer she used during her employment before providing it to MEF, even while she was under a litigation hold at MEF **instituted by her own counsel**. *See* Ex. 4, Trans. at 24. Further, as Defendant's Motion makes clear, Barbounis utilized multiple personal devices during her employment with MEF, she sent highly confidential information to her personal email account, and she has, thus far, failed to preserve any of the devices. Dkt. 23 at 1, 3; Dkt. 23-2, Exhibit A. Plaintiff suspects that Defendant and her counsel do not want to comply with the Court's Order because imaging the devices will expose additional spoliation.

In addition to her admitted failure to turn over or preserve her devices, both Barbounis and her counsel have made multiple misrepresentations to this Court and to Plaintiff since this dispute started. *See* Ex. 10, Chart of Misrepresentations. For example, not only has Defendant repeatedly changed her story about how many devices she has used, she was caught (as explained on January 15) deleting photographs from her social media accounts after this action was filed, presumably because they contradicted the story she is now peddling to this Court about only using one device. *See* Ex. 4, Trans. at 19; *Compare* Instagram Account of Lisa Barbounis @_lisabeth_, www.instagram.com, *with* Ex. 6 (containing pictures of devices posted on social media accounts

6

as of November 27, 2019, that were deleted between then and the January 15, 2020 hearing). Deleting pictures of her devices from social media accounts after the Complaint was filed suggests a deceptive motive.

As discussed in detail below, Defendant's Motion is both procedurally and substantively improper. Even if the Court were to overlook the procedural shortcomings in the Motion and Defendant's egregious course of conduct, Barbounis's untimely relevance and privacy objections, after these same issues were discussed and negotiated in an Agreed Order signed by the Court, is entirely insufficient to justify reconsideration. Indeed, the Motion does not argue any new facts or law that could not have been, and were not, addressed at the January 15 hearing. At this point, the credibility of any assertion made by Defendant or her counsel is in serious doubt.

## ARGUMENT

### I. Defendant's Motion for Reconsideration of an Agreed Order Should be Denied.

For many reasons, Defendant's Motion for Reconsideration is improper and should be denied. First, Defendant cannot seek reconsideration of an *Agreed* Order, and, even if she could, the Motion for Reconsideration does not excuse Defendant's repeated failure to comply with the rules and the Court's Orders. Second, Defendant's motion is just another demonstration of the lack of forthrightness and disrespect for legal obligations that Defendant and her counsel have demonstrated since the outset of this case. Third, even if reconsideration of an Agreed Order were appropriate, Defendant has failed to satisfy the standard for reconsideration.

### A. Reconsideration of an Agreed Order is Improper and Does Not Excuse Noncompliance.

Courts have regularly recognized that a party is bound by an order to which she agrees. *"[A]n agreed order is conclusive on the parties* and cannot be amended or set aside by one of the parties without a showing that the order resulted from fraudulent representation, coercion,

incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence." *Armato v. Grounds*, 766 F.3d 713, 720 (7th Cir. 2014) (citation omitted) (emphasis added). Indeed, "[h]aving stipulated to a schedule for complying with the [discovery], [a party] **can hardly complain now about being held to its agreement**." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009) (affirming contempt order for non-party's failure to comply with agreed deadline) (emphasis added). If courts permitted parties to unilaterally evade stipulated orders, it would open the floodgates to second guessing of court orders. Defendant cannot seriously object that an order to which she agreed is somehow "unjust."

Defendant cannot cite a single case to support her claim that the Court may reconsider an agreed order. ***None of the cases*** cited by Defendant support such a finding (or even address reconsideration of agreed or stipulated orders), much less that a court should ***grant*** reconsideration of an agreed order on any basis. Unsurprisingly, courts have uniformly found that litigants are bound by orders that they negotiate and agree to. *Cf. In re Fannie Mae Sec. Litig.*, 552 F.3d at 822.

Moreover, Defendant's attempt to seek reconsideration of the Agreed Order in no way excuses her failure to comply with the Court's Orders (on December 20, 2019, and January 15, 2020). "Merely filing a motion for reconsideration does not stay an impeding [sic] deadline." *Collura v. White*, No. 12–4398, 2013 WL 6022141, at *5, n.5 (E.D. Pa. Nov. 14, 2013) (citation omitted). "It is fundamental to our legal system that 'all orders and judgments of courts must be complied with promptly. If a person . . . believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.'" *United States v. Stine*, 646 F.2d 839, 845 (3d Cir. 1981) (quotation omitted). Indeed, ***"[a]lthough [Defendant] may disagree with the Court's Order . . . or even believe the Order to be incorrect, such opinion***

8

*or belief does not excuse noncompliance."* *Collura*, 2013 WL 6022141, at *5 (quoting *Stine*, 646 F.2d at 845) (emphasis added). Thus, Defendant and her counsel have no excuse for their failure to comply with the Court's December 20, 2019 instructions and the January 15, 2020 Agreed Order, the due dates of which long passed before she even requested reconsideration.

### B. Defendant's Motion Continues a Pattern of Sanctionable Conduct.

In addition to being procedurally and substantively improper, Defendant's attempt to avoid her obligations to the Court, and her failure to comply with the Court's direction, reflects a repeated course of conduct in this litigation: Defendant and her counsel have not preserved the necessary evidence Plaintiff has sought in good faith for months. Federal litigation discovery "relies on the cooperation and integrity of attorneys operating within the guidelines provided by the Federal Rules of Civil Procedure . . . ." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 684 n.7 (3d Cir. 1988). Thus, "[s]crupulous compliance with court discovery orders," *id.,* is expected by the Court. And, if a litigant has demonstrated themselves incapable of satisfying that expectation, the Court must impose stricter measures. *See Coastal Mart, Inc. v. Johnson Auto Repair, Inc.*, 196 F.R.D. 30, 34 (E.D. Pa. 2000) ("[W]here a party violates Court Orders and Court imposed deadlines and has violated the rules of discovery, a sanction of dismissal or default judgment is appropriate.").

Defendant and her counsel have demonstrated a disturbing pattern of changing their stories when it suits them. Defendant's counsel first claimed that Defendant did not retain any information from MEF, Ex. 11, Nov. 5, 2019 Email at 2 ("Lisa Barbounis is not in possession of any confidential information . . . ."); Ex. 5, and then claimed to the Court that Defendant had only one device, Ex. 4, Trans. at 25 ("There's only one device."). Later, in the Motion for Reconsideration, defense counsel now admits, contrary to his express representations to this Court a few days earlier, that Barbounis possessed four separate devices, including a Microsoft Surface that Defendant used

9

for work at MEF, and that those devices would contain MEF data. Dkt. 23-1 at 3, n.2., Ex. 10 (detailing additional misrepresentations by Defendant and counsel regarding the devices).

Further, despite defense counsel's acknowledgment that litigants are responsible for preserving relevant information, defense counsel failed to collect or preserve Defendant's many devices, email account, or cloud-based data. This lack of engagement is particularly concerning because Defendant admits that she ***erased*** key data by applying a factory reset to the Apple computer she used while at MEF, in violation of the explicit instructions in her employment agreement to provide the computer without alteration, *see* Dkt. 20, Ex. B; Dkt. 20, Ex. D, and the litigation hold purportedly implemented by her counsel. In this case about computer fraud and misappropriation of trade secrets, with allegations that Defendant copied and shared MEF's highly confidential information and trade secrets, Defendant's devices and the metadata they contain are key evidence of what Defendant has done with MEF's information. *Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387, at *2-3 (E.D. Pa. Jan. 31, 2007) (finding that the close relationship between plaintiff's trade secrets claims and the defendant's computer equipment merited forensic imaging of the equipment). Thus, Defendant's destruction of data, and defense counsel's failure to preserve that data, severely prejudices MEF and is what MEF has been seeking to prevent all along. This is further justification for imaging of the multiple devices and storage media because MEF is entitled to know the extent of the spoliation, which presumably will demonstrate the Defendant's attempts to erase her tracks with respect to MEF's confidential data. Before additional data is erased and altered, this Court should promptly reinstate the Agreed Order.

### C. Regardless, Defendant has Failed to Satisfy the Reconsideration Standard.

Even if the Court were to ignore that Defendant actively participated in drafting the Agreed Order and even if this Court were to ignore her repeated violations of her obligations under the rules, Defendant cannot satisfy the standard for reconsideration. "'The scope of a motion for

10

reconsideration . . . is extremely limited.'" *Taggart v. Wells Fargo Bank, N.A.*, No. 16-00063, 2017 WL 3217396, *1 (E.D. Pa. July 28, 2017) (further citations omitted). A motion for reconsideration is "not to be used as an opportunity to relitigate the case," or "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Id.* at *1 (citations omitted). "'Nor may a motion for reconsideration be used to revisit or raise new issues with the benefit of 'the hindsight provided by the court's analysis' or to advance arguments that would not change the result of the court's initial ruling." *Id.* (citations omitted). Rather, such motions may be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *United States v. Pena–Gonell*, No. 11-cv-6725, 2014 WL 4446601 at *6, n.7 (E.D. Pa. 2014) (citing *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999) (citation and internal quotation marks omitted)). A motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked . . . . It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through— rightly or wrongly." *Id.* (further citations omitted). Thus, to succeed on a motion for reconsideration, Defendant must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its prior decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Pena-Gonell,* 2014 WL 4446601, at *6, n.7 (quoting *Max's Seafood*, 176 F.3d at 677).

Here, despite purporting to seek reconsideration to "prevent manifest injustice,"[4] Defendant merely seeks to relitigate arguments regarding relevance and privacy that were already addressed at the January 15, 2020 hearing. In the hearing, Defendant argued to the Court both that

---

[4] Defendant has failed to demonstrate any change of law or the availability of new facts, much less clear error in the Court's January 15, 2020 ruling. Dkt. 23-1 at 1.

11

the requested discovery was overbroad and that it would violate Defendant's privacy. Ex. 4, Trans. at 24, 39, 41-42. These are the same issues raised in Defendant's Motion. Defendant cannot pursue reconsideration just to argue relevance a second time.[5] Because Defendant merely rehashes the same arguments and agreements made at the hearing, her Motion should be rejected on this basis alone. *See Taggart*, 2017 WL 3217396, at *2; *Pena–Gonell*, 2014 WL 4446601, at *6, n.7.

Moreover, Defendant cannot show that the Agreed Order is overbroad or unduly intrusive. This is a misappropriation of trade secrets case, and Defendant has conceded that she emailed MEF's documents (including MEF's donor lists) to her personal email account and accessed MEF documents from her personal devices. Defendant has further acknowledged that MEF data likely remains on her devices or in her personal accounts, and that she has destroyed data. Thus, the contents of Defendant's personal accounts and devices and their preservation are highly relevant to Plaintiff's claims. The Agreed Order was carefully drafted, with instructions and input from Defendant, so as to avoid capturing private and privileged information while still preserving Plaintiff's right to preserve and access relevant information. Further, both Parties agreed to the additional protective measure of marking all documents as "Attorney's Eyes Only" and to restrict the access to photographs to only Defense Counsel and one of Plaintiff's (female) attorneys. ***These restrictions were designed at the request of and in conference with Defendant and her counsel.***

Defendant's citations to cases from outside this jurisdiction are inapposite. For example, Defendant relies on *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2020 WL 109654 (M.D. Pa. Jan. 9, 2020), for the proposition that the January 15, 2020 Order was overbroad. The *Lawson* plaintiff, however, had "not shown that any discoverable material exists

---

[5] In any event, as this Court concluded, defense counsel does not get to serve as the gatekeeper to unilaterally determine relevance. Ex. 4, Trans. at 17. This is particularly true when Plaintiff has raised serious concerns about the accuracy of representations made to this Court.

12

on the[] cellphones," the cell phones belonged to senior executives who were far removed from the pertinent dispute, and the requested collection included "review of the text messages contained by as many as 100 cellphones." *Id.* at *4. Here, Plaintiff only seeks to preserve material on devices used by or belonging to Defendant that may contain MEF information or evidence regarding MEF's misappropriation or computer fraud claims. Further, Defendant has admitted to having confidential MEF information, including recordings. Dkt. 23-4, Exhibit C at 5.

Similarly, *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008), is easily distinguishable. In *Goetz*, plaintiffs failed to demonstrate the relevance of the requested information, or that the defendants had failed to preserve relevant information, and the order for forensic imaging violated principles of federalism and comity by ordering federal law enforcement to take control of material and computers in state agencies. *Id.* at 460-61. That is certainly not the case here; Defendant has conceded that she maintains MEF documents and evidence of misappropriation on her devices and personal accounts. Further, unlike the defendants in *Goetz*, Defendant has demonstrated a continuing practice of ignoring Court Orders and failing to preserve relevant information.

Thus, Defendant cannot satisfy the standard for reconsideration. Each of the arguments raised in Defendant's motion were addressed at the January 15, 2020 hearing, resulting in an Agreed Order entered by the Court. Further, Plaintiff has demonstrated the relevance of the information contained on Defendant's devices to its claims, and the Agreed Order adequately protects Plaintiff's interests in preserving information and guarding against future spoliation.

## II. **Plaintiff is Entitled to the Information that the Court Ordered Produced**

MEF has tried to obtain and preserve information from Defendant for months. Defendant, however, has demonstrated a lack of candor and a pattern of destroying information, even when instructed to do so by her own counsel. The only just result is for the Agreed Order to be reinstated.

Expedited discovery, including imaging of Defendant's devices in the terms agreed to by the parties and provided by the Court, is more than justified here. This Court has wide latitude in controlling discovery and its rulings will not be overturned absent a showing of clear abuse of discretion. *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 217 (3d Cir. 2003). Expedited discovery is appropriate to enable a party to gather evidence in support of an application for a preliminary injunction. *See, e.g.*, *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, 98-CV-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998). And courts have also found good cause for expedited discovery when there is a risk of pertinent evidence being destroyed or unusable. *Samuel, Son, & Co., Inc. v. Beach*, No. 13-128, 2013 WL 4855325, at *3 (W.D. Pa. Sept. 11, 2013) (stating that good cause for expedited discovery is usually found when a party seeks a preliminary injunction and where physical evidence may be destroyed, causing a party to be disadvantaged).

Plaintiff has more than amply supported its request for expedited discovery and forensic imaging here. As discussed above, and in detail at the January 15, 2020 hearing, Defendant has admitted to emailing MEF research papers and documents to her personal email account, Dkt. 23, Exhibit C at 7; Defendant has admitted that she used her personal devices to complete MEF work assignments, Dkt. 23-3, Exhibit B at 3; Defendant has admitted that she likely maintains MEF data on her devices and cloud-based storage accounts, Dkt. 23-4, Exhibit C at 4-5, 7. Plaintiff also presented evidence that, contrary to Defendant's counsel's assertions, Barbounis has multiple devices, including a Microsoft surface and multiple cell phones, and that such devices likely contain highly confidential MEF information and trade secrets. Finally, Defendant's counsel has admitted that he has not collected these devices or preserved any of the evidence on these devices.

Plaintiff also presented evidence that, contrary to her contractual obligations and her own litigation hold, Barbounis already caused at least one device to be erased. This is a pattern of

14

conduct, as Defendant's own declaration details how Defendant has recklessly handled devices that may contain relevant evidence without doing anything to preserve the information contained on the devices. Dkt. 23-3, Exhibit B. Defendant's conduct, and Defendant's counsel's failure to control or prevent this destruction, necessitates immediate preservation of the devices and metadata that remain in Barbounis's possession. If the Court does not reinstate the January 15 Agreed Order, additional valuable and pertinent information will be lost.

The devices and storage media at issue are solely in Defendant's custody, and Defendant has already demonstrated that she has not, and will not, take the necessary steps to preserve relevant information. The litigation playing field is only level when both sides have access to the same devices and metadata, and the Agreed Order already addresses the privacy concerns in the exact way Defendant wanted. The ability to fairly evaluate the evidence is quickly being eroded, as Defendant and her counsel have demonstrated a troubling disregard for this Court's direction.

## CONCLUSION

Speed and urgency have of the utmost importance in this matter where Plaintiff sought expedited discovery and a preliminary injunction two months ago. The delay caused by Defendant's failure to comply with the Court's direction and now and Agreed Order is inexcusable. Defendant's Motion for Reconsideration should be denied in full, and the January 15, 2020 Agreed Order should be reinstated. Further, Plaintiff's Motion for Preliminary Injunction should be granted as unopposed, as Defendant's deadline for response has long passed. If this Court does not immediately enter the Preliminary Injunction Order, Plaintiff requests that the Court should set the injunction hearing within ten days after Plaintiff has access to the imaged data from all devices and other storage media in Defendant's possession, custody, and control.

Dated: January 28, 2020

THE MIDDLE EAST FORUM
By counsel,

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

***Counsel for The Middle East Forum***

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 28, 2020, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*
