# Exhibit 1



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 8, 2019

Mr. Seth D. Carson
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:     The Middle East Forum Cease and Desist Letters

Dear Mr. Carson:

I am in receipt of your November 5, 2019 response to the Middle East Forum's ("MEF") cease and desist letters to Lisa Barbounis, Caitriona Brady, and Delaney Yonchek.  By your response, it is apparent that your clients have not provided you with the complete factual background.

For example, while you claim that "MEF employees were required to use personal G-mail accounts as the MEF did not maintain Google's Business Suite until March 2019" and that "[a]ll information identified in [my] letters originates in a similar manner," that is not the case.

1.   MEF did not require employees to use their personal G-mail accounts, and your clients should not have been using their personal accounts for MEF business.

2.   Your clients not only sent emails from their personal email accounts to their MEF email accounts, but also from their MEF email accounts to their personal email accounts.

3.   You are apparently not aware that your clients' use of their personal accounts occurred even *after* MEF began using a Google Business Suite. For example:

   • In April 2019, Ms. Barbounis forwarded MEF's sensitive General Operating Support proposals and a list of MEF donors to her personal email address.

   • On multiple occasions throughout April 2019, Ms. Yonchek sent photographs of donor checks between her personal email account and her MEF email account.

   • On multiple occasions in June 2019, Ms. Brady sent photographs of donor checks between her personal email account and her MEF email account.

Putting aside for the moment whether your clients still wish to claim that use of their personal e-mail accounts was proper, MEF's sensitive information including proposals, donor lists, and pictures of donor checks are still accessible to your client through those personal accounts, and

MEF will not stop until it verifies that they are permanently deleted through affidavits under oath or by court order.

If your clients truly have "every intention of cooperating with MEF and complying with their legal obligations," they have not shown it in your letter or otherwise. Indeed, if your clients want to cooperate and if they are making truthful statements, they would not hesitate to stand behind their statements by signing affidavits.

Refusing to sign affidavits raises red flags, and as you can imagine, MEF as an organization is justifiably concerned about its confidential data when former employees expect MEF to accept conclusory statements from their lawyer that they "have in no way and at no time violated any obligation or legal duty owed by virtue of contract, equity or law."

If your clients are telling the truth, it makes no sense that they would want to engage in expensive litigation when they could simply provide the written assurances requested by MEF. To the extent they are unwilling to provide the assurances, MEF has no choice but to protect its rights through legal action.

In order to "cooperate" with MEF as you claim your clients desire to do, we will ask one final time that your clients agree to the terms in the cease and desist letters and confirm by sworn written affidavits as requested in the letters. I need to know your final position by the close of business on Monday, November 11, 2019.

And, because your November 5th response includes a troubling revelation that Ms. Barbounis has destroyed materials, please also let me know by the close of business on Monday: (1) when the deletions took place; (2) what information was deleted; (3) from what devices was the information deleted; (4) how Mr. Barbounis made the determination what to delete; and (5) what process she went through to cause the deletions.

We are trying in good faith to avoid litigation, so we trust that your clients will "cooperate" as your letter claims. All rights are reserved.

Very truly yours,

Attison L. Barnes III

cc:     MEF

# Exhibit 2



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 12, 2019

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:    The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

I am in receipt of your November 8, 2019 e-mail.  While MEF is hopeful that your clients will cooperate and provide written assurances as you state, we have some concerns to resolve.

First, to the extent that you are instructing your clients to destroy hard copy or electronic documents at this time, that would constitute spoliation of evidence, and it should stop immediately.  Until we can implement a process for preservation and orderly removal and permanent deletion of the files in your clients possession, your clients should not destroy evidence that currently exists on any devices.  They, of course, should not access, use, or disclose the information in the interim, and we should work with each other to perform a mutually agreeable plan to capture the data including any metadata, allow the parties to determine whether MEF data has been disclosed so that MEF can recover that data from any other custodians, and then ensure permanent deletion from your clients' devices.  Please let me know right away if your clients have destroyed any such materials, at your direction or otherwise, and if so, what files were destroyed and when.

Second, while you request that MEF identify what materials we believe your clients removed from MEF, we are only beginning to uncover what your clients improperly removed from the company. Your clients cannot hide behind a request that MEF identify all such documents they removed when they performed these acts without MEF knowledge and approval.  If your clients are truly willing to cooperate and avoid expensive litigation, they will work with us to promptly identify (before deletion) all MEF Data and Confidential Information that may be contained on all devices, along with the actual files/copies.

Third, I attach affidavits and instructions on steps your clients must take with respect to the documents before deletion.  We must receive executed copies of these documents by each of your clients before the close of business on November 15, 2019.  Again, if your clients are unwilling to provide these written assurances in a timely manner, MEF will proceed with protecting its rights through legal action.

Seth D. Carson, Esquire
November 12, 2019
Page 2

Finally, at no time has MEF engaged in retaliation as you claim, as a former employer is entitled to protect its data from use and disclosure by former employees.  If you have authority to the contrary, please forward it for my review.

Regardless of any statements made in this letter in an attempt to resolve this matter amicably, MEF reserves all rights.

Very truly yours,

Attison L. Barnes III

cc:      The Middle East Forum

## AFFIDAVIT OF LISA REYNOLDS-BARBOUNIS

STATE OF/ COMMONWEALTH OF_____)
                                          )
                                          )
COUNTY OF _____               )

       I, Lisa Reynolds-Barbounis, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

       1.      I am over the age of eighteen and make this Affidavit based on my personal knowledge.

       2.      I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

       3.      Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

       4.      After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Lisa Reynolds-Barbounis

Date: _____

On the _____ day of _____ 2019, Lisa Reynolds-Barbounis personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____

## <u>AFFIDAVIT OF DELANEY YONCHEK</u>

STATE OF/ COMMONWEALTH OF_____)
                                                                          )
                                                                          )
COUNTY OF _____                        )

      I, Delaney Yonchek, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

      1.     I am over the age of eighteen and make this Affidavit based on my personal knowledge.

      2.     I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me.  This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

      3.     Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me.  I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

      4.     After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

4842-7806-6604.1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Delaney Yonchek

Date: _____

On the _____ day of _____ 2019, Delaney Yonchek personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____

## AFFIDAVIT OF CAITRIONA BRADY

STATE OF/ COMMONWEALTH OF_____)
                                          )
                                          )
COUNTY OF _____               )

       I, Caitriona Brady, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

       1.     I am over the age of eighteen and make this Affidavit based on my personal knowledge.

       2.     I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me.  This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

       3.     Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me.  I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

       4.     After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Caitriona Brady

Date: _____

On the _____ day of _____ 2019, Caitriona Brady personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____

# Exhibit 3

## LAW OFFICES OF
# SIDNEY L. GOLD & ASSOCIATES
### A PROFESSIONAL CORPORATION

**1835 MARKET STREET, SUITE 515**
**PHILADELPHIA, PA 19103**
**(215) 569-1999  FAX (215) 569-3870**

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

 *  ALSO ADMITTED IN NEW JERSEY
 **  ALSO ADMITTED IN NEW YORK
 ++  ALSO ADMITTED IN DISTRICT OF COLUMBIA

January 2, 2020

**Via Facsimile Only:**
**267-299-5067**

The Honorable Juan R. Sánchez
United States District Court
for the Eastern District of Pennsylvania
601 Market St., Room 14613
Philadelphia, Pennsylvania 19106-1797

      **RE:  The Middle East Forum v. Lisa Reynolds-Barbounis**
           **C.A. No.: 19-5697-JS**

Dear Judge Sánchez:

      On behalf of Plaintiff The Middle East Forum ("MEF"), I write to: (1) inform the Court that the Defendant has refused to turn over her devices to a mutually-acceptable Vendor as directed by this Court and seeks to place conditions on the imaging and recovery of data; and (2) request a follow-up conference to address this issue and the fact that Defendant has not responded to the 5 interrogatories and 4 document requests as discussed during the Court's telephonic hearing on these issues.

      On December 20, 2019, this Court held a telephone hearing on Plaintiff's Motion for Expedited Discovery.  Plaintiff served that Motion on Defendant's counsel on December 5, 2019.  As of today, despite the passage of nearly a month since receipt of the Motion and the expedited discovery requests and despite the passage of 10 days since the Court hearing, Defendant has not provided a single response, produced a single document, nor has she released her devices and data storage to a mutually acceptable vendor.  In fact, we learned from defense counsel on December 30th that defense counsel has not even taken possession of the devices.  Shortly after the telephonic hearing, Plaintiff proposed a vendor to defense counsel, but defense counsel never responded regarding the use of that vendor, nor proposed another mutually-acceptable vendor.  On December 30th defense counsel abruptly declared that he will unilaterally engage a discovery vendor to image one phone (although we know Defendant has multiple devices, and even her counsel admitted on a call on December 30th that she has two

phones), and is imposing conditions on Plaintiff's access to the imaged data. This delay, withholding of her devices, and imposition of unilateral conditions in unacceptable. Especially after receiving correspondence from defense counsel that some information had been erased, we are concerned that evidence and devices have not been preserved but instead remain in Ms. Barbounis' possession and control.

Plaintiff's counsel has offered a protective order on confidentiality, as the Court will recall from the December 20 hearing. Plaintiff's counsel also informed defense counsel that the imaged data can exclude privileged communications with counsel, and that any other non-MEF related data will be treated as attorneys' eyes only. Still, Defendant will not cooperate. Plaintiff's good faith attempts to move this process forward are reflected in the attached correspondence. Plaintiff reluctantly returns to this Court for assistance. Of critical importance, Plaintiff has learned that Defendant has multiple devices (detailed in the attached letter), and despite defense counsel's initial representations that she only has one phone, he now admits there are two phones when confronted with online photographs posted by the Defendant with three phones. Defense counsel initially claimed that only one phone worked and that they all had the same phone number (claiming the information on each phone would be the same). When pressed, he conceded that there are at least two unique telephone numbers, and therefore the data on each phone is unique. And this does not address the other devices shown in Defendant's online photographs, her Gmail account data to which she forwarded MEF data, as well as the data storage and cloud data she continues to withhold.

As set forth above, Plaintiff has attempted to work with defense counsel to obtain the data as well as full and complete responses to the discovery requests. To date, Plaintiff has received nothing.

Respectfully,

*Sidney L. Gold*

SIDNEY L. GOLD

SLG/dd

cc:     Seth Carson, Esquire
        Attison L. Barnes, Esquire, III

# Exhibit 4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, | : | Case No. 2:19-cv-05697-JS |
| | : | |
| Plaintiff, | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | January 15, 2020 |
| LISA REYNOLDS-BARBOUNIS, | : | 2:06 p.m. |
| | : | |
| Defendant. | : | |

. . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JUAN R. SANCHEZ
UNITED STATES DISTRICT COURT CHIEF JUDGE


APPEARANCES:

For The Middle East Forum:    Attison L. Barnes, III, Esquire
                              Wiley Rein LLP
                              1776 K Street NW
                              Washington, DC 20006

                              Sidney L. Gold, Esquire
                              Sidney L. Gold & Associates, PC
                              Eleven Penn Center, Suite 515
                              1835 Market Street
                              Philadelphia, PA 19103


For Lisa Reynolds-Barbounis: Seth D. Carson, Esquire
                              Derek Smith Law Group PLLC
                              1835 Market Street, Suite 2950
                              Philadelphia, PA 19103


Transcribed by:              O'Connor Legal, Medical & Media
                              Services, LLC
                              P.O. Box 384
                              South Sutton, NH 03273


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1   obviously put the device names in there.  But we can do that.

2            THE COURT:   Okay.

3            MR. CARSON:   Your Honor, can I respond?

4            THE COURT:   Yes.

5            MR. CARSON:   So, I think separating privileged

6   information and information that is not relevant to the cases,

7   if relevance isn't just as important as privilege is not -

8            THE COURT:   I'm sorry.  So, privileged, yes.

9   Information as to whether it's relevant or not, you could argue

10  that after it's produced.  And that's going to be a trial

11  issue.

12           What you may think is relevant is not necessarily

13  what they think is relevant.  And relevant is evidentiary

14  objection at trial.

15           MR. CARSON:   Well -

16           THE COURT:   So, if the -

17           MR. CARSON:   - personal -

18           THE COURT:   - evidence leads to discoverable

19  evidence, I'm going to permit it.  I don't think that's a good

20  argument for keeping things out.

Case 2:19-cv-05091-JS  Document 28-1  Filed 01/31/20  Page 18 of 80

21           MR. CARSON:   So, the other argument, too, is that --

22  so she used this -- so first of all, there's not four --

23  there's one device.  She doesn't have two laptops.  She doesn't

24  have three cellphone -- she has one cellphone, one.  Okay?  And

25  it's the only phone she has.  She can't produce something that

1 she doesn't have.  The pictures that they're alleging were she

2 had problems with her -- she -

3          THE COURT:   She's not here.  So, they could -- or I

4 could put her under oath to confirm what you're telling me.

5          MR. CARSON:   Right.

6          THE COURT:   And I was expecting her to be in this

7 proceeding, because I'm going to ask about those three phones

8 and those two laptops, based on the conduct here.  So, I'm not

9 pleased that she's not here.  So, you're saying there's one

10 phone.  They're -

11          MR. CARSON:   They're -

12          THE COURT:   - telling me three phones and two

13 laptops.

14          MR. CARSON:   Your Honor -

15          MR. BARNES:   Your Honor, I can -

16          MR. CARSON:   - one of the two laptops that they're

17 telling you about, it was a company laptop that was purchased

18 by MEF.  She used, only when she worked with MEF.  And that was

19 returned to MEF before she left MEF's -- before her employment

20 with MEF discontinued.

Case 2:18-cv-02081-2S  Document 28-1  Filed 07/28/20  Page 19 of 80

21          She never had access to that laptop but related to

22 her employment at MEF.  So, to say that she needs to turn it

23 over now, they know that it was returned, because we've written

24 letters back-and-forth regarding this issue.

25          MR. BARNES:   So, Your Honor, there's an easy answer

1  to that.  First of all, let me hand up the pictures that we

2  have that we know of, from -

3              THE COURT:   All right.

4              MR. BARNES:   That show these devices.

5          (Asides)

6              MR. CARSON:   Thank you.

7              THE COURT:   Okay.

8              MR. BARNES:   Your Honor, the first page, you will

9  see the three phones.  And these are posts by the Defendant of

10  her devices.  This one was actually from November 27th, 2019.

11              The second one is a Microsoft laptop.  She had that

12  in November of 2018.  Ms. Barbounis has now, because this issue

13  has come up, recently deleted this from social media.

14              MR. CARSON:   I didn't hear when Counsel said that

15  the second picture was taken, November 2018?

16              MR. BARNES:   No, we know it was -- we pulled it off

17  social media in November 2018.  But we will get to the fact

18  that it existed before that.

19              THE COURT:   Go ahead.

20              MR. BARNES:   The next page, Your Honor, is a picture

21  of that previous page where that Microsoft Surface is.  This

22  was also supplied to MEF, as a picture.  And you can see it

23  actually has Middle East Forum information on it, when it was

24  sent to our Client.

25              So, to the extent that he has just represented that

1  the only laptop she had and she used was the one that was

2  returned, this is the Microsoft Surface tablet which had our

3  company information on it.

4          MR. CARSON:    When was it sent to your Client?

5          THE COURT:    Excuse me.  He's talking to me.

6          MR. CARSON:    Excuse me, sorry.

7          THE COURT:    Go ahead.

8          MR. BARNES:    And the next page, Your Honor, is an

9  Apple Watch that she has also posted.  The next picture is her

10  using one of the phones that you see in the earlier picture in

11  May of 2019, while she was still at MEF.  She resigned in

12  August of 2019.

13          The next picture is her using that same phone, which

14  you see on the front page.  The next picture is her with the

15  dark-colored phone.  This is the iPhone.  And this was on

16  Twitter in April '19, which was while she was still at the

17  company.

18          The next picture is her using one of those phones in

19  August, six days before she left the company.  The next picture

20  was from June of 2019, where she was using the phone and taking

21  the picture, and posting it on the internet.

22          She has now deleted this photograph since

23  January 8th, after this issue came up.  And then, the last page

24  -- and it's a little bit harder to see -- but one of the phones

25  is on the couch next to her.

1               THE COURT:   What?  I can't see that.

2               MR. BARNES:   It's -

3               THE COURT:   It's black.

4               MR. BARNES:   You'll see it if you look at the bottom

5 of it.  It's a little bit harder to see.  But, regardless, the

6 other pictures show it more clearly of all the devices she had.

7               Now, let me explain about the device that she did

8 return, Your Honor.  She did return, the day after she resigned

9 on -- she resigned on August 7th.  And she returned the laptop

10 on August 8th.

11               That laptop was factory reset.  So, everything was

12 taken off, when it was returned, including all MEF data.  There

13 was a prior Preservation Notice before that.  So obviously it

14 shouldn't have been wiped clean, anyway.  So we've got an issue

15 of preservation.  But, Your Honor, it looks like -

16               THE COURT:   What was returned was wiped clean?

17               MR. BARNES:   Wiped clean, that the laptop that she

18 returned to the company was wiped clean.

19               THE COURT:   So you did a forensics on the laptop

20 afterwards?

Case 5:19-cv-02981-JS  Document 28-1  Filed 07/28/20  Page 22 of 80

21               MR. BARNES:   So we have.  And that information is

22 obviously wiped clean.  My understanding is because there was a

23 Preservation Notice actually sent by Opposing Counsel that she

24 was not going to wipe clean information that she thought was

25 going to be helpful.

 1          So we see that there were -- the forensics sees that
 2   there were devices put in -- storage devices put in.  So, they
 3   must have an image of this laptop.  And that's why we talk
 4   about what's in the Cloud or what's on these other devices,
 5   storage devices, like hard drives.
 6          Your Honor, also, because right before she left, she
 7   was sending stuff to her own Gmail.  And we do have some record
 8   that, right before she was leaving, she deleted a lot of files
 9   from the server, and she looks like she sent things to herself,
10   to her own Gmail.
11          So, if he says, well, the only thing she had was this
12   laptop and it was returned, well, it was returned wiped clean.
13   She sent things to her own Gmail.  And it looks like she
14   inserted devices in it so that she could copy information onto
15   that laptop.
16          But we have been unable to recover the data from that
17   laptop.  And I find that hard to believe after he's sent a
18   Preservation Notice that he wouldn't have reserved, or saved,
19   the information on that laptop.
20          You either have a spoliation issue, because she

Case 2:19-cv-02981-JS   Document 38-1   Filed 07/28/20   Page 23 of 80

21   destroyed it all, or they have it.  I don't know which choice
22   they're going to make.
23          But, Your Honor, these are the devices that were in
24   existence, that she was using, posting about, while she was
25   working with the company.  We've actually got pictures of her

1  using the Microsoft Surface for work with the work information

2  on it.  And so, that's the information we're after.

3          We didn't expect to be here, to have to come back,

4  Your Honor, especially after it was contemplated that all of

5  this information in these devices were going to be returned on

6  January 6th and that we'd have enough time to get the review

7  done by an Expert, to, then, have time to search it.  And then,

8  review it, so we could have this injunction hearing.

9          Your Honor, especially with the deletion of

10 information, it causes us great concern, especially when, the

11 night before the hearing, we get the Answers to Interrogatories

12 and the Answers to the Requests for Production of Documents,

13 one of which is for the image of these materials.

14         They're unverified.  They're unsigned by Counsel.

15 And there are obviously statements in there that we have great

16 concern about.  And we can certainly talk about that at the

17 appropriate time.  But the main issue that we're concerned

18 about are these devices.

19         THE COURT:   Okay.

20         MR. CARSON:   Can I -

21         THE COURT:   Briefly?

22         MR. CARSON:   - respond?

23         THE COURT:   Go ahead.

24         MR. CARSON:   You want me to come up?

25         THE COURT:   Yeah, yes.

1    MR. CARSON:   Your Honor, MEF bought her a laptop

2  that she used for work and for personal reasons, too.  It was

3  the laptop that she had.  It was her only laptop.

4         So, I never took any image of the laptop.  And the

5  Preservation Letter that they're saying they sent my Client was

6  a Preservation Letter I sent them to preserve their

7  information.  They never sent my Client a Preservation Letter.

8         We had no indication that this case was even

9  considered, or conceptualized, at the time she left MEF.  So

10 when she left MEF, she worked with MEF and said, hey, I'm going

11 to return my laptop.  And before I return it, I don't want all

12 my personal information on my laptop going back to my former

13 Employer that I'm involved in litigation with for sexual

14 assault and sexual harassment.  So she reset her laptop.  She

15 did a hard reset and then returned it to them.

16        This case is about making sure she doesn't have

17 information.  So erasing information to make sure she doesn't

18 have access to it shouldn't be a concern in this case.

19        She's never erased, never destroyed, never moved,

20 looked at, thought about any of the information in this case.

Case 2:19-cv-02801-JS  Document 28-1  Filed 07/31/20  Page 25 of 80

21 Everything is today where it was when we'd spoke in December,

22 and where it was when she left MEF.  The pictures -

23        THE COURT:   So I'm hearing this -

24        MR. CARSON:   - that they're -

25        THE COURT:   - from you.  I'm not hearing it from

1    her.  And she's not under oath.

2         MR. CARSON:  I understand that.

3         THE COURT:  And I'm hearing a different view, or a

4    different statement, from your Opponent -

5         MR. CARSON:  Yeah.

6         THE COURT:  - with regards to the laptop that she

7    turned in and the fact that that laptop obviously -- well,

8    information was deleted from.  I don't know what that

9    information is, could be personal.  It could not be personal.

10    We don't know.  I don't know.  All they want is for you to

11    produce those images so that they could confirm.  And they're -

12         MR. CARSON:  Yeah.

13         THE COURT:  - entitled to do that.

14         MR. CARSON:  Yeah, we're fine.  I've been fine.

15    I've communicated.

16         THE COURT:  All right.  So why are you here?  If

17    we're fine, why are you here nine days later?

18         MR. CARSON:  To -

19         THE COURT:  And they still don't have the devices,

20    the imaging of the three devices -

21         MR. CARSON:  Well, they're -

22         THE COURT:  - that they have now identified here in

23    these documents.

24         MR. CARSON:  There's only one device.  The three

25    devices in these documents -- these pictures aren't recent

```
1   information -- not information, but other terms that may
2   identify privileged information?
3           MR. BARNES:   Only for privilege of what's excluded
4   from what the -
5           THE COURT:   Agreed.
6           MR. BARNES:   - Vendor is pulling.  So, if he wants
7   to put his firm name, his Lawyer's name, that's fine.  That's
8   what's going to be excluded.  Everything else is what's
9   distributed.
10          And then, it's Attorneys' eyes only.  It's pursuant
11  to the Protective Order.  And both of us can search.  We have
12  equal footing to the information.
13          MR. CARSON:   Every single other communication on her
14  phone, including personal communications between her and her
15  husband, naked pictures?  Your Honor, that's not fair.  You
16  know what I mean?  Like, it's her personal device.  Her bank
17  account -
18          THE COURT:   They're not going to -
19          MR. CARSON:   Like so -
20          MR. BARNES:   We're not going to use that.  I -
21          MR. CARSON:   It doesn't matter.  It shouldn't be
22  turned over.  It's an overly broad, unduly burdensome request.
23  And it shouldn't be turned over.  It's not reasonable.
24          The Parties should agree on the terms of what gets
25  turned over.  And the only information that should be
```

1    discoverable is information that's proportional to the needs of

2    the case.  That's what the Federal Rules require.

3              THE COURT:  All right.

4              MR. BARNES:  Your Honor -

5              MR. CARSON:  So -

6              MR. BARNES:  - here's where -

7              THE COURT:  He makes a good point on that, because

8    you're not going to go through these things.  And so, I think

9    you should identify what is it exactly that you're looking for.

10             MR. BARNES:  No, Your Honor, we -

11             THE COURT:  You should not be able to get the whole

12   universe.

13             MR. BARNES:  - are -

14             THE COURT:  I agree with that.  You got to narrow

15   your request.

16             MR. BARNES:  - not in equal position right now,

17   because we don't know what she took from the company.  It

18   couldn't be that we have to identify what she took.  That's why

19   we're going to have to put everybody on an equal footing.  So -

20             THE COURT:  But, what are you concerned about?

Case 2:19-cv-05091-JS  Document 28-1  Filed 07/18/20  Page 28 of 80

21   You're not concerned with naked pictures.

22             MR. BARNES:  I'm not concerned with naked pictures.

23   And then -

24             THE COURT:  But you're going to get them.

25             MR. BARNES:  Well, I hope they're not on there,

1 Your Honor.  But, he -

2          THE COURT:   Well, if he's asking the question,

3 perhaps you're going to get something like that.

4          MR. BARNES:   Well, that is not something that we're

5 concerned about.  Your Honor, what we're concerned about is

6 information that was company-related information that we can't

7 necessarily come up with a term of what's in there.

8          We didn't take this information.  We shouldn't be the

9 ones that are having to come up with and guess what terms are

10 going to cover information that's on these -

11          MR. CARSON:   What they're talking -

12          MR. BARNES:   - phones.

13          MR. CARSON:   - about is a fishing expedition.

14          THE COURT:   Well -

15          MR. CARSON:   That's what they're saying.  They're

16 saying -

17          THE COURT:   - you don't want to produce anything.

18          MR. BARNES:   I would -

19          THE COURT:   Perhaps -

20          MR. CARSON:   I want to produce everything.  But,

Case 2:18-cv-05091-JS  Document 28-1  Filed 01/08/20  Page 29 of 80

21 what I don't want is I don't want them to say, we don't know

22 what it is.  So we just want to see everything, and then we

23 will figure out how to write an Amended Complaint.

24          Their Complaint is what sets forth what this case is

25 about.  What governs the proportional needs of the case is

1  their allegations in their Complaint.

2  So they can't say give us everything and then we will

3  decide what is relevant.  Well, we have to agree on what's

4  relevant before it gets turned over.

5  MR. BARNES:  Your Honor, that's the issue here is he

6  doesn't get to decide what's relevant.  And here we have a

7  situation -

8  MR. CARSON:  No, the Complaint decides.

9  MR. BARNES:  - that an Employee -

10  THE COURT:  Excuse me.  Excuse me.  Agree?

11  MR. BARNES:  Here, we have an Employee who's taken

12  information from the company.  We're not even getting a

13  straight answer about how many devices she has.

14  She has deleted information that she wasn't supposed

15  to delete.  She has downloaded information.  She has sent it to

16  her home Gmail.

17  We don't know all of what she's sent, because it's

18  been deleted.  And she's following her tracks and taking off

19  what we think we're entitled to.  That is information that we

20  couldn't necessarily include in the Complaint.

Case 2:18-cv-05061-22  Document 28-1  Filed 01/18/20  Page 30 of 80

21  THE COURT:  But what is it that you identify that

22  you think she took?

23  MR. BARNES:  Because we do know some things where we

24  have -

25  THE COURT:  What did she take?  I mean, you know -

# C E R T I F I C A T I O N

I, <u>VICTORIA O'CONNOR</u>, court-approved transcriber,
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter.


_____*Victoria O'Connor*_____          _____01/24/2020_____
   Victoria O'Connor, CET                    Date

O'CONNOR LEGAL, MEDICAL & MEDIA SERVICES LLC
603.865.1255 • 888.524.5596
www.oconnorlmms.com

# Exhibit 5

**From:** Seth Carson <seth@dereksmithlaw.com>
**Date:** December 17, 2019 at 1:19:38 PM EST
**To:** Sidney Gold <sgold@discrimlaw.net>
**Subject: Re:  MEF**

I am going to file a motion to dismiss.  I also have to file a opposition to the motion for preliminary injunction.  I will also oppose the motion for expedited discovery.

I am surprised that you think this frivolous, retaliatory lawsuit against Ms. Barbounis was anything but terrible idea.  I think you have exercised bad judgment in bringing the claims.  We do not agree to Defendants motion.
'
I would suggest that you withdraw the claim today.  If you do withdraw the suit voluntarily, I will not include damages for retaliation in the matter of Lisa Barbounis v. MEF.  If you do not voluntarily withdraw the case, Plaintiff, Lisa Barbounis will have no choice but to pursue damages for the legal fees she incurred as a result of your clients transparent retaliatory act.

Sidney, your client is not being straight with you.  None of the claims in your complaint are valid. Not one!  If the matter is not dismissed at the preliminary stage, you are going to learn this for yourself when we do exchange discovery.

First, Ms. Barbounis never had a personal laptop. The only laptop she used during her employment for Defendants was the company laptop that MEF purchased for Ms. Barbounis and that Ms. Barbounis returned when she was unlawfully terminated by your client.  Your client is in possession of the laptop referenced in Defendants' complaint.

Second: some of the information which Defendants allege Ms. Barbounis has in her possession is subject to Freedom of Information Act.  It is not sensitive,

proprietary information owned by your client and your client's attempt to label it as such evidences your client's bad faith in filing the complaint.

Third:  other information referenced in Defendants' complaint is information that was purchased from a third online subscription service.  I could subscribe to the service today and access the same information your client has laid claim to.  Your client's attempt to characterize this information as sensitive, proprietary information owned by MEF also indicates your client's bad faith.

Last:  Lisa is not in possession of any proprietary, sensitive information owned by MEF.  She did her job, and was terminated.  Since she left MEF she has not accessed, used, considered, or attempted to access or use any information referenced in Defendant's complaint.  The fact that some information might still exist in an old Google drive or sent mail folder does not create a legal claim.

The decision to file the complaint against Ms. Barbounis was bad judgment.  I would ask that you withdraw it immediately or risk creating further claims for damages relative to Ms. Barbounis's suit against MEF.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Tuesday, December 17, 2019 12:52 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** Re: MEF

MEF v Barbounis.

Sent from my iPhone


On Dec 17, 2019, at 12:51 PM, Seth Carson <seth@dereksmithlaw.com> wrote:


I have been in deps the last couple days - Friday, Monday.  I have not
reviewed the motion yet.  Are you referring to MEF v. Barbounis or
the other three cases?


Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com


CONFIDENTIALITY NOTE: The information contained in this transmission is
privileged and confidential information intended only for the use of the
individual or entity named above. If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If you have
received this transmission in error, do not read it. Please immediately reply to
the sender that you have received this communication in error and then
delete it. Thank you.


**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Tuesday, December 17, 2019 9:52 AM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** MEF

Seth, Are you amenable to signing a stipulated order relative to our motion for expedited discovery. Sid

Sent from my iPhone

# EXHIBIT 6

# Photo Taken November 27, 2018



# Photo Taken November 22, 2018



# Photo Taken January 21, 2018



# Photo Taken May 17, 2019



# Taken Unkown Date



# Photo Taken Late November 2018



# Photo Taken August 1, 2019



# Photo Taken June 2, 2019



# Photo Taken September 28, 2019



# Exhibit 7

# Photo Taken March 20, 2018



Middle East Forum
2017 Budget

Schedule I

**PROJECTED REVE**

GENERAL OPERATING SUPPORT
Board Donations
Non-Board Donations
Admin Fee
Book Sales, Royalties, Advertising
Interest and Dividends
DONATIONS EARMARKED FOR PROJECTS
Campus Watch
Islamist Watch
Israel Victory Project
Jerusalem Ethics Forum
Legal Project
UNRWA
Writing Fellows
MEF Education Fund – A.D.
MEF Education Fund – Research and Activism
    Total Revenue

**PROJECTED EXPENSE**

GENERAL OPERATING SUPPORT
Accounting
Administrative Salaries
Bank Fees
Books
Consultants
Dues & Fees
Educational Outreach
Fundraising
Insurance
Office Expenses
Office Supplies
Postage
Public Outreach
Rent and Utilities
Research & Analysis
Telephone                    SUB-TOTAL

PROJECT EXPENSES
Campus Watch
Islamist Watch
Israel Victory Project
Jerusalem Ethics Forum
Legal Project
MEF Events
MEF TV
MEQ
UNRWA                        Page 2

# Exhibit 8

**Vázquez, Martha**

| | |
|---|---|
| **From:** | Vázquez, Martha |
| **Sent:** | Wednesday, January 15, 2020 4:25 PM |
| **To:** | 'chambers_of_chief_judge_sanchez@paed.uscourts.gov' |
| **Cc:** | Barnes III, Attison; Sidney Gold; 'seth@dereksmithlaw.com' |
| **Subject:** | Agreed Expedited Discovery Order |
| **Attachments:** | Order for Expedited Discovery.docx |

Hello,

Please find attached the agreed Order for the The Middle East Forum v. Barbounis.

Thank you,
Martha



Martha G. Vázquez
Attorney at Law
mvazquez@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.4496
Download V-Card | wiley.law

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM           :
1650 Market Street, Suite 3600
Philadelphia, PA 19103,             :

                              :

        Plaintiff,           :

vs.                        :     Civil Action No.: 2:19-cv-5697

                                :

LISA REYNOLDS-BARBOUNIS    :
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,             :

                                :

        Defendant.        :

## <u>ORDER FOR EXPEDITED DISCOVERY</u>

It appearing to the Court that it is just and proper to do so and that good cause has been shown, Plaintiff's Motion for Expedited Discovery ("Plaintiff's Motion") shall be, and hereby is, ORDERED as follows:

1.      On or before 5:00 PM EST on Thursday, January 16, 2020, Defendant shall verify under oath her answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents and produce all remaining responsive documents and things to Plaintiffs, including, but not limited to, the voice recordings.  With respect to documents and other tangible things that are responsive to the requests, Defendant shall deliver electronic copies to Plaintiff's counsel in a format acceptable to Plaintiff's counsel and in a format which preserves and does not alter any and all existing metadata.

2.      Defendant shall immediately preserve all related documents and files, including all metadata, and shall take steps to prevent the deletion, destruction, or loss of all information, documents, and other hard copy and electronic materials related to the claims raised in the

Complaint, including, but not limited to: (a) information, documents, and tangible things that are responsive to the discovery requests attached as Exhibit A to Plaintiff's Motion, (b) information, documents, and other tangible things, including email communications and other electronic data, stored on Defendant's computer hard drives, USB drives, and external hard drives, as well as the hard drives themselves, and (c) any other information, documents, or tangible things that are either relevant to the claims made in the Complaint or that may lead to the discovery of admissible evidence.

3.      On or before 5:00 PM EST Friday, January 17, 2020, Defendant shall supply to the discovery vendor Cornerstone Discovery ("Cornerstone") (attention Lou Cinquanto) all electronic devise(s), including, but not limited to, cellular telephones (including, but not limited to, the three devices depicted in her social media post dated on or around November 27, 2019), all laptops and computers (including the Microsoft Surface that was depicted in her social media post dated November 22, 2018), and any other devices, and any cloud-based storage accounts connected to those devices (including, but not limited to, iCloud accounts, Dropbox, WhatsApp backups, Telegram, Google Drive, Facebook, and Wickr).

4.      The parties shall share the cost equally for imaging (and obtaining all available metadata for): (i) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (ii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF

and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

5.       Cornerstone shall only exclude from its imaging of these devices the following: (1) emails, texts, and other communications to or from Seth Carson, Derek Smith Law Group (e-mail: seth@dereksmithlaw.com and phone: 484-678-2210 ), Mike Yoder (phone: 202-595-4504), Patrick Sandman (phone: 609-457-6029); (2) emails, texts, and other communications to or from Vasili Barbounis (phone: 215.439.1002), Jane Reynolds (phone: 856-287-1436), Greg Reynolds (267-761-8622),  David Reynolds (856-287-1602), and email addresses coming to or from a state.gov domain, except if such emails, texts, and other communications mention The Middle East Forum ("MEF") or its principals Daniel Pipes, Gregg Roman, or Marc Fink, and if a text message chain to or from Vasili Barbounis mentions such entity or individuals, the text chain for a 12 hour period before and after that time shall be captured; (3) emails, texts, and other communications with Randy Weber (email: randy@randyweber.org, phone: 281-744-7300, 281-480-8914), Ryan Costello (phone: 610-504-3296), Chara McMicheal, except if such emails, texts, and other communications mention The Middle East Forum ("MEF") or its principals Daniel Pipes, Gregg Roman, or Marc Fink, and if a text message chain to or from Randy Weber, Ryan Costello, and/or Chara McMicheal mentions such entity or individuals, the text chain for a 12 hour period before and after that time shall be captured.

6.       All images recovered by Cornerstone shall be jointly reviewed by Mr. Seth Carson and Ms. Martha Vázquez with a Cornerstone representative for relevance at a time mutually agreeable to both attorneys.

7.      All data, images, documents, and other information obtained from Barbounis' devices shall be subject to Attorney's Eyes Only.

8.      Cornerstone shall endeavor provide the data and information by Monday, January 20, 2020.


SO ORDERED this _____ day of January, 2020.


_____

United States District Court Judge Sanchez

# Exhibit 9



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 25, 2019

Mr. Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:     The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

On Tuesday, November 12, 2019, my colleague forwarded to you three affidavits in an attempt to ensure that MEF's data had been protected and to avoid a dispute. On Friday, November 15, 2019, you requested that I provided Word versions of proposed affidavits for your review and discussion with your clients, and I was led to believe that you and your clients wished to resolve this matter amicably. Then, you revealed that your clients had "erased information" which justifiably caused concern and a need to determine why information had not been preserved by your clients. I asked that your clients not destroy any other evidence and that we should work together to determine the circumstances of the destruction. In your November 18 e-mail, however, you abruptly reversed course, suggesting that your clients may not sign affidavits to address the MEF information which they possessed. I had assumed that your clients would prefer to reach an amicable solution with respect to MEF's data. Needless to say, MEF is troubled by these developments.

MEF is similarly troubled by the representation in your November 18, 2019 email that your clients "destroyed almost everything in accordance with their responsibilities." After you made a representation in your November 15 e-mail to me that your clients had "erased information . . . in accordance with the employee handbook," I asked in my November 17 response that you identify a provision in the handbook on which you rely. You identified no such provision. Moreover, your representation that your clients destroyed "almost everything" necessarily means that they still possess some information. On these facts, I would expect that you and your clients would desire to cooperate as requested.

Instead, your knee-jerk reaction was to claim retaliation (perhaps in an attempt to gain some tactical or pecuniary advantage without basis), but again, MEF is merely seeking to protect company information. By seeking an amicable solution, I trust you recognize that our goal has been to *avoid* legal claims, not to harass or retaliate against anyone. I do not believe your clients dispute that they possessed confidential MEF information, including proposals, donor lists, and pictures of donor checks. It should come as no surprise it would pose a risk to the organization if such information were to be disclosed (by your clients or anyone else) to members of the public, and for your clients, it would represent a violation of their continuing confidentiality obligations

to MEF. In good faith, MEF therefore seeks the proper assurances from your clients without the need to engage in legal action.

I write to make a final, good faith attempt to ensure that the organization's confidential information is accounted for and ultimately deleted from your clients' devices, personal e-mails accounts, or wherever else this information may reside. By the close of business on Wednesday, November 27, 2019, please have your clients sign a Stipulated Temporary Restraining Order ("Stipulated TRO") setting forth the necessary assurances regarding data belonging to MEF and/or its donors. Attached is the Stipulated TRO for Ms. Barbounis, and assuming we stipulate, we can execute Stipulated TROs for Ms. Yonchek and Ms. Brady on the same terms.

Please note that if you and your clients do not agree to sign a Stipulated TRO by the date provided, you will leave MEF no option but to enforce its rights to protect its confidential information. All rights are reserved.

Very truly yours,

Attison L. Barnes, III

cc:     The Middle East Forum

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM
1650 Market Street, Suite 3600
Philadelphia, PA 19103,

Civil Action No. _____

                    Plaintiff,

v.

LISA REYNOLDS-BARBOUNIS
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,

                    Defendant.

## STIPULATED TEMPORARY RESTRAINING ORDER

AND NOW, on this _____ day of November, 2019, upon the motion for entry of this Stipulated Temporary Restraining Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.     MEF and Barbounis have stipulated and agreed to entry of this Temporary Restraining Order, and without a finding by the Court of law or fact other than as stated below.

2.     The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.     Venue lies properly with this Court.

4.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.     Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.      No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

10.     The entry of this Order is in the public interest.

## **ORDER**

IT IS THEREFORE ORDERED that:

A.      Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.      Barbounis immediately return to MEF all documents and materials (hard copy and electronic) belonging to MEF and/or its donors;

C.      Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

D.     Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

E.     Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

SO ORDERED this _____ day of _____, 2019.

By:     _____

              United States District Court Judge

AGREED:

_____

*Counsel for Plaintiff The Middle East Forum*

_____

*Counsel for Defendant Lisa Reynolds-Barbounis*

# Exhibit 10

## THE DEFENDANT'S CONFLICTING REPRESENTATIONS
### *MEF v. Barbounis*, 2:19-cv-5697 (E.D. Pa.)

| Defendant's Representation | Defendant's Conflicting Representation |
|---|---|
| In early November 2019, Defendant denies possession of confidential MEF information:<br><br>• "Lisa Barbounis is not in possession of any confidential information." Ex. 11, Email from Seth Carson to Attison Barnes, November 5, 2019. | Later, Defendant admits to possessing MEF confidential information:<br><br>• Defendant's initial response to interrogatory No. 1 lists multiple files of confidential MEF that Defendant has in her possession, including a General Operating Support document prepared for the [REDACTED] Foundation and "several voice memos that Lisa Barbounis had stored on her phone which were recorded at the direction of Director of the Middle East Forum, Greg Roman and which were made in the course and scope of Lisa Barbounis's employment." Dkt. 23-4, Exhibit C, Defendant's Initial Responses to Plaintiff's Interrogatories and Request for Production at 11.<br><br>• "The fact that some information might still exist in an old Google drive or sent mail folder does not create a legal claim." Ex. 5, Dec. 17, 2019 Letter at 2. |
| In November 2019, Defendant admits to erasing MEF data:<br><br>• "Lisa Barbounis has taken steps to erase and/or destroy any information she had access to during her employment for The Middle East Forum." Ex. 11, Email from Seth Carson to Attison Barnes, November 5, 2019. | Defendant now denies that she erased MEF data:<br><br>• Answer to Request for Production No. 4: "Defendant's counsel did not state that any information was erased from any device owned or used by Lisa Barbounis." Dkt. 23-4, Exhibit C, Defendant's Initial Responses to Plaintiff's Interrogatories and Request for Production at 11. |
| Defense counsel claims that Defendant possesses only one phone:<br><br>• "…so first of all, there's not four – there's one device. She doesn't have two laptops. She doesn't have three cellphone – she has one cellphone, one. Okay? And it's the only phone she has." Ex. 4, Transcript of January 15, 2020 Hearing at 17.<br><br>• "There's only one device." Ex. 4, Transcript of January 15, 2020 Hearing at 25. | Defendant now admits that she owns multiple phones:<br><br>• "Accordingly, by November 27, 2019, I had three phones in my possession." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 5.<br><br>• "Presently there are only two iPhones in my possession." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 6. |

1

## THE DEFENDANT'S CONFLICTING REPRESENTATIONS
### *MEF v. Barbounis*, 2:19-cv-5697 (E.D. Pa.)

| | |
|---|---|
| • "Well, Your Honor, she has one device." Ex. 4, Transcript of January 15, 2020 Hearing at 30. | |
| Defendant and defense counsel claim that Defendant had only one laptop:<br><br>• Counsel for Defendant says referring to Defendant's Apple Notebook, "… the laptop that she had.  It was her only laptop." Ex. 4, Transcript of January 15, 2020 Hearing at 24.<br><br>• Defendant's initial answer to Interrogatory No. 1 states, "[b]y way of further answer, Lisa Barbounis does not own a personal computer and never used a personal computer for work. The only computer Lisa Barbounis used during her employment for MEF, was a laptop computer that was purchased by MEF for Lisa Barbounis to use during her employment with MEF. Lisa Barbounis returned this laptop to MEF after her employment ended.  Interrogatory 1 relates exclusively to information Lisa Barbounis had in her possession, custody, or control when her employment ended. And Lisa Barbounis returned the MEF laptop at the time her employment ended." Dkt. 23-4, Exhibit C, Defendant's Initial Responses to Plaintiff's Interrogatories and Request for Production at 8. | After Plaintiff found pictures of another laptop on social media, Defendant now admits in a sworn declaration that she had more than one laptop:<br><br>• "During the time period when I was employed by MEF, I also owned a Microsoft Surface laptop computer…During my employment for MEF, I was  required to work from home and work remotely and during these times I utilized my personal laptop, identified above as a Microsoft Surface." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 3. |
| Defendant claims to have never copied, extracted, or retrieved data from the Apple Laptop she used at MEF:<br><br>• "I did not copy, download, extract, or attempt to retrieve in any way any of the information contained in the MEF Apple laptop computer prior to returning the Apple laptop to MEF through MEF's CFO, Marnie Meyer." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 4. | While Plaintiff is still investigating the factory-reset laptop Defendant returned to MEF, it appears that 6 different USB storage devices were used on this laptop before it was wiped of all information.  None of these storage devices have been produced for recovery and imaging. |

## THE DEFENDANT'S CONFLICTING REPRESENTATIONS
### *MEF v. Barbounis*, 2:19-cv-5697 (E.D. Pa.)

| | |
|---|---|
| Defendant claims that MEF employee instructed her to factory reset Apple Macbook laptop:<br><br>• Defendant states in a sworn declaration, "[w]hen my employment with MEF ended, I informed Mamie Meyer [sic] [MEF director of finance and operations] that I would be returning the Apple laptop. Marnie Meyer instructed me to return the device to its original condition by resetting the device to its original factory settings. I followed the instructions of MEF's CFO [sic], Marnie Meyer, and performed a factory reset and returned the Apple laptop to Mamie Meyer within a day or two of my last day working at MEF." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 3.<br><br>• Defendant states, "I did not copy, download, extract, or attempt to retrieve in any way any of the information contained in the MEF Apple laptop computer prior to returning the Apple laptop to MEF through MEF's CFO, Mamie Meyer." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 3. | Defendant now claims that factory resetting Apple Macbook laptop was due to concerns about personal information, not an instruction from an MEF representative:<br><br>• Defense counsel says in hearing, "[s]o when she left MEF, she worked with MEF and said, hey, I'm going to return my laptop. And before I return it, I don't want all my personal information on my laptop going back to my former Employer ... So she reset her laptop. She did a hard reset and then returned it to them." Ex. 4, Transcript of January 15, 2020 Hearing at 24. |
| Defendant's claims that she used a Verizon cell phone:<br><br>• "When my employment for MEF began, my cellular telephone was an iPhone which I believe was an iPhone 8. My cell phone carrier at that time was Verizon Wireless." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 1.<br><br>• "All phones and devices connected with the Verizon Account and Sprint Account, referenced within this Declaration, including all devices referenced in this Declaration, are or were in the name of Visili Barbounis and were part of a family plan." Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 1. | Defendant had AT&T cell phone:<br><br>• One Apple 64GB iPhone (Serial 340000009362654) that Ms. Barbounis used as late as May, 2019 was financed by AT&T – in an account acquired on Feb 10, 2019 with 30 monthly payments according to phone bills Ms. Barbounis submitted for reimbursement to the Middle East Forum.<br><br>• In addition, all insurance documents that Ms. Barbounis refers to in her signed declaration come from a company that works with AT&T – not Sprint or Verizon. *See* Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis. |

## THE DEFENDANT'S CONFLICTING REPRESENTATIONS
### *MEF v. Barbounis*, 2:19-cv-5697 (E.D. Pa.)

| Defendant has denied engaging in any suspect behavior: | Since that time, it was revealed: |
|---|---|
| • "I did not copy, download, extract, or attempt to retrieve in any way any of the information contained in the MEF Apple laptop computer prior to returning the Apple laptop to MEF through MEF's CFO, Marnie Meyer."  Dkt. 23-2, Exhibit A, Declaration of Lisa Reynolds-Barbounis at 4. | • Defendant conceded that the laptop was factory reset and all information was deleted despite a preservation notice sent to her by MEF a couple months earlier in June 2019.<br><br>• After initially denying that she had a personal laptop (Microsoft Surface) until the picture was found by Plaintiff on social media, she claims that he husband "disposed of" it.<br><br>• After initially denying that she had additional phones until Plaintiff located pictures of them on social media, Defendant claims she disposed of a phone in August 2019 around the time she left MEF.<br><br>• After initially denying that she had additional phones until Plaintiff located pictures of them on social media, Defendant admits that she had at least one other phone.<br><br>• Defendant apparently used 6 USB storage devices on the MEF workstation computer that are not currently in the possession of MEF. |

# Exhibit 11

**From:**         Seth Carson <seth@dereksmithlaw.com>
**Sent:**         Tuesday, November 5, 2019 7:44 PM
**To:**           Barnes III, Attison
**Subject:**      Lisa Barbounis, Caitriona Brady, and Delaney Yonchek

Attison,

I am in receipt of three letters that you sent my clients, Lisa Barbounis, Caitriona Brady, and Delaney Yonchek in connection with their former employment at The Middle East Forum.  I am happy to respond for each client, however, I would first like to notify you that I represent Lisa Barbounis, Caitriona Brady, and Delaney Yonchek in connection with this matter.  I would therefore ask that you forward all future communications directly to my attention.

Regarding the information contained in the demand letters sent: Lisa Barbounis, Caitriona Brady, and Delaney Yonchek have no obligation to execute affidavits or any other sworn statement in connection with the frivolous claims made by your client.  It is clear that the information referenced in the letters has been garnered from in investigation into legitimate business activities related to my clients' employment at The Middle East Forum.  For example, you referenced "the Hootsuite" project in your letter to Delaney Yonchek.  The reason you are aware of this information is because Delaney Yonchek used her personal Google Drive account to originate a document used in the Hootsuite project.  This document was shared with Matthew Bennet's MEF email account, which your client has access to.  During their employment for The Middle East Forum, MEF employees were required to use personal G-mail accounts as the MEF did not maintain Google's Business Suite until March 2019.  All the information identified in your letters originates in a similar manner.   My clients have not accessed, used, viewed, shared, disseminated, or discussed any MEF information since their employment with The Middle East Forum and your client has no reason to believe that they have.

Lisa Barbounis, Caitriona Brady, and Delaney Yonchek have every intention of cooperating with MEF and complying with their legal obligations and have in no way and at no time violated any obligation or legal duty owed by virtue of contract, equity or law.

Perhaps a telephone conversation would be productive.  Please contact me at 215.391.4790 or directly at 484.678.2210.  You may also email me at Seth@DerekSmithLaw.com.  I think it will productive to simply identify specific areas of concern and agree upon steps to alleviate

those concerns for each individual.  My clients however will not execute affidavits or sworn statements as they have no legal duty to do so and your client has no reason to request such extreme measures.

I have spoken to each of my clients at length about the allegations articulated in the letters sent.  The allegations raised by your client are not based upon unlawful or improper actions taken by my clients.

Lisa Barbounis, Caitriona Brady, and Delaney Yonchek have no intention of violating the terms of any agreement they may have entered into during their employment for The Middle East Forum.

Today, Caitriona Brady is a Developer Assistant at the Franklin Institute.  I would point out that the target market of donors for The Middle East Forum differs greatly from those of the Franklin Institute.  Caitriona Brady's current employment does not include working with donors and she maintains no communication with any individuals who she was required to work with during her employment for The Middle East Forum.  Caitriona Brady has not violated any obligation to The Middle East Forum and will not.

Delaney Yonchek also no longer works in a field which relates in any way to The Middle East Forum.  Delaney Yonchek holds a position for a government contractor for the United States Marshall Service as a program analyst.  Accordingly, information and documents she used during her employment at The Middle East Forum hold absolutely no value or relevance to Delaney Yonchek.  Delaney Yonchek has not violated any obligation to The Middle East Forum and will not.

The concerns outlined in the letter to Lisa Barbounis are equally frivolous.  Lisa Barbounis is not in possession of any confidential information and has in no way violated any duties owed to The Middle East Forum.  Lisa Barbounis has taken steps to erase and/or destroy any information she had access to during her employment for The Middle East Forum.  Lisa Barbounis has not violated any obligation to The Middle East Forum and will not.

Again, I suggest that you contact me if you would like to discuss this matter further.


Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.