## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

|                                   |     |                          |
|-----------------------------------|-----|--------------------------|
| THE MIDDLE EAST FORUM             | :   | CIVIL ACTION             |
|                                   | :   | NO.    2:19-cv-05697-JS  |
| Plaintiff,                        | :   |                          |
| v.                                | :   |                          |
|                                   | :   |                          |
| LISA REYNOLDS-BARBOUNIS           | :   | MOTION FOR SANCTIONS     |
|                                   | :   |                          |
| Defendant.                        | :   |                          |

### MEMORANDUM OF LAW IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### I.      INTRODUCTION

Defendant, Lisa Reynolds-Barbounis ("Defendant" or "Ms. Barbounis") hereby files this

Memorandum of Law in Opposition to Plaintiff, The Middle East Forum's ("MEF" or

"Plaintiff") Motion for Preliminary Injunction.   Plaintiff, Lisa Barbounis is a former employee

of The Middle East Forum. Ms. Barbounis began her employment in September 2017 and

remained employed until Ms. Barbounis was constructively discharged August 2019 after more

than a year of severe and pervasive sexual harassment which included the unwelcome sexual

contact by Director of The Middle East Forum, Greg Roman.

MEF was founded in 1994, and in its more than twenty-five (25) year history, MEF has

never attacked a former employee in the likes indicated by the instant civil action.  The record of

evidence clearly indicates that MEF employees regularly used personal email accounts including

Director of The Middle East Forum, Greg Roman.  MEF has never attempted to go after a former

employee  by asking that personal email accounts be searched and all communications related to

MEF be systematically erased.  Some MEF information may remain in the possession, custody,

or control of Defendant, Lisa Barbounis solely because of happenstance.  If an employee uses a personal email account during her employment, dated messages in a "sent mail" folder may remain.  The same can be said for applications and accounts.  At no time did Lisa Barbounis engage in unlawful conduct designed to impact the rights of MEF or its corporate officers, and MEF is unable to substantiate a single one of these allegations.

All of the so called evidence in this case dates back to well before Ms. Barbounis's constructive discharge.  Accordingly, MEF is attempting to sustain a Civil Action and Motion for Preliminary Injunction by using examples of Ms. Barbounis simply doing her job.  The instant civil action was brought against Ms. Barbounis for a single reason: to harass, embarrass, and retaliate against Ms. Barbounis because of Ms. Barbounis's lawful Charge of Discrimination filed with the EEOC and the ensuing civil action complaint filed against MEF and Greg Roman in this very Court.

Accordingly, there is no record of evidence to support Plaintiff's frivolous, misleading Motion for Preliminary Injunction.  Plaintiff's originally filed Civil Action Complaint was facially deficient which led to the filing of Plaintiff's First Amended Complaint on January 15, 2020.  Notwithstanding, Plaintiff's attempts to cure the apparent deficiencies presented in its originally filed Complaint, Plaintiff has failed entirely to satisfy the strict elements necessary to warrant preliminary injunctive relief.  Plaintiff's Motion for Injunctive Relief is based upon specious conclusory allegations that fall apart under scrutiny.  Plaintiff is unable claim a single dollar in actual damages caused by the so called violation of Ms. Barbounis's Non-Disclosure Agreement.  Any damages incurred by Plaintiff were manufactured by Plaintiff's unreasonable actions in pursuing the instant litigation.

Ms. Barbounis ended her employment for The Middle East Forum and almost

immediately began new employment with the United States House of Representatives. Ms.

Barbounis has not used, considered, altered, downloaded, viewed, appropriated, disseminated, or

compromised any MEF information since her employment with MEF ended. MEF has not and

cannot claim that Ms. Barbounis has used, considered, altered, downloaded, viewed,

appropriated, disseminated, or compromised any MEF information since her employment ended.

All examples of so called unlawful conduct presented by MEF occurred between eight months to

over a year ago, during Ms. Barbounis's lawful employment as the Director of Communications

for MEF. Ms. Barbounis's employment required her to work with the information that MEF is

now using to support this frivolous action. Accordingly, MEF cannot claim any harm much less

irreparable harm as a result of any of Lisa Barbounis's actions. An old email or document that

might still exist in a "sent mail" folder does not constitute harm or irreparable harm.

Moreover, there is no likelihood that MEF will succeed on the merits. If the searching of

Ms. Barbounis's devices confirms only that Ms. Barbounis still had access to certain information

that she used during her employment, which she did not use or disseminate, Plaintiff's case fails

as a matter of law.

The public interest is entirely against the granting of preliminary injunction. To

embolden organizations who retaliate against former employees when those employees file

lawful claims because of apparent and significant violations of their civil rights does not serve

the public interest. If Defendant can prove that the instant lawsuit was brought in retaliation for

Ms. Barbounis's lawful attempts to vindicate her rights, then the instant action by definition is

violates city ordinance, state laws, and federal statutes.

For these reasons, Defendant, Lisa Barbounis moves the Court to deny Plaintiff's Motion

for Preliminary Injunctive Relief.

## II.     STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy." American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (quotation omitted). Such relief is only warranted when a movant can "convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (citing SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)).

When a Plaintiff seeks to disturb, rather than maintain, the status quo, they are faced with a higher burden yet.  See, e.g., Doe v. New York Univ., 666 F.2d 761, 773 (2d Cir. 1981) ("Where, as here, mandatory relief is sought, as distinguished from maintenance of the status quo, a strong showing of irreparable injury must be made, since relief changing the status quo is not favored unless the facts and law clearly support the moving party.").

The purpose of a preliminary injunction is to preserve the relative positions of the parties. In order to support preliminary injunction, plaintiff must show both likelihood of success on the merits and probability of irreparable harm, and district court should consider effect of issuance of injunction on other interested persons and the public interest; furthermore, showing of irreparable harm is insufficient if harm will occur only in the indefinite future.  Kamdem-Ouaffo v. Task Mgmt. Inc, 792 F. App'x 218, 220 (3d Cir. 2019); Checker Cab of Philadelphia Inc. v. Uber Techs., Inc., 643 F. App'x 229, 230 (3d Cir. 2016).  In order to demonstrate "irreparable harm" for purposes of grant of preliminary injunction, plaintiff must demonstrate potential harm

which cannot be redressed by legal or equitable remedy following trial. Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86 (3d Cir. 1992). "Establishing a risk of irreparable harm is not enough." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987). Kamdem-Ouaffo v. Task Mgmt. Inc, 792 F. App'x 218, 221 (3d Cir. 2019).   Additionally, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.' Liberty Lincoln–Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir.2009). See also ECRI v. McGraw–Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987)). ("Indeed, as we have also recognized, "[t]his is not an easy burden."). Checker Cab of Philadelphia Inc. v. Uber Techs., Inc., 643 F. App'x 229, 232 (3d Cir. 2016).

## III.    ARGUMENT

Preliminary injunctive relief is only warranted when a party can "convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (citing SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). Plaintiffs fall far short of carrying their burden on any of these requirements.

### A.  **Plaintiff cannot show they are reasonably likely to succeed on the merits.**

Plaintiffs also cannot show that they have any chance of succeeding in this lawsuit, let alone that they are reasonably likely to succeed on the merits. Indeed, Plaintiffs' claims are so deficient in so many aspects that they should not survive Defendants' concurrently filed Motion to Dismiss. Even if Plaintiffs' claims could get past all these legal hurdles, they would fail on the facts. Plaintiffs contend, with no evidentiary support that MEF suffered harm as a result of Lisa Barbounis's action. Every one Plaintiff's

allegations is easily explained and falls into the category of Lisa Barbounis doing her job.

MEF's Motion for Preliminary Injunction claims that MEF "learned since conducting an internal investigation, that the Confidential Information Barbounis either accessed without MEF authorization or sent to her personal email account includes, but is not limited to:

    a.  A General Operating Support master document and email listing organizations and donors that had been approached or sent proposals for donations, sent April 10, 2019.

    b.  A sensitive MEF document on countering violent extremism composed on MEF's letterhead, sent on September 18, 2018.

    c.  A proprietary MEF paper on United Nations Relief and Works Agency for Palestine Refugees ("UNRWA") funding sent on September 8, 2018.

    d.  MEF proprietary communications resources including but not limited to multiple media contact lists and the Organization's Meltwater account.

    e.  Accessing email data files for Daniel Pipes, the President of MEF. The internal investigation also uncovered that Barbounis had improperly accessed the confidential MEF master donor and email distribution list containing 64,834 contacts and electronically backed this up on her personal computer."

    2:19-cv-05697-JS Document 5 at p13.

These five allegations form the basis of MEF's argument for Preliminary Injunction.   Defendant, Lisa Barbounis will address each in turn.

    **"A General Operating Support master document and email listing organizations and donors that had been approached or sent proposals for donations, sent April 10, 2019."** Document 5 at p13.  As Director of Communications, Lisa Barbounis's job responsibilities included drafting communications achievements which were inserted into reports and proposals created by MEF.  One of these reports and proposals was called a General Operating Support Master.  Ms. Barbounis had access and was authorized  to view and use the General Operating Support Master document as a template for

drafting additional reports and proposals. Ms. Barbounis was required to work with this document as part of her responsibilities as Director of Communications. MEF claims that Ms. Barbounis sent a copy of one of these documents to herself in April 2019, six (6) months before Ms. Barbounis's constructive discharge. MEF has only accused Ms. Barbounis of sharing this document with herself during her employment.

"**A sensitive MEF document on countering violent extremism composed on MEF's letterhead, sent on September 18, 2018.**" Document 5 at p13. MEF's attempt to characterize this document as sensitive proprietary information subject to Ms. Barbounis's NDA agreement indicates bad faith. During the fall of 2018, over one (1) year before Ms. Barbounis was constructively discharged, Ms. Barbounis wanted to be more involved in academic pursuits. Ms. Barbounis discussed this objective with Sam Westrop, an MEF employee with a reputation for research and academia. Sam Westrop suggested that Ms. Barbounis help with a writing assignment. Sam Westrop instructed Ms. Barbounis to begin by reviewing the paper referenced in MEF's Complaint. Accordingly, Ms. Barbounis worked with this document during her employment with MEF.

"**A proprietary MEF paper on United Nations Relief and Works Agency for Palestine Refugees ("UNRWA") funding sent on September 8, 2018.**" Document 5 at p13. Even according to MEF's policies referenced in Paragraph 39 – c of Plaintiff's Complaint (Doc No. 1) working with intellectual property is not a violation. MEF's complaint alleges that Ms. Barbounis's decision to email herself a paper she authored creates nine causes of action for suit in federal court. This paper was written by Ms. Barbounis and turned over to the United States State Department. This document is Ms. Barbounis's intellectual property. As it was submitted to a federal agency, this document is also subject to a Freedom of Information Act Request. Ms. Barbounis sent this document to herself as a writing sample for her resume book. MEF's attempt to ground a Civil Action Complaint upon Ms. Barbounis's decision to email herself a paper she authored evidences MEF's bad faith in bringing the instant action. Moreover, Ms. Barbounis sent this paper to herself over one (1) year before she was constructively discharged. MEF took no action for more than fifteen (15) months, until after Ms. Barbounis filed a civil

action complaint against MEF.

**"MEF proprietary communications resources including but not limited to multiple media contact lists and the Organization's Meltwater account."** Document 5 at p13.  The allegations here are false and willfully misleading.  MEF has characterized its Meltwater account as "proprietary communications resources."  Meltwater is an online subscription service that anyone can subscribe to. Meltwater is a web-based subscription service that delivers branding, public relations, and communications services to organizations with multi-media objectives.  As Director of Communications, Ms. Barbounis was required to work with Meltwater on a regular basis.  The information delivered by Meltwater is not owned by MEF.  Ms. Barbounis was required to work with Meltwater to create lists that are part of the Meltwater subscription service.

**"Accessing email data files for Daniel Pipes, the President of MEF.  The internal investigation also uncovered that Barbounis had improperly accessed the confidential MEF master donor and email distribution list containing 64,834 contacts and electronically backed this up on her personal computer."** Document 5 at p13.  The final allegation presented by MEF accuses Ms. Barbounis of doing her job once again.  Ms. Barbounis was required as the Director of Communications to work with the MEF master donor list to design, implement, and execute fundraising campaigns.  Ms. Barbounis worked on a company computer which was purchased by MEF.  Ms. Barbounis used her company computer to execute a campaign for MEF, which was precisely Ms. Barbounis's job.  Ms. Barbounis was required to work with several online tools including Cause-Match and Mail Chimp.  Ms. Barbounis downloaded an email list from Mail Chimp and saved it on her MEF company laptop.  This is the donor list referenced in Paragraph 39 – d of the MEF Complaint.  Ms. Barbounis then exported the Mail Chimp donor list to Cause Match which is an online platform that MEF paid $4,000.00 to utilize and that Ms. Barbounis was required to work with.  Cause Match helps spread social media posts.  The campaign which Ms. Barbounis executed was profitable and considered a success.  MEF raised close to twenty-thousand-dollars as a result of Ms. Barbounis's work on this campaign.  She was congratulated thereafter.  Now, MEF seeks to sue Ms. Barbounis for performing a task which previously earned her

praise.   Importantly, when Ms. Barbounis downloaded the 64,836 contacts from Mail Chimp, and electronically backed them up on her MEF laptop (which was returned to MEF when Ms. Barbounis's employment with MEF ended) she had to perform this task in order to upload the list to Cause-Match. When the MEF Website Administer, Grayson Levy, noticed that someone had downloaded the donor list of contacts, he sent a text message to confirm that this action was authorized.  Grayson Levy wrote, "something weird in Mail Chimp.  18 minutes ago someone exported the contacts."  Ms. Barbounis replied immediately and wrote, "I did that.  It's for Cause Match.  The campaign was approved to do [be]cause Match needed the list so I exported the contacts."  This occurred about eight (8) months before MEF filed its frivolous lawsuit.  At no time prior to MEF's Complaint did anyone from MEF discuss, complain, express concern, or accuse Ms. Barbounis of improper action in downloading the donor list and executing the Cause Match campaign.  A copy of the text message communication between Director of Communications, Lisa Barbounis and Website Administrator, Grayson Levy is attached and marked Exhibit "A".

## B.  The balance of the harms and the public interest also weigh decisively in favor of Defendants.

The balance of the harms and the public interest also weigh decisively in favor of Defendants.  The type of irreparable harm required to support a preliminary injunction needs to be imminent, future harm.  Past hard is insufficient to support the injunction.  See Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86 (3d Cir. 1992). ("Grant of preliminary injunction against use or exploitation of patent on frozen chicken product on ground that patent allegedly revealed plaintiff's trade secrets was not supported by showing of threat of irreparable injury in that alleged trade secret had already been revealed in patent application…").

"In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Campbell Soup

Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992). "The preliminary injunction must be the only way of protecting the plaintiff from harm." Id. "The requisite feared injury or harm must be irreparable — not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it." Id. at 91-92 (internal quotation marks omitted). Thus, a litigant seeking injunctive relief must "articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages ... to sustain its substantial burden of showing irreparable harm." Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102-03 (3d Cir. 1988). "Establishing a risk of irreparable harm is not enough." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987). Kamdem-Ouaffo v. Task Mgmt. Inc, 792 F. App'x 218, 221 (3d Cir. 2019).

Moreover, the hard recognized as supporting preliminary injunction must be such that it is likely to occur. Attempting to prevent further harm is not a sufficient argument to support the injunction. It is clear in the instant case that Plaintiff is only attempting to prevent "further harm". A copy of Plaintiff's Proposed Order is attached and marked Defendant's Exhibit "B". Page 3, Section D of Plaintiff, The Middle East Forum's Proposed Order expressly states that Plaintiff seeks to prevent Ms. Barbounis from further dissemination. See Id. ("Barbounis will take all steps to ensure that MEF Data is not *further disseminated* or used by Barbounis or any other person."). This is not the type of irreparable harm that warrants preliminary injunction. See Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86 (3d Cir. 1992) ("Though threat of disclosure of trade secret may establish immediate irreparable harm supporting preliminary injunction, "further" disclosure of something already revealed cannot, and thus fact that elements of trade secret claim have been satisfied does not require that irreparable harm must be presumed.").

C.  **The status quo shifts because preliminary injunction will punitively effect Lisa Barbounis.**

Plaintiff's request for preliminary injunction asks the Court to allow the forensic imaging of upwards of eighteen difference devices, accounts, applications, many of them have no relationship to The Middle East Forum or even Defendant, Lisa Barbounis.  Plaintiff is petitioning the Court to require the independent forensic imaging, searching, and production in difference computerized formats.  The cost to independently image upwards of eighteen difference devices, accounts, applications will result in a cost of between thirty (30) to sixty (60) thousand dollars.  Plaintiff asks for all of these devices and accounts and applications to be searched based entirely on a piece of mind argument.  Plaintiff simply wants the piece of mind of knowing for certain that MEF documents do not exist on these devices, accounts and applications.  MEF using no evidence and mere speculation to suggest these accounts, devices and applications should be imaged, searched and produced in difference computerized formats.  Plaintiff has not alleged any damages and cannot claim even a single dollar in actual losses as a direct result of Ms. Barbounis's conduct.

IV.  **CONCLUSION**

Plaintiff's Motion for Preliminary Injunction should be denied.

DEREK SMITH LAW GROUP, PLLC

By:  _____
Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED: February 28, 2020

## CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2020, a true and correct copy of the foregoing

Motion to Dismiss Plaintiff's Complaint was filed and served electronically through the Court's

CM/ECF system.

> Sidney L. Gold sgold@discrimlaw.rf t
> Sidney L. Gold & Associates P.C.
> 1835 Market Street, Suite 515
> Philadelphia, PA  19103
> Tel: (215) 569-1999
> Fax: (215) 569-3870
> Counsel for  The Middle East Forum

### DEREK SMITH LAW GROUP, PLLC

> By:      /s/ Seth D. Carson
>          Seth D. Carson, Esquire
>          1835 Market Street, Suite 2950
>          Philadelphia, Pennsylvania 19103
>          Phone: 215.391.4790
>          Email: seth@dereksmithlaw.com

DATED:  February 28, 2020