## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, | : | CIVIL ACTION NO.: 19-5697 |
| *Plaintiff* | : | Hon. Juan R. Sánchez |
| v. | : | |
| LISA REYNOLDS-BARBOUNIS, | : | |
| *Defendant* | : | JURY TRIAL DEMANDED |

## ORDER

**AND NOW**, this            day of                    , 2020, upon consideration of Plaintiff's Motion for Leave to File a Reply Brief in Further Support of its Motion for a Preliminary Injunction (attached hereto as Exhibit A), and any response thereto, it is hereby **ORDERED and DECREED** that Plaintiff's Motion for Leave is **GRANTED**.

It is further **ORDERED** that Plaintiff's Reply Brief attached to Plaintiff's Motion for Leave as Exhibit A is deemed filed as of the date of this Order.

BY THE COURT:

_____

**Honorable Juan R. Sanchez**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THE MIDDLE EAST FORUM,　　　　:　　CIVIL ACTION NO.: 19-5697

　　　　*Plaintiff*　　　　　　:　　Hon. Juan R. Sánchez

　　　　v.　　　　　　　　　　:

LISA REYNOLDS-BARBOUNIS,　　:

　　　　*Defendant*　　　　　　:　　JURY TRIAL DEMANDED

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY BRIEF IN FURTHER**
**SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff, The Middle East Forum, by their undersigned counsel, respectfully requests

leave of Court to file a Reply, in further support of Plaintiff's Motion for a Preliminary

Injunction.  Plaintiff seeks leave to file the Reply Brief, attached hereto as Exhibit A, to briefly

address the arguments contained in Defendant's Opposition to Plaintiff's Motion for a

Preliminary Injunction.

WHEREFORE, Plaintiff respectfully requests that this Court GRANT Plaintiff's Motion

for Leave to File a Reply Brief.

　　　　　　　　　　　　　　SIDNEY L. GOLD & ASSOC., P.C.

　　　　　　　　　　By:　　/s/ Sidney L. Gold, Esquire
　　　　　　　　　　　　　SIDNEY L. GOLD, ESQUIRE
　　　　　　　　　　　　　I.D. NO.:
　　　　　　　　　　　　　WILLIAM RIESER, ESQUIRE
　　　　　　　　　　　　　I.D. NO.: 312442
　　　　　　　　　　　　　1835 Market Street, Suite 515
　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　Attorneys for Plaintiff

DATED:  March 6, 2020

## CERTIFICATE OF SERVICE

I hereby certify that, on March 6, 2020, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

Seth D. Carson, Esquire
DEREK SMITH LAW GROUP PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
seth@dereksmithlaw.com
Counsel for Defendant Lisa Reynolds-Barbounis

/s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
*Counsel for The Middle East Forum*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM,                     :

         Plaintiff,                     :

                                  :

v.                                         :

LISA REYNOLDS-BARBOUNIS,                    :     Civil Action No.: 19-5697

         Defendant.                     :     JURY TRIAL DEMANDED

                                  :

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION



PLAINTIFF'S EXHIBIT

ALL-STATE LEGAL®

A

Plaintiff, the Middle East Forum ("MEF"), by counsel, files this Reply to Defendant Lisa Barbounis' Response in Opposition to MEF's Motion for a Preliminary Injunction ("Opposition"). Dkt. 39-1. Rather than address the key items justifying the entry of a preliminary injunction, Defendant's Opposition oddly focuses on irrelevant events and separate litigation, as if that information somehow negates MEF's right to ensure that a disgruntled former employee does not disseminate or maintain access to its confidential information and trade secrets. Ultimately, Defendant's Opposition demonstrates why a preliminary injunction is necessary in this case, as Defendant again concedes that she possesses MEF data, but refuses to cooperate with MEF to ensure its safety, return, and/or destruction.

## I.     Background

As this Court is aware, MEF alleges that Defendant, a former employee of MEF, breached her contractual obligations to MEF and violated the Pennsylvania Uniform Trade Secrets Act ("PUTSA") by taking and retaining MEF's confidential information and trade secrets, including extremely sensitive donor information.

Since this action was filed, Defendant has repeatedly admitted to possessing MEF data but has refused to provide either MEF or the Court with a full account of that information. *See* Resp. to Interrogs., Dkt. 23-4, at 3 ("There are many communications and documents that Lisa Barbounis may still inadvertently have access to . . . ."); *Id.* at 7 (Defendant regularly emailed documents to herself during her employment); *Id.* at 5 (providing a list data in Defendant's possession, including voice memos that have not been turned over to MEF despite promising to produce); Dkt. 39-1 at 2 (stating that some MEF information may remain in Defendant's possession, custody, or control). Despite these repeated admissions that Defendant still possesses MEF information, and even emailed MEF trade secrets to her personal email account, she still has not provided that information

1

to MEF.  In contravention of this Court's February 19, 2020 Order requiring completion by February 28 (and despite repeated requests from MEF's counsel over the last three months and prior direction from the Court), Defendant has not tendered all devices and storage media for imaging, including the documents required in the February 19 Order.[1]  Defendant cannot wrongfully maintain MEF's confidential information and trade secrets and then stonewall MEF's attempts to ensure that its information is not disseminated or used.  For all the reasons set forth in MEF's Motion and below, this Court should grant the Preliminary Injunction.

## II.    Argument

### a.    Defendant's Reckless Accusations Against MEF (Which Are Untrue), Are Irrelevant to the Motion for Preliminary Injunction.

Defendant wildly claims that MEF brought this action to harass, embarrass, or retaliate against her. Nothing substantiates this contention.  While Defendant is apparently trying to litigate an unrelated employment case in this action, that would be wholly inappropriate as the claims in this action are based on Defendant's *post-employment* violations.  Indeed, MEF has asked that Defendant agree to an attorney's-eyes-only designation for the sensitive information at issue to separate this matter from an employment action involving claims *before her MEF employment ended.*  This is yet another demonstration that MEF pursues this case only to protect MEF's rights to its trade secrets and confidential information.  MEF can discern no logical reason for Defendant to disagree with such a request,  suggesting that she seeks to taint MEF with reckless and irrelevant accusations both in this case and in a distinct employment case that is not before this Court.

In addition, just because Defendant writes unsupported theories in her Opposition does not

---

[1]  MEF's counsel learned only last week that defense counsel did not preserve the pertinent data when this dispute arose five months ago, and only obtained a cell phone from Defendant on January 15, 2020, and another phone last week. Ex. 1, Barnes Email, March 1, 2020.  Defense counsel also admitted during a February 27, 2020 phone call that there is yet a third phone that has not been obtained, *see id.*, raising serious questions why these devices were not preserved earlier and why defense counsel told the Court in the January 15 hearing that only one phone existed.

make them true.  For example, without any basis to do so, Defendant represents that MEF has not pursued similar civil actions against former employees.  Even if true, that does not authorize Defendant to pilfer MEF's data and refuse to protect or return it.  And, in any event, Defendant's speculation is not true.  MEF has pursued claims against former employees at least three times for the return of confidential information and trade secrets.  Those individuals, however, agreed to delete MEF's information and execute agreements not to disclose or retain any MEF information. MEF has repeatedly attempted to come to the same amicable resolution with Defendant over the last four months.  *See* Ex. 2, Barnes Letter (forwarding proposed affidavit), Nov. 12, 2019; Ex. 3, Barnes Letter (forwarding proposed Stipulated Temporary Restraining Order), Nov. 25, 2019; Ex. 4, Gold Letter (forwarding proposed Stipulated Temporary Restraining Order), Jan. 13, 2020; Ex. 5, Barnes Email (forwarding proposed Stipulated Injunction Order), Feb. 28, 2020.

Defendant has offered no explanation why she has refused to engage in a discussion about protecting MEF data. Such refusal over many months raises red flags as to Defendant's intentions with respect to MEF's data.  Why would any rational former employee with innocent intentions raise suspicions by refusing to confirm that no MEF data will be disclosed or to work out a mechanism to capture and return such data to MEF before it is permanently deleted from her devices and storage media?  At this point, three months after filing its Motion, MEF's counsel cannot get a straight answer from Defendant about the devices and media in her possession, much less trust that Defendant will follow through on her representations.

Finally, MEF must be able enforce its contracts and act to protect its confidential information and trade secrets from theft and dissemination.  Contrary to Defendant's dismissive assertion that MEF "simply wants the piece [sic] of mind," Dkt. 39-1 at 11, this case is about protecting MEF's business from a disgruntled former employee who, through counsel, has not

been forthcoming to MEF or the Court.  To protect its data,[2] MEF properly sought discovery to learn the extent to which Defendant transferred MEF data to cloud storage, through e-mails, and other media so that MEF can contain the harm caused by her actions.  Defendant has already admitted that she forwarded MEF data to her personal email, and that she used devices (which were not provided to a vendor for imaging) to work on MEF data.  Yet, Defendant refuses to cooperate with MEF to resolve this issue.  MEF thus has no choice but to seek an injunction order.

### b.  MEF is Entitled to Preliminary Injunction.

MEF has demonstrated, and will show at the upcoming hearing, that it is likely to succeed on the merits, will be irreparably harmed, the balance of the harms weighs in favor of MEF, and public interest will be served by granting the injunction.  Defendant's Opposition changes nothing.

*First*, MEF is likely to succeed on the merits of its trade secrets and breach of contract claims.  MEF has presented evidence that Defendant emailed MEF's confidential data and trade secrets (such as donor information) to her personal email address, and as discussed, Defendant has repeatedly admitted that she possesses MEF information, in violation of her Non-Disclosure Agreement and Bring Your Own Device Agreement.  It is unremarkable and irrelevant to assert, as Defendant does, that she had access to MEF's information *during her employment*.  This case is about Defendant's improper retention *following employment*.  In its Motion, MEF provided a *non-exhaustive* list of documents that Defendant improperly retained access to following her employment, including MEF's donor list.  Donor lists, which are analogous to client lists, are protected under PUTSA when they are valuable and strictly maintained.  *See O.D. Anderson v. Cricks*, 815 A.2d 1063, 1071 (Pa. Super. Ct. 2003).  MEF has taken extensive measures to protect

---

[2] Due to Defendant's 3-4-month delay in imaging her devices and otherwise responding to MEF's discovery requests and this Court's Orders, MEF has been prevented from gathering further evidence in support of its Motion for Preliminary Injunction.  Further, Defendant's conduct has created a severe risk of spoliation, which may prevent MEF from: (1) obtaining the evidence it requested months ago; and (2) justifiably protecting its data.

the secrecy of its donor information, including requiring all employees execute non-disclosure agreements, and MEF's donor information derives independent value because of the secrecy of its contents. Other organizations, including those with nefarious intentions, not only desire the obtain the contents of those lists, but could do great harm to the organization if the information were leaked to them. The first factor thus weighs heavily in favor of granting the injunction.

*Second*, MEF will suffer imminent irreparable harm if the preliminary injunction is not issued. Irreparable harm is an injury that cannot be adequately compensated by monetary relief. *Analytic Recruiting, Inc. v. Analytic Res., LLC*, 156 F. Supp. 2d 499, 519 (E.D. Pa. 2001). This Court has previously noted that "loss of control of reputation, loss of trade, and loss of goodwill" are all grounds for a finding of irreparable injury. *Plate Fabrication & Machining, Inc. v. Beiler*, No. 05-cv-2276, 2006 WL 14515 (E.D. Pa. Jan. 3, 2006). Without a preliminary injunction, MEF will lose control of its reputation, will lose goodwill, and will ultimately lose its ability to operate.

As a non-profit organization that promotes American interests in the Middle East through research and education projects, MEF's entire ability to exist and carry out its mission is dependent on its reputation and goodwill with its donors. If any of MEF's trade secrets or confidential information are disclosed, donors, who rely on MEF to keep their information secret, will no longer want to associate with MEF, and MEF will lose its funding. Contrary to Defendant's absurd criticism that MEF has not stated specific monetary damages, a dollar amount cannot adequately compensate MEF for the irreparable harm that will be caused by the disclosure of its confidential information and trade secrets. Defendant seems to misunderstand the nature of injunctions.

Additionally, this harm is imminent because of Defendant's actions. Defendant's assertion that MEF's injury is not imminent misreads MEF's Proposed Order. The Proposed Order demonstrates that MEF is not interested in merely preventing "further dissemination," as it

5

includes five clauses addressing the collection and status quo of MEF's data to prevent Defendant's wrongful conduct. *See* Dkt. 5; Exs. 2-4. Moreover, Defendant has repeatedly refused to agree not to disclose MEF information, leading to the only conclusion that she intends to disclose MEF information. Defendant has not been forthcoming with MEF and the Court, showing that her claims of innocence cannot be trusted. Despite originally asserting that she had only one device, which then changed to two devices during the January 15, 2020 hearing, Plaintiff has identified "**upwards of eighteen** difference [sic] devices, accounts, [and] applications." Dkt. 39-1 at 11. In a February 27 discussion between counsel, Defense counsel conceded there are three phones, yet Defendant turned over only two for imaging on February 25, 2020. *See* Ex. 1.

*Third*, the balance of the harms weighs in favor of granting the injunction. There is no harm to Defendant if she is ordered to not disclose information and trade secrets that she previously contractually agreed not to disclose. To the extent Defendant asserts she will be harmed by the costs of imaging her devices and accounts, such self-inflicted harm caused by the wrongdoer weighs heavily in favor of granting preliminary injunctive relief. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano*, 85 F. Supp. 2d 491, 498 (E.D. Pa. 2000). In December, MEF's counsel offered to work with defense counsel to engage a mutually acceptable vendor. MEF also repeatedly offered to share the costs of imaging those devices, *including in the Agreed Order that Defendant then asked the Court to Vacate. See* Agreed Order, Dkt. 21, Jan. 15, 2020. Defendant instead chose not to cooperate with MEF, and unilaterally engaged a vendor as her "expert" who now appears to be charging an astonishing fee of up to $60,000 for imaging data that should cost no more than several thousand dollars.[3] Defendant's self-inflicted harm cannot now be used in an

---

[3] Cornerstone Discovery, the neutral third-party vendor that the parties were supposed to use earlier in this case, has quoted a significantly reduced cost. *See* Ex. 6, Centofanti Email, March 6, 2020. For example, the cost to image three devices with Cornerstone is $3,600, and the cost to collect and preserve Defendant's social media accounts, physical media, and cloud-based accounts is between $3,000-$6,000 depending on the number of sources. Further, processing

attempt to defeat MEF's right to get the imaged data as ordered by the Court. Defendant has even refused to allow MEF's counsel to contact her selected vendor, *see* Ex. 1, so MEF has no idea what instructions were given to said "expert" or why the outrageous fees have been demanded.

*Fourth* and finally, it is in the public interest to uphold the status quo: to prevent the dissemination of MEF's confidential information and trade secrets. *See Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d. Cir. 1994). Defendant's argument that the status quo will be changed is incomprehensible. The status quo is that Defendant is obligated to have her devices imaged pursuant to a separate Court Order and is obligated under her contract and the law not to disclose information she does not own and agreed not to share. She should have preserved the data on her devices five months ago when this issue first arose, causing grave concerns about spoliation, but regardless, there is now a court order requiring the devices to be imaged. Further, it is generally in the public interest to uphold an agreement freely entered into by the parties. *Vector Sec., Inc. v. Stewart*, 88 F. Supp. 2d 395, 401 (E.D. Pa. 2000). Thus, it is strongly in the public interest to require Defendant to adhere to her agreement to protect the confidentiality of MEF's information.

### III.    Conclusion

In light of Defendant's repeated misrepresentations, delays, and sleight of hand, it is more than apparent that a preliminary injunction is necessary to protect MEF's rights under the law. Each of the relevant factors points decidedly in favor of granting the preliminary injunction, and Defendant's strident accusations do not undermine the need for preliminary injunction.

---

costs are only $25 per GB. As Defendant is an individual, she likely has far fewer GBs of data than a business. This results in preservation costs of less than $12,500, at most, which MEF has repeatedly offered to split with Defendant.

Dated:  March 6, 2020

THE MIDDLE EAST FORUM
By counsel


s/Sidney L. Gold, Esquire
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for Plaintiff The Middle East Forum*

# Exhibit 1

| | |
|---|---|
| **From:** | Barnes III, Attison |
| **Sent:** | Sunday, March 1, 2020 12:04 PM |
| **To:** | Seth Carson; Sidney Gold; Bill Rieser |
| **Subject:** | RE: MEF v. Lisa Barbounis |
| **Attachments:** | MEF v Barbounis Protective Order.docx |

Seth –

I remain concerned:

- that you did not work with us in good faith on the selection of a mutually agreeable vendor, despite our multiple requests since at least December
- that you and your client only supplied two phones to the vendor you unilaterally selected
- that you did not work with us in good faith on instructions to the vendor about imaging the devices
- that you did not provide any written instructions to the vendor before imaging the two phones (for us to see what the directions to the vendor actually were)
- that, although you knew MEF has asserted since early last fall that that your client's devices contain highly sensitive data and trade secrets, you did not take care and attention to contacting us about how the vendor should process that information. Although you claim that your engagement letter with the vendor includes a non-disclosure clause (you have not forwarded that letter to us as promised), the MEF data on the devices belongs to MEF, and an engagement letter between you and the vendor does not provide MEF (as a non-signatory) with the ability to enforce the confidentiality restrictions against the vendor. That is why we have tried to work with you for months to mutually agree on this process and to mutually engage an independent vendor. Instead, you claim that you engaged this vendor as an "expert" for defendant, which is more troubling because an expert for defendant is not independent and now has possession of MEF's data without our consent and without our ability to protect MEF's data.
- that you did not work with us over the last five months to collect and preserve the data on your client's devices, accounts, and storage media, despite the fact that early last fall we raised concerns about preservation and spoliation by your client. Instead, you initially represented to the court that she had only one phone – despite now admitting there are at least three. You stated during our call last Thursday that you did not take possession of the first phone until January 15 and that you did not take possession of the second phone until last week. You have apparently never taken possession of the third phone, never taken possession of the iWatch, and never taken possession of, or otherwise secured, the remaining repositories of data, including all USB devices, cloud-based storage accounts (including, but not limited to, iCloud, Dropbox, and Google Drive), email accounts, and all messaging and social media accounts (including, but not limited to, Signal, WhatsApp, Telegram, and Facebook), as well as back-up for her husband's devices where we know MEF data resided (the Microsoft Surface shown in your client's Instagram post with an MEF document on the screen). Therefore, over the last five months, you have not taken appropriate steps to ensure that your client did not destroy, delete, or otherwise alter evidence. We already know that your client's laptop was wiped, thereby destroying data, and you should have been on notice of the need to preserve data and devices.

We will respond separately to your letter, but for now, we reserve all rights for failure to preserve data, and press again for collection and imaging of all information, not merely the two phones your client has finally delivered to you.

We do not appreciate the undue delay and unilateral nature of how you and your client have chosen to proceed. We have lost months, despite direction from the court in mid-December that your client must image her devices and despite our repeated efforts to work with you by proposing a mutually acceptable vendor in December.

In light of your decision to disclose highly sensitive MEF data with the vendor without our involvement or consent, we need to act quickly to avoid further harm.  We have prepared the attached Protective Order, which would among other things require a written acknowledgement from your vendor that it will be subject to the contempt power of the court regarding the data.  Please get back to us as soon as possible so we can finalize and submit this Protective Order as stipulated.  Again, we are trying to mitigate the harm that your client continues to cause MEF.

**wiley**  |  Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Thursday, February 27, 2020 9:13 PM
**To:** Sidney Gold <sgold@discrimlaw.net>; Barnes III, Attison <ABarnes@wiley.law>; Barnes III, Attison <ABarnes@wiley.law>; Denise Drages <ddrages@discrimlaw.net>
**Subject:** MEF v. Lisa Barbounis

Attached please find correspondence in connection with our telephone conversation earlier this evening.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

THE MIDDLE EAST FORUM,

              Plaintiff,

v.

LISA REYNOLDS-BARBOUNIS,

              Defendant.

Civil Action No.: 19-5697

JURY TRIAL DEMANDED

**STIPULATED CONFIDENTIALITY AGREEMENT
AND [PROPOSED] PROTECTIVE ORDER**

       To facilitate the production of Confidential Information through the discovery process in the above-captioned litigation (the "Litigation") and upon the Stipulation of the parties, the Court enters into the following Protective Order (the "Order" or "Protective Order") pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rule 5.1.5, and states as follows:

       1.     This Protective Order shall govern disclosure, use, and handling of all documents, electronically stored information, imaged materials, testimony, interrogatory answers, hearing transcripts, declarations, affidavits, reports, briefs, motions, and other information (other than information that is publicly known or available) disclosed in this Litigation ("Subject Discovery Material") and designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by a party or a third party. This Protective Order shall apply to and be binding upon any director, officer, employee, contractor, or agent of any of the parties to this litigation, as well as all outside counsel to the parties, including any attorney, paralegal, secretary, clerical staff person, or other person employed in any capacity by such outside counsel, or any agent or outside contractor of such outside counsel. This Protective Order shall also apply to any persons who sign an affirmation in the form of Addendum A, attached hereto.

2.      Subject Discovery Materials subject to this Protective Order shall not include (a) published advertising materials, and (b) materials that are known or available to the general public.  Subject Discovery Materials designated as "CONFIDENTIAL" may include financial documents, confidential research, and private employee data unknown to the public.  Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" may include highly confidential and sensitive information related to sensitive MEF donor names, donor contributions, and any other trade secret or sensitive activities that the producing party reasonably and in good faith believes is so highly sensitive that its disclosure could reasonably be expected to result in harm to the producing party.  Subject Discovery Materials designated as "CONFIDENTIAL – PFI" may include private financial information such as banking statements, tax returns and related documents, financial statements, cancelled checks, and similar items of a financial or identifying nature (*e.g.*, SSN, phone numbers).

3.      Subject Discovery Materials designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" are referred to herein as "Confidential Information" and the identification of Subject Discovery Materials with either of these designations is referred to herein as "Confidential Designation."

4.      Any party (including any third party not named in this Litigation) that produces Subject Discovery Material in this Litigation may make Confidential Designations for which the producing party believes in good faith that there is a right to confidential treatment under Rule 26(c) or Local Civil Rule 5 consistent with the designation level.

5.      The inadvertent production of Subject Discovery Materials containing Confidential Information which are not designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall not be deemed a waiver in whole or in part of a

claim for confidential treatment and shall be without prejudice to any claim that such Confidential Information should be designated as such.  In the event of the inadvertent production of Confidential Information that does not bear the appropriate designation, the producing party shall notify the receiving party in writing of the error and provide a revised copy of the document bearing the appropriate designation.  Upon receipt of such notice, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or, (iii) notify the producing party in writing that it will contest the producing party's claim that the document should be considered Confidential Information.

6.      Similarly, the inadvertent production of Subject Discovery Materials containing information that is protected from discovery by the attorney-client privilege, attorney work product doctrine, common interest doctrine, and/or any other applicable privilege or immunity shall not be deemed a waiver in whole or in part of a claim that such materials are subject to the applicable privilege(s) and/or protection(s). If the producing party provides notice to the receiving party that it considers a document it produced to contain or constitute material subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or (iii) notify the producing party in writing that it will contest the producing party's claim that the document is subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity.

7.    All information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" (and all copies, summaries, or quotations of such information) shall not be disclosed to the public or otherwise put into the public domain.

8.    Information designated as "ATTORNEY'S EYES ONLY" may be disclosed only to the following persons:

     a.    outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record, and in-house counsel for a party to the extent that in-house counsel is engaged in prosecution or defense of this Litigation;

     b.    experts or consultants engaged by counsel of record or a party to assist in this Litigation, provided that counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

9.    Information designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" may be disclosed only to the following persons:

a.   the Court, Court personnel, and stenographic and video reporters engaged in proceedings incident to this Litigation, as long as the information is requested to be placed under seal;

b.   outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record assigned to and necessary to assist such counsel in the preparation and trial of this Litigation; except that, outside counsel of a party may show materials designated as "CONFIDENTIAL – PFI" to a party on the conditions that such party may not retain or copy such materials or take notes concerning them;

c.   experts or consultants engaged by outside counsel of record to assist in this Litigation, provided that outside counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "CONFIDENTIAL" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

d.   any author, recipient, or producing party of such Subject Discovery Materials designated as "CONFIDENTIAL" including former employees or agents of the producing party, provided that, in the case of former

employees or agents of the producing party, such person signs an undertaking in the form of Addendum A hereto;

    e.    any other person or entity whom the parties agree in writing may receive Subject Discovery Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" provided that such person signs an undertaking in the form of Addendum A hereto; and

10.    Neither CONFIDENTIAL, ATTORNEY'S EYES ONLY, nor CONFIDENTIAL – PFI information may be disclosed to spouses, family members, or friends of parties, unless the individual otherwise qualifies under this Order to review such material.

11.    Notwithstanding the foregoing, the restrictions on disclosure set forth in this Protective Order shall not:

    a.    apply to information that was or becomes public knowledge not in violation of this Protective Order;

    b.    restrict a designating party from using documents that it drafted or created in any way;

    c.    prevent disclosure of any document to its original author or original recipient for purposes of a deposition or testimony, as long as the information remains protected under this Protective Order; or

    d.    prevent modification of any designation as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" on written consent of the producing party without further decision of the Court.

12.    All Subject Discovery Material shall be identified and disclosed to the designating party's counsel before it is disclosed to a consulting or testifying expert who may be a competitor

of the Producing Party and before it is used in any deposition, hearing, or trial.

13.     Any party may at any time challenge the designation of Subject Discovery Material as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" and contend that certain Subject Discovery Material is not entitled to be treated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or that disclosure should be permitted in some manner not otherwise authorized herein.  Such a challenge shall be made by notifying the designating party in writing.  The notice shall identify the information in question and shall specify in reasonable detail the reason or reasons for the objection.  If, after the parties confer regarding the informal challenge to the Confidential Designation, the challenging party still believes that the designation should be withdrawn or modified, that party shall file a motion to lift the confidentiality protection on those portions of the Subject Discovery Materials about which the parties disagree.  The parties shall cooperate to schedule a hearing on any such motion with reasonable promptness.  Subject Discovery Materials in dispute shall continue to be subject to the specific confidentiality designation noted thereon and as provided in this Protective Order unless and until the Court determines that the Subject Discovery Material is not entitled to confidentiality designation noted thereon or the designating party agrees in writing that the Subject Discovery Material is not entitled to the confidentiality designation noted thereon.  The fact that a party agrees to abide by the terms of this Protective Order, and receives information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" under it, shall not be deemed an admission by the receiving party that any information is correctly so designated.

14.     All documents produced during the course of the Litigation—including documents produced by non-parties in response to subpoenas—shall initially be treated as

"CONFIDENTIAL" according to the terms of this Protective Order for ten (10) business days after service of the initial production upon the receiving party. Thereafter, no designation of information as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall be effective unless a "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" label or notice is put on the Subject Discovery Material containing such information. Throughout the course of the Litigation, the parties shall have a good faith duty to promptly notify the opposing party upon receipt of any document in which the party believes should be marked with a Confidential Designation.

15.     Specific portions of testimony given at a deposition or other similar proceeding may be designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by an appropriate statement on the record at the deposition or by designation within thirty (30) days after receipt of the transcript of the deposition or similar proceeding. Counsel making a Confidential Designation with respect to testimony shall be responsible for instructing the court reporter to mark the designated portions of the testimony as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI."

16.     Confidential Information may be included with, or referred to in, papers filed with the Court where this Litigation is now pending only in accordance with the following procedures:

   a.  Confidential Information must be filed under seal. Counsel for all parties shall follow Local Civil Rule 5.1.5 and all applicable Orders and customs of the Court when filing Confidential Information under seal.

   b.  All papers filed with the Court, including but not limited to pleadings and memoranda of law, which include, in their entirety or in part, any Confidential

Information must be filed under seal in accordance with the terms and procedures set forth in this Order.  Counsel for the party filing papers with Confidential Information shall be responsible for appropriately designating the papers filed with the Court as having Confidential Information.  Such papers shall be subject to the terms of this Order.

17.     Redacted versions of papers with Confidential Information filed under seal may be filed with the Court in accordance with normal procedures and made publicly available provided that:

    a.  All Confidential Information set forth in the papers is irreversibly deleted or obscured; and

    b.  Redacted versions of the papers are clearly marked "Public Version Confidential Information Omitted." Redacted versions of the papers also must clearly identify each place where information or exhibits have been deleted.

18.     Nothing herein shall restrict in any way the ability of the parties to use material designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" during this Litigation, except that the parties will request that the Court preserve the confidentiality protections set forth in this Protective Order when such documents are submitted or otherwise used or referenced.

19.     Nothing in this Protective Order shall be construed as limiting or negating the right of any party hereto to bring a motion to compel discovery in this Litigation, or as limiting or negating the right of any party to object to any discovery such party otherwise believes in good faith to be improper, or as limiting or negating the right of any party to object on any ground to the introduction or use as evidence of any of the material covered by this Protective

Order.

20.     Nothing herein is intended to restrict the ability of counsel to use (in this Litigation and only as provided in this Protective Order) "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material in examining or cross-examining any witness, including any employee, future employee, agent, expert, or consultant of the producing party, or any person who authored, received, or is named a recipient of the "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material.

21.     In the event that any other parties are added or substituted into this Litigation, this Protective Order shall be binding on and inure to the benefit of such new parties.

22.     At the conclusion of the Litigation, including all appeals, documents containing or constituting information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI," and all copies or portions thereof, shall be returned to the producing party's counsel or counsel for the receiving party shall certify that all such copies or portions thereof that have not been returned have been destroyed.

23.     In the event a party receiving documents designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" is subpoenaed to testify or produce such documents, the subpoenaed party shall immediately notify the producing party who designated such documents as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" —in no event less than five (5) business days before the intended production—to allow the designating party an opportunity to challenge the subpoena and protect the Confidential Information.

24.     The Court retains jurisdiction to make amendments, modifications, and additions to this Protective Order.  Any party may apply to the Court for amendment or modification of or

addition to this Protective Order at any time for good cause.

25.     This Protective Order shall survive the final disposition of this Litigation.  After the conclusion of all proceedings herein, this Protective Order shall remain in full force and effect, and the Court shall retain jurisdiction to enforce its terms and to ensure compliance.

26.     Nothing in this Protective Order shall prejudice any party from seeking amendments hereto broadening or restricting the rights of access to or the use of material marked "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or otherwise seeking to modify this Order.  Any non-party to the Litigation who provides discovery material shall be entitled to avail itself of the provisions and protections of this Protective Order and, by doing so, assumes the duties and obligations imposed by this Protective Order.  Any such non-party desiring to avail itself of the provisions and protections of this Protective Order shall do so in writing addressed to counsel of record for all the parties to this Litigation.

The Parties, through their counsel of record in the Litigation, have reviewed and agree to the Protective Order set forth above, which they agree may be executed by their counsel of record in the Litigation in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement which shall be binding.

UPON THE STIPULATION OF THE PARTIES AND GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED.

DATED: March __, 2020          _____
                               Chief Judge Juan R. Sánchez
                               U.S. District Court Judge

STIPULATED TO AND AGREED BY:

Dated: March __, 2020        THE MIDDLE EAST FORUM
By counsel


s/ _____
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049


Dated: March __, 2020        LISA REYNOLDS-BARBOUNIS
By counsel


s/ _____
Seth D. Carson
seth@dereksmithlaw.com
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Tel: (215) 391-4790

## ADDENDUM A

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print   or   type   full   name],   of
_____ [print or type full address], declare
under penalty of perjury that I have read in its entirety and understand the Stipulated Protective
Order (the "Protective Order") that was issued by the United States District Court for the Eastern
District of Pennsylvania in the case of *The Middle East Forum v. Lisa Reynolds-Barbounis*, U.S.
District Court for the Eastern District of Pennsylvania Civil Action Case No. 19-5697 (the
"Action").

I agree to comply with and to be bound by all the terms of the Protective Order, and I
understand and acknowledge that failure to so comply could expose me to sanctions and
punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner
any information or item that is subject to this Protective Order to any person or entity except in
strict compliance with the provisions of the Protective Order. Unless the Protective Order
specifically provides otherwise, within 60 days of any request to do so, after receiving notice of
the entry of orders, judgments or decrees finally disposing of the Action, I will return the
Confidential Information — including any copies, notes, summaries, excerpts, and compilations
made from it — or certify its destruction to the counsel who provided me with the Confidential
Information.

I further agree to submit to and consent to the jurisdiction of the United States District
Court for the District of Columbia for the purpose of enforcing the terms of the Protective Order,
even if such enforcement proceedings occur after termination of the Action. Furthermore, I
have provided accurate information below about my address and telephone number, as well as
any agent for service of process, if any.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct. Executed this _____ day of _____, _____
at _____, _____.


_____
Signature

Address:

_____
Date

Telephone:

# Exhibit 2



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 12, 2019

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:     The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

I am in receipt of your November 8, 2019 e-mail.  While MEF is hopeful that your clients will cooperate and provide written assurances as you state, we have some concerns to resolve.

First, to the extent that you are instructing your clients to destroy hard copy or electronic documents at this time, that would constitute spoliation of evidence, and it should stop immediately.  Until we can implement a process for preservation and orderly removal and permanent deletion of the files in your clients possession, your clients should not destroy evidence that currently exists on any devices.  They, of course, should not access, use, or disclose the information in the interim, and we should work with each other to perform a mutually agreeable plan to capture the data including any metadata, allow the parties to determine whether MEF data has been disclosed so that MEF can recover that data from any other custodians, and then ensure permanent deletion from your clients' devices.  Please let me know right away if your clients have destroyed any such materials, at your direction or otherwise, and if so, what files were destroyed and when.

Second, while you request that MEF identify what materials we believe your clients removed from MEF, we are only beginning to uncover what your clients improperly removed from the company. Your clients cannot hide behind a request that MEF identify all such documents they removed when they performed these acts without MEF knowledge and approval.  If your clients are truly willing to cooperate and avoid expensive litigation, they will work with us to promptly identify (before deletion) all MEF Data and Confidential Information that may be contained on all devices, along with the actual files/copies.

Third, I attach affidavits and instructions on steps your clients must take with respect to the documents before deletion.  We must receive executed copies of these documents by each of your clients before the close of business on November 15, 2019.  Again, if your clients are unwilling to provide these written assurances in a timely manner, MEF will proceed with protecting its rights through legal action.

Seth D. Carson, Esquire
November 12, 2019
Page 2


Finally, at no time has MEF engaged in retaliation as you claim, as a former employer is entitled to protect its data from use and disclosure by former employees.  If you have authority to the contrary, please forward it for my review.

Regardless of any statements made in this letter in an attempt to resolve this matter amicably, MEF reserves all rights.

Very truly yours,

Attison L. Barnes III

cc:     The Middle East Forum

## AFFIDAVIT OF LISA REYNOLDS-BARBOUNIS

STATE OF/ COMMONWEALTH OF_____)
                                                                                    )
                                                                                    )
COUNTY OF _____                               )

I, Lisa Reynolds-Barbounis, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

1.        I am over the age of eighteen and make this Affidavit based on my personal knowledge.

2.        I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me.  This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

3.        Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me.  I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

4.        After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

                                                  _____

                                                  Lisa Reynolds-Barbounis

                                                  Date: _____

On the _____ day of _____ 2019, Lisa Reynolds-Barbounis personally appeared before me and acknowledged that she executed the foregoing statement.

                                                  _____

                                                  Name

                                                  Date: _____

                                                  Notary Public State of _____

4816-4285-8924.1

### AFFIDAVIT OF DELANEY YONCHEK

STATE OF/ COMMONWEALTH OF_____)
                                       )
                                       )
COUNTY OF _____      )

      I, Delaney Yonchek, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

      1.     I am over the age of eighteen and make this Affidavit based on my personal knowledge.

      2.     I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

      3.     Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

      4.     After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

                                                  _____

                                                  Delaney Yonchek

                                                  Date: _____

On the _____ day of _____ 2019, Delaney Yonchek personally appeared before me and acknowledged that she executed the foregoing statement.

                                                  _____

                                                  Name

                                                  Date: _____

                                                  Notary Public State of _____

## AFFIDAVIT OF CAITRIONA BRADY

STATE OF/ COMMONWEALTH OF_____)
                                                )
                                                )
COUNTY OF _____        )

       I, Caitriona Brady, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

       1.     I am over the age of eighteen and make this Affidavit based on my personal knowledge.

       2.     I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

       3.     Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

       4.     After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Caitriona Brady

Date: _____

On the _____ day of _____ 2019, Caitriona Brady personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____

# Exhibit 3



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 25, 2019

Mr. Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:     The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

On Tuesday, November 12, 2019, my colleague forwarded to you three affidavits in an attempt to ensure that MEF's data had been protected and to avoid a dispute. On Friday, November 15, 2019, you requested that I provided Word versions of proposed affidavits for your review and discussion with your clients, and I was led to believe that you and your clients wished to resolve this matter amicably. Then, you revealed that your clients had "erased information" which justifiably caused concern and a need to determine why information had not been preserved by your clients. I asked that your clients not destroy any other evidence and that we should work together to determine the circumstances of the destruction. In your November 18 e-mail, however, you abruptly reversed course, suggesting that your clients may not sign affidavits to address the MEF information which they possessed. I had assumed that your clients would prefer to reach an amicable solution with respect to MEF's data. Needless to say, MEF is troubled by these developments.

MEF is similarly troubled by the representation in your November 18, 2019 email that your clients "destroyed almost everything in accordance with their responsibilities." After you made a representation in your November 15 e-mail to me that your clients had "erased information . . . in accordance with the employee handbook," I asked in my November 17 response that you identify a provision in the handbook on which you rely. You identified no such provision. Moreover, your representation that your clients destroyed "almost everything" necessarily means that they still possess some information. On these facts, I would expect that you and your clients would desire to cooperate as requested.

Instead, your knee-jerk reaction was to claim retaliation (perhaps in an attempt to gain some tactical or pecuniary advantage without basis), but again, MEF is merely seeking to protect company information. By seeking an amicable solution, I trust you recognize that our goal has been to *avoid* legal claims, not to harass or retaliate against anyone. I do not believe your clients dispute that they possessed confidential MEF information, including proposals, donor lists, and pictures of donor checks. It should come as no surprise it would pose a risk to the organization if such information were to be disclosed (by your clients or anyone else) to members of the public, and for your clients, it would represent a violation of their continuing confidentiality obligations

Mr. Seth D. Carson, Esquire
November 25, 2019
Page 2

to MEF.  In good faith, MEF therefore seeks the proper assurances from your clients without the need to engage in legal action.

I write to make a final, good faith attempt to ensure that the organization's confidential information is accounted for and ultimately deleted from your clients' devices, personal e-mails accounts, or wherever else this information may reside.  By the close of business on Wednesday, November 27, 2019, please have your clients sign a Stipulated Temporary Restraining Order ("Stipulated TRO") setting forth the necessary assurances regarding data belonging to MEF and/or its donors. Attached is the Stipulated TRO for Ms. Barbounis, and assuming we stipulate, we can execute Stipulated TROs for Ms. Yonchek and Ms. Brady on the same terms.

Please note that if you and your clients do not agree to sign a Stipulated TRO by the date provided, you will leave MEF no option but to enforce its rights to protect its confidential information.  All rights are reserved.


Very truly yours,

Attison L. Barnes, III

cc:     The Middle East Forum

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM
1650 Market Street, Suite 3600
Philadelphia, PA 19103,

                    Plaintiff,

    v.

LISA REYNOLDS-BARBOUNIS
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,

                    Defendant.

Civil Action No. _____

### STIPULATED TEMPORARY RESTRAINING ORDER

AND NOW, on this _____ day of November, 2019, upon the motion for entry of this Stipulated Temporary Restraining Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.      MEF and Barbounis have stipulated and agreed to entry of this Temporary Restraining Order, and without a finding by the Court of law or fact other than as stated below.

2.      The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.      Venue lies properly with this Court.

4.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.     Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.     No security is required of any agency of the United States for issuance of a temporary restraining order.  Fed. R. Civ. P. 65(c).

10.    The entry of this Order is in the public interest.

## ORDER

IT IS THEREFORE ORDERED that:

A.     Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.     Barbounis immediately return to MEF all documents and materials (hard copy and electronic) belonging to MEF and/or its donors;

C.     Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

D.    Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

E.    Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.


SO ORDERED this _____ day of _____, 2019.


By:    _____
United States District Court Judge



AGREED:


_____
*Counsel for Plaintiff The Middle East Forum*



_____
*Counsel for Defendant Lisa Reynolds-Barbounis*

# Exhibit 4

**LAW OFFICES OF**

# SIDNEY L. GOLD & ASSOCIATES

A PROFESSIONAL CORPORATION

1835 MARKET STREET, SUITE 515
PHILADELPHIA, PA 19103
(215) 569-1999  FAX (215) 569-3870

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

*    ALSO ADMITTED IN NEW JERSEY
**   ALSO ADMITTED IN NEW YORK
++   ALSO ADMITTED IN DISTRICT OF COLUMBIA

January 13, 2020

**Via E-mail & Hand Delivery**

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

  RE: **The Middle East Forum ("MEF") – Proposed Stipulation**

Dear Mr. Carson:

  MEF is extremely concerned that you and your client Lisa Barbounis have neither provided responses to its five interrogatories and four document requests served on December 5, 2019, nor adequately addressed our multiple emails and letters in connection with the expedited discovery. In light of the upcoming injunction hearing, MEF has been prejudiced by your client's failure to respond and failure to produce her devices for inspection, as the delay has prevented us from preparing for the hearing.

  I write to make a final, good faith attempt to determine whether we can reach agreement and perhaps avoid court intervention. From the outset, MEF has sought written assurances from your client that MEF's confidential information is accounted for and ultimately deleted from all of your client's devices, personal e-mails accounts, Google Drive accounts, or wherever else this information may reside. MEF has also sought written assurances that your client will not disclose MEF information and data. On November 1, 2019, prior to filing this action, we provided a draft affidavit for your client to sign. See attached letter dated November 1, 2019. When your client refused to sign an affidavit to supply the reasonable assurances, MEF was forced to prepare this legal action. Shortly before filing this action, we again sought to resolve these issues by providing your client a Stipulated TRO on or about November 25, 2019. See attached letter dated November 25, 2019. Again, your client would not agree, causing this action to be filed. Your client's failure to engage on these proposed assurances has led MEF to conclude that she not only has MEF data

Mr. Seth D. Carson, Esquire
January 13, 2020
Page 2

in her possession, but also that she will not agree to delete it, raising concerns that she will disclose it. Otherwise, there would be no reason not to agree to the stipulation we presented. Hence, MEF had no choice but to file this action.

Since that time, MEF has diligently sought to obtain the information and data responsive to the interrogatories or document requests dated December 5, 2019, including imaging of your client's devices. We have also sent multiple emails and letters regarding the selection of a mutually-acceptable vendor, and on December 28, 2019, we proposed a vendor to use. We followed up on December 30 to let you know the availability of the vendor. Your initial response was to deny that the Court permitted expedited discovery during the pre-hearing conference, and still, your client has not responded to the interrogatories, has not produced a single document, and has not delivered a single device for imaging.[1]

As a final good faith effort to resolve this case in advance of a court hearing, please see the attached Stipulated Injunction Order ("Stipulated Order"). If your client truly does not possess data and confidential information belonging to MEF and/or its donors and has no intention to disseminate MEF information, then there should be no reason not to sign the Stipulated Order, which is designed solely to protect MEF's interests in preventing confidential information from being disseminated. Please return to me the Stipulated Order by noon on January 14, 2020.

If you and your client are not willing to return a signed version of this Stipulated Order by the date and time above, we will assume that you do not wish to cooperate in good faith. All rights are reserved.

Very truly yours,

SIDNEY L. GOLD

SLG/dd
Enclosures

cc:     Attison Barnes, III, Esquire

---

[1] By January 1, 2020, you were able to prepare and file a 38-page motion to dismiss package, but you have not addressed the outstanding discovery issues. Recall that the Court stated at the telephonic hearing on December 20, 2019 that it would not entertain the motion to dismiss before the injunction hearing.



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 12, 2019

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:    The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

I am in receipt of your November 8, 2019 e-mail.  While MEF is hopeful that your clients will cooperate and provide written assurances as you state, we have some concerns to resolve.

First, to the extent that you are instructing your clients to destroy hard copy or electronic documents at this time, that would constitute spoliation of evidence, and it should stop immediately.  Until we can implement a process for preservation and orderly removal and permanent deletion of the files in your clients possession, your clients should not destroy evidence that currently exists on any devices.  They, of course, should not access, use, or disclose the information in the interim, and we should work with each other to perform a mutually agreeable plan to capture the data including any metadata, allow the parties to determine whether MEF data has been disclosed so that MEF can recover that data from any other custodians, and then ensure permanent deletion from your clients' devices.  Please let me know right away if your clients have destroyed any such materials, at your direction or otherwise, and if so, what files were destroyed and when.

Second, while you request that MEF identify what materials we believe your clients removed from MEF, we are only beginning to uncover what your clients improperly removed from the company. Your clients cannot hide behind a request that MEF identify all such documents they removed when they performed these acts without MEF knowledge and approval.  If your clients are truly willing to cooperate and avoid expensive litigation, they will work with us to promptly identify (before deletion) all MEF Data and Confidential Information that may be contained on all devices, along with the actual files/copies.

Third, I attach affidavits and instructions on steps your clients must take with respect to the documents before deletion.  We must receive executed copies of these documents by each of your clients before the close of business on November 15, 2019.  Again, if your clients are unwilling to provide these written assurances in a timely manner, MEF will proceed with protecting its rights through legal action.

Seth D. Carson, Esquire
November 12, 2019
Page 2

Finally, at no time has MEF engaged in retaliation as you claim, as a former employer is entitled to protect its data from use and disclosure by former employees. If you have authority to the contrary, please forward it for my review.

Regardless of any statements made in this letter in an attempt to resolve this matter amicably, MEF reserves all rights.

Very truly yours,

Attison L. Barnes III

cc:     The Middle East Forum

## AFFIDAVIT OF LISA REYNOLDS-BARBOUNIS

STATE OF/ COMMONWEALTH OF_____ )
                                      )
                                      )
COUNTY OF _____ )

       I, Lisa Reynolds-Barbounis, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

       1.     I am over the age of eighteen and make this Affidavit based on my personal knowledge.

       2.     I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

       3.     Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

       4.     After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Lisa Reynolds-Barbounis

Date: _____

On the _____ day of _____ 2019, Lisa Reynolds-Barbounis personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____

## AFFIDAVIT OF DELANEY YONCHEK

STATE OF/ COMMONWEALTH OF_____ )
                                                                      )
                                                                      )
COUNTY OF _____                          )

      I, Delaney Yonchek, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

      1.     I am over the age of eighteen and make this Affidavit based on my personal knowledge.

      2.     I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

      3.     Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

      4.     After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Delaney Yonchek

Date: _____

On the _____ day of _____ 2019, Delaney Yonchek personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____

## AFFIDAVIT OF CAITRIONA BRADY

STATE OF/ COMMONWEALTH OF_____)
                                        )
                                        )
COUNTY OF _____               )

I, Caitriona Brady, being duly sworn under oath, do affirmatively declare and state as follows under penalty of perjury:

1.      I am over the age of eighteen and make this Affidavit based on my personal knowledge.

2.      I, my agents, servants and employees, and all those in active concert or participation with me, have not and will not share, distribute, or disseminate any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. This includes, but is not limited to, any confidential information, proprietary information, or trade secrets that is based upon or incorporates any information referenced above.

3.      Since the end of my employment with The Middle East Forum, I have not deleted any documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during or after the course of my employment with The Middle East Forum, including but not limited to confidential information, proprietary information, or trade secrets of The Middle East Forum or any other entity that is stored on any electronic device or email account belonging to me. I will work with a vendor acceptable to The Middle East Forum to create a register listing any and all such documents and information belonging to The Middle East Forum or any other private or government entity to which I had access during the course of my employment that is stored on any electronic device or email account belonging to me.

4.      After providing this register of any and all documents and information to The Middle East Forum, I will permanently destroy any and all documents and information that I have retained or taken from The Middle East Forum in accordance with written instructions provided by The Middle East Forum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2019 in _____.

_____
Caitriona Brady

Date: _____

On the _____ day of _____ 2019, Caitriona Brady personally appeared before me and acknowledged that she executed the foregoing statement.

_____
Name

Date: _____

Notary Public State of _____



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 25, 2019

Mr. Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:     The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

On Tuesday, November 12, 2019, my colleague forwarded to you three affidavits in an attempt to ensure that MEF's data had been protected and to avoid a dispute. On Friday, November 15, 2019, you requested that I provided Word versions of proposed affidavits for your review and discussion with your clients, and I was led to believe that you and your clients wished to resolve this matter amicably. Then, you revealed that your clients had "erased information" which justifiably caused concern and a need to determine why information had not been preserved by your clients. I asked that your clients not destroy any other evidence and that we should work together to determine the circumstances of the destruction. In your November 18 e-mail, however, you abruptly reversed course, suggesting that your clients may not sign affidavits to address the MEF information which they possessed. I had assumed that your clients would prefer to reach an amicable solution with respect to MEF's data. Needless to say, MEF is troubled by these developments.

MEF is similarly troubled by the representation in your November 18, 2019 email that your clients "destroyed almost everything in accordance with their responsibilities." After you made a representation in your November 15 e-mail to me that your clients had "erased information . . . in accordance with the employee handbook," I asked in my November 17 response that you identify a provision in the handbook on which you rely. You identified no such provision. Moreover, your representation that your clients destroyed "almost everything" necessarily means that they still possess some information. On these facts, I would expect that you and your clients would desire to cooperate as requested.

Instead, your knee-jerk reaction was to claim retaliation (perhaps in an attempt to gain some tactical or pecuniary advantage without basis), but again, MEF is merely seeking to protect company information. By seeking an amicable solution, I trust you recognize that our goal has been to *avoid* legal claims, not to harass or retaliate against anyone. I do not believe your clients dispute that they possessed confidential MEF information, including proposals, donor lists, and pictures of donor checks. It should come as no surprise it would pose a risk to the organization if such information were to be disclosed (by your clients or anyone else) to members of the public, and for your clients, it would represent a violation of their continuing confidentiality obligations

Mr. Seth D. Carson, Esquire
November 25, 2019
Page 2

to MEF.  In good faith, MEF therefore seeks the proper assurances from your clients without the
need to engage in legal action.

I write to make a final, good faith attempt to ensure that the organization's confidential information
is accounted for and ultimately deleted from your clients' devices, personal e-mails accounts, or
wherever else this information may reside.  By the close of business on Wednesday, November
27, 2019, please have your clients sign a Stipulated Temporary Restraining Order ("Stipulated
TRO") setting forth the necessary assurances regarding data belonging to MEF and/or its donors.
Attached is the Stipulated TRO for Ms. Barbounis, and assuming we stipulate, we can execute
Stipulated TROs for Ms. Yonchek and Ms. Brady on the same terms.

Please note that if you and your clients do not agree to sign a Stipulated TRO by the date provided,
you will leave MEF no option but to enforce its rights to protect its confidential information.  All
rights are reserved.

Very truly yours,

Attison L. Barnes, III

cc:      The Middle East Forum

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM
1650 Market Street, Suite 3600
Philadelphia, PA 19103,

                  Plaintiff,

      v.

LISA REYNOLDS-BARBOUNIS
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,

                 Defendant.

Civil Action No.

## STIPULATED TEMPORARY RESTRAINING ORDER

AND NOW, on this _____ day of November, 2019, upon the motion for entry of this Stipulated Temporary Restraining Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.    MEF and Barbounis have stipulated and agreed to entry of this Temporary Restraining Order, and without a finding by the Court of law or fact other than as stated below.

2.    The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.    Venue lies properly with this Court.

4.    Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.    Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.    Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.    Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.    Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.     No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

10.     The entry of this Order is in the public interest.

## ORDER

IT IS THEREFORE ORDERED that:

A.     Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.     Barbounis immediately return to MEF all documents and materials (hard copy and electronic) belonging to MEF and/or its donors;

C.     Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis) permanently removing all documents and data belonging to MEF and/or its donors from the devices;

    D.      Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

    E.      Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

          SO ORDERED this ___ day of _____, 2019.

                                        By: _____
                                           United States District Court Judge

AGREED:

_____
*Counsel for Plaintiff The Middle East Forum*

_____
*Counsel for Defendant Lisa Reynolds-Barbounis*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE MIDDLE EAST FORUM<br>1650 Market Street, Suite 3600<br>Philadelphia, PA 19103,<br><br>                              Plaintiff,<br><br>        v.<br><br>LISA REYNOLDS-BARBOUNIS<br>2601 Pennsylvania Avenue, #1153<br>Philadelphia, PA 19130,<br><br>                              Defendant. | Civil Action No.: 19-5697 |

## STIPULATED INJUNCTION ORDER

AND NOW, on this _____ day of January, 2020, upon the motion for entry of this Stipulated Injunction Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.      MEF and Barbounis have stipulated and agreed to entry of this Injunction Order, and without a finding by the Court of law or fact other than as stated below.

2.      The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.      Venue lies properly with this Court.

4.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.      Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.      Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.      Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.     No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

10.     The entry of this Order is in the public interest.

## ORDER

IT IS THEREFORE ORDERED that:

A.     Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.     Barbounis return to MEF, on or before January 20, 2020, all documents and materials (hard copy and electronic) mentioning MEF and/or its donors, including such information in cloud storage (Dropbox, Google Drive, etc.), e-mail accounts, thumb drives, and other digital storage;

C.     Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel

for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

D.      Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

E.      Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

SO ORDERED this _____ day of January, 2020.

By:     _____
        United States District Court Judge

AGREED:

_____
*Counsel for Plaintiff The Middle East Forum*

_____
*Counsel for Defendant Lisa Reynolds-Barbounis*

_____
*Lisa Reynolds-Barbounis*

# Exhibit 5

**From:** Barnes III, Attison
**Sent:** Friday, February 28, 2020 11:03 AM
**To:** Sidney Gold; Seth Carson
**Subject:** RE: MEF v. Lisa Barbounis
**Attachments:** Stipulated Injunction EDPA.docx

Seth —

We'll review your letter, but as we discussed last night, here is the proposed stipulated injunction order.  As your client claims she will not keep, disclose, or use MEF data, then it seems the stipulated injunction order will save us all some time.  The first part of the order sets forth what we allege, because the order needs to set forth the predicate for the injunction.  Let us know.  Thanks.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Thursday, February 27, 2020 9:13 PM
**To:** Sidney Gold <sgold@discrimlaw.net>; Barnes III, Attison <ABarnes@wiley.law>; Barnes III, Attison <ABarnes@wiley.law>; Denise Drages <ddrages@discrimlaw.net>
**Subject:** MEF v. Lisa Barbounis

Attached please find correspondence in connection with our telephone conversation earlier this evening.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this

1

message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM,

                Plaintiff,

    v.

LISA REYNOLDS-BARBOUNIS,

                Defendant.

Civil Action No.: 19-5697

## **STIPULATED INJUNCTION ORDER**

AND NOW, upon the motion for entry of this Stipulated Injunction Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.      MEF and Barbounis have stipulated and agreed to entry of this Injunction Order, and without a finding by the Court of law or fact other than as stated herein.

2.      The Court has jurisdiction over the subject matter of this case, and it has jurisdiction over the parties.

3.      Venue lies properly with this Court.

4.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure

Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.      Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained and enjoined by an order of this Court.

7.      Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.      Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve and not alter all documents and materials (hard copy and electronic) containing an/or referencing MEF, MEF work product, MEF donors, MEF contacts and business affiliations, and MEF finances and donations ("MEF Data"); (b) immediately return to MEF through its counsel all non-privileged hard copy documents and materials containing and/or referencing MEF Data; (c) once her electronic devices, including computers, cellular phones, USB and other physical storage devices, cloud-based storage accounts, messaging and social media accounts, and email accounts are processed and imaged by a reputable computer forensics vendor, including all data, metadata, and restored materials, and the parties' counsel have access to the data collected by the vendor (counsel for Barbounis must ensure that the imaged materials are kept under strict confidence in his sole possession during this litigation, then returned to MEF counsel at the conclusion of this action), promptly cooperate with the deletion of all non-privileged data and files containing MEF Data from her electronic devices and all other accounts, storage, and media; and

(d) take all steps to ensure that MEF Data is not further disseminated or used by Barbounis or any other person.

9.      No security is required of any agency of the United States for issuance of an injunction.  Fed. R. Civ. P. 65(c).

10.     The entry of this Order is in the public interest.

## **ORDER**

The Court finds that the standard for a preliminary injunction has been met, and IT IS THEREFORE ORDERED that:

A.      Barbounis will preserve and not alter all documents and materials (hard copy and electronic) containing and/or referencing MEF Data;

B.      Barbounis will deliver to MEF counsel, on or before March 6, 2020, all non-privileged hard copy documents and materials containing and/or referencing MEF Data;

C.      Once her electronic devices, including computers, cellular phones, USB and other physical storage devices, cloud-based storage accounts, messaging and social media accounts, and email accounts are processed and imaged by a reputable computer forensics vendor, including all data, metadata, and restored materials, and the parties' counsel have access to the data collected by the vendor (counsel for Barbounis must ensure that the imaged materials are kept under strict confidence in his sole possession during this litigation, then returned to MEF counsel at the conclusion of this action), Barbounis will promptly cooperate with the deletion of all non-privileged data and files containing MEF Data from her electronic devices and all other accounts, storage, and media; and

D.      Barbounis will take all steps to ensure that MEF Data is not further disseminated or used by Barbounis or any other person.

SO ORDERED this _____ day of _____, 2020.

By: _____

United States District Court Judge

AGREED:

_____

*Counsel for Plaintiff The Middle East Forum*

_____

*Counsel for Defendant Lisa Reynolds-Barbounis*

_____

*Lisa Reynolds-Barbounis*

# Exhibit 6

**From:**        Robert Centofanti <rcentofanti@cornerstonediscovery.com>
**Sent:**        Friday, March 6, 2020 11:57 AM
**To:**          Briscoe, Adam; Barnes III, Attison
**Cc:**          Billing
**Subject:**     Cornerstone Discovery Pricing

Attison and Adam,

It was a pleasure speaking with you both earlier today.  As discussed, we charge a flat rate of $1,200 to image/preserve mobile devices.  (Specifically for mobile devices, processing of the forensic image is included in the flat rate.)  The cost to collect/preserve thumb drives, social media accounts, email accounts, and cloud accounts is $500 per thumb drive or account.  However, depending on the number of accounts, I may be able to reduce the cost and simply bill the forensic time hourly ($395 per hour) as the forensic examiner can be very efficient with time when collecting multiple accounts.

As we move into the processing stage, the "loose" data from the thumb drives, social media accounts, email accounts, and cloud accounts would go through our Early Case Assessment and be processed, deduplicated, and indexed for searching at $25 per GB.  The exact data size will determine the ultimate cost.  At that point we will be ready to run searches and refine.  An early, rough estimate for e-discovery prep/search/production time is 8-12 hours at $195 per hour.  Finally, the resultant data will be ready for review.  The costs for our hosting platform are determined by data size.  We can discuss those specifics at that time.

I hope this is helpful.  Please let me know if there are any questions, or if an item needs to be further clarified.

Thank you,



**Robert Centofanti** / Director, Business Development
rcentofanti@cornerstonediscovery.com
Office: 267.639.6900 | Cell: 610.203.0686

**Cornerstone Discovery**
4775 League Island Blvd. Philadelphia, PA 19112
http://cornerstonediscovery.com



Don't miss this latest news from Cornerstone:
Case Study: How a Litigation Support Partner Can Help Grow Your Firm