# Exhibit 1



October 25, 2019

Attison L. Barnes, III
202.719.7385
abarnes@wileyrein.com

**BY E-MAIL AND OVERNIGHT MAIL**

Mrs. Lisa Reynolds-Barbounis
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130
lisabarbounis@gmail.com
lisa.e.reynolds@gmail.com

Re:     Post-employment Obligations to The Middle East Forum

Dear Mrs. Reynolds-Barbounis:

This law firm has been engaged by The Middle East Forum ("MEF" or the "Organization") to: (1) investigate your potential wrongdoing and hold you accountable, by legal action if necessary; and (2) ensure, by legal action if necessary, that you: (a) strictly adhere to your post-employment obligations to the Organization; (b) immediately cease and desist from any and all collection, gathering, distribution, or disclosure activities associated with MEF's donor information, financial information, funding source information, proposals, sensitive communications, or other confidential information as contemplated by the Agreement and Manual below ("MEF Data"); and (c) certify that all MEF Data has been permanently deleted from all personal computers or other electronic devices in a manner satisfactory to the Organization.

## I.  Your Obligations Under MEF Non-Disclosure Agreement

As you know, your post-MEF conduct is governed by, among other things, the provisions of the Confidentiality & Non-Disclosure Agreement, which you executed on or about October 16, 2017 (the "Agreement"), as well as the Organization's Personnel Manual (the "Manual"), dated May 2019.

In the Agreement (a copy of which is attached to this letter), you acknowledge among other classifications of information, the sensitivity and confidentiality of:

a.  The names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF.



b. Any address (residential or business) utilized by: (i) MEF President Daniel Pipes; (ii) any MEF board member; (iii) any MEF officer; (iv) any MEF employee; and/or (v) any MEF contractor.

c. Any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation.

d. Any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

(hereinafter "Confidential Information"). Agreement, section 2. In the Agreement you also acknowledged that you would have access to "Confidential Information" and agreed to your obligations to safeguard this information. Agreement, sections 3, 6; *see also* Personnel Manual at 11-12, 16.

You further agreed:

not to disclose any Confidential Information to *any* third party, *including but not limited to family members, relatives, significant others, and friends*, unless (i) MEF provides prior written consent; *and* (ii) MEF and the third party execute a confidentiality agreement.

Agreement, section 4. You agreed to be bound by obligations under the Agreement "regardless of whether or not the parties end any such professional relationship". Agreement, section 7.

Moreover, you agreed that you would:

take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of Confidential Information…tak[ing] at least those measures that it takes to protect its own most highly confidential information, and shall promptly notify MEF of any misuse or misappropriation of Confidential Information of which it becomes aware.

Agreement, section 6. In the event that you violate or attempt to violate the Agreement, you agreed that MEF is entitled to seek "injunctive relief *in addition to* all legal remedies." Agreement, section 9.



## II. Your Obligations Under MEF Personnel Manual

Your conduct is also governed by the provisions of the Manual, of which you also acknowledged receipt on or about October 16, 2017. In the Manual (a copy of which is attached to this letter), you acknowledge that all MEF Confidential Information is "solely the property of MEF". Manual at 11. You also agreed to "exercise special care to protect the proprietary and/or confidential information of MEF" and to not "remove any MEF Confidential Information from MEF's premises or make copies of such materials except for use in MEF business." *Id.* at 12, 16.

Further, you agreed that you would:

> return to MEF all MEF Confidential Information, and copies of the foregoing, at any time upon the request of MEF and, in any event and without such request, prior to or upon the termination of employment by MEF. Employees agree not to retain any copies of any MEF Confidential Information, in any form, after termination of employment for any reason.

Manual at 12. In a written memorandum dated November 3, 2018, you were expressly requested to sign, and then executed, a new NDA ahead of a staff meeting on November 5, 2018. In a second memorandum sent on November 15, 2018, after it came to the attention of the Organization that Confidential Information had been improperly discussed, you were reminded of the definition of Confidential Information and your obligations to comply with the signed Agreement. *See* attached Middle East Forum Memoranda, dated November 3, 2018 and November 15, 2018.

## III. Your Obligations Under Pennsylvania Trade Secrets Act

In addition to ensuring that you comply with the Agreement and Manual, we are investigating your conduct which may result in the Organization bringing claims against you.

Under the Pennsylvania Uniform Trade Secrets Act, you are prohibited from misappropriating the trade secrets of MEF. These trade secrets include, but are not limited to, the names, addresses, and telephone numbers of MEF's clients, proposals, pricing structures, and business strategies, as well as MEF's operational requirements and the terms of present and anticipated contracts with clients.



Misappropriation includes, but is not limited to, the disclosure of trade secrets or the use of trade secrets for your own or someone else's benefit. This information is protected regardless of whether it exists in a document, file, or other record, or is simply remembered by you. Re-creating documents, files, or other records of such information after your employment ended also is prohibited. Moreover, any use of this information while working for MEF's competitors or in other organizations would constitute an unlawful and actionable misappropriation of MEF's proprietary information. There are substantial penalties should you fail to abide by these obligations. Separate and apart from the obligations contained in your agreements with MEF, Pennsylvania imposes severe burdens on entities and individuals found liable for wrongful interference and theft of trade secrets claims, including attorneys' fees and punitive damages.

### IV. Your Additional Tort Liability

In addition to the penalties for the misuse of MEF's trade secrets, any inducement by you of a donor, potential donor, contributor, or representative of the media not to do business with MEF may also result in tort claims. Similarly, to the extent we discover during our continuing investigation that you were induced to take action by another person or entity, it is well-settled that the "[s]ystematic inducing of employees to leave their present employment and take work with another" in order "to cripple and destroy an integral part of a [business]," or "for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers," rather than "to obtain the services of particularly gifted or skilled employees" is unfair competition under Pennsylvania law. *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768, 771 (1965); *see also Reading Radio, Inc. v. Fink et al.*, 833 A.2d 199, 212 (Pa.Super.Ct.2003); *Certified Laboratories of Texas, Inc. v. Rubinson*, 303 F.Supp. 1014 (E.D.Pa. 1969) (where competitor hired employers' former salesman and authorized and ratified conduct which included flagrantly inducing breaches of contract, destroying and altering subpoenaed documents, and falsely testifying before the court, employers were entitled to punitive damages from the competitor); *Colgate-Palmolive Co. v. Carter Prods.*, 230 F. 2d 855, 864 (4th Cir.), *cert. denied*, 352 U. S. 843, 77 S. Ct. 43, 1 L. Ed. 2d 59 (1956) ("One may not escape liability for appropriating the business secrets of another by employing one who has been entrusted with the secrets and permitting him to make use of them."). In other words,



> If an employee has been induced to breach his duty of loyalty to his present
> or former employer, "[n]ot only may liability for such inducement be
> imposed upon the employee who is guilty of a breach of fiduciary duty, but
> it may also be imposed upon any others who have cooperated in or reaped
> the benefits of such a breach."

*Id.* (citing Annotation, Liability for inducing employee not engaged for definite
term to move to competitor, 24 A.L.R. 3d 821).

## V. Your Other Potential Liability

The Organization is considering additional claims against you:

1. Conspiracy, in light of your apparent coordination of the actions above with
   other current and/or former employees of MEF.

2. Unfair trade practices, as a result of any deceptive and dishonest practice of
   collecting and distributing Confidential Information to third parties that
   result in irreparable injury to MEF.

3. Conversion, because of your intentional removal of proprietary information
   belonging to MEF.

4. Breach of your duty of loyalty, by engaging in these prohibited acts, which
   were patently adverse to the best interests of the Organization.

5. Unjust enrichment, to the extent you benefited from this prohibited activity
   at the expense of MEF.

6. Violation of the Computer Fraud and Abuse Act ("CFAA"). An employee-
   hacker violates the CFAA whether he or she uses the data with or without
   financial gain. *See United States v. Rodriguez, 628 F.3d 1258* (11th Cir.
   2010) (employee-hacker violated statute even though he never used the data
   for financial gain).

## VI. Conduct Violating the Agreement and Manual



We are troubled by your improper conduct as you were leaving the Organization and post-employment. It has been brought to the attention of the Organization that you forwarded MEF Confidential Information to your private email account, and to the private email account of a then employee of MEF whom you may have unlawfully induced to leave the Organization. We are investigating the extent to which you may have utilized the Organization's Confidential Information to support political activities of Paul Harris (formerly known as Tommy Robinson), in direct contravention of the Organization's policies and directives. This Confidential Information includes:

(1) a General Operating Support master document and email listing organizations and donors that had been approached or sent proposals for donations;

(2) a sensitive countering violent extremism MEF policy document, composed on MEF's letterhead;

(3) a proprietary MEF policy paper on United Nations Relief and Works Agency for Palestine Refugees ("UNRWA") funding; and

(4) MEF proprietary communications resources, including, but not limited to, media members lists and the Organization's Meltwater account.

Additionally, the Organization has reason to believe that you may possess vital MEF Confidential Information contained in:

1. Audio recordings you made during MEF meetings;

2. Written notes made during MEF meetings;

3. iPhone notes made during MEF meetings, including audio and textual;

4. Google calendar entries, including, but not limited to, Gregg Roman's activities and travels;

5. Google Drive documents containing MEF Data; and

6. University of Pennsylvania accounts used for MEF research.



In light of these developments, we have reason to be concerned that you are disclosing and/or may imminently disclose MEF Confidential Information to third parties in violation of the Agreement and Manual provision detailed above. As MEF's Director of Communications, you were fully aware of MEF's fundraising practices, funding sources, donor information, and policy positions and statements. In fact, during your employment at MEF, you had high-level access to the Organization's most sensitive proprietary information, sources of funding, donor contact information, sensitive proposals, and other MEF trade secrets. As a member of MEF's inner circle, you participated in the Organization's business strategy discussions, including but not limited to business development, marketing initiatives, and media engagements. If you do not immediately confirm in writing that you will cease and desist from any such conduct, MEF will have no choice but to pursue appropriate remedies against you, including injunctive relief.

MEF believes that if you engage in the actions described above, such actions would cause irreparable injury to MEF, whereby MEF's remedy at law for any such competitive breach would be inadequate. In addition to any other available remedies, MEF would seek temporary and permanent injunctive relief against you personally (*and any new employer if applicable*) to enjoin all actual or threatened action that would lead to such violations or otherwise impinge on MEF's trade secrets. MEF would further ask the Court to award to MEF any and all legal costs incurred by MEF to obtain injunctive or other relief. MEF will not only pursue actions against you, but will if appropriate, vigorously pursue its legal remedies against such other individuals or entities with whom you may conspire in derogation of MEF's rights.

## VII. Demand

You should be fully aware that it is MEF's intention to vigorously enforce its rights; to protect its competitive and proprietary interests. Therefore, on behalf of MEF, I trust that you will fully comply with your legal obligations and that you will cease and desist as stated above. Please confirm by sworn written affidavit **on or before the close of business on Thursday, October 31, 2019** that:

> (1) you will abide by your obligations set forth in the Agreement and Manual as described in this letter;



(2) you will immediately cease and desist from any and all collection, gathering, distribution, or disclosure activities related to MEF's trade secrets, Confidential Information, or MEF Data; and

(3) with respect to all MEF Data (however saved, including but not limited to backup media, hard drives, Organization or personal email servers, cloud servers, server tapes, disks, thumb drives, home computers, laptops, PDAs, and/or zip drive media), you will immediately permanently delete this information, including all metadata, in a manner satisfactory to the Organization so that the Organization can confirm proper deletion of such information.

To meet this demand, you must **by close of business on Friday, November 15, 2019**, send to this law firm a register listing all MEF Data and Confidential Information that may be contained on all devices, along with the actual files/copies you possess, including but not limited to:

1. Audio recordings you made during MEF meetings;

2. Written notes made during MEF meetings;

3. iPhone notes made during MEF meetings, including audio and textual;

4. Google calendar entries, including, but not limited to, Gregg Roman's activities and travels;

5. Google Drive documents containing MEF Data; and

6. University of Pennsylvania accounts used for MEF research.

Then, once complete copies have been made and returned to my attention, you must immediately delete all MEF Data and Confidential Information from your devices and provide a written certification under oath to me.

In the meantime, while MEF would prefer an amicable solution, all rights are reserved against you and those acting in concert with you. And we continue our investigation into your potential wrongdoing as MEF considers claims against you.



Mrs. Lisa Reynolds-Barbounis
October 25, 2019
Page 9

Very truly yours,


Attison L. Barnes, III

cc:  The Middle East Forum

# CONFIDENTIALITY & NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement ("Agreement") is executed effective 10/14/11 _____, between the Middle East Forum ("MEF"), which is based in Philadelphia, PA, and ___ ("EMPLOYEE"), who is an employee of MEF (collectively, "the Parties").

WHEREAS, MEF and Employee have a professional relationship, whereby employee performs services for MEF in exchange for compensation.

NOW, THEREFORE, in consideration of the mutual promises contained herein, as well as other good and valuable consideration, the parties hereto agree as follows:

1. **Purpose.** The parties have a professional relationship of mutual interest as described herein. In connection with this professional relationship, MEF may disclose to EMPLOYEE certain Confidential Information which MEF desires EMPLOYEE treat as confidential.

2. **Definition.** For purposes of this Agreement, "Confidential Information" shall mean any of the following:

   (a) The address, floor, suite number, and/or General Location of commercial office space utilized by MEF (for this Section 2, the term "General Location" includes, but is not limited to, the names of streets surrounding commercial office space utilized by MEF).

   (b) The address, floor, suite number, and/or General Location of any potential and/or future commercial office space to be utilized by MEF.

   (c) Any information and/or materials provided to EMPLOYEE by MEF concerning the address, floor, suite number, and/or General Location of commercial office space utilized by MEF (this includes any potential and/or future commercial office space to be utilized by MEF).

   (d) Notes taken and materials produced by EMPLOYEE concerning the address, floor, suite number, and/or General Location of commercial office space utilized by MEF (this includes any potential and/or future commercial office space to be utilized by MEF).

   (e) The names and/or addresses (residential or business) utilized by donors (individuals, families and/or foundations) who provide financial or in-kind support to MEF.

   (f) Any address (residential or business) utilized by: (i) MEF President Daniel Pipes; (ii) any MEF board member; (iii) any MEF officer; (iv) any MEF employee; and/or (v) any MEF contractor.

   (g) Any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or materials and/or information clearly and prominently marked with some similar designation. Confidential Information under this subsection (g) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any materials and/or information clearly and prominently marked "Proprietary" and/or "Private" and/or "Confidential"; or

materials and/or information clearly and prominently marked with some similar designation.

(h) Any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private. Confidential Information under this subsection (h) shall not include intellectual property of EMPLOYEE, unless such intellectual property contains any information that is orally disclosed to EMPLOYEE and identified by MEF as proprietary and/or confidential and/or private.

3. **Access to Confidential Information.** The parties acknowledge that EMPLOYEE, in the course of its relationship with MEF, described herein, will have access to Confidential Information.

4. **Non-Disclosure.** EMPLOYEE agrees not to disclose any Confidential Information to *any* third party, *including but not limited to family members, relatives, significant others, and friends*, unless (i) MEF provides prior written consent; *and* (ii) MEF and the third party execute a confidentiality agreement.

5. **Exception to Non-Disclosure.** EMPLOYEE *may* provide the address of commercial office space utilized by MEF to a vendor and/or supplier, *only if* (i) such disclosure would be necessary in the performance of EMPLOYEE's services and obligations to MEF; *and* (ii) EMPLOYEE uses the entity name "Savannah Mercantile and Trading Company" as part of the address, and *not* "MEF," "Middle East Forum," "The Forum," or any name of any staff member or contractor of MEF, including but not limited to "Daniel Pipes"; *and* (iii) EMPLOYEE, to the best of his/her ability, knows that any such vendor and/or supplier is *not* aware that the address provided is utilized by MEF.

6.. **Maintenance of Confidentiality.** EMPLOYEE shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of Confidential Information. Without limiting the foregoing, EMPLOYEE shall take at least those measures that it takes to protect its own most highly confidential information, and shall promptly notify MEF of any misuse or misappropriation of Confidential Information of which it becomes aware.

7. **Term.** The obligations described herein shall survive in perpetuity (and shall remain regardless of whether or not the parties end any such professional relationship), *or until* such time as all Confidential Information becomes *widely publicly known* and made *generally available* through no action or inaction of EMPLOYEE.

8. **Violations; Termination.** MEF has the right to take disciplinary action against Employee, up to and including termination, for any violation of this Agreement.

9. **Violations; Legal Remedies.** Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief *in addition to* all legal remedies.

10. **Failure to Enforce.** A failure to enforce any provision of this Agreement will not constitute a waiver thereof or of any other provision.

11. **Modifications.** This Agreement cannot be terminated, amended or otherwise modified except in a writing signed by both parties.

12. **Entire Agreement.** This Agreement shall supersede any prior oral or written understandings or communications between the parties with respect to its subject matter

hereof, and constitutes the entire agreement of the parties with respect to the subject matter hereof.

13.   **Severability**. If any provision of this Agreement is declared void, invalid, or illegal by any governmental, judicial or arbitral authority, the validity or legality of any of the other provisions and of the entire Agreement shall not be affected thereby and the remaining provisions shall remain in full force and effect.

14.   **Pennsylvania Law**. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, and performed entirely within such State. Jurisdiction and venue for any claim arising out of this Agreement shall be made in the Commonwealth of Pennsylvania.

In witness whereof, the parties hereto have executed this Agreement as of the day and year first written above.

Middle East Forum (MEF):

_____, Director
By: [Name, Title]

_____ (EMPLOYEE):

_____
[Name, Title]

# Personnel Manual

Effective May 2019

# Middle East Forum

1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

(215) 546-5406

MISSION STATEMENT .................................................................................................. 4

RECEIPT OF THE MANUAL .......................................................................................... 4

AT WILL EMPLOYMENT ............................................................................................. 4

SALARIES AND WAGES ............................................................................................... 4
 *Work Week and Reporting* ......................................................................................... *4*
 *Breaks* ........................................................................................................................... *5*
 *Personal Business* ....................................................................................................... *5*
 *Pay Schedule* ............................................................................................................... *5*
 *Deductions* .................................................................................................................. *5*
 *Other Employment* ..................................................................................................... *5*

WORK PRODUCT ......................................................................................................... 6

TIME AWAY FROM WORK .......................................................................................... 6
 *Holidays* ....................................................................................................................... *6*
 *Vacation-Professional Staff.* ....................................................................................... *6*
 *Vacation-Administrative Staff.* .................................................................................... *7*
 *Sick Leave* .................................................................................................................... *7*
 *Bereavement/Death in the Family Policy* ................................................................... *8*
 *Childbirth-related Leave* ............................................................................................ *8*
 *Jury Duty* ..................................................................................................................... *8*
 *Professional Leave of Absence* .................................................................................... *8*
 *Personal Leave of Absence.* ......................................................................................... *8*
 *Military Leave* ............................................................................................................. *9*

EMPLOYEE BENEFITS ................................................................................................ 9
 *Health Insurance* ......................................................................................................... *9*
 *Employer Paid Insurances* .......................................................................................... *9*
 *Worker's Compensation* ............................................................................................... *9*
 *Pension* ........................................................................................................................ *10*

OFFICE POLICIES ....................................................................................................... 10
 *Telephones* ................................................................................................................... *10*
 *Postage* ........................................................................................................................ *10*
 *Dress Code* ................................................................................................................... *10*
 *Purchases* ..................................................................................................................... *10*
 *Reimbursement for Travel* ........................................................................................... *10*
 *No Solicitation Policy* .................................................................................................. *11*
 *Personal Use of MEF Property* .................................................................................... *11*

EXTERNAL INTERACTION POLICIES ....................................................................... 11
 *Confidential Information* ............................................................................................. *11*
 *Taglines* ........................................................................................................................ *12*
 *Contact with the general public* ................................................................................. *12*
 *Contact with journalists* ............................................................................................. *12*

COMPUTERS AND TECHNOLOGY ............................................................................. 13
 *Definitions* ................................................................................................................... *13*
 *Misuse of Software.* ..................................................................................................... *13*

*Responsibility for Login IDs and Passwords.* ...............................................................13
*Passwords Do Not Imply Privacy.* ...............................................................13
*Accessing Other Computers and Networks.* ...............................................................14
*Virus Detection.* ...............................................................14
*Accessing the Internet.* ...............................................................14
*Blocking of Inappropriate Content.* ...............................................................14
*Games and Entertainment Software.* ...............................................................14
*Use of Encryption Software.* ...............................................................15
*Export Restrictions.* ...............................................................15
*Electronic Mail, Voice Mail, and Internet Policy* ...............................................................15
*E-mail and Voice Mail Communications are MEF Property* ...............................................................15
*Use of the Internet, E-mail and/or Voice Mail Systems* ...............................................................15
*Altering Attribution Information* ...............................................................16
*Monitoring Internet, E-mail and Voice Mail Systems* ...............................................................16
*Protection of Confidential/Proprietary Information.* ...............................................................16

NON-DISCRIMINATION AND ANTI-HARASSMENT ......................................... 17
*Equal Employment Opportunity.* ...............................................................17
*Anti-Harassment* ...............................................................17
*Reporting and Investigation.* ...............................................................18
*Resolving the Matter.* ...............................................................18
*Non-Retaliation.* ...............................................................18

PERFORMANCE AND DISCIPLINE ......................................... 18
*Performance Assessments* ...............................................................18
*Violations.* ...............................................................19
*Disciplinary Action:* ...............................................................19
*Resignation.* ...............................................................19
*Return of MEF Property upon Termination of Employment* ...............................................................19

ACKNOWLEDGEMENT OF RECEIPT OF MIDDLE EAST FORUM PERSONNEL MANUAL 20

## MISSION STATEMENT

The Middle East Forum ("MEF" or "Forum") is an independent, nonprofit organization that (1) promotes American interests in the Middle East; (2) protects Western values from Middle Eastern threats; (3) protects the right in the West to freely discuss Middle East policy, Islam, and related issues; and (4) encourages excellence in the study of the Middle East, Islam, and related issues. The MEF's work includes research, publications, educational programs, media outreach, activism, and networking. As a catalyst for the exchange of ideas, it seeks to influence the intellectual climate in which American foreign policy is made.

## RECEIPT OF THE MANUAL

This policy handbook summarizes the MEF's personnel practices and the benefits to which you may be entitled as an employee. Your signature on the acknowledgment page of this handbook indicates your agreement to abide by these policies as someone who MEF compensates as an employee. Your signature on the acknowledgment page of this handbook also indicates your understanding that no part of this handbook shall be construed as being an employment contract, either implied or expressed, between you and the MEF.
The MEF reserves the right to modify the statements, policies and benefits included in the handbook at any time, with or without notice.

## AT WILL EMPLOYMENT

Unless an employee has a written contract signed by the MEF president specifying an employment term, employment is "at will." This means that both the employee and the MEF have the right to terminate the employment relationship at any time, with or without notice, for any or no reason, with or without cause.

## SALARIES AND WAGES

### Work Week and Reporting

The work week is Monday through Friday, 9:00 a.m. to 5:00 p.m. Full-time employees may be asked to work additional hours above the regular work schedule for events, research, or other business operations.

Part-time employees must record their work hours on weekly time sheets.

## Breaks

Administrative employees are entitled to a paid 15-minute break every four hours, or may take a paid 30 minute lunch break. Apart from these breaks, employees' time at the office should be spent on work-related tasks.

## Personal Business

Full-time employees may request of the director or their supervisor time off during working hours to conduct personal business that cannot ordinarily be conducted outside working hours. If permitted to take such time off, employees must make up the missed time in accordance with the direction of his or her direct supervisor or the director. Such requests must be made as far in advance as possible.

## Pay Schedule

Paychecks are normally delivered on the 15th and the last day of every month, although these dates are subject to change.

## Deductions

Deductions from each employee's paycheck include the mandatory and voluntary deductions described below:
Mandatory deductions include federal, state, and local withholding taxes, the employee's portion of Social Security contributions, as well as any garnishments or any other deductions required by law.

Voluntary deductions are made only with the authorization of the employee. Voluntary deductions include sums designated for participation in pension plans.

An itemized statement of all deductions from the employee's wages accompanies each paycheck. Be certain to review your paycheck stub carefully each payday.

## Other Employment

Any employee desiring to engage in any outside employment or consulting may do so provided it does not conflict with Forum goals or get in the way of fulfilling Forum duties.

**WORK PRODUCT**

The employee retains all intellectual property rights to any work product that the employee produces during the term of employment but wholly independent of and outside of employment by MEF.

MEF reserves all intellectual and proprietary rights to any work product, in part or whole, that is developed by an employee in the course of performance by the employee at MEF. Work that falls under this policy includes work that is initiated on a MEF directive or work for which MEF has raised funds to finance some or all of the work product. Work products that fall under this policy include but are not limited to books, articles, educational materials or media projects. MEF retains the right to claim an employee's work product as its sole property during any phase of production. It is the responsibility of the employee at the beginning phase of production to seek MEF's opinion as to whether a work product falls under this category.

## TIME AWAY FROM WORK

Holidays

The Forum closes on New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and 3 religious holidays of the employees choosing. If one of these holidays falls on a Saturday, the Forum will be closed on the preceding Friday; if it falls on a Sunday, then the following Monday.

For full-time administrative employees' holidays are paid working days.

Vacation-Professional Staff.

Professional staff members do not have vacation time as such. They are responsible for their work being done well and in a timely fashion. They control their time, when they work and when they do not. Accordingly, the regulations concerning vacation, jury duty, military leave, sick leave, childbirth-related leave, bereavement/death leave, personal business and breaks do not apply to professional staff.

With this freedom comes responsibility: wherever they are and whatever they are doing, professional staff members are expected to stay in regular contact with the office and to fulfill their duties.

Vacation-Administrative Staff.

The vacation year coincides with the calendar year. Vacation plans should be submitted to the employee's supervisor for approval as far in advance as possible. Every effort will be made to schedule vacations at the times most desired by the employees, but the MEF reserves the right to schedule the vacations of employees at such times as will not interfere with the orderly and efficient operation of the MEF and its rendition of services. Once the planned vacation is approved, the employee should notify the director and other colleagues who need to know.

Unless otherwise arranged, a full-time employee earns 12 vacation days per year for the first three years. After continuous employment for three years, a full-time employee earns 17 vacation days per year. After continuous employment for eight years, a full-time employee earns 22 vacation days per year.

Vacation credits begin immediately when an employee joins the MEF. During the first calendar year of employment, the employee earns vacation time at the rate of one day per month worked. If the employee starts work prior to the 15th of the month, the employee is entitled to a day of vacation for that month. If the employee starts work on the 15th of the month or later the employee will not be entitled to vacation time for that month. With the supervisor's permission, the employee may take vacation time not yet earned during the calendar year. If the employee has unused vacation time at the time of leaving the Forum, the employee is entitled to receive payment for the unused vacation time.

Part-time employees, interns, consultants, and temporary staff ordinarily do not accrue vacation credits.

Vacation salary equals the salary rate in effect when the vacation period begins. Up to five vacation days per year may be carried forward into the next year.

Sick Leave

Eligibility for sick leave begins when an employee joins the MEF. During the first calendar year of employment, sick leave is earned one day per month up to a total of 10 sick days for that year. If the employee starts work prior to the 15th of the month, the employee is entitled to a sick day for that month. If the employee starts work on the 15th of the month or later the employee will not be entitled to a sick day for that month. After that, sick leave accrues at the rate of 10 days per year of service and may be used only for ill health (and not as vacation by another name). Sick leave also extends to caring for immediate family members. For the purposes of this policy, immediate family members are parents, siblings, children or parents, siblings and children of an employee's spouse.

Unused sick leave is not carried forward into the next year. There is no pay for unused sick leave credits.

Employees missing work due to illness must contact their supervisor as soon as possible *before* they are scheduled to begin work and must provide a contact number. Employees who are absent

for more than one day must contact their supervisor each day that they are absent. The MEF may require that employees provide a doctor's note to substantiate illness.

If an employee is sick and out of the office for a period of time that exceeds the designated sick days, the employee may discuss with the director the possibility of making up this time in the evenings or on weekends or of using earned vacation time as sick days.

Bereavement/Death in the Family Policy

Following a death in his or her immediate family, each employee will be entitled to be absent without loss of pay for a period extending up to but not more than 24 consecutive working hours (up to three days), depending on the person's normal work day.

For other close relatives, the employee shall be entitled to be absent the day of the funeral without loss of pay.

Childbirth-related Leave

Employees shall give MEF adequate notice of an expected childbirth-related absence. Employees must first exhaust all accrued vacation and paid sick leave. MEF will then provide unpaid leave for the balance of a contiguous period of up to 12 weeks. Employees will not accrue benefits during this unpaid leave and will not be eligible for it unless they have been employed at MEF for the preceding 12 months.

Jury Duty

Full-time employees receive full pay for performing jury duty up to a maximum of 10 days. Please provide to the director a statement from the court clerk giving the number of days on duty and the rate paid each day. Any compensation received by the court for service as a juror will be deducted from the compensation remitted by the MEF during the same period. An employee required to be available for jury duty but not required to be in court is expected to report to work.

Professional Leave of Absence

Leaves of absence for work (research, writing, teaching) at other institutions may be requested by employees in good standing. Approval of such leaves is at the president's sole discretion in light of various factors including, without limitation, staffing needs and the reason for the leave. Employees will not accrue benefits during professional leaves of absence.

Personal Leave of Absence.

The MEF occasionally grants its employees leaves of absence for personal reasons. Approval of such leaves is at the president's sole discretion in light of various factors including without limitation staffing needs and the reason for the leave. Employees will not accrue benefits during personal leaves of absence

Military Leave

The MEF provides military leaves to its employees to the full extent required under applicable law. If an employee is a member of the National Guard or Reserves, and is directed to participate in periodic field training, he or she will receive unpaid military leave for a maximum period of 15 calendar days annually. Such leaves shall not affect normal vacation or benefits in any way.

Employees who are to serve in active duty will be granted unpaid leave of absence and will be reinstated upon return to the extent required by applicable statutes.

## EMPLOYEE BENEFITS

Health Insurance

The MEF Offers health insurance for employees and their families. The MEF currently pays 1/3 of the monthly premium. This contribution level is subject to change upon the renegotiation of the yearly healthcare contract.

Employer Paid Insurances

The MEF currently provides all employees upon hiring coverage for three policies through the Hartford: Long Term Disability, Short Term Disability, Hospitalization and Life. Employees will have access to the policies through the Staff Resources folder in our team drive.

Worker's Compensation

Employees who become injured due to an on-the-job accident or illness may be entitled to benefits under Workers' Compensation Insurance.

Workers' Compensation requests must be made by using the appropriate Workers' Compensation Leave form as soon as the employee becomes aware of his or her disabling condition. The form must contain a statement from a physician describing the nature of the condition and projected leave. The MEF may also require that employees provide further medical evidence satisfactory to the MEF.

Failure to promptly report workplace injuries may jeopardize receipt of worker's compensation benefits.

When an employee wishes to return from Workers' Compensation leave, that employee must report his or her availability for work to his or her supervisor no less than one (1) week prior to the date on which he or she wish to return. The MEF may require that returning employees provide a physician's statement specifying that he or she is fit to return to work.

If an employee fails to report to work at the end of the approved Workers' Compensation leave or is working for another entity during the Workers' Compensation leave, employment with the MEF will be considered voluntarily terminated.

## Pension

The Forum pension plan currently is underwritten by the Teachers Insurance and Annuity Association-College Retirement Equities Fund (TIAA-CREF). Each TIAA retirement annuity contract and CREF certificate issued in accordance with this plan is for the sole purpose of providing a retirement and/or death benefit and is the property of the individual participant.

All employees are eligible to begin participation in the pension plan when their employment begins at the MEF. This plan is funded 100% by the employee at this time.

## OFFICE POLICIES

### Telephones

Personal calls, incoming or outgoing, should be kept to a reasonable number and reasonable length of time. Long distance calls of a personal nature should not be made on the MEF telephone network. When possible, international calls involving MEF business should be made using Skype, Google, or other discounted carriers.

### Postage

To keep down postage costs, please inform the Receptionist whenever outgoing mail need not go at first-class or air-mail rates.

The postage meter is for MEF mail only. Should employees not have stamps and wish to use the meter, they may do so if they indicate to the Receptionist that the mail is personal and then reimburse the MEF for the cost of postage.

### Dress Code

Employees are expected to dress in business clothes and to maintain a neat, well-groomed, and professional appearance in connection with their work for MEF.

### Purchases

Requests for purchases pertaining to office supplies, books and other materials should be submitted for approval to the individual's Supervisor or the Director.

### Reimbursement for Travel

The following concerns travel in fulfillment of work on behalf of the Forum, but not travel to the MEF office. These guidelines apply to both employees and independent contractors. MEF reimburses staff for travel expenses incurred on its behalf. A written description of the purpose and an estimate of costs provided to the director, whose permission must be given in advance. (The director applies to the president.) In keeping with MEF's frugal approach to spending, funds should be used in an economical and careful fashion.

After a trip, the traveler should within a week submit (1) a written, substantive report (i.e., meetings attended, individuals interviewed) to the president and (2) an expense account, with receipts, to the director.

No Solicitation Policy

Solicitation for any reason during working time is prohibited. Non-employees may not solicit on the MEF's property at any time for any reason. Employees are prohibited from distributing literature or other materials during working time and in working areas. Work time does not include those periods during the workday when employees legitimately are not engaged in performing their work tasks, such as break times, meal times or other specified breaks from work duties. May someone solicit from his desk during a break? Does not sound like a real danger but once we are covering this, we need to be

Personal Use of MEF Property

The MEF's equipment and services are the MEF's assets and are to be used for MEF business-related purposes and for reasonable personal purposes. Employees may not use the MEF's equipment or services, including but not limited to photocopy machines, fax machines, telephones and mail service, for illegal purposes.

Further, database information, addresses, and e-mail lists are MEF property and only to be used for MEF purposes and not for personal purposes.

**EXTERNAL INTERACTION POLICIES**

Confidential Information

All information and technology of MEF, the unauthorized disclosure of which would be detrimental to the interests of MEF ("MEF Confidential Information"), is solely the property of MEF. Employees must maintain all MEF Confidential Information in strict confidence and protect against its disclosure or dissemination. MEF Confidential Information is considered to include confidential information obtained from third parties. The foregoing obligations of confidentiality and non-disclosure continue to apply after termination of employment with MEF.

Employees must not remove any MEF Confidential Information from MEF's premises or make copies of such materials except for use in MEF business.

Employees must return to MEF all MEF Confidential Information, and copies of the foregoing, at any time upon the request of MEF and, in any event and without such request, prior to or upon the termination of employment by MEF. Employees agree not to retain any copies of any MEF Confidential Information, in any form, after termination of employment for any reason.

If the employee is unsure as to whether any particular information is MEF Confidential Information, the employee shall treat it as such unless and until the employee has been advised otherwise by an authorized representative of MEF.

Taglines

Taglines (the short, identifying biographies in newspapers, magazines, television shows, etc.) are of great importance to the MEF: getting our name out is a critical way of showing sponsors what we've achieved; also, it gets our name into circulation, thereby increasing our opportunities and our support. It is critical that staff mention the Middle East Forum or subsidiary activities (*Middle East Quarterly*, Campus Watch, Islamist Watch, Legal Project, Washington Project) in their i.d.

Employees must show materials that mention the Middle East Forum to the president or someone he designates. The MEF assumes its employees are alert to the activities and interests of the organization, and that they consider these in their public utterances.

Contact with the general public

Everyone at the Forum has contact with the public. It is important that each member of the staff recall that he is not just an individual but also a representative for the organization when dealing with the public. Please treat everyone as if he were a potential major donor, for one never knows. In case you have questions about an individual, please check with the director.

Contact with journalists

From time to time, the Middle East Forum is in the news. (For an example, see http://www.lobelog.com/dennis-ross-sits-on-board-for-daniel-pipess-journal/.) If a journalist approaches you for information on the inner workings of the Forum or for a Forum position on an issue, please check with the President or Director before giving a response. That means:
  ➢ Forward an e-mail question to the President or Director; or
  ➢ If a reporter catches you on the phone or in person, say you are not authorized to discuss the topic. If the reporter presses further, take down his name and contact information, explaining you will pass it along to another staff member – but do not name the staff member.

## COMPUTERS AND TECHNOLOGY

### Definitions

Terms referred to below require definition:

The term Computer Resources refers to MEF's entire computer network. Specifically, Computer Resources include, but are not limited to, host computers, file servers, application servers, communication servers, mail servers, fax servers, Web servers, workstations, stand-alone computers, laptops, software, data files, and all internal and external computer and communications networks (for example, Internet, commercial online services, value-added networks, and e-mail systems) that may be accessed directly or indirectly from our computer network  The term Users refers to all employees, independent contractors, consultants, temporary workers, and other persons or entities that use MEF's Computer Resources Waste of Computer Resources.

Users may not deliberately perform acts that waste Computer Resources or monopolize resources to the exclusion of others. These acts include, but are not limited to, sending mass mailings unrelated to MEF business, chain letters, spending time on the Internet unrelated to MEF business, playing games, engaging in online chat groups unrelated to MEF business, or otherwise wasting resources.

### Misuse of Software.

Without prior written authorization from the president, Users may not do any of the following: (1) copy software for use on their home computers; (2) provide copies of software to any independent contractors or to any third person; (3) install software on any MEF workstations or servers; (4) download any software from the Internet or other online service to any of the MEF workstations or servers; (5) modify, revise, transform, recast, or adapt any software; or (6) reverse-engineer, disassemble, or decompile any software. Users who become aware of any misuse of software or violation of copyright law should immediately report the incident to the president.

### Responsibility for Login IDs and Passwords.

Users are responsible for safeguarding their login IDs and passwords for access to the computer system. Users are responsible for all transactions made using their login IDs and passwords. No User may access the computer system with another User's login ID or password without permission from the director or president.

### Passwords Do Not Imply Privacy.

Use of passwords to gain access to the computer system or to encode particular files or messages does not imply that Users have an expectation of privacy in the material they create or receive on the computer system. MEF has global passwords that permit access to all material stored on its

computer system regardless of whether that material has been encoded with a particular User's password.

Accessing Other Computers and Networks.
A User's ability to connect to other computer systems through the network or by a modem does not imply a right to connect to those systems or to make use of those systems unless specifically authorized by the operators of those systems.

Virus Detection.

Viruses can cause substantial damage to computer systems. Each User is responsible for taking precautions not to introduce viruses into the MEF network. To that end, all material received on external hard drives (including flash drives) and all material downloaded from the Internet or from computers or networks that do not belong to MEF MUST be scanned for viruses and other destructive program before being placed onto the computer system. Users should understand that their home computers and laptops might contain viruses. All disks transferred from these computers to the MEF network MUST be scanned for viruses. Please check with the director if you want to add material to the MEF network.

Accessing the Internet.

To ensure security and avoid the spread of viruses, Users accessing the Internet through a computer attached to the MEF network must do so through an approved Internet firewall. Accessing the Internet directly, by modem, is strictly prohibited unless the computer being used is not connected to the MEF network or specific prior written authorization has been made by the director or president.

Blocking of Inappropriate Content.

MEF may use software to identify inappropriate or sexually explicit Internet sites. Such sites may be blocked from access by MEF networks. In the event an employee nonetheless encounters inappropriate or sexually explicit material while browsing on the Internet, he or she must immediately disconnect from the site, regardless of whether the site was subject to MEF blocking software.

Games and Entertainment Software.

Employees may not use MEF's Internet connection to download games or other entertainment software, or to play games over the Internet.

## Use of Encryption Software.

Employees may not install or use encryption software on any of the MEF's computers without first obtaining written permission from the director or president.

## Export Restrictions.

The federal government has imposed restrictions on export of programs or files containing encryption technology (such as e-mail programs that permit encryption of messages and electronic commerce software that encodes transactions). Software containing encryption technology is not to be placed on the Internet or transmitted in any way outside the United States without prior written authorization from the director or president.

## Electronic Mail, Voice Mail, and Internet Policy

This policy is intended to provide guidelines regarding the use and administration of electronic mail ("e-mail"), voice mail, and Internet access at the Middle East Forum.

## E-mail and Voice Mail Communications are MEF Property

E-mail and voice mail systems are available to assist employees in performing their work. Like the other software, hardware, and tools made available to and used by employees, the e-mail and voice mail systems and the information, work, and data contained therein are the property of MEF.

Electronic and voice mail communications are not private. They are business records that may be subject to subpoena or other legal investigation and may be introduced as evidence in a legal proceeding. MEF requires all employees to use passwords to gain access to e-mail and voice mail. The use of a password is for the protection of MEF, not the employee. Messages are not considered confidential even though a private password is used.

## Use of the Internet, E-mail and/or Voice Mail Systems

MEF's e-mail and voice mail systems and access to the Internet are provided to employees for MEF business. Employees may use these systems occasionally for personal business, but excessive personal use is strictly prohibited. Visiting gaming or adult sites for personal use or any other purpose not in furtherance of MEF's business is prohibited. Moreover, these systems may not be used for transmitting junk mail or chain letters.

The Internet, e-mail, and voice mail systems shall not be used to send or retrieve inappropriate materials, including suggestive or discriminatory references, materials disparaging individuals on the basis of their race, color, creed, religion, age, gender, national origin, citizenship, veteran status, marital status, mental or physical handicap or disability, sexual orientation, gender identity or other protected characteristics, or which are not consistent with or violate any other policy of MEF, including MEF policies regarding Equal Employment Opportunity and Sexual

and Other Unlawful Harassment. Any use of these systems that is threatening, abusive, obscene, harassing, defamatory, or otherwise unprofessional and/or illegal is strictly prohibited.

The e-mail system may not be used to create, retrieve, and/or send any unauthorized copies of software or to otherwise violate applicable copyright laws. Employees are responsible for ensuring that their use of e-mail, voice mail, and the Internet complies with federal, state, local, and international law. Finally, downloading programs, data, or other material except as approved by the director or the president is prohibited because of the prevalence of viruses, potential incompatibility with MEF's hardware and software systems, and copyright issues.

Employees who misuse MEF's Internet, e-mail and/or voice mail systems or knowingly allow others to do so are subject to disciplinary action, up to and including termination of employment. Employees should report violations of this policy to the president.

Altering Attribution Information

Employee must not alter the "From:" line or other attribution-of-origin information in e-mails, messages or postings in an attempt to deceive. Anonymous or pseudonymous electronic communications are forbidden. Employees must identify themselves honestly and accurately when participating in chat groups, making postings to newsgroups, sending e-mail, or otherwise communicating online.

Monitoring Internet, E-mail and Voice Mail Systems

MEF reserves the right to access, monitor, and disclose the contents of e-mail and/or voice mail communications sent or received over its systems. MEF also reserves the right to monitor employees' use of its systems to access the Internet and to access, monitor, and disclose the contents of any material retrieved from or disseminated over the Internet through use of MEF's systems.

Protection of Confidential/Proprietary Information

Employees must exercise special care to protect the proprietary and/or confidential information of MEF. Unauthorized transmission and/or disclosure of any confidential or proprietary information is strictly prohibited.

Use of MEF equipment for e-mail and/or voice mail communications constitutes an employee's agreement to abide by the terms of this policy and consent to MEF's access, monitoring, and disclosure described herein. As with all of its policies, MEF reserves the right to change or revoke this policy at any time, in its discretion, with or without notice.

## NON-DISCRIMINATION AND ANTI-HARASSMENT

Equal Employment Opportunity

The MEF adheres to a policy of complete nondiscrimination with regard to employees and applicants for employment. Our policy is to provide equal employment opportunity for all our employees and applicants in compliance with applicable local, state and federal laws. Employment decisions will be made by the MEF without regard to non-work-related factors, such as race, color, religion, sex, national origin, age, disability, citizenship, marital status, sexual orientation, veteran status or other protected status under applicable law.

Anti-Harassment

The MEF is committed to providing a work environment that is free of harassment of any kind. . All forms of harassment are a violation of state and federal law. Some common examples of conduct that are considered to be harassment include, but are not limited, to the following:

> ➢ Threatening to, or actually making, job decisions, such as discharge, demotion or reassignment, if sexual favors are not granted;

> ➢ Demanding sexual favors in exchange for favorable or preferential treatment;

> ➢ Unwelcome and/or repeated flirtations; propositions, advances, or physical contact

> ➢ Whistling, leering; or improper gestures in a manner directed toward the appearance of another

> ➢ ; Gender-related remarks which are offensive, insulting, derogatory or degrading;

> ➢ Sexual jokes or use of sexually explicit or offensive language, either in person, in writing or through e-mail;

> ➢ Gender or sex-based tricks or horseplayor pranks;

> ➢ The display in the workplace of sexually suggestive objects or pictures, including material from the Internet.

> ➢ Using epithets or slurs;

> ➢ Mocking, ridiculing or mimicking another's culture, accent, appearance or customs;

> ➢ Threatening, intimidating or engaging in hostile or offensive acts that focus on an individual's race, color, gender, age, religion, national origin, ancestry, sexual orientation, disability, veteran status or any other characteristic protected by law;

- ➢ Offensive jokes or pranks;
- ➢ Posting offensive material on walls, bulletin boards, or elsewhere on MEF's premises;
- ➢ Circulating offensive material in the workplace, by e-mail or otherwise.
- ➢ Any inference by a supervisor that implies that an individual's employment will be affected if they are not accepting of advances or mistreatment Any conduct that unreasonably interferes with an individual's work performance or creates an intimidating, hostile or offensive work environment.

Reporting and Investigation.

If you believe that you are the victim of impermissible harassment or become aware of another employee being subjected to impermissible harassment, you must promptly report the facts of the incident to your supervisor or to the president or director. The MEF will promptly, appropriately and with as much confidentiality as possible investigate any reports of offensive conduct.

Resolving the Matter.

After the investigation, appropriate action will be taken. Any employee who is found to have engaged in harassment of another employee will be subject to disciplinary action up to and including discharge. If deemed appropriate, an accused harasser may be suspended without pay pending investigation. In all cases, we will advise the complaining employee and the accused of the outcome of the investigation.

Non-Retaliation.

You will not be retaliated against for reporting incidents that you believe to be violations of this policy. You also will not be retaliated against for participating in the investigation of a harassment complaint. Retaliation is a serious violation of this policy, and you should report any incidents of retaliation immediately. We will investigate and resolve reports of retaliation in the same manner as reports of harassment.

## PERFORMANCE AND DISCIPLINE

Performance Assessments

At the end of each fiscal year employee's performance is reviewed by an individual's supervisor or the Director. Bonuses and increases are distributed at this time if funds allow.

Violations.

Failure to comply with this policies and procedures in the manual may result in appropriate disciplinary action, up to and including termination of employment.

Disciplinary Action:

If at any time, there is a need to investigate an employee's behavior and it is discovered that the individual has behaved inappropriately the MEF may deem it necessary to take one or all of the following steps:
Verbal warning
Written warning
Suspension
Termination

Resignation

As a courtesy, employees who resign their positions at MEF are requested to give at least two weeks' notice in writing of their intent to resign.

Return of MEF Property upon Termination of Employment

At the time of termination of employment, an employee must return all property and materials belonging to the MEF that were utilized in the employee's work, including all copies of institutional products in electronic, written and other forms. The employee must confirm this return of property and materials in writing.

**ACKNOWLEDGEMENT OF RECEIPT OF MIDDLE EAST FORUM PERSONNEL MANUAL**

**Effective May 2019**

I am a Middle East Forum employee and hereby acknowledge that I have received, read, and understand the MEF's Personnel Manual.

_____

Signature

_____

Printed Name

_____

Date

# MIDDLE EAST FORUM

## MEMORANDUM

TO:      Lisa Barbounis, Matthew Bennett, Caitríona Brady, Marc Fink, Marnie Meyer, Tricia McNulty, Thelma Prosser; Gregg Roman, Stacey Roman, Delaney Yonchek

FROM:   Daniel Pipes

DATE:    November 3, 2018

SUBJECT:   Confidentiality & Non-Disclosure Agreement

I am again addressing this memo to everyone who works in the MEF office.

In anticipation of the staff meeting on Monday, Nov. 5, I am sending you a new NDA to look over and requesting that you sign it by the time of the staff meeting. (There will be printouts there.)

It's mostly the same content as the prior NDA, with two main new elements: one concerns MEF donors and the other MEF readers.

Not everyone has signed prior NDAs; given the subject matter of the Monday meeting, it's important for all to accept the same terms so we are mutually assured of confidentiality.

If you have questions about the NDA, please send them to me.

# MIDDLE EAST FORUM

## MEMORANDUM

TO:        Lisa Barbounis, Matthew Bennett, Caitríona Brady, Tricia McNulty, Marnie Meyer, Thelma Prosser, Stacey Roman, Delaney Yonchek

CC:        Daniel Pipes

FROM:    Marc Fink

DATE:    November 15, 2018

SUBJECT:  Warning: Do not violate the Non-Disclosure Agreement

This memo is going to everyone who attended the Nov. 5 emergency staff meeting.

I know that at least one of you has violated your Non-Disclosure Agreement (NDA) by discussing the topic of that meeting.

Please remember that Confidential Information as defined in your NDA includes alleged acts of misconduct by MEF employees and everything else that was said at the emergency staff meeting. This Confidential Information may not be disclosed to any third party unless (i) MEF and the third party executed a current NDA and (ii) MEF provides prior written approval.

This memorandum serves as a friendly reminder. A second violation of your NDA is grounds for immediate termination of employment at the Forum.

Beyond the legalese, speaking against Forum staff members hurts the credibility of the organization and harms our hard work. Please be discreet.

# Exhibit 2



Attison L. Barnes III
202.719.7385
abarnes@wileyrein.com

**VIA E-MAIL**

November 25, 2019

Mr. Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

Re:    The Middle East Forum ("MEF") Cease and Desist Letters

Dear Mr. Carson:

On Tuesday, November 12, 2019, my colleague forwarded to you three affidavits in an attempt to ensure that MEF's data had been protected and to avoid a dispute. On Friday, November 15, 2019, you requested that I provided Word versions of proposed affidavits for your review and discussion with your clients, and I was led to believe that you and your clients wished to resolve this matter amicably. Then, you revealed that your clients had "erased information" which justifiably caused concern and a need to determine why information had not been preserved by your clients. I asked that your clients not destroy any other evidence and that we should work together to determine the circumstances of the destruction. In your November 18 e-mail, however, you abruptly reversed course, suggesting that your clients may not sign affidavits to address the MEF information which they possessed. I had assumed that your clients would prefer to reach an amicable solution with respect to MEF's data. Needless to say, MEF is troubled by these developments.

MEF is similarly troubled by the representation in your November 18, 2019 email that your clients "destroyed almost everything in accordance with their responsibilities." After you made a representation in your November 15 e-mail to me that your clients had "erased information . . . in accordance with the employee handbook," I asked in my November 17 response that you identify a provision in the handbook on which you rely. You identified no such provision. Moreover, your representation that your clients destroyed "almost everything" necessarily means that they still possess some information. On these facts, I would expect that you and your clients would desire to cooperate as requested.

Instead, your knee-jerk reaction was to claim retaliation (perhaps in an attempt to gain some tactical or pecuniary advantage without basis), but again, MEF is merely seeking to protect company information. By seeking an amicable solution, I trust you recognize that our goal has been to *avoid* legal claims, not to harass or retaliate against anyone. I do not believe your clients dispute that they possessed confidential MEF information, including proposals, donor lists, and pictures of donor checks. It should come as no surprise it would pose a risk to the organization if such information were to be disclosed (by your clients or anyone else) to members of the public, and for your clients, it would represent a violation of their continuing confidentiality obligations

to MEF. In good faith, MEF therefore seeks the proper assurances from your clients without the need to engage in legal action.

I write to make a final, good faith attempt to ensure that the organization's confidential information is accounted for and ultimately deleted from your clients' devices, personal e-mails accounts, or wherever else this information may reside. By the close of business on Wednesday, November 27, 2019, please have your clients sign a Stipulated Temporary Restraining Order ("Stipulated TRO") setting forth the necessary assurances regarding data belonging to MEF and/or its donors. Attached is the Stipulated TRO for Ms. Barbounis, and assuming we stipulate, we can execute Stipulated TROs for Ms. Yonchek and Ms. Brady on the same terms.

Please note that if you and your clients do not agree to sign a Stipulated TRO by the date provided, you will leave MEF no option but to enforce its rights to protect its confidential information. All rights are reserved.

Very truly yours,

Attison L. Barnes, III

cc:     The Middle East Forum

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM
1650 Market Street, Suite 3600
Philadelphia, PA 19103,

Civil Action No. _____

                     Plaintiff,

    v.

LISA REYNOLDS-BARBOUNIS
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,

                    Defendant.

## STIPULATED TEMPORARY RESTRAINING ORDER

AND NOW, on this _____ day of November, 2019, upon the motion for entry of this Stipulated Temporary Restraining Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.     MEF and Barbounis have stipulated and agreed to entry of this Temporary Restraining Order, and without a finding by the Court of law or fact other than as stated below.

2.     The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.     Venue lies properly with this Court.

4.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.    Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.    Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.    Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.      No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

10.     The entry of this Order is in the public interest.

## **ORDER**

IT IS THEREFORE ORDERED that:

A.     Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.     Barbounis immediately return to MEF all documents and materials (hard copy and electronic) belonging to MEF and/or its donors;

C.     Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

D.    Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

E.    Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.


SO ORDERED this ____ day of _____, 2019.


By:    _____
United States District Court Judge



AGREED:


_____
*Counsel for Plaintiff The Middle East Forum*



_____
*Counsel for Defendant Lisa Reynolds-Barbounis*

# Exhibit 3

# LAW OFFICES OF
# SIDNEY L. GOLD & ASSOCIATES
### A PROFESSIONAL CORPORATION

---

**1835 MARKET STREET, SUITE 515**
**PHILADELPHIA, PA 19103**
**(215) 569-1999   FAX (215) 569-3870**

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

*   ALSO ADMITTED IN NEW JERSEY
**  ALSO ADMITTED IN NEW YORK
++  ALSO ADMITTED IN DISTRICT OF COLUMBIA

December 20, 2019

Mr. Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

> **Re:   Proposed Vendor for Expedited Discovery in**
> _**The Middle East Forum v. Reynolds-Barbounis**_**, 2:19-cv-05697-JS**

Dear Mr. Carson:

As a follow-up to our telephone hearing with the Court this morning, I write to propose Cornerstone Discovery (https://www.cornerstonediscovery.com) as the vendor for imaging Defendant's devices.  Cornerstone is well-known in the Philadelphia area and is a widely-used vendor for these services.  We would like to begin the process of engaging with a discovery vendor as soon as possible, so if you have any objection to the use of Cornerstone and propose a different vendor sufficiently experienced in this area, please let me know by Tuesday, December 24, 2019.

Thank you.

Very truly yours,

SIDNEY L. GOLD

cc:   The Middle East Forum

# Exhibit 4

## LAW OFFICES OF
# SIDNEY L. GOLD & ASSOCIATES
### A PROFESSIONAL CORPORATION

**1835 MARKET STREET, SUITE 515**
**PHILADELPHIA, PA 19103**
**(215) 569-1999   FAX (215) 569-3870**

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

  *   ALSO ADMITTED IN NEW JERSEY
 **  ALSO ADMITTED IN NEW YORK
++ ALSO ADMITTED IN DISTRICT OF COLUMBIA

December 30, 2019

Via E-mail Only

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

     **RE:**  **The Middle East Forum v. Reynolds-Barbounis**
           **Civil Action No.: 2:19-cv-05697-JS**

Dear Seth:

      To the extent that your client has informed you that she only used a single cell phone during her MEF employment, please confirm that she will sign a declaration under oath to that effect. My assumption is that she will refuse to sign such a declaration because she knows that to be untrue. In fact, not only has she has posted numerous pictures on social media with the multiple devices we mentioned in our letter, but she was seen using the devices by multiple people and she logged into MEF's firewall using other devices. Again, we have serious concerns that she has not been forthcoming with you and that she will continue to hide information. This further demonstrates the need to take complete images of all devices, not just the one she offers. If she will now claim upon receipt of this e-mail that she destroyed or disposed of the other devices, when were they destroyed or disposed of? Again, if she wants to take the position that she only had one device, please confirm that she will sign a declaration that says: (1) she owned one cellular phone during her employment at MEF [make/model], and that is the cell phone that will be imaged in this lawsuit; (2) she did not own any other devices during her MEF

employment, including but not limited to computers, desktops, laptops, cell phones, PDA's, Apple watches, Microsoft Surfaces, and external storage devices; and (3) she used an MEF-owned laptop that she returned to the company after wiping its contents and she did not transfer the data from that laptop to any other device or medium.

While we get to the bottom of what happened to the other devices, and reserving all rights to obtain an image of any such devices and recover any deleted data, we would like to move forward as soon as possible with the imaging of the cell phone she does claim to have. Responses to MEF's document request no. 4 requesting an inspection of the phone (as well as responses to the other requests) is overdue, and further delay will continue to prejudice MEF and its ability to receive and review the imaged data at least 10 days before the upcoming injunction hearing as ordered by the Court.

We have heard no objection to using Philadelphia office of Cornerstone Discovery (a well-known and respected discovery vendor in the city), so the phone should be delivered to Louis Cinquanto at Cornerstone. Mr. Cinquanto is available tomorrow morning.

You did not respond to the rest of my letter. In fact, your response studiously avoids any mention of, among other things, her cloud-based data and recovery of the deleted data. We want and need to move forward with this key aspect of the expedited discovery as well. I will not repeat my letter here, but we will need to discuss this tonight or tomorrow morning to avoid further delay.

Finally, it is telling that you state in your e-mail that "Ms. Barbounis is willing to do what [sic] what's necessary to confirm that she has not breached her NDA or Contract." Instead of doing whatever is "necessary" to defeat MEF's claims, I would have expected her to do what is necessary to comply with the Court's direction and to fully respond to the discovery requests. MEF trusted Ms. Barbounis as a manager, and she had very specific obligations to her employer. For her to now take these positions is troubling.

Very truly yours,

*Sidney L. Gold*

SIDNEY L. GOLD

SLG/dd
cc: Attison L. Barnes, III, Esquire

# Exhibit 5

# LAW OFFICES OF
# SIDNEY L. GOLD & ASSOCIATES
### A PROFESSIONAL CORPORATION

**1835 MARKET STREET, SUITE 515**
**PHILADELPHIA, PA 19103**
**(215) 569-1999  FAX (215) 569-3870**

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

\* ALSO ADMITTED IN NEW JERSEY
\*\* ALSO ADMITTED IN NEW YORK
++ ALSO ADMITTED IN DISTRICT OF COLUMBIA

January 2, 2020

**Via Facsimile Only:**
**267-299-5067**

The Honorable Juan R. Sánchez
United States District Court
for the Eastern District of Pennsylvania
601 Market St., Room 14613
Philadelphia, Pennsylvania 19106-1797

> RE:   **The Middle East Forum v. Lisa Reynolds-Barbounis**
> **C.A. No.: 19-5697-JS**

Dear Judge Sánchez:

On behalf of Plaintiff The Middle East Forum ("MEF"), I write to: (1) inform the Court that the Defendant has refused to turn over her devices to a mutually-acceptable vendor as directed by this Court and seeks to place conditions on the imaging and recovery of data; and (2) request a follow-up conference to address this issue and the fact that Defendant has not responded to the 5 interrogatories and 4 document requests as discussed during the Court's telephonic hearing on these issues.

On December 20, 2019, this Court held a telephone hearing on Plaintiff's Motion for Expedited Discovery.  Plaintiff served that Motion on Defendant's counsel on December 5, 2019.  As of today, despite the passage of nearly a month since receipt of the Motion and the expedited discovery requests and despite the passage of 10 days since the Court hearing, Defendant has not provided a single response, produced a single document, nor has she released her devices and data storage to a mutually acceptable vendor.  In fact, we learned from defense counsel on December 30th that defense counsel has not even taken possession of the devices.  Shortly after the telephonic hearing, Plaintiff proposed a vendor to defense counsel, but defense counsel never responded regarding the use of that vendor, nor proposed another mutually-acceptable vendor.  On December 30th defense counsel abruptly declared that he will unilaterally engage a discovery vendor to image one phone (although we know Defendant has multiple devices, and even her counsel admitted on a call on December 30th that she has two

phones), and is imposing conditions on Plaintiff's access to the imaged data. This delay, withholding of her devices, and imposition of unilateral conditions in unacceptable. Especially after receiving correspondence from defense counsel that some information had been erased, we are concerned that evidence and devices have not been preserved but instead remain in Ms. Barbounis' possession and control.

Plaintiff's counsel has offered a protective order on confidentiality, as the Court will recall from the December 20 hearing. Plaintiff's counsel also informed defense counsel that the imaged data can exclude privileged communications with counsel, and that any other non-MEF related data will be treated as attorneys' eyes only. Still, Defendant will not cooperate. Plaintiff's good faith attempts to move this process forward are reflected in the attached correspondence. Plaintiff reluctantly returns to this Court for assistance. Of critical importance, Plaintiff has learned that Defendant has multiple devices (detailed in the attached letter), and despite defense counsel's initial representations that she only has one phone, he now admits there are two phones when confronted with online photographs posted by the Defendant with three phones. Defense counsel initially claimed that only one phone worked and that they all had the same phone number (claiming the information on each phone would be the same). When pressed, he conceded that there are at least two unique telephone numbers, and therefore the data on each phone is unique. And this does not address the other devices shown in Defendant's online photographs, her Gmail account data to which she forwarded MEF data, as well as the data storage and cloud data she continues to withhold.

As set forth above, Plaintiff has attempted to work with defense counsel to obtain the data as well as full and complete responses to the discovery requests. To date, Plaintiff has received nothing.

Respectfully,

*Sidney L. Gold*

SIDNEY L. GOLD

SLG/dd

cc:    Seth Carson, Esquire
       Attison L. Barnes, Esquire, III

# Exhibit 6

**LAW OFFICES OF**

# SIDNEY L. GOLD & ASSOCIATES

### A PROFESSIONAL CORPORATION

---

**1835 MARKET STREET, SUITE 515**
**PHILADELPHIA, PA 19103**
**(215) 569-1999   FAX (215) 569-3870**

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

* ALSO ADMITTED IN NEW JERSEY
** ALSO ADMITTED IN NEW YORK
++ ALSO ADMITTED IN DISTRICT OF COLUMBIA

February 25, 2020

**BY E-MAIL**

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103

      **RE:**    ***The Middle East Forum v. Lisa Reynolds-Barbounis*, C.A. No.: 19-5697-JS
               (E.D. Pa.)**

Dear Mr. Carson,

      I write in response to your email of February 24, 2020.  MEF has concerns regarding your representation that Ms. Barbounis' devices will be imaged today in accordance with the Court's February 19, 2020 Order.

      First, you did not identify the specific devices that will be imaged, so please send a list separately describing each device by make and model, including each storage device, including but not limited to, all USB devices, cloud-based storage accounts (including, but not limited to, iCloud, Dropbox, WeTransfer and Google Drive), email accounts (including, but not limited to, Lisa.e.reynolds@gmail.com, Lisa.barbounis@gmail.com, lisabarbounis@gmail.com, lisarey@sas.upenn.edu, Lisa.reynolds@mail.house.gov, Press@tr.news, barbounis@meforum.org  and all messaging and social media accounts (including, but not limited to, Signal, WhatsApp, Telegram, and Facebook).  Second, you did not identify the discovery vendor to which you are submitting the devices for imaging so that we can determine whether it is a reputable company.  As you know, we proposed and agreed to the well-respected local discovery vendor Cornerstone Discovery as provided in our letter to you on December 20, 2019 and in the Court's January 15, 2020 Agreed Order.  If you now seek to involve a vendor other than Cornerstone, please let us know immediately.  Third, you provide no detail in your email as to the instructions that will be provided to the vendor, including when and in what format the images will be supplied.  It is critical that all relevant data and metadata, as defined in the Court's Order, be captured when the vendor images all of the devices.

Seth D. Carson, Esquire
February 25, 2020
Page II.

Note that the Court's Order specifically references Defendant's husband's devices, and even if he claims that he disposed of a device, the new computer and any back-up should be imaged to the extent that information was retained from the prior device(s). In her sworn Declaration, your client represented that the Microsoft Surface – of which she posted a photo online showing an MEF document on the screen – belonged to her husband.

In addition, we need to come to an agreement about how recordings and photos/videos will be addressed after the vendor images the files. Please let me know your first available time to discuss this issue.

Finally, it must be clear in the instructions to the discovery vendor that all deletions and metadata showing dates of deletions must be preserved. To the extent that deleted materials can be restored (or cannot be restored because of the method of deletion), this information must be accessible through the vendor's services. Once we determine if and when deletions occurred, we must then determine how to capture this material which may not be accessible by search terms. I look forward to discussing this with you as soon as you are available.

Please provide the information requested above by noon tomorrow, as we need to address any concerns with the Court as soon as possible. All rights are reserved. In the meantime, we are working on a list of search terms in accordance with the guidelines provided by the Court.

Very truly yours,

*Sidney L. Gold*

SIDNEY L. GOLD

SLG/dd

cc:   The Middle East Forum
      Attison L. Barnes, III

# Exhibit 7

**From:**               Seth Carson <seth@dereksmithlaw.com>
**Sent:**                Tuesday, February 25, 2020 7:26 PM
**To:**                  Sidney Gold
**Cc:**                  Bill Rieser; Traci Greenberg; Leanne Coyle; Barnes III, Attison
**Subject:**           Re: MEF

I write in response to the two letters sent by Plaintiff today, February 25, 2020.

Defendant has retained Capsicum to perform the forensic search of her devices.  Here is a link to their website:

https://capsicumgroup.com/

I contacted Cornerstone, however, I was unable to retain Cornerstone as Attison Barnes had already contacted Cornerstone who sent an engagement letter to Attison Barnes in connection with the same case.  Because the process explained to me by Capsicum and Cornerstone was the same, Defendant opted to engage Capsicum to image and search her devices.

I already informed you what devices were turned over, but to clarify:  Defendant has turned over every device in her possession, which includes two cell phones.  They are both i phones.  I do not know the make or model number, but I can obtain that information from Capsicum tomorrow and provide it.

The devices will be completely imaged.  I notified Capsicum that the parties require all information contained in the devices including all emails, text messages, applications, and everything else with any and all metadata.

The parties need to meet and confer to agree on the criteria for searching and identifying relevant information stored within the devices.  Accordingly, I have suggested that we begin with a list of proposed search criteria to be provided by Plaintiff.  Upon receipt of the proposed list, we should schedule a call to discuss the same and agree on a final list of keywords.  I  notified Capsicum that I will provide the search criteria as soon as the parties agree on the same.  They did not require search criteria to image the devices.  The example provided by Cornerstone is that once the devices are imaged, they can be thrown off a bridge and it would not matter, because the entire device would be copied and saved.  Of course, the devices will simply be returned to Ms. Barbounis once they are imaged.  As both devices were provided to Capsicum this morning, I would imagine that both have been imaged already.

I am told that the information subject to the search criteria can be provided by Capsicum in either PDF format or an excel spreadsheet, or both.  If you would like to suggest another format, please let me know.

Your February 25, 2020 correspondence states that the Court Order specifically references Defendant's husband's devices.  That is not what the Order says.  The Order references Ms. Barbounis's devices "without regard to whether the devices were purchased or paid for by Barbounis's husband."  Notwithstanding, the Microsoft Surface laptop that was damaged and disposed of in December 2018 was replaced only by the Mac-book Pro which was returned to MEF in accordance with the instructions provided by MEF's Chief Financial Officer and Director of Human Resources.  This is explained thoroughly in the Declaration of Lisa Barbounis.

Regarding how photos and videos will be addressed, I believe the Court Order provides instruction.  I will review the photos and videos and turn over all documents that meet the criteria provided for by Judge Sanchez.  I am available to discuss this further during our scheduled conference.  If you want, I can walk down to your office and we can discuss everything in person.  We do share a building so it's an easy trip for me to make.  I am also available by telephone, but I find that some discussions are more productive in person.

If it's not clear, I am reading your letter and addressing each point in the order it was presented.  Accordingly, I will now address the last paragraph.  I think I made it clear to Capsicum that all meta data is to be retrieved.  I explained that Plaintiff is alleging that my client erased information from her phone.  I explained that the search criteria is certainly going to be targeted for such information.  It is my understanding that both devices have been imaged in their entirety and this includes all metadata.

I will now address the concerns raised in the second letter.

I believe that Defendant has already provided verified responses to Plaintiff's expedited discovery requests.  I provided Plaintiff with all of the responsive emails which I can send over again.  Regarding the voice memos, I believe the parties agreed this information would be turned over when the devices are imaged.  I have no idea how to extract voice memos from an electronic device.  The parties discussed this and agreed that any and all voice memos would be part of the discovery process once the devices were imaged.  As that is happening now, the voice memos will be produced along with all other electronic discovery.

The devices were turned over to Defendant's expert for imaging and all voice memos will be part of the discovery produced subject to such imaging.

Please let me know when I can expect a list of proposed search terms.  I am available all day tomorrow to discuss any matters further.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC

1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

---

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

---

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Tuesday, February 25, 2020 5:31 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>; Attison Barnes III <ABarnes@wileyrein.com>
**Subject:** Re: MEF

I need a response to ensure that you complied with the order of court. If you do not respond I will apprise the Court that you have ignored my inquiry. Sid


Sent from my iPhone


> On Feb 24, 2020, at 9:07 PM, Sidney Gold <sgold@discrimlaw.net> wrote:
>
> Seth, Please identify the third party vendor who is doing the imaging.  Also send me a list of all the devices, as defined in the Order of Court, that you are turning over to the vendor tomorrow. Moreover describe what efforts you have made to ensure that your client is in compliance with Judge Sanchez' Order or are you merely relying on your client's self serving certification which has been contradicted by the documentation presented at the hearing before Judge Sanchez. We will move to compel production of all devices if you insist on relying upon your client's certification.
>
> Sent from my iPhone


>> On Feb 24, 2020, at 5:18 PM, Seth Carson <seth@dereksmithlaw.com> wrote:
>>
>> The imaging of the devices will occur tomorrow within the time-frame provided by the February 19, 2020 Order.

I am available to discuss the keyword criteria almost anytime Tuesday or Wednesday this week.  Do you want to begin by providing a proposed list of keywords designed to capture relevant documents, which are (1) all documents originally belonging to Middle East, and (2) all documents referring or relating to documents
originally belonging to Middle East, including any communications between Barbounis and
any third party about documents originally belonging to Middle East.

Regarding the devices to be imaged: I would refer you to the executed Declaration of Lisa Barbounis, which clearly identifies the devices in her possession today.  All phones subject to the Order will be imaged.


Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.


**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Saturday, February 22, 2020 10:41 AM
**To:** Seth Carson <seth@dereksmithlaw.com>; Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>
**Cc:** Attison Barnes III <ABarnes@wileyrein.com>
**Subject:** Re: MEF

Seth, I have checked with Cornerstone and  the vendor is available to conduct the imaging on 2/25. Inasmuch as we had already agreed on Cornerstone, we would expect

that you will use Cornerstone. Louis Cinquanto is the contact person at Cornerstone. Sid.

Sent from my iPhone

> On Feb 22, 2020, at 10:07 AM, Sidney Gold <sgold@discrimlaw.net> wrote:
>
> Seth, As you are aware, Judge Sanchez ordered that Barbounis must give all electronic devices, as defined in the Order of Court dated 2/19/2020, to a third party vendor for imaging on or before 2/25/2020. Have you selected a third party vendor?  We expect that the imaging process should be completed in one day. Identify the electronic devises which you are turning over to the vendor.         When are you available to meet and confer to determine search terms?          Given your repeated noncompliance with court orders, my client stands ready to inform the Court if you continue to disobey Judge Sanchez' Order. Therefore,it should come as no surprise, that my client has directed me to move for sanctions and contempt if you fail to abide with the Order of Court.  Sid
>
>
>
>
> Sent from my iPhone

# Exhibit 8

**From:** Barnes III, Attison
**Sent:** Wednesday, February 26, 2020 1:12 PM
**To:** Seth Carson; Sidney Gold
**Cc:** Bill Rieser; Traci Greenberg; Leanne Coyle
**Subject:** RE: MEF

Seth –

I have not used Cornerstone.  We contacted them when we had all mutually agreed to use them, but for some reason, you did not follow through.

Who is the contact person at Capsicum?  We would like to clarify Capsicum's process for imaging, including the process for securing deleted files, the recovery process, and the dates of such deletions.  You have stated in the past that you do not understand this process, especially with recording and videos, so more important that we understand what the vendor is doing.  In terms of format, we do not want the data in PDF or Excel.  We need to receive the device images in their original Cellebrite UFDR format and with full metadata.  And when will the imaging of the phone be completed?

It causes great concern that three months after this case was filed and after exhaustive reminders about preservation obligation, you do not know the make and model of your client's devices.  To the extent that you took any action to preserve the data on the devices at any time during the last three months, please specify what was done and when in a reply e-mail.  If you instead left the devices in your client's possession over those three months without preservation, please let us know that.

Your e-mail reply only addresses two phones and none of the other devices mentioned in our letter, such as each storage device, all USB devices, cloud-based storage accounts (including, but not limited to, iCloud, Dropbox, and Google Drive), email accounts (including, but not limited to, Lisa.e.reynolds@gmail.com, Lisa.barbounis@gmail.com, lisabarbounis@gmail.com, lisarey@sas.upenn.edu, Lisa.reynolds@mail.house.gov, Press@tr.news, barbounis@meforum.org), and all messaging and social media accounts (including, but not limited to, Signal, WhatsApp, Telegram, and Facebook), as well as back-up for her husband's devices where we know MEF data resided (the Microsoft Surface shown in your client's Instagram post with an MEF document on the screen).  At the January 15 hearing, you acknowledged that data stored in the cloud does not reside on the phone, which is why the cloud data must be imaged.  In addition, we know she has an iWatch because she posted photos online, and we believe she has a Lenovo computer.  Unless we hear from you today that all such device and storage media described above will be imaged, we will have no choice but to approach the court.

We have a list of the keywords, but we need to ensure that some terms (which include sensitive information such as donor data) remain strictly confidential.  Does your engagement letter with Capsicum include non-disclosure obligations of Capsicum?  Could you send that language?  We will need to work together to determine the best way to address the most sensitive keywords such that there is no disclosure and the use of the keywords is not construed as a waiver.

What times are you free to talk today?



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

1

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o: 202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Tuesday, February 25, 2020 7:26 PM
**To:** Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>; Barnes III, Attison <ABarnes@wiley.law>
**Subject:** Re: MEF

I write in response to the two letters sent by Plaintiff today, February 25, 2020.

Defendant has retained Capsicum to perform the forensic search of her devices. Here is a link to their website:

https://capsicumgroup.com/

I contacted Cornerstone, however, I was unable to retain Cornerstone as Attison Barnes had already contacted Cornerstone who sent an engagement letter to Attison Barnes in connection with the same case. Because the process explained to me by Capsicum and Cornerstone was the same, Defendant opted to engage Capsicum to image and search her devices.

I already informed you what devices were turned over, but to clarify: Defendant has turned over every device in her possession, which includes two cell phones. They are both i phones. I do not know the make or model number, but I can obtain that information from Capsicum tomorrow and provide it.

The devices will be completely imaged. I notified Capsicum that the parties require all information contained in the devices including all emails, text messages, applications, and everything else with any and all metadata.

The parties need to meet and confer to agree on the criteria for searching and identifying relevant information stored within the devices. Accordingly, I have suggested that we begin with a list of proposed search criteria to be provided by Plaintiff. Upon receipt of the proposed list, we should schedule a call to discuss the same and agree on a final list of keywords. I notified Capsicum that I will provide the search criteria as soon as the parties agree on the same. They did not require search criteria to image the devices. The example provided by Cornerstone is that once the devices are imaged, they can be thrown off a bridge and it would not matter, because the entire device would be copied and saved. Of course, the devices will simply be returned to Ms. Barbounis once they are imaged. As both devices were provided to Capsicum this morning, I would imagine that both have been imaged already.

2

I am told that the information subject to the search criteria can be provided by Capsicum in either PDF format or an excel spreadsheet, or both. If you would like to suggest another format, please let me know.

Your February 25, 2020 correspondence states that the Court Order specifically references Defendant's husband's devices. That is not what the Order says. The Order references Ms. Barbounis's devices "without regard to whether the devices were purchased or paid for by Barbounis's husband." Notwithstanding, the Microsoft Surface laptop that was damaged and disposed of in December 2018 was replaced only by the Mac-book Pro which was returned to MEF in accordance with the instructions provided by MEF's Chief Financial Officer and Director of Human Resources. This is explained thoroughly in the Declaration of Lisa Barbounis.

Regarding how photos and videos will be addressed, I believe the Court Order provides instruction. I will review the photos and videos and turn over all documents that meet the criteria provided for by Judge Sanchez. I am available to discuss this further during our scheduled conference. If you want, I can walk down to your office and we can discuss everything in person. We do share a building so it's an easy trip for me to make. I am also available by telephone, but I find that some discussions are more productive in person.

If it's not clear, I am reading your letter and addressing each point in the order it was presented. Accordingly, I will now address the last paragraph. I think I made it clear to Capsicum that all meta data is to be retrieved. I explained that Plaintiff is alleging that my client erased information from her phone. I explained that the search criteria is certainly going to be targeted for such information. It is my understanding that both devices have been imaged in their entirety and this includes all metadata.

I will now address the concerns raised in the second letter.

I believe that Defendant has already provided verified responses to Plaintiff's expedited discovery requests. I provided Plaintiff with all of the responsive emails which I can send over again. Regarding the voice memos, I believe the parties agreed this information would be turned over when the devices are imaged. I have no idea how to extract voice memos from an electronic device. The parties discussed this and agreed that any and all voice memos would be part of the discovery process once the devices were imaged. As that is happening now, the voice memos will be produced along with all other electronic discovery.

The devices were turned over to Defendant's expert for imaging and all voice memos will be part of the discovery produced subject to such imaging.

Please let me know when I can expect a list of proposed search terms. I am available all day tomorrow to discuss any matters further.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Tuesday, February 25, 2020 5:31 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>; Attison Barnes III <ABarnes@wileyrein.com>
**Subject:** Re: MEF

I need a response to ensure that you complied with the order of court. If you do not respond I will apprise the Court that you have ignored my inquiry. Sid

Sent from my iPhone

> On Feb 24, 2020, at 9:07 PM, Sidney Gold <sgold@discrimlaw.net> wrote:
>
> Seth, Please identify the third party vendor who is doing the imaging. Also send me a list of all the devices, as defined in the Order of Court, that you are turning over to the vendor tomorrow. Moreover describe what efforts you have made to ensure that your client is in compliance with Judge Sanchez' Order or are you merely relying on your client's self serving certification which has been contradicted by the documentation presented at the hearing before Judge Sanchez. We will move to compel production of all devices if you insist on relying upon your client's certification.
>
> Sent from my iPhone

>> On Feb 24, 2020, at 5:18 PM, Seth Carson <seth@dereksmithlaw.com> wrote:

The imaging of the devices will occur tomorrow within the time-frame provided by the February 19, 2020 Order.

I am available to discuss the keyword criteria almost anytime Tuesday or Wednesday this week.  Do you want to begin by providing a proposed list of keywords designed to capture relevant documents, which are (1) all documents originally belonging to Middle East, and (2) all documents referring or relating to documents originally belonging to Middle East, including any communications between Barbounis and any third party about documents originally belonging to Middle East.

Regarding the devices to be imaged: I would refer you to the executed Declaration of Lisa Barbounis, which clearly identifies the devices in her possession today.  All phones subject to the Order will be imaged.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Saturday, February 22, 2020 10:41 AM
**To:** Seth Carson <seth@dereksmithlaw.com>; Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>
**Cc:** Attison Barnes III <ABarnes@wileyrein.com>
**Subject:** Re: MEF

Seth, I have checked with Cornerstone and the vendor is available to conduct the imaging on 2/25. Inasmuch as we had already agreed on Cornerstone, we would expect that you will use Cornerstone. Louis Cinquanto is the contact person at Cornerstone. Sid.

Sent from my iPhone

> On Feb 22, 2020, at 10:07 AM, Sidney Gold <<u>sgold@discrimlaw.net</u>> wrote:
>
> Seth, As you are aware, Judge Sanchez ordered that Barbounis must give all electronic devices, as defined in the Order of Court dated 2/19/2020, to a third party vendor for imaging on or before 2/25/2020. Have you selected a third party vendor?  We expect that the imaging process should be completed in one day. Identify the electronic devises which you are turning over to the vendor.          When are you available to meet and confer to determine search terms?          Given your repeated noncompliance with court orders, my client stands ready to inform the Court if you continue to disobey Judge Sanchez' Order. Therefore,it should come as no surprise, that my client has directed me to move for sanctions and contempt if you fail to abide with the Order of Court.  Sid
>
>
>
> Sent from my iPhone

# Exhibit 9

| | |
|---|---|
| **From:** | Barnes III, Attison |
| **Sent:** | Thursday, February 27, 2020 3:21 PM |
| **To:** | Seth Carson; Sidney Gold |
| **Cc:** | Bill Rieser; Traci Greenberg; Leanne Coyle |
| **Subject:** | RE: MEF |

Seth –

I asked for your available times to talk yesterday, and did not receive any.  Instead, late yesterday, you sent the e-mail below and another e-mail this morning today, but they raise more questions than answers, and you do not accurately set forth the facts.

First, the Court ordered your client to turn over all of her devices to a "third-party vendor" for imaging.  Because you claim to have engaged Capsicum as your "expert" to act on behalf of your client, Capsicum is not an independent third-party vendor.  This is obviously very concerning.  While I would have no objection to using Capsicum as a neutral third-party vendor, we cannot be in a position where we are not allowed to ask questions to the vendor about such things as: (1) getting the proper non-disclosure obligations; (2) the process for securing deleted files; (3) the recovery process and the method of determining the dates of deletions; and (4) application of the search terms.  We are both going to need to rely on the neutral vendor.  Once we are able to confirm the details with the vendor, we have the search terms in writing.  Let's discuss ASAP.

Second, we have been requesting that you preserve the data and metadata on all of your client's devices since last fall.  We have asked the court for relief twice on this issue (in December and in January), and you have been directed by the court on three occasions to have all devices imaged.  That is why I was shocked to learn that, after numerous reminders about your obligations to preserve your client's data, you did not even know the make and model of your client's phones.  You were vague in your e-mail below as to when the devices were provided to you.  Please let me know when you received them.  You have not responded to my inquiry below, which is "To the extent that you took any action to preserve the data on the devices at any time during the last three months, please specify what was done and when in a reply e-mail.  If you instead left the devices in your client's possession over those three months without preservation, please let us know that."  Please let me know the answer today.  Thanks.

Third, I am still concerned that you will not engage meaningfully on the other devices, storage media, and cloud data that we have repeatedly raised.  For example, even if the Microsoft Surface was thrown out for some reason, we must have access to any back-up that may exist from that device.  It would be very strange these days for someone to throw out a device without retaining the data on the device.  With regards to the iWatch, it is not up to your client to decide whether it contains relevant information, and your client has no way of reviewing the metadata contained on that device herself.  It must be processed for imaging.  If the device truly has no MEF data, then your client should have no objection to having it imaged.  It also appears from your response that you have done nothing to image her e-mails, even though you have acknowledged that they exist.  You have now missed the court's deadline.

Unless we can come to an understanding on these issues, you are forcing us to return to the Court to resolve these issues.  I don't see any logical reason why your client would not comply with the order and have all of her devices (and the other materials we mentioned) imaged.  Again, this would include each storage device, all USB devices, cloud-based storage accounts (including, but not limited to, iCloud, Dropbox, and Google Drive), email accounts (including, but not limited to, Lisa.e.reynolds@gmail.com, Lisa.barbounis@gmail.com, lisabarbounis@gmail.com, lisarey@sas.upenn.edu, Lisa.reynolds@mail.house.gov, Press@tr.news, barbounis@meforum.org), and all messaging and social media accounts (including, but not limited to, Signal, WhatsApp, Telegram, and Facebook), as well as back-up for her husband's devices

where we know MEF data resided (the Microsoft Surface shown in your client's Instagram post with an MEF document on the screen). We need to resolve this as soon as possible.

The continuing delay for months raises many red flags. You say, for example, that e-mails will be produced, but the deadline for producing these materials has passed. Please produce them immediately. We served our expedited discovery requests on December 5, nearly three months ago.

I would like to attempt one last time to resolve these problems before going back to the court. Let me know what times you are available to speak this afternoon after your deposition. Are you available at 4:00? 4:30? 5:00?



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o: 202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Wednesday, February 26, 2020 4:08 PM
**To:** Barnes III, Attison <ABarnes@wiley.law>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>
**Subject:** Re: MEF

Attison,

I contacted Cornerstone. They were going to send an engagement letter. I received an email at 5:24 P.M., advising me to call immediately. During a conversation later that evening I learned that you had already contacted Cornerstone and an engagement letter had already been sent to you which needed to be cleared up before Defendant could engage Cornerstone's services. To avoid any confusion as to the identify of Defendant's expert, Defendant engaged Capsicum.

Because Defendant has engaged Capsicum as an expert, it would not be appropriate for you to contact Defendant's expert. If there is a list of questions you would like answered, please send them to me and I will submit them to Capsicum for review.

We can certainly discuss the issued raised in your email during out next telephone conversation.

Your email refers to images that must be provided in their "original Cellebrite UFDR format and with full metadata." I have confirmed with Capsicum that any images that are produced can be produced in this format. I believe any information produced (not just images) can be produced in this format.

The make and model of the devices being imaged are : (1) Apple Model A2111 which is an Iphone 11, and (2) Apple Model A1920 which is an Iphone XS.

The chain of custody for the devices being imaged begins with my client. The devices were provided to me. I provided the devices to Defendant's Expert, previously identified as Capsicum.

You continue to ask about the Microsoft Surface. Why? She no longer has it. It was disposed of sometime around December 2018, well before any preservation letter or obligation existed. I also don't know why you continue to suggest that the Microsoft Surface belonged to Ms. Barbounis's husband. It did not.

I have recently discussed your email with Ms. Barbounis. She does not own a Lenova laptop. She has searched her iWatch and it does not contain any information related to the Court Order. Her i Watch does not contain any documents whatsoever. It syncs to the phone that was turned over for imaging.

Ms Barbounis has provided her devices to Capsicum. The devices are linked to the social media accounts listed in your email including Singal, WhatsApp, Telegram, and Facebook. I specifically identified these applications and confirmed that they would be imaged as part of the process. Accordingly, any relevant, non-privileged communications connected with these accounts will be part of the discovery produced by Defendant.

Defendant will also produce all emails and metadata connected with email accounts, although, not for all of the email accounts you listed. For example, Lisa Barbounis is not allowed to have her email associated with her employment for the House of Representatives (lisa.reynolds@mail.house.gov) searched. But she did not have this email address when she worked for MEF and she never used this email in any way related to MEF. Accordingly, this email account does not meet the definition provided for by Judge Sanchez ("Barbounis must image all electronic devices in her possession, custody, or control, which currently contain or have ever contained any of Middle East's documents or any documents referring to or relating to Middle East's documents.").

I am available today to discuss these issues further. I have checked with Capsicum today and all devices have been imaged. Accordingly, the parties need only to provide the search terms.

Case 2:19-cv-05030-JDW Document 44-1 Filed 03/19/20 Page 10 of 161

Whatever you need to protect MEF interests is fine with me if you are talking about a protective order. Lisa is never going to see the keywords. And I am never going to allow anyone access to search terms. I am sure Capsicum would agree to that. We can discuss this as well, but I will assist you in taking steps to make sure that MEF interests are protected, to the extent that it does not effect my duties to my client.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____


_____

**From:** Barnes III, Attison <ABarnes@wiley.law>
**Sent:** Wednesday, February 26, 2020 1:11 PM
**To:** Seth Carson <seth@dereksmithlaw.com>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>
**Subject:** RE: MEF


Seth –

I have not used Cornerstone.  We contacted them when we had all mutually agreed to use them, but for some reason, you did not follow through.

Who is the contact person at Capsicum?  We would like to clarify Capsicum's process for imaging, including the process for securing deleted files, the recovery process, and the dates of such deletions.  You have stated in the past that you do not understand this process, especially with recording and videos, so more important that we understand what the vendor is doing.  In terms of format, we do not want the data in PDF or Excel.  We need to receive the device images in their original Cellebrite UFDR format and with full metadata.  And when will the imaging of the phone be completed?

It causes great concern that three months after this case was filed and after exhaustive reminders about preservation obligation, you do not know the make and model of your client's devices.  To the extent that you took any action to preserve the data on the devices at any time during the last three months, please specify what was done and when in a reply e-mail.  If you instead left the devices in your client's possession over those three months without preservation, please let us know that.

Your e-mail reply only addresses two phones and none of the other devices mentioned in our letter, such as each storage device, all USB devices, cloud-based storage accounts (including, but not limited to, iCloud, Dropbox, and Google Drive), email accounts (including, but not limited to, Lisa.e.reynolds@gmail.com, Lisa.barbounis@gmail.com, lisabarbounis@gmail.com, lisarey@sas.upenn.edu, Lisa.reynolds@mail.house.gov, Press@tr.news, barbounis@meforum.org), and all messaging and social media accounts (including, but not limited to Signal, WhatsApp, Telegram, and Facebook), as well as back-up for her husband's devices where we know MEF data resided (the Microsoft Surface shown in your client's Instagram post with an MEF document on the screen).  At the January 15 hearing, you acknowledged that data stored in the cloud does not reside on the phone, which is why the cloud data must be imaged.  In addition, we know she has an iWatch because she posted photos online, and we believe she has a Lenovo computer.  Unless we hear from you today that all such device and storage media described above will be imaged, we will have no choice but to approach the court.

We have a list of the keywords, but we need to ensure that some terms (which include sensitive information such as donor data) remain strictly confidential.  Does your engagement letter with Capsicum include non-disclosure obligations of Capsicum?  Could you send that language?  We will need to work together to determine the best way to address the most sensitive keywords such that there is no disclosure and the use of the keywords is not construed as a waiver.

What times are you free to talk today?



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Tuesday, February 25, 2020 7:26 PM
**To:** Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>; Barnes III, Attison <ABarnes@wiley.law>
**Subject:** Re: MEF

I write in response to the two letters sent by Plaintiff today, February 25, 2020.

Defendant has retained Capsicum to perform the forensic search of her devices.  Here is a link to their website:

Case 2:19-cv-02601-12  Document 44-1  Filed 03/19/20  Page 13 of 181

https://capsicumgroup.com/

I contacted Cornerstone, however, I was unable to retain Cornerstone as Attison Barnes had already contacted Cornerstone who sent an engagement letter to Attison Barnes in connection with the same case.  Because the process explained to me by Capsicum and Cornerstone was the same, Defendant opted to engage Capsicum to image and search her devices.

I already informed you what devices were turned over, but to clarify:  Defendant has turned over every device in her possession, which includes two cell phones.  They are both i phones.  I do not know the make or model number, but I can obtain that information from Capsicum tomorrow and provide it.

The devices will be completely imaged.  I notified Capsicum that the parties require all information contained in the devices including all emails, text messages, applications, and everything else with any and all metadata.

The parties need to meet and confer to agree on the criteria for searching and identifying relevant information stored within the devices.  Accordingly, I have suggested that we begin with a list of proposed search criteria to be provided by Plaintiff.  Upon receipt of the proposed list, we should schedule a call to discuss the same and agree on a final list of keywords.  I notified Capsicum that I will provide the search criteria as soon as the parties agree on the same.  They did not require search criteria to image the devices.  The example provided by Cornerstone is that once the devices are imaged, they can be thrown off a bridge and it would not matter, because the entire device would be copied and saved.  Of course, the devices will simply be returned to Ms. Barbounis once they are imaged.  As both devices were provided to Capsicum this morning, I would imagine that both have been imaged already.

I am told that the information subject to the search criteria can be provided by Capsicum in either PDF format or an excel spreadsheet, or both.  If you would like to suggest another format, please let me know.

Your February 25, 2020 correspondence states that the Court Order specifically references Defendant's husband's devices.  That is not what the Order says.  The Order references Ms. Barbounis's devices "without regard to whether the devices were purchased or paid for by Barbounis's husband."  Notwithstanding, the Microsoft Surface laptop that was damaged and disposed of in December 2018 was replaced only by the Mac-book Pro which was returned to MEF in accordance with the instructions provided by MEF's Chief Financial Officer and Director of Human Resources.  This is explained thoroughly in the Declaration of Lisa Barbounis.

Regarding how photos and videos will be addressed, I believe the Court Order provides instruction.  I will review the photos and videos and turn over all documents that meet the criteria provided for by Judge Sanchez.  I am available to discuss this further during our scheduled conference.  If you want, I can walk down to your office and we can discuss everything in person.  We do share a building so it's an easy trip for me to make.  I am also available by telephone, but I find that some discussions are more productive in person.

If it's not clear, I am reading your letter and addressing each point in the order it was presented.  Accordingly, I will now address the last paragraph.  I think I made it clear to Capsicum that all meta data is to be retrieved.  I explained that Plaintiff is alleging that my client erased information from her phone.  I explained that the search criteria is certainly going

Case 2:19-cv-02945-GJP   Document 44-1   Filed 03/09/20   Page 13 of 193

to be targeted for such information. It is my understanding that both devices have been imaged in their entirety and this includes all metadata.

I will now address the concerns raised in the second letter.

I believe that Defendant has already provided verified responses to Plaintiff's expedited discovery requests. I provided Plaintiff with all of the responsive emails which I can send over again. Regarding the voice memos, I believe the parties agreed this information would be turned over when the devices are imaged. I have no idea how to extract voice memos from an electronic device. The parties discussed this and agreed that any and all voice memos would be part of the discovery process once the devices were imaged. As that is happening now, the voice memos will be produced along with all other electronic discovery.

The devices were turned over to Defendant's expert for imaging and all voice memos will be part of the discovery produced subject to such imaging.

Please let me know when I can expect a list of proposed search terms. I am available all day tomorrow to discuss any matters further.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

Case 3:19-cv-00513-12 Document VY-1 Filed 09/03/30 Page 34 of 183

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Tuesday, February 25, 2020 5:31 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Cc:** Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle

<lcoyle@discrimlaw.net>; Attison Barnes III <ABarnes@wileyrein.com>
**Subject:** Re: MEF

I need a response to ensure that you complied with the order of court. If you do not respond I will apprise the Court that you have ignored my inquiry. Sid

Sent from my iPhone

> On Feb 24, 2020, at 9:07 PM, Sidney Gold <sgold@discrimlaw.net> wrote:
>
> Seth, Please identify the third party vendor who is doing the imaging. Also send me a list of all the devices, as defined in the Order of Court, that you are turning over to the vendor tomorrow. Moreover describe what efforts you have made to ensure that your client is in compliance with Judge Sanchez' Order or are you merely relying on your client's self serving certification which has been contradicted by the documentation presented at the hearing before Judge Sanchez. We will move to compel production of all devices if you insist on relying upon your client's certification.
>
> Sent from my iPhone

>> On Feb 24, 2020, at 5:18 PM, Seth Carson <seth@dereksmithlaw.com> wrote:
>>
>> The imaging of the devices will occur tomorrow within the time-frame provided by the February 19, 2020 Order.
>>
>> I am available to discuss the keyword criteria almost anytime Tuesday or Wednesday this week. Do you want to begin by providing a proposed list of keywords designed to capture relevant documents, which are (1) all documents originally belonging to Middle East, and (2) all documents referring or relating to documents originally belonging to Middle East, including any communications between Barbounis and any third party about documents originally belonging to Middle East.
>>
>> Regarding the devices to be imaged: I would refer you to the executed Declaration of Lisa Barbounis, which clearly identifies the devices in her possession today. All phones subject to the Order will be imaged.
>>
>> Seth D. Carson, Esquire
>> Derek Smith Law Group, PLLC
>> 1835 Market Street
>> Suite 2950
>> Philadelphia, PA 19103
>> Phone: 215.391.4790

8

Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Saturday, February 22, 2020 10:41 AM
**To:** Seth Carson <seth@dereksmithlaw.com>; Bill Rieser <brieser@discrimlaw.net>; Traci Greenberg <tgreenberg@discrimlaw.net>; Leanne Coyle <lcoyle@discrimlaw.net>
**Cc:** Attison Barnes III <ABarnes@wileyrein.com>
**Subject:** Re: MEF

Seth, I have checked with Cornerstone and the vendor is available to conduct the imaging on 2/25. Inasmuch as we had already agreed on Cornerstone, we would expect that you will use Cornerstone. Louis Cinquanto is the contact person at Cornerstone. Sid.

Sent from my iPhone

> On Feb 22, 2020, at 10:07 AM, Sidney Gold <sgold@discrimlaw.net> wrote:
>
> Seth, As you are aware, Judge Sanchez ordered that Barbounis must give all electronic devices, as defined in the Order of Court dated 2/19/2020, to a third party vendor for imaging on or before 2/25/2020. Have you selected a third party vendor? We expect that the imaging process should be completed in one day. Identify the electronic devises which you are turning over to the vendor.       When are you available to meet and confer to determine search terms?       Given your repeated noncompliance with court orders, my client stands ready to inform the Court if you continue to disobey Judge Sanchez' Order. Therefore it should come as no surprise, that my client has directed me to move for sanctions and contempt if you fail to abide with the Order of Court. Sid
>
>
>
>
> Sent from my iPhone

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please

permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to
Information@wiley.law

# Exhibit 10

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

EASTERN DISTRICT OF PA

| | |
|---|---|
| THE MIDDLE EAST FORUM | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   19-5697 |
| LISA REYNOLDS-BARBOUNIS | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Matt Ebert - Deponent
354 Pixley Place, West Deptford, NJ  08096-4013, Gloucester County
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Building Conference room- Suite 1720 1835 Market St. Philadelphia, PA 19103 | Date and Time: 03/18/2020 2:00 pm |
|---|---|

The deposition will be recorded by this method:     Video Taped / Court Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  At least one day prior to the deposition please provide any/all documents reflecting or constituting communications and materials exchanged with Lisa Barbounis since August 1, 2019 mentioning MEF, its personnell, its data, and/or its property.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     02/28/2020

*CLERK OF COURT*

                                                                OR

_____              /s/Sidney L. Gold, Esquire
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
Sidney L. Gold, Esquire
_____ , who issues or requests this subpoena, are:
1835  Market St., Suite 515, Philadelphia, PA 19103  (215) 569-1999

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   19-5697

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                            *Server's signature*

                                             _____
                                                            *Printed name and title*


                                             _____
                                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

EASTERN DISTRICT OF PA

| | |
|---|---|
| THE MIDDLE EAST FORUM | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.   19-5697 |
| LISA REYNOLDS-BARBOUNIS | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Marnie O'Brien
                               c/o attorney
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Building Conference room- Suite 1720 1835 Market St. Philadelphia, PA 19103 | Date and Time: 03/18/2020 10:00 am |
|---|---|

The deposition will be recorded by this method:   Video Taped / Court Stenographer

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  At least one day prior to the deposition please provide any/all documents reflecting or constituting communications and materials exchanged with Lisa Barbounis since August 1, 2019 mentioning MEF, its personnell, its data, and/or its property.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/28/2020

|  *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/Sidney L. Gold, Esquire |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiff
Sidney L. Gold, Esquire
_____ , who issues or requests this subpoena, are:
1835  Market St., Suite 515, Philadelphia, PA 19103  (215) 569-1999

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF PA

| | |
|---|---|
| THE MIDDLE EAST FORUM | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   19-5697 |
| LISA REYNOLDS-BARBOUNIS | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Delaney Yonchek- Deponent
c/o attorney
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Building Conference room- Suite 1720 | Date and Time: |
|---|---|---|
| | 1835 Market St. | 03/18/2020 12:00 pm |
| | Philadelphia, PA 19103 | |

The deposition will be recorded by this method:   Video Taped / Court Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   At least one day prior to the deposition please provide any/all documents reflecting or constituting communications and materials exchanged with Lisa Barbounis since August 1, 2019 mentioning MEF, its personnell, its data, and/or its property.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/28/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/Sidney L. Gold, Esquire |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
Sidney L. Gold, Esquire                                    , who issues or requests this subpoena, are:
1835  Market St., Suite 515, Philadelphia, PA 19103  (215) 569-1999

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, | : | CIVIL ACTION NO.: 19-5697 |
| *Plaintiff* | : | Hon. Juan R. Sánchez |
| v. | : | |
| LISA REYNOLDS-BARBOUNIS, | : | |
| *Defendant* | : | JURY TRIAL DEMANDED |

**NOTICE OF VIDEOTAPED PRELIMINARY INJUNCTION
<u>DEPOSITION OF LISA REYNOLDS-BARBOUNIS</u>**

Please take notice that on **Thursday, March 19, 2020, beginning at 9:30 a.m**., counsel for the Plaintiff, will take the video-taped preliminary injunction deposition of Defendant **<u>Lisa Reynolds-Barbounis</u>**. The deposition will be held at the Office of Sidney L. Gold & Assoc., P.C., 1835 Market Street, Suite 515, Philadelphia, PA 19103, before an officer authorized by law to administer oaths pursuant to the Federal Rules of Civil Procedure. The oral examination will continue from day to day until completed.  You are invited to attend the deposition and participate in same.

SIDNEY L. GOLD & ASSOC., P.C.

BY:   <u>/s/Sidney L. Gold, Esquire</u>
        SIDNEY L. GOLD, ESQUIRE
        Attorneys for Plaintiff

Dated:  02/28/20

# Exhibit 11

**From:** Barnes III, Attison
**Sent:** Friday, February 28, 2020 11:03 AM
**To:** Sidney Gold; Seth Carson
**Subject:** RE: MEF v. Lisa Barbounis
**Attachments:** Stipulated Injunction EDPA.docx

Seth –

We'll review your letter, but as we discussed last night, here is the proposed stipulated injunction order.  As your client claims she will not keep, disclose, or use MEF data, then it seems the stipulated injunction order will save us all some time.  The first part of the order sets forth what we allege, because the order needs to set forth the predicate for the injunction.  Let us know.  Thanks.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Thursday, February 27, 2020 9:13 PM
**To:** Sidney Gold <sgold@discrimlaw.net>; Barnes III, Attison <ABarnes@wiley.law>; Barnes III, Attison <ABarnes@wiley.law>; Denise Drages <ddrages@discrimlaw.net>
**Subject:** MEF v. Lisa Barbounis

Attached please find correspondence in connection with our telephone conversation earlier this evening.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this

message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE MIDDLE EAST FORUM, | Civil Action No.: 19-5697 |
| Plaintiff, | |
| v. | |
| LISA REYNOLDS-BARBOUNIS, | |
| Defendant. | |

## STIPULATED INJUNCTION ORDER

AND NOW, upon the motion for entry of this Stipulated Injunction Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.     MEF and Barbounis have stipulated and agreed to entry of this Injunction Order, and without a finding by the Court of law or fact other than as stated herein.

2.     The Court has jurisdiction over the subject matter of this case, and it has jurisdiction over the parties.

3.     Venue lies properly with this Court.

4.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure

Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained and enjoined by an order of this Court.

7.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.     Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve and not alter all documents and materials (hard copy and electronic) containing an/or referencing MEF, MEF work product, MEF donors, MEF contacts and business affiliations, and MEF finances and donations ("MEF Data"); (b) immediately return to MEF through its counsel all non-privileged hard copy documents and materials containing and/or referencing MEF Data; (c) once her electronic devices, including computers, cellular phones, USB and other physical storage devices, cloud-based storage accounts, messaging and social media accounts, and email accounts are processed and imaged by a reputable computer forensics vendor, including all data, metadata, and restored materials, and the parties' counsel have access to the data collected by the vendor (counsel for Barbounis must ensure that the imaged materials are kept under strict confidence in his sole possession during this litigation, then returned to MEF counsel at the conclusion of this action), promptly cooperate with the deletion of all non-privileged data and files containing MEF Data from her electronic devices and all other accounts, storage, and media; and

(d) take all steps to ensure that MEF Data is not further disseminated or used by Barbounis or any other person.

9.      No security is required of any agency of the United States for issuance of an injunction. Fed. R. Civ. P. 65(c).

10.     The entry of this Order is in the public interest.

## **ORDER**

The Court finds that the standard for a preliminary injunction has been met, and IT IS THEREFORE ORDERED that:

A.      Barbounis will preserve and not alter all documents and materials (hard copy and electronic) containing and/or referencing MEF Data;

B.      Barbounis will deliver to MEF counsel, on or before March 6, 2020, all non-privileged hard copy documents and materials containing and/or referencing MEF Data;

C.      Once her electronic devices, including computers, cellular phones, USB and other physical storage devices, cloud-based storage accounts, messaging and social media accounts, and email accounts are processed and imaged by a reputable computer forensics vendor, including all data, metadata, and restored materials, and the parties' counsel have access to the data collected by the vendor (counsel for Barbounis must ensure that the imaged materials are kept under strict confidence in his sole possession during this litigation, then returned to MEF counsel at the conclusion of this action), Barbounis will promptly cooperate with the deletion of all non-privileged data and files containing MEF Data from her electronic devices and all other accounts, storage, and media; and

D.      Barbounis will take all steps to ensure that MEF Data is not further disseminated or used by Barbounis or any other person.

SO ORDERED this ____ day of _____, 2020.

By:   _____
United States District Court Judge

AGREED:

_____
*Counsel for Plaintiff The Middle East Forum*

_____
*Counsel for Defendant Lisa Reynolds-Barbounis*

_____
*Lisa Reynolds-Barbounis*

# Exhibit 12

| | |
|---|---|
| **From:** | Seth Carson <seth@dereksmithlaw.com> |
| **Sent:** | Friday, February 28, 2020 6:44 PM |
| **To:** | Sidney Gold |
| **Cc:** | Barnes III, Attison |
| **Subject:** | Re: MEF v. Lisa Barbounis |
| **Attachments:** | Proposed Stipulated Order for Preliminary Injunction.docx |

Attached please find an Order Defendant will agree to execute for the preliminary injunction.

Seth D. Carson, Esquire

Derek Smith Law Group, PLLC

1835 Market Street

Suite 2950

Philadelphia, PA 19103

Phone: 215.391.4790

Facsimile: 215.893.5288

Direct: 484.678.2210

Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

**From:** Sidney Gold <sgold@discrimlaw.net>
**Sent:** Friday, February 28, 2020 6:13 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Cc:** Barnes III, Attison <ABarnes@wiley.law>
**Subject:** Re: MEF v. Lisa Barbounis

What is it that you disagree ?

Sent from my iPhone

On Feb 28, 2020, at 5:57 PM, Seth Carson <seth@dereksmithlaw.com> wrote:

I can't agree to what you sent. It sucks because I want to go home and play with my daughter, and I would love to agree.

I will file a response.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

**From:** Barnes III, Attison <ABarnes@wiley.law>
**Sent:** Friday, February 28, 2020 11:03 AM
**To:** Sidney Gold <sgold@discrimlaw.net>; Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: MEF v. Lisa Barbounis

Seth –

We'll review your letter, but as we discussed last night, here is the proposed stipulated injunction order. As your client claims she will not keep, disclose, or use MEF data, then it seems the stipulated injunction order will save us all some time. The first part of the order sets forth what we allege, because the order needs to set forth the predicate for the injunction. Let us know. Thanks.

<image001.png>          Attison L. Barnes, III
                        Attorney at Law
                        abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385

Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Thursday, February 27, 2020 9:13 PM
**To:** Sidney Gold <sgold@discrimlaw.net>; Barnes III, Attison <ABarnes@wiley.law>; Barnes III, Attison <ABarnes@wiley.law>; Denise Drages <ddrages@discrimlaw.net>
**Subject:** MEF v. Lisa Barbounis

Attached please find correspondence in connection with our telephone conversation earlier this evening.


Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____


NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wiley.law

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE MIDDLE EAST FORUM, | Civil Action No.: 19-5697 |
| Plaintiff, | |
| v. | |
| LISA REYNOLDS-BARBOUNIS, | |
| Defendant. | |

## STIPULATED INJUNCTION ORDER

AND NOW, upon the motion for entry of this Stipulated Injunction Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.      MEF and Barbounis have stipulated and agreed to entry of the following Injunction Order, and without a finding by the Court of law or fact other than as stated herein.

2.      No security is required of any agency of the United States for issuance of an injunction.  Fed. R. Civ. P. 65(c).

## ORDER

The Court finds that the following preliminary injunction is ORDERED that:

A.      Barbounis will preserve and not alter all documents and materials (hard copy and electronic) containing and/or referencing MEF Data;

B.      Barbounis will deliver to MEF counsel, through counsel for Defendant, on or before March 6, 2020, all non-privileged hard copy documents and materials containing and/or

referencing MEF Data; however Defendant's counsel is permitted to retain a copy of all documents until the completion of the instant litigation;

C.      Counsel for Barbounis must ensure that the imaged materials are kept under strict confidence in his sole possession during this litigation and this includes any and all venders retained by Defendant to inspect, image and search Barbounis's electronic devices as more fully described by the Court's February 22, 2020 Order.

D.      All MEF information shall be returned to MEF counsel at the conclusion of this action.

E.      Barbounis will promptly cooperate with the deletion of all non-privileged data and files containing MEF Data from her electronic devices and all other accounts, storage, and media; and,

F.      Barbounis will take all steps to ensure that MEF Data is not disseminated or used by Barbounis or any other person.

SO ORDERED this _____ day of _____, 2020.


By:    _____
                United States District Court Judge


AGREED:


_____
*Counsel for Plaintiff The Middle East Forum*


_____
*Counsel for Defendant Lisa Reynolds-Barbounis*


_____
*Lisa Reynolds-Barbounis*

# Exhibit 13

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

_____ District of _____

|                                         |     |                    |
|-----------------------------------------|-----|--------------------|
| _____             | )   |                    |
| *Plaintiff*                             | )   |                    |
| v.                                      | )   | Civil Action No.   |
|                                         | )   |                    |
| _____             | )   |                    |
| *Defendant*                             | )   |                    |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Date and Time: |
|--------|----------------|
|        |                |

The deposition will be recorded by this method: _____

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | | |
|---|---|---|
|  | OR |  |
| _____ |  | _____ |
| *Signature of Clerk or Deputy Clerk* |  | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit 14

**From:**         Barnes III, Attison
**Sent:**          Monday, March 9, 2020 7:21 PM
**To:**            Seth Carson
**Cc:**            Sidney Gold
**Subject:**       Stipulated Order
**Attachments:**   Def. Proposed Stipulated Order for Preliminary Injunction_WR Edits.docx

Seth –

Upon review of your revised version of our proposed Stipulated Injunction Order, we only have a few comments.  Please see the attached redlines.  If this Order is acceptable, we can jointly request entry by the Court and removal of the injunction hearing from the docket.  Please let me know by the end of the day Wednesday (sooner if you are able), as I will be tied up with a hearing in another case later this week.  Thanks.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM,

        Plaintiff,

v.

LISA REYNOLDS-BARBOUNIS,

        Defendant.

Civil Action No.: 19-5697

## STIPULATED INJUNCTION ORDER

AND NOW, upon the motion for entry of this Stipulated Injunction Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.      MEF and Barbounis have stipulated and agreed to entry of the following Injunction Order, and without a finding by the Court of law or fact other than as stated herein.

2.      No security is required of any agency of the United States for issuance of an injunction. Fed. R. Civ. P. 65(c).

## ORDER

Upon stipulation of the parties and for good cause shown in light of the applicable injunction factors, t̶he Court finds that the following preliminary injunction is ORDERED t̶h̶a̶t̶:

A.      Barbounis will preserve and not alter all documents and materials (hard copy and electronic), including computers, cellular phones, USB and other physical storage devices, cloud-based storage accounts, messaging and social media accounts, and email accounts, containing and/or referencing MEF Data;

B.     Barbounis will deliver to MEF counsel, through counsel for Defendant, on or before 5:00 p.m. on March 611, 2020, all non-privileged hard copy documents and materials containing and/or referencing MEF Data, as well as all data, metadata, and restored materials related to MEF Data; however, Defendant's counsel is permitted to retain a copy of all documents until the completion of the instant litigation while complying with his confidentiality obligations;

C.     Counsel for Barbounis must ensure that the imaged materials are kept under strict confidence in his sole possession during this litigation and this includes any and all venders retained by Defendant to inspect, image and search Barbounis's electronic devices as more fully described by the Court's February 22, 2020 Order.

D.     All MEF information shall be returned to MEF counsel at the conclusion of this action.

E.     Barbounis will promptly cooperate with the deletion of all non-privileged data and files containing MEF Data from her electronic devices and all other accounts, storage, and media; and,

F.     Barbounis will take all steps to ensure that MEF Data is not disseminated or used by Barbounis or any other person.

SO ORDERED this _____ day of _____, 2020.


By:  _____
     United States District Court Judge

AGREED:


_____
*Counsel for Plaintiff The Middle East Forum*

_____

*Counsel for Defendant Lisa Reynolds-Barbounis*


_____

*Lisa Reynolds-Barbounis*

Case 2:19-cv-05030-JS   Document 44-1   Filed 03/19/20   Page 108 of 197

# Exhibit 15

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE MIDDLE EAST FORUM                    :
1650 Market Street, Suite 3600
Philadelphia, PA 19103,                  :

                                         :

       Plaintiff,                  :

                                         :

vs.                                      :    Civil Action No.: 2:19-cv-5697

                                         :

LISA REYNOLDS-BARBOUNIS                   :
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,                   :

                                          :

       Defendant.                  :

## ORDER FOR EXPEDITED DISCOVERY

It appearing to the Court that it is just and proper to do so and that good cause has been

shown, Plaintiff's Motion for Expedited Discovery ("Plaintiff's Motion") shall be, and hereby is,

ORDERED as follows:

1. On or before 5:00 PM EST on Thursday, January 16, 2020, Defendant shall verify

under oath her answers to Plaintiff's First Set of Interrogatories and Request for Production of

Documents and produce all remaining responsive documents and things to Plaintiffs, including,

but not limited to, the voice recordings. With respect to documents and other tangible things that

are responsive to the requests, Defendant shall deliver electronic copies to Plaintiff's counsel in a

format acceptable to Plaintiff's counsel and in a format which preserves and does not alter any and

all existing metadata.

2. Defendant shall immediately preserve all related documents and files, including all

metadata, and shall take steps to prevent the deletion, destruction, or loss of all information,

documents, and other hard copy and electronic materials related to the claims raised in the

Complaint, including, but not limited to: (a) information, documents, and tangible things that are responsive to the discovery requests attached as Exhibit A to Plaintiff's Motion, (b) information, documents, and other tangible things, including email communications and other electronic data, stored on Defendant's computer hard drives, USB drives, and external hard drives, as well as the hard drives themselves, and (c) any other information, documents, or tangible things that are either relevant to the claims made in the Complaint or that may lead to the discovery of admissible evidence.

3.      On or before 5:00 PM EST Friday, January 17, 2020, Defendant shall supply to the discovery vendor Cornerstone Discovery ("Cornerstone") (attention Lou Cinquanto) all electronic devise(s), including, but not limited to, cellular telephones (including, but not limited to, the three devices depicted in her social media post dated on or around November 27, 2019), all laptops and computers (including the Microsoft Surface that was depicted in her social media post dated November 22, 2018), and any other devices, and any cloud-based storage accounts connected to those devices (including, but not limited to, iCloud accounts, Dropbox, WhatsApp backups, Telegram, Google Drive, Facebook, and Wickr).

4.      The parties shall share the cost equally for imaging (and obtaining all available metadata for): (i) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (ii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF

and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

5.    Cornerstone shall only exclude from its imaging of these devices the following: (1) emails, texts, and other communications to or from Seth Carson, Derek Smith Law Group (e-mail: seth@dereksmithlaw.com and phone: 484-678-2210 ), Mike Yoder (phone: 202-595-4504), Patrick Sandman (phone: 609-457-6029); (2) emails, texts, and other communications to or from Vasili Barbounis (phone: 215.439.1002), Jane Reynolds (phone: 856-287-1436), Greg Reynolds (267-761-8622),  David Reynolds (856-287-1602), and email addresses coming to or from a state.gov domain, except if such emails, texts, and other communications mention The Middle East Forum ("MEF") or its principals Daniel Pipes, Gregg Roman, or Marc Fink, and if a text message chain to or from Vasili Barbounis mentions such entity or individuals, the text chain for a 12 hour period before and after that time shall be captured; (3) emails, texts, and other communications with Randy Weber (email: randy@randyweber.org, phone: 281-744-7300, 281-480-8914), Ryan Costello (phone: 610-504-3296), Chara McMicheal, except if such emails, texts, and other communications mention The Middle East Forum ("MEF") or its principals Daniel Pipes, Gregg Roman, or Marc Fink, and if a text message chain to or from Randy Weber, Ryan Costello, and/or Chara McMicheal mentions such entity or individuals, the text chain for a 12 hour period before and after that time shall be captured.

6.    All images recovered by Cornerstone shall be jointly reviewed by Mr. Seth Carson and Ms. Martha Vázquez with a Cornerstone representative for relevance at a time mutually agreeable to both attorneys.

7.     All data, images, documents, and other information obtained from Barbounis' devices shall be subject to Attorney's Eyes Only.

8.     Cornerstone shall endeavor provide the data and information by Monday, January 20, 2020.


SO ORDERED this 15th day of January, 2020.



/s/ Juan R. Sánchez
United States District Court Judge Sanchez

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE MIDDLE EAST FORUM<br>1650 Market Street, Suite 3600<br>Philadelphia, PA 19103,<br><br>Plaintiff,<br><br>v.<br><br>LISA REYNOLDS-BARBOUNIS<br>2601 Pennsylvania Avenue, #1153<br>Philadelphia, PA 19130,<br><br>Defendant. | Civil Action No.: 19-5697 |

## <u>STIPULATED INJUNCTION ORDER</u>

AND NOW, on this _____ day of January, 2020, upon the motion for entry of this Stipulated Injunction Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.      MEF and Barbounis have stipulated and agreed to entry of this Injunction Order, and without a finding by the Court of law or fact other than as stated below.

2.      The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.      Venue lies properly with this Court.

4.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.      Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.     Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.      No security is required of any agency of the United States for issuance of a temporary restraining order.  Fed. R. Civ. P. 65(c).

10.      The entry of this Order is in the public interest.

## ORDER

IT IS THEREFORE ORDERED that:

A.      Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.      Barbounis return to MEF, on or before January 20, 2020, all documents and materials (hard copy and electronic) mentioning MEF and/or its donors, including such information in cloud storage (Dropbox, Google Drive, etc.), e-mail accounts, thumb drives, and other digital storage;

C.      Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel

for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

D.  Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

E.  Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.


SO ORDERED this ____ day of January, 2020.


By:  _____
United States District Court Judge




AGREED:


_____
*Counsel for Plaintiff The Middle East Forum*




_____
*Counsel for Defendant Lisa Reynolds-Barbounis*




_____
*Lisa Reynolds-Barbounis*

THE MIDDLE EAST FORUM
1650 Market Street, Suite 3600
Philadelphia, PA 19103,

               Plaintiff,

   v.

LISA REYNOLDS-BARBOUNIS
2601 Pennsylvania Avenue, #1153
Philadelphia, PA 19130,

               Defendant.

Civil Action No. _____

## STIPULATED TEMPORARY RESTRAINING ORDER

AND NOW, on this _____ day of November, 2019, upon the motion for entry of this Stipulated Temporary Restraining Order, filed jointly by Plaintiff The Middle East Forum ("MEF") and Defendant Lisa Reynolds-Barbounis ("Barbounis"), the Court finds that:

1.     MEF and Barbounis have stipulated and agreed to entry of this Temporary Restraining Order, and without a finding by the Court of law or fact other than as stated below.

2.     The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant.

3.     Venue lies properly with this Court.

4.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has engaged in, or likely to engage in, acts and practices that violate Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stats. § 5304(a) ("PUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) ("DTSA").

5.     Plaintiff MEF asserts that there is good cause to believe that Barbounis has

converted MEF's confidential information in breach of her Confidentiality & Non-Disclosure Agreement with MEF, which has caused and is causing irreparable harm to MEF.

6.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable harm will result from Barbounis' ongoing violations of PUTSA, DTSA, and her contractual obligations to MEF unless Barbounis is immediately restrained by an order of this Court.

7.     Plaintiff MEF asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for MEF will occur from the destruction of the converted confidential information and trade secrets unless Barbounis is immediately restrained and enjoined by Order of this Court.

8.     Plaintiff MEF asserts that good cause exists for ordering that Barbounis: (a) preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein; (b) immediately return to MEF through counsel all documents and materials (hard copy and electronic) belonging to MEF; (c) allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices; (d) identify under oath all persons

who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and (e) take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

9.     No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

10.    The entry of this Order is in the public interest.

## ORDER

IT IS THEREFORE ORDERED that:

A.     Barbounis preserve all documents and materials (hard copy and electronic) belonging to MEF and/or its donors until they can be imaged as set forth herein;

B.     Barbounis immediately return to MEF all documents and materials (hard copy and electronic) belonging to MEF and/or its donors;

C.     Barbounis allow her electronic devices, including computers and cellular phones, to be accessed by a mutually-selected computer forensics vendor, with the parties sharing such costs equally, for: (i) imaging (and obtaining all available metadata for) the documents and data belonging to MEF and/or its donors that were downloaded on the devices; (ii) restoring and imaging (and obtaining all available metadata for) all documents and data belonging to MEF and/or its donors that were deleted from the devices; and (iii) after complete sets of images are shared with counsel for both parties (who are to retain the imaged materials under strict confidence and may only use them for purposes of this litigation, after which they are to be deleted by counsel for Barbounis), permanently removing all documents and data belonging to MEF and/or its donors from the devices;

D.  Barbounis identify under oath all persons who may have received or had access to confidential documents and/or trade secrets belonging to MEF and/or its donors, the identity of the items shared, and approximate dates thereof; and

E.  Barbounis take diligent steps to ensure that confidential information and trade secrets belonging to MEF and/or its donors are not further disseminated or used by Barbounis or any other person.

SO ORDERED this ____ day of _____, 2019.

By:  _____
United States District Court Judge

AGREED:

_____
*Counsel for Plaintiff The Middle East Forum*

_____
*Counsel for Defendant Lisa Reynolds-Barbounis*

# Exhibit 16

**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Monday, February 24, 2020 6:15 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: Capsicum Engagement

The phones are billed a minimum of two (2) hours per device.  I misspoke and said that they would be $500 ($250/hr)  each, assuming there will be no issues with the devices.  The hourly rate for imaging a cellphone is actually $275/hr which will be a minimum of $550 per device. Upon the imaging, the searching and reporting will be billed at $275/ hr.  So the retainer will be applied against your final invoice.  Depending on your search terms/reporting I don't think it will be much more than the retainer.

I can give you a call if that'll be easier?

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Monday, February 24, 2020 5:29 PM
**To:** Alexi Michaels <amichaels@capsicumgroup.com>
**Subject:** Re: Capsicum Engagement

I appreciate the information.  I will have both phones by tomorrow morning.

Regarding the engagement letter, can I please clarify something?

The engagement letter makes it sound like the $1,000.00 is a deposit upon which you will bill the hourly rate.  When we spoke it sounded like you have a flat rate of $500.00 per device for the imaging.

Can you explain this?

If there is a flat rate, what services does that provide?  Is it just for the imaging, or does that also include providing the information imaged?

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

Case 2:19-cv-05905-JC    Document 44-1    Filed 03/19/20    Page 124 of 197

**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Monday, February 24, 2020 4:30 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: Capsicum Engagement

Hi Seth,

Please see attached for the letter of engagement. We will need a $1,00 retainer which you can pay by card or check. You can drop off the devices at our office anytime tomorrow (the earlier the better). I will be in at 9AM.

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

**From:** Alexi Michaels
**Sent:** Monday, February 24, 2020 3:04 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** Re: Capsicum Engagement

Got it!

Sent from my iPhone

> On Feb 24, 2020, at 3:01 PM, Seth Carson <seth@dereksmithlaw.com> wrote:
>
> I just sent it. Please let me know if it was received.
>
> Seth D. Carson, Esquire
> Derek Smith Law Group, PLLC
> 1835 Market Street
> Suite 2950
> Philadelphia, PA 19103
> Phone: 215.391.4790
> Facsimile: 215.893.5288
> Direct: 484.678.2210
> Email: Seth@DerekSmithLaw.com
>
> _____
>
> CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.
>
> _____

**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Monday, February 24, 2020 2:57 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** Capsicum Engagement

Hi Seth,

This is Lexi from Capsicum Group.  I did not get your email yet so I figured I'd email you.  I'm about to go into a meeting now so once I'm out I'll run the conflict check.

One question, who will be paying for the bill, Derek Smith or your client?

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wiley.law

# Exhibit 17

| | |
|---|---|
| **From:** | Barnes III, Attison |
| **Sent:** | Tuesday, March 10, 2020 9:24 AM |
| **To:** | Sidney Gold; Seth Carson |
| **Cc:** | Bill Rieser |
| **Subject:** | RE: MEF v Lisa Barbounis |

Seth -

I'm not sure why you did not get back to us last week when Sid reached out to meet with you to resolve these issues. We have search terms ready to go, but as we have informed you, they contain sensitive information (like private donor information), so we need some protection especially if the search terms are going to a third party with whom we have no relationship. As you know, we were ready in December to engage a mutually acceptable vendor to work with both of us and split the cost, but you selected a different path, putting us in this situation. If you can agree that those search terms are attorneys' eyes only (like you previously stated in your February 27 letter) until we can get a protective order entered, at least that process will move forward to avoid further delay. If after seeing the search terms you believe you need to share them with your client, we can work with you on a process (perhaps review in your office without obtaining a copy?) with appropriate restrictions (strict confidence, not to be discussed or disclosed except with counsel, and agreement that the information will remain protected), but that is why we have been trying to reach you to work something out in good faith.

And we are still concerned that you have only obtained the two phones, not all of the other devices, storage, and other accounts. Many months have now passed and with depositions next week, we are suffering prejudice. It seems we need to go to the Court on that issue, but can we at least agree on protecting the search terms to get those to your vendor for the phone searches? Please let us know as soon as possible, as we cannot wait for you any longer.

Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law
Wiley Rein LLP | 1776 K Street NW | Washington, DC 20006
o: 202.719.7385 | www.wiley.law

-----Original Message-----
From: Sidney Gold <sgold@discrimlaw.net>
Sent: Monday, March 9, 2020 8:47 PM
To: Seth Carson <seth@dereksmithlaw.com>
Cc: Barnes III, Attison <ABarnes@wiley.law>; Bill Rieser <brieser@discrimlaw.net>
Subject: MEF v Lisa Barbounis

Carson, On March 4 we sent you the proposed protective order which incorporated the terms which would accomplish everything required by the parties and to which MEF would agree. As of today you continue to stonewall every effort we have made to reach a resolution. Your objections to the standard language in a protective order is perplexing and stands in the way of getting anything done. We have also repeatedly asked you as to when you will be ready to provide search terms. We do not need a protective order to begin the search. We had agreed that the search terms would be for attorney's eyes only, however you have now changed your stance on this point and you now object to attorney's eyes only. We had agreed that both sides could review the search criteria with their respective clients. The only response we have received from you was to inform us that the vendor you retained to image your client's devices is

1

demanding $30,000. to conduct the imaging and that you want MEF to bear the expense. The customary fee for imaging is $10,000-$12,000.  You have prevented us from getting the searches done, which prevents us from getting the documents, which prevents us from having the materials for the preheating depositions. We need to hear from you no latter 10am tomorrow or we will seek judicial intervention. Sid.

Sent from my iPhone

# Exhibit 18

**LAW OFFICES OF**

# SIDNEY L. GOLD & ASSOCIATES

### A PROFESSIONAL CORPORATION

**1835 MARKET STREET, SUITE 515
PHILADELPHIA, PA 19103
(215) 569-1999   FAX (215) 569-3870**

SIDNEY L. GOLD ** ++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE *

* ALSO ADMITTED IN NEW JERSEY
** ALSO ADMITTED IN NEW YORK
++ ALSO ADMITTED IN DISTRICT OF COLUMBIA

March 11, 2020

The Honorable Juan R. Sánchez
United States District Court
for the Eastern District of Pennsylvania
601 Market St., Room 14613
Philadelphia, PA 19106-1797

RE:    **The Middle East Forum v. Lisa Reynolds-Barbounis, C.A. No.: 19-5697-JS**

Dear Judge Sánchez,

On behalf of Plaintiff The Middle East Forum ("MEF"), I write to seek prompt intervention by the Court because, despite this Court's prior direction, Defendant has: 1) failed to turn over all of her devices and accounts to a third-party vendor contrary to your February 19, 2020 Order; 2) refused to agree to standard terms in a protective order so that MEF could ensure confidentiality of its sensitive information and trade secrets; and 3) failed to work with MEF in good faith to resolve the ongoing discovery disputes. MEF has no choice but to ask this Court to intervene once again to address these critical issues and to ensure that Plaintiff is not further prejudiced in the depositions scheduled for next week and in the injunction hearing scheduled for April 8, 2020. As the Court will recall from prior hearings, Plaintiff has been seeking these materials from Defendant since December 5, 2019, and three months later, ***MEF has received no electronic data and metadata*** and apparently, Defendant failed to preserve the data (and its metadata) last Fall when these issues arose.

In light of Defendant's continuing delay and disregard for the Court's instructions, this is a matter of urgency. MEF has been and continues to be prejudiced by Defendant's actions, which are part of a larger pattern. As has been brought to your attention on prior occasions – Defendant's tactics prevent MEF from gaining access to her devices or to resolve issues without court intervention. Plaintiff believes there must be consequences for Defendant's behavior.

Plaintiff MEF has previously appeared before this Court seeking this same information, including on December 20, 2019,[1] and again on January 15, 2020. After Defendant still had not

---

[1] Defendant was first directed to turn over all of her devices to a third-party vendor during a telephonic conference on December 20, 2019. She did not do so. MEF has repeatedly offered to share the cost of imaging devices and execute

1

produced the data, on February 19, 2020, this Court unequivocally ordered Defendant to give "all electronic devices in her possession, custody, or control which currently have or have ever contained any of [MEF]'s documents or any documents referring to or relating to [MEF]'s documents" to a "third-party vendor" by February 25, 2020. Included in the Court's definition of devices were all cell phones, laptops, tablets, USB drives, or hard drives. In a good-faith effort to work together, counsel for Plaintiff had provided the name of a mutually-acceptable vendor to serve as a neutral third party for the imaging and search and had offered to split the cost with Defendant.

However, on February 25, 2020, Defendant abruptly, and without warning or consultation with MEF, unilaterally decided to send two cell phones to her "expert"[2] for imaging. Not only did Defendant not cooperate with Plaintiff, Defendant also: (1) did not compile all of her devices that have or may have once contained MEF information;[3] (2) did not consult MEF about the imaging instructions; (3) has refused to provide the instructions, if any, provided to her expert or even the process used by her expert for securing files and metadata; and (4) disclosed MEF's sensitive data to her expert without Plaintiff's permission and without an acknowledgement on a protective order. Given that this case involves Defendants' wrongful use of MEF's highly confidential and sensitive information, including trade secrets, MEF counsel immediately expressed serious concerns to defense counsel, who did nothing to alleviate the situation. In fact, when asked what defense counsel had done to preserve Defendant's data, he conceded that he only collected two phones (one on January 15, 2020, and one during the last week of February 2020) and that no devices, storage media, and accounts were preserved or protected from spoliation over the preceding five months since this dispute arose. Apparently, this data was left unprotected in the possession of the Defendant.

With regard to confidentiality, Defendant's counsel originally stated on February 26, 2020 that "[w]hatever you need to protect MEF interests is fine with me if you are talking about a protective order." MEF, endeavoring to move forward expeditiously, prepared a proposed protective order and a list of search terms. MEF made clear, however, that these terms contained, among other things, sensitive donor information that should be subject to a protective order entered by the Court, ensuring that the search terms would remain confidential and subject to Attorney's

---

stipulated orders that would resolve this dispute. The following letters demonstrating as much were submitted as exhibits to MEF's Reply in Support of its Motion for a Preliminary Injunction. *See* Reply in Further Support of Plaintiff's Motion for Preliminary Injunction, Dkt. 41, Exhibits 2-5.

[2] A party-retained expert, by definition, is not independent, nor is it "a third-party vendor" as Plaintiff interprets the Court's February 19, 2020 Order. Defense counsel informed MEF that she had in fact retained an expert (making the vendor no longer a "third-party") and that "it would not be appropriate for [MEF] to contact Defendant's expert." In addition, Defendant's concern that she would need to shoulder the cost her expert's fees is a situation of her own making; she chose to engage her own expert as opposed to work with MEF of a mutually-acceptable vendor for which the parties would split the cost.

[3] While Defendant continuously changes her story regarding the number of devices she has that would be covered under this order, in her latest submission to the court, she refers to "upwards of eighteen difference [sic] devices, accounts, [and] applications" that might be subject to imaging pursuant to the February 19, 2020 Order. Response in Opposition to Motion for Preliminary Injunction, Dkt. 39 at 11. MEF's inability to ascertain how many devices Defendant possesses has been a point of contention since the beginning of this matter, one that has still not been resolved as Defendant's representations to the Court and to MEF constantly change.

Eyes Only (to protect **both** the Defendant and MEF). Although the draft protective order contains standard protective order language, Defendant inexplicably refused to agree. Instead, Defendant changed course and suggested including one paragraph into an agreement that would allow the parties to deem documents "confidential" and that any documents marked as attorney's eyes only could also be shared with witness, experts, investigators, and more. This makes no sense in the context of this litigation. Courts within this jurisdiction routinely order multi-tiered protective orders when trade secrets are at stake. *C.A. Muer Corp. v. Big River Fish Co.*, No. Civ. A. 97-5402, 1998 WL 488007 (E.D. Pa. Aug. 10, 1998). A tiered protective order promotes efficiency, protects both parties from disclosure of trade secrets and private information, and effectively addresses the need to disclose documents with varying levels of sensitivity. Defendant offered no reason why she objected to the order proposed by MEF aside from "we do not need a 13 page document with three destinations [sic] and clauses about privileged documents and work product." But this is a trade secrets case that, as Defendant has repeatedly asserted, may also involve very personal information. Plaintiff's proposed protective order is attached as Attachment A.

Defendant also refuses to agree to a provision requiring third parties to comply with the protective order. This provision is not only standard, but essential – MEF cannot move forward in this litigation without a mechanism to protect itself in the case that a third-party, such as a witness or expert, comes into possession of confidential and trade secret material. Mere statements by opposing counsel that he will not disclose information or allow his experts to disclose information is simply not enough. As this Court knows, the absence of an enforcement mechanism would leave MEF at the mercy of any individual who comes into possession of its information during the pendency of this case. Indeed, it is nonsensical that Defendant would refuse to agree to such provisions, as Defendant has made it clear that she wants to protect her own privacy. Plaintiff can only conclude that Defendant's refusal to agree to a protective order is another delay tactic, one that is causing prejudice to MEF as depositions and the injunction hearing approach.

MEF attempted to meet-and-confer with Defendant on these issues. However, Defendant:

- Refused to work with MEF in good faith to select a mutually agreeable third-party vendor (despite MEF's repeated requests to do so since December 2019 and a court order), instead unilaterally engaging a vendor as an expert and refusing to work with MEF on instructions to provide that vendor;

- Engaged a vendor as an expert despite being ordered to turn over her devices to a third-party, a vendor who now has access to MEF's data without its consent or any obligation to protect said information;

- Turned over her devices that may contain highly sensitive MEF data and trade secrets without contacting MEF to determine how the vendor should process and protect that information, including executing a confidentiality agreement that MEF is able to enforce;

- Failed to turn over all of the devices that should have been produced pursuant to the February 19, 2020 court order; Defendant is in violation of that order; and

- Refused to agree to MEF's proposed protective order after stating that "[w]hatever you need to protect MEF interests is fine with me if you are talking about a protective order."

MEF's concern about spoliation continues to grow. As stated above, defense counsel did not collect and preserve the devices, much less the data and metadata on his client's devices, accounts, and storage media. Instead, defense counsel had apparently not investigated what devices and data existed by January 15, because in a Court hearing that day, defense counsel represented to the Court that Defendant had only one phone, but now concedes that she has at least three phones. Over the last five months, defense counsel never took possession of, or otherwise secured, at least one of those phones, as well as the iWatch, the remaining repositories of data, including all USB devices, cloud-based storage accounts (including, but not limited to, iCloud, Dropbox, and Google Drive), email accounts, and all messaging and social media accounts (including, but not limited to, Signal, WhatsApp, Telegram, and Facebook), as well as back-up for her husband's devices where we know MEF data resided (the Microsoft Surface shown in your client's Instagram post with an MEF document on the screen). Plaintiff informed Defendant on multiple occasions about these sources of data, and still they were not collected or preserved. In other words, Defendant did not take appropriate steps to ensure that evidence was not destroyed, deleted, or otherwise altered. Given that we now know Defendant already wiped one laptop computer during the time when her own counsel's preservation notice was in effect, defense counsel should have been on notice of the need to preserve all the data and devices.

MEF is livid about how Defendant has chosen to proceed, despite both instructions from the Court and repeated attempts by MEF to work together in good faith to conduct this discovery. Enough is enough. There must be consequences for Defendant's violations, including but not limited to contempt, prohibition of presenting a defense, and monetary sanctions. Even if Plaintiff were to receive Defendant's electronic data and metadata this week, it is unlikely that Plaintiff's counsel could sufficiently analyze the data and prepare for the pre-hearing depositions next week.

Respectfully,

*Sidney L. Gold, Esquire*

Sidney L. Gold

SLG/dd
Enclosure
cc:    Attison L. Barnes, III
       Seth Carson, Esquire

# Attachment A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

THE MIDDLE EAST FORUM,    :

    Plaintiff,     :

v.            :

LISA REYNOLDS-BARBOUNIS,   :

             Civil Action No.: 19-5697

    Defendant.    :  JURY TRIAL DEMANDED

            :

## STIPULATED CONFIDENTIALITY AGREEMENT AND [PROPOSED] PROTECTIVE ORDER

    To facilitate the production of Confidential Information through the discovery process in the above-captioned litigation (the "Litigation") and upon the Stipulation of the parties, the Court enters into the following Protective Order (the "Order" or "Protective Order") pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rule 5.1.5, and states as follows:

    1.  This Protective Order shall govern disclosure, use, and handling of all documents, electronically stored information, imaged materials, testimony, interrogatory answers, hearing transcripts, declarations, affidavits, reports, briefs, motions, and other information (other than information that is publicly known or available) disclosed in this Litigation ("Subject Discovery Material") and designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by a party or a third party. This Protective Order shall apply to and be binding upon any director, officer, employee, contractor, or agent of any of the parties to this litigation, as well as all outside counsel to the parties, including any attorney, paralegal, secretary, clerical staff person, or other person employed in any capacity by such outside counsel, or any agent or outside contractor of such outside counsel. This Protective Order shall also apply to any persons who sign an affirmation in the form of Addendum A, attached hereto.

2.      Subject Discovery Materials subject to this Protective Order shall not include (a) published advertising materials, and (b) materials that are known or available to the general public.  Subject Discovery Materials designated as "CONFIDENTIAL" may include financial documents, confidential research, and private employee data unknown to the public.  Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" may include highly confidential and sensitive information related to sensitive MEF donor names, donor contributions, and any other trade secret or sensitive activities that the producing party reasonably and in good faith believes is so highly sensitive that its disclosure could reasonably be expected to result in harm to the producing party.  Subject Discovery Materials designated as "CONFIDENTIAL – PFI" may include private financial information such as banking statements, tax returns and related documents, financial statements, cancelled checks, and similar items of a financial or identifying nature (*e.g.*, SSN, phone numbers).

3.      Subject Discovery Materials designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" are referred to herein as "Confidential Information" and the identification of Subject Discovery Materials with either of these designations is referred to herein as "Confidential Designation."

4.      Any party (including any third party not named in this Litigation) that produces Subject Discovery Material in this Litigation may make Confidential Designations for which the producing party believes in good faith that there is a right to confidential treatment under Rule 26(c) or Local Civil Rule 5 consistent with the designation level.

5.      The inadvertent production of Subject Discovery Materials containing Confidential Information which are not designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall not be deemed a waiver in whole or in part of a

claim for confidential treatment and shall be without prejudice to any claim that such Confidential Information should be designated as such.   In the event of the inadvertent production of Confidential Information that does not bear the appropriate designation, the producing party shall notify the receiving party in writing of the error and provide a revised copy of the document bearing the appropriate designation.   Upon receipt of such notice, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or, (iii) notify the producing party in writing that it will contest the producing party's claim that the document should be considered Confidential Information.

6.      Similarly, the inadvertent production of Subject Discovery Materials containing information that is protected from discovery by the attorney-client privilege, attorney work product doctrine, common interest doctrine, and/or any other applicable privilege or immunity shall not be deemed a waiver in whole or in part of a claim that such materials are subject to the applicable privilege(s) and/or protection(s). If the producing party provides notice to the receiving party that it considers a document it produced to contain or constitute material subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or (iii) notify the producing party in writing that it will contest the producing party's claim that the document is subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity.

7.      All information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" (and all copies, summaries, or quotations of such information) shall not be disclosed to the public or otherwise put into the public domain.

8.      Information designated as "ATTORNEY'S EYES ONLY" may be disclosed only to the following persons:

        a.      outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record, and in-house counsel for a party to the extent that in-house counsel is engaged in prosecution or defense of this Litigation;

        b.      experts or consultants engaged by counsel of record or a party to assist in this Litigation, provided that counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

9.      Information designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" may be disclosed only to the following persons:

a.   the Court, Court personnel, and stenographic and video reporters engaged in proceedings incident to this Litigation, as long as the information is requested to be placed under seal;

b.   outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record assigned to and necessary to assist such counsel in the preparation and trial of this Litigation; except that, outside counsel of a party may show materials designated as "CONFIDENTIAL – PFI" to a party on the conditions that such party may not retain or copy such materials or take notes concerning them;

c.   experts or consultants engaged by outside counsel of record to assist in this Litigation, provided that outside counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "CONFIDENTIAL" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

d.   any author, recipient, or producing party of such Subject Discovery Materials designated as "CONFIDENTIAL" including former employees or agents of the producing party, provided that, in the case of former

employees or agents of the producing party, such person signs an undertaking in the form of Addendum A hereto;

e.    any other person or entity whom the parties agree in writing may receive Subject Discovery Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" provided that such person signs an undertaking in the form of Addendum A hereto; and

10.    Neither CONFIDENTIAL, ATTORNEY'S EYES ONLY, nor CONFIDENTIAL – PFI information may be disclosed to spouses, family members, or friends of parties, unless the individual otherwise qualifies under this Order to review such material.

11.    Notwithstanding the foregoing, the restrictions on disclosure set forth in this Protective Order shall not:

a.    apply to information that was or becomes public knowledge not in violation of this Protective Order;

b.    restrict a designating party from using documents that it drafted or created in any way;

c.    prevent disclosure of any document to its original author or original recipient for purposes of a deposition or testimony, as long as the information remains protected under this Protective Order; or

d.    prevent modification of any designation as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" on written consent of the producing party without further decision of the Court.

12.    All Subject Discovery Material shall be identified and disclosed to the designating party's counsel before it is disclosed to a consulting or testifying expert who may be a competitor

of the Producing Party and before it is used in any deposition, hearing, or trial.

13.     Any party may at any time challenge the designation of Subject Discovery Material as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" and contend that certain Subject Discovery Material is not entitled to be treated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or that disclosure should be permitted in some manner not otherwise authorized herein.   Such a challenge shall be made by notifying the designating party in writing.   The notice shall identify the information in question and shall specify in reasonable detail the reason or reasons for the objection.   If, after the parties confer regarding the informal challenge to the Confidential Designation, the challenging party still believes that the designation should be withdrawn or modified, that party shall file a motion to lift the confidentiality protection on those portions of the Subject Discovery Materials about which the parties disagree.   The parties shall cooperate to schedule a hearing on any such motion with reasonable promptness.   Subject Discovery Materials in dispute shall continue to be subject to the specific confidentiality designation noted thereon and as provided in this Protective Order unless and until the Court determines that the Subject Discovery Material is not entitled to confidentiality designation noted thereon or the designating party agrees in writing that the Subject Discovery Material is not entitled to the confidentiality designation noted thereon.   The fact that a party agrees to abide by the terms of this Protective Order, and receives information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" under it, shall not be deemed an admission by the receiving party that any information is correctly so designated.

14.     All documents produced during the course of the Litigation—including documents produced by non-parties in response to subpoenas—shall initially be treated as

"CONFIDENTIAL" according to the terms of this Protective Order for ten (10) business days after service of the initial production upon the receiving party. Thereafter, no designation of information as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall be effective unless a "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" label or notice is put on the Subject Discovery Material containing such information. Throughout the course of the Litigation, the parties shall have a good faith duty to promptly notify the opposing party upon receipt of any document in which the party believes should be marked with a Confidential Designation.

15.     Specific portions of testimony given at a deposition or other similar proceeding may be designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by an appropriate statement on the record at the deposition or by designation within thirty (30) days after receipt of the transcript of the deposition or similar proceeding. Counsel making a Confidential Designation with respect to testimony shall be responsible for instructing the court reporter to mark the designated portions of the testimony as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI."

16.     Confidential Information may be included with, or referred to in, papers filed with the Court where this Litigation is now pending only in accordance with the following procedures:

  a.  Confidential Information must be filed under seal. Counsel for all parties shall follow Local Civil Rule 5.1.5 and all applicable Orders and customs of the Court when filing Confidential Information under seal.

  b.  All papers filed with the Court, including but not limited to pleadings and memoranda of law, which include, in their entirety or in part, any Confidential

Information must be filed under seal in accordance with the terms and procedures set forth in this Order.  Counsel for the party filing papers with Confidential Information shall be responsible for appropriately designating the papers filed with the Court as having Confidential Information.  Such papers shall be subject to the terms of this Order.

17.     Redacted versions of papers with Confidential Information filed under seal may be filed with the Court in accordance with normal procedures and made publicly available provided that:

    a.   All Confidential Information set forth in the papers is irreversibly deleted or obscured; and

    b.   Redacted versions of the papers are clearly marked "Public Version Confidential Information Omitted." Redacted versions of the papers also must clearly identify each place where information or exhibits have been deleted.

18.     Nothing herein shall restrict in any way the ability of the parties to use material designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" during this Litigation, except that the parties will request that the Court preserve the confidentiality protections set forth in this Protective Order when such documents are submitted or otherwise used or referenced.

19.     Nothing in this Protective Order shall be construed as limiting or negating the right of any party hereto to bring a motion to compel discovery in this Litigation, or as limiting or negating the right of any party to object to any discovery such party otherwise believes in good faith to be improper, or as limiting or negating the right of any party to object on any ground to the introduction or use as evidence of any of the material covered by this Protective

Order.

20.     Nothing herein is intended to restrict the ability of counsel to use (in this Litigation and only as provided in this Protective Order) "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material in examining or cross-examining any witness, including any employee, future employee, agent, expert, or consultant of the producing party, or any person who authored, received, or is named a recipient of the "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material.

21.     In the event that any other parties are added or substituted into this Litigation, this Protective Order shall be binding on and inure to the benefit of such new parties.

22.     At the conclusion of the Litigation, including all appeals, documents containing or constituting information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI," and all copies or portions thereof, shall be returned to the producing party's counsel or counsel for the receiving party shall certify that all such copies or portions thereof that have not been returned have been destroyed.

23.     In the event a party receiving documents designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" is subpoenaed to testify or produce such documents, the subpoenaed party shall immediately notify the producing party who designated such documents as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" —in no event less than five (5) business days before the intended production—to allow the designating party an opportunity to challenge the subpoena and protect the Confidential Information.

24.     The Court retains jurisdiction to make amendments, modifications, and additions to this Protective Order.  Any party may apply to the Court for amendment or modification of or

addition to this Protective Order at any time for good cause.

25.     This Protective Order shall survive the final disposition of this Litigation.  After the conclusion of all proceedings herein, this Protective Order shall remain in full force and effect, and the Court shall retain jurisdiction to enforce its terms and to ensure compliance.

26.     Nothing in this Protective Order shall prejudice any party from seeking amendments hereto broadening or restricting the rights of access to or the use of material marked "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or otherwise seeking to modify this Order.  Any non-party to the Litigation who provides discovery material shall be entitled to avail itself of the provisions and protections of this Protective Order and, by doing so, assumes the duties and obligations imposed by this Protective Order.  Any such non-party desiring to avail itself of the provisions and protections of this Protective Order shall do so in writing addressed to counsel of record for all the parties to this Litigation.

The Parties, through their counsel of record in the Litigation, have reviewed and agree to the Protective Order set forth above, which they agree may be executed by their counsel of record in the Litigation in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement which shall be binding.


UPON THE STIPULATION OF THE PARTIES AND GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED.


DATED: March __, 2020

_____
Chief Judge Juan R. Sánchez
U.S. District Court Judge

STIPULATED TO AND AGREED BY:

Dated:  March __, 2020                    THE MIDDLE EAST FORUM
                                          By counsel


                                          s/_____
                                          Sidney L. Gold
                                          sgold@discrimlaw.net
                                          Sidney L. Gold & Associates P.C.
                                          1835 Market Street, Suite 515
                                          Philadelphia, PA 19103
                                          Tel: (215) 569-1999
                                          Fax: (215) 569-3870

                                          Attison L. Barnes, III
                                          abarnes@wiley.law
                                          1776 K Street NW
                                          Washington, DC 20006
                                          Tel: (202) 719-7000
                                          Fax: (202) 719-7049


Dated:  March __, 2020                    LISA REYNOLDS-BARBOUNIS
                                          By counsel


                                          s/_____
                                          Seth D. Carson
                                          seth@dereksmithlaw.com
                                          Sidney L. Gold & Associates P.C.
                                          1835 Market Street, Suite 2950
                                          Philadelphia, PA 19103
                                          Tel: (215) 391-4790

## ADDENDUM A

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print   or   type   full   name],   of
_____ [print or type full address], declare
under penalty of perjury that I have read in its entirety and understand the Stipulated Protective
Order (the "Protective Order") that was issued by the United States District Court for the Eastern
District of Pennsylvania in the case of *The Middle East Forum v. Lisa Reynolds-Barbounis*, U.S.
District Court for the Eastern District of Pennsylvania Civil Action Case No. 19-5697 (the
"Action").

I agree to comply with and to be bound by all the terms of the Protective Order, and I
understand and acknowledge that failure to so comply could expose me to sanctions and
punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner
any information or item that is subject to this Protective Order to any person or entity except in
strict compliance with the provisions of the Protective Order. Unless the Protective Order
specifically provides otherwise, within 60 days of any request to do so, after receiving notice of
the entry of orders, judgments or decrees finally disposing of the Action, I will return the
Confidential Information — including any copies, notes, summaries, excerpts, and compilations
made from it — or certify its destruction to the counsel who provided me with the Confidential
Information.

I further agree to submit to and consent to the jurisdiction of the United States District
Court for the District of Columbia for the purpose of enforcing the terms of the Protective Order,
even if such enforcement proceedings occur after termination of the Action.    Furthermore, I
have provided accurate information below about my address and telephone number, as well as
any agent for service of process, if any.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct. Executed this _____ day of _____, _____
at _____, _____.


_____                _____
Signature                                       Date

Address:                                         Telephone:

# Exhibit 19

**From:** Barnes III, Attison
**Sent:** Thursday, March 12, 2020 3:19 PM
**To:** Seth Carson; Sidney Gold
**Cc:** Bill Rieser
**Subject:** FW: MEF v Lisa Barbounis
**Attachments:** MEF v Barbounis Protective Order.docx

Seth –

I understood from our call last night that I was going to get confirmation from you this morning on the Protective Order so we could get that filed with the change to paragraph 13. It is now 3:00 p.m. Thursday afternoon, and this delay is affecting the plan we discussed last night for us to get the data and metadata from the two phones (responsive to the search terms) from the vendor tomorrow.

We still have an issue with the limited scope of what you provided the vendor and with the fact that you unilaterally selected this vendor as your expert, but I'm trying to mitigate the harm to my client with a reservation of rights. We have been waiting for this data for three months. As you know, we have not received a single electronic document in response to discovery requests we served on December 5.

Please confirm this afternoon that we can file the attached protective order, as I'd like to avoid further delay. Thanks.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Barnes III, Attison
**Sent:** Wednesday, March 11, 2020 8:54 PM
**To:** 'Seth Carson' <seth@dereksmithlaw.com>; 'Sidney Gold' <sgold@discrimlaw.net>
**Cc:** 'Bill Rieser' <brieser@discrimlaw.net>
**Subject:** RE: MEF v Lisa Barbounis

As a follow-up to our call a few minutes ago about the provisions of the protective order, I added the language you requested about the burden in paragraph 13 as a compromise to get this protective order finalized. See attached redline. Please confirm that this can now be finalized (by accepting the redlined edit) and filed. Thank you.

Assuming this protective order is entered tomorrow, we will provide the search terms to the vendor after it signs the protective order acknowledgement, and we agreed that the plan is to get the data/metadata from the vendor for production to me on Friday (3/13) This will at least get us the data and metadata accessible on the two phones (although we still need to address the other devices, storage, and accounts).

We also discussed the depositions scheduled for next week. We agreed that the Marnie Meyer deposition will proceed next Wednesday morning (3/18), and that Lisa Barbounis's deposition will proceed next Thursday morning (3/19). You stated that Ms. Yonchek would like to change the date and location of her deposition so that she can be deposed in Washington, DC. Also, you stated that you represent Mr. Barbounis, and would like to change the date of his deposition next week as well. I will accommodate these requests as long as you send me by 5:00 p.m. tomorrow available dates and times for the depositions of Ms. Yonchek and Mr. Barbounis between 3/17 and 3/20 next week, and as long as these dates/times are okay on our end.

Thank you.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o: 202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Barnes III, Attison
**Sent:** Wednesday, March 11, 2020 7:42 PM
**To:** 'Seth Carson' <seth@dereksmithlaw.com>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** RE: MEF v Lisa Barbounis

I'm calling your line. I can see by your questions below that you prefer not to address the actual issues.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o: 202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Wednesday, March 11, 2020 7:32 PM
**To:** Barnes III, Attison <ABarnes@wiley.law>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** Re: MEF v Lisa Barbounis

My letter to the Court is entirely accurate. It is also supported by the record. I don't even know how to respond when you suggest that you have been trying to meet and confer since December. We have met and conferred since December.

But what about yesterday? What held you up yesterday?

The protective order you sent is not standard.  I provided you with clear and concise reasons explaining Defendant's position.  The parties do not have to agree on ways to handle work produce to protect confidential information.

The parties don't need a protective order to begin searching for documents with the key words like "MEF".   Are you suggesting that the word "MEF" is sensitive confidential proprietary information?  How about Greg Roman, Daniel Pipes and the names of other employees?   Will they be search terms?  Are their names sensitive, proprietary, trade secrets?

I am asking you if we can begin searching devices today; right now in fact.  Let's start the process.  Let's end the delay.  I am available right now if you would like to discuss these issues.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

**From:** Barnes III, Attison <ABarnes@wiley.law>
**Sent:** Wednesday, March 11, 2020 7:22 PM
**To:** Seth Carson <seth@dereksmithlaw.com>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** RE: MEF v Lisa Barbounis

Seth –

We couldn't be more clear that the search terms contain sensitive information, such as donor information.  We need a protective order, and your objection to standard protective order provisions is holding up the process, which is why we have been trying to reach you for a week or more.  And equally as concerning, the other devices, storage, and accounts have not been collected as required by the court order.  Your delay has reached a critical level, especially with the depositions scheduled for next week.  We have been trying to meet-and-confer with you on these issues since December, and three months later, we have no electronic data and no metadata, and we learn that the devices, storage, and accounts were never preserved.

I don't know why you wouldn't talk to us today, when you appear to have had time to draft a letter to the Court.  Also, your letter to the Court does not accurately represent the situation.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Wednesday, March 11, 2020 7:00 PM
**To:** Barnes III, Attison <ABarnes@wiley.law>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** Re: MEF v Lisa Barbounis

Our offices are closed the rest of the week due to recent health concerns.  We are playing things safe and hopefully we will be back in next Monday.  Worst case the office could be closed a little longer than that.

I am working remotely but it's not the same so please work with me if I do not return an email right away.

I was under the impression that the parties has agreed to meet and confer.  I thought we had tentatively scheduled a call for yesterday afternoon.

If you would like to avoid further delay, you can provide the list of search terms to me anytime.  I assume that there are probably several search terms that will not implicate any issues such as:

1. MEF
2. Greg Roman
3. Daniel Pipes
4. Mark Fink

And so on...

Case 2:19-cv-08903-JS   Document 44-3   Filed 03/19/20   Page 153 of 197

Why don't you provide me with a list of search terms like which would allow the parties to continue moving forward?

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

**From:** Barnes III, Attison <ABarnes@wiley.law>
**Sent:** Wednesday, March 11, 2020 5:29 PM
**To:** Sidney Gold <sgold@discrimlaw.net>; Seth Carson <seth@dereksmithlaw.com>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** RE: MEF v Lisa Barbounis

Seth –

I did not hear back from you.  As I mentioned, we need to seek court intervention because we do not want more delay.

**wiley**
Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

_____

**From:** Barnes III, Attison
**Sent:** Wednesday, March 11, 2020 9:06 AM
**To:** 'Seth Carson' <seth@dereksmithlaw.com>; Sidney Gold <sgold@discrimlaw.net>

**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** RE: MEF v Lisa Barbounis

Seth –

We received that e-mail, then contacted you to discuss. We never heard back. Are you available to talk this morning, as we will need to seek court intervention right away on the protective order issue and the vendor imaging issues.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Tuesday, March 10, 2020 1:01 PM
**To:** Barnes III, Attison <ABarnes@wiley.law>; Sidney Gold <sgold@discrimlaw.net>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** Re: MEF v Lisa Barbounis

I did get back to you.  I sent you a long email along with a red-line version of the protective order.

Can you please confirm whether you received my email?

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

Case 2:19-cv-01541-PBT  Document 44-12  Filed 03/19/20  Page 155 of 197

---

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

---

**From:** Barnes III, Attison <ABarnes@wiley.law>
**Sent:** Tuesday, March 10, 2020 9:23 AM
**To:** Sidney Gold <sgold@discrimlaw.net>; Seth Carson <seth@dereksmithlaw.com>
**Cc:** Bill Rieser <brieser@discrimlaw.net>
**Subject:** RE: MEF v Lisa Barbounis


Seth -

I'm not sure why you did not get back to us last week when Sid reached out to meet with you to resolve these issues. We have search terms ready to go, but as we have informed you, they contain sensitive information (like private donor information), so we need some protection especially if the search terms are going to a third party with whom we have no relationship. As you know, we were ready in December to engage a mutually acceptable vendor to work with both of us and split the cost, but you selected a different path, putting us in this situation. If you can agree that those search terms are attorneys' eyes only (like you previously stated in your February 27 letter) until we can get a protective order entered, at least that process will move forward to avoid further delay. If after seeing the search terms you believe you need to share them with your client, we can work with you on a process (perhaps review in your office without obtaining a copy?) with appropriate restrictions (strict confidence, not to be discussed or disclosed except with counsel, and agreement that the information will remain protected), but that is why we have been trying to reach you to work something out in good faith.

And we are still concerned that you have only obtained the two phones, not all of the other devices, storage, and other accounts. Many months have now passed and with depositions next week, we are suffering prejudice. It seems we need to go to the Court on that issue, but can we at least agree on protecting the search terms to get those to your vendor for the phone searches? Please let us know as soon as possible, as we cannot wait for you any longer.


Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law
Wiley Rein LLP | 1776 K Street NW | Washington, DC 20006
o: 202.719.7385 | www.wiley.law

-----Original Message-----
From: Sidney Gold <sgold@discrimlaw.net>
Sent: Monday, March 9, 2020 8:47 PM
To: Seth Carson <seth@dereksmithlaw.com>
Cc: Barnes III, Attison <ABarnes@wiley.law>; Bill Rieser <brieser@discrimlaw.net>
Subject: MEF v Lisa Barbounis


Carson, On March 4 we sent you the proposed protective order which incorporated the terms which would accomplish everything required by the parties and to which MEF would agree. As of today you continue to stonewall every effort we have made to reach a resolution. Your objections to the standard language in a protective order is perplexing and stands in the way of getting anything done. We have also repeatedly asked you as to when you will be ready to provide search terms. We do not need a protective order to begin the search. We had agreed that the search terms would be for attorney's eyes only, however you have now changed your stance on this point and you now object to attorney's eyes only. We had agreed that both sides could review the search criteria with their respective clients. The only response we have received from you was to inform us that the vendor you retained to image your client's devices is demanding $30,000. to conduct the imaging and that you want MEF to bear the expense. The customary fee for imaging is $10,000-$12,000. You have prevented us from getting the searches done, which prevents us from getting the

documents, which prevents us from having the materials for the preheating depositions. We need to hear from you no latter 10am tomorrow or we will seek judicial intervention. Sid.

Sent from my iPhone

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to [Information@wiley.law](mailto:Information@wiley.law)

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to [Information@wiley.law](mailto:Information@wiley.law)

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to [Information@wiley.law](mailto:Information@wiley.law)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| Plaintiff, | : |
| v. | : |
| LISA REYNOLDS-BARBOUNIS, | : |
| | : Civil Action No.: 19-5697 |
| Defendant. | : JURY TRIAL DEMANDED |
| | : |

## STIPULATED CONFIDENTIALITY AGREEMENT
## AND [PROPOSED] PROTECTIVE ORDER

To facilitate the production of Confidential Information through the discovery process in the above-captioned litigation (the "Litigation") and upon the Stipulation of the parties, the Court enters into the following Protective Order (the "Order" or "Protective Order") pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rule 5.1.5, and states as follows:

1.      This Protective Order shall govern disclosure, use, and handling of all documents, electronically stored information, imaged materials, testimony, interrogatory answers, hearing transcripts, declarations, affidavits, reports, briefs, motions, and other information (other than information that is publicly known or available) disclosed in this Litigation ("Subject Discovery Material") and designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by a party or a third party.  This Protective Order shall apply to and be binding upon any director, officer, employee, contractor, or agent of any of the parties to this litigation, as well as all outside counsel to the parties, including any attorney, paralegal, secretary, clerical staff person, or other person employed in any capacity by such outside counsel, or any agent or outside contractor of such outside counsel. This Protective Order shall also apply to any persons who sign an affirmation in the form of Addendum A, attached hereto.

2.     Subject Discovery Materials subject to this Protective Order shall not include (a) published advertising materials, and (b) materials that are known or available to the general public.  Subject Discovery Materials designated as "CONFIDENTIAL" may include financial documents, confidential research, and private employee data unknown to the public.  Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" may include highly confidential and sensitive information related to sensitive MEF donor names, donor contributions, and any other trade secret or sensitive activities that the producing party reasonably and in good faith believes is so highly sensitive that its disclosure could reasonably be expected to result in harm to the producing party.  Subject Discovery Materials designated as "CONFIDENTIAL – PFI" may include private financial information such as banking statements, tax returns and related documents, financial statements, cancelled checks, and similar items of a financial or identifying nature (*e.g.*, SSN, phone numbers).

3.     Subject Discovery Materials designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" are referred to herein as "Confidential Information" and the identification of Subject Discovery Materials with either of these designations is referred to herein as "Confidential Designation."

4.     Any party (including any third party not named in this Litigation) that produces Subject Discovery Material in this Litigation may make Confidential Designations for which the producing party believes in good faith that there is a right to confidential treatment under Rule 26(c) or Local Civil Rule 5 consistent with the designation level.

5.     The inadvertent production of Subject Discovery Materials containing Confidential Information which are not designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall not be deemed a waiver in whole or in part of a

claim for confidential treatment and shall be without prejudice to any claim that such Confidential Information should be designated as such.  In the event of the inadvertent production of Confidential Information that does not bear the appropriate designation, the producing party shall notify the receiving party in writing of the error and provide a revised copy of the document bearing the appropriate designation.  Upon receipt of such notice, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or, (iii) notify the producing party in writing that it will contest the producing party's claim that the document should be considered Confidential Information.

6.     Similarly, the inadvertent production of Subject Discovery Materials containing information that is protected from discovery by the attorney-client privilege, attorney work product doctrine, common interest doctrine, and/or any other applicable privilege or immunity shall not be deemed a waiver in whole or in part of a claim that such materials are subject to the applicable privilege(s) and/or protection(s). If the producing party provides notice to the receiving party that it considers a document it produced to contain or constitute material subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or (iii) notify the producing party in writing that it will contest the producing party's claim that the document is subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity.

7.     All information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" (and all copies, summaries, or quotations of such information) shall not be disclosed to the public or otherwise put into the public domain.

8.     Information designated as "ATTORNEY'S EYES ONLY" may be disclosed only to the following persons:

     a.    outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record, and in-house counsel for a party to the extent that in-house counsel is engaged in prosecution or defense of this Litigation;

     b.    experts or consultants engaged by counsel of record or a party to assist in this Litigation, provided that counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

9.     Information designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" may be disclosed only to the following persons:

a.     the Court, Court personnel, and stenographic and video reporters engaged in proceedings incident to this Litigation, as long as the information is requested to be placed under seal;

b.     outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record assigned to and necessary to assist such counsel in the preparation and trial of this Litigation; except that, outside counsel of a party may show materials designated as "CONFIDENTIAL – PFI" to a party on the conditions that such party may not retain or copy such materials or take notes concerning them;

c.     experts or consultants engaged by outside counsel of record to assist in this Litigation, provided that outside counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "CONFIDENTIAL" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

d.     any author, recipient, or producing party of such Subject Discovery Materials designated as "CONFIDENTIAL" including former employees or agents of the producing party, provided that, in the case of former

employees or agents of the producing party, such person signs an undertaking in the form of Addendum A hereto;

e.   any other person or entity whom the parties agree in writing may receive Subject Discovery Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" provided that such person signs an undertaking in the form of Addendum A hereto; and

10.   Neither CONFIDENTIAL, ATTORNEY'S EYES ONLY, nor CONFIDENTIAL – PFI information may be disclosed to spouses, family members, or friends of parties, unless the individual otherwise qualifies under this Order to review such material.

11.   Notwithstanding the foregoing, the restrictions on disclosure set forth in this Protective Order shall not:

a.   apply to information that was or becomes public knowledge not in violation of this Protective Order;

b.   restrict a designating party from using documents that it drafted or created in any way;

c.   prevent disclosure of any document to its original author or original recipient for purposes of a deposition or testimony, as long as the information remains protected under this Protective Order; or

d.   prevent modification of any designation as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" on written consent of the producing party without further decision of the Court.

12.   All Subject Discovery Material shall be identified and disclosed to the designating party's counsel before it is disclosed to a consulting or testifying expert who may be a competitor

of the Producing Party and before it is used in any deposition, hearing, or trial.

13.     Any party may at any time challenge the designation of Subject Discovery Material as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" and contend that certain Subject Discovery Material is not entitled to be treated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or that disclosure should be permitted in some manner not otherwise authorized herein.  Such a challenge shall be made by notifying the designating party in writing.  The notice shall identify the information in question and shall specify in reasonable detail the reason or reasons for the objection.  If, after the parties confer regarding the informal challenge to the Confidential Designation, the challenging party still believes that the designation should be withdrawn or modified, that party shall file a motion to lift the confidentiality protection on those portions of the Subject Discovery Materials about which the parties disagree, and the designating party shall have the burden of justifying the designation.  The parties shall cooperate to schedule a hearing on any such motion with reasonable promptness.  Subject Discovery Materials in dispute shall continue to be subject to the specific confidentiality designation noted thereon and as provided in this Protective Order unless and until the Court determines that the Subject Discovery Material is not entitled to confidentiality designation noted thereon or the designating party agrees in writing that the Subject Discovery Material is not entitled to the confidentiality designation noted thereon.  The fact that a party agrees to abide by the terms of this Protective Order, and receives information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" under it, shall not be deemed an admission by the receiving party that any information is correctly so designated.

14.     All documents produced during the course of the Litigation—including documents produced by non-parties in response to subpoenas—shall initially be treated as "CONFIDENTIAL" according to the terms of this Protective Order for ten (10) business days after service of the initial production upon the receiving party.  Thereafter, no designation of information as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall be effective unless a "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" label or notice is put on the Subject Discovery Material containing such information.  Throughout the course of the Litigation, the parties shall have a good faith duty to promptly notify the opposing party upon receipt of any document in which the party believes should be marked with a Confidential Designation.

15.     Specific portions of testimony given at a deposition or other similar proceeding may be designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by an appropriate statement on the record at the deposition or by designation within thirty (30) days after receipt of the transcript of the deposition or similar proceeding.  Counsel making a Confidential Designation with respect to testimony shall be responsible for instructing the court reporter to mark the designated portions of the testimony as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI."

16.     Confidential Information may be included with, or referred to in, papers filed with the Court where this Litigation is now pending only in accordance with the following procedures:

  a.  Confidential Information must be filed under seal.  Counsel for all parties shall follow Local Civil Rule 5.1.5 and all applicable Orders and customs of the Court when filing Confidential Information under seal.

    b.  All papers filed with the Court, including but not limited to pleadings and memoranda of law, which include, in their entirety or in part, any Confidential Information must be filed under seal in accordance with the terms and procedures set forth in this Order.  Counsel for the party filing papers with Confidential Information shall be responsible for appropriately designating the papers filed with the Court as having Confidential Information.  Such papers shall be subject to the terms of this Order.

17.    Redacted versions of papers with Confidential Information filed under seal may be filed with the Court in accordance with normal procedures and made publicly available provided that:

    a.  All Confidential Information set forth in the papers is irreversibly deleted or obscured; and

    b.  Redacted versions of the papers are clearly marked "Public Version Confidential Information Omitted." Redacted versions of the papers also must clearly identify each place where information or exhibits have been deleted.

18.    Nothing herein shall restrict in any way the ability of the parties to use material designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" during this Litigation, except that the parties will request that the Court preserve the confidentiality protections set forth in this Protective Order when such documents are submitted or otherwise used or referenced.

19.    Nothing in this Protective Order shall be construed as limiting or negating the right of any party hereto to bring a motion to compel discovery in this Litigation, or as limiting or negating the right of any party to object to any discovery such party otherwise believes in

good faith to be improper, or as limiting or negating the right of any party to object on any ground to the introduction or use as evidence of any of the material covered by this Protective Order.

20.     Nothing herein is intended to restrict the ability of counsel to use (in this Litigation and only as provided in this Protective Order) "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material in examining or cross-examining any witness, including any employee, future employee, agent, expert, or consultant of the producing party, or any person who authored, received, or is named a recipient of the "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material.

21.     In the event that any other parties are added or substituted into this Litigation, this Protective Order shall be binding on and inure to the benefit of such new parties.

22.     At the conclusion of the Litigation, including all appeals, documents containing or constituting information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI," and all copies or portions thereof, shall be returned to the producing party's counsel or counsel for the receiving party shall certify that all such copies or portions thereof that have not been returned have been destroyed.

23.     In the event a party receiving documents designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" is subpoenaed to testify or produce such documents, the subpoenaed party shall immediately notify the producing party who designated such documents as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" —in no event less than five (5) business days before the intended production—to allow the designating party an opportunity to challenge the subpoena and protect the Confidential Information.

24.     The Court retains jurisdiction to make amendments, modifications, and additions to this Protective Order.  Any party may apply to the Court for amendment or modification of or addition to this Protective Order at any time for good cause.

25.     This Protective Order shall survive the final disposition of this Litigation.  After the conclusion of all proceedings herein, this Protective Order shall remain in full force and effect, and the Court shall retain jurisdiction to enforce its terms and to ensure compliance.

26.     Nothing in this Protective Order shall prejudice any party from seeking amendments hereto broadening or restricting the rights of access to or the use of material marked "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or otherwise seeking to modify this Order.  Any non-party to the Litigation who provides discovery material shall be entitled to avail itself of the provisions and protections of this Protective Order and, by doing so, assumes the duties and obligations imposed by this Protective Order.  Any such non-party desiring to avail itself of the provisions and protections of this Protective Order shall do so in writing addressed to counsel of record for all the parties to this Litigation.

The Parties, through their counsel of record in the Litigation, have reviewed and agree to the Protective Order set forth above, which they agree may be executed by their counsel of record in the Litigation in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement which shall be binding.

UPON THE STIPULATION OF THE PARTIES AND GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED.

DATED: March __, 2020          _____
                                                    Chief Judge Juan R. Sánchez
                                                    U.S. District Court Judge

STIPULATED TO AND AGREED BY:

Dated:  March __, 2020

THE MIDDLE EAST FORUM
By counsel


s/_____
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049


Dated:  March __, 2020

LISA REYNOLDS-BARBOUNIS
By counsel


s/_____
Seth D. Carson
seth@dereksmithlaw.com
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Tel: (215) 391-4790

## **ADDENDUM A**

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of
_____ [print or type full address], declare
under penalty of perjury that I have read in its entirety and understand the Stipulated Protective
Order (the "Protective Order") that was issued by the United States District Court for the Eastern
District of Pennsylvania in the case of *The Middle East Forum v. Lisa Reynolds-Barbounis*, U.S.
District Court for the Eastern District of Pennsylvania Civil Action Case No. 19-5697 (the
"Action").

I agree to comply with and to be bound by all the terms of the Protective Order, and I
understand and acknowledge that failure to so comply could expose me to sanctions and
punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner
any information or item that is subject to this Protective Order to any person or entity except in
strict compliance with the provisions of the Protective Order.   Unless the Protective Order
specifically provides otherwise, within 60 days of any request to do so, after receiving notice of
the entry of orders, judgments or decrees finally disposing of the Action, I will return the
Confidential Information — including any copies, notes, summaries, excerpts, and compilations
made from it — or certify its destruction to the counsel who provided me with the Confidential
Information.

I further agree to submit to and consent to the jurisdiction of the United States District
Court for the District of Columbia for the purpose of enforcing the terms of the Protective Order,
even if such enforcement proceedings occur after termination of the Action.   Furthermore, I
have provided accurate information below about my address and telephone number, as well as
any agent for service of process, if any.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.  Executed this _____ day of _____, _____
at _____, _____.


_____                    _____
Signature                                       Date

Address:                                        Telephone:

# Exhibit 20

**From:** Barnes III, Attison
**Sent:** Tuesday, March 17, 2020 1:46 PM
**To:** Seth Carson
**Cc:** Sidney Gold; Bill Rieser
**Subject:** FOR ATTORNEY'S AND CAPSICUM'S EYES ONLY - MEF Search Terms
**Attachments:** Search Terms .pdf

Seth –

Based on the commitments received from you and Capsicum this morning (regarding maintaining as "attorneys' eyes only" all search terms and all information on your client's devices, storage, and accounts), please see the attached search terms.

You will note that there are a few key general terms at the top of the list ("MEF" "Middle East Forum" etc.), but we also tried to be specific with names, e-mail addresses, document names, etc. so as to ensure that responsive data was captured and that it was captured in appropriate subsets.  In other words, Capsicum will have a record of what data is responsive to which specific search terms, and this should also speed up any review done by your firm (fewer false positives) on the specific categories.  Please have Capsicum retain a record of the number of hits for each term.  Please also have Capsicum keep a record of what devices, storage media, cloud and other accounts were searched because we will all need clarity for the Court on whether Defendant has complied with the Court Order.

Please send me a reply e-mail to me at the same time you send these search terms to Capsicum, so I know they have been sent.  I look forward to receipt of the data/metadata on Thursday in the format we previously agreed.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

# Exhibit 21

**From:**       Barnes III, Attison
**Sent:**       Wednesday, March 18, 2020 9:54 AM
**To:**         Seth Carson
**Cc:**         Sidney Gold; Briscoe, Adam
**Subject:**    RE: MEF v Lisa Barbounis

Please let me know as soon as you are available for a meet-and-confer call.  I would like to have the Capsicum representative on the phone to address these issues and to confirm what is being searched and how.  For example, you continue to be unclear on what will be searched in terms of cloud storage and the other accounts.  We'd also like some clarity on deleted files and metadata.

By the way, this should not hold up the searches and production with respect to the variations of MEF.  Please provide them on a rolling basis.

We would also like to discuss dates for the rescheduled depositions.

I look forward to your reply email on available times today for this call.



Attison L. Barnes, III
Attorney at Law
abarnes@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.7385
Download V-Card | wiley.law | Bio

Note: The firm's domain has changed to wiley.law. To update my contact information, please download my vCard

---

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Tuesday, March 17, 2020 5:14 PM
**To:** Barnes III, Attison <ABarnes@wiley.law>
**Subject:** Re: MEF v Lisa Barbounis

To follow up my previous email, where I notified you that the searching of the electronic devices WILL NOT be finished by Thursday of this week, after additional review, it is clear that the list of search terms is repetitive, and many of the search terms are not proportional to the needs of the case based on relevance or evidence they will lead to discoverable information.

In an effort to avoid the continued delay, Capsicum is going to begin searching Defendant's devices right away, however, the parties should meet and confer regarding the list of search terms presented.

The first five terms on the list are (1) Middle East Forum, (2) MEF, (3) Middle East, (4) Forum, and (5) MEForum.org.

25 out of the next 43 search terms on page 1 alone are words where one of these five terms is part of the phrase. Accordingly, there is absolutely no reason to increase the cost of searching by including the word "MEF" and another word. When we are already searching for the word "MEF" anything with the word "MEF" is going to hit positive.

Accordingly, page 25 out of 48 terms on page 1 are repetitive.

There are also search terms on this list that are absurd and do not belong on a list of search terms aimed as identifying discoverable information located in my client's electronic devices.

For example:

k.brady@americaninstituteforhistory.org.   My client has never sent an email to Caitriona Brady much l

There is a list of emails that are going to return nothing while substantially increasing the cost. I spoke with Lisa and she is fine with the list of emails and unrelated search terms, but she cannot afford the cost. If MEF wants to go on an expensive fishing expedition with keywords that have nothing to do with identifying discoverable information, MEF  has to agree to pay the cost for searching Defendants' devices based on 17 pages of keywords. Defendant will pay for the imaging. However, MEF should cover the cost of searching  based on 17 pages of keywords.

I expect to have more definitive information tomorrow morning regarding the time-frame for completing the searches and the cost to search based on 17 pages of keywords.

The reason I continue to identify the number of keywords based on pages and not the total number on the pages is because the 17 pages of keywords includes far more searches than the number of keywords listed. Every time a keyword ends with an exclamation point, you are asking that every derivation of that word be searched. Accordingly there are well over a thousand keywords proposed.

Seth D. Carson, Esquire

Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____
CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.
_____

---

**From:** Seth Carson
**Sent:** Tuesday, March 17, 2020 2:15 PM
**To:** Barnes III, Attison <ABarnes@wileyrein.com>
**Subject:** MEF v Lisa Barbounis

I just spoke to Capsicum. There is no way that the searching is going to be finished by Thursday. The most search terms they have ever received in any case was between 50 and 100. You sent 17 pages of search terms with about 50 search terms a page, which is close to one thousand search terms.

The searching has to be done manually. The cost of searching is hourly. Accordingly, I have asked Capsicum to provide an estimate for searching the number of terms provided and the number of devices and the time for finishing this endeavor. I will update you later today. I am notifying you now however that Capsicum cannot complete the searching of 17 pages of search terms by Thursday. After Capsicum completes the searching, you also have to account for the time it will me to review the information for relevance and privilege. The time it will take me will of course depend on the amount of information for which there is a positive match with search terms provided.

I still have to make a decision regarding the number of search terms, but I will wait for Capsicum to notify me of the time and cost involved. If the time and cost is restrictive (overly burdensome), the parties may have to revisit the number of search terms used in this case.

Get Outlook for iOS

# Exhibit 22

**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Wednesday, March 4, 2020 3:20 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: Capsicum Engagement

Hi Seth,

Thank you for paying the invoice!

Collection 20 phones, emails and cloud storage alone will be about 30,000... That is without the searching that will be done.

Just so you know, iCloud accounts are not accessible at this time.  No forensic tools can collect them because of two factor authentication.

Thank you,

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

**From:** Seth Carson <seth@dereksmithlaw.com>
**Sent:** Wednesday, March 4, 2020 2:16 AM
**To:** Alexi Michaels <amichaels@capsicumgroup.com>
**Subject:** Re: Capsicum Engagement

5

I paid the invoice for the imaging of the phones.  I attached the payment confirmation to this email.

I still need to get you search criteria.   It is coming.  I am going back and forth with opposing counsel trying to agree on a few things including the search terms.

In the interim, can I ask you to please provide me with some information...   The opposing party in this case with the two phones wants us to have like 20 phones, emails accounts, and cloud storage independently searched.  They want to independently image all twenty accounts and devices.  My argument is that a lot of the accounts are linked through the phones so they will be searching and paying for duplicative information.

If we have 20 accounts interdependently imaged and then we use the search terms to identify information that hits on those search terms and then I need the information provided to me in different formats with metadata and original cellebrite UFDR with full metadata, plus possibly PDF and excel formats:

What would this cost?  I am guess it could end us costing between $30k to $50k.  I am trying to make a cost benefit argument based on the practical consideration that we cannot afford this.  So I am trying to ascertain what it would cost - ballpark.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____


**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Wednesday, February 26, 2020 9:06 AM

**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: Capsicum Engagement

Hi Seth,

Just following up on the retainer

On the other hand.  I talked to Lisa last night, she was curious when her phones will be ready.  They were successfully imaged and I can ship them out this afternoon. She requested I send overnight.

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

---

**From:** Alexi Michaels
**Sent:** Tuesday, February 25, 2020 1:35 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: Capsicum Engagement

Hi Seth,

There is a 5% fee when making a credit card payment.  If you still want to go through with that then I will send your email address over to Lesley, who will send you a bill via PayPal and you can pay it with your credit card.  Let me know.

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

---

**From:** Alexi Michaels
**Sent:** Monday, February 24, 2020 6:28 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** Re: Capsicum Engagement

Of course! I'm available all morning.  So come by any time after 9. Please provide passcodes for the phones.

Sent from my iPhone

> On Feb 24, 2020, at 6:25 PM, Seth Carson <seth@dereksmithlaw.com> wrote:
>
> All that sounds good.  I do have a couple questions still about the process of how the information is provided to me once it is imaged.

7

Can we talk tomorrow morning?  I will be in early and I don't have any appointments.  So anytime you are available is good for me.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

_____

From: Alexi Michaels <amichaels@capsicumgroup.com>
Sent: Monday, February 24, 2020 6:15 PM
To: Seth Carson <seth@dereksmithlaw.com>
Subject: RE: Capsicum Engagement

The phones are billed a minimum of two (2) hours per device.  I misspoke and said that they would be $500 ($250/hr)  each, assuming there will be no issues with the devices.  The hourly rate for imaging a cellphone is actually $275/hr which will be a minimum of $550 per device. Upon the imaging, the searching and reporting will be billed at $275/ hr.  So the retainer will be applied against your final invoice.  Depending on your search terms/reporting I don't think it will be much more than the retainer.

Case 3:18-cv-02835-12  Document 47-1  Filed 03/18/30  Page 181 of 185

I can give you a call if that'll be easier?

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

I appreciate the information.  I will have both phones by tomorrow morning.

Regarding the engagement letter, can I please clarify something?

The engagement letter makes it sound like the $1,000.00 is a deposit upon which you will bill the hourly rate.  When we spoke it sounded like you have a flat rate of $500.00 per device for the imaging.

Can you explain this?

If there is a flat rate, what services does that provide?  Is it just for the imaging, or does that also include providing the information imaged?


Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

_____

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

Case 2:19-cv-05030-JS   Document 44-1   Filed 03/19/20   Page 182 of 197

**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Monday, February 24, 2020 4:30 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** RE: Capsicum Engagement

Hi Seth,

Please see attached for the letter of engagement.  We will need a $1,00 retainer which you can pay by card or check.  You can drop off the devices at our office anytime tomorrow (the earlier the better).  I will be in at 9AM.

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security

**From:** Alexi Michaels
**Sent:** Monday, February 24, 2020 3:04 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** Re: Capsicum Engagement

Got it!

Sent from my iPhone

On Feb 24, 2020, at 3:01 PM, Seth Carson <seth@dereksmithlaw.com> wrote:

I just sent it.  Please let me know if it was received.

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Facsimile: 215.893.5288
Direct: 484.678.2210
Email: Seth@DerekSmithLaw.com

Case 2:20-cv-02365-KSM   Document 18-1   Filed 03/13/20   Page 183 of 197

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

**From:** Alexi Michaels <amichaels@capsicumgroup.com>
**Sent:** Monday, February 24, 2020 2:57 PM
**To:** Seth Carson <seth@dereksmithlaw.com>
**Subject:** Capsicum Engagement

Hi Seth,

This is Lexi from Capsicum Group. I did not get your email yet so I figured I'd email you. I'm about to go into a meeting now so once I'm out I'll run the conflict check.

One question, who will be paying for the bill, Derek Smith or your client?

Thanks!

Alexi Michaels | Capsicum Group, LLC | Philadelphia
Phone: 215.222.3101 | Direct: 267.332.6578
Email: amichaels@capsicumgroup.com
www.capsicumgroup.com
Forensics | Investigations | Discovery | Cyber Security


NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wiley.law

# Exhibit 23

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

THE MIDDLE EAST FORUM,                          :

       Plaintiff,                               :

v.                                              :

LISA REYNOLDS-BARBOUNIS,                         :

       Defendant.                               :    Civil Action No.: 19-5697

                        :    JURY TRIAL DEMANDED

                        :

## <u>PROTECTIVE ORDER</u>

To facilitate the production of Confidential Information through the discovery process in the above-captioned litigation (the "Litigation"), the Court enters into the following Protective Order (the "Order" or "Protective Order") pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rule 5.1.5, and states as follows:

1.      This Protective Order shall govern disclosure, use, and handling of all documents, electronically stored information, imaged materials, testimony, interrogatory answers, hearing transcripts, declarations, affidavits, reports, briefs, motions, and other information (other than information that is publicly known or available) disclosed in this Litigation ("Subject Discovery Material") and designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by a party or a third party.  This Protective Order shall apply to and be binding upon any director, officer, employee, contractor, or agent of any of the parties to this litigation, as well as all outside counsel to the parties, including any attorney, paralegal, secretary, clerical staff person, or other person employed in any capacity by such outside counsel, or any agent or outside contractor of such outside counsel. This Protective Order shall also apply to any persons who sign an affirmation in the form of Addendum A, attached hereto.

2.      Subject Discovery Materials subject to this Protective Order shall not include (a) published advertising materials, and (b) materials that are known or available to the general public.  Subject Discovery Materials designated as "CONFIDENTIAL" may include financial documents, confidential research, and private employee data unknown to the public.  Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" may include highly confidential and sensitive information related to sensitive MEF donor names, donor contributions, and any other trade secret or sensitive activities that the producing party reasonably and in good faith believes is so highly sensitive that its disclosure could reasonably be expected to result in harm to the producing party.  Subject Discovery Materials designated as "CONFIDENTIAL – PFI" may include private financial information such as banking statements, tax returns and related documents, financial statements, cancelled checks, and similar items of a financial or identifying nature (*e.g.*, SSN, phone numbers).

3.      Subject Discovery Materials designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" are referred to herein as "Confidential Information" and the identification of Subject Discovery Materials with either of these designations is referred to herein as "Confidential Designation."

4.      Any party (including any third party not named in this Litigation) that produces Subject Discovery Material in this Litigation may make Confidential Designations for which the producing party believes in good faith that there is a right to confidential treatment under Rule 26(c) or Local Civil Rule 5 consistent with the designation level.

5.      The inadvertent production of Subject Discovery Materials containing Confidential Information which are not designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall not be deemed a waiver in whole or in part of a

claim for confidential treatment and shall be without prejudice to any claim that such Confidential Information should be designated as such.   In the event of the inadvertent production of Confidential Information that does not bear the appropriate designation, the producing party shall notify the receiving party in writing of the error and provide a revised copy of the document bearing the appropriate designation.  Upon receipt of such notice, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or, (iii) notify the producing party in writing that it will contest the producing party's claim that the document should be considered Confidential Information.

6.     Similarly, the inadvertent production of Subject Discovery Materials containing information that is protected from discovery by the attorney-client privilege, attorney work product doctrine, common interest doctrine, and/or any other applicable privilege or immunity shall not be deemed a waiver in whole or in part of a claim that such materials are subject to the applicable privilege(s) and/or protection(s). If the producing party provides notice to the receiving party that it considers a document it produced to contain or constitute material subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity, the receiving party shall (a) use reasonable efforts to retrieve any copies of the document, including those disseminated to third parties; and (b) either (i) return all copies of the documents in its possession to the producing party; (ii) notify the producing party that all copies of the document in its possession have been destroyed; or (iii) notify the producing party in writing that it will contest the producing party's claim that the document is subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity.

7.     All information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" (and all copies, summaries, or quotations of such information) shall not be disclosed to the public or otherwise put into the public domain.

8.     Information designated as "ATTORNEY'S EYES ONLY" may be disclosed only to the following persons:

     a.     outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record, and in-house counsel for a party to the extent that in-house counsel is engaged in prosecution or defense of this Litigation;

     b.     experts or consultants engaged by counsel of record or a party to assist in this Litigation, provided that counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "ATTORNEY'S EYES ONLY" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

9.     Information designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" may be disclosed only to the following persons:

a.   the Court, Court personnel, and stenographic and video reporters engaged in proceedings incident to this Litigation, as long as the information is requested to be placed under seal;

b.   outside counsel of record for a party, associates, legal assistants or regular employees of outside counsel of record assigned to and necessary to assist such counsel in the preparation and trial of this Litigation; except that, outside counsel of a party may show materials designated as "CONFIDENTIAL – PFI" to a party on the conditions that such party may not retain or copy such materials or take notes concerning them;

c.   experts or consultants engaged by outside counsel of record to assist in this Litigation, provided that outside counsel of record for that party determines in good faith that such disclosure is reasonably necessary for the prosecution or defense of this Litigation and further provided that such expert or consultant signs an undertaking in the form of Addendum A hereto prior to such disclosure; provided however, that no experts or consultants may receive or review Subject Discovery Materials designated as "CONFIDENTIAL" if such experts or consultants could be considered a competitor (or working with a competitor) of the designating party (unless the designating party consents in writing after advance notice);

d.   any author, recipient, or producing party of such Subject Discovery Materials designated as "CONFIDENTIAL" including former employees or agents of the producing party, provided that, in the case of former

employees or agents of the producing party, such person signs an undertaking in the form of Addendum A hereto;

e.   any other person or entity whom the parties agree in writing may receive Subject Discovery Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL – PFI" provided that such person signs an undertaking in the form of Addendum A hereto; and

10.   Neither CONFIDENTIAL, ATTORNEY'S EYES ONLY, nor CONFIDENTIAL – PFI information may be disclosed to spouses, family members, or friends of parties, unless the individual otherwise qualifies under this Order to review such material.

11.   Notwithstanding the foregoing, the restrictions on disclosure set forth in this Protective Order shall not:

a.   apply to information that was or becomes public knowledge not in violation of this Protective Order;

b.   restrict a designating party from using documents that it drafted or created in any way;

c.   prevent disclosure of any document to its original author or original recipient for purposes of a deposition or testimony, as long as the information remains protected under this Protective Order; or

d.   prevent modification of any designation as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" on written consent of the producing party without further decision of the Court.

12.   All Subject Discovery Material shall be identified and disclosed to the designating party's counsel before it is disclosed to a consulting or testifying expert who may be a competitor

of the Producing Party and before it is used in any deposition, hearing, or trial.

13.     Any party may at any time challenge the designation of Subject Discovery Material as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" and contend that certain Subject Discovery Material is not entitled to be treated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or that disclosure should be permitted in some manner not otherwise authorized herein.  Such a challenge shall be made by notifying the designating party in writing.  The notice shall identify the information in question and shall specify in reasonable detail the reason or reasons for the objection.  If, after the parties confer regarding the informal challenge to the Confidential Designation, the challenging party still believes that the designation should be withdrawn or modified, that party shall file a motion to lift the confidentiality protection on those portions of the Subject Discovery Materials about which the parties disagree, and the designating party shall have the burden of justifying the designation.  The parties shall cooperate to schedule a hearing on any such motion with reasonable promptness.  Subject Discovery Materials in dispute shall continue to be subject to the specific confidentiality designation noted thereon and as provided in this Protective Order unless and until the Court determines that the Subject Discovery Material is not entitled to confidentiality designation noted thereon or the designating party agrees in writing that the Subject Discovery Material is not entitled to the confidentiality designation noted thereon.  The fact that a party agrees to abide by the terms of this Protective Order, and receives information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" under it, shall not be deemed an admission by the receiving party that any information is correctly so designated.

14.     All documents produced during the course of the Litigation—including documents produced by non-parties in response to subpoenas—shall initially be treated as "CONFIDENTIAL" according to the terms of this Protective Order for ten (10) business days after service of the initial production upon the receiving party.  Thereafter, no designation of information as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" shall be effective unless a "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" label or notice is put on the Subject Discovery Material containing such information.  Throughout the course of the Litigation, the parties shall have a good faith duty to promptly notify the opposing party upon receipt of any document in which the party believes should be marked with a Confidential Designation.

15.     Specific portions of testimony given at a deposition or other similar proceeding may be designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" by an appropriate statement on the record at the deposition or by designation within thirty (30) days after receipt of the transcript of the deposition or similar proceeding.  Counsel making a Confidential Designation with respect to testimony shall be responsible for instructing the court reporter to mark the designated portions of the testimony as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI."

16.     Confidential Information may be included with, or referred to in, papers filed with the Court where this Litigation is now pending only in accordance with the following procedures:

a.   Confidential Information must be filed under seal.  Counsel for all parties shall follow Local Civil Rule 5.1.5 and all applicable Orders and customs of the Court when filing Confidential Information under seal.

      b.  All papers filed with the Court, including but not limited to pleadings and memoranda of law, which include, in their entirety or in part, any Confidential Information must be filed under seal in accordance with the terms and procedures set forth in this Order. Counsel for the party filing papers with Confidential Information shall be responsible for appropriately designating the papers filed with the Court as having Confidential Information. Such papers shall be subject to the terms of this Order.

17.    Redacted versions of papers with Confidential Information filed under seal may be filed with the Court in accordance with normal procedures and made publicly available provided that:

      a.  All Confidential Information set forth in the papers is irreversibly deleted or obscured; and

      b.  Redacted versions of the papers are clearly marked "Public Version Confidential Information Omitted." Redacted versions of the papers also must clearly identify each place where information or exhibits have been deleted.

18.    Nothing herein shall restrict in any way the ability of the parties to use material designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" during this Litigation, except that the parties will request that the Court preserve the confidentiality protections set forth in this Protective Order when such documents are submitted or otherwise used or referenced.

19.    Nothing in this Protective Order shall be construed as limiting or negating the right of any party hereto to bring a motion to compel discovery in this Litigation, or as limiting or negating the right of any party to object to any discovery such party otherwise believes in

good faith to be improper, or as limiting or negating the right of any party to object on any ground to the introduction or use as evidence of any of the material covered by this Protective Order.

20.      Nothing herein is intended to restrict the ability of counsel to use (in this Litigation and only as provided in this Protective Order) "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material in examining or cross-examining any witness, including any employee, future employee, agent, expert, or consultant of the producing party, or any person who authored, received, or is named a recipient of the "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" material.

21.      In the event that any other parties are added or substituted into this Litigation, this Protective Order shall be binding on and inure to the benefit of such new parties.

22.      At the conclusion of the Litigation, including all appeals, documents containing or constituting information designated as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI," and all copies or portions thereof, shall be returned to the producing party's counsel or counsel for the receiving party shall certify that all such copies or portions thereof that have not been returned have been destroyed.

23.      In the event a party receiving documents designated "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" is subpoenaed to testify or produce such documents, the subpoenaed party shall immediately notify the producing party who designated such documents as "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" —in no event less than five (5) business days before the intended production—to allow the designating party an opportunity to challenge the subpoena and protect the Confidential Information.

24.     The Court retains jurisdiction to make amendments, modifications, and additions to this Protective Order.  Any party may apply to the Court for amendment or modification of or addition to this Protective Order at any time for good cause.

25.     This Protective Order shall survive the final disposition of this Litigation.  After the conclusion of all proceedings herein, this Protective Order shall remain in full force and effect, and the Court shall retain jurisdiction to enforce its terms and to ensure compliance.

26.     Nothing in this Protective Order shall prejudice any party from seeking amendments hereto broadening or restricting the rights of access to or the use of material marked "CONFIDENTIAL," "ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PFI" or otherwise seeking to modify this Order.  Any non-party to the Litigation who provides discovery material shall be entitled to avail itself of the provisions and protections of this Protective Order and, by doing so, assumes the duties and obligations imposed by this Protective Order.  Any such non-party desiring to avail itself of the provisions and protections of this Protective Order shall do so in writing addressed to counsel of record for all the parties to this Litigation.

The Parties, through their counsel of record in the Litigation, have reviewed and agree to the Protective Order set forth above, which they agree may be executed by their counsel of record in the Litigation in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement which shall be binding.


IT IS SO ORDERED.


DATED: March __, 2020                 _____
                                      Chief Judge Juan R. Sánchez
                                      U.S. District Court Judge

## **ADDENDUM A**

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print   or   type   full   name],   of
_____ [print or type full address], declare
under penalty of perjury that I have read in its entirety and understand the Protective Order (the
"Protective Order") that was issued by the United States District Court for the Eastern District of
Pennsylvania in the case of *The Middle East Forum v. Lisa Reynolds-Barbounis*, U.S. District
Court for the Eastern District of Pennsylvania Civil Action Case No. 19-5697 (the "Action").

I agree to comply with and to be bound by all the terms of the Protective Order, and I
understand and acknowledge that failure to so comply could expose me to sanctions and
punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner
any information or item that is subject to this Protective Order to any person or entity except in
strict compliance with the provisions of the Protective Order.  Unless the Protective Order
specifically provides otherwise, within 60 days of any request to do so, after receiving notice of
the entry of orders, judgments or decrees finally disposing of the Action, I will return the
Confidential Information — including any copies, notes, summaries, excerpts, and compilations
made from it — or certify its destruction to the counsel who provided me with the Confidential
Information.

I further agree to submit to and consent to the jurisdiction of the United States District
Court for the District of Columbia for the purpose of enforcing the terms of the Protective Order,
even if such enforcement proceedings occur after termination of the Action.   Furthermore, I
have provided accurate information below about my address and telephone number, as well as
any agent for service of process, if any.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.  Executed this _____ day of _____, _____
at _____, _____.


_____                          _____
Signature                                          Date

Address:                                           Telephone: