UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| Plaintiff, | : |
| v. | : |
| LISA REYNOLDS-BARBOUNIS, | : Civil Action No.: 19-5697 |
| Defendant. | : JURY TRIAL DEMANDED |
| | : |

**PLAINTIFF'S SECOND MOTION FOR ENTRY OF A PROTECTIVE ORDER GOVERNING CONFIDENTIALITY**

Plaintiff The Middle East Forum ("MEF"), by counsel, files this Second Motion for a Protective Order and in support of this Motion submits the attached memorandum of points and authorities.

This trade secret and proprietary information misappropriation action necessarily involves the compiling, handling, review, and production of highly sensitive MEF materials during the discovery process and beyond. Despite multiple efforts by Plaintiff and this Court's Order dated March 23, 2020, Defendant failed to engage in good faith discussions on the Protective Order. For these and the other reasons set forth in the attached memorandum, the standard Protective Order prepared by MEF for this case involving sensitive proprietary information and trade secrets should be entered by this Court.

In addition, for the reasons stated in MEF's memorandum, MEF is entitled to an award of its attorneys' fees and costs associated with obtaining this Protective Order.

WHEREFORE, for the reasons set forth more fully in the accompanying Memorandum in Support of Plaintiff's Second Motion, MEF respectfully requests that this Court:

1. Enter the proposed protective order attached to MEF's memorandum as Exhibit 1;

2. Order that Defendant is in violation of the Court's Order to work with Plaintiff in good faith to execute a Protective Order;

3. Order that Defendant, within seven days after this Order, pay Plaintiff's reasonable attorneys' fees and costs incurred related to this Protective Order over the last month, including the cost of MEF's first motion for entry of a protective order; and

4. Grant such further relief as this Court deems just and proper.

Dated: March 27, 2020    THE MIDDLE EAST FORUM
By counsel

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 27, 2020, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

<div style="text-align: right;">

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

*Counsel for The Middle East Forum*

</div>

<div style="text-align:center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

</div>

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| Plaintiff, | : |
| v. | : |
| LISA REYNOLDS-BARBOUNIS, | : Civil Action No.: 19-5697 |
| Defendant. | : JURY TRIAL DEMANDED |
| | : |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR ENTRY OF A PROTECTIVE ORDER GOVERNING CONFIDENTIALITY**

Plaintiff The Middle East Forum ("MEF"), by counsel, files this Memorandum in Support of its Second[1] Motion for a Protective Order and states as follows:

**Relevant Background**

1. On December 5, 2019, MEF filed this action seeking to halt Defendant Lisa Barbounis's misuse and misappropriation of MEF's sensitive confidential information and trade secrets. With its Complaint, MEF filed a Motion for Preliminary Injunction and a Motion for Expedited Discovery.

2. As this action necessarily involves the compiling, handling, review, and production of highly sensitive MEF materials during the discovery process and beyond, MEF prepared a standard Protective Order for a case involving sensitive proprietary information and trade secrets and attempted to meet and confer with Defendant about its provisions.

---

[1] While this is MEF's second *formal* motion for entry of the Protective Order (*see* MEF Motion dated March 19, 2020 at Dkt. 44), MEF also submitted a letter to the Court on March 13, 2020 in an effort to address Defendant's refusal to agree to a standard Protective Order (*see* Ex. 18 to MEF's prior motion at Dkt. 44-1), so this is MEF's third attempt to secure a protective order in this matter.

3.     After forwarding the proposed Protective Order to Defendant on March 1, 2020, MEF emailed Defendant about the terms of the Protective Order and offered alternative ways to reach agreement. *See* Ex. 17 to MEF's prior motion at Dkt. 44-1. MEF received no reply from Defendant.

4.     On March 11, 2020, MEF again emailed Defendant about the Protective Order and, after receiving no response, sent a letter to Court seeking the Court's assistance. *See* Ex. 18 to MEF's prior motion at Dkt. 44-1.

5.     Still unable to reach agreement with Defendant (or even get Defendant to provide redline edits) by March 19, 2020, Plaintiff MEF filed its first motion for entry of the Protective Order (Dkt. 44).

6.     On March 23, this Court issued an Order that the parties should submit a joint proposed protective order by March 27, 2020, and that if the parties could not agree, they should submit their positions on the disputed provisions by March 27, 2020 (Dkt. 45).

7.     However, Defendant not only refuses to agree to a standard Protective Order, but Defendant has refused to engage with MEF or to provide redline comments on MEF's proposed Protective Order so that the parties could engage in a good faith negotiation about its terms as ordered by the Court. Indeed, in a meet-and-confer call requested by Plaintiff MEF on Monday, March 23, 2020, undersigned counsel again asked for defense counsel to provide redline comments to MEF's proposed Protective Order. While defense counsel promised to provide redline edits by 5:00 p.m. on Thursday, March 26, 2020,[2] MEF's counsel again received no response and no redline edits from Defendant.

---

[2] Defendant's commitment to provide redline edits by this date and time was confirmed in an e-mail within an hour after the meet-and-confer call on Monday. See Ex. 2. MEF had previously asked Defendant to provide redline edits to no avail.

8.      This is the same pattern of Defendant's failure to comply with her commitments over the last four months, and it is precisely why *MEF has not received a single piece of electronic data from Defendant's devices* that the Court previously directed (at a December 20, 2019 telephonic hearing) to produce on or before January 6, 2020.  MEF has learned that not only did Defendant not even provide her devices to her counsel until long after January 6, 2020, they were never preserved despite a preservation notice three months earlier.  The Court again directed Defendant to produce the electronic data and metadata from all of her devices by Order dated February 19, 2020.  *Still, six weeks after the Court's February 19 Order, MEF still has not received a single piece of electronic data from Defendant's devices*.

9.      Worse still, even though Defendant is well aware that the central issue in this case involves the protection of MEF's sensitive information, Defendant released her phones to her "expert" while not agreeing to MEF's standard Protective Order which would have required that non-party to sign an acknowledgement to be bound by the Protective Order.  This reckless behavior by the Defendant is precisely why MEF has been seeking a preliminary injunction against Defendant since December 5, 2019.

10.     Many excuses have been forthcoming from the Defendant, and they appear to be designed to prevent MEF from actually getting full and complete responses to "expedited" discovery requests MEF served on December 5, 2020.  Holding up the entry of a Protective Order is just a part of Defendant's delay.  As this Court is now aware, MEF has been forced to come to this Court multiple times to get Defendant to comply with routine discovery obligations, and this is MEF's third approach to the Court on the Protective Order alone.  Further demonstrating the Defendant's delay, since the Court ordered on February 19, 2020 that Defendant produce the

electronic data and metadata from all of her devices, apparently only one phone has been searched by the Defendant's vendor.[3]

11.     Despite the Court's March 20, 2020 Order that Defendant work with Plaintiff to try to reach agreement on a Protective Order, Defendant did not do so in violation of the Court's Order.

12.     Even after Plaintiff set up a meet-and-confer on Monday, again requested Defendant's redline edits, secured an agreement from Defendant to provide those edits, confirmed Defendant's agreement in writing,[4] and reminded Defendant of her obligations from that meet-and-confer call, Defendant still did not respond or provide the proposed edits.

13.     Therefore, frustrated that Defendant will not even agree to a standard Protective Order or follow through on negotiations as ordered by the Court, MEF is forced to once again seek assistance from the Court simply to move this case along over Defendant's constant roadblocks and inaction. Despite every effort by MEF to meet and confer with Defendant in good faith, and agree on a Protective Order, Defendant has refused to engage in good faith on the matter. As of the deadline to submit a joint Protective Order, Defendant has not given MEF any redline edits or otherwise responded on this issue after a meet-and-confer call four days ago, even

---

[3] Recall that since the December 20 hearing with the Court, Plaintiff's counsel requested that the parties engage a mutually-acceptable vendor to ensure an independent review of the Defendant's devices based on agreed instructions on imaging, searching, etc. Plaintiff refused and unilaterally selected a vendor, and despite making commitments on several occasions that a joint call could be scheduled with the vendor, Defendant never followed through (even after Plaintiff agreed to Defendant's new condition that Plaintiff pay the vendor's hourly rate for the call). It is yet another example of how Defendant does not follow through on her commitments.

[4] See confirming e-mail from undersigned counsel to Defendant's counsel at 4:53 p.m. on Monday, March 23, 2020 attached as Ex. 2. Indicative of Defendant's uncooperative behavior, Defendant did not follow through on any of the items contained in that confirming e-mail, now refuses to provide any available deposition dates for remote depositions over the next month as agreed, now refuses to set up a joint call with the discovery vendor as agreed, and failed to provide the promised sample of the vendor's spreadsheet as agreed so the parties could work cooperatively to resolve the document production issues or even share what materials were being searched and how. Defendant cannot unilaterally halt discovery, particularly when this Court clearly stated in its March 20, 2020 Order that "the parties are expected to make reasonable efforts to continue conducting any discovery that can be conducted remotely." Dkt. 45. Without repercussions for the Defendant, there is no accountability.

with further e-mail reminders by Plaintiff MEF about the commitments made by the Defendant during the meet-and-confer call on Monday, March 23, 2020. *See* follow-up e-mails from undersigned counsel after March 23, 2020, attached as Ex. 3.

14. The unnecessary attorneys' fees incurred by MEF over the last four months while trying desperately to get action by Defendant continue to escalate, and the attorneys' fees associated with this Protective Order are no exception.

## Argument

I. **This Court Should Enter MEF's Standard Protective Order Because Defendant Violated This Court's Order to Cooperate with Plaintiff in an Effort to Submit a Joint Motion for a Protective Order.**

As set forth above, Plaintiff MEF has attempted to work with Defendant to negotiate a joint Protective Order in this case. MEF has every incentive to do so, as it remains concerned about the sensitive information in Defendant's possession (including sensitive information Defendant concedes is still in her possession, as set forth in her verified interrogatory answers). MEF set up a meet-and-confer call on Monday afternoon, March 23, 2020, and in that call again asked Defendant to provide redline edits. Earlier that afternoon, this Court had entered an order directing the parties to try to submit a joint request for entry of a Protective Order.

During the call, defense counsel stated that he would need more time to provide redline edits, and committed to send them to undersigned counsel by 5:00 p.m. on Thursday, March 26, 2020. Even though this would leave little time for MEF to consider any additional[5] proposed edits

---

[5] During a prior meet-and-confer call between counsel on March 11, 2020, Defendant proposed one change to MEF's proposed order in paragraph 13 regarding the burden of proof if there were a dispute about a designation made by a party. MEF made that change, expecting that Defendant would now promptly execute the Stipulated Protective Order MEF had circulated. True to form, Defendant abruptly changed course again, and refused to agree even though MEF had made the one change requested by Defendant. The constant waffling by Defendant is tiresome and a waste of resources (e.g., Defendant agreed that sensitive MEF data could be treated as attorneys' eyes only then reneged, Defendant agreed to a mutually-acceptable vendor then reneged, Defendant agreed to enter into a stipulated injunction order then reneged, Defendant agreed to deposition dates then reneged, Defendant agreed to a joint call with the

from Defendant, MEF was willing to work Thursday evening to get this accomplished. Defendant, however, failed to honor he commitment to provide the redline edits by 5:00 p.m. on March 26, and indeed failed to comply with the Court's Order by cooperating in any way before the Court's deadline of March 27 for a joint filing. Therefore, MEF submits this submission without Defendant and attaches the standard Protective Order MEF prepared (which incorporates the prior change requested to paragraph 13 requested by Defendant).

In light of Defendant's failure to engage as directed by the Court, MEF's proposed Protective Order should be entered for this reason alone.

II. **This Court Should Enter MEF's Protective Order Because It Is a Standard Protective Order for Cases Involving Allegations of Sensitive Information and Is Nearly Identical to Protective Orders Routinely Entered by This Court.**

Even if this Court for some reason excuses Defendant's continuing disregard for her obligations in this case (which it should not), including violation of the Court Order to work with MEF to submit an agreed Protective Order, the Protective Order proposed by MEF is a standard order in this circumstance, and it is nearly identical to multiple other orders signed by this Court.

This case is about Defendant's wrongful misappropriation of trade secrets and theft of MEF confidential information. A multi-tiered protective order is necessary because, due to the very nature of the claims at issue, discovery into this dispute will involve confidential business information and MEF's trade secrets that cannot be shared with Defendant, or anyone else for that matter.

MEF prepared and circulated to defense counsel a Stipulated Protective Order that contained three layers of protection, to adequately protect both MEF's information and any private

---

discovery vendor then reneged, Defendant agreed to start producing documents months ago then reneged, Defendant agreed to provide a spreadsheet from the discovery vendor then reneged, etc.). This is not a courteous nor acceptable way to litigate a case.

information that Defendant may not want in the public record.[6] However, when presented with the draft Stipulated Protective Order in this case, Defendant's counsel rejected the draft Order and refused to engage meaningfully on any of its provisions, instead first suggesting the Parties agree to a hypothetical *one-paragraph document* not customary in this or any other district. Thereafter, Defendant made one suggested change to MEF's draft Protective Order which MEF made and sent back to Defendant for execution. When Defendant refused to even stipulate to that revised version, MEF had no choice but to seek relief from the Court to avoid any further delay.

As this Court will recognize from similar protective orders entered by this Court, MEF's proposed Protective Order protects the parties' interests in preserving confidential business information, personal financial information, and trade secrets in this case. It also prevents the waste of judicial and party resources that will be necessary to designate documents each time there is a dispute about the sensitivity of the matter contained therein.

MEF's claims necessarily require the entry of a multi-tiered protective order, including an "attorneys' eyes only" provision, to protect MEF's confidential information and trade secrets that will be discussed in discovery and throughout this case. These orders are routinely entered in cases such as this where highly sensitive information is at issue. To the extent that Defendant argues the proposed Protective Order is overbroad or shifts the burden inappropriately, that is a misunderstanding of the terms of the proposed Protective Order and the provisions are in line with similar protective orders that have been entered by this Court.

---

[6] At the January 15, 2020 court hearing, Defendant claimed that MEF was not entitled to certain discovery because of alleged private information on her devices. MEF is concerned that Defendant's previous privacy representation to the Court was merely a ruse to avoid discovery because Defendant now claims she does not want or need a protective order for her own materials. Regardless of whether this is true or not, it does not prevent MEF from having a standard Protective Order for its own sensitive materials.

Pursuant to Fed. R. Civ. 26(c)(1), upon motion by a party, the Court may issue a protective order, upon a showing of good cause, "to protect a party or person from . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Protective orders providing for multi-tiered confidentiality designations are common and regularly entered, particularly in cases involving intellectual property, trade secrets, or confidential business information. *See C.A. Muer Corp. v. Big River Fish Co.*, No. Civ. A. 97-5402, 1998 WL 488007 (E.D. Pa. Aug. 10, 1998). In fact, this Court routinely enters multi-tiered protective orders when there are trade secrets at issue. *See HMC Inc. v. Complete Bus. Sols.*, No. 2:19-cv-03285, Dkt. 34 (February 26, 2020) (entering a two-tiered protective order); *Gray Manuf. Co., Inc. v. Sefac S.A.*, No. 2:19-cv-00899, Dkt. 22 (August 30, 2019) (entering a multi-tiered protective order due to the highly sensitive nature of the documents that were relevant in the case); *Gillespie v. Loancare LLC*, No. 2:18-cv-05031, Dkt. 15 (May 9, 2019) (entering a two-tiered protective order).

MEF's proposed Protective Order, which includes an attorney's eyes-only designation, should be entered, because this case involves claims against Defendant for the theft of confidential information and MEF's trade secrets, including a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"). This litigation, therefore, necessarily implicates confidential information and trade secrets and will require the production of MEF's confidential or proprietary information and its trade secrets.

MEF's proposed order is consistent with the spirit and the letter of Rule 26(c). Rule 26(c) simply governs whether a court *may* enter a protective order and in what circumstances, including when such an order would save a party from embarrassment or an undue burden (two things Defendant has repeatedly raised as concern). There is no burden imposed by Rule 26(c). If there

is a dispute over whether a document is in fact confidential or properly designated, then the parties are free to raise those issues *pursuant to the procedures identified in the protective order.*

These types of provisions are normally included in protective orders as can be seen from recent protective orders entered by this Court. *See HMC Inc.*, No. 2:19-cv-03285 (providing for a procedure for dealing with inadvertent disclosures, procedures to challenge confidentiality designations, and asserting the protected designation); *White v. Bus. Info. Grp.*, No. 2:19-cv-03750, Dkt. 35 (January 16, 2020) (same); *Gray Manuf. Co., Inc.*, No. 2:19-cv-00899 (same); *Butler v. Penchishen*, No. 5:18-cv-05311, Dkt. 39 (June 27, 2019); Gillespie, No. 2:18-cv-05031 (same). Defendant has made no legitimate argument as to why the Parties should part from established practice in this Court.

### III.   This Court Should Award Attorneys' Fees and Costs to MEF for the Unnecessary Expenses over the Last Month Attempting to Secure a Standard Protective Order, Including the Filing of an Informal Letter and Two Formal Motions.

The filing of MEF's two motions for entry of a standard Protective Order should not have been necessary, and they are directly attributable to the failure of Defendant to cooperate and follow through on routine matters in litigation.

As this Court stated in its Order dated February 19, 2020, when it held off on awarding sanctions against Defendant in a prior Motion to Compel filed by MEF: "[a]lthough the Court is not ordering sanctions, the Court reminds both parties of their duty to honor their discovery obligations, including their obligations to preserve relevant materials and to obey court orders." Dkt. 38. Then, after MEF filed its first motion for entry of a Protective Order, the Court stated in its Order dated March 20, 2020 that "If Barbounis has not complied with this Order, the Court will seriously consider Middle East's request for costs and attorney's fees associated with its Emergency Motion." Dkt. 45. In other words, Defendant has been warned by the Court on

multiple occasions about the consequences of her actions, including the failure to comply with Court orders. ***Not only has Defendant not produced a single piece of electronic data from a single one of her devices over the last four months since Defendant first served four "expedited" document requests on December 5, Defendant will not even cooperate on the entry of a standard Protective Order after the Court ordered her to do so.***

Undoubtedly, Defendant will try to manufacture some excuses for her behavior in the same way that she has manufactured excuses for the past four months. Enough is enough, as MEF cannot be prejudiced any more. As demonstrated time and time again over the last four months, Defendant will only take action if there are serious consequences for her behavior.

## CONCLUSION

Therefore, for the foregoing reasons, MEF requests that the Court: (1) enter the proposed Protective Order, attached to the concurrently filed Motion as Exhibit A; (2) order that Defendant is in violation of the Court's Order to work with Plaintiff in good faith to execute a Protective Order; (3) order that Defendant pay Plaintiff's reasonable attorneys' fees and costs incurred related to this Protective Order over the last month, including the cost of MEF's first motion for entry of a protective order; and (4) grant such further relief as this Court deems just and proper.

Dated: March 27, 2020

THE MIDDLE EAST FORUM
By counsel

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 27, 2020, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

> s/ Sidney L. Gold
> Sidney L. Gold
> sgold@discrimlaw.net
> Sidney L. Gold & Associates P.C.
> 1835 Market Street, Suite 515
> Philadelphia, PA 19103
> Tel: (215) 569-1999
> Fax: (215) 569-3870
>
> *Counsel for The Middle East Forum*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No.: 2:19-cv-5697 |
| | : |
| LISA REYNOLDS-BARBOUNIS, | : |
| | |
| Defendant. | |

**ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR ENTRY OF A
PROTECTIVE ORDER GOVERNING CONFIDENTIALITY**

It appearing to the Court that it is just and proper to do so and that good cause has been shown, Plaintiff's Second Motion for Entry of a Protective Order Governing Confidentiality, it is therefore, for good cause shown:

1.      ORDERED that the Protective Order attached hereto as Exhibit 1 to MEF's Motion is just and appropriate, and it shall be entered by the Court simultaneously with this Order;

2.      ORDERED that Defendant is in violation of the Court's March 20, 2020 Order to work with Plaintiff in good faith to execute a Protective Order;

3.      ORDERED that Defendant, within seven days after this Order, will pay Plaintiff's reasonable attorneys' fees and costs incurred related to this Protective Order over the last month, including the cost of MEF's first motion for entry of a protective order; and

4.      ORDERED such further relief as this Court deems just and proper.

SO ORDERED this _____ day of _____, 2020.

_____
The Honorable Juan R. Sánchez
United States District Court