**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | NO.    2:19-cv-05697-JS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | MOTION FOR SANCTIONS |
| | : | |
| Defendant. | : | |
| | : | |

**RESPONSE TO PLAINTIFF'S SECOND**
**MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant hereby filed this Response to Plaintiff's Second Motion for Entry of a

Protective Order and request for attorneys fees and costs.

WHEREFORE, for the reasons set forth more fully in the accompanying Memorandum in

Response to Plaintiff's Second Motion, Defendant respectfully requests that this Court:

1.      Deny entry of Plaintiff's proposed protective order attached to Plaintiff's

Memorandum as Exhibit 1;

2.      Deny Plaintiff's request that Defendant, within seven days after its proposed

Order, pay Plaintiff's reasonable attorneys' fees and costs.

**DEREK SMITH LAW GROUP, PLLC**

By:      /s/ Seth D. Carson
Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED: March 31, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | NO.    2:19-cv-05697-JS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | MOTION FOR SANCTIONS |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM IN RESPONSE TO PLAINTIFF'S**
**SECOND MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant through counsel, files this Memorandum in Opposition to Plaintiff's Second

Motion for Entry of a Protective Order.


I.       **RELEVANT BACKGROUND**

Defendant will first respond to the willfully false and misleading information presented

by Plaintiff, The Middle East Forum ("MEF" or "Plaintiff") in Plaintiff's Relevant Background

section of the Plaintiff's Memorandum of Law.

Importantly, the record clearly demonstrates that Plaintiff and Defendant have been in

constant communication by email and telephone.  The parties have continued to trade emails and

have held at least three meet and confer sessions to date.  Plaintiff, MEF has provided Defendant

with two proposed Protective Orders; both of which improperly shifted the burden of the party

seeking protection to demonstrate the particular need for protection. Accord Cipollone v. Liggett

Grp., Inc., 785 F.2d 1108 (3d Cir. 1986). ("Burden of persuasion is on the party seeking

a protective order; to overcome the presumption, party seeking the protective order must show

2

good cause by demonstrating a particular need for protection; broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the test.").

The first Proposed Protective Order was sent by Plaintiff to Defendant by email March 1, 2020. A copy of the email is attached and marked Exhibit "A". Defendant responded on March 4, 2020 by emailing the Protective Order back to Plaintiff using track changes. Id. In this document Defendant notified Plaintiff of Defendant's objections to the proposed Protective Order. The parties then held a meet and confirm conversation by telephone where Plaintiff agreed to make necessary changes based on Defendant's objections raised in the March 4, 2020 track-changes word document and discussed during the ensuing meet and confer conference. Accordingly, March 9, 2020, Plaintiff sent a second version of the Protective Order to Defendant by email. A copy of the email is attached and marked Exhibit "B". This second proposed Protective Order did very little if nothing to address the concerns raised by Defendant. Nonetheless, Defendant confirmed receipt of the Second Protective Order by email March 10, 2020 informing Plaintiff that Defendant would review the second Protective Order and respond. Id. On March 13, 2020, Defendant responded to the second Proposed Protective Order with a detailed response outlining Defendant's objections to the second Proposed Protective Order. A copy of the email is attached and marked Exhibit "C". The objections Defendant raised to the second Proposed Protective Order included the following:

- Paragraph 1: the need to three designations of protected information. Defendant suggested that any confidential documents should be designated and treated accordingly.

- Paragraph 2: Defendant suggested that Plaintiff had not satisfied its burden of demonstrating the need for protected information and that the parties should

identify categories based on the Third Circuit holding in <u>Cipollone v. Liggett Grp., Inc.</u>, 785 F.2d 1108 (3d Cir. 1986).

- Paragraph 6: Defendant suggested that the Protective order does not have to extend to attorney client privileged documents and work product as there is well established doctrine in the Third Circuit and Eastern District of Pennsylvania pertaining to these matters.

- Paragraph 8: For documents designated as attorney's eyes only there was no provision allowing Defendant to present this information to the Court, deponents, and witnesses.

- Paragraph 9:  Defendant raised the concern that the protective Order would restrict Defendant's ability to present documents to parties in order to discuss the documents.

- Paragraph 11: Defendant suggested including language that specifically stated that nothing in the Protective Order should be interpreted to limit or restrict the parties ability to litigate the case.

- Paragraph 12: Defendant suggested the language could be stricken.

- Paragraph 13 and 14: Defendant strongly objected to Paragraph 13 and Paragraph 14.  Taken together, Paragraphs 13 and 14 of the second Proposed Protective Order makes the Order improper and violative of Rule 26(c) and well established Third Circuit caselaw.  Paragraph 14 requires that every document produced shall be treated as subject to the Protective Order.  This is the very definition of an improper protective order.  Paragraph 13 requires the party seeking to challenge protection to "specify in reasonable detail the reason or reasons for the objection."

If the parties cannot agree after discussion the objection, the party seeking to
challenge is required to file a motion to lift the protected status.  This is not the
process established by the Third Circuit.  See Id. ("After the documents delivered
under this umbrella order, the opposing party could indicate precisely which
documents it believed to be not confidential, and the movant would have the
burden of proof in justifying the protective order with respect to those documents.
The burden of proof would be at all times on the movant; ***only the burden of
raising the issue with respect to certain documents would shift to the other
party.***").  Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1122 (3d Cir. 1986).

These were the primary issues raised by Defendant in Defendant's March 13, 2020 email
to Plaintiff in response to the Second Proposed Protective Order.  Defendant provided notes
regarding the above using Microsoft Word Track Changes.

Paragraph 3, of the Relevant Background Section of Plaintiff, MEF's Second Motion for
Entry of a Protective Order (Document 46) states that Plaintiff sent a proposed Protective Order
March 1, 2020 and never received a reply. Exhibits A, B and C of this Response clearly indicate
otherwise.  The statement by Plaintiff to the Court in Plaintiff's Motion (Document 46)  is
willfully false and misleading, and unfortunately conforms with Plaintiff's ongoing improper
conduct throughout the litigation of this case.

Paragraph 4, Relevant Background Section of Plaintiff, MEF's Second Motion for Entry
of a Protective Order (Document 46) states that Plaintiff emailed Defendant March 11, 2020
about the proposed Protective Order and sent a letter to the Court after receiving no response.
Again, Plaintiff is willfully misleading the Court.  At this time, Defendant and Plaintiff were in

constant communication trading emails and telephone conversations regarding keywords and the Protective Order.  As Exhibit D, attached demonstrates the parties were in constant communication by emails almost every day from March 16, 2020.  A copy of the email thread is attached and marked Exhibit "D".  This is one of many email threads the parties maintained during this period.

Plaintiff states that the parties could not reach an agreement regarding the protective order.  This too is untrue.  The parties agreed, through emails communications to treat all documents as attorneys eyes only until the parties can resolve the issues surrounding the protective order and enter a stipulated Order.  A copy of the email thread confirming attorneys eyes only agreement is attached and marked Exhibit "E".

The parties have continued the discovery process based on the email agreement to treat all documents as attorney's eyes only. Id. The suggestion to continue discovery and treat all documents as attorney's eyes only until the parties could agree on the language for the Protective Order was made by counsel for Defendant, Lisa Barbounis.  Defense counsel made this suggestion because by March 15, 2020, Plaintiff, MEF had still not provided Defendant with the list of search terms so that Defendant could begin the search for Electrically Stored Information ("ESI") contained in Defendant's personal devices.  A copy of the email when search terms were provided is attached and marked Exhibit "F".

Defendant had complied with the February 19, 2020, Court Order and turned her devices over to a Third Party Vender (Capsicum) by February 25, 2020 for imaging.  The two devices were turned over to Capsicum February 25, 2020 and imaged immediately.  Defendant notified Plaintiff that the devices were turned over Capsicum February 25, 2020 and requested the list of keywords. A copy of the email thread is attached and marked Exhibit "G".

By March 15, 2020, Plaintiff still had no provided the keywords.  Accordingly, Defendant provided written assurance from both defense counsel and Capsicum that all keywords and ESI would be treated as attorneys eyes only from that point on. Exhibit E.  The parties have continued to engage in the discovery of ESI based on this agreement which was finalized March 17, 2020 after Capsicum signed the attorney's eyes only agreement. Id.

Accordingly, March 17, 2020 Plaintiff, MEF, for the first time since the devices were turned over for imaging February 25, 2020, provided Defendant, Lisa Barbounis with the list of search terms. Exhibit F. Amazingly, and still unsurprisingly, Plaintiff, MEF provided a seventeen page document containing thousands of search terms, most of which have no relation to the allegations upon which this case is based.  A list of keywords is not included as an exhibit because Plaintiff will object based on the attorney's eyes only agreement.  Nonetheless, the keywords certainly do not constitute trade secrets or information worthy of protection.  Upon receipt of the keywords, Capsicum informed counsel for Defendant, Lisa Barbounis that they have never worked on a case with anything more than approximately fifty (50) search terms.

This is relevant considering Paragraph 8, Relevant Background Section of Plaintiff, MEF's Second Motion for Entry of a Protective Order (Document 46), which states "*Still, six weeks after the Court's February 19 Order, MEF still has not received a single piece of electronic data from Defendant's devices*."  Plaintiff presents this misleading argument to the Court knowing well that Plaintiff did not produce the list of search terms until March 17, 2020.  Defendant received the list of search terms from Plaintiff at 1:46 P.M., March 17, 2020. Exhibit F.  Eight (8) minutes later, at 1:54 P.M., the list of search terms was turned over to Capsicum so that Capsicum could begin the herculean task of manually searching Defendant's devices based on the thousands of search terms provided. Id.  Capsicum spent the first week with the search terms testing different search methods in an effort to reduce time and cost.  This testing was only required because of the extreme

and unreasonable number of search terms provided by Plaintiff, MEF.  The searching of the two

devices was finished March 30, 2020.  Importantly, device number one yielded 30 GB of

information.  Device number two yielded 50 GB on information.  Almost all of the information is

false positives and does not meet the requirement for relevant information established by this Court

in the February 19, 2020 Order.  More importantly, the searched devices yielded hundreds of

thousands of false positives which makes the review of this information unduly burdensome.  Still

Defendant has in good faith continued her attempts to search her devices based on this unreasonable

criteria.  For Plaintiff to now suggest that Defendant is somehow responsible for the fact that ESI has

not yet been produced is absurd.  Defendant can provide the Court with a detailed record of

communications between Capsicum and counsel for Defendant to demonstrate that Defendant has

been earnest, diligent, and assiduous in her efforts to produce ESI pursuant to the Court's Order.

There has been absolutely no delay.  Since the search terms were provided, Capsicum has worked on

this case every day to continue its attempts to complete the search process.  But more importantly,

counsel for Defendant and Plaintiff have remained in contact during this period of time since the

search terms were provided until the present.  In consideration of these communications, Capsicum

had adjusted its search criteria and results to conform to requests made by Plaintiff and has produced

three batches of the similar but ever-increasing information; which each batch including additional

data requested by Plaintiff.  Again, the search of the first device was completed March 24, 2020.  The

search of the second device was completed March 30, 2020.  The two files are so large that

downloading is a difficult task.  Therefore, Capsicum sent an employee to their offices March 30,

2020 to copy the information manually onto a drive, which will be sent to Defendant by mail this

week.

   Next, Paragraph 9, Relevant Background Section of Plaintiff, MEF's Second Motion for

Entry of a Protective Order (Document 46)  presents another willfully false, misleading,

argument to the Court.  In Paragraph 9, Plaintiff writes that Defendant's devices were turned over to Capsicum without a Protective Order.  Notwithstanding that Defendant was under a Court Order to provide the devices by February 25, 2020.  Notwithstanding that Plaintiff sent an email to Defendant February 22, 2020 threatening to file a motion for sanctions if the devices were not turned over by February 25, 2020. Exhibit G. Importantly, this email for Plaintiff's counsel did not mention in any way requiring a protective order before the devices were turned over. Id. The reason why Plaintiff's argument in Paragraph 9 goes well beyond disingenuous and willfully attempts to mislead the Court, is that Capsicum has provided a signed document confirming that any and all information will be treated as attorneys eyes only.  Exhibit E. The parties made this agreement March 17, 2020 before the keywords were provided by Plaintiff. Id.

Defendant has no idea why Plaintiff continues its attempts to present willfully false, misleading information to the Court in an effort to penalize Defendant and Defendant's counsel. Defendant has not responded as is her right with a motion for attorney's fees and costs for continually responding to these false and misleading arguments. Defendant would suggest that Plaintiff's conduct is worthy of sanction.

II.      **ARGUMENT**

A. **MEF's Proposed Protective Order is not standard and violates Rule 26(c) and well established Third Circuit Caselaw.**

Plaintiff, MEF's proposed Protective Order violates Rule 26(c) and well established Third Circuit caselaw.  Defendant has raised these issues with Plaintiff multiple times using Microsoft Word Track Changes; on March 4, 2020 and again on March 13, 2020.  Plaintiff, MEF's motion seems to deny receiving these emails (which were just two among many emails on this issue) by stating that Defendant never responded to Plaintiff's proposed Protective Order. Clearly Plaintiff cannot deny receiving the first email as Plaintiff sent a second version of the

Protective Order to Defendant based on the objections raised to the first Proposed Protective

Order.  Defendant has repeatedly attempted to notify Plaintiff about the deficiencies in the

proposed Protective Orders.  Plaintiff has refused to cure these deficiencies.

While Defendant has raised several issues regarding the proposed Protective Order with

Plaintiff, there are two primary issues which made the proposed Protective Order invalid.

Paragraphs 13 and 14 together operate to shift the burden to the party challenging protected

status.  Paragraph 14 provides that all documents are presumed subject to the protective status.

> "All documents produced during the course of the Litigation—including
> documents produced by non-parties in response to subpoenas—shall initially be
> treated as "CONFIDENTIAL"…" ( Second Proposed Protective Order).

Paragraph 13 requires the party seeking to challenge protection to "specify in reasonable

detail the reason or reasons for the objection."  If the parties cannot agree after discussing the

objection, the party seeking to challenge is required to file a motion to lift the protected status.

This is not the process established by the Third Circuit.  See Id. ("After the documents delivered

under this umbrella order, the opposing party could indicate precisely which documents it

believed to be not confidential, and the movant would have the burden of proof in justifying

the protective order with respect to those documents. The burden of proof would be at all times

on the movant; ***only the burden of raising the issue with respect to certain documents would***

***shift to the other party.***").  Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1122 (3d Cir. 1986).

No protective order is valid if it deems every document subject to protection without any

demonstration made by the party seeking protected status.  Moreover, the party seeking the

challenge protected status should not have to provide a detailed statement or file a motion to lift

the protected status.  The party challenging protected status need only raise the issue and the

movant has the burden of proof in justifying the protective order with respect to those

documents. <u>Accord</u> <u>Id</u>.  Because Plaintiff has been unable to cure these defects, Defendant has

taken the liberty of drafting a protective order; even though Defendant does not seek the

protection of any documents at this time.   <u>A copy of Defendant's proposed protective order is</u>

<u>attached as Exhibit "H"</u>.

**B. This Court Should NOT Award Attorneys' Fees and Costs to MEF for purported Unnecessary Expenses over the Last Month Attempting to Secure a Standard Protective Order, Including the Filing of an Informal Letter and Two Formal Motions.**

Defendant reserves the right to file an opposition to Plaintiff's request for attorneys fees

and costs by the April 3, 2020 deadline provided by the Court.  Nonetheless, Defendant suggests

that Plaintiff is unnecessarily attempting to penalize Defendant for raising genuine objections to

an invalid protective order.  Defendant is under no obligation to agree to Plaintiff's proposed

Protective Order.  Defendant has remained in constant communication with Plaintiff and given

the circumstances, Defendant suggests that Plaintiff is unreasonably choosing to ignore the

limitations provided by the current healthcare crisis.  Defendant's law-firm, Derek Smith Law

Group, was one of the first firms to go on quarantine as it was believed at the time that in

individual infected by Covin-19 had been inside our Philadelphia offices.  Suddenly and without

warning, all Derek Smith Law Firm personnel were sent home without any files, computers, or

other resources.  This occurred the week of March 13, 2020 a week before the rest of the country

caught up.  I was not allowed back at our offices until a week later to box up my entire office and

move to my home.  I had to set up a home office.  I still don't have internet connection at my

home and have been working based on a hotspot.  Last Friday, March 27, 2020, my hotspot did

not work at all.  I have repeatedly asked that Plaintiff, MEF and specifically MEF's attorneys

have a little patience as I try to work through these issues.  My requests for patience and courtesy

have been met with threats and motions for sanctions.  In no way has Defendant delayed any

production of any information in this case by even one day more than was necessary.  I will

respond to Plaintiff's argument for attorneys' fees and costs more fully by April 3, 2020.

**DEREK SMITH LAW GROUP, PLLC**

By: _____/s Seth D. Carson_____
      Seth D. Carson, Esquire
      1835 Market Street, Suite 2950
      Philadelphia, Pennsylvania 19103
      Phone: 215.391.4790
      Email: seth@dereksmithlaw.com

DATED: March 31, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 20, 2020, a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Complaint was filed and served electronically through the Court's CM/ECF system.

Sidney L. Gold sgold@discrimlaw.rf  t
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA  19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for  The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

By:  _____/s/ Seth D. Carson_____
Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

<u>DATED: March 31, 2020</u>