**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

THE MIDDLE EAST FORUM,                    :

               Plaintiff,                    :

                               :

vs.                                        :

LISA REYNOLDS-BARBOUNIS,                    :     Civil Action No.: 2:19-cv-5697

             Defendant.                    :

                               :

## PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, ATTORNEYS' FEES, AND COSTS AGAINST DEFENDANT AND HER COUNSEL

Plaintiff The Middle East Forum ("Plaintiff" or "MEF"), by counsel, respectfully moves this Court for contempt, sanctions, as well as attorneys' fees and costs against Defendant Lisa Barbounis ("Defendant" or "Barbounis") and her counsel pursuant to Fed. R. Civ. P. 37(b)(2)(A) for spoliation of evidence, for filing a false and misleading declaration with this Court resulting in significant harm to Plaintiff, and for filing false pleadings with this Court.  In support of this Motion, Plaintiff submits the accompanying memorandum of points and authorities.

Based on its Motion and Memorandum, Plaintiff respectfully requests this Court enter an Order:

(i)     Finding Barbounis in civil contempt for willfully submitting false statements to avoid compliance with an order of this Court;

(ii)    Finding Barbounis in civil contempt for failing to comply with discovery orders of this Court;

(iii)   Finding that Barbounis spoliated evidence, then lied to the Court about it;

1

(iv)     Entering an adverse inference at any hearing or trial that what Barbounis spoliated from the computer is contrary to her position in this case;

(v)      Entering a default judgment on liability or at least that Barbounis' defenses are stricken for fraud on the Court;

(vi)     Finding that Defendant's counsel either participated in the fraud on the Court or at a minimum, recklessly submitted a false declaration of Barbounis unsupported by the documents in counsel's possession, and false pleadings over counsel's signature

(vii)    Requiring defense counsel to submit a sworn statement to the Court regarding: (1) whether counsel possessed the complete documentation described in the attached memorandum prior to submitting it to this Court; (2) whether counsel redacted or obscured material portions of documentation demonstrating the false statements in Barbounis's Declaration; and (3) whether counsel knew that an incomplete or partially obscured version of the documentation was submitted to the Court on which this Court was asked to rely;

(viii)   Ordering Barbounis and her counsel to pay MEF's those attorneys' fees and costs incurred by Plaintiff since January 15, 2020 that would not have been incurred but for the behavior described herein;

(ix)     Setting the matter for a determination of attorneys' fees and costs, as well as damages on a default judgment, if entered by the Court, for a date certain; and

(x)      Granting such other relief as this Court deems proper.

Dated: August 31, 2020

THE MIDDLE EAST FORUM
By counsel

s/ Sidney L. Gold

Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on August 31, 2020 a true and correct copy of the foregoing was

filed and served electronically through the Court's CM/ECF system.

s/ Sidney L. Gold
_____
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| LISA REYNOLDS-BARBOUNIS, | :   Civil Action No.: 2:19-cv-5697 |
| Defendant. | : |
| | : |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT,
SANCTIONS, ATTORNEYS' FEES, AND COSTS AGAINST DEFENDANT AND HER
COUNSEL**

Plaintiff The Middle East Forum ("Plaintiff" or "MEF"), by counsel, files this Memorandum in Support of its Motion for Contempt, Sanctions, Attorneys' Fees, and Costs against Defendant Lisa Barbounis ("Defendant" or "Barbounis") and her counsel,[1] and states as follows:

By this Motion, Plaintiff asks this Court to find Defendant Barbounis and her counsel in contempt for avoiding a Court order through false representations to the Court in multiple filings and documents, including a false declaration made under penalty of perjury, as well as failure to comply with multiple Court orders regarding discovery over the past eight months. Plaintiff also asks this Court to enter sanctions for spoliation of evidence despite a known duty to preserve evidence. Finally, this Court should award attorneys' fees and costs[2] to Plaintiff for the

---

[1] The law firm representing Barbounis is the Derek Smith Law Group, PLLC, and the pleadings have been signed by Seth Carson.

[2] This Court will recall that Plaintiff's prior Motion for Attorneys' Fees dated March 19, 2020, Dkt. 44, was held in abeyance by the Court in an Order dated March 20, 2020, Dkt. 45, while Defendant was continuing to violate her discovery obligations. In its March 20, 2020 Order, Dkt. 45, this Court also recognized that Defendant had not complied with the Court's February 19, 2020 Order, Dkt. 38, and stated: "Barbounis is already compelled to produce documents under that [February 19] Order. She must produce all relevant documents, including metadata, from all

1

unnecessary legal expenses that MEF has been forced to incur as a result of misrepresentations and fraud on this Court as well as violations of Court orders, foisting unnecessary fees and costs on Plaintiff.

## I.   **FACTS**

On December 3, 2019, MEF filed the present action against Barbounis for the misappropriation of corporate assets, including trade secrets and highly confidential business information. *See* Compl., *The Middle East Forum v. Reynolds-Barbounis*, No. 19-5697 (E.D. Pa. Dec. 3, 2019), Dkt. 1. Before filing the Complaint, Plaintiff attempted on multiple occasions to amicably resolve this matter with Defendant, and in good faith requested assurances that Defendant would return and not disclose the company's confidential information. Through her counsel, Barbounis refused, causing significant concern for MEF.

Unable to obtain the cooperation from Defendant, Plaintiff filed a Motion for Expedited Discovery on December 5, 2019, particularly in light of Defendant's representations through counsel that certain materials had been "erased." *See* Mot. for Expedited Disc. & Preservation of Evid., Dkt. 6. Through a Declaration made under oath and submitted to this Court, Mr. Carson later tried to claim that he never said Defendant had erased data from her laptop,[3] presumably in an effort to avoid scrutiny for spoliation as well as violation of a preservation notice that MEF had issued to all its employees on June 26, 2019. *See* Ex. F, Exhibit B – Declaration of Seth Carson,

---

electronic devices in her control. If Barbounis has not complied with this Order, the Court will seriously consider Middle East's request for costs and attorney's fees associated with its Emergency Motion." *See* Order Granting Mot. to Compel, Dkt. 45. Nine months after the service of Plaintiffs' "expedited" discovery requests on December 5, 2019, Defendant still has not fully complied, and even her partial compliance required months of effort by Plaintiff with the expenditure of significant, unnecessary fees and costs.

[3] In the January 15, 2020 hearing on MEF's first Motion to Compel, Mr. Carson represented to this Court "She's never erased, never destroyed, never moved, looked at, thought about any of the information in this case. Everything is today where it was when we'd spoke in December, and where it was when she left MEF." Jan. 15, 2020 Hr'g Tr. at 24:16-22 (attached as Ex. 4 to MEF's Opposition to Motion for Reconsideration, Dkt. 28). As discussed below, this representation by defense counsel came *after* Defendant had factory reset her computer on August 8, 2019 (which was after he was hired as her counsel), more than a month after her receipt of the June 26, 2019 preservation notice.

Dkt. 23 at ¶¶ 6-8; *see also* Ex. A, MEF Doc. Preservation Notice (June 26, 2019).  But we now know that Defendant did delete data from her laptop *after* MEF issued the preservation notice and that the deletion occurred during defense counsel's representation of Defendant.  The MEF preservation notice specifically states that MEF "reasonably anticipates legal action concerning administrative staff" and that Barbounis was "receiving this Notice because [Barbounis] may possess, manage or control hard-copy documents and/or ESI that relate to these issues and that must be preserved."  *Id.*  Further, the preservation noted that "compliance is mandatory," and that Barbounis was required to not "destroy, discard, alter, modify, or delete any paper documents or ESI that relate to the topics listed in Section II below and that were created, modified, sent, or received on or after June 1, 2016, including drafts, work papers, personal notes, emails (both sent and received), and other electronically stored documents.  This obligation applies both to existing documents and to documents that you may create or receive in the future."  *Id.*  At the time of the notice, employees were "obligated to keep these materials as-is.  You should not begin to segregate or collect relevant documents at this time as doing so may alter the documents' metadata."  *Id.*  Finally, Barbounis was instructed to contact Marc Fink, MEF's In-House Counsel, should she be "concerned that certain potentially relevant information may be deleted or destroyed in the ordinary course of business."  *Id.*

On December 19, 2019, this Court requested a telephonic conference on December 20, 2020, wherein it orally directed Defendant to respond to Plaintiff's five interrogatories, four document requests, and produce all electronic devices in her possession to a mutually agreed vendor for imaging by January 6, 2020.  *See* Order Scheduling Telephone Conference, Dkt. 12. By setting a deadline of January 6, 2020 for Defendant to comply, the Court anticipated that this would allow adequate time for Plaintiff to review the information in preparation for a preliminary

injunction hearing initially scheduled for January 27, 2020.  After the December 20 hearing, Plaintiff's counsel sent the name of a proposed vendor that Defendant could use for document imaging.  By January 6, 2020, Plaintiff had received no responsive information from Defendant, and Plaintiff subsequently learned that by this date Barbounis had not turned over the electronic devices in her possession to defense counsel as directed by the Court.

On January 7, 2020, after it was alerted that the Defendant had failed to comply with the Court's direction on December 20, 2019, the Court ordered an in-person hearing to address Defendant's failure to provide any responses to Plaintiff's interrogatories, document requests, or produce devices to be imaged in a timely manner.  *See* Order for In-Person Hr'g, Dkt. 19.  At around *11:00 p.m. EST on January 14, 2020, the night before the in-person hearing*, Defendant provided incomplete, unverified, and unsigned responses to Plaintiff's five interrogatories and four document requests, and the Defendant's devices had not been imaged, much less produced.

Defendant did not appear at the in-person hearing on January 15, 2020.  At the hearing, defense counsel represented to the Court that Defendant had only one phone (which was later proven to be untrue).  After arguments from both parties were presented, the Court instructed the parties to draft a mutually agreeable order in the courtroom that would set forth terms for the expedited discovery requested by MEF to be completed before the preliminary injunction hearing on January 27, 2020.  Although Defendant was not present at the hearing, counsel for Defendant made multiple calls with Defendant regarding the terms of the order, some in the presence of Plaintiff's counsel and others in the hallway of the courthouse.  After the parties negotiated an agreed order for approximately ninety (90) minutes, the parties agreed upon terms for the order, and the Court then signed and entered the order.

The terms of the order expressly required that "[o]n or before 5:00 PM EST on Thursday, January 16, 2020, Defendant shall verify under oath her answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents and produce all remaining responsive documents and things to Plaintiffs, including, but not limited to, the voice recordings." *See* Order for Expedited Disc. at 1, Dkt. 21.  The order additionally required that "[o]n or before 5:00 PM EST Friday, January 17, 2020, Defendant shall supply to the discovery vendor Cornerstone Discovery ("Cornerstone") (attention Lou Cinquanto) all electronic device(s) [sic], including, but not limited to, cellular telephones (including, but not limited to, the three devices depicted in her social media post dated on or around November 27, 2019), all laptops and computers (including the Microsoft Surface that was depicted in her social media post dated November 22, 2018), and any other devices, and any cloud-based storage accounts connected to those devices (including, but not limited to, iCloud accounts, Dropbox, WhatsApp backups, Telegram, Google Drive, Facebook, and Wickr)." *Id.* at 2.

Despite agreement to the Order, by January 16, 2020 at 5:00 PM EST, Plaintiff had not received any verified answers to Plaintiff's interrogatories or document requests.  Additionally, by January 17, 2020 at 5:00 PM EST, Cornerstone had not received any devices from Defendant or her counsel for imaging.  Thereafter, on January 20, 2020, Defendant reneged on the agreed order negotiated and signed by Court.  Defendant filed a Motion for Reconsideration, representing to the Court that she possessed certain "evidence" that she allegedly followed the direction of an MEF employee to factory reset her computer.  *See* Mot. for Recons., Dkt. 23.  Attached as an exhibit to Barbounis's Motion for Reconsideration was a signed declaration of Lisa Barbounis under penalty of perjury.  *See* Ex. A, Decl. of Lisa Reynolds-Barbounis, Dkt. 23-2.  In her signed declaration, Barbounis represents that she performed a factory reset of her laptop computer at the direction of

MEF's former Director of Finance and Operations, Marnie Meyer ("Ms. Meyer"). *See id.* ¶¶ 24, 25 ("*Marnie Meyer instructed me to return the device to its original condition* by resetting the device to its original factory settings….I followed *the instructions of MEF's CFO, Marnie Meyer,* and performed a factory reset and returned the Apple laptop to Marnie Meyer within a day or two of my last day working at MEF" (emphasis added)). The day after Defendant filed her Motion for Reconsideration, and before Plaintiff had an opportunity to respond, the Court vacated the January 15 Order. *See* Order Vacating Jan. 15 Order, Dkt. 26.

Plaintiff filed an Opposition but lacked any access to the Defendant's text messages (which were responsive to Plaintiff's discovery requests) or to the text messages of Ms. Meyer (then also a former employee of MEF). *See* Pl.'s Opp'n to Def.'s Mot. For Recons. of Agreed Order, Dkt. 28. In the Opposition, Plaintiff expressed concern about Defendant's spoliation and failure to preserve electronic data. *Id.* On February 3, 2020, Defendant filed a reply to Plaintiff's Opposition. *See* Def's Resp. to Pl.'s Opp'n to Def.'s Mot. for Recons., Dkt. 34. In a reply, Defendant represented again that Ms. Meyer had instructed Barbounis to factory reset the laptop "through a text message sent by The Middle East Forum's Chief Financial Officer and Director of Human Resources, Marnie Meyer." *Id.* at 10. Defendant attached as Exhibit C to its response a purported "true and accurate copy" of the August 13, 2019 text message exchange instructing Barbounis to factory reset her laptop. *Id.* Exhibit C purported to be a photograph of the text message chain (the "text messages") between Ms. Meyer and Lisa Barbounis. *See* Ex. C, Text Message Conversation (dated Aug. 13, 2019), Dkt. 34-3.

On February 19, 2020, the Court granted the Defendant's Motion for Reconsideration in part and issued a new order to replace the January 15 Order. *See* Order Granting Def.'s Mot. For Recons., Dkt. 38. At this time, and without access to Defendant's files, MEF (and presumably the

Court) did not know that the Declaration submitted by the Defendant in support of her Motion for Reconsideration was false.

For the six months following Defendant's Motion for Reconsideration, Defendant still resisted the production of responsive materials from her devices,[4] and unilaterally limited the devices to be imaged.  On June 25, 2020, after multiple Court interventions because of Defendant's failure to comply, the Court ordered Defendant to have the responsive documents transferred from Defendant's vendor to Cornerstone and for Cornerstone to complete production of the responsive information.  *See* Order to Transfer Disc. To Cornerstone, Dkt. 58.  Under the Order, Defendant was required to turn over the documents and relevant account information to Cornerstone by June 29, 2020.  *Id.* ¶¶ 1, 2.  Cornerstone did not receive the documents and information from Defendant's discovery vendor on June 29, 2020, as ordered by the Court.  Ultimately, Plaintiff did not receive the first set of responsive documents (from only two devices[5]) August 11, 2020 (eight months after the "expedited" discovery requests served on December 5, 2019), and is still receiving additional documents.

---

[4] To make matters worse, despite repeated requests from undersigned counsel, Defendant and her counsel have never in the last eight months preserved, much less produced data from, other devices covered by this Court's orders, including but not limited to an iWatch and a Lenovo computer that she does not deny still exist.  In other words, despite the discovery served by MEF on December 2, 2019 and this Court's direction at the December 20, 2019 telephonic hearing, Defendant and her counsel did nothing to preserve these two devices (and still have not).  In addition, after initially denying the existence of more than one phone in the January 15 hearing, Defendant's counsel did not collect the two phones from Defendant until mid to late January.  Of course, this is after Defendant had already deleted the entire contents of the laptop computer, spoliating all evidence thereon permanently so that it could never be recovered.  Undersigned counsel has asked Defendant's counsel to explain what was done to preserve the evidence on all of the devices, when it was done, and by whom, but the requests are ignored by Mr. Carson.  Moreover, at the January 15 Motion to Compel hearing, Mr. Carson stated "[s]o, I never took any image of the laptop" even though he commenced his legal representation of Defendant at least a month before the laptop was permanently spoliated by a factory reset on August 8, 2019.  Jan. 15, 2020 Hr'g Tr. at 24:4-7 (attached as Ex. 4 to MEF's Opposition to Motion for Reconsideration, Dkt. 28).

[5] Plaintiff is still concerned about Defendant's failure to comply with her discovery obligations and with the Court's Orders because she has only turned over two phones to the vendor and no other devices.  Even though images of two phones were finally turned over to Cornerstone, Defendant still has not provided access to certain applications and accounts on those phones, including Telegram, Signal, Proton mail, Wickr, and Facebook as required by paragraph 2of the Court's June 25 Order, Dkt. 58 and paragraph 3 of the Court's February 19 Order, Dkt. 38.

Plaintiff also subpoenaed MEF's former employee, Ms. Meyer, to produce relevant documents on May 21, 2020.  *See* Ex. B Marnie Meyer Notice of Intent to Serve Subpoena to Produc. Docs (May 21, 2020).  Ms. Meyer is represented by counsel who now works at the same law firm as Defendant's counsel.  Months later, Ms. Meyer, through counsel, produced several documents—though she has yet to make a complete production—that revealed a complete, unobscured version of the text messages from August 13, 2019 about Ms. Meyer's supposed "instruction" to Defendant about factory resetting the computer.  *See* Ex. C, Trade Secrets Unobscured Text Conversation Produced June 15, 2020.  Recall that Barbounis claims that she received an alleged "instruction" by text from Ms. Meyer on August 13, 2019 to factory reset and therefore destroy the contents of her laptop.  *See id.*  In the unobscured text message conversation produced by Ms. Meyer, it conclusively shows that Barbounis did not perform the factory reset at Ms. Meyer's instruction as she has represented to this Court.  In the August 13, 2019 text chain, Meyer first stated at 11:05 a.m.: "Did you unhook all if [sic] your personal shit?  Maybe we should google how to return it to factory settings?"  *Id.*  **One minute later** at 11:06 a.m., Barbounis replied "I did it already!"  *Id.*  Thus, the true content of the text messages shockingly discloses that the information Defendant and/or her counsel obscured from the text chain in its February 3, 2020 response filing directly contradicts the Defendant's sworn Declaration submitted to this Court, her counsel's representations to this Court, and her pleadings in this case.  Indeed, the unobscured text messages reveal that Defendant was the one who factory reset her computer at some point **before** the date of the text exchange on which Defendant tries to rely to escape responsibility for spoliation of evidence.

To save Defendant from making a specious argument that she performed the factory reset between 11:05 a.m. (when she received the text from Ms. Meyer) and 11:06 a.m. (when she sent

her response "I did it already!"), Plaintiff engaged e-discovery vendor Contact to analyze the

laptop returned to MEF by Barbounis to determine the date of the factory reset.  Based on Contact's

analysis, Contact concluded that:

> The EIN 10553-E0002 forensic image was analyzed with BlackLight and
> RECON Lab. The analysis determined:
> - The MacBook Pro with Serial # FVFXQ5KKHV27 had a Mac OS
>   installation of August 8, 2019 at approximately 2:00 – 2:30 PM UTC.
> - The MacOS installation deleted a previously installed APFS
>   "Macintosh HD" prior to the reinstallation of macOS Mojave.
> - No user-generated profiles were created on the MacBook Pro.
> - No log files were present on the MacBook Pro prior to August 8, 2019
>   2:00 PM UTC.
>
> The results of this analysis suggest a factory reset was performed on the device.

Ex. E, Contact Forensic Mem. (Aug. 28, 2020) at 5.  In other words, Contact confirmed that

Defendant's factory reset of the computer permanently deleted all data so that it is unrecoverable,

so that this Court, the jury, and MEF will never know the extent of the evidence against her and

what evidence she was trying to hide from scrutiny.

Therefore, Barbounis factory reset the laptop between 10:00-10:30 p.m. on August 8, 2019,

***five days before the text exchange with Ms. Meyer***.  Therefore, Defendant's representation to this

Court in her February 3, 2020 Reply brief that Ms. Meyer had instructed Barbounis to factory reset

the laptop "through a text message sent by The Middle East Forum's Chief Financial Officer and

Director of Human Resources, Marnie Meyer" and relying on (and attaching the obscured August

13, 2019 text chain) was demonstrably false and intended to mislead the Court.  As we now know,

Barbounis had already performed the factory reset five days before the text chain with Ms. Meyer.

As a result of this spoliation, the material destroyed (which was admittedly on a computer

Barbounis used for her MEF work purposes) can never be recovered.

As of August 2019, Defendant (and her counsel) were aware of a Document Preservation

Notice issued by MEF to all its employees on June 26, 2019, while Barbounis was still employed

with MEF, that prevented Defendant and other MEF employees from destroying evidence.  *See* Ex. A, MEF Preservation Notice of June 26, 2019.  Despite this duty, after Defendant left MEF in August 2019, she took it upon herself to destroy all the contents of her laptop by doing a factory reset of the device on August 8, 2019.  To conceal this spoliation of evidence, Defendant and her counsel submitted an obscured image of Defendant's text messages with Ms. Meyer, a false Declaration, and false pleadings.[6]

Because the Court vacated the January 15 Order, Defendant incurred significant, unnecessary expenses in an effort to obtain the discovery previously ordered by the Court in its January 15 Order.  Those expenses include: briefing the motion for reconsideration; briefing MEF's first motion for contempt, default, and sanctions; briefing MEF's motion to compel; briefing MEF's motion for a protective order; numerous calls and emails with counsel, the Court, and multiple discovery vendors; as well as multiple hearings with the Court.

MEF previously filed a Motion to Compel and for an Award of Attorney's Fees and Costs. *See* Pl.'s Mot. to Compel & for an Award of Att'y's Fees & Costs Against Def., Dkts. 44, 50, 51. At that time and unaware of what additional discovery obligations Defendant would violate, the Court held in abeyance any award of attorneys' fees against Defendant.  *See* Order, Dkt. 55. Accordingly, and in light of these new developments, MEF now requests grant of its requests for sanctions, after which MEF, with the Court's permission, will submit a declaration detailing all of MEF's fees and expenses unnecessarily incurred as a result of the offending conduct.

Defendant has engaged in egregious violations of Court orders, spoliation of evidence, and submitting to the Court false pleadings as well as false declarations signed under penalty of perjury.

---

[6] While it is unclear whether Defendant's counsel was involved in the decision to spoliate evidence, it is clear that defense counsel was involved in concealing the spoliation by submitting an obscured image of the text exhibit, submitting a false declaration of the Defendant, and submitting false pleadings.

To remedy this conduct and to prevent further travesties of justice, the conduct by Defendant and her counsel should not be tolerated by this Court.  Accordingly, the most serious sanctions are warranted.

## II.  <u>ARGUMENT</u>

### A. The Court should find that Barbounis spoliated evidence, as confirmed by her own admission in the (now unobscured) text messages with Ms. Meyer.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 110 (E.D. Pa. 2010) (citation and internal quotations omitted).  A party's failure to produce a document can also amount to spoliation.  *See Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) ("Indeed, a party's failure to produce a document can have the same practical effect as destroying it . . . .").  Evidence can be deemed spoliated when four factors are present: "(a) the evidence was in the party's control, (b) the evidence is relevant to the claims or defenses in the case, (c) there has been actual suppression or withholding of evidence, and (d) the duty to preserve the evidence was reasonably foreseeable to the party."  *First Sr. Fin. Grp. LLC v. Watchdog*, No. 12-CV-1247, 2014 WL 1327584, at *4 (E.D. Pa. Apr. 3, 2014) (citing *Bull*, 665 F.3d at 73).  The Court should determine that all four factors are present here.

### 1.  <u>Barbounis's MEF laptop and personal cell phone were under her control.</u>

***First***, Barbounis's MEF laptop and the text messages were clearly within Barbounis's exclusive, physical, and legal control when they were altered or deleted.  Courts consider whether an alleged spoliator's control was exclusive over the evidence at issue.  *Id.*  But "exclusivity is not necessary for a finding of control"—"control may exist even if a third party physically possesses the evidence at issue."  *Id.*  And even then, lack of physical possession will not necessarily negate a party's legal control over evidence.  *Id.* at *5 (determining that a party had control over a

11

computer at issue even when she was not the computer's ultimate owner because she had "unfettered access to, use of, and responsibility for" it). Moreover, courts "need not linger long" on the control element when the spoliated evidence resided on a cell phone, as a party "obviously ha[s] control over his own cell phone." *Brown v. Certain Underwriters at Lloyds, London*, No. 16-CV-02737, 2017 WL 2536419, at *3 (E.D. Pa. June 12, 2017). Here, Barbounis unequivocally had exclusive, physical, and legal control over the text messages, which were sent by her and located on her personal cell phone. Barbounis had the same control over her MEF laptop, as she had unfettered access to, use of, and responsibility for it. Thus, the Court should determine that the first spoliation factor is satisfied.

 2.  Barbounis's MEF laptop and text messages to Ms. Meyer are relevant.

**Second**, the text messages, which discussed both the fact and timing of Barbounis's reset of her company laptop to factory setting, and the laptop itself, are relevant to both MEF's claims and Barbounis's defenses in this case. "[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 808, 811 (E.D. Pa. 2005) (quoting Fed. R. Evid. 401); *see also First Sr. Fin. Grp. LLC*, 2014 WL 1327584, at *4 (spoliated documents and files on a party's computer were "unequivocally relevant" when the computer was use in connection with websites central to the case); *Patel v. Havana Bar, Rest. & Catering*, No. CIV.-A.-10-1383, 2011 WL 6029983, at *9 (E.D. Pa. Dec. 5, 2011) (where plaintiff was injured after falling from a structure on defendant's premises, spoliated video footage covering the area of the accident at the time it occurred was "clearly relevant" to plaintiff's claims).

Here, MEF alleges, among other things, that Barbounis converted MEF's trade secrets and confidential information in violation of various agreements with MEF and federal and state laws. *See generally* Am. Compl., Dkt. 20.  Specifically, MEF alleges that on June 26, 2019, MEF sent a Document Preservation Notice to employees, including Barbounis, directed them to preserve electronically stored information relating to identified topics that were "created, modified, sent, or received on or after June 1, 2016."  *See id.* ¶¶ 49–54.  MEF further alleges that, after Barbounis resigned from MEF on August 7, 2019 and was no longer authorized to access MEF's Proprietary and Confidential Information or trade secrets, Barbounis agreed through counsel to cooperate with MEF to avoid further collection and dissemination of MEF's Confidential Information.  *See id.* ¶¶ 55–62.  But instead, Barbounis intentionally destroyed the contents of her laptop with a factory reset of the device in violation of a preservation notice, also preventing MEF from accessing its own materials from the device by virtue of this spoliation, presumably to conceal the extent to which Defendant misappropriated its trade secrets and confidential information.

In her January 20, 2020 motion for the Court's reconsideration of its January 15, 2020 discovery order, Barbounis attached a sworn Declaration that she restored her MEF laptop to factory settings ***only after*** receiving instructions to do so from Ms. Meyer.  *See* Mem. in Supp. Of Def. Mot. for Recons., Dkt. 23-1; *id.* at Ex. A, Dkt. 23-2.  We now know that Barbounis's sworn misrepresents the truth that she reset her MEF laptop to factory settings and contrary to her obligations under a litigation hold at MEF.  In a Reply brief, Barbounis doubled down on her fabrication by falsely representing to the Court that "Plaintiff's newest attempt to accuse Defendant of destroying information is the Apple MacBook Pro which was factory reset upon return to Plaintiff.  Defendant's declaration clearly explains that the factory reset was done so at the direction of . . . Marnie Meyer."  Def.'s Resp. to Pl.'s Opp'n to Def.'s Mot. for Recons. at 10, Dkt.

34.   Barbounis's Reply included as Exhibit C a "true and accurate copy" of the text exchange between her and Ms. Meyer.  *See id.*; *id.* at Ex. C, Dkt. 34-3.  Exhibit C provided the Court with a largely illegible ***picture of a picture of*** those text messages, in which Barbounis's text messages are indecipherable.  *See* Ex. C.  As set forth above, undersigned counsel now has an unobscured version of the text exchange, proving that, when Ms. Meyer noted that Barbounis would restore her work laptop to factory settings before her departure, Barbounis replied, "I did it already!"  Ex. C.  This image of the text exchange was only provided to counsel in a document production by Ms. Meyer.  Side-by-side images of the obscured text chain and the recently uncovered unobscured text chain are set forth below for comparison:



Ex. D, Obscured Text Messages (August 13, 2019) and Ex. C, Unobscured Text Messages (August 13, 2019).

These facts demonstrate that the contents and the destruction of Barbounis's MEF laptop data are evidence relevant to the claims and defenses in this matter.  Not only did Barbounis's

MEF work laptop necessarily contain MEF data relevant to Plaintiffs' claims of misappropriation, breach her agreements with MEF related to her computer activity, violation of the Computer Fraud and Abuse Act and Stored Communications Act, and otherwise violate state or federal law, but these facts demonstrate that she violated the MEF litigation hold despite her representations to the contrary before this Court.  And the text message exchange between Barbounis and Ms. Meyer is evidence relevant to—and indeed forms part of the basis of— Barbounis's Mot. for Recons., Dkt. 23, and Def.'s Resp. to Pl.'s Opp'n to Def.'s Mot. for Recons., Dkt. 34, as well as the repercussions for MEF because of such false statements.  In other words, Defendant compounded her spoliation of data by lying to the Court about it in an effort to obtain relief from a court order.

For these reasons, the Court should determine that the second factor for spoliation applies.

3. <u>Barbounis suppressed and withheld her MEF laptop and the full content of the text messages intentionally and in bad faith.</u>

***Third***, Barbounis actually suppressed and withheld the text messages and admittedly destroyed the laptop data.  "The Third Circuit has recently clarified that [a] finding of bad faith is pivotal to a spoliation determination.  Ordinary negligence does not suffice to establish spoliation. The party asserting spoliation must prove that evidence was intentionally withheld, altered, or destroyed." *First Sr. Fin. Grp. LLC*, 2014 WL 1327584, at *7 (internal quotations and citation omitted).  Further, "a reckless disregard for the consequences of an intentional and conscious destruction of evidence, previously specially preserved for purposes of subsequent litigation, at a time when litigation is necessarily foreseeable, may constitute bad faith." *Id.* at *8 (citation omitted); *see also id.* (quoting *Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012), *cert. denied*, 133 S.Ct. 544 (2012) (finding "no reason" to justify licensed attorney's disposal of evidence she knew "would be essential in her lawsuit")).  "Additionally, a party's obfuscation or lying can show that she is acting in bad faith." *Id.*

15

Here, Barbounis clearly withheld and suppressed evidence with the level of bad faith required to satisfy the third spoliation factor. Barbounis's restoration of her MEF laptop to factory settings was purposeful, not due to "ordinary negligence," and litigation was more than reasonably foreseeable but was actually known to Barbounis, given that Barbounis was fully aware that she was under a strict preservation notice. Further, Barbounis's obfuscation of the text messages and misrepresentation to the Court regarding the timing and circumstances under which she restored her laptop to factory settings shows that she acted in bad faith, not only in restoring the laptop, but also in providing obscured text messages to the Court to expressly argue that she did *not* destroy evidence or violate the litigation hold. Barbounis's conduct, backed by repeated false statements to this Court regarding that conduct, demonstrate a reckless disregard for the consequences of an intentional and conscious destruction of evidence. As such, the Court should determine that the third factor for spoliation is established.

4. The pre-existence of a preservation notice (and the fact that Barbounis's counsel's demands caused MEF to put the litigation hold in place) establishes that the duty to preserve evidence was more that foreseeable and actually known to Barbounis.

**Fourth**, it was foreseeable (indeed known) to Barbounis that she had a duty to preserve information stored on her MEF laptop and fully preserve the content of the text messages. "The duty to preserve evidence begins when litigation is pending or reasonably foreseeable. The standard is objective, asking not whether the party in fact foresaw litigation, but whether a reasonable party in the same circumstances would have reasonably foreseen litigation. The question of reasonable foreseeability is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* at *9 (citations and internal quotations omitted).

Here, Barbounis received a Document Preservation Notice from MEF on June 26, 2019. Am. Compl. ¶ 49, Dkt. 20.  To comply with the notice, all employees were required to send to MEF's in-house counsel an email acknowledging receipt of the notice and an understanding of the employee's obligations.  *Id.* ¶ 54.  When Barbounis resigned from MEF on August 7, 2019—and when she reported to Ms. Meyer on August 13, 2019 that she had already reset her MEF laptop— the Document Preservation Notice was still in place.  This was certainly well known to Barbounis because she had hired defense counsel who sent a demand to MEF which prompted MEF to issue the preservation notice.  Accordingly, Barbounis, or at least a reasonable person under the same circumstances, can surely not deny that she knew of, or at the very least would have reasonably foreseen, litigation and thus a duty to preserve.  The Court should determine that the fourth spoliation element is satisfied.

In sum, because the MEF laptop and text messages were within Barbounis's control, the laptop's and messages' content are relevant to both MEF's claims and Barbounis's defenses in this action, Barbounis actually withheld and suppressed evidence by resetting the laptop to factory settings and providing an illegible image of the text messages as support for her Motion for Reconsideration, and Barbounis clearly understood her duty to preserve the laptop given the fact that her counsel directed the MEF litigation hold, the Court should determine that Barbounis is responsible for spoliating both the laptop and the text messages.

### B.  The Court should impose sanctions against Barbounis and her counsel.

Because Barbounis spoliated evidence, the Court can—and should—impose sanctions against her and her counsel.  "Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation," "serve a punitive function, by punishing the spoliator for its actions," and serve "a

17

deterrent function" by informing litigants that certain conduct will not be tolerated and will be dealt with appropriately by the court. *E.E.O.C. v. Smokin' Joe's Tobacco Shop, Inc.*, No. CIV.A.06-1758, 2007 WL 1258132, at *13 (E.D. Pa. Apr. 27, 2007) (citation omitted). "Appropriate sanctions for spoliation include dismissal of claims, suppression of evidence, an adverse inference, fines, and attorneys' fees and costs." *Patel*, 2011 WL 6029983, at *5 (citing *Paramount Pictures Corp.*, 234 F.R.D. at 110–11).

To determine which sanction is appropriate to address spoliation, "courts in this Circuit consider: (1) the spoliator's degree of fault and personal responsibility; (2) the prejudice suffered by the opposing party; and (3) the availability of a lesser sanction that will avoid substantial unfairness to the opposing party and, if necessary, deter future spoliation." *Pa. Tr. Co. v. Dorel Juvenile Grp., Inc.*, No. CIV.A.07-4029, 2011 WL 2789336, at *5 (E.D. Pa. July 18, 2011) (citations omitted).  The Court should determine that Barbounis bears all responsibility for the spoliated evidence, that MEF suffered substantial prejudice by expending considerable time and expense with regard to discovery costs and litigation associated with Barbounis's Motion for Reconsideration, and that only aggressive sanctions will serve the remedial, punitive, and deterrent functions that spoliation sanctions are intended to provide.

1. <u>Barbounis bears the fault of the spoliation.</u>

Barbounis bears full fault and personal responsibility for the spoliation of her MEF laptop and the text messages.  In determining appropriate spoliation sanctions, a fault analysis "has two components: responsibility, and the presence of bad faith." *Brown*, 2017 WL 2536419, at *5. "When determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case." *Id.* (citation omitted) ("Plaintiff's degree of fault

is unmitigated and weighs heavily in favor of imposing sanctions" where "Plaintiff was personally responsible for preserving the evidence contained in his cell phone and acted in bad faith by failing to do so"); *see also Paramount Pictures Corp.*, 234 F.R.D. at 111 (finding a party at fault for failure to preserve memory on his computer's hard drive when he either knew or should have known that the memory was relevant to the litigation).

There can be no dispute that Barbounis reset her laptop to factory settings despite MEF's litigation hold. Barbounis was personally responsible for complying with the terms of MEF's Document Preservation Notice, even though she knew or should have known that the categories of information described in the notice were relevant to pending or foreseeable litigation. Further, Barbounis was also personally responsible for information—including text messages—stored on her personal cell phone. Providing to the Court an obscured image of the text messages and a false Declaration to conceal her prior spoliation of data, with a representation that the messages stated something other than what they did in reality, constitutes clear bad faith as it was, at best, designed to impair MEF's ability to effectively litigate its case and at worst designed to mislead the Court in its consideration of whether Barbounis destroyed relevant evidence. Therefore, the Court should determine that Barbounis carries a high degree of fault and personal responsibility—indeed, she carries ***all*** of it—for the intentional and extremely troubling spoliation of massive amounts of data on a laptop computer and for submitting false information to the Court to conceal the spoliation in bad faith.

2. <u>MEF has suffered prejudice due to Barbounis's spoliation.</u>

Barbounis's spoliation prejudiced (and continues to prejudice) MEF, which should weigh in favor of sanctions against Barbounis. A party is prejudiced by spoliation if the spoliation adversely affects the party's ability to effectively investigate its claims. *See Int'l Fin. Co., LLC v.*

*Jabali-Jeter*, No. 18-CV-2120, 2019 WL 2268961, at *16 (E.D. Pa. May 28, 2019) (defendant's spoliation "prejudiced IFC because it prevented IFC from finding and proving the extent of IFC's information Defendant took and used for herself"); *see also Brown*, 2017 WL 2536419, at *5 ("Of course, when a party is denied any opportunity to examine evidence, [prejudice] would automatically be satisfied." (alteration in original) (citation omitted)).  In *International Financial Co.*, though the evidence the defendant spoliated did not completely prevent the plaintiff from reviewing relevant data, the plaintiff would have to endure an "expensive labor intensive process." 2019 WL 2268961, at *16 (citation omitted).  Because "Defendant's spoliation [] hamstrung IFC's efforts to determine which information and files she took without authorization," the Court determined that the defendant's actions "clearly prejudiced" IFC.  *Id.*

Here, Barbounis's spoliation of the MEF laptop and her decision to conceal the spoliation by false representations to the Court not only required MEF to expend substantial time and expense in discovery, but by permanently erasing all of the contents of her laptop (back to blank factory settings), Barbounis denied MEF the ability to examine any evidence on the laptop, "hamstringing" MEF's efforts to prove its claims.  *Id.*  This alone "automatically" satisfies the prejudice element for imposing spoliation sanctions.  *Brown*, 2017 WL 2536419, at *5.  But even if MEF could examine the laptop data by other means, the added labor and expense shows prejudice against MEF.  Whether or not it is true, Barbounis now contends that she did not use any USB devices to copy the data from the laptop, so apparently the data is unrecoverable.  Accordingly, the Court should determine that this factor weighs heavily in favor of sanctions against Barbounis.

3. <u>The most aggressive sanctions are appropriate in this case to remedy the prejudice against MEF and adequately deter Barbounis and other litigants from further reprehensible conduct.</u>

As stated, "[a]ppropriate sanctions for spoliation include dismissal of claims, suppression of evidence, an adverse inference, fines, and attorneys' fees and costs." *Patel*, 2011 WL 6029983, at *5 (citing *Paramount Pictures Corp.*, 234 F.R.D. at 110–11). Barbounis is fully responsible for her inexcusable conduct and has prejudiced MEF as a result. And while aggressive sanctions may have been appropriate had Barbounis only spoliated her MEF laptop, they are certainly appropriate in light of her false declaration and deliberate misstatements to the Court to conceal her spoliation. As such, since there does not appear to be a more reprehensible scenario that intentional spoliation and false statements to the Court to conceal the behavior, this Court should order default judgment in MEF's favor. At the very least, the Court should suppress evidence tainted by the spoliation and false statements, impose an adverse inference, and award MEF attorneys' fees and costs for its time and effort to obtain discovery and oppose Barbounis's motions related to the spoliated evidence. Further, the Court should sanction Barbounis's counsel for misleading the Court, and address Barbounis's perjurious statements as the Court deems proper.

### a.   The Court should order default judgment in MEF's favor.

When proportional to "the willfulness of the destructive act and the prejudice suffered by the victim," *Motown Record Co., LP v. DePietro*, No. 04-CV-2246, 2007 WL 1725604, at *1 (E.D. Pa. June 11, 2007), entering default judgment against a spoliating party may be appropriate. *See Pa. Tr. Co.*, 2011 WL 2789336, at *7 ("Other courts have imposed sanctions including 'outright dismissal . . . if the destroyed evidence was sufficiently important.'" (citation omitted)).

In *Medina ex rel. Beteta v. Rose Art Industries, Inc.*, the court determined that dismissal or summary judgment in Rose Art's favor was an inappropriate spoliation sanction, drawing heavily on distinctions between the facts of the case and those in *Roselli*, a Pennsylvania Superior Court case on which Rose Art relied. No. CIV.A.02-1864, 2003 WL 1877563, at *1 (E.D. Pa. Feb. 28,

21

2003); *see also Roselli v. Gen. Elec. Co.*, 599 A.2d 685, 686–88 (Pa. Super. Ct. 1991) (dismissing the plaintiff's claims in part because relevant evidence was destroyed by the plaintiff's former counsel).  The *Medina* court highlighted the grounds on which the superior court "granted the ultimate sanction" of dismissal: "(1) the plaintiff was not credible; (2) the attorney may have committed ethical violations by intentionally discarding the [spoliated evidence]; and (3) no sampling of the similar [evidence] could substitute for the [spoliated evidence]."  2003 WL 1877563, at *2.  "None of these factors exist in the present case.  The Medinas' counsel was not involved in the spoliation.  Rose Art does not allege that the Medinas lied about the true age or usage of the product, and it has not presented evidence to that effect."  *Id.*; *see also id.* ("Only if Rose Art could prove fraudulent behavior by the Medinas would summary judgment be appropriate.").

Here, the details of Barbounis's conduct are more similar to the plaintiff's in *Roselli* than they are to the Medinas' conduct.  Like the *Roselli* plaintiff, Barbounis has proven herself not to be credible.  Indeed, even after agreeing upon a discovery plan with MEF, Barbounis moved for the Court's reconsideration, and submitted false statements in support of her motion.  And even knowing that the text messages revealed the truth about Barbounis's conduct, she nevertheless provided the Court with a partially-obscured photograph of her cell phone—rather than the imaged data MEF sought—in an effort to further hoodwink the Court and MEF.  Further, like plaintiff's counsel in *Roselli*, Barbounis's attorney participated in her false representations, or at the very least recklessly submitted an illegible text message exchange, a false declaration, and false pleadings over his signature.  Moreover, like in *Roselli*, MEF does not have "replacement" evidence for Barbounis's reset computer.  MEF, fortunately, was able to acquire from a third party subpoena to Ms. Meyer the full text message exchange between Barbounis and Ms. Meyer.  If not,

Barbounis may have succeeded in her scheme to conceal the information from this Court. Finally, unlike the defendant in *Medina*, MEF has shown that Barbounis engaged in fraudulent behavior. Under penalty of perjury, Barbounis submitted a declaration contending that she destroyed potential evidence on her laptop only at the direction of Ms. Meyer. Barbounis made further effort to conceal from the Court the test messages' true content. While the Medinas did not destroy evidence "as part of a malicious or fraudulent trial strategy," *Medina*, 2003 WL 1977563, at *2, the opposite is true here. Accordingly, the Court should determine that default judgment is an appropriate sanction.

      b.  <u>At the very least, the Court should suppress evidence tainted by Barbounis's spoliation, strike Defendant's defenses, impose an adverse inference, and award MEF attorneys' fees and costs.</u>

The Court should at the very least suppress all evidence tainted by Barbounis's spoliation, strike Defendant's defenses, order a spoliation inference against Barbounis at trial, and award MEF attorneys' fees and costs spent litigating this motion and all other motions and discovery efforts impacted by Barbounis's deceitful conduct. Suppression of evidence is an appropriate spoliation sanction, particularly when other, less sanctions do not adequately "level the playing field" in light of the spoliation of critical evidence. *Pa. Tr. Co.*, 2011 WL 2789336, at *7 (determining that because "an adverse inference [would] not level the playing field" when a booster seat that contributed to a child's injuries was destroyed, the court would suppress testimony of the child's parents regarding the booster suit "[t]o counterbalance the prejudice to [defendant]"). Here, to counterbalance the prejudice suffered by MEF as a result of Barbounis's destruction and alteration of evidence, the Court should similarly suppress any evidence Barbounis might seek to present in her defense.

The Court should additionally determine that an adverse inference is appropriate in this case.  "An adverse inference allows the trier of fact to receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Patel*, 2011 WL 6029983, at *9 (internal citations and quotations omitted); *see also* <u>Warden v. Falk</u>, No. CV 11-2796, 2011 WL 13141953, at *1 (E.D. Pa. Sept. 16, 2011) (Sanchez, J.) (granting the plaintiff's request for an adverse inference instruction to advise the jury that "it may infer Defendants withheld primary source documents . . . because such documents contained evidence damaging to Defendants' defense").

Courts have determined that an adverse inference is an appropriate sanction to address conduct less egregious than Barbounis's.  *See, e.g.*, *Medina*, 2003 WL 1877563, at *2 ("[A]s the Medinas are not seriously at fault, there is a lesser available sanction.  At the proper time, Rose Art may request a jury instruction regarding the proper inference that the jury may make regarding the Medinas' failure to produce the cup for Rose Art or the court to inspect.").  In this case, because Barbounis is at fault for the spoliation and has prejudiced MEF as a result, the Court should permit the jury to infer that Barbounis's conduct was motivated by knowledge that the contents of her laptop and full content of the text messages would harm her.

The Court should also grant MEF appropriate attorneys' fees and costs.  "Where spoliation has occurred, monetary sanctions are appropriate in order to compensate a party for the time and effort it was forced to expend in an effort to obtain discovery to which it was otherwise entitled." *Stream Cos., Inc. v. Windward Advert.*, No. 12-CV-4549, 2013 WL 3761281, at *6 (E.D. Pa. July 17, 2013) (internal quotations and citation omitted) (awarding attorneys' fees "incurred in filing

the instant motion," "attorneys' fees and any other costs incurred in attempts to obtain the destroyed [evidence]," and "expenses incurred for other motions or hearings that were a direct result of the deletion of e-mails"); *see also Patel*, 2011 WL 6029983, at *11 (awarding attorneys' fees and costs for time expended in attempting to obtain discovery, fees and costs related to belated production of discovery defendants were entitled to receive, and fees expended on the sanctions hearing and motions practice). In this case, MEF has incurred considerable costs since January 15, 2020 related to requests to obtain Barbounis's discovery responses and motions practice associated with Barbounis's Motion for Reconsideration. If the Court grants this motion, MEF requests leave to submit a declaration setting forth costs and fees incurred as a result of Barbounis's spoliation. *See* Ex. 2, Dkt. 23-2. Plaintiff should not have been required to incur those unnecessary expenses but for Defendant's misrepresentations and fraud on this Court. As stated, such expenses include: briefing the motion for reconsideration; briefing MEF's first motion for contempt, default, and sanctions; briefing MEF's motions to compel; briefing MEF's motion for a protective order; numerous calls and emails with counsel, the Court, and multiple discovery vendors; as well as multiple Court hearings. The Court should award MEF these fees and costs, and any other monetary relief the Court deems appropriate.

     c.   <u>The Court should further sanction Barbounis's counsel and address Barbounis's perjurious statements and false declarations before the Court.</u>

Finally, the Court should sanction Barbounis's counsel for misleading the Court, and address Barbounis's perjurious statements as the Court deems proper. Federal courts have "the inherent power . . . to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 348 (3d Cir. 1991) ("[S]ome members of the bar still do not realize that the judicial attitude toward attorney misconduct has stiffened. They had better realize it."). There are standards of conduct in the Court for a reason.

Further, "[t]he United States District Court for the Eastern District of Pennsylvania has adopted the rules of professional conduct adopted by the Supreme Court of Pennsylvania as the standards for professional conduct of attorneys admitted to practice in this district." *Com. Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992) (citations omitted).   The Pennsylvania Rules of Professional Conduct provide that, "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person."  Pa. R. Prof. Conduct 4.1(a).  Rule 8.4 states that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or] engage in conduct that is prejudicial to the administration of justice."  *Id.* at R. 8.4(c)–(d).

The Rules further state that "[a] lawyer shall not knowingly[ ] make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; . . . [or] offer evidence that the lawyer knows to be false.  If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."  *Id.* at R. 3.3(a)(1), (3); *see also In re Malofiy*, 653 F. App'x at 153 (explaining that the "materiality" standard is met where "violation affected the outcome of the proceedings").  "[Rule 3.3] safeguards principles that are basic to the adversarial system of justice: The excesses of this system would likely overcome its virtues if attorneys were free to represent clients with no regard whatsoever for the truth of their statements to the court."  *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 524 (E.D. Pa. 1999).

Here, Barbounis's attorney submitted a false declaration, pleadings containing false statements, and an obscured and misleading exhibit on Barbounis's behalf.  *See* Mem. in Supp. Of Def. Mot. for Recons., Dkt. 23-1; *id.* at Ex. A, Dkt. 23-2; Def.'s Resp. to Pl.'s Opp'n to Def.'s Mot. for Recons., Dkt. 34; *id.* at Ex. C, Dkt. 34-3.  If Barbounis's attorney was not complicit in

26

submitting Barbounis's false representations, he at the very least recklessly presented the tainted papers to the Court above his signature.  Indeed, the only possibilities with respect to Mr. Carson's submission of the obscured text messages exhibit were that (1) Mr. Carson did not bother to read or make a proper inquiry into the exhibit before recklessly submitting the false declaration and text message with his pleadings in this Court, or (2) Mr. Carson knew the content of the text messages and knew that content of the motion and Barbounis's declaration were false, but still submitted statements to the contrary and presented the text messages in such a way that Barbounis's problematic messages were concealed.  Each possibility shows that Carson either knowingly submitted false statements, stated as fact the contents of the messages despite his ignorance, or closed his eyes to the fact of Barbounis's deceit.  Neither of these possibilities is excusable.

Further, the false statements within the papers that Barbounis's counsel signed and submitted were clearly material, as he knowingly submitted them to support a motion to overturn a prior order of this Court.  Such conduct severely undermines the integrity of the Court and is directly contrary to opposing counsel's obligations to this Court.  Notably, in another matter in this Court involving Defendant's counsel, Judge Kearney expressed serious concern about Mr. Carson's conduct.  In that matter, at a show cause hearing for contempt of a Court-ordered sanction, Judge Kearney remarked on "the privilege of being member of the bar in this Court. This is a small bar. The judges are very close in a sense but not—not necessarily in age or geography, but certainly in our relationship on the bench, and we talk to each other all the time. Sir, you can't get back your reputation. You can win a thousand cases and not get back your reputation. I ask you as a member of the bar of this court, I'm going to give you a chance before I report you to some disciplinary board to show us, as a Court, this was an anomaly. This was aberrant behavior." *Caitriona Brady v. The Middle East Forum*, No. 19-CV-05082, July 6, 2020 Show Cause Hr'g Tr.

at 19:6-16.   This is not the first time that this Court has dealt with Defendant's counsel's questionable conduct.

Moreover, the Court should address Barbounis's false statements submitted in her declaration as part of her Motion for Reconsideration.  *See* Mem. in Supp. Of Def. Mot. for Recons. at 3 n.2, Dkt. 23-1; *id.* at Ex. A, Dkt. 23-2.  Paragraph 60 of the declaration, just above where Barbounis signed her name, states, "I swear under penalty of perjury that the foregoing is accurate, true and correct."  *Id.* ¶ 60.   18 U.S.C. § 1621(2) states that "[w]hoever in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both."  Further, 18 U.S.C. § 1623 provides that "[w]hoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under [28 U.S.C. § 1746]) in any proceeding before or ancillary to any court . . . of the United States knowingly makes any false material declaration or makes or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both."

The Court should consider the expectations of integrity, honesty, and fairness in this district when it determines appropriate sanctions against Defendant and her counsel for the troubling conduct described above.

## **CONCLUSION**

For all the foregoing reasons, MEF respectfully requests that the Court grant this Motion and enter an Order:

(a) Finding Barbounis in civil contempt for willfully submitting false statements to avoid compliance with an order of this Court;

(b) Finding Barbounis in civil contempt for failing to comply with discovery orders of this Court;

(c) Finding that Barbounis spoliated evidence, then lied to the Court about it;

(d) Entering an adverse inference at any hearing or trial that what Barbounis spoliated from the computer is contrary to her position in this case;

(e) Entering a default judgment on liability or at least that Barbounis' defenses are stricken for fraud on the Court;

(f) Finding that Defendant's counsel either participated in the fraud on the Court or at a minimum, recklessly submitted a false declaration of Barbounis unsupported by the documents in counsel's possession, and false pleadings over counsel's signature;

(g) Requiring defense counsel to submit a sworn statement to the Court regarding: (1) whether counsel possessed the complete documentation described in the attached memorandum prior to submitting it to this Court; (2) whether counsel redacted or obscured material portions of documentation demonstrating the false statements in Barbounis's Declaration; and (3) whether counsel knew that an incomplete or partially obscured version of the documentation was submitted to the Court on which this Court was asked to rely;

(h) Ordering Barbounis and her counsel to pay MEF's those attorneys' fees and costs incurred by Plaintiff since January 15, 2020 that would not have been incurred but for the behavior described herein;

(i) Setting the matter for a determination of attorneys' fees and costs, as well as damages on a default judgment, if entered by the Court, for a date certain; and

29

(j)  Granting such other relief as this Court deems proper.


Dated: August 31, 2020                    THE MIDDLE EAST FORUM
                                          By counsel

                                          s/ Sidney L. Gold
                                          Sidney L. Gold
                                          sgold@discrimlaw.net
                                          Sidney L. Gold & Associates P.C.
                                          1835 Market Street, Suite 515
                                          Philadelphia, PA 19103
                                          Tel: (215) 569-1999
                                          Fax: (215) 569-3870

                                          Attison L. Barnes III
                                          abarnes@wiley.law
                                          Wiley Rein LLP
                                          1776 K Street NW
                                          Washington, DC 20006
                                          Tel: (202) 719-7000
                                          Fax: (202) 719-7049


                                          *Counsel for The Middle East Forum*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 31, 2020, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**


THE MIDDLE EAST FORUM
                         :

             Plaintiff,          :

vs.                          :

                         :

LISA REYNOLDS-BARBOUNIS  :    Civil Action No.: 2:19-cv-5697

          Defendant.      :

                         :


### ORDER FINDING DEFENDANT LISA BARBOUNIS AND HER COUNSEL IN CONTEMPT, DEFAULT, AND SUBJECT TO OTHER SANCTIONS

It appearing to the Court that it is just and proper to do so and that good cause has been shown, Plaintiff's Motion for Contempt, Sanctions, and Attorneys' Fees and Costs ("Plaintiff's Motion") shall be, and hereby is, GRANTED and it is hereby ORDERED as follows:

1. This Court finds that Defendant Barbounis is in civil contempt for willfully submitting false statements to avoid compliance with an order of this Court;

2. This Court finds that Defendant Barbounis is in civil contempt for failing to comply with discovery orders of this Court;

3. This Court finds that Defendant Barbounis spoliated evidence, then lied to the Court about it;

4. This Court finds that it is appropriate to order an adverse inference at any hearing or trial that what Barbounis spoliated from the computer is contrary to her position in this case;

5. This Court finds it is appropriate not only to strike Defendant Barbounis's defenses, but to enter a default judgment on liability against Defendant Barbounis;

6.  This Court further finds that Defendant's counsel either participated in the fraud on the Court or at a minimum, recklessly submitted a false declaration of Barbounis unsupported by the documents in counsel's possession, and false pleadings over counsel's signature;

7.  This Court orders defense counsel to submit a sworn statement to the Court stating: (1) whether counsel possessed the complete documentation described in the attached memorandum prior to submitting it to this Court; (2) whether counsel redacted or obscured material portions of documentation demonstrating the false statements in Barbounis's Declaration; and (3) whether counsel knew that an incomplete or partially obscured version of the documentation was submitted to the Court on which this Court was asked to rely;

8.  This Court also orders Defendant Barbounis and her counsel to pay MEF's those attorneys' fees and costs incurred by Plaintiff since January 15, 2020 that would not have been incurred but for the behavior described herein. Plaintiff shall submit documentation of all attorneys' fees and expenses for which it seeks reimbursement within fourteen (14) days of the entry of this order; and

9.  This Court further sets this matter for a hearing on a determination of attorneys' fees and costs, as well as damages on a default judgment, at _____ a.m./p.m. on _____, 2020.

SO ORDERED this _____ day of September, 2020.

_____

United States District Court Judge Juan Sánchez