**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS, | : | Civil Action No.: 19-5697 |
| Defendant. | : | |
| | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION**
**FOR CONTEMPT AND SANCTIONS**

Plaintiff The Middle East Forum ("MEF"), by counsel, files this Opposition to Defendant's Motion for Contempt and Sanctions, which was filed in response to Plaintiff's Motion for Contempt, Sanctions, Attorneys' Fees, and Costs Against Defendant and Her Counsel (Dkts. 65, 62). For the reasons stated herein, the Court should deny Defendant's retaliatory cross-motion (and grant MEF's motion).

**Preliminary Statement**

Unable to explain away the improper conduct detailed in MEF's Motion for Contempt and Sanctions, Defendant lashes out with a cross-motion for contempt and sanctions. Her cross-motion is improper for many reasons, not the least of which is that Plaintiff and its counsel have done nothing wrong. As this Court is aware, Plaintiff has been seeking Defendants' cooperation and compliance in this case since December 2019. At each turn, Defendant has erected roadblocks or otherwise failed to comply with Court orders. Once Plaintiff discovered the extent to which Defendant and her counsel have gone to avoid her obligations to MEF and this Court (by, among

1

other things, misleading this Court about the spoliation of the entire contents of her laptop), MEF felt compelled to raise these serious and troubling issues with the Court.

While Defendant also tries to claim that Plaintiff did not discuss these issues with Defendant prior to seeking relief in Court, the Court will recall that these issues have been discussed numerous times over the last nine months, including during hearings and telephone conferences with the Court.   On each occasion, Defendant and her counsel have made representations on which MEF and the Court should be able to rely.   Unfortunately, those representations were not accurate, and only meaningful sanctions can remedy the behavior of Defendant and her counsel.  On the contrary, there is no basis for Defendant's Motion,[1] which should be summarily denied.

<u>**Argument**</u>

I.     **DEFENDANT'S CROSS-MOTION SHOULD BE DENIED BECAUSE THE FACTS DEMONSTRATE FOUL PLAY BY DEFENDANT AND HER COUNSEL.**

A.   <u>The Failure of Defendant and Her Counsel to Produce the Original Photograph and Its Metadata Is Telling</u>.

At any time over the last eight months (including in her most recent filing last week), Defendant and her counsel could have produced the original photograph of the obscured text chain set forth in Exhibit C to Defendant's Motion for Reconsideration reply, Dkt. 34-3.  The failure to do so is glaring.  This can only mean either that: (1) Defendant destroyed the original photograph (i.e. spoliation); or (2) Defendant knows that the photograph will expose the falsity of the argument she now makes to this Court.  By instead pursuing her cross-motion, Defendant hopes to sidestep any obligation to present the photograph—particularly its metadata—to MEF and the Court.

---

[1]  Among other things, Defendant does not cite a word of case law to support her arguments.

Presumably, Defendant and her counsel did not want to disclose the photograph and its metadata because it would show the Court that the PDF (without metadata) filed with the Court in January as Exhibit C to Defendant's February 3, 2020 Reply was altered or at least obscured. Rather than attach the original photograph to that Reply, Defendant filed a PDF of a photograph of a screenshot of the subject text message exchange where Defendant's responses are obscured. If the photograph was deleted from Defendant's or her counsel's device, the metadata would show that it was deleted: (1) after MEF's preservation notice went into effect, (2) after service of MEF's December 2019 discovery requests, and (3) after the parties' hearing before the Court on January 15, 2020.   Alternatively, Defendant or her counsel used a cellular device to photograph the text exchange to avoid submitting a legible image of the original messages to the Court, and destroyed the original photo with its metadata.  If an image of the cellular device that was used to capture the photograph provided in Exhibit C—i.e., the cell phone used to take ***a picture of a picture of*** a communication—confirms that the photograph no longer exists on the device, this constitutes spoliation.  Under either outcome, Defendant's conduct is sanctionable.  Of course, these issues may well have been avoided had Defendant simply filed and made available the original photograph of the text exchange as Exhibit C, or filed it with the Court as part of its response to MEF's motion for sanctions.

B.  <u>Defendant and Her Counsel Dig a Deeper Hole with a Newly-Minted Fabrication in an Effort to Dodge the Consequences of Their Prior Fabrication.</u>

To make matters worse, Defendant now contradicts her prior representations to this Court by claiming that the text message exchange "is a reference to an earlier conversation between Ms. Barbounis and Ms. Meyer."  Def.'s Mot. for Contempt and Sanctions, Dkt. 65, at 6.   However, this is merely another fabrication to cover up the prior fabrication.  First, Defendant did not submit any evidence of this "earlier conversation."  Second, Defendant's February 3 Reply brief expressly

represented to this Court that that Ms. Meyer had instructed Barbounis to factory reset the laptop "through a text message sent by The Middle East Forum's Chief Financial Officer and Director of Human Resources, Marnie Meyer."  Def's Resp. to Pl.'s Opp'n to Def.'s Mot. for Recons., Dkt. 34, at 10.  Defendant attached as Exhibit C to its response a purported "true and accurate copy" of the August 13, 2019 text message exchange allegedly instructing Barbounis to factory reset her laptop.  *Id.*  In other words, this August 13 text message is what Defendant previously represented to this Court prompted her to factory reset the laptop, not a prior discussion.  The February 3 Reply referred specifically to a "text message" and the only text message cited by Defendant was the one dated August 13.

MEF has forensically shown that Defendant could not have relied on the August 13 text exchange because the laptop was factory reset five days earlier on August 8, 2019.  Faced with the falsity of her earlier representation to the Court, she seeks to ***change her story*** to claim there was an "earlier conversation" with Ms. Meyer.  Defendant was caught in her fabrication to the Court, so she must manufacture another tall tale in an effort to avoid ramifications for the misconduct. She previously represented that she relied on a specific "text message," but she wants this Court to believe that there was instead an "earlier conversation" without any details or proof.  She submits no new declaration or any other evidence.  *See* Def.'s Mot. for Contempt and Sanctions, Dkt. 65, at 6-8.

C.  <u>Changing Her Story Must Come with Consequences, But Even Defendant's New Story about an Alleged "Earlier Conversation" Cannot Be Reconciled with the Plain Language of the August 13 Text Message, Nor with the Pending Preservation Notice</u>.

The plain language of the August 13 text message shows that Ms. Meyer: (1) was raising the issue of whether Defendant had "personal" material on the laptop; and (2) was suggesting Google research on a factory reset.  Not only does the text not mention an "earlier conversation,"

4

but the language of the text contradicts the existence of such an earlier conversation.  Moreover, a question about whether Defendant had personal information on the laptop does not constitute an instruction to spoliate non-personal, MEF data from the laptop.  Nor does a <u>question</u> about a factory reset constitute an <u>instruction</u> to spoliate evidence.[2]  Furthermore, even if the text could somehow be construed to constitute an instruction (which MEF strongly denies),[3] the text message does not state that Defendant should factory reset the laptop without first imaging the data to comply with the pending preservation notice.  Still, Defendant, while represented by her current counsel, permanently destroyed all of the data on the laptop without imaging the contents after receipt of a preservation notice, and that conduct is inexcusable under any circumstances.

While MEF has shown that Defendant fabricated a story that she relied on the August 13 text message to factory reset the laptop (because she had already spoliated the evidence five days earlier), her house of cards collapses nonetheless because the undisputed act of factory resetting the laptop violated the preservation notice MEF put in place months earlier on June 26, 2019 in response to her own counsel's demand letter to MEF on June 20, 2019.  *See* Ex. A, MEF Preservation Notice (June 26, 2019).  The June 26, 2019 preservation notice broadly states that MEF "reasonably anticipates legal action concerning administrative staff."  *Id.* at 1.  Accordingly, all legal action concerning MEF administrative staff, including the matters identified by Defendant ***and*** the instant matter were contemplated by MEF's preservation notice.

MEF's preservation notice was broad in scope, including the materials that would be saved on Defendant's laptop.  Specifically, the preservation notice instructed MEF employees to preserve

---

[2]  The operative part of the text message Ms. Meyer sent Defendant on August 13, 2019 read, "***Maybe we should google how to*** return it to factory settings?"  *See* Ex. B, Trade Secrets Unobscured Text Conversation Produced June 15, 2020 (emphasis added).

[3]  No MEF employee, including Ms. Meyer, could have had any actual or apparent authority to instruct a former employee to violate a preservation notice.

"[a]ny potentially relevant information (in whatever form it exists, whether paper or ESI) regarding administrative employees . . ." *Id.* at 2 (emphasis omitted).  Defendant was an administrative employee.  Moreover, the preservation notice required employees to preserve "any relevant documents or information that you create or receive after the date of this Notice." *Id.* (emphasis omitted).  The preservation notice also noted that MEF employees "***should interpret the Subject Matter broadly.***  If you have any doubt or questions regarding whether certain materials should be preserved, ***always err on the side of caution and preserve the information.***" *Id.* (emphasis added).  Finally, the preservation notice pointed out the various locations that such material may be saved, including:

> Corporate desktop or ***laptop computers***; personal or departmental file shares; server-side email mailboxes (including one's "Inbox," "Deleted Items," "Sent Items," or any other subfolder); email archive files (e.g., PST or NSF files); optical disks (including CDs and DVDs), removable thumb drives or external hard drives, and other types of portable electronic storage media; backup tapes and other disaster-recovery systems; and internet, blog, intranet, extranet, portal, social media, or cloud-based sites and services; and Forum-issued mobile devices.

*Id.* at 2 (emphasis added).  Because the MEF preservation notice specifically contemplated that Defendant was required to preserve information on her laptop, Defendant's unilateral factory reset her laptop on August 8, 2019 violated these obligations.

Defendant appears to argue that MEF must somehow identify files deleted from the laptop after it was factory reset.  Defendant does not explain why that is MEF's responsibility or how MEF would know what Defendant spoliated.  As detailed in the forensic report on the laptop that MEF procured, the extent of information that is accessible after a device is factory reset is the "most recent installation of the present operating system." *See* Ex. C, Contact Forensic Mem. (Aug. 28, 2020) at 4.  Moreover, the report states that "erasing a volume identified as 'Macintosh HD' and creating a new 'Macintosh HD' volume on the same hard drive" (i.e., factory resetting the device) "would remove any data which was previously on the hard drive to accommodate the

new volume for a Mac operating system re-installation." *Id.* Thus, Defendant's spoliation has deprived MEF and this Court from learning what files that were deleted from the laptop upon being factory reset on August 8, 2019. *See* Pl.'s Mot. for Contempt, Sanctions, and Attorneys' Fees, Dkt. 62, at 9.

Even if, as Defendant wildly contends, the laptop could be factory reset without spoliating evidence—which it could not, Defendant cannot escape the consequences for her misconduct by trying to shift the burden to Plaintiff, or by forcing Plaintiff to expend further time and resources to uncover any evidence Defendant was unsuccessful in fully destroying. The forensic report makes clear that Defendant deleted her hard drive in violation of her counsel's demand and letter and MEF's preservation notice, and then reinstalled a completely blank hard drive. Defendant engaged in spoliation of evidence, and Defendant's excuses hold no water.[4]

D. Trying to Postpone the Consequences for Her Spoliation, Defendant Suggests that MEF Depose Defendant on this Issue, But a Deposition Will Not Help Her.

Defendant argues: "[h]ad Plaintiff, the Middle East Forum deposed Ms. Barbounis before filing [its motion], Ms. Barbounis would have explained the meaning of the text message. . . ." Def.'s Mot. for Contempt and Sanctions, Dkt. 65, at 6. Defendant misses the point.

No deposition would change the fact that Defendant and her counsel are now making an entirely different and contradictory representation to the Court. Moreover, no deposition will

---

[4] While Defendant attempts to downplay her spoliation by speculating that "cloud-based applications" were not "compromised" by the factory reset, her argument is flawed. First, a laptop contains many forms of data and metadata, and it is not solely a conduit to cloud-based applications; presumably that is why Defendant decided to perform the factory reset in the first place – to delete the data that was resident on the device itself. Second, as the Court is aware, Defendant did nothing to image the data and metadata that was resident on the device prior to deleting it, and thereby prevented this Court and MEF from determining the extent to which she destroyed such information. Third, despite a notice to do so, including a notice from undersigned counsel, Defendant also did not preserve the data in those cloud-based applications between the time she left MEF in August 2019 and June 2020 when this Court ordered her to provide usernames and passwords to those applications. This also shows Defendant's reckless disregard for the data requested in this matter, as Defendants has not preserved such data over the last year despite requests (and an obligation) to do so. And, as set forth in MEF's Motion to Compel, Defendant still has not complied with this Court's order to provide usernames and passwords to several of the applications. Therefore, any reliance on Defendant's theory that cloud-based applications have not been "compromised" is misplaced.

change the fact that the obscured text message Defendant previously submitted to the Court has now been revealed (in an unobscured version received from Ms. Meyer in response to a subpoena) to show that Defendant had already factory reset the computer before Ms. Meyer sent the e-mail. Furthermore, no deposition will change the fact that forensic data shows that the factory reset was performed on the device on August 8, 2019, five days before the August 13 text message from Ms. Meyer.  And no deposition will change the fact that even if Ms. Meyer's text could be interpreted as a suggestion to factory reset the laptop, the text message did not instruct Defendant to violate the preservation notice, and Defendant's counsel has admitted that neither Defendant nor Defendant's counsel preserved an image of the laptop's contents before it was factory reset.  All of this misconduct took place after Defendant had engaged Mr. Carson as counsel regarding claims involving MEF, which placed both Defendant and her counsel on notice that all such materials on the laptop should have been preserved.  No deposition will change the fact that all of the data on the laptop was permanently deleted in its entirety, and in fact, Defendant and her counsel do not deny that Defendant did in fact delete the contents of the laptop.  This is spoliation, and there are consequences for such conduct.  There should similarly be serious consequences for filing false statements to the Court to avoid such consequences.

Once caught in the initial fabrication, Defendant and her counsel are trying to change the story again.  This conduct before the Court calls into question Defendant's credibility and truthfulness, even while under oath in a declaration, aided by her counsel's misrepresentations to this Court.  None of these failures could be cured by further discovery.

## II.   DEFENDANT MAKES ANOTHER MISREPRESENTATION ABOUT HER USE OF CERTAIN APPLICATIONS WHILE WORKING AT MEF.

At a time when one would expect Defendant to ensure the veracity of her statements to the Court, Defendant makes yet another misrepresentation to this Court.  This time, it involves

8

Defendant's failure to comply with this Court's direction to provide access to information on her Wickr, ProtonMail, Telegram, or Signal accounts as required by paragraph 2 of the Court's June 25 Order, Dkt. 58, and paragraph 3 of the Court's February 19 Order, Dkt. 38.  Shockingly, Defendant claims that "Ms. Barbounis does not use these applications and either does not have an account or has used the account in a manner that has no relationship to the instant matter."  Def.'s Mot. for Contempt and Sanctions, Dkt. 65, at 13.

However, in response to a subpoena in a separate proceeding in this Court involving the same parties, a former MEF employee named Delaney Yonchek produced *at least 1,299 Telegram communications* between herself and Defendant, and they communicated about their MEF work. Ex. D, Delaney Yonchek Telegram Chat Menu (highlights added); Ex. E, Telegram Communications Between Lisa Barbounis and Delaney Yonchek.  This evidence shows that, contrary to Defendant's representations to Plaintiff and this Court, Defendant in fact used Telegram in connection with her work at MEF.  Defendant's statements to this Court cannot be trusted, and her continuing failure to comply with this Court's Orders only heightens MEF's concerns.  In addition to the relief sought in MEF's Motion to Compel this material, it further demonstrates why there must be meaningful ramifications for Defendant's misrepresentations to the Court and to MEF.

## III.   DEFENDANT'S TIRESOME PLEA THAT MEF COUNSEL DID NOT CONTACT DEFENSE COUNSEL ABOUT THESE ISSUES IS MERITLESS.

As this Court is aware, over the last nine months, Defendant has refused to cooperate with MEF's discovery efforts.  MEF counsel has reluctantly raised these issues with the Court multiple times, and this Court has been involved in multiple hearings and calls about Defendant's behavior, resulting in multiple orders compelling Defendant's compliance with her obligations (Dkts. 38, 45, 55), ordering Defendant to have data transferred away from her vendor to Cornerstone (Dkt.

9

58), and reserving the right of the Court to "seriously consider" an award of attorneys' fees against Defendant for her conduct (Dkt. 45). As MEF has also described to this Court, even when MEF can get defense counsel to have a discussion, he generally does not follow through on his promises or claims not to have had authority from his client (such as when he and his client agreed to an order in the courthouse after 90 minutes of negotiations on January 15, 2020, but thereafter sought to vacate the order claiming it was not agreed).

Oddly, Defendant claims that her spoliation issues could have "EASILY BE[EN] RESOLVED IN FIVE (5) MINUTES," Def.'s Mot. for Contempt and Sanctions, Dkt. 65, at 7, thus "wast[ing] the Court's time and resources, along with those of Defendant and her counsel," *id.* at 4. But even as of today, after MEF has shown Defendant's fabrications, Defendant did not explain what might have changed had the parties had one additional telephone conversation immediately before MEF filed its motion. He has not stated that he would have agreed to the relief in MEF's motion, and in fact, filed an opposition to the motion. At this point, Defendant's misconduct cannot be resolved with a simple phone call.[5]

The Court should deny Defendant's argument, hold her accountable, and award Plaintiff attorneys' fees for the time spent attempting to cooperate with Defendant.

---

[5] Disturbingly, Defendant continues to make unsupported allegations that are refuted by documents in Defendant's possession. For example, Defendant claims that "[t]he parties did not meet and confer a single time about any of the issues in the three motions filed." *Id.* at 8, 7. Defendant does not mention that MEF's counsel has raised these discovery issues with Defendant multiple times and in an effort to again bring these matters to a decision, sent letters to Defendant's counsel on August 12, 2020 and asked when defense counsel was available for a time to discuss the issues. *See* Pl.'s Fourth Mot. to Compel Def., Dkt. 64, at 2-27 (complete timeline). Not only did MEF not receive available dates from defense counsel, he never responded to the letters at all, and three weeks later, MEF had to seek relief from the Court to avoid further delay. Even if the parties had not previously discussed these matters, Defendant cannot ignore MEF's efforts to have discussions, then cry foul that there were no discussions. Accordingly, Defendant's certification under the Court's Local Rule 26.1(f) was reasonable. *See* EDPA Local Rules of Civil Procedure 26.1(f) ("No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."). MEF's letters alone show that MEF made reasonable efforts, and Defendant ignores MEF's outreach. MEF has no reason for delay and obfuscation, as MEF seeks the proprietary information it fears Plaintiff may disclose. Only Defendant has an incentive to delay and obfuscate, particularly when she has, to date, refused every approach by MEF to enter into a stipulated order that she will not disclose MEF data.

**CONCLUSION**

For all the foregoing reasons, MEF respectfully requests that the Court deny Defendant's Motion, grant Plaintiff's Motion for Contempt and Sanctions, and enter an Order:

(1)    Finding Barbounis in civil contempt for willfully submitting false statements to avoid compliance with an order of this Court;

(2)    Finding Barbounis in civil contempt for failing to comply with discovery orders of this Court;

(3)    Finding that Barbounis spoliated evidence, then lied to the Court about it;

(4)    Entering an adverse inference at any hearing or trial that what Barbounis spoliated from the computer is contrary to her position in this case;

(5)    Entering a default judgment on liability or at least that Barbounis' defenses are stricken for fraud on the Court;

(6)    Finding that Defendant's counsel either participated in the fraud on the Court or at a minimum, recklessly submitted a false declaration of Barbounis unsupported by the documents in counsel's possession, and false pleadings over counsel's signature;

(7)    Requiring defense counsel to submit a sworn statement to the Court regarding: (1) whether counsel possessed the complete documentation described in the attached memorandum prior to submitting it to this Court; (2) whether counsel redacted or obscured material portions of documentation demonstrating the false statements in Barbounis's Declaration; and (3) whether counsel knew that an incomplete or partially obscured version of the documentation was submitted to the Court on which this Court was asked to rely;

(8)     Ordering Barbounis and her counsel to pay MEF's those attorneys' fees and costs

incurred by Plaintiff since January 15, 2020 that would not have been incurred but for the behavior

described herein;

(9)     Setting the matter for a determination of attorneys' fees and costs, as well as

damages on a default judgment, if entered by the Court, for a date certain; and

(10)    Granting such other relief as this Court deems proper.


Dated:  September 23, 2020                      THE MIDDLE EAST FORUM
                                                By counsel

                                                 s/ Sidney L. Gold
                                                Sidney L. Gold
                                                sgold@discrimlaw.net
                                                Sidney L. Gold & Associates P.C.
                                                1835 Market Street, Suite 515
                                                Philadelphia, PA 19103
                                                Tel: (215) 569-1999
                                                Fax: (215) 569-3870

                                                Attison L. Barnes III
                                                abarnes@wiley.law
                                                Wiley Rein LLP
                                                1776 K Street NW
                                                Washington, DC 20006
                                                Tel: (202) 719-7000
                                                Fax: (202) 719-7049

                                                *Counsel for The Middle East Forum*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 23, 2020, a true and correct copy of the foregoing

was filed and served electronically through the Court's CM/ECF system.

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*