**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | NO.     2:19-cv-05697-JS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | MOTION FOR SANCTIONS |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MIDDLE EAST FORUM'S MOTION TO COMPEL LISA BARBOUNIS TO PRODUCE FULL AND COMPLETE DISCOVERY AND IN OPPOSITION TO THE MIDDLE EAST FORUM'S MOTION TO COMPEL THIRD PARTY WITNESSES TO PRODUCE FULL AND COMPLETE RESPONSES TO SUBPOENAS**

Seth D. Carson, Esquire
DEREK SMITH LAW GROUP, PLLC
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

*Attorney for Defendant*
*Lisa Barbounis*

Defendant, Lisa Barbounis ("Ms. Barbounis" or "Defendant") hereby moves the Court to deny The Middle East Forum's ("MEF") Motion to Compel Ms. Barbounis to Produce Full and Complete Discovery and to deny MEF's Motion to Compel Third Party Witnesses to Produce Full and Complete Responses to Subpoenas (Documents 63 and 64, respectively).   In Support of Ms. Barbounis's Opposition to MEF's Motions, Ms. Barbounis presents the following Memorandum of Law and Fact.

## I.   <u>INTRODUCTION</u>

The Middle East Forum is at it again; filing lengthy, misleading, frivolous motions designed solely to harass and needlessly increase the cost of litigation, while attempting to improperly shift the fees of MEF's bad faith actions to Lisa Barbounis and her counsel.  This is a pattern to which MEF and its counsel have engaged since the inception of this litigation.  And now, MEF has finally provided definitive proof that this entire case was presented in retaliation for Ms. Barbounis filing lawful, supported claims of discrimination and harassment in the workplace.  This occurred in the past two weeks, when MEF founder and President, Daniel Pipes, contacted Ms. Barbounis outside of counsel and threatened her in an attempt to force Ms. Barbounis to withdraw her lawful claims of discrimination and harassment in the workplace.  It is important to remember, that Ms. Barbounis began litigation in the Eastern District of Pennsylvania against MEF because she was sexually harassed and assaulted by the Director of The Middle East Forum, Greg Roman.  Greg Roman also sexually assaulted at least one other MEF employee, and forced at least another MEF employee, an eighteen year old intern, to engage in sexual intercourse in a quid pro quo arrangement.  Then, there are the other women who accused Greg Roman of severe and pervasive discrimination and harassment while Greg Roman was MEF's Director.  There are at least seven (7) to date.  Because of Greg Roman's

2

sexual misconduct, Lisa Barbounis filed a Charge of Discrimination with the Equal Employment
Opportunity Commission.  Ms. Barbounis then filed a civil action lawsuit in the Eastern District
of Pennsylvania.  MEF's response was to wage war against Ms. Barbounis using this Court to do
so.  President Daniel Pipes confirmed this in the last two weeks, when he decided to go rogue
and email Ms. Barbounis directly without informing any of the many lawyers who Daniel Pipes
engaged to illegally wage his war against Ms. Barbounis.  Daniel Pipes emailed Ms. Barbounis
and offered to withdraw all claims against Ms. Barbounis and pay Ms. Barbounis's legal fees and
costs if Ms. Barbounis dropped her lawful sexual harassment case against MEF.  Daniel Pipes
also indicated his willingness to interfere with witnesses, and to illegally threaten Ms. Barbounis
with more litigation, based on the exact same claims that have already been filed in this Court.
Daniel Pipes informed Ms. Barbounis that The Middle East Forum was ramping up to file a new
RICO lawsuit against Ms. Barbounis and promised to scuttle this RICO lawsuit if Ms. Barbounis
withdrew her sexual harassment case against MEF.  This is blackmail, plain and simple.  Daniel
Pipes warned Ms. Barbounis as part of the agreement, that Ms. Barbounis would have to
"cooperate" with MEF to defend MEF cases involving at least two remaining litigants – who are
Patricia McNulty and Marnie Meyer.  The implication was clear that Ms. Barbounis was
expected to take sides, truth notwithstanding.  This is MEF's status quo.  Both Patricia McNulty
and Marnie Meyer maintain separate claims for sexual harassment in this Court stemming from
Greg Roman's propensity to subject the female employees at The Middle East Forum to abusive,
sexual misconduct.  Daniel Pipes promised to end all litigation including the instant matter, and
scuttle a RICO lawsuit that has not yet been filed if Ms. Barbounis withdrew her case against
MEF and coop[rated with MEF in other cases where MEF has been sued in this Court.  Daniel
Pipes also confirmed that he believes Ms. Barbounis is a "good person" and agreed to vouch for

Ms. Barbounis in her future endeavors including future job opportunities.   A very strange

promise if he believes the allegations pled in MEF's instant claims and counterclaims in Judge

Wolson's courtroom.   Daniel Pipes said he could not admit to bringing the instant matter in

retaliation, because doing so would admit his complicity in unlawful conduct, but assured Ms.

Barbounis he would do everything he could to help Ms. Barbounis's future job opportunities.

Lisa Barbounis and Daniel Pipes maintained a conversation for days where it was understood

that MEF brough all claims against Ms. Barbounis solely as a litigation tactic to improve MEF's

bargaining position with Lisa Barbounis.   It is with this understanding that Lisa Barbounis now

addresses Documents 63 and 64, which are part of MEF's illegal strategy to force Ms. Barbounis

to withdraw her sexual harassment case.

## II.   ARGUMENT

### A.   Document 63 is another unlawful attempt at fee-shifting and all discovery has been produced.

The Middle East Forum has filed a thirty-eight (38) page diatribe of misleading

information in another attempt to improperly shift fees to Ms. Barbounis and her counsel. Of

course instead of arguing current events, MEF and its counsel, Attison Barnes and Sidney Gold

had to first walk counsel and the Court through yet another revisionist history of events since the

inception of this illegal lawsuit.   Accordingly, instead of focusing on the issues it would like this

Court to address, MEF's Motion begins in December 2019 and slowly walks step by step toward

its misguided point.   Lisa Barbounis has complied with every Order of this Court including the

February 19, 2020 Order and the June 25, 2020 Order.   Cornerstone has been in possession of all

Ms. Barbounis's electronic devices subject to the Court's Order.   Through Cornerstone, Lisa

Barbounis has in fact produced a lot more information than this Court intended due to Attison

Barnes misrepresentations.  The instant Motion focuses on two devices, neither of which are subject to the Court's Order.  MEF's Motion asks the Court to Order Ms. Barbounis to turn over an iWatch that Ms. Barbounis rarely uses.  MEF's Motion also requests an Order that Ms. Barbounis's husband turn over his computer.  Both of these requests are overly broad, unduly burdensome, duplicative, not proportional to the needs of this litigation and needlessly increase the cost of litigation.

Of course before it can address the iWatch and Ms. Barbounis's husband's work computer, MEF has to first take us through the January 15, 2020 Order that was reversed pursuant to Ms. Barbounis's Motion for Reconsideration.  During telephone calls, MEF's counsel was instructed to discontinue wasting time by going back to past events that have no bearing on current events.  Ignoring this directive, MEF's Motion begins with yet another timeline.  This timeline begins in October 2019, where MEF tries to convince this Court that Lisa Barbounis brought this case on herself by refusing to work with MEF to delete information from her devices.  Nothing could be further from truth.  As confirmed by Daniel Pipes' most recent blackmail of Lisa Barbounis, it is absurd to suggest that MEF would not have brought this case as MEF has now brough one other case against Ms. Barbounis as a counterclaim and has threatened Ms. Barbounis with a third RICO case.  Of course, Ms. Barbounis can stop all this litigation anytime by withdrawing her Title VII case against MEF.  MEF does not want legal fees.  MEF does not want damages or injunctive relief.  Ms. Barbounis need only withdraw her Title VII case against MEF and this will all be over, according to Daniel Pipes.

MEF's Motion than takes a tedious walk through October 2019 through November and December 2019, when this illegal lawsuit was filed.  The Middle East Forum began this case by arguing that Lisa Barbounis should have to turn over every device she has ever owned.  MEF

also argued that Lisa Barbounis should also provide MEF with passwords to every one of her social media accounts Ms. Barbounis has ever maintained.  MEF argued that Ms. Barbounis should also provide the passcodes for all Ms. Barbounis's email accounts.  MEF also argued that Ms. Barbounis should also provide the passwords to every cloud-based storage account she ever used.  And all this information should be provided to MEF outside of Lisa Barbounis's counsel. MEF asked for direct access to every one of these accounts, devices, and services, regardless of relevance, privilege, or needs of the case.  When Lisa Barbounis filed a Motion for Reconsideration, MEF accused Ms. Barbounis of bad faith motives.  There isn't a person in the world who would not feel violated by a complete intrusion into their life, through electronic data. But when Lisa Barbounis wished to protect this information, and asked simply that is flow, like every other case in the history of American jurisprudence, through her attorney's office, MEF accused Ms. Barbounis of treacherous motives.

This Court did not agree with MEF and the Motion for Reconsideration was granted.  The Court ruled that the devices should be imaged and searched by a e-discovery vender and Ms. Barbounis provided her devices to Capsicum in compliance with the Court's Order.  Capsicum imaged the devices in February 2020 and it is those images that Cornerstone is working with today.  Accordingly, MEF's entire Motion is based on a false, intentionally misleading premise, that there is eight (8) months of delay.  Just two months after MEF initiated this lawsuit in December 2019, Ms. Barbounis gave her devices to an e-discovery vender in February 2019, and the devices were imaged in their entirety.  All information was preserved.

Of course this does not stop MEF and its counsel from drafting a twenty-six (26) page timeline based on a false and intentionally misleading premise.  Lisa Barbounis had every right to seek that discovery proceed in a manner that protected her personal, private information on

every device, social media account, email account and cloud-based storage service she has ever used in her entire life.

The manner in which documents have been produced by Cornerstone only supports every argument counsel for Ms. Barbounis presented during the course of discovery.  Because of the Court's Order, the parties landed on twenty-five (25) keywords which have been used by Cornerstone to search Ms. Barbounis's devices.  In February and March 2020, MEF gave Capsicum approximately one thousand keywords listed on about twenty pages.  The twenty-five keywords has produced over 200,000 results, almost all of them false positives.  The thousand keywords used by Capsicum produced approximately 1,000,000 results almost all of them false positives.  Counsel for Ms. Barbounis, working alone without co-counsel or paralegal, was not afforded the opportunity required to review this much information.  Therefore June 25, 2020, this Court Ordered that Cornerstone be retained.

MEF's Motion takes a slow, tedious walk from February 2020 until June 25, 2020, in a revisionist history of the discovery process.  Nowhere does MEF even mention that during these months, counsel for Lisa Barbounis was ejected from his office because of a worldwide pandemic and forced to open a new office in his home with his two-year-old daughter, who requires a tremendous amount of attention.  Despite MEF's counsel being the only attorneys who have refused to even consider that the Covid19 outbreak might have created additional challenges, Lisa Barbounis proceeded with her discovery obligations in good faith. Notwithstanding, Lisa Barbounis will not address the misleading nature of Pages 8 through 20 of MEF's motion.  If the Court would like Lisa Barbounis to address these assertions, she can file an amended response at the Court's direction; however, she did not want to waste the Court's time as MEF has decided.

On June 25, 2020, the Court Ordered that Cornerstone be retained and assist with the e-discovery process.  Cornerstone has done so with the assistance of the Director, Business Development, Robert Centofanti ("Centofanti").  If the Court would like to hear from Mr. Centofanti, Defendant would suggest that he would provide a very different account than the misleading information MEF's Motion presents.  From the outset of the Court's Order, Defendant worked with Cornerstone to facilitate the discovery process.  Mr. Barbounis has provided Cornerstone with access to every one of her social media accounts, email accounts and cloud-based storage accounts.  Defendant cooperated with Cornerstone at every stage in this process to provide Cornerstone with access to all devices, accounts, and services.

MEF's Motion argues that information was not provided in connection with third party accounts (Doc 63 p 21).  Again, this information is false and willfully misleading.  The information to which MEF's Motion refers was provided to counsel for MEF months prior.  Defendant did not produce the information at that time.  Defendant was helping all of MEF's attorney gain access to that information  because for some strange reason MEF's attorneys refuse to work with each other.  In another MEF case Lisa Barbounis actually received a subpoena from an MEF attorney for a production of documents produced by another MEF attorney.  The documents Attison Barnes refers to here (Doc 63 p 21) was produced months prior in a matter where Sidney Gold was counsel.  Of course, Sidney Gold is Attison Barnes' pro hoc vice sponsor.  Still, Defendant made certain that all information was accessible for all of MEF's many attorneys.  This was done in good faith as a courtesy.  MEF's motion argues that the information was provided in PDF format.  This is the primary format that attorneys use in these cases to produce information.  Defendant only possessed the information in PDF format.

MEF's Motion continues to intentionally mislead the Court on page 22 (Doc 63 p 22). The information from Lisa Barbounis' devices did not come directly from Lisa Barbounis. It came from Capsicum. Capsicum sent the information by mail to Cornerstone. Defendant was directed by Rob Centofanti at Cornerstone to wait until they received the devices to deal with the accounts. After Cornerstone received the devices, Ms. Barbounis worked with Cornerstone to promptly provide Cornerstone with access to her accounts.

While Cornerstone gathered the information, the parties continued discussion aimed toward the production of documents subject to the 25 search terms. By July 21, 2020 Cornerstone provided assurance that all accounts had been searched and preserved. MEF's Motion fails to mention that Lisa Barbounis and Cornerstone held a telephone call where Ms. Barbounis gave Cornerstone access to all her accounts that required two factor authentication. MEF's Motion fails to mention that the Facebook account failed because of a technical issue that Cornerstone reported. MEF's Motion fails to mention that Lisa Barbounis provided Cornerstone with information connected with every one of her accounts including the accounts that MEF is arguing constitute a discovery deficiency. MEF's Motion mentions a letter sent to counsel for Defendant, but again, MEF never initiated contact via a simple telephone call to discuss this. Lisa Barbounis provided Cornerstone with access to everyone of her accounts. Lisa Barbounis held a telephone call with Cornerstone to assist in accessing accounts with two factor authentication. Cornerstone confirmed on July 21, 2020 that every account had been preserved and Cornerstone was ready to move to the next stage of data collection. See the email from Cornerstone confirming that every account was searched and preserved attached and marked Exhibit "A".

9

MEF today is in possession of full and complete responses to MEF's expedited discovery requests.  Lisa Barbounis has provided access to every one of her accounts.  She has also provided written responses to Plaintiff's discovery requests and produced documents outside of the e-discovery protocol.  There has been no delay caused by Lisa Barbounis.

MEF's Motion continues to argue that Lisa Barbounis is somehow responsible for subpoenas to third parties.  This is not accurate and it is inappropriate for MEF to even raise these issues in a Motion to Compel discovery.  MEF's decision to argue third party subpoenas in a Motion to Compel is very informative.  MEF does not separate Lisa Barbounis from Lisa Barbounis's counsel.  Because counsel for Lisa Barbounis happens to represent certain parties in other cases does not mean that MEF can bootstrap issues related to these third parties in a Motion to Compel Lisa Barbounis to produce discovery.   MEF is simply trying to pile on the bad faith and doing so is only indicative of MEF and its counsel's bad faith.  Amazingly, the subpoenas that MEF is referring to are subpoenas to attend and testify.  It is common place for a third party witness to bring documents listed in a subpoena to attend and testify to the deposition. The fact that they were provided the night before the deposition is a courtesy.  As per MEF's own Motion, these documents were actually provided a day in advance of when they were requested.  Here is an excerpt from an MEF Subpoena for the witnesses to attend ant testify:

> "You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, m1d must pem1it inspection, copying, testing, or sampling of the material: At least one day prior to the deposition please provide any/all documents reflecting or constituting communications and materials exchanged with Lisa Barbounis since August 1, 2019 mentioning MEF, its personnel!, its data, and/or its property."

In yet another display of their bad faith, MEF and its counsel now attempts to argue that Lisa Barbounis should be penalized because these third party witnesses complied with the precise language of their subpoenas (Doc 63. P 27).

MEF and its counsel simply cannot be trusted.  The arguments presented in their motions should not be believed.  They have forfeited the right to credibility.  Their client has gone rogue and confirmed what Lisa Barbounis has argued to this Court since the inception of this lawsuit, that Lisa Barbounis can make it all go away if she just walks away from her Constitutional Rights promulgated in Title VII of the Civil Rights Act of 1964.

At every stage in this litigation, Lisa Barbounis and her counsel has faced specious arguments from bad faith actors.  To cap Daniel Pipes unlawful conduct these past weeks, he added tortious interference with a business relationship to the list of unlawful conduct that includes attempted blackmail and extortion.  Daniel Pipes explained to Lisa Barbounis, "the two of us have the same problem."  Daniel Pipes went on to lodge baseless, false allegations against counsel for Lisa Barbounis in an effort to interfere with Lisa Barbounis's attorney-client relationship, and coerce Ms. Barbounis to drop her lawsuit.  The Declaration of Lisa Barbounis is attached and marked Exhibit "B".

All of the documents that MEF lists in the instant Motion are part of the production of information from Cornerstone.  If the information was not produced, it means it did not hit for a search term and it is deemed not relevant to this case.  MEF tries to argue that certain voice memos should be produced.  These voice memos, if they existed, would have been on the devices that were searched by Cornerstone.  The parties agrees multiple times that these voice memos would be turned over, if they existed, through the e-discovery vender.  Apparently the voice memos have nothing to do with the instant litigation as they did not return for one of the

very broad search terms which MEF developed.  MEF is clearly trying to eat its cake and have it too.  There is nowhere else for Ms. Barbounis to obtain discoverable information.  She does not possess any other devices.  She does not have any other accounts.  She does not subscribe to any other services.

Of course this Motion was inevitable.  MEF gained access to hundreds of thousands of documents, through overly broad requests.  There was no relevance check so MEF received way more information than it ever should have.  But now that is not enough.  MEF still seeks information which Ms. Barbounis does not possess.  MEF seeks access to Ms. Barbounis's husband's work computer.   MEF seeks access to an iWatch.  The Court clearly defined relevance in its February 19, 2020 Order as:

> "Relevant documents are (1) all documents originally belonging to Middle East, and (2) all documents referring or relating to documents originally belonging to Middle East, including any communications between Barbounis and any third party about documents originally belonging to Middle East." (Doc 38).

Ms. Barbounis husband's work computer does not contain any relevant documents.  Ms. Barbounis' iWatch does not contain any relevant documents.  An iWatch is not an independent source of information.  By design, an iWatch is a device that connects with an iPhone.  There is no way to store information on an iWatch.  Moreover, Ms. Barbounis rarely used this device and it only contains personal, private information that has no relevance to the instant matter.  MEF knows that the iWatch cannot yield additional responsive documents and only seeks to harass Lisa Barbounis with yet another frivolous Motion.

The social media accounts that are listed in MEF's Motion were addressed by Cornerstone.  All the Gmail accounts were captured.  All the social media accounts were captured.  Ms. Barbounis sent an email to Cornerstone, through counsel to address all the

accounts in MEF's Motion.  After this email was sent, Ms. Barbounis held a telephone call with Cornerstone to address the accounts that required two factor authentication.  <u>A copy of the email that preceded the phone call is attached and marked Exhibit "C"</u>.  As demonstrated, the accounts that MEF is using in its unlawful attempt to harass and embarrass were discussed with Cornerstone and subject to their review.  Notwithstanding, they do not contain documents that even meet this Court's definition of relevance listed in the February 19, 2020 Order.

**B.  <u>Document 63, MEF's Motion to Compel Third Party Subpoenas should be denied.  All subpoenas were complied with or subject to valid objections.</u>**

Just as frivolous as Documents 63, Document 64 presents false, willfully misleading claims to the Court that should be denied.  The Motion is based on 4 subpoenas.  As stated in MEF's Motion to Compel (Doc 63) hundreds of pages of documents were produced.  These documents were actually produced months before their depositions and were produced again before their depositions.

More important, none of these subpoenas were served.  If MEF can produce an email from counsel for any of these individuals that confirms acceptance of service, I will of course disavow with argument.  Counsel has been unable to locate such an email or correspondence accepting service on behalf of Vasilli Barbounis, Delaney Yonchek, Caitriona Brady, and Patricia McNulty.  MEF cannot assume simply because I represented these individuals in another case that an email of their subpoena negates the Rule requiring service.

Notwithstanding, these individuals did produce documents in response to the subpoenas.  Over a thousand pages of documents were produced including all images in their native format.  In the same folder where these documents were produced, these third party witnesses provided

written responses to the subpoenas.  <u>See</u> <u>written responses to the subpoenas of Vasilli Barbounis,</u> <u>Delaney Yonchek, Caitriona Brady, and Patricia McNulty attached and marked Exhibit "D".</u>

Because complete written responses were provided in additional to a large production of documents, MEF's Motion must be denied.

**I.   <u>CONCLUSION</u>**

For the reasons set forth above, the Honorable Court should deny MEF's Motion to Compel Defendant's Production of Documents (Document 63) and Motion to Compel Third Party Witnesses to Produce Responses to Subpoenas (Document 64).

**DEREK SMITH LAW GROUP, PLLC**

By:     /s/ Seth D. Carson          
Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED: October 20, 2020