UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| Plaintiff, | : |
| v. | : |
| LISA REYNOLDS-BARBOUNIS, | : Civil Action No.: 19-5697 |
| Defendant. | : |

**STATUS REPORT REGARDING DEFENDANT'S CONTINUING VIOLATIONS OF THIS COURT'S ORDERS, REQUEST FOR TELEPHONE CONFERENCE WITH THE COURT, AND SUPPLEMENTAL DECLARATION FROM CORNERSTONE**

Plaintiff The Middle East Forum ("Plaintiff" or "MEF"), by counsel, submits this Status Report, Request for Telephone Conference with the Court, and Supplemental Declaration of Robert Centafonti of Cornerstone in response to the filing of Defendant's Declaration on Friday, December 4, 2020 (Dkt. No. 77).

As discussed in further detail below, Defendant's Declaration is factually misleading and incomplete. In truth, Defendant has not complied with this Court's November 25, 2020 Order, which ordered the Defendant to "identify and supply to Cornerstone Discovery her account username and password for Protonmail, and shall promptly cooperate with Cornerstone to complete collection of her Facebook, Telegram, Signal, and Wickr accounts." *See* Order, Dkt No. 75. Perhaps most troubling, Defendant's Declaration exposes that Defendant waited until 3:00 p.m. on December 4, 2020 (**a year after discovery was served and not until the most recent deadline set by the Court for "complete collection"**), to provide login credentials to **less than all** of Defendant's accounts. These accounts are now known to exist, and apparently were never

previously preserved or collected in this litigation or at any time after Defendant received a preservation notice in October 2019. Defendant's claims that she no longer possesses some of the Court-ordered information because it was not preserved provides no solace to Plaintiff MEF which acted diligently by serving "expedited" discovery requests at the time it filed this action in 2019. *See* Pl.'s Motion for Expedited Discovery, Dkt. No. 06.

In response to the specific representations under oath in Defendant's Declaration and because Defendant's continuing discovery abuse has caused even greater prejudice to MEF,[1] MEF provides the Supplemental Declaration of Robert Centafonti of Cornerstone attached as Exhibit A, and states as follows:

**Defendant's Representation in Declaration:** "Pursuant to the Court's November 25, 2020, Order, I contacted Cornerstone today and spoke with an individual named Kyle." *See* Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 3.

**MEF's Response:** True to form, Defendant waited until 3:00 p.m. on the latest court-ordered due date to contact Cornerstone to discuss account log-in information (as if Cornerstone could magically turn around a production the same day). *See* November 25, 2019 Order. The Court's Order specifically required Defendant "promptly cooperate with Cornerstone to ***complete collection*** of her Facebook, Telegram, Signal, and Wickr accounts," not wait until 3:00 p.m. on the due date to contact Cornerstone with *some* log-in information  *See* Order, Dkt No. 75 at 1 (emphasis added). Even if Defendant had provided all the data to Cornerstone on December 4 (which she did not), her delay ensured that Cornerstone would not be able to complete the

---

[1] As the Court is aware, MEF diligently sought discovery to aid its Motion for Preliminary Injunction currently set for hearing on Thursday, December 17, 2020. In a good faith effort to address the issues presented in the Motion and to explore a possible stipulated order, MEF's undersigned counsel has e-mailed Defendant's counsel seven (7) times since December 2, 2020 to seek his available times for calendaring a discussion to no avail. After Defendant's counsel finally stated that he was available at 11:30 a.m. today (December 16, 2020), undersigned counsel sent a calendar invitation for that time. Although undersigned counsel waited on the call for an hour, defense counsel did not join the call, nor did he send notice that he would not show.

collection of these accounts, as required in the Order. Once again, Defendant's disregard for Court-mandated deadlines and continued dilatory conduct continues to prejudice MEF, and limit its ability to prosecute its claims in a timely manner.

**Defendant's Representation in Declaration:** "I provided the login credentials to Kyle for my Facebook and Proton Mail accounts, and Kyle stated that he accessed both accounts while we were on the telephone." Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 7.

 **MEF's Response:** Defendant provides no answer or justification for why it took over five (5) months since she was initially ordered to provide Protonmail and Facebook account information to Cornerstone and why she provided account information for a new Protonmail account that was not in existence until recently (as opposed to the original Protonmail account). *See* Order, Dkt. No. 58 at ¶ 2 ("On or before 5:00 p.m. EST on Monday, June 29, 2020, counsel for Defendant shall identify and supply Cornerstone with Defendant's ("Barbounis") account usernames and passwords for…. ProtonMail, Facebook (including but not limited to Facebook Messenger), Twitter, Instagram, WhatsApp, Signal, Telegram, Wickr, iCloud, and Dropbox (collectively, the "Accounts") (emphasis added). Additionally, Defendant previously represented on multiple occasions that all responsive data had been produced from the Facebook account, but now that log-in data has been provided, her representation was proven false with no explanation why this data was not produced any time over the past year. Furthermore, waiting a year to allow collection of the data (which was never preserved or collected before now) resulted in an egregious failure to preserve the data contrary to the preservation notice before this lawsuit was filed in December 2019 and contrary to basic discovery obligations. This too results in incurable prejudice to MEF.

While Defendant represents to the Court that she provided her Protonmail log-in information to Cornerstone, this is a new Protonmail account created just weeks ago, not the

Protonmail account she used for the communications at issue in this lawsuit.  This representation is deceitful at best, as Defendant knows that a search of this new Protonmail account will be useless.  To the extent that she now claims there is no ability to collect the data from the Protonmail account at issue, this is further spoliation for failure to preserve and collect the data over the last year and further prejudice to MEF.

**Defendant's Representation in Declaration:** "The only Proto Mail [sic] account to which I have access, I started recently…. The only other Proton Mail account that I have used does not belong to me. I no longer have access to this account. It is not my account and I am no longer authorized to access the account." Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 8-9.

**MEF's Response:** For the first time since this litigation, Defendant concedes, despite prior representations to the contrary, that she used a Protonmail account.[2]  And still Defendant is not forthcoming with an explanation that is certainly needed.  Defendant's Declaration does not provide any context as to: (1) when she stopped using the "other" ProtonMail account; (2) where the information for the "other" ProtonMail account is stored; (3) whether Defendant made any effort over the last year to access the "other" ProtonMail account and produce relevant information in accordance with the Court's November 25, 2020 Order; (4) to whom the "other" ProtonMail account belongs; (5) why she is no longer authorized to access the "other" ProtonMail account; and (6) since when Defendant no longer has access the "other" ProtonMail account.  This Court should not tolerate such disregard for multiple court orders.

If Defendant used the Protonmail account, then she had control over the data that she spread through the account, but now hides behind an excuse that she no longer as access to the original

---

[2]  Indeed, images of Defendant's cell phone home screen show not only a Protonmail account, but a Wickr account, a Signal account, and a Telegram account, and that she was using these accounts in 2019 and 2020.  *See* Ex. 1, Screenshot of Home Screen (Telegram application identified by white and blue icon with paper airplane, ProtonMail application identified by grey icon with padlock, Signal application identified by blue icon with message bubble in "Social" applications folder, Wickr identified by white icon in "Social" applications folder); Ex. 2 Second Screenshot of Home Screen; Ex. 3 Screenshot of Telegram and ProtonMail Notifications; Ex. 4 Screenshot of Signal Notifications.

4

account, how her privileges were somehow deleted, or why she has only now disclosed this information a year after receiving discovery requests. Essentially, Defendant has ensured that the evidence that she took no action to preserve (or disclose that someone else would need to be contacted to preserve) would be spoliated and unavailable. Such litigation tactics are distasteful and severely prejudice Plaintiff.

**Defendant's Representation in Declaration:** "Cornerstone stated to me that they were unable to access any Telegram, Wickr, or Single [sic] account through login credentials." Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 13.

**MEF's Response:** Again, Defendant is not forthcoming to the Court. As the attached Supplemental Declaration from Cornerstone states, Cornerstone has never stated that it is unable to access to Defendant's Telegram, Wickr, or Signal accounts, but instead that Cornerstone has never been provided with the information to do so. *See* Ex. A, Supplemental Declaration of Robert Centofanti at ¶ 8. In his original Declaration, Mr. Centofanti made it clear that as per the Court's June 25, 2020 Order, Cornerstone was instructed to collect and process the phone images produced by Defendant's e-discovery vendor (Capsicum Group). *See* Declaration of Robert Centofanti, Dkt. No. 74-1 at 19. Contrary to Defendant's statements, had Cornerstone imaged the phones itself and been given Defendant's account information for Telegram, Wickr, and Signal, it could have accessed Defendant's accounts, but that was not the situation here. The images Cornerstone received from Defendant's vendor did not contain any Telegram, Wickr, or Signal account information such that Cornerstone could not confirm the existence or non-existence of this data on Defendant's phone images. *Id.* at 20. Cornerstone's inability to detect this account information on the existing phone images does not mean that Cornerstone is "unable to access any Telegram, Wickr, or Single [sic] account through login credentials" as Defendant represents in her Declaration (Dkt. No. 77 at ¶ 13).

Defendant previously represented that its vendor had imaged all of the existing accounts, but now that Defendant has supplied Facebook log-ins and access information within the last two weeks, it proves that this information does exist, but it was not on the images provided to Cornerstone by Defendant's vendor.  She also now concedes there is a Telegram account, but Cornerstone does not have access to it.  Defendant's apparent limitations on the collection by her vendor (presumably by failing to provide that vendor with the same log-in information that this Court has ordered defendant to produce multiple times without success), certainly resulted in a failure to preserve the data consistent with basis discovery obligations, and her claims that she no longer has access to damage (or no longer uses these accounts) deflects from the spoliation issue.  Defendant has now testified in deposition in another proceeding that she had Telegram, Wickr, and Signal accounts and used them during and after her employment at MEF.  To claim in a declaration to this Court that "I do not have a Wickr account" (*see* Declaration at ¶ 17) is a red herring because the real issue is what did Defendant do over the last year to preserve the Wickr data for the account she *did* have, even if she does not have one now.  The Wickr icon is visible on a screenshot of her cell phone, so it is misleading for her to avoid the issue by claiming that she does not now have such an account.  For all of these accounts, the Court should at the very least require Defendant to submit a declaration under oath stating what action she took since receiving a preservation notice before this lawsuit was filed to preserve the data and why this information was deleted in violation of preservation notices.

**Defendant's Representation in Declaration:** "Cornerstone communicated to me, through Kyle, that there was no way to access this information as data from these accounts resides on the device." Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 14.

  **MEF's Response:** Similar to the response above, this representation is also misleading.  If the account data was not contained in the images received by Cornerstone, Cornerstone would not

have any such data to process. Defendant has never provided an answer to the obvious question of why this information was not imaged by her vendor and why she has never turned over the log-in information until now, a year after the lawsuit was filed. If the information was preserved, where is it now and how was it preserved? If the information does not now exist, when was it deleted and why was it not preserved? The answers to these questions are critical for MEF to prosecute its claims and for the Court to understand how Defendant has evaded her discovery obligations in this suit and disregarded the Court's orders.

**Defendant's Representation in Declaration:** "I believe Cornerstone meant that the information from any Telegram, Single [sic], or Wickr account would have been on my telephones when they were imaged in February 2020." Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 14.

**MEF's Response:** Again, this representation is misleading. Just because there is no Telegram, Signal, or Wickr information in the imaged data at Cornerstone does not mean that the information was collected previously. The implication Defendant is seeking to make is that if the data was on the phones at the time, then it would have been captured. That logic does not follow, and Defendant has done nothing to provide proof that any action was taken to preserve or image the data (either at the time the phones were imaged or in the several months between the preservation notice in October 2019 and the imaging in February 2020). The fact that MEF is in this situation a year later after repeatedly cautioning defense counsel to preserve any data (and indeed suggesting that the parties mutually engage a vendor to image everything since late December 2019) is tragic. Defendant's inaction raises even more red flags about spoliation of evidence, and should not be tolerated by this Court

**Defendant's Representation in Declaration:** "I do not have a Wickr account." Declaration of Lisa Reynolds-Barbounis, Dkt. No. 77 at ¶ 17.

**MEF's Response:** As stated above, this is a misleading statement. Defendant admitted that she *had* a Wickr account and used it to communicate with Gregg Roman, Director of MEF. Moreover, Defendant does not state whether this information was preserved in accordance with preservation notices sent to her through Plaintiff's counsel in October 2019, or the extent to which the data has now been deleted and destroyed.

In sum, Defendant's Declaration of December 4, 2020 is incomplete, misleading, and inaccurate. This Court should order Defendant to immediately comply with its November 25, 2020 Order in full, and to file a supplemental declaration under oath to answer the glaring questions provided above. The Defendant's misconduct described herein and indeed throughout the last year of discovery are precisely the types of misconduct deserving of the contempt sanctions requested in MEF's pending motion for contempt and sanctions.

Dated: December 16, 2020              THE MIDDLE EAST FORUM
                                      By counsel

                                      s/ Sidney L. Gold
                                      Sidney L. Gold
                                      sgold@discrimlaw.net
                                      Sidney L. Gold & Associates P.C.
                                      1835 Market Street, Suite 515
                                      Philadelphia, PA 19103
                                      Tel: (215) 569-1999
                                      Fax: (215) 569-3870

                                      Attison L. Barnes, III
                                      abarnes@wiley.law
                                      1776 K Street NW
                                      Washington, DC 20006
                                      Tel: (202) 719-7000
                                      Fax: (202) 719-7049

                                      *Counsel for The Middle East Forum*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on December 16, 2020, a true and correct copy of the foregoing was filed and served electronically through the Court's CM/ECF system.

      s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*