IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-5697 |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                              **January 8, 2021**

Plaintiff The Middle East Forum brings this breach of contract and trade secrets action against Defendant Lisa Reynolds-Barbounis. Middle East Forum claims Barbounis improperly retained and disseminated confidential company information in violation of her employment agreements and trade secrets statutes. Middle East Forum moves for a preliminary injunction, asking this Court to enjoin Barbounis from further disseminating its confidential information and require her to delete confidential information still in her possession. Because Middle East Forum has failed to establish immediate, irreparable harm if an injunction is not issued, the Court will deny the motion.

**FINDINGS OF FACT**

Middle East Forum or MEF is a 501(c)(3) nonprofit organization in Philadelphia, Pennsylvania. Middle East Forum purports to "promote[] American interests in the Middle East and work[] to protect Western values from Middle Eastern threats." Mot. for Prelim. Inj. 2, ECF No. 5. Barbounis is a resident of Philadelphia who was employed at Middle East Forum as an Executive Assistant to the Director and later Director of Communications from October 16, 2017, until August 9, 2019.

Upon joining Middle East Forum, Barbounis signed a Confidentiality & Non-Disclosure Agreement (NDA). The NDA prohibited Barbounis from disclosing Middle East Forum

confidential information to third parties, and required her to take reasonable measures to safeguard and avoid disclosure of such information. *See* Am. Compl. Ex. B., ECF No. 20. In January 2019, Barbounis signed Middle East Forum's Bring Your Own Device Agreement (Device Agreement). The Device Agreement required Barbounis to ensure that no one other than herself would have access to Middle East Forum's data, including "email, documents, spreadsheets, contacts, calendars, [and] chats." *Id.* Ex. D.

As part of her employment at Middle East Forum, Barbounis had access to sensitive information, including the identity of donors, donation amounts, internal strategy documents, policy memoranda, and funding proposals. Middle East Forum stores its information on a cloud service provider, OneDrive, allowing employees to access its information without having to export it onto their personal devices. Despite having access to this storage, Barbounis downloaded and retained Middle East Forum information on her personal devices. The information includes notes from an executive committee meeting and documents identifying Middle East Forum's business associations. Forensic analysis of Barbounis's personal devices also revealed Barbounis possesses photographs of Middle East Forum whiteboard diagrams, meeting notes, and personal information of Middle East Forum's President, as well as approximately 68 audio recordings related to her work at Middle East Forum.

On multiple occasions, Barbounis emailed information associated with Middle East Forum to Amy Mekelburg, whom Barbounis describes as a personal friend. Mekelburg is not affiliated with Middle East Forum, and instead is associated with the RAIR Foundation, an organization that purports to catalog "Islamic extremist activity." On April 10, 2019, from her personal e-mail, Barbounis sent Mekelburg an excel file titled "Foundations.xlsx." The file lists the name, contact information, and donation amount of approximately 25 Middle East Forum donors. Barbounis

testified all of the listed donations were above $5,000 and therefore publicly reported on the donors' Form 990. Middle East Forum's Director testified half of the donations were not public information, and it depended on whether the donor was using a private foundation. In addition, he testified the donors' contact information was not all public. The Court finds the Director's testimony credible on this issue.

On April 11, 2019, from her personal e-mail, Barbounis forwarded Mekelburg an internal Middle East Forum e-mail thread that contained names of donors and prospective donors, as well as the amounts solicited. Just prior to sending the April 11, 2019 e-mail, Barbounis forwarded it from her work e-mail to her personal e-mail. On June 18, 2019, from her personal e-mail, Barbounis sent Mekelburg a document titled "MEF Europe," which was a memorandum from Barbounis to Middle East Forum's leadership regarding Middle East Forum's expansion into Europe. Finally, on August 27, 2019, approximately two weeks after leaving Middle East Forum, Barbounis again e-mailed Amy Mekelburg from her personal e-mail, attaching three excel files containing "media lists" produced by another Middle East Forum employee via the third-party software program, "Meltwater." Barbounis accessed these three files the day before she resigned from Middle East Forum.

Barbounis left Middle East Forum on August 9, 2019. Since approximately August 19, 2019, she has worked as the Director of Communications for United States Representative Randy Weber of Texas. Barbounis has stated she has no present intention of disclosing any of Middle East Forum's information still in her possession. The record supports that assertion. Middle East Forum has presented no evidence suggesting Barbounis intends to make any further disclosures of any of its information.

On December 3, 2019, Middle East Forum filed a Complaint against Barbounis. Middle

East Forum filed the instant motion for preliminary injunction on December 5, 2019. Middle East Forum then filed an Amended Complaint on January 15, 2020, alleging breach of both the NDA and Device Agreement; violations of the Pennsylvania Uniform Trade Secrets Act and Defend Trade Secrets Act of 2016; violations of the Computer Fraud and Abuse Act and Stored Communications Act; conversion; and breach of fiduciary duty. After several delays due to discovery disputes and the COVID-19 pandemic, the Court conducted a hearing on the motion for preliminary injunction on December 17, 2020, and December 23, 2020. At the hearing, both parties presented argument and called multiple witnesses.

**LEGAL STANDARD**

To obtain a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, a movant must first demonstrate the two "most critical" factors: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If a movant meets both of these two "gateway factors," a district court balances them alongside two additional factors: "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* at 179, 176. A preliminary injunction is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

**DISCUSSION**

The Court will deny the motion because Middle East Forum has failed to establish it will be irreparably harmed if the motion is not granted. Before turning to irreparable harm, the Court will first address Middle East Forum's likelihood of success on each of the claims advanced in its

motion. Because the Court finds Middle East Forum failed to establish irreparable harm, it need not address the parties' arguments with respect to the possibility of harm to others from granting the injunction, or the public interest in granting injunctive relief. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to demonstrate irreparable injury[] must necessarily result in the denial of a preliminary injunction.").

Middle East Forum has demonstrated a reasonable probability of success on the merits for both its breach of contract claims and violation of trade secrets claims. A likelihood of success on the merits "requires a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179. "To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. *See Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980); *McCahon v. Pa. Tpk. Comm'n*, 491 F. Supp. 2d 522, 527 (M.D. Pa. 2007). In determining whether success is likely, the Court must look to the legal principles controlling the claim and the potential defenses available to the opposing party. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir.2000). Middle East Forum's instant motion advances claims for breach of contract and violation of trade secrets statutes.[1] Specifically, Middle East Forum alleges Barbounis breached two of her employment contracts—the NDA and Device Policy[2]—and violated both the Pennsylvania Uniform Trade Secrets Act and Defend Trade Secrets Act of 2016.

---

[1] Although Middle East Forum's Complaint includes claims for violating the Computer Fraud and Abuse Act, violating the Stored Communications Act, conversion, and breach of fiduciary duty, Middle East Forum does not advance those claims in support of its request for injunctive relief.

[2] In its motion for preliminary injunction, Middle East Forum also alleges Barbounis breached its personnel manual. However, Middle East Forum's Amended Complaint includes only two counts of breach of contract: the NDA and Device Agreement. *See* Am. Compl. 14–15, ECF No. 20. Because breach of the personnel manual is not part of a claim in Middle East Forum's Amended Complaint, the Court does not consider the personnel manual in evaluating Middle East Forum's

Middle East Forum has shown a reasonable probability of success on the merits for both of its breach of contract claims. To succeed on a breach of contract claim under Pennsylvania law, the plaintiff must prove: "(1) the existence of a contract, including its essential terms[;] (2) a breach of the contract[;] and[] (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). It is undisputed that both the NDA and Device Agreement were contracts between the parties.

The NDA required Barbounis to "agree not to disclose any Confidential Information to any third party." Am. Compl. Ex. B., ECF No. 20. The NDA defined confidential information to include, among other things, "the names and/or addresses . . . utilized by donors . . . who provide financial or in-kind support to MEF." *Id.* Similarly, pursuant to the Device Agreement Barbounis promised "that no person other than [her]self will see or have access to MEF data" and, if she downloaded or saved any such data onto her device, to "ensure that no person other than [Barbounis] will see or have access to it." MEF data is defined as "email, documents, spreadsheets, contacts, . . . or other Middle East Forum proprietary information." *Id.* Ex. D.

Middle East Forum has demonstrated a reasonable probability of success on its claim that Barbounis breached both the NDA and Device Agreement when she sent donor information to Mekelburg. Barbounis does not dispute that she sent a list containing donor names, contact information, and donation amounts to Mekelburg on April 10, 2019. *See* Hr'g Tr. 97–100, Dec. 23, 2020. Nor does she dispute that Middle East Forum's donor list is closely held within Middle East Forum. *See id.* 99:5–8. Rather, Barbounis argues the information was publicly available

---

likelihood of success on its breach of contract claims. *See Ball v. Famiglio*, 396 F. App'x. 836, 837 (3d Cir. 2010) ("[T]here must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." (internal quotations and citation omitted)).

because it only included donations over $5,000, which she testified would need to be reported on the donors' Form 990. *See id.* 100:1–8. Barbounis fails to recognize that, regardless of whether all of the donors on the list reported their donation to the IRS, the information she sent to Mekelburg fits squarely within "confidential information" and "MEF information" as defined by both agreements. With respect to the NDA, Barbounis undisputedly sent "the names . . . utilized by donors . . . who provide financial or in-kind support to MEF" to a third party. Regarding the Device Agreement, Barbounis failed to "ensure that no person other than [Barbounis] [would] see or have access to" Middle East Forum spreadsheets or documents (the donor list).

It is well established that breaching an employment agreement by disclosing confidential information to a third party results in damage.[3] *See, e.g.*, *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 118 (3d Cir. 2010); *Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. 06-567, 2006 WL 1517382, at *20 (E.D. Pa. May 31, 2006). This is particularly true when the third party is a potential competitor. *See Campbell Soup Co. v. ConAgra, Inc.* 977 F.2d 86, 92–93 (3d Cir. 1992). Middle East Forum's Director testified that Mekelburg worked for the RAIR Foundation. *See* Hr'g Tr. 80:17–19, Dec. 17, 2020. Barbounis testified that Mekelburg and RAIR work to catalog "Islamic extremist activity." Hr'g Tr. 53:2–11, Dec. 23, 2020. Further discovery is likely necessary to determine the nature and extent of the harm caused by Barbounis's breach of contract. However, for the purposes of a motion for preliminary injunction, Middle East Forum has shown a reasonable

---

[3] Middle East Forum asserts Barbounis also breached both contracts when she repeatedly sent its confidential information (as defined by both agreements) to her personal e-mail account. While this may amount to a breach of the agreements, Middle East Forum has not demonstrated what if any damages resulted from that breach. For purposes of this motion, the Court will therefore only analyze the breach of contract claim as it pertains to Barbounis's disclosures to third parties.

7

probability of success on its breach of contract claims because there is evidence that Barbounis sent information to a potential competitor.

Middle East Forum has also shown a reasonable probability of success on the merits for its Defend Trade Secrets Act of 2016 (DTSA) and Pennsylvania Uniform Trade Secrets Act (PUTSA) claims. The DTSA creates a private right of action for the misappropriation of trade secrets. *See* 18 U.S.C. 1836(b)(1). To succeed on a claim under the DTSA, "a plaintiff must show (1) that they own a trade secret and (2) that the defendant misappropriated the trade secret." *Herley Indus v. R Cubed Eng'g, LLC*, No. 20-2888, 2020 WL 6504588, at *5 (E.D. Pa. Nov. 5, 2020) (citation omitted). The PUTSA similarly allows for injunctive relief for "actual or threatened misappropriation" of trade secrets. *Id.* (citing 12 Pa. Cons. Stat. § 5303). "Although the DTSA and the PUTSA use different wording to define a trade secret, they essentially protect the same type of information." *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018).

Middle East Forum has sufficiently established that its donor lists are a trade secret.[4] Both the DTSA and PUTSA define a protected trade secret as information that: "(a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use." *Id.* (citing 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302). Here, Middle East Forum took reasonable steps to keep its donor lists secret. Its NDA specifically classifies donor information as the company's confidential

---

[4] Middle East Forum further asserts its "media lists" generated by third-party software "Meltwater" were trade secrets. The Court disagrees. A trade secret cannot be "readily ascertainable by proper means." *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018). While Middle East Forum has presented some evidence that the inputs were specifically catered to its interests (e.g., articles about President Trump and Islam), it has not presented any evidence to demonstrate a third party could not obtain all of the disclosed information through its own Meltwater subscription.

information and it prohibits disclosure of such information to any third party. *See Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018) (finding a company took reasonable means to keep information secret where it classified information as confidential and restricted disclosure). Further, Barbounis testified that Middle East Forum's donor list is closely held within Middle East Forum. *See id.* 99: 5–8.

Middle East Forum's donor lists, as well as the organizations it was targeting as prospective donors, satisfy the remaining elements of a trade secret. The donor lists, which include the identity and information of Middle East Forum's financial supporters and prospective targets, can best be analogized to customer lists. And a customer list can qualify as a trade secret. *See Bimbo Bakeries USA, Inc. v. Botticella*, No. 10-0194, 2010 WL 571774, at *10 (E.D. Pa. Feb. 9, 2010), *aff'd* 613 F.3d 102 (3d Cir. 2010) (holding customer list, including identities of company's customers targeted for upcoming bids, qualified as a trade secret); *see also SI Handling Sys. Inc. v. Heisley*, 753 F.2d 1244, 1258 (3d Cir. 1985) (stating customer lists have long been protectible as trade secrets under Pennsylvania law). Whether customer lists in fact rise to the level of a trade secret requires the Court to consider "(1) whether the information contained on the customer lists is obtainable in significant part; and (2) whether it is freely available without great difficulty." *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-5084, 2012 WL 628000, at *22 (E.D. Pa. Feb. 27, 2012) (citation and internal quotations omitted).

Middle East Forum's Director testified that the donor information Barbounis sent to Mekelburg on April 10, 2019, contains sensitive information, and that he considered it part of his customer list. *See* Hr'g Tr. 81–82, Dec. 17, 2020. He further testified that, in addition to the donor's names and donation amounts, the document contains the personal contact information of the individuals who contributed to Middle East Forum. *See id.* 82:18–19. Regarding the e-mail

Barbounis sent Mekelburg on April 11, 2019, the Director testified that, in addition to current donor identities, the e-mail contains *prospective* donors Middle East Forum planned to solicit, including how much it would be seeking. *See id.* 86:1–17. Barbounis testified all of the donor information was publicly available because it only included donations above $5,000, which must be reported on the donors' Form 990. *See* Hr'g Tr. 100:1–8, Dec. 23, 2020. However, Middle East Forum's Director stated that about half of the donations were not public information, and it depended on whether the donor was using a private foundation. *See* Hr'g Tr. 155–56, Dec. 17, 2020. On that fact, the Court finds the Director's explanation credible. Further discovery may shed light on whether all of the information contained in the donor lists was in fact public and readily available to Mekelburg, as Barbounis claims. Nonetheless, Middle East Forum has presented sufficient evidence to demonstrate a likelihood of success on its claim that the donor information was a trade secret. *See PNC Mortg.*, 2012 WL 628000, at *22 (finding genuine issue of material fact whether customer list that included some publicly available information was a trade secret).

Lastly, Middle East Forum has sufficiently established that Barbounis misappropriated its trade secrets when she disclosed the donor list to Mekelburg. Both the DTSA and PUTSA defines misappropriation to include the "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5); 12 Pa. Cons. Stat. Ann. § 5302. It is undisputed Barbounis sent the donor list and forwarded an e-mail containing donor information to Mekelburg. Barbounis has not alleged nor did she testify that she received consent to do so. Without consent for Barbounis to disclose the donor list and information, Middle East Forum has met its burden of showing a reasonable probability of success on the merits of its trade secrets claims.

While the Court finds Middle East Forum has shown a reasonable probability of success on the merits, Middle East Forum has not shown that it will be irreparably harmed if its motion for

preliminary injunction is denied. "A plaintiff seeking a preliminary injunction must make a "clear showing of immediate irreparable injury." *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 358 (3d Cir. 1980) (citation omitted). The injury must constitute "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted). The preliminary injunction "must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Additionally, "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

Middle East Forum contends it will suffer irreparable harm in the form of damage to its business relationships and goodwill if an injunction is not issued to prevent Barbounis from disclosing its confidential information. It is true that, in certain circumstances, potential disclosure of a company's confidential information can constitute irreparable harm. *See, e.g.*, *Bimbo Bakeries USA, Inc.*, 613 F.3d at 118 (upholding injunction preventing former employee with access to confidential information from joining competitor). However, irreparable harm will not be presumed merely because the elements of a trade secret claim are satisfied. *See Campbell Soup Co.*, 977 F.2d at 92–93. Rather, the risk of irreparable harm must be immediate. *See Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) ("Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury." (internal quotation marks and citation omitted)).

Middle East Forum has not shown an immediate risk of irreparable harm. This is not a case where a company is attempting to enforce a noncompete covenant against a former employee.[5]

---

[5] Unlike this case, every case Middle East Forum cites in support of establishing irreparable harm involved enjoining a former employee from joining a competitor. *See* Mot. for Prelim. Inj. 18–19, ECF No. 5.

11

Barbounis is the Director of Communications for a U.S. Congressman, and Middle East Forum has presented no evidence that its confidential information would be relevant to Barbounis's current employment. Further, Middle East Forum has presented no evidence that Barbounis is currently using, attempting to use, or even considering using any of its confidential information for any purpose. *See Schuylkill Valley Sports, Inc. v. Corporate Images Co.*, No. 20-02332, 2020 WL 3167636 at *17 (E.D. Pa. June 15, 2020) (denying preliminary injunction because the plaintiff did not produce evidence that the defendant had any intention to imminently disclose confidential information). The mere possibility of disclosure of confidential information is insufficient to establish irreparable harm. *See Cont'l Grp., Inc*, 614 F.2d at 359 ("Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued '*to restrain one from doing what he is not attempting and does not intend to do*.'" (emphasis added)).

In arguing that it will be irreparably injured in the absence of an injunction, Middle East Forum cites Barbounis's past disclosures to Mekelburg as evidence of Barbounis's willingness to divulge confidential information. *See* Hr'g Tr. 136–37, Dec. 23, 2020. Specifically, Middle East Forum points to the fact that Barbounis accessed certain confidential information prior to her departure and sent it to Mekelburg as a clear threat of harm. *See id.* at 137:10–17. While relevant to Middle East Forum's likelihood of success on the merits, past harm such as this is not relevant to the instant irreparable harm analysis. In assessing irreparable harm, "[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm *at the time the preliminary injunction is to be issued*." *SI Handling Sys., Inc.*, 753 F.2d at 1264 (emphasis added); *see also Freedom Med. Inc.*, 343 F. Supp. 3d at 530 ("[A] showing of past harm, without more, is insufficient to justify the issuance of a preliminary injunction."). Middle East Forum has presented no evidence that it

is likely to suffer immediate irreparable harm from Barbounis's future breach of contract or misappropriation of trade secrets. *See Freedom Med. Inc.*, 343 F. Supp. 3d at 523 (denying preliminary injunction for trade secrets claim because plaintiff failed to show an immediate risk of future misappropriation). Accordingly, the Court concludes Middle East Forum has failed to establish irreparable harm necessary to justify a preliminary injunction.

**CONCLUSION**

Because Middle East Forum has failed to demonstrate it will be irreparably harmed if an injunction is not issued, its motion for preliminary injunction will be denied.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.
