LAW OFFICES OF
# SIDNEY L. GOLD & ASSOCIATES
A PROFESSIONAL CORPORATION

1835 MARKET STREET, SUITE 515
PHILADELPHIA, PA 19103
(215) 569-1999   FAX (215) 569-3870

SIDNEY L. GOLD **++ *
TRACI M. GREENBERG* **
NEELIMA VANGURI*
WILLIAM RIESER*
JAMIE L. FORD*
LEANNE LANE COYLE*
MARGARET KING*

\*   ALSO ADMITTED IN NEW JERSEY
\*\*  ALSO ADMITTED IN NEW YORK
++  ALSO ADMITTED IN DISTRICT OF COLUMBIA

October 8, 2021

<u>**Via ECF**</u>

The Honorable Juan R. Sánchez
United States District Court
for the Eastern District of Pennsylvania
601 Market St., Room 14613
Philadelphia, PA 19106-1797

**RE:  Plaintiff's Opposition to Defendant's "Motion to Strike or in the Alternative for Extension of Time" in** *The Middle East Forum v. Barbounis*, **No. 2:19-cv-05697-JS**

Dear Judge Sanchez:

On behalf of Plaintiff The Middle East Forum ("MEF" or "Plaintiff"), I write in response to the letter filed by Defendant Lisa Barbounis ("Defendant") at 12:57 a.m. on October 1, 2021 purporting to be a "Motion to Strike or in the Alternative for Extension of Time" (the "Letter"). (ECF No. 108).[1] For many reasons, this filing was improper and knowingly false, and at the very least, the requested relief should be denied:

---

[1] In violation of this Court's Protective Order (ECF No. 54), Defendant improperly filed <u>on the public docket</u> MEF's extremely sensitive Expert Report clearly marked in multiple locations as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Even a brief review of MEF's expert report reveals the sensitive nature of MEF's <u>extremely private financial data and donor information</u>. Defendant knows the protected status of this information. Ten months ago, this Court found that MEF's sensitive information rose to the level of protected trade secrets. *See* Mem. Op. 8–10, Jan. 8, 2021 (ECF No. 91). Despite this Court's finding and the Protective Order, Defendant

1

1. **DEFENDANT'S FALURE TO MEET-AND-CONFER**.  Defendant did not contact MEF's counsel to meet-and-confer before sending the Letter to the Court at 12:57 a.m. on Friday, October 1, 2021.  Defendant and her counsel were aware both that MEF had engaged an expert nearly a month earlier and that the due date for MEF's expert report was September 23, 2021.  Thus, Defendant had nearly a month to contact MEF's counsel and failed to do so.  For this reason alone, Defendant's requested relief should be denied.

2. **DEFENDANT FALSELY REPRESENTS TO THE COURT IN TWO FILINGS WITHIN A 13-HOUR SPAN THAT PLAINTIFF'S EXPERT REPORT WAS UNTIMELY**.  In the original Letter filed at 12:57 a.m. on October 1, 2021, Defendant brazenly misrepresented that MEF served its expert report "on September 24, 2021, at the close of business late Friday afternoon." Def.'s Letter 1 (ECF No. 108).  As alleged proof of this accusation, Defendant attached an e-mail from MEF's counsel that had nothing to do with the expert report but instead a deposition of the Defendant.  *See* Def.'s Letter, Original Attachment, filed Oct. 1, 2021, 12:57 a.m. (ECF No. 108-1).  After Defendant was confronted with the public filing of MEF's trade secrets in violation of the Protective Order, Defendant (again without conferring with MEF's counsel) re-filed the Letter at 2:08 p.m. on October 1, 2021.  *See* Def.'s Letter, Revised Attachment, filed Oct. 1, 2021, 2:08 p.m. (ECF No. 108-1).  This time, however, Defendant concocted two different exhibits,[2] including an e-mail that Defendant claims was sent to Defendant at 2:47 a.m. on September 24, 2021 along with MEF's expert report.  *See id.*  This new attachment made it appear as though MEF served its expert report on September 24, 2021, using a "UTC" time[3] setting that displayed 2:47 a.m.  In reality, however, MEF served the expert report at 10:47 p.m. on September 23, 2021.  Defendant's use of UTC time merely seeks to convince the Court that the expert report was sent four hours later than it was actually sent.[4]  Defendant's

---

publicly disclosed the very trade secrets that Defendant is accused of unlawfully disclosing in the underlying litigation.  Plaintiff reserves all rights against the Defendant and her counsel for these egregious violations, which have become an unfortunate pattern in this matter.

[2]  One of these exhibits is Defendant's unilateral, partial redaction of the "attorneys' eyes only" expert report which still shows the "ATTORNEYS' EYES ONLY" designation, again filed without meeting and conferring with MEF about whether any portion of the report could be filed. *See* Letter, Revised Attachment, filed Oct. 1, 2021, 2:08 p.m. (ECF No. 108-1).  This behavior is reprehensible, and MEF reserves all rights.

[3]  "UTC" time, formerly known as "Greenwich Meant Time," stands for Coordinated Universal Time or Universal Time Coordinated.  *See What is UTC or GMT Time?*, Nat'l Oceanic & Atmospheric Admin., https://www.nhc.noaa.gov/aboututc.shtml (last visited Oct. 7, 2021).  UTC time is four hours <u>later</u> than Eastern time in the United States.  *See id.*  Therefore, the e-mail stamped at 2:47 a.m. UTC on September 24, 2021 was actually sent at 10:47 p.m. Eastern on September 23, 2021.

[4]  Even after the second iteration of her Letter, and after attaching a new document that misleadingly purports to show that Plaintiff's report was sent at 2:47 a.m., Defendant's second filing still falsely claims that the expert report was not served until "September 24, 2021, at the close of business late Friday afternoon."  Def.'s Letter 1 (ECF No. 108).

sleight of hand is inexcusable. For misleading reasons, Defendant attempts to impose a hardship on MEF (i.e., loss of its timely designated expert). Having been exposed, Defendant should suffer the consequences.

Defendant timely received MEF's expert report on September 23, 2021, consistent with the due date this Court set in its Scheduling Order. *See* Order 1, May 21, 2021 (ECF No. 101). A copy of the cover e-mail from MEF's counsel to Defendant's counsel using <u>the correct Eastern time of 10:47 p.m. on September 23, 2021</u> is attached (including the metadata for this email). *See* Expert Report Cover E-Mail Ex. A; Expert Report Cover E-Mail Metadata Ex. B. That e-mail references MEF's expert report as an attachment,[5] and in <u>four</u> places on a one-sentence e-mail, designates the report as "ATTORNEY'S EYES ONLY" under the Protective Order. *See id.* Defendant does not dispute that the expert report was attached to the e-mail received. Defendant's motion to strike, therefore, should be denied.

3. **DEFENDANT FURTHER MISREPRESENTS TO THE COURT WHEN SHE BECAME AWARE OF MEF'S ENGAGEMENT OF AN EXPERT**. Defendant misrepresents that she was not aware of MEF's intent to designate a damages expert. In fact, Defendant's counsel asked questions about MEF's engagement of an expert in the deposition of MEF's President Daniel Pipes on September 2, 2021, more than three weeks before the due date for expert reports. *See* Excerpts of Pipes Dep. Ex. C., at 15:8–17:1. Furthermore, in a deposition of MEF's Director Gregg Roman the next day, Mr. Roman also mentioned MEF's engagement of an expert on value. *See* Excerpts of Roman Dep. Ex. D., at 198:5–6. Defendant and her counsel were thus well aware that MEF planned to engage an expert more than a month ago and nearly a month before the Court's deadline for Defendant to designate her own expert on September 30, 2021. *See* Order 1, May 21, 2021 (ECF No. 101). Defendant and her counsel have also known—for at least ten months—that the issue of damages was going to play a central role in this case. Defendant's counsel said as much in his Letter. *See* Def.'s Letter 2 (ECF No. 108) ("This Court squarely placed the issue of damages front and center when Your Honor issued his Opinion on January 8, 2021, nearly ten (10) months ago."). Knowing that harm and damages were going to play a central role in this case, and knowing that MEF planned to retain an expert on these issues, Defendant did nothing. Instead of locating an expert herself or meeting and conferring with MEF's counsel on the issue of expert designations, Defendant waited until October 1, 2021 (the day after this Court's deadline for Defendant's expert designation) to send a letter to the Court seeking to strike MEF's expert. *See* Def.'s Letter 1 (ECF No. 108). There can be no defense to the misrepresentations made in Defendant's Letter.

---

[5] MEF has not included the "ATTORNEYS' EYES ONLY" expert report as an attachment to this filing, but is happy to present that full report to the Court <u>in camera</u> if the Court requests.

4. **DEFENDANT MISCONSTRUES THE FEDERAL RULES AND IGNORES THIS COURT'S ORDERS REGARDING EXPERT DESIGNATION.** In her Letter, Defendant falsely claims that "Rule 26(a) disclosures identifying an expert . . . were due within 14 days of the initial status conference almost two year previously." *See* Def.'s Letter 1 (ECF No. 108). This is neither a correct statement of the law, nor does it make sense that the parties would be able to identify experts at the time this case was filed two years ago. That is precisely why the disclosure rules for experts are distinct from any initial disclosure requirements for fact witnesses at the outset of the case. Courts can set the deadline for disclosure of expert reports under Rule 26(a)(2)(D) much later in the case. Here, this Court did precisely that by entering a Scheduling Order on May 20, 2021, which set the deadline for Plaintiff's export report as September 23, 2021 (81 days before the December 13 trial pool set in the Order). *See* Order 1–2, May 20, 2021 (ECF No. 101).

The Court's Scheduling Order is consistent with Rule 26(a)(2)(D), which addresses the timing of expert disclosures as follows:

> *(D) Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence <u>that the court orders</u>. Absent a stipulation or a court order, the disclosures must be made:
>
> (i) at least 90 days before the date set for trial or for the case to be ready for trial . . . .

Fed. R. Civ. P. 26(a)(2)(D) (emphasis added). MEF complied with the Court's Order and served its expert report on the date selected by the Court. Nowhere do the Federal Rules require a party to identify experts at the outset of the case. Defendant's very argument has been rejected in this Circuit. *See In re Mercedes-Benz Anti-Trust Litigation*, 225 F.R.D. 498, 505 (D.N.J. 2005) (finding the argument that experts "should fall within the category of persons covered by the initial disclosures . . . an assertion that the Court is not willing to endorse").

Defendant's flawed argument, which ignores this Court's Scheduling Order, should be rejected.

5. **DEFENDANT CANNOT SHOW GOOD CAUSE TO MODIFY THE MAY 2021 SCHEDULING ORDER SETTING HER EXPERT REPORT DEADLINE, ESPECIALLY AFTER THE DEADLINE HAS ALREADY PASSED**. Defendant failed to conduct <u>any</u> discovery in this case. Defendant failed even to request that MEF disclose its experts. If nothing else, this constitutes a lack of diligence under the "good cause" standard for obtaining a scheduling order modification. *See, e.g.*, *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007). Even if Defendant had made a timely request to modify the Court's May 2021 Scheduling Order (which she has not), Defendant would need to show good cause. *See* Fed. R. Civ. P. 16(b)(4). "Good cause under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Chancellor*, 501 F. Supp. 2d at 701. "Thus, if the party was not

4

diligent, there is no 'good cause' for modifying the scheduling order." *Id.* Here, Defendant has not offered, much less established, good cause to modify the scheduling order. Defendant concedes in the Letter that she knew that "the issue of damages" was "front and center" for at least ten months. *See* Def.'s Letter 2 (ECF No. 108). Defendant also knew since May that the Court's Scheduling Order set September due dates for experts. Instead of serving a single discovery request or retaining an expert for herself, Defendant just "assumed that Plaintiff did not retain an expert." *Id.* This lack of diligence does not constitute good cause for modifying the Scheduling Order. *See Martin v. Buono*, No. 20-3715, 2021 WL 1424711 (E.D. Pa. Apr. 15, 2021) (party failed to show good cause for waiting to designate an expert until after the deadline for expert designation had passed). "Absent diligence, there can be no 'good cause.'" *Chancellor*, 501 F. Supp. 2d at 702.

6. **THE COURT SHOULD NOT REWARD DEFENDANT FOR HER KNOWING VIOLATION OF THIS COURT'S SCHEDULING ORDER**. There is no excuse for Defendant's failure to retain an expert. Defendant and her counsel have known about the September 30 deadline for designation of Defendant's expert since this Court entered a Scheduling Order dated May 20, 2021 (ECF No. 101). Defendant's Letter makes it clear that as of October 1, 2021, Defendant has not retained an expert, claiming that she could not now "retain an expert." *See* Def.'s Letter 2 (ECF No. 108). While Defendant claims in her Letter that "Defendant had only seven days to respond to Plaintiff's expert report," Defendant's decision of whether to retain an expert is in no way contingent on whether Plaintiff engages an expert. The Court's Scheduling Order does not use the term "rebuttal" expert when referring to Defendant's deadline for submitting expert reports. *See* Order, May 21, 2021 (ECF No. 101). It says "Defendant's expert report is due September 30, 2021." *Id.* at 1. It appears that Defendant gambled that Plaintiff would not designate an expert on September 23 (despite learning in two depositions of MEF representatives nearly a month earlier that MEF had engaged an expert). Defendant cannot now expect the Court to come to her rescue.[6] Moreover, Defendant's gamble offers no reason to prejudice MEF by delaying these proceedings and forcing MEF to incur more fees and costs as a result of Defendant's continuing dilatory behavior. Enough is enough, particularly when Defendant shows her true nature by making at least three false representations to the Court in an effort to obtain her requested relief. Defendant's behavior should not be tolerated by the Court under any circumstances, and it should certainly not be rewarded with anything but a denial of the request.

---

[6] Defendant should not be able to posture now by falsely claiming surprise at Plaintiff's designation. Defendant never sought an extension of time before her deadline to designate an expert expired. In fact, it appears that Defendant and her counsel scrambled at 12:57 a.m. the day after her expert report was due to file the motion to strike (without contacting Plaintiff's counsel for a meet-and-confer) as a result of an overall lack of diligence. Defendant coupled the error with blatant misrepresentations to the Court in the Letter. It would not be fair for Defendant's misdeeds to prejudice Plaintiff, and the lack of good cause justifies prompt denial of Defendant's request.

7. **DEFENDANT'S LETTER SHOWS THAT SHE WILL SAY ANYTHING TO THE COURT, EVEN WITHOUT ANY FACTUAL SUPPORT**. MEF continues to be amazed at the audacity of Defendant and her counsel. Take, for example, Defendant's argument that "Plaintiff has had every opportunity to conduct fact and expert discovery in the time allotted." Def.'s Letter 2 (ECF No. 108). This is a truly remarkable statement given that the **Defendant** did not serve a single interrogatory, document request, or admission request in this case. This Court is well aware of MEF's discovery efforts in this case. Shortly after filing its Verified Complaint in December 2019, MEF served expedited discovery requests on Defendant. MEF was forced, however, to pursue numerous motions to compel against Defendant, who refused to produce a single document for over six months until this Court forced her to turn over images of her devices to an e-discovery vendor for production. *See* Order, June 25, 2020 (ECF No. 58). This all came at great expense to MEF and revealed the extent to which Defendant improperly retained MEF's extremely sensitive trade secrets, credit card data, personal identifying information for MEF representatives, and more. This discovery by MEF formed the basis of MEF's expert report, demonstrating both the diligence of MEF's discovery efforts and the baselessness of Defendant's allegations. It appears that Defendant believes she can get away with such behavior because she apparently does not believe there will be any consequences. This is yet another reason why her filings have no credibility.

8. **DEFENDANT'S REQUEST FOR AN EXTENSION SHOULD BE DENIED AS UNTIMELY**. Defendant's request for an extension should be denied. Among other things: (a) the request is untimely because the due date for Defendant to designate an expert had already passed;[7] (b) Defendant was aware of the damages element of MEF's claims nearly two years ago when MEF filed this case in December 2019; (c) Defendant was additionally aware of the damages element of the claims nine months ago when this Court ruled on the Motion for Preliminary Injunction in January 2021; and (d) Defendant has known since the Court's May 21, 2021 Scheduling Order that September 29 was the due date for Defendant's expert report. Still, in a situation of the Defendant's own making, Defendant failed to protect herself and engage an expert. Under these circumstances, Defendant cannot come close to the level of diligence required to show "good cause" for obtaining a modification of this Court's scheduling order. *Chancellor*, 501 F. Supp. 2d at 702–03 ("Carelessness, or attorney error, . . . is insufficient to constitute 'good cause' under Rule 16(b).").

For all these reasons, the Court should deny Defendant's requests. If Defendant must resort to multiple misrepresentations to this Court to succeed, even Defendant must know that she does not have a legitimate basis for the requests in the Letter. Defendant is not prejudiced by a requirement to comply with the Court's Orders, but even if there were any prejudice to Defendant, it is self-inflicted.

---

[7] While Defendant dated her Letter as of September 30, 2021, it was not filed until October 1, 2021. *See* Def.'s Letter (ECF No. 108).

6

Plaintiff reserves all rights to seek further relief for violation of the Protective Order and the unlawful disclosure of MEF's valuable trade secrets.

Thank you for your attention to this matter.

>Respectfully,
>
>*/s/Sidney L. Gold*
>
>SIDNEY L. GOLD

cc:    All Counsel of Record (via ecf)

# EXHIBIT A

| | |
|---|---|
| **From:** | Briscoe, Adam |
| **Sent:** | Thursday, September 23, 2021 10:47 PM |
| **To:** | seth@dereksmithlaw.com |
| **Cc:** | Barnes III, Attison; Sidney Gold; Bill Rieser |
| **Subject:** | MEF Expert Designation and Report - CONTAINS ATTORNEY'S EYES ONLY MATERIAL |
| **Attachments:** | MEF Rule 26 Expert Designation (ATTORNEY'S EYES ONLY).pdf |

ATTACHMENT CONTAINS ATTORNEY'S EYES ONLY MATERIAL PURSUANT TO TERMS OF PROTECTIVE ORDER

Seth,

Pursuant to Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Order (Dkt. No. 101), attached is Plaintiff's expert designation and report. Please note that this report in its entirety has been designated as "Attorney's Eyes Only" pursuant to the terms of the protective order.

Best,
Adam



Adam R. Briscoe
Attorney at Law
abriscoe@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o:  202.719.4570
Download V-Card | wiley.law | Bio

1

# EXHIBIT B

MEF Expert Designation and Report - CONTAINS ATTORNEY'S EYES ONLY MATERIAL



Briscoe, Adam

To: seth@dereksmithlaw.com
Cc: Barnes III, Attison; Sidney Gold; Bill Rieser

↰ Reply   ↰ Reply All   → Forward   ⋯

Thu 9/23/2021 10:47 PM

📄 MEF Rule 26 Expert Designation (ATTORNEY'S EYES ONLY).pdf
4 MB

ATTACHMENT CONTAINS ATTORNEY'S EYES ONLY MATERIAL PURSUANT TO TERMS OF PROTECTIVE ORDER

Seth,

Pursuant to Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Order (Dkt. No. 101), attached is Plaintiff's expert designatio[n] as "Attorney's Eyes Only" pursuant to the terms of the protective order.

Best,
Adam



Adam R. Briscoe
Attorney at Law
abriscoe@wiley.law

Wiley Rein LLP • 1776 K Street NW • Washington, DC 20006
o: 202.719.4570
Download V-Card | wiley.law | Bio



# EXHIBIT C

Case 2:19-cv-05697-JS Document 109 Filed 10/08/21 Page 13 of 19
CONFIDENTIAL - ATTORNEYS' EYES ONLY
Deposition of Daniel Pipes                                    The Middle East Forum v. Lisa Reynolds-Barbounis

1  A    Mr. Carson, your client put us in a compromised

2  position whereby our promise to our donors that we will

3  not release their names without their consent was

4  breached.  It was not possible for us to then go to them

5  and say, oh, did someone who Lisa Barbounis sent your

6  name to contact you.  No, we did not do that.

7  Q    Okay.

8  A    Your client compromised us.  We were compromised by

9  your client, we were and we are.  There is no easy way

10 out.  If we did --

11 Q    Well, let me ask you this question.  If Amy

12 Mekelburg never received an email, were you compromised?

13 A    She did receive the email.  We have her

14 acknowledgement of receipt of the email.

15 Q    Are you sure that she acknowledged that she read

16 this email and saw this donor list?

17 A    Yes, she indicated that she received --

18 Q    I can pull up her deposition testimony if you'd

19 like and review it again.  I'm pretty sure she said she

20 never saw it.

21 A    I have read her response to your client saying I

22 received it, and I'm paraphrasing received.

23 Q    You're talking about an email, right?

24 A    Yes.

Case 2:19-cv-05697-JS Document 109 Filed 10/08/21 Page 14 of 19
CONFIDENTIAL-ATTORNEYS' EYES ONLY
Deposition of Daniel Pipes                              The Middle East Forum v. Lisa Reynolds-Barbounis

1  Q    Okay.  So my -- here's my question:  Do you know
2  whether or not the Middle East Forum received any less
3  donations because Lisa Barbounis sent this list to Amy
4  Mekelburg?
5  A    No.
6  Q    Okay.  Do -- can you think of, sitting here today,
7  any way that the Middle East Forum was affected because
8  Lisa Barbounis sent this email to Amy Mekelburg?
9  A    Mr. Carson, because of your client's misbehavior,
10 we've had to hire lawyers and experts on this question.
11 I am neither.  You'll have to ask --
12 Q    Okay.  So is that the only way that you can think
13 of that -- that the Middle East Forum was affected
14 because you hired a lawyer to find out if you were
15 affected?
16 A    No.  We hired experts to look at the economic
17 damage that your client caused us.  I'm not in a
18 position to explain that to you.  She stole our
19 information, I know that.  The impact of the stealing of
20 that information I cannot tell you.
21 Q    Okay.  You said the impact.  You don't know what
22 the impact was, is that what you just said?
23 A    I told you that that is not my domain.
24 Q    Okay.

Case 2:19-cv-05697-JS   Document 109   Filed 10/08/21   Page 15 of 19
CONFIDENTIAL- ATTORNEYS' EYES ONLY
Deposition of Daniel Pipes                                    The Middle East Forum v. Lisa Reynolds-Barbounis

```
 1   A     We have an expert who is investigating this for us.
 2   Q     Who's the expert that you're talking about?
 3   A     You'll have to ask Mr. Roman.
 4   Q     Do you know who it is?
 5   A     I have seen the name, I can't tell you the name.
 6   Q     Well, what kind of expert are they?
 7   A     Now that I think about it, her name is Stout.
 8   She's an expert on economic damages in cases like this,
 9   and she's reviewing the materials.
10   Q     An expert on economic damages?
11   A     I believe so.
12   Q     What's her name?
13   A     Stout.
14   Q     Stout?
15   A     S-T-O-U-T.
16   Q     Is that Ms. Stout or Mr. Stout?
17   A     Ms., I believe.
18   Q     When was she retained?
19   A     Some weeks ago.
20   Q     Sorry?
21   A     Some weeks ago.
22   Q     Okay.  So you retained her in -- sometime around
23   August of 2021?
24   A     I believe so.
```

Case 2:19-cv-05697-JS  Document 109  Filed 10/08/21  Page 16 of 19
CONFIDENTIAL - ATTORNEYS' EYES ONLY
Deposition of Daniel Pipes                                    The Middle East Forum v. Lisa Reynolds-Barbounis

1  Q    Okay.  And what information has been provided to
2  her for her to make a determination on economic damages?
3  A    I am not part of that process.  I can't answer
4  these questions.
5  Q    Who's part of that process?  And by the way, I
6  don't want you to tell me anything that you're talking
7  to your lawyers about.  That's not my question.
8  A    Mr. Roman and our counsel are part of that process.
9  Q    So if the answer is your lawyers are part of the
10 process, I can move on and I can figure out --
11 A    Lawyers are definitely part of the process.
12 Q    Okay.  Is Gregg Roman the point of contact for the
13 lawyers with regard to that process?
14 A    I believe he is, yes.
15 Q    So let me see if I can make us all -- this entire
16 process easier for everyone.  I'm not going to -- you
17 know there's, what -- 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,
18 12, 13, 14, 15, 16, 17, 18, 19 -- there's like 26, 27
19 rows in this document, and I think each -- so I'm just
20 going to ask questions about the whole document to try
21 to get through this exhibit.
22          The name column, so this whole column --
23 sorry, it's highlighting everything.
24          The name column is -- these are all

# EXHIBIT D

Case 2:19-cv-05697-JS Document 109 Filed 10/08/21 Page 18 of 19
CONFIDENTIAL ATTORNEY'S EYES ONLY
Deposition of GREGG ROMAN                    The Middle East Forum v. Lisa Reynolds-Barbounis

1  we have not discussed today that you think
2  indicates that Lisa Barbounis breached any of her
3  contracts?
4          A.    Can you show me the count?
5          Q.    Yes.  I can give you access to the
6  entire complaint.  Hang on.  I'll share remote
7  control.  Great.  You can control it too.
8          A.    I think I went over most of it.
9  If there's anything that I remember, I'd be glad
10 to have the lawyers tell you.
11         Q.    All right. Let's -- let's -- I'm
12 just going to ask the same question.
13         A.    I'll do the same thing.  I'll go
14 through each one.
15               The best of my knowledge, I think
16 we went over all the BYOD stuff.
17               We talked about this with her
18 access to our cloud systems.  That would be the
19 Computer Fraud and Abuse Act.
20               I think we talked about this with
21 donor lists.  Contacts.  Data.
22               All this stuff on value could be
23 answered by our expert.
24               Same thing with the DTSA.

Case 2:19-cv-05697-JS Document 109 Filed 10/08/21 Page 19 of 19
CONFIDENTIAL - ATTORNEY'S EYES ONLY
Deposition of GREGG ROMAN                                The Middle East Forum v. Lisa Reynolds-Barbounis

```
 1                   Same thing with the Secure
 2   Communications Act.
 3                   We talked about this, it's
 4   conversion.
 5                   Breach of duty.
 6                   I don't even know what a
 7   declaratory judgment is.
 8           Q.      That's the injunctive relief
 9   stuff.
10           A.      She should give it back, all that
11   stuff, yeah.
12                   I think most of it is covered by
13   this.  It's a prayer for -- I read this.  It must
14   have been two years ago now -- a year ago, two
15   years ago.
16           Q.      The conversion.  The property you
17   believe she converted was what?
18           A.      In part, our trade secrets.
19           Q.      Anything else besides trade
20   secrets?
21           A.      Anything that was MEF's property
22   that's in the complaint, or anything that we
23   found through discovery, but I think we went over
24   most of it today.
```