**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.: 19-5697 |
| LISA REYNOLDS-BARBOUNIS, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATION OF MULTIPLE COURT ORDERS, FOR UNLAWFUL DISCLOSURE OF TRADE SECRETS ON THE PUBLIC DOCKET, AND FOR FILING FALSE PLEADINGS WITH THIS COURT**

Plaintiff The Middle East Forum ("Plaintiff" or "MEF"), by counsel, moves this Court for contempt and sanctions against Defendant Lisa Barbounis ("Barbounis") and her counsel, Seth D. Carson ("Mr. Carson" and collectively with Barbounis, the "Defendant") pursuant to Fed. R. Civ. P. 37(b)(2), 28 U.S.C. § 1927, and Local Civil Rule 83.6.1 for violating multiple Court orders Court procedures, for the unlawful disclosure of MEF's trade secrets on the public docket, and for filing false pleadings with this Court. Plaintiff respectfully requests this Court enter the attached proposed Order to include: (i) finding Defendant in civil contempt for willfully submitting false statements to this Court and violating multiple Court orders, including the protective order (the "Protective Order") entered in this case; (ii) striking Defendant's defenses, and entering a default judgment on liability against Barbounis; and (iii) ordering Barbounis and Mr. Carson to pay MEF's attorneys' fees and costs incurred as a result of this Motion.

**Preliminary Statement**

Throughout this case, Defendant engaged in misconduct, and the most recent conduct is the last straw. By electronically filing on the public docket Plaintiff's extremely sensitive expert report (the "Report") ***clearly designated as "Attorney's Eyes Only" ("AEO")***, Defendant unlawfully disclosed MEF's most protected trade secrets (donor information previously identified by this Court as trade secret data after an evidentiary hearing), as well as MEF's most private financial data.[1] Despite numerous restrictions concerning access to this information, including this Court's orders, and after two years of constant reminders about the sensitive nature of the data at issue, Defendant, at best wantonly, released all of this AEO data to the world. It appears that the filing of the Report may have been intentional because there would have been no reason to attach the AEO Report itself to support the (false) timeliness arguments made by the Defendant in the motion to strike Plaintiff's expert. And when confronted with the filing of the AEO data in direct violation of the Protective Order, Defendant expressed no remorse, apology, or plan to ensure the least amount of harm, and in fact, doubled down with additional false statements in another filing only hours later. This cavalier attitude about the filing of MEF's AEO data speaks volumes.

The contempt and sanctions awarded should be significant given the egregious nature of this violation (as well as Defendant's pattern of behavior in this case), which now includes the

[1] Plaintiff MEF invites the Court to review an *in camera* submission of the Report so that the Court can fully understand the scope of the violation and the harm associated with this disclosure, as well as the sensitive, AEO nature of the Report. It is astonishing that Defendant and her counsel electronically filed this Report on the public docket, particularly given the foreign, extremist threats to MEF, many of which are believed to be monitoring the filings on this docket. Improper filing at approximately 1:00 a.m. Eastern U.S. time on a Thursday evening means that the Report was immediately available to review and download during a workday in the Middle East and remained accessible throughout that day for billions of people in all time zones of the world to access.

submission of false information to the Court, perhaps as an excuse to publicly file MEF's attorneys' eyes only information with the Court. In light of the severity of the situation and the utter disregard for both MEF's highly sensitive trade secrets, as well as multiple Court orders, Plaintiff also asks this Court for an award of attorneys' fees and costs to Plaintiff for the unnecessary legal expenses MEF has been forced to incur as a result of Defendant's inexcusable behavior.

**Brief Statement of Facts**

On December 3, 2019, MEF filed the present action against Defendant for the misappropriation of corporate assets, including trade secrets and highly confidential business information. *See* Compl., *The Middle East Forum v. Reynolds-Barbounis*, No. 19-5697 (E.D. Pa. Dec. 3, 2019), Dkt. 1. Due to the sensitive nature of the trade secrets underlying the cause of action, MEF sought protection from disclosure of such information to the public.

On June 12, 2020, this Court issued a Protective Order governing the disclosure and use of confidential and sensitive documents and information related to this matter.

On Thursday, September 23, at 10:47 p.m. Eastern Daylight Time (EDT),[2] counsel for MEF served Mr. Carson, as counsel for Barbounis, with a copy of the Report consistent with the Court's Scheduling Order setting a September 23 due date for the Report. Notably, the file sent from MEF counsel was entitled "*MEF Rule 26 Expert Designation (ATTORNEY'S EYES ONLY)*" and each page of the Report included an "Attorney's Eyes Only" designation, justified by the plethora of information on MEF donors and other trade secrets and financial data included in the

[2] As discussed below, this temporal specificity is important due to misrepresentations made by Defendant as to when the document was submitted.

Report. Despite the explicit AEO designation, ***the Report was filed publicly on this Court's docket in its entirety, making it accessible to anyone with internet access.***

In addition to violating the Court's Protective Order, Defendant made several egregious misrepresentations to the Court relating to this matter. Specifically, in the October 1, 2021 filing[3] entitled "Motion to Strike or in the Alternative For Extension of Time" ("Motion to Strike"), MEF was wrongly accused of failing to comply with the Court's designated timeline for submitting the Report. *See* Def.'s Mot. to Strike, Dkt. 108. However, a time-stamped email at 10:47 p.m. on September 23 (proven by metadata) refutes Defendant's assertion of an untimely submission. *See* Ex. 1. Although the Report was filed as an attachment to Defendant's Motion to Strike, Defendant did not attack its substance and therefore it was completely unnecessary to file. Defendant and Mr. Carson nevertheless decided to file the entire AEO Report, suggesting that publishing the AEO document for the world to see was not merely reckless, but intentional. Either way, severe sanctions are warranted because Defendant has again acted as if there are no repercussions for misconduct in this case.

These misrepresentations to the Court coupled with the violation of the Protective Order are by far the most egregious acts of malfeasance by Defendant (ironically extending the very harm that underlies MEF's claims in this case). As the Court may recall, the present case was filed after MEF's multiple attempts to obtain a mutually agreeable means of safeguarding MEF's trade secrets and of ultimately removing them from Defendant's possession. On December 20, 2019, the Court ordered Defendant to have all of her relevant electronic devices ready for imaging with a mutually agreed upon vendor by January 6, 2020. *See* Order Scheduling Telephone Conference,

[3] The Defendant's motion to strike was incorrectly dated September 30, 2021, as it was filed on Friday, October 1, 2021.

Dkt. 12. This deadline came and went without compliance, as was the case for subsequent deadlines. As the Court will recall, this behavior continued until the Court forced Defendant to turn over images of Defendant's devices to another vendor, only after which was MEF able to access the contents of two devices. *See* Order (June 25, 2020), Dkt. 58. Other devices were missing, and Defendant deleted the contents of two other devices despite a pre-existing preservation notice.

## Argument

Defendant's conduct with respect to the Motion to Strike flagrantly violated multiple Court orders. This, in combination with false representations to the Court, warrants a finding of civil contempt, imposition of severe sanctions, and an award of attorneys' fees and costs.

### I. DEFENDANT VIOLATED THIS COURT'S ORDERS WHEN MEF'S HIGHLY CONFIDENTIAL REPORT WAS FILED FOR THE WORLD TO SEE.

On June 12, 2020, this Court entered the Protective Order that now forms a basis of this Motion. The Protective Order, which is binding on both parties and "all outside counsel to the parties," governs the "disclosure, use, and handling" of all "Subject Discovery Material" designated as "ATTORNEY'S EYES ONLY" by a party or third party. Protective Order ¶ 1. "Subject Discovery Material" includes all "reports . . . disclosed in this Litigation" that are designated as AEO. *Id.* ¶¶ 1, 5. The Protective Order further provides that material "designated as 'ATTORNEY'S EYES ONLY' may include highly confidential and sensitive information related to sensitive MEF donor names, donor contributions, and any other trade secret or sensitive activities that the producing party reasonably and in good faith believes is so highly sensitive that its disclosure could reasonably be expected to result in harm to the producing party." *Id.* ¶ 2. The Protective Order clearly instructs that documents with an AEO designation "shall not be disclosed to the public or otherwise put into the public domain." *Id.* ¶ 7. If any AEO-designated Subject

Discovery Material is filed with the Court, in part or in its entirety, the Protective Order requires that it be filed under seal with the proper confidentiality designation or filed without a motion to seal, so long as "the Parties agree on the scope of redactions prior to the filing" of the material. *Id.* ¶ 16.

The Report contains highly sensitive information concerning MEF donors and trade secrets—material indisputably within the realm of documents reasonably designated as AEO under the terms of the Protective Order, *see id.* ¶ 2, and which would in fact ordinarily be subject to a protective order under the Federal Rules, *see* Fed. R. Civ. P. 26(c)(1)(G) (providing that a court may issue an order to protect a party or person by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"). The Report details the substance and importance of the confidential information Defendant previously misappropriated from MEF for which MEF seeks remedies in this lawsuit. Shockingly, with full knowledge of the seriousness associated with disclosure of the sensitive data, and despite protestations about Defendant's lack of care, this information was filed on the public docket, and the harm MEF has experienced is now magnified as a result of Defendant's conduct.

Out of an abundance of caution, Plaintiff included multiple AEO designations when transmitting the Report to Defendant by cover communications: (1) the file name reflects the AEO designation; (2) the subject transmittal email was "MEF Expert Designation and Report CONTAINS ATTORNEY'S EYES ONLY MATERIAL"; (3) the body of the email began, "ATTACHMENT CONTAINS ATTORNEY'S EYES ONLY MATERIAL PURSUANT TO TERMS OF PROTECTIVE ORDER," and later stated, "Please note that this report in its entirety has been designated as 'Attorney's Eyes Only' pursuant to the terms of the protective order"; and

(4) each page of the Report reflects the AEO designation in bold capitalized letters. It is simply inconceivable that Defendant was not aware of the sensitive and confidential nature of the Report.

Further, the impropriety of the Motion to Strike is also demonstrated by review of the Court's January 8, 2021 Preliminary Injunction Order ("Injunction Order") which found the very information at issue to be protected trade secrets of MEF. The Injunction Order expressly finds that MEF's actual and prospective donor information satisfies the elements of a trade secret. *See* Injunction Order at 8–9. The Report necessarily discusses the donor information Defendant misappropriated in this case. Defendant was thus well aware that publicly filing the Report contradicted the Injunction Order. The Court should not tolerate such egregious conduct.

Despite the Report's conspicuous and repeated confidentiality designations, the obvious confidential nature of the content, and Defendant's familiarity with the Protective Order to which they agreed and the Court's trade secrets determinations in its Injunction Order, on October 1, 2021, Defendant filed ***all forty-two pages of the Report on the public docket for access by the general public.***

While the full extent of the damage cannot possibly be known at this time, it is evident that the disclosure is serious. Just last week, MEF was visited by the Federal Bureau of Investigation (FBI), at the FBI's initiative, to discuss threats to MEF and other similarly situated entities from extremist individuals and organizations. On Thursday, September 30, 2021, two agents from the Philadelphia Field Office of the FBI visited the MEF offices and advised MEF's principals of the dangers of publicly filed information about MEF's trade secrets and financial data. During that meeting, the FBI agents provided the documents attached as Ex. 2. The risk posed by Defendant's unlawful acts cannot be understated, and Defendant must finally be held accountable.

This conduct constitutes a brazen violation of the Court's direction, compelling imposition

of the most severe sanctions. "Trial courts have wide discretion in fashioning remedies, including sanctions, where appropriate in the event of . . . violations of orders." *McNulty v. Middle East Forum*, No. CV 19-5029, 2020 WL 7769737, at *2 (E.D. Pa. Dec. 30, 2020) (citation omitted); *see also LabMD, Inc. v. Tiversa Holding Corp.*, No. CV 15-92, 2019 WL 3881700, at *13 (W.D. Pa. Aug. 16, 2019) ("Federal Rule of Civil Procedure 37 authorizes a court to impose sanctions against a party that fails to comply with a court order."). If a sanction is just and "specifically related to the specific claim that was at issue in the order" that was violated, a court may impose it. *LabMD, Inc.*, 2019 WL 3881700, at *14 (citation omitted); *see id.* at *19 (where a party failed to comply with the court's deposition protective order in several depositions, imposing several sanctions including precluding the defiant party from using any testimony elicited from those depositions for any purpose).

Among the sanctions a court may impose for violation of its orders is civil contempt. *Halderman v. Pennhurst State Sch. & Hosp.*, 154 F.R.D. 594, 608 (E.D. Pa. 1994). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. CV 11-4649, 2018 WL 2414984, at *3 (E.D. Pa. May 29, 2018) (citation and quotations omitted). A defiant party is liable for civil contempt if the complainant shows by clear and convincing evidence that the defiant party "violate[d] a court order with actual notice that the order ha[d] been issued." *Halderman*, 154 F.R.D. at 608 (quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 973 (3d Cir. 1982)). The complainant can carry this burden by showing that "(1) a valid order of the court existed; (2) the opposing party had knowledge of the order; and (3) the opposing party disobeyed the order." *Grant Heilman Photography, Inc*, 2018 WL 2414984, at *3 (citation and quotations omitted). That a

party acted in "good faith" despite the violation is not a defense to civil contempt. *McNulty*, 2020 WL 7769737, at *3; *see also Grider v. Keystone Health Plan Cent, Inc.*, No. 2001-cv-05641, 2006 WL 7353319, at *3 (E.D. Pa. Mar. 30, 2006) ("[D]efendants assert that simply because they rectified the situation as soon as they were alerted to it by counsel for plaintiffs, this absolves them of any responsibility for the improper dissemination in the first instance. This would give any party license to disregard the terms of a protective Order under the guise that the disclosure was inadvertent and be immune from sanctions . . . .").

Further, Rule 37 provides for the sanction of "reasonable expenses, including attorney's fees," against "the disobedient party, the attorney advising that party, or both," unless the failure was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Violation of the Court's order may also warrant entry of default judgment against the offending party. See *Intersections Inc. v. Loomis*, No. 1:09CV597, 2011 WL 13228128, at *3 (E.D. Va. Mar. 17, 2011) ("Federal Rule of Civil Procedure 37 authorizes the sanction of default judgment against a party for failure to obey a protective order. . . . Because of defendant's relentless malfeasance and violation of this Court's Protective Order, the undersigned recommends entry of default judgment against [Defendant]."); *Coleman v. Am. Red Cross,* 979 F.2d 1135, 1141 (6th Cir. 1992) ("When a party violates a protective order, a district court may impose appropriate sanctions to remedy the violation. . . . In some cases, even a default judgment may be appropriate."); *see also Blum v. Schlegel*, 108 F.3d 1369, at *2 (2d Cir. 1997) (ordering dismissal with prejudice where the plaintiff violated the court's protective order because "[n]o monetary sanction could cause Blum to submit to the lawful mandates of the court" (quotations omitted)).

Default judgment is available under Rule 37(b) to address drastic behavior like that exhibited by Defendant here. In determining whether default judgment is an appropriate sanction, courts weigh the following six factors:

> (1) [T]he extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to [comply with discovery orders]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal [or default], which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Clarke v. Whitney*, 169 F.R.D. 623, 626 (E.D. Pa. 1996) (quoting *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). "It is not necessary . . . that all six of these factors point toward default judgment for it to be the appropriate sanction in a given case." *Id.* (citation omitted). Instead, if these factors show a party's "callous disregard" of a court's orders and "flagrant bad faith," default judgment is proper. *Id.* at 626.

As discussed in further detail below, any or all of these Rule 37(b) sanctions are appropriate here.

## II. DEFENDANT ALSO VIOLATED THIS COURT'S STANDING ORDER GOVERNING THE FILING OR RETRIEVAL OF HIGHLY SENSITIVE DOCUMENTS.

By publicly filing the Report, Defendant also violated the Court's Standing Order governing the filing or retrieval of highly sensitive documents (the "Standing Order"). The Standing Order, issued in response to "an apparent compromise of the confidentiality of the Judiciary's CM/ECF system," requires that all parties filing "Highly Sensitive Documents"—or documents containing "sensitive or confidential information that is likely to be of interest to a foreign power or agent of a foreign power and whose use or disclosure by such a foreign actor would cause significant harm"—refrain from using the CM/ECF system. Standing Order ¶¶ 1,

2(d). Instead, a filing that includes such information must be delivered to the Clerk's Office, in paper copy by mail or in person. *Id.* ¶ 3. Not only did the Defendant not make the filing under seal, the filing was not made by mail or in person.

Defendant has known since the time Defendant worked for MEF about the seriousness of threats by extremists to the entity and its personnel. Indeed, Defendant has testified to the many security protections put in place at MEF, including efforts to hide the location of MEF's offices, the requirement of non-disclosure agreements even with spouses of MEF personnel, and protection of donor information and financial data. For that reason alone, coupled with MEF's recent visit from the FBI, the risks to the company as a result of disclosure forms a critical part of the lawsuit before this Court. With full knowledge of those risks, Defendant publicly filed the Report.

Because Defendant did not comply with this Court's Standing Order, there must be serious consequences, as more fully addressed below.

## III. DEFENDANT MADE FALSE REPRESENTATIONS TO THIS COURT IN THE MOTION, COMPOUNDING A HISTORY OF QUESTIONABLE BEHAVIOR IN THIS CASE.

Defendant's Motion to Strike further demonstrates Defendant's pattern of misconduct and misrepresentations to the Court in this case. Contrary to fact (and metadata of the actual transmission), the Motion falsely claims that MEF did not produce expert discovery by the Court's September 23, 2021 deadline, and that instead, MEF "blitz[ed] Defendant with this late report" by producing its Rule 26(a) disclosures and Report "at the close of business" on September 24, 2021. Def.'s Mot. to Strike at 1–2. But despite Defendant's best efforts to feign shock due to MEF's surprise "late report," the Report was in fact not late at all. Counsel for MEF submitted MEF's Rule 26(a) disclosures and Report at 10:42 p.m. on September 23, 2021, before the close of expert discovery on September 24. *See* Ex. 1. Incredibly, to bolster the sham that MEF missed the expert

deadline, Defendant first submitted an e-mail from MEF's counsel sent on the afternoon of September 24, 2021, ***on a topic having nothing to do with the expert report***. *See* Ex. 3. After being confronted on the improper filing of MEF's Report, Defendant submitted to the Court another document represented to be a transmittal email for the Report bearing a timestamp of September 24, 2021 at 2:42 a.m., but this was also a false representation to the Court using Coordinated Universal Time (UTC), also known as Greenwich Mean Time, rather than Eastern Daylight Time (EDT). On September 24, 2021, UTC was ahead of EDT by four hours, meaning that MEF's counsel's e-mail was sent at 10:47 p.m. in Philadelphia time. Regardless of whether the time stamp was intentionally manipulated to reflect an incorrect time zone before filing it with this Court or recklessly failed to investigate the actual time in EDT before filing the Motion to Strike, the false representation to the Court is inexcusable, and suggests that may have been done as an excuse to publicly file MEF's most sensitive information.

The Motion to Strike further misrepresented that "Plaintiff did not notify Defendant that Plaintiff intended to produce [an expert] report" and that "Defendant reasonably assumed that Plaintiff did not retain an expert." *Id.* at 2. While MEF is unaware of any obligation to advise Defendant of its intent to hire an expert in advance of the expert deadlines set by this Court, this is particularly true where, as here: (1) Defendant served no discovery requests on Plaintiff, much less a request for expert information; and (2) the record indisputably demonstrates that Defendant was well-aware of MEF's intent to hire a damages expert.

During the September 2, 2021 deposition of MEF President Daniel Pipes—which occurred twenty-eight days before the filing of the Motion to Strike—Mr. Pipes testified that MEF had retained an expert to assess economic harm to MEF caused by Defendant's misconduct. *See, e.g.*, Ex. 4 (excerpted Pipes Dep. Tr.) at 20:9–17 ("[W]e've had to hire lawyers and experts on this

question. . . . We hired experts to look at the economic damage that your client caused us."); *id.* 21:1–24 ("We have an expert who is investigating this for [MEF]. . . . She's an expert on economic damages in cases like this, and she's reviewing the materials.").[4] Further, in his deposition, MEF Director Gregg Roman also testified that MEF had retained an expert. *See* Ex. 5 (excerpted Roman Dep. Tr.) at 206:22–23 ("All this stuff on value could be answered by our expert."). Defendant's claim that she was "at a loss" and shocked to receive the Report is another misrepresentation to the Court.

Notably, the misrepresentations in the Motion to Strike cannot be viewed in isolation. Indeed, such conduct has become all too common for Defendant in this matter. As the Court may recall, this case was filed only after MEF's multiple attempts to cooperate with Defendant to secure and recover MEF's trade secrets. MEF only filed this action after weeks of ultimately unsuccessful attempts to work with Defendant to resolve the matter. After the Court intervened and ordered that Barbounis's electronic devices be imaged by an agreed-upon vendor, Defendant nevertheless failed to comply with the Court's deadline as well as subsequent extensions. The behavior is further detailed in Ex. 6, a non-exhaustive timeline to remind the Court of Defendant's prior misconduct in this case, including failure to comply with prior Court orders.

Defendant's recent motion is further evidence that Defendant's problematic behavior is part of a pattern of bad acts designed to cause further harm to MEF and that their behavior, so far unchecked, continues unabated.

## IV. BARBOUNIS AND MR. CARSON SHOULD BE SEVERELY SANCTIONED.

[4] Note that MEF has designated Mr. Pipes's deposition transcript, as well as the deposition transcript for Mr. Roman (cited below), as Confidential/AEO. While MEF does not waive this designation, the cited portions of these transcripts do not contain MEF's trade secrets or confidential information. Thus, for the purposes of this Motion, MEF de-designates only the transcript excerpts provided in Exs. 4 and 5.

The behavior with respect to the filing of the Motion to Strike (especially when coupled with the pattern of behavior throughout this case) warrants severe sanctions under 28 U.S.C. § 1927 and Local Civil Rule 83.6.1.[5] 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An attorney may be liable for fees under § 1927 if he can be shown to have acted in bad faith. *Ally Fin., Inc. v. Mente Chevrolet Oldsmobile, Inc.*, No. CIV.A. 11-7709, 2012 WL 4473240, at *10 (E.D. Pa. Sept. 28, 2012); *see also id.* ("Bad faith can be shown through the intentional advancement of a baseless contention that is made for an ulterior purpose . . . . When a claim is advocated despite the fact that it is patently frivolous . . ., bad faith can be implied." (citations and quotations omitted)). Further, Local Civil Rule 83.6.1 provides that an attorney who "present[s] to the Court vexatious motions" or otherwise "so multipl[ies] the proceedings in a case as to increase unreasonably and vexatiously the costs thereof" "may be disciplined as the Court shall deem just." Local Civ. R. 83.6.1(b)–(c). Courts typically require parties sanctioned under Local Civil Rule 83.6.1 to pay costs and fees associated with the sanctioned conduct. *See, e.g.*, *Curry v. United Parcel Serv., Inc.*, No. CV 17-2331, 2017 WL 4810701, at *1 (E.D. Pa. Oct. 25, 2017) (sanctioning attorney under § 1927 and Local Civil Rule 83.6.1 and requiring him to pay the defendant's attorneys' fees).

An attorney may be sanctioned under § 1927 or Local Civil Rule 83.6.1 for submitting misrepresentations to the Court. *See Johnson v. Resources for Human Dev.*, 888 F. Supp. 689, 692 (E.D. Pa. 1995) ("bad faith" under § 1927 can be demonstrated by showing "misconduct such

---

[5] The public filing of the AEO Report is alone more than a sufficient basis to impose severe sanctions against Barbounis and Mr. Carson, independent of any finding that such behavior is part of a pattern of misconduct.

as . . . misrepresenting facts or law to the court" (citation omitted)); *Ally Fin., Inc.*, 2012 WL 4473240, at *11 (determining that sanctions under § 1927 and Local Rule 83.6.1 were warranted where the plaintiff and its counsel made "blatant and knowing representations made to th[e] Court").

While the Court is free to impose whatever sanctions it determines appropriately address Defendant's violations of the Court's orders,[6] the Court should at the very least hold Barbounis and Mr. Carson in civil contempt and require that they reimburse MEF for expenses and attorneys' fees related to the instant motion and any other related filings. Civil contempt is proper here because Defendant indisputably had knowledge of the Court's valid Protective Order, the Injunction Order, and the Standing Order, and nevertheless disobeyed the Court's directives. It cannot be disputed that Defendant was ordered to refrain from disclosing AEO-designated information to the public or otherwise put the information into the public domain, after which the Report was publicly filed as an attachment to Defendant's October 1, 2021 Motion to Strike. Violations of court orders must have consequences.

Moreover, with respect to MEF's expenses and attorneys' fees, Defendant cannot validly claim that their failure to comply with the Court's orders was "substantially justified" or that requiring them to pay expenses and fees is "unjust." *See* Fed. R. Civ. P. 37(b)(2)(C). The Motion to Strike did not depend on the content of MEF's Report and referenced it as a "forty-two (42) page comprehensive narrative report from a purported economics expert on the issue of damages." Def.'s Mot. to Strike at 1. Indeed, Defendant complained only about the *fact* of MEF's Report rather than its substance, but the full Report still improperly attached, suggesting that inclusion of

[6] Arguably, the proper measure of the harm to MEF resulting from violation of the Protective Order is the value of MEF's trade secrets as determined by MEF's expert witness.

the full Report, knowing its highly sensitive content, was calculated. Requiring that Barbounis and Mr. Carson to pay MEF's reasonable expenses and attorneys' fees in connection with this motion is hardly "unjust," given their familiarity with the terms of the Protective Order and the repeated, clear warnings that the Report was for "ATTORNEYS' EYES ONLY."

Default judgment against Defendant would also be appropriate under the circumstances presented in this case. Defendant herself has personally engaged in a patten of bad acts in this case, and the time and expense of litigating her failure to comply with Court orders alone has caused significant prejudice to Plaintiff, notwithstanding the prejudice to MEF caused by the filing of MEF's AEO Report. Defendant's knowledge of the sensitive nature of the clearly-AEO-designated Report, in combination with their misconduct in this case, demonstrates that the actions have been committed willfully and in bad faith. And, given that Defendant's conduct has only worsened over time, it is unlikely that a lesser sanction would adequately encourage Barbounis and Mr. Carson to abstain from similar conduct in the future. Put simply, monetary sanctions are not likely enough. *See Ceats, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG, 2021 WL 3738847, at *11 (E.D. Tex. Aug. 24, 2021) ("A monetary sanction would simply set a price on violating the Court's protective orders in a manner that could cause irreparable, unquantifiable harm."); *Blum v. Schlegel*, 108 F.3d 1369, at *2. Because Defendant has time and time again, demonstrated callous disregard for this Court's orders, default judgment is an appropriate sanction.

In sum, the Court should issue sanctions under Rule 37(b), 28 U.S.C. § 1927, and Local Civil Rule 83.6.1 for repeated misrepresentations to and misconduct before the Court. Despite MEF's attempts to cooperate with Defendant, the behavior has necessitated otherwise unnecessary filings and hearings before the Court. And advancing false arguments in bad faith and feigning false surprise contrary to documented facts is unacceptable. Thus, in addition to all other sanctions

set forth in MEF's proposed order, the Court should require reimbursement of MEF's attorneys' fees and expenses related to this motion.

## Conclusion

For all of the foregoing reasons, this Court should enter an Order (i) granting MEF's Motion; (ii) finding Barbounis and Mr. Carson in civil contempt for willfully submitting false statements to this Court and violating multiple court orders, including the Protective Order entered in this case; (iii) striking Defendant's defenses, and entering a default judgment on liability against Defendant; (iv) ordering Barbounis and Mr. Carson to pay MEF's attorneys' fees and costs incurred as a result of this Motion; and (v) granting such further relief as it deems proper.

## Certification

Prior to filing this Motion, MEF conducted a meet-and-confer with counsel for Barbounis, and we were unable to resolve this matter.

Dated: October 11, 2021

THE MIDDLE EAST FORUM
By counsel

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000

Fax: (202) 719-7049

*Counsel for The Middle East Forum*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 11, 2021, a true and correct copy of the foregoing was filed and served electronically on all parties through the Court's CM/ECF system.

s/ Sidney L. Gold
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*