**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MIDDLE EAST FORUM

               Plaintiff,

    v.

LISA REYNOLDS-BARBOUNIS

               Defendants.

Civil Action No. 2:19-cv-05697-JS

**Defendant, Lisa Barbounis' Omnibus**
**Response to Plaintiff's 7 Motions in Limine**

**DEFENDANT, LISA BARBOUNIS' OMNIBUS RESPONSE IN OPPOSITION**
**TO PLAINTIFF, MIDDLE EAST FORUM'S SEVEN MOTIONS IN LIMINE**

**I.     PLAINTIFF MIDDLE EAST FORUM'S MOTION IN LIMINE TO EXCLUDE**
**       EVIDENCE RELATING TO OTHER LITIGATION SHOULD BE DENIED.**

     Plaintiff, Middle East Forum ("Plaintiff" or "MEF") has filed seven Motions in

Limine to preclude Defendant from actually defending herself against a frivolous and

retaliatory lawsuit..   In a file now and ask questions later strategy, MEF had its attorneys file

a lawsuit against a former employee who had accused MEF's Director, Greg Roman of

sexual harassment and sexual assault.  MEF disregarded the fact that it suffered no harm by

any conduct of Lisa Barbounis.  And since attorney Attison Barnes' most recent fee petition

for $65,001 in attorney's fees, generated from the filing of 3 documents, one of them a 3

page letter that reasonably could not have taken more than thirty minutes to write, we now

know that there is no way for Middle East Forum to justify the time and cost spent litigating

this case.  If MEF is paying even close to the rates suggested by Attison's Barne's fee

petition, it means MEF has disregarded entirely a cost benefit analysis in the interest of its

actual motivation: to hurt the women who dared accuse Greg Roman of sexual misconduct.

Today we know that MEF's case is about a single e-mail with the names of 26 donors, that was sent to Amy Mekelburg and then lost. Amy Mekelburg did not read, use, consider, or even remember the email. The parties age in complete agreement that none of the 26 MEF donors stopped, altered, or reduced donation habits after the Amy Mekelburg email. Both parties are in agreement that Lisa Barbounis and Amy Mekelburg profited zero from sending the email, or that MEF lost zero. Notwithstanding, Middle East Forum charged ahead, spending what has to be (considering the Attison Barnes fee petition) close to seven figures decimate Lisa Barbounis using the United States civil litigation system. It is clear that Middle East Forum is knowledgeable about this legal strategy, using the civil justice system as a sword. Middle East Forum's house counsel testified under oath and described an MEF project to which he is assigned. The project is called, "lawfare." Middle East Forum has accused Defendant of misrepresenting the "lawfare" project. Defendant is not making any representations. Defendant is simply presenting the Court with the words of MEF's house counsel, Mark Fink. Attorney, Mark Fink is Director of MEF's Legal Project, which is called "Lawfare." Attorney Mark Fink has been Director of this project for nearly a decade. Director, Mark Fink was asked what the Lawfare project is and responded, at deposition, under oath. Here is what he said:

> Q.    Victims of what?
> A.    Lawfare.
> Q.    Lawfare. What's lawfare?
> A.    The offensive use of legal action to harass or bankrupt people.
> …
> A.    The question is, how long have I held this position?
> Q.    Specifically the victims of lawfare.
> A.    Well, make it easier. I've been at the Middle East Forum since, I believe, 2012 and I think within a year or two, I was director of Legal Projects. The other positions I've held the whole time.
> Q.    And is that -- director of the Legal Project for lawfare, is that a project that the Middle East Forum sponsors?

A.       Yeah, it's -- I say external project. It is part of the Middle East Forum, yes. …

Deposition of Mark Fink Pages 6 – 7 Lines 17 – 19.

Defendant makes no other representations other than what is clearly established by the testimony of MEF's House Counsel and Director of the Legal Project which includes Lawfare.   That is, Middle East Forum is familiar with the use of the civil litigation system to harass and bankrupt people.  This is a fact.  Defendant's claim is that Middle East Forum has used this knowledge to develop and implement a strategy related to Lisa Barbounis.  This claim is supported by both direct and circumstantial evidence.  The circumstantial evidence includes the timing of the filings.  Lisa Barbounis filed her sexual harassment case against Middle East Forum on October 27, 2019.  Middle East Forum responded about 5 weeks later with the instant lawsuit, alleging violations of statutes without any damages suffered.  At the time, Lisa Barbounis was attempting to work with Middle East Forum to find a way to resolve any concerns MEF had with regard to information that might still exists on her devices.  Additional evidence of a retaliatory motive are the many other lawsuits that MEF filed against Lisa Barbounis without evidence.  MEF's file now and ask questions later litigation strategy was employed in the counterclaims, which included breach of duty of loyalty, an allegation that MEF is trying again in this case.  In dismissing the counterclaims with prejudice, Judge Wolson explained,  "Middle East Forum has not offered evidence to make out its claims against Lisa Barbounis, and she is entitled to summary judgment on each one." (Document 135).  MEF did not mind the lack of evidence in that case, just like MEF does not mind the lack of evidence in this case.  The same is true for the federal RICO case that MEF filed against List Barbounis earlier this year.  Lisa Barbounis responded by sending MEF a proposed Rule 11 motion.  MEF subsequently withdrew the case to avoid sanctions.  Had Lisa Barbounis not drafted the Rule 11 Motion this same Court, with Your

3

Honor presiding, would be forced to deal with another senseless lawsuit, entirely unsupported by evidence.

Defendant, Lisa Barbounis is making these arguments in this first section of her omnibus response in opposition to Plaintiff's Motions in Limine because essentially, four of Plaintiff's Motions are all a single argument.  Plaintiff does not want the jury to hear Defendant's explanation for why Plaintiff filed its case.  Therefore, Defendant filed four (4) Motions in Limine on November 11, 2021, for:

1. A Motion In Limine To Exclude Evidence Relating To Other Litigation.

2. A Motion in Limine to Exclude Evidence of Retaliation.

3. A Motion in Limine to Exclude Evidence related to Lawfare.

4. A Motion in Limine to Exclude Evidence of Inflammatory Language.

All of these motions seeks to do the same thing: prevent the jury from hearing what may be the truth, that Middle East Forum filed the instant lawsuit against Lisa Barbounis as part of a strategy to mitigate any gains Ms. Barbounis received in her lawsuit, or to punish a women for having the courage to stand up for her rights that Greg Roman and Daniel Pipes trampled upon. Plaintiff is unconcerned that Defendant's claims of retaliation is supported by evidence.  In addition to the timing, and the several other lawsuits filed with no evidentiary support, there is also the fact that Lisa Barbounis is hardly the first employee to leave the Middle East Forum with residual information still their possession.  In a digital age, where every employee is required to use personal devices, smart phones, laptops, email accounts, it is no surprise that Lisa Barbounis is just one of many employees to discontinue her employment with MEF still in possession of MEF information.  There is proof that Middle East Forum requires employees to use personal devices and personal accounts.  The Middle East Forum actually maintains a written

" BYOD" policy, which stands for "Bring Your Own Device."  <u>A copy of the BYOD policy is</u>
<u>attached as Exhibit A</u>.  Moreover, Director of the Middle East Forum, Greg Roman confirmed
that employees are required to use their personal email accounts in order to use Google
applications such as Google Calendar and Google documents.  <u>A copy of the email directing</u>
<u>MEF employees to use their personal email accounts is attached as Exhibit B</u>.  Despite this clear
evidence that employees were permitted to use personal email accounts and personal devices,
95% of Plaintiff's case is about Lisa Barbounis using her personal email account or personal
device.  In almost every one of these instances, Lisa Barbounis was not sharing information with
anyone and maintained confidentiality of information.  MEF is attempting to sue Lisa Barbounis
for what can at worst be categorized as engaging in activities that MEF frowned upon.  But it is
not against any law for an employee who is authorized to view information, to share that
information with herself.  Still, MEF charged forward, attempting to label every time Lisa
Barbounis using a personal device or account as illegal activity.  There is also direct evidence
that MEF's lawsuits are retaliation.  That is because Daniel Pipes conceded this fact.  MEF is
attempting to classify this admission against interest as a 408 communications, however, Daniel
Pipes luring Lisa Barbounis to a busy train station in Philadelphia to attempt to threaten Lisa
Barbounis into abandoning her sexual harassment lawsuit is not what congress intended to be
protected when Rule 408 was promulgated.  Even if some of what Daniel Pipes said constitutes a
408 communication, it does not give Daniel Pipes blanket protection.  In order for Rule 408 to
apply, the precise nature of the conversation and what was said needs to be considered.  When
Daniel Pipes said that he knowns Lisa Barbounis is a "good person" and that she would not have
done anything to harm Middle East Forum, that surely was not said as part of a settlement
negotiation.  Moreover, 408 communications cannot cover illegal activity, like extortion.  Daniel

Pipes' promise to "scuttle" a RICO lawsuit that was not filed yet as long as Lisa Barbounis withdrew her sexual harassment case is not a protected settlement discussion. Daniel Pipes' conversation with Lisa Barbounis at that train station included many statements that did not relate in any way to settlement discussions. These statements are also evidence of MEF's motives in filing the instant case and Defendant should be permitted to present this information as evidence to prove Defendant's theory of the case, that Middle East Forum filed a baseless claim against the Defendant as part of a scheme of retaliation that included two other lawsuits among other acts that are difficult to understand without seeing the full picture. Comparator evidence is always relevant to prove that a party is being treated differently under the same circumstances. MEF Employees regularly use personal devices and emails accounts and MEF does not employ similar devastative litigation efforts in those instances. Talken together, Defendant's position is supported by evidence. Defendant's theory of this case is that Middle East Forum is more interested in the act of suing Lisa Barbounis than in actually obtaining a monetary award. Middle East Forum is well aware of Lisa Barbounis' financial position. That is, Lisa Barbounis supports two adolescent children and lives paycheck to paycheck. When she was forced to discontinue her employment for MEF, Lisa Barbounis had to move to the Washington D.C., to find reemployment. So Lisa Barbounis also supports two households. During the clandestine meeting at 30th Street Train Station, Daniel Pipes offered to pay for a bankruptcy lawyer, so Lisa Barbounis could avoid paying legal costs associated with the instant matter. This too is evidence that MEF understands there is may be very little gained from this lawsuit. Still, MEF has authorized the expenditure of enormous legal costs to charge forward with suing Lisa Barbounis. Of course, according to MEF House Counsel, that is what the lawfare project is about, the offensive use of the legal process to harass and embarrass people.

II.   **PLAINTIFF MIDDLE EAST FORUM'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF RETALIATION SHOULD BE DENIED.**

See Defendant's Response in Section 1, above.  Defendant, Lisa Barbounis' theory of retaliation is supported by evidence.  For the reasons stated above, Defendant suggests she should be permitted to present both circumstantial and direct evidence that supports her theory of this case.

III.   **PLAINTIFF MIDDLE EAST FORUM'S MOTION IN LIMINE TO EXCLUDE UNAUTHENTICATED HEARSAY EVIDENCE REGARDING MEF DONORS SHOULD BE DENIED.**

Plaintiff does not want the jury to know that the information that Plaintiff has claimed constitutes "trade secrets" are not trade secrets at all.  Of course Plaintiff seeks to preclude Defendant from introducing this evidence.  This evidence is extremely persuasive and proof positive that the donor names on the list of 26 sent to Amy Mekelburg are certainly not trade secrets.  Almost every one of these names appears on numerous websites, tax returns, business records, business listings, news articles and more that are all in the public domain.  In an attempt to save its case, Plaintiff has called this information unauthenticated hearsay evidence.  This evidence is neither unauthenticated or hearsay, but even if it was, there are exceptions that clearly permit a Defendant from introducing this type of information in a trade secrets case.

In any trade secret case, the court must first determine whether there exists, in fact, a trade secret. Baxter Healthcare Corp. v. HQ Specialty Pharma Corp., 157 F. Supp. 3d 407 (D.N.J. 2016).  Matters of public knowledge or information completely disclosed by marketed goods cannot qualify as trade secrets. Baxter Healthcare Corp. v. HQ Specialty Pharma Corp., 157 F. Supp. 3d 407 (D.N.J. 2016).  The subject of a trade secret must be secret and must not be

of public knowledge or of general knowledge in the trade or business. <u>Kewanee Oil Co. v.</u> <u>Bicron Corp.</u>, 416 U.S. 470, 94 S. Ct. 1879, 40 L. Ed. 2d 315 (1974).  To prevail on misappropriation of trade secrets claim under Pennsylvania Uniform Trade Secrets Act (PUTSA) and Defend Trade Secrets Act (DTSA), alleged trade secret must be particular to plaintiff and not to industry itself and must not be available through independent source such as customers. <u>Ecosave Automation, Inc. v. Delaware Valley Automation, LLC</u>, No. CV 20-5564, 2021 WL 1998708 (E.D. Pa. May 19, 2021).

If Plaintiff's argument was afforded merit, how would a defendant prove that information is part of the public domain?  Proof that a trade secret is part of the public domain is clearly probative to the question of whether something is a trade secret.  In the past, the public domain meant a lot of things including newspapers, periodicals, television news sources, or government records.  Today, the public domain includes the internet.  Plaintiff argues that the information is not reliable and is authenticated.   This is hardly the point.  The information was available yesterday, is available now, and will be available tomorrow in the public domain.  The information is easily searchable and indexed by Google, the largest search platform on the planet.  Plaintiff's Motion lumps all the information into a single category and labels is "unreliable unauthenticated."  Plaintiff's Motion ignores that the source of the information, which can be confirmed and viewed by anyone with a smart phone, includes filed tax returns, published articles, and compiled lists of information dedicated to the disclosure of publicly available donor records.  This information is publicly available pursuant to IRS tax laws.  The IRS relies on this information in order to conduct the business of the federal government.

But the point of presenting this evidence has nothing to do with whether it is reliable or authenticated.  The point is that the information is available in the public domain.  Whether true

or not, Defendant presents this information to prove that the information that is the very crux of

this case, is not a trade secret.  The very elements that make something a trade secret are

disproval if that precise information can be found on numerous public resources.  Coke would be

unable to claim that its soft drink recipes are trade secrets if they were published on Wikipedia.

Defendant does not present this information for its truth.  Defendant would suggest that the Court

has the authority to rule on this issue as a matter of law, however, Defendant should be afforded

the opportunity to use this public information to disprove any trade secret claim at trial.  There

are other hearsay exceptions that made this information admissible in court.  The tax returns are

business records.  Plaintiff misses the point of the evidence Defendant seeks to present.  The fact

that the information is online, for the public, is the point.  To authenticate the information would

require only an internet connection.  The parties can do this in real time in the courtroom if need

be.  Whether the information is reliable is not even probative.

Regarding the many filed tax returns, which is just one of the many sources for this public

information, the rules clearly allow this.  Internet content which originates from a public

authority is deemed to be self-authenticating under Fed.R.Evid. 902(5) and documents which are

taken from government websites are found to be authentic under Fed.R.Evid. 901(b)(7).  E.I.

DuPont de Nemours, 2004 WL 2347559, at *1 (E.D. La. 2004); U.S. ex rel. Trice v.

Westinghouse Elec. Corp., No. 96-CS-171-WFN, 2000 WL 34024248, at *18 (E.D.Wash. Mar.

1, 2000).

Another  exception to the Hearsay Rule exists for "market quotations, tabulations, lists,

directories, or other published compilations, generally used and relied upon by the public or by

persons in particular occupations."  Fed. R. Evid. 803(17).  When such information appears on a

website, it is admissible in the same manner as similar material published in books or

periodicals.  See <u>Hess v. Riedel-Hess</u>, 794 N.E.2d 96, 103-04 (Ohio Ct. App. 2003)(finding that

a valuation of a vehicle calculated by the National Automobile Dealer Association website was

admissible even when a reliable print source valuation was also submitted); <u>Elliott Assoc., L.P.</u>

<u>v. Banco de la Nacion</u>, 194 F.R.D. 116, 121 (S.D.N.Y. 2000)(holding that rates acquired from

the Federal Reserve Board website or from Bloomberg are admissible under Fed.R.Evid.

803(17); <u>State v. Erickstad</u>, 620 N.W.2d 136,146 (N.D. 2000)(holding that the appraisal of a car

determined from the Kelley Blue Book website was admissible under Fed.R.Evid. 803(17)).

Much of the information that Defendant seeks to present also comes from websites that

compile data, directories, lists, and other published compilations.

Defendant also seeks to present articles along with the published date to confirm when the

information was released to the public.  This articles are the business records/content of online

resources dedicated to publishing this type of information.   Again, Defendant does not seek to

present this information for its truth and would agree that the jury does not have to consider it for

its truth.  The information is presented solely to confirm that it is indeed part of the public

conversation and thus cannot, as per well established case law, be considered a trade secret.

Using the Internet to access business information is commonplace and has been for quite

some time. Nearly everyone has virtually instantaneous access to online resources through a

device in their pocket. When a web address or URL is typed into a web browser, everyone sees

the same publicly available webpage, whether it is Google, Amazon, Yelp, or EBay. Webpages

are thus "capable of accurate and ready determination by resort to sources whose accuracy

cannot reasonably be questioned." <u>See</u> 16 C.F.R. § 3.43(f); <u>see also</u> Fed. R. Evid. 201 (same).

Yet Complaint Counsel takes the position that no webpages may be admitted at all, asserting

some undefined concern over accuracy or veracity.  Each of the websites Defendant presents lists

the source URL, which Counsel or the Court can easily verify.  These are publicly available and

unquestionably "capable of accurate and ready determination."  Plaintiff's objections have no

merit.  These websites are specifically curated to inform the public at large of the names of MEF

donors, donation amounts, and time of donation, the very information at issue in this case.

There is no basis for an authenticity objection. Courts across the country, have long

recognized the admissibility of web pages. E.g., In re California Naturel, Inc., 2016 FTC LEXIS

236 at *7 n.2 (F.T.C. 2016) ("Pursuant to 16 C.F.R. § 3.43(f), we take official notice of the

content of California Naturel's website ...."); see also, e.g., O'Toole v. Northrop Grumman Corp.,

499 F. 3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of

factual information found on the world wide web."); Pac. Overlander, LLC v. Kauai Overlander,

2018 U.S. Dist. LEXIS 135567, at *6 (N.D. Cal. 2018) ("[I]n general, websites and their

contents may be judicially noticed"); Coremetrics, Inc. v. AtomicPark.com, LLC, 370 F. Supp.

2d 1013, 1021 (N.D. Cal. 2005) ("[A]s is evident from AtomicPark's website (of which the Court

takes judicial notice ...")); Patsy's Italian Rest., Inc. v. Banas, 575 F. Supp. 2d 427, 443 n.18

(E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites

published on the Internet."), aff'd, 658 F.3d 254 (2d Cir. 2011).

The reliability of webpages is so well accepted that courts routinely admit past versions of

them. Marten Transp., Ltd. v. PlattForm Advert., Inc., 2016 U.S. Dist. LEXIS 57471, at 7 (D.

Kan. 2016) (noting that "courts commonly take judicial notice of such sites" and collecting

authorities); see also, e.g., Pond Guy, Inc. v. Aquascape Designs, Inc., 2014 U.S. Dist. LEXIS

85504, at *9 (E.D. Mich. 2014) ("As a resource the accuracy of which cannot reasonably be

questioned, the Internet Archive has been found to be an acceptable source for the taking of

judicial notice.").  Indeed, the practice of consulting websites with pertinent information is

commonplace enough that courts have advised parties to consult the internet for relevant evidence:

Counsel also asserts a hearsay objection. But that can only apply if Defendant seek to use a website for a hearsay purpose.  It is not Defendant's intent to introduce websites for the truth of the matter asserted, but rather to show information is available public ally, whether true or not, there it is.  This is not hearsay. See City & Cty. of S.F. v. HomeAway.com, Inc., 21 Cal. App. 5th 1116, 1123 n.2 (Cal. Ct. App. 1st Dist. 2018) ("Here we may take judicial notice of HomeAway's privacy policy not for its substantive truth but because the fact that this policy exists is evidence that HomeAway subscribers and customers were on notice of certain company policies ...."). Even if Defendant does seek to use websites for the truth of the matter asserted, it is still admissible because it is "relevant, material, and bears satisfactory indicia of reliability so that its use is fair." ; see also In re PolyPore Int'l, Inc., 2010 FTC LEXIS 62, at *6-7 (2010) (noting that hearsay evidence may be received in FTC proceedings).  In the end, Plaintiff's generalized concerns about whether pages printed from a website are, in fact, from the website are not well founded.  Counsel has not identified any specific reason to deem the website exhibits as unreliable or inadmissible.  Therefore the information is fair game at trial.

## IV.     PLAINTIFF MIDDLE EAST FORUM'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S MISREPRESENTATION OF "LAWFARE" OR SIMILAR PRACTICES SHOULD BE DENIED.

See Defendant's Response in Section 1, above.  Defendant, Lisa Barbounis' theory of retaliation is supported by evidence.  For the reasons stated above, Defendant suggests she should be permitted to present both circumstantial and direct evidence that supports her theory of this case.   The lawfare project is an MEF project.  According to MEF house counsel, the lawfare project deals with lawfare, which is defined by MEF house counsel as the offensive use of the

12

legal process to harass and bankrupt people.  MEF's knowledge in this regard is just one aspect

that supports Defendant's theory of this case.  If Defendant is correct, and MEF filed this lawsuit

in order to retaliate against a female employee who attempted to vindicate her rights under Title

VII, then this information has enormous probative value.  This is not opinion testimony.

Defendant intends to present facts to the jury which support her theory of the case.  The decision

whether to admit settlement evidence for "another purpose" is squarely within a district court's

discretion. Sikkelee, 2021 WL 780817, at *12 (citations omitted).  Offering evidence to prove

the existence of an agreement to settle a claim (or a portion of a claim) is a purpose other than to

establish liability on a disputed claim and, therefore, outside of Rule 408's proscription of

admissibility. See Cates v. Morgan Portable Building Corp., 780 F.2d 683 (7th Cir. 1985)

("Obviously a settlement agreement is admissible to prove the parties' undertakings in the

agreement, should it be argued that a party broke the agreement."). Indeed, as one well-respected

treatise puts it: Perhaps the largest group of [Rule 408 'another purpose'] precedents involves the

use of compromise evidence where the compromise agreement is the basis for the claim rather

than circumstantial evidence of the validity of the claim being compromised. For example, if suit

is brought for breach of a settlement contract, Rule 408 does not prevent the plaintiff from

proving the agreement. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 5314 (2d. ed. 2020) (footnotes omitted).


### V.        PLAINTIFF MIDDLE EAST FORUM'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SETTLEMENT COMMUNICATIONS SHOULD BE DENIED

See Defendant's response to Section I, above.  The statements of Daniel Pipes are not all covered

under 408 communications.  "Rule 408 does not rule out the admission of settlement evidence in

all circumstances." Sikkelee v. Precision Airmotive Corp., 2021 WL 780817, at *12 (M.D. Pa.

Mar. 1, 2021).   "Rather, when not used to 'prove or disprove the validity or amount of a disputed claim,' settlements are admissible where offered for 'another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.' " Id. (citations omitted). See also Benson v. Giant Food Stores, LLC, 2011 WL 6747421, at *5 (E.D. Pa. Dec. 22, 2011) (holding that "Rule 408 is inapplicable if offered to show that a party made fraudulent statements in order to settle a litigation").   In this case, Daniel Pipes lured Lisa Barbounis to a crowded train station in order to threaten her with additional litigation.   Daniel Pipes made several statements during this conversation that indicated MEF's actual intention for filing the instant lawsuit.   Lisa Barbounis seeks to introduce this information into evidence as part of her strategy to defend this frivolous lawsuit.

## VI.   PLAINTIFF'S MOTION IN LIMINE TO PROHIBIT INFLAMMATORY REFERENCES TO PLAINTIFF SHOULD BE DENIED.

See Defendant's Response in Section 1, above.   To the extent that sustaining this Motion in Limine would prevent Defendant from presenting her theory of Plaintiff's lawsuit, Defendant objects and argues that she should have the right to do so.   Defendant does not plan to use "inflammatory" language at trial, in front of the jury.   Defendant does seek to explain to the jury that she is currently in litigation with MEF.   Defendant, then seeks to present the evidence, both circumstantial and direct, that indicates that MEF's instant action was filed as part of a campaign of retaliation.   Should the Court allow it, Defendant can and will present her theory of the case without inflaming the jury, and the jury, as the fact finder, will have to determine if they agree.

**VII.   PLAINTIFF MIDDLE EAST FORUM'S MOTION IN LIMINE FOR AN ADVERSE INFERENCE AGAINST THE DEFENDANT REGARDING SPOLIATION OF EVIDENCE SHOULD BE DENIED.**

Plaintiff's seven Motions in Limine seek to prejudice Defendant at trial, so that she does not have the opportunity to fairly mount a defense to Plaintiff's frivolous, unsupported claims.  But maybe none so much as Plaintiff's request for an adverse inference.  Plaintiff makes this request without any evidence of spoliation.  Plaintiff's argument is that Plaintiff thinks there might have been spoliation.  To substantiate this argument, Plaintiff makes two points.  The first is that Lisa Barbounis returned  a computer to MEF with factory settings.  The second is that some other person, not Lisa Barbounis, took Lisa's personal passcode out of a work device.

Dealing with the second issue first, this occurred after Lisa Barbounis' employment with MEF ended.  Apparently one of the work devices was still linked to Lisa's personal iCloud account.  Therefore, some other person removed the link to Lisa's iCloud account.  As Lisa's iCloud account was part of the e-discovery performed in this case, and there was no issue with obtaining information therefrom, Defendant can perceive of no reason why Plaintiff even presents this as information to be consider by the Court.  Plaintiff simply hopes to confuse, conflate and confound the truth, that this had nothing to do with evidence in this case.

Regarding the returned Apple laptop, there is also no indication that any evidence was compromised, deleted, or even affected.  The device was offered as a personal computer and Defendant had the opportunity to keep it.  Because she could not afford the payoff amount, the device was instead returned.  Upon return, Lisa Barbounis only sought to remove her personal passwords from the device and there is no indication that any other information was removed or affected.   We know this because of the expansive e-discovery performed in this case, and that there was no indication that any information was spoliated.  Defendant only removed her

personal passcodes to make sure that her personal, private information was fairly protected.

Defendant spoke to the Director of Himan Resources about this issue several times and the

Director of Human Resources suggested that they look into resetting the computer to factor

settings.  Plaintiff has suggested that one of these comments by the Director of Human Resources

occurred after the computer was reset.  Plaintiff then argues that Defendant could not have relied

on this comment because of this.  But Defendant has presented a sworn declaration that explains

that she and the Director of Human Resources held more than one discussion, and the Director of

Human Resources' text message was simply reintegrating what the two had previously

discussed.  This is one reason why it would not be fair to apply such an extreme sanction in this

case.  Another reason is that there is no evidence that any information was even on the computer

in the first place, or that the resetting of a computer to factory settings would have any effect on

information if it had been on the computer.  Resetting a computer or a phone, particularly an

Apple device, does not delete the information stored on that device.  To the contrary, a factor

reset can be performed that preserves the information stored on that device.  The reason why

there was no information on that device was because Middle East Forum employees work using

cloud-based systems.  In an attempt to show that Lisa Barbounis at one time had to download

something onto the computer, MEF presents testimony from the injunctive relief hearing, where

Lisa Barbounis testifies about a campaign that she executed in March 2019, which was months

before there was any litigation conceived or litigation hold.  Lisa Barbounis did not retain

counsel until June 2019.  Accordingly, a document that was saved and deleted from her

computer in March 2019 does not advance Plaintiff's argument.  Plaintiff also presents exhibit J,

which is an argument from counsel.  This argument is the reason why an adverse

inference/spoliation charge is unwarranted in this case.

> This case is about making sure she doesn't have 17 information. So erasing information to make sure she doesn't 18 have access to it shouldn't be a concern in this case. 19 She's never erased, never destroyed, never moved, 20 looked at, thought about any of the information in this case. 21 Everything is today where it was when we'd spoke in December, 22 and where it was when she left MEF. The pictures –

Defendant did not move, erase, destroy, anything from her laptop and there is no evidence in this case to contradict or even indicate that this argument is not valid.  Because the Plaintiff lacks this evidence, Plaintiff hopes the Court will issue a severe sanction based on the argument, "well... it could have been."  Plaintiff's argument is that we don't know.  Plaintiff's argument is that Plaintiff thinks this might have been information on the device.  Because Plaintiff is unable to prove that the device ever had information subject to this case on it, that was erased after the litigation hold was issued, Plaintiff cannot satisfy its burden to warrant an adverse inference sanction/instruction.  Another issue with Plaintiff's argument is that Plaintiff is once again intentionally attempting to mislead the Court.  Paragraph 40 of Plaintiff's Amended Civil Action Complaint confirms that the information that was backed up to a computer, to which Defendant testified, occurred using Defendant's personal computer.  See Document 20 ¶ 40 ("The internal investigation also uncovered that Barbounis had improperly accessed the confidential MEF master donor and e-mail distribution list containing 64,836 contacts and electronically backed this up on her personal computer.") Id.  This is what Defendant testified about and that Plaintiff presented in Exhibit I of Plaintiff's Motion. Accordingly, Defendant's testimony has nothing to do with the Apple device that was returned to MEF when Defendant's employment ended.  Plaintiff makes this misleading arguments in lieu of actual evidence that any information was ever spoliated.

IV.    **CONCLUSION**

Based on the above arguments Defendant suggests that Plaintiff's seven Motions in Limine should be denied.

**DEREK SMITH LAW GROUP, PLLC**

BY:_____/s Seth D. Carson_____
        Seth D. Carson, Esq.
        Attorney ID. No. 319886
        1845 Walnut Street, Suite 1601
        Philadelphia, PA 19103
        (215) 391-4790
        seth@dereksmithlaw.com
        *Attorney for Plaintiff*

DATED: November 18, 2021

## CERTIFICATE OF SERVICE

I, Seth D. Carson, hereby certify that on this date the foregoing Motion in Limine has

been electronically filed with the Court and is available for viewing and downloading from the

ECF System and thereby have been served upon the following counsel of record, electronically:

TO:

Sidney L. Gold sgold@discrimlaw.
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

BY: **/s/ Seth D. Carson**
Seth D. Carson, Esq.
Attorney ID. No. 319886
1845 Walnut Street, Suite 1601
Philadelphia, PA 19103
(215) 391-4790
seth@dereksmithlaw.com
*Attorney for Plaintiff*

DATED: November 11, 2021