**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIDDLE EAST FORUM,<br><br>                Plaintiff,<br><br>v.<br><br>LISA REYNOLDS-BARBOUNIS,<br><br>                Defendant. | Civil Action No. 2:19-cv-05697-JS |

**DEFENDANT'S MOTION TO FILE A REPLY BRIEF IN
CONNECTION WITH HER PETITION FOR ATTORNEY'S FEES**

Defendant, Lisa Barbounis requests the Court allow her to file a Reply Brief, in response to Plaintiff, Middle East Forum's Opposition to Defendant's Petition for Attorney's Fees.

Defendant's Reply Brief is attached to this Motion as Exhibit A.

                                                                BY: _____/s/ Seth D. Carson_____
                                                                        Seth D. Carson, Esquire
                                                                       Derek Smith Law Group, PLLC
                                                                       1835 Market Street, Suite 2950
                                                                       Philadelphia, PA 19103
                                                                       Phone: 215.391.4790
                                                                       Email: Seth@ DerekSmithLaw.com
                                                                       Counsel for Plaintiff

DATED: January 20, 2022

## CERTIFICATE OF SERVICE

    I hereby certify that on this date that I caused a true and correct copy of Defendant's Motion to be served via ECF.

        Sidney L. Gold sgold@discrimlaw.
        Sidney L. Gold & Associates P.C.
        1835 Market Street, Suite 515
        Philadelphia, PA 19103
        Tel: (215) 569-1999
        Fax: (215) 569-3870
        Counsel for The Middle East Forum

        **DEREK SMITH LAW GROUP, PLLC**

BY:  /s/ Seth D. Carson_____
        SETH D. CARSON
        Derek Smith Law Group, PLLC
        1835 Market Street
        Suite 2950
        Philadelphia, PA 19103
        Phone: 215.391.4790
        Facsimile: 215.893.5288
        Email: Seth@DerekSmithLaw.com

DATED: January 20, 2022

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIDDLE EAST FORUM<br><br>                Plaintiff,<br><br>v.<br><br>LISA REYNOLDS-BARBOUNIS,<br><br>                Defendant. | Civil Action No. 2:19-cv-05697-JS |

**DEFENDANT'S REPLY IN SUPPORT OF
DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Defendant, Lisa Barbounis ("Ms. Barbounis" or "Defendant") filed a Motion to recover attorney's fees pursuant to Middle East Forum's ("MEF") case against Lisa Barbounis under the Uniform Trade Secret Act and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"). The following is Defendant's Reply in Support of her Motion.

    **I.**    **DEFENDANT IS ENTITLED TO RECOVER ATTORNEY'S FEES BECAUSE PLAINTIFF'S CASE WAS FILED AND MAINTAINED IN BAD FAITH.**

    **A.** **Defendant's Amended Complaint (Doc 20) confirms that Middle East Forum filed false claims against Lisa Barbounis without evidence of harm or damages.**

MEF initiated its trade secrets case against Ms. Barbounis on December 3, 2019, thirty-seven (37) days after Ms. Barbounis' sexual harassment case was filed (Doc 1). On January 15, 2019, MEF filed an amended complaint (Doc 20). This amended complaint was verified under perjury of penalty Id. Without facts upon which to base its case, MEF filed a verified amended complaint containing false statements constituting perjury. For example, the amended complaint states: "MEF did not require Barbounis to use her personal e-mail accounts, and Barbounis was not authorized to use her personal e-mail accounts for MEF business, in accordance with the Personnel

Manual." (Doc 20 ¶ 38).   Comparing the verified complaint to Gregg Roman's ("Mr. Roman") trial testimony, it appears MEF committed perjury.  On Pages 80 and 81 (Jury Trial Transcript, Day 2), Mr. Roman confirms MEF required Barbounis (and all MEF employees) to use personal email accounts to conduct MEF business.  This included compiling the type of donor lists that MEF claims are trade secrets.  The Amended Complaint and the trial testimony is in opposite.  Unfortunately, this perjury is not the exception, but the rule Mr. Roman employed in MEF's bad faith lawsuit against Ms. Barbounis.  Mr. Roman claimed that by March 2019, MEF transitioned from personal email-accounts, but this testimony did not stand up to scrutiny.  Through cross, it was apparent that MEF employees, including Pipes and Roman used personal email accounts, and required employees to use personal email accounts during all of Ms. Barbounis' employment. (Jury Trial Day 2 p 18:1 – 16).

      MEF's verified complaint contains a plethora of false statements in support of its bad faith trade secrets case.  Paragraphs 40, 41, and 42 accuse Ms. Barbounis of backing up MEF information on a personal computer.  This statement in the verified complaint is in opposite to the evidence.  The only computer at issue in this lawsuit was an MEF computer that Ms. Barbounis did not own and returned when her employment ended.  Paragraph 45 (Doc 20) is another perjurious statement presented in a verified complaint.  The evidence confirms the opposite of what MEF pled in the complaint. See An email from Daniel Pipes to Lisa Barbounis about Tommy Robinson attached as Exhibit A.  Mr. Pipes did the opposite of what MEF pled, telling Ms. Barbounis he did not want to instruct someone what to do "on their own time."  As the email was sent in June 2019, Mr. Pipes maintained this position to the end of Ms. Barbounis' employment.  Exhibit A also contradicts Paragraphs 45 and 46.

      Paragraphs 47 and 48 also indicate bad faith.  The new NDA did not relate to trade secrets but to a staff meeting about Mr. Roman's sexual assault of Mr. Barbounis and Ms. McNulty.  The new NDA was Mr. Pipes' attempt to keep the allegations of sexual assault from reaching the administrative process.  Paragraph 49 also related to the sexual harassment allegations and not to any

trade secrets. MEF has repeatedly attempted to bootstrap this document-preservation notice to the trade secrets case, when the notice was sent in response to MEF receiving 4 Charges of Discrimination from the EEOC in June 2019 – the same month the notice was sent.

Paragraph 60 (Doc 20) is also highly disingenuous, as MEF presented zero evidence of any dissemination of trade secrets after Mr. Barbounis' employment ended, other than a single email containing Meltwater information sent August 2019. Paragraph 65 of the complaint had nothing to do with Ms. Barbounis and is a misrepresentation of what actually transpired.

Middle East Forum employed a file-now, figure it out later, strategy. The amended complaint contains no fact-based examples of harm or damages. Every paragraph referencing harm fails the specified pleading requirements promulgated by the Supreme Court and upheld in the Third Circuit. See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). ("rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" are disregarded.").

MEF asserts only generalized allegations of harm in Paragraphs 77, 15 (sic), 75, 84, 94, 100, 116, and 120. These are the only paragraphs in MEF's amended complaint addressing harm, or damages. It is clear that MEF had no evidence of injury at the time the lawsuit was filed, and filed anyway. ***The amended complaint contains no facts addressing damages***. (Emphasis added). MEF did not pause to consider the absence of this necessary legal element. MEF filed its lawsuit anyway, without the necessary evidence of damages. MEF continued without evidence of damages for almost two years, from December 2019 until the final days of discovery at the end of 2021. During this time, the Court warned MEF that damages were a significant issue that MEF was expected to address. MEF should have addressed damages before its lawsuit was filed.

In the normal course of affairs, when a party is injured, they investigate and file suit to redress the injury. MEF chose a different path. MEF believed it could prove a technical violation, and filed its lawsuit without damages. MEF continued its lawsuit without damages through the trial to verdict. MEF chose this path because its aim was to drag Mr. Barbounis' name through the mud.

The trade secrets case was part of a three-prong attack. The other two attempts, the counterclaims and the RICO lawsuits were dismissed for lack of any and all evidence and to avoid Rule 11 sanctions, respectively.

MEF ignored a gaping hole in its case from the outset, the absence of harm, and continued to trial and verdict. MEF ignored the gaping hole in its case, disregarding statements offered by the Court, that MEF was expected to address evidence of damages during discovery. Instead of focusing on a theory of damages grounded in fact, MEF chose another path. This path required the judge and jury to consider a novel approach to damages unsupported by any other case in the history of American jurisprudence. MEF asked the jury to consider an unjust enrichment analysis, ***with no evidence of enrichment***. MEF asked the jury to consider a reasonable royalty analysis, ***with no evidence that any trade secrets were used, or even considered***. MEF's novel and unique approach would have changed trade secrets statutes to laws of strict liability. This idea is not supported by any language in any of the applicable statutes. To the contrary, the statutory language requires proof, of either actual harm or unjust enrichment. 12 Pa.C.S. § 5304(a). MEF conceded it could not prove actual losses. The argument MEF made next belies common sense and is evidence of the speciousness of Plaintiff's case. Absent actual losses, MEF asked the Court and Jury *to assume* unjust enrichment. MEF attempted to skip over the part of its case where evidence was required to prove unjust enrichment. MEF actually suggested to the Court, that it was entitled to an amount of money equal to what it cost to acquire and maintain the donors and that this same number was somehow the calculation for unjust enrichment. MEF's purported expert supported this novel, strict approach by testifying that the damages should be assumed because the email was sent. (Jury Trial Transcript, Day 3 p98:18 – 99:14). This is the very definition of strict liability and there is no case, statute, treaty, language anywhere that supports MEF's novel application of the law. To be clear, MEF has presented cases where an unjust enrichment analysis is used, or a reasonable royalty analysis. But MEF cannot present a single document that suggests these calculations should be

applied without the factual basis upon which to prove they are appropriate. MEF provided only its calculation, arrived at by a so-called "expert" with zero experience in the non-profit sector.

### B. In the absence of evidence, Middle East Forum resorted to perjury.

Additional indication of Plaintiff, Middle East Forum's bad faith exists. Middle East Forum repeatedly presented false and misleading information, under oath, to the jury, in an attempt to discredit Lisa Barbounis. MEF employed this strategy to try and fill the void left by the absence of legitimate evidence and argument. For example, Gregg Roman testified that Lisa Barbounis wiped a laptop, a desktop computer, and USB drives. (Jury Trial Transcript, Day 2 p47:19 – 48:12). Then the person who actual did the work and prepared the report testified and we learned that Gregg Roman intentionally attempted to mislead the jury by presenting false information under oath. (Jury Trial Transcript, Day 2, p266 1 – 9). This was not a mistake. Mr. Roman testified that he reviewed a report that contained conclusions that never occurred. Everything Mr. Roman testified to was wrong. Again, this is not the exception but the rule Mr. Roman used in his attempt to persuade the jury of the merits of Plaintiff's bad faith lawsuit. Mr. Roman repeatedly testified about documents that should not be in Ms. Barbounis' possession, or "should have been returned." (Jury Trial Transcript, Day 1 p121). Mr. Roman's testified that he never authorized Mr. Barbounis to have this type of information and/or retain it. On cross-examination, it became apparent that Mr. Roman's testimony was false. Mr. Barbounis had this information on personal devices because she was required to originate the documents using her personal gmail account and Google Docs. Ms. Barbounis was also not the only person who still had access to this information. The cross-examination of Gregg Roman confirmed that many former MEF employees still had access to the same documents that MEF presented to the jury and testified constituted protected trade secrets. Caitriona Brady, Delaney Yonchek, Thelma Prosser, Stacy Roman, Patricia McNulty, and several others can to this day access these so-called "sensitive" documents containing purported trade

secrets. Lisa Barbounis wasn't the only person who could still access the information. Ms. Barbounis was just the only person that MEF sued and forced to incur nearly a million dollars in legal fees. (Jury Trial Transcript, Day 1, p97 – 99). Mr. Roman also committed perjury with regard to the steps that MEF took to protect the information. On direct examination Mr. Roman testified to security measures that were impossible to implement or sustain given MEF's lax policy and requirement that employees use their personal gmail accounts to create and store documents.

## II. CONCLUSION

Defendant, Lisa Barbounis has presented evidence establishing Middle East Forum's bad faith in filing and maintaining its trade secrets case. Middle East Forum has never been able to prove its case but continued anyway, throwing money and inventing arguments and legal theories to fill the hole left by the absence of evidence and fact-based arguments. In the end, Middle East Forum lost every aspect of its case because its witnesses could not be believed, and because the facts did not support MEF's theory of the case. MEF attempted to make up for its specious litigation by paying for calculations that had no connection to the facts at issue. Courts have recognized that objective speciousness occurs when there is a complete lack of evidence to support a claim. Hill v. Best Medical Intern. Inc., 2011 WL 5082208, *3, 2011 U.S. Dist. LEXIS 147853, *10 (W.D. Pa. 2011) quoting Contract Materials Processing v. Kataleuna GmbH Catalysts, 222 F.Supp.2d 733, 744 (D. Md. 2002)). Defendant has proven objective speciousness exists with regard to Middle East Forum's damages analysis. Middle East Forum admitted to presenting no evidence of actual damages and no evidence to support the reasonable royalty or unjust enrichment analysis. Middle East Forum provided only its calculation and asked the Court and Jury to accept it.

Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit. Computer Econs., Inc. id at 18. Defendant, Lisa Barbounis can also prove subjective speciousness in that Plaintiff, Middle East Forum engaged in subjective misconduct in making the claim.  From the pleadings all the way through trial, Middle East Forum presented false and misleading information to the Court and Jury.  The claim that Middle East Forum presented false and misleading information to the Court and Jury is supported by countless examples, many of them referenced herein.  The testimony of Gregg Roman at trial is the most clear and obvious example of misconduct in civil litigation.  On cross examination Mr. Roman repeatedly denied information that he later conceded was true when faced with evidence and his statements scrutinized.  The Court had to repeatedly direct Mr. Roman to answer questions or otherwise intervene due to Mr. Roman's repeated avoidance, and other inappropriate conduct. (Just Trial Transcript, pages 53, 56, 65, 66, 71, 73, 74, 81, 83, 84, and 92).

For these reasons, Lisa Barbounis has satisfied the burden of proving that she is entitled to an award of attorney's fees under both the Uniform Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act.

Defendants has previously submitted the amount of attorney's fees in question which reasonable given the nature of the case and the amount of work that Plaintiff forced Defendant to complete.  Defendant's attorney's fees are far less than what Plaintiff charged and Defendant is prepared to present any information the Court requires to substantiate the amount of fees in question.

BY: ____/s/ Seth D. Carson_____
Seth D. Carson, Esquire

                                                  Derek Smith Law Group, PLLC
                                                  1835 Market Street, Suite 2950
                                                  Philadelphia, PA 19103
                                                  Phone: 215.391.4790
                                                  Email: Seth@ DerekSmithLaw.com
                                                  Counsel for Plaintiff

DATED: January 20, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this date that I caused a true and correct copy of Defendant's Motion to be served via ECF.

>Sidney L. Gold sgold@discrimlaw.
>Sidney L. Gold & Associates P.C.
>1835 Market Street, Suite 515
>Philadelphia, PA 19103
>Tel: (215) 569-1999
>Fax: (215) 569-3870
>Counsel for The Middle East Forum

>**DEREK SMITH LAW GROUP, PLLC**

>BY:__/s/_Seth D. Carson_____
>         SETH D. CARSON
>         Derek Smith Law Group, PLLC
>         1835 Market Street
>         Suite 2950
>         Philadelphia, PA 19103
>         Phone: 215.391.4790
>         Facsimile: 215.893.5288
>         Email: Seth@DerekSmithLaw.com

DATED: January 20, 2022

**Exhibit A**

| | |
|---|---|
| **To:** | Lisa Barbounis[Barbounis@meforum.org] |
| **From:** | Daniel Pipes[pipes@meforum.org] |
| **Sent:** | Mon 6/17/2019 6:57:54 PM (UTC) |
| **Subject:** | Re: Tommy Trial |

> This message was sent from outside the company by someone with a display name matching a user in your organisation. Please do not click links or open attachments unless you recognise the source of this email and know the content is safe.

Lisa,

Thanks for the full replies.

I am reluctant to tell you where to go and what to do in your private time. But I am adamantly opposed to the press getting wind of your working with Tommy; we have a limited role in his work and your repeated presence there goes much beyond our preferred limits.

So, go if you wish but know I will be very upset with major consequences if your presence becomes known outside Tommy Robinson's own circles.

Put differently, I much prefer you not go but I leave the decision to you.

On the Jerusalem conference: I have written to Douglas about his helping us and we are in discussion right now. I see you having an administrative role given the several partners - his, the Israeli partner, perhaps the PMO.