**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MIDDLE EAST FORUM

                         Plaintiff,

    v.

LISA REYNOLDS-BARBOUNIS,

                      Defendant.

Civil Action No. 2:19-cv-05697-JS

The following Memorandum of Law and Fact is submitted in support of Defendant, Lisa Barbounis' ("Ms. Barbounis" or "Defendant") Motion in Opposition to Plaintiff, Middle East Forum's ("MEF" or "Defendant") Motion for a New Trial.

## I.      INTRODUCTION

Plaintiff, Middle East Forum, initiated the trade secrets lawsuit against Defendant, Lisa Barbounis as part of a three-prong attack due to Ms. Barbounis' lawful allegations of sexual harassment.   Mr. Pipes admitted this when he lured Ms. Barbounis away from counsel to a crowded train station without recording devices and said in words or substance, "if you withdraw your case against us, we will withdraw the trade secrets and counterclaims cases against you, and scuttle the upcoming RICO case."  This was not the only time Daniel Pipes indicated the reason for filing the trade secrets case was retaliation.  The other two prongs in MEF's three prong attack have since resolved.

MEF's specious counterclaims were dismissed entirely on summary judgment.[1]  MEF withdrew the RICO lawsuit after Defendant sent a proposed Rule 11 Motion.  This trade secrets case represents MEF's last opportunity to punish Lisa Barbounis.  And MEF will not let this one go, despite the obvious deficiencies communicated to MEF over the years by a Federal Judge, Federal Jury, and counsel for Defendant, Lisa Barbounis.  In lieu of concession, MEF filed a Motion for New Trial, raising a host of issues, for the first time, ranging from the inappropriate to the inconsequential.  Plaintiff's Motion asks the Court to disregard the well-established standard for preservation of objections during a trial. See Harker v. Chan, No. 3:15-CV-277, 2018 WL 3599734, at *8 (W.D. Pa. July 27, 2018) ("[I]t is clear that a party who fails to object to errors at trial waives the right to complain about them following trial." Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998) (internal citations omitted); Wilson v. Vermont Castings, Inc., 170 F.3d 391, 395 (3d Cir. 1999) (quoting Waldorf, 142 F.3d at 629).

Plaintiff's Motion for a New Trial is similar to MEF's argument for assessing damages. There is no evidentiary support.  Plaintiff asks the Court to simply accept its arguments equal entitlement.   This case was tried before a jury which delivered its verdict on December 16, 2021. The jury found that Plaintiff was not entitled to any of the relief requested.  Plaintiff now seeks to disturb this verdict by resurrecting issues argued and resolved.  "It is well settled that Rule 59 is not a vehicle for relitigating issues. . . ." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998); Exxon Shipping Co. v. Baker, 554 U.S. 471 n.5 (2008). Instead, the rule is designed to allow for a party to challenge a judgement based on errors of law, or verdicts against the clear

---

[1] The counterclaims in this case have all the trappings of a bingeworthy (or cringeworthy) primetime soap opera: infidelity; recorded phone calls; British slang; possibly stolen money; political ambitions; jealousy; international travel; casual drug use; and a cast of colorful characters. But drama does not a federal case make. Spoiler alert: the Middle East Forum has not offered evidence to make out its claims against Lisa Barbounis, and she is entitled to summary judgment on each one. (Document 135).

weight of the evidence.  The federal standard recognizes that "a new trial should only be granted where 'a miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.' " <u>Price v. Delaware Dept. of Correction</u>, 40 F.Supp.2d 544, 550 (D.Del.1999) (citing <u>Williamson v. Consolidated Rail Corp.</u>, 926 F.2d 1344, 1353 (3d Cir.1991)).  The issues raised by Plaintiff do not implicate this standard.  In fact, Plaintiff's Motion relies on misleading arguments, contradicted by the trial record.  Unfortunately, the presentation of misleading arguments contradicted by the record is not the exception, by the rule upon which MEF litigated its entire case.  From the pleading (Document 20) to the instant motion (Document 199), and all through the trial, MEF did not allow truth or accuracy to stand in its way.  The pleading (Document 20) contains paragraphs, (like Paragraph 38) that were directly contradicted by testimony and evidence. During the cross examination of Gregg Roman, the Court had to repeatedly intervene due to Roman's refusal to be forthright in responding to simple questions. (Jury Trial Transcript Day 2, pages 53, 56, 65, 66, 71, 73, 74, 81, 83, 84, and 92).  Mr. Roman repeatedly made claims under oath proved to be false. Mr. Roman repeatedly offered denials which turned to admissions when confronted with facts and evidence.  In short, Mr. Roman attempted to fill the holes in Plaintiff's case with perjury.  As demonstrated below, Plaintiff's instant Motion double-downs on the strategy of Gregg Roman and the Middle East Forum.

## II.    STANDARD OF REVIEW

The federal standard recognizes that "a new trial should only be granted where 'a miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.' " <u>Price v. Delaware Dept. of Correction</u>, 40 F.Supp.2d 544, 550 (D.Del.1999) (citing <u>Williamson v. Consolidated Rail</u>

<u>Corp.</u>, 926 F.2d 1344, 1353 (3d Cir.1991)).  In deciding motion for new trial, court is permitted to consider the credibility of witnesses and to weigh the evidence; however, the court must exercise restraint to avoid usurping the jury's primary function. <u>Hayes v. Cha</u>, 338 F. Supp. 2d 470 (D.N.J. 2004).  Harmless error rules adopted by Supreme Court and by Congress embody principle that courts should exercise judgment in preference to automatic reversal for "error" and should ignore errors that do not affect essential fairness of trial.  <u>McDonough Power Equip., Inc. v. Greenwood</u>, 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984).  District court's power to grant new trial motion is limited to those circumstances where miscarriage of justice would result if verdict were to stand. <u>Olefins Trading, Inc. v. Han Yang Chem Corp.</u>, 9 F.3d 282 (3d Cir. 1993).

### III.    ARGUMENT

**A. Plaintiff has failed to demonstrate that a new trial is warranted because of any remarks made by counsel for Defendant.**

Plaintiff first argues entitlement to a new trial because of statements made by counsel for Defendant during trial. (Document 199, Page1 and Page 2).  Plaintiff's argument is wholly without merit.  Plaintiff suggests that Defendant violated the Court Order on Plaintiff's Motion in Limine.  To the contrary, counsel for Defendant remained in compliance with the Court's Orders, policies and procedures.  At no time during the trial did Defendant use the word "liar." Plaintiff's Motion (Doc 199) cites to the Court's pre-trial Order (Doc. 171).  The Order addresses "baseless or inflammatory accusations…"  This Order did not preclude Defendant from addressing possibly the most important aspect of a witnesses testimony: credibility of the witness.  The record reflects that counsel for Defendant worked within the confines of the Court's Order at all times and made zero statements to the jury that were baseless, inflammatory, or accusations.  Plaintiff's Motion skips over the part where Plaintiff proves the statements made

were improper.  Plaintiff's Motion states that Defendant called Mr. Roman "a liar" and states

that Mr. Roman "committed perjury."  Plaintiff does not cite to any part of the record where

either of these statements was uttered to the jury.  Instead, Plaintiff quotes a section of

Defendant's closing remarks where Defendant addresses inconsistencies in Mr. Roman's

testimony.  Mr. Roman did say things under oath that were not true.  This is not a baseless

remark.  It is a fact that the jury had a right to consider.

For example, Gregg Roman testified that Lisa Barbounis wiped a (1) laptop computer, (2)

desktop computer, and (3) USB drives. (Jury Trial Transcript, Day 2 p47:19 – 48:12).  Then the

person MEF hired (Jamente Cooper) to analyze the laptop, desktop, and USB drives was called

to the stand. (Day 2 Page 256).  This was the same person MEF paid to prepare the report that

Roman claims he read and was the basis for his false testimony.  Through Mr. Copper's

testimony the jury learned that Gregg Roman provided information under oath that was blatantly

not true.  Mr. Copper confirmed that he was the person who analyzed the USB drives and the

desktop computer.  Mr. Cooper confirmed that the USBs and desktop computer were never

wiped.  (Jury Trial Transcript, Day 2, p256:22 – 266:9).  Mr. Copper's testimony confirmed that

Mr. Roman was providing false information under oath.  Notwithstanding, Defense counsel

never called Mr. Roman a liar.  Defense counsel never accused Mr. Roman of perjury.  The

closing remarks of Defense counsel simply addressed statements offered by Plaintiff during trial

under oath that were not true.  Plaintiff's Motion seems to suggest that when a witness makes

false statements under oath, that is not something the Defendant is even permitted to address.

Next Plaintiff argues that the false statements Gregg Roman made about personal email

accounts were off limits.  Plaintiff believes entitlement to a new trial because counsel for

Defendant addressed in closing remarks the many false statements MEF made about personal

email accounts.  **On direct examination** Mr. Roman repeatedly testified about documents that should not be in Ms. Barbounis' possession, or "should have been returned." (Jury Trial Transcript, Day 1 p121).  Mr. Roman's testified that he never authorized Mr. Barbounis to have this type of information and/or retain it.  On cross-examination, it became apparent that Mr. Roman's testimony was once again, false.  Ms. Barbounis had this information on personal devices because she was required to originate the documents using her personal gmail account and Google Docs.  ***Ms. Barbounis was also not the only person who still had access to this information, even today (Emphasis added).***  The cross-examination of Gregg Roman confirmed that many former MEF employees still had access to the same documents that MEF presented to the jury and testified constituted protected trade secrets.  Employees who still have access today to documents central to Plaintiff's case include Caitriona Brady, Delaney Yonchek, Thelma Prosser, Stacy Roman, Patricia McNulty, and others.  Lisa Barbounis wasn't the only person who could still access the information.  Ms. Barbounis was just the only person that MEF sued and forced to incur nearly a million dollars in legal fees.  (Jury Trial Transcript, Day 1, p97 – 99).   Once again, Mr. Roman nor any witness for Plaintiff was ever labeled "a liar."  At no time did Defendant accuse Plaintiff of "perjury."  Defendant's closing remarks presented questions for the jury that are well established in state and federal jurisprudence.  The Third Circuit Model Jury Instructions mirror the same questions offered by Defendant in closing.  <u>See</u> <u>Third Circuit Model Jury Instructions 1.7 Preliminary Instructions —</u> <u>Credibility of Witnesses</u> ("… Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. … ).  <u>See</u> <u>also</u> <u>Gadmoski v. Pitney,</u> 59 F. Supp. 641 (M.D. Pa. 1945) ("Where it was apparent that witnesses were avoiding questions, to which they must have known the answers, jury was entitled to give such matter consideration in arriving at weight to be given testimony of such witnesses as well as their credibility, and would be warranted in disbelieving their testimony.").  <u>And</u> <u>see</u> <u>Logue v. Int'l Rehab. Assocs.,</u>

<u>Inc.</u>, 683 F. Supp. 518, 518 (W.D. Pa.), aff'd sub nom. <u>Appeal of Int'l Rehab. Assocs., Inc.</u>, 866

F.2d 1410 (3d Cir. 1988), and aff'd, 866 F.2d 1411 (3d Cir. 1988) ("Court may follow the ancient

legal maxim falsus in uno, falsus in omnibus in weighing the testimony, as it frequently does in

instructing juries.").

The statements offered in Defendant's closing remarks were not prejudicial,

inflammatory, baseless, or unsupported.  The arguments Defendant made were based upon the

facts and evidence presented at trial and the jury had the right to hear them.

Even if Plaintiff were correct, it would not warrant a new trial, because Plaintiff never

objected to the statements during trial.  Plaintiff effectively waived the right to bring these issues

to the Court's attention.  ***Plaintiff made only one objection during Defendant's closing***

***argument***.  Defendant's closing remarks begin on Day 4 of the Trial Transcript, Page 169, and

continue to Page 187.  The only objection offered by Plaintiff in these pages was on Page 173.  It

was a limited objection.  Accordingly, all objections but the one objection offered on Page 173,

are waived.  The Court did overrule the single objection because Defendant's arguments were

not baseless, but premised upon evidence that the jury had a right to consider during the trial.

Plaintiff never objected to any statement made about Plaintiff's expert.

Plaintiff never objected to any statement made about the cost of Plaintiff's expert report.

Plaintiff never objected to statements made about the expert's calculations.

The closing remark offered in Plaintiff's Motion, that the "reason  MEF is asking for

$531,000 is because this is the number arrived at by the expert" was appropriate and grounded in

facts established during the trial.  Plaintiff also takes this statement out of context.  This

statement was made in the context of the Meltwater information.

MEF never once, from pleading to verdict, explained to anyone, much less the Judge and Jury, why they were asking for $531,000. MEF did not address the evidentiary burden in asking for this amount of money. MEF simply paid for an expert report and asked the Judge and Jury to accept its calculation. This is why Plaintiff's case was filed in bad faith. Bad faith is established when there is no evidentiary support for the allegations. Plaintiff never could prove damages. In lieu of even attempting to connect the dots with evidence, MEF used inflammatory language like "betrayal." In its opening and closing remarks, counsel for Plaintiff repeatedly told the jury that its case was about something MEF could never prove – betrayal. MEF tried to convince the jury of betrayal, but admitted that there was no proof Lisa Barbounis gained a dollar, and no proof MEF lost a dollar.

Plaintiff never objected to Defendant making these arguments during trial. There wasn't a single objection to any statement made about Plaintiff's expert.

There was only one limited objection to the questions Defendant asked the jury about credibility of one witness – Gregg Roman.

Plaintiff's Motion goes on in an attempt to draw parallels between remarks made by Defendant and caselaw cited to in Plaintiff's brief. None of the parallels suggested by Defendant are appropriate. Defendant's statements certainly do not parallel statements from Fineman. In the instant matter, Defendant addressed the false statements made by witnesses offered by Plaintiff and then asked questions that are supported by caselaw and the Third Circuit Model Jury Instructions. At no time did Defendant call any of Plaintiff's witnesses any names like "liar" or suggest "perjury.

Plaintiff's Motion continues to raise new issues for the first time that were never objected to at trial. All of these arguments are waived by Plaintiff, including arguments about referencing

documents that were not in evidence.  Even so, Plaintiff's arguments fail due to their falsity.

First, Plaintiff's Motion makes conclusory statements about testimony that are not supported by

the record.  The Court did not restrict all of Defendant, Lisa Barbounis' testimony on this issue.

And Plaintiff never objected or asked the Court to do so.  To the contrary, the issue that Plaintiff

raised was with regard to Lisa Barbounis asking for a computer to show what she did.

Specifically, Plaintiff objected to Defendant stating that if someone gives her a computer she

could show how she located the publicly available information.  Plaintiff asked for and received

a jury instruction striking Defendant's testimony on this issue.  During trial, through direct

examination and on cross, Defendant established that the type of information at issue in this case

was indeed in the public sphere.  Gregg Roman himself admitted it on cross examination.  In fact

Gregg Roman testified at length about the public availability of donor information beginning on

Day 2 of the Trial Transcript, Page 129.  Gregg Roman's testimony supported the testimony of

Lisa Barbounis and confirmed that MEF donor information, donation amounts, and contact

information can be found online and/or in the public sphere because of tax regulations.  Id.

Plaintiff did not object even once to statements offered by Defendant about this information

during closing and is attempting to re-couch this as a reference to documents not in evidence.  In

fact, Defendant's closing did not cite to documents not in evidence but to testimony offered by

multiple witnesses during trial.

Plaintiff's Motion seems to suggest that Defendant should not be permitted to discuss

witness credibility during closing remarks, or even witness testimony.  All of the remarks offered

by Defendant during closing were supported by the record of testimony and evidence shared with

the jury throughout the trial.

The Court did not strike all reference to testimony about the availability of information in the public sphere.  To the contrary, Plaintiff only requested and the Court only struck a very specific part of Defendant's testimony that "if you give me a computer I can show you." Plaintiff's only argument was that Plaintiff should not be expected to give a computer to Defendant while she is on the witness stand.   Plaintiff even cites to the Court's instruction in its Memorandum (Doc 199 Page 8 ¶ 1).

Next Plaintiff raises another inappropriate argument for the first time in its post-trial brief.  Plaintiff objects to something that never even occurred.  Plaintiff says that Defendant presented a wealth-disparity to the jury in closing remarks.  This did not occur, which is why Plaintiff did not object at the time.

If Plaintiff had its way, Defendant would not be permitted to make any arguments, which is kind-of what Plaintiff has asked for since the beginning of this case – strict liability.   The cost of Plaintiff's expert report was highly relevant and presented to the jury in Plaintiff's case in chief.  Plaintiff is permitted to show the jury the cost of the expert witness, but Defendant is not permitted to ask questions about the cost?  The cost of the expert report was relevant considering the substance of the report and the author.  The report was not based on any expert's experience but upon the representations of Gregg Roman.  The report was not predicated upon evidence but upon a strict liability application.  The report was not offered by someone with experience in the non-profit sector but by an individual who had zero experience.  This was his first report about non-profits and cost analysis for donors and donations.  Defendant had every right to question the report and the cost it took for Plaintiff's expert to invent a novel theory of damages that is not supported by a single other case in the history of American jurisprudence.

Plaintiff continues by raising yet another objection for the first time in its post-trial motion.  Plaintiff argues that Defense counsel attested to the "justness of his client's case."  This did not occur.  Plaintiff never raised this objection until now.  As evidence, Plaintiff cites to a part of Defendant's closing that asked for a verdict that allowed Ms. Barbounis to walk away and go home…  Defendant argues that this statement does not justify a new trial.   Particularly when Plaintiff is taking partial statements made by Defense counsel, out of context.  The entire statement was based on the fact that Plaintiff had no standing to sue Defendant because Defendant may have violated a Meltwater contract.  The entire statement is appropriate and well argued.  Defense counsel stated:

> "But when she sent information from those Meltwater lists, there's no illegal conduct implicated in that. She's allowed to do that. Maybe The Middle East Forum didn't want her to do that. If they didn't, they certainly had the option of firing her. And if they didn't know about it, they obviously couldn't have fired her for it. But when you find out about it, you don't sue somebody in court and accuse them of 10 different things -- or eight different things and ask for a half a million dollars, right?  I mean, why are we talking about Meltwater? It's not their information.  It belongs to Meltwater. The Middle East Forum's asking for $531,000 because they paid this guy $130,000 to say that that's what this information was worth.  But, he called it a diminution of value. The value of the Donors -- so The Middle East Forum spent -- clearly, if they spent $531,000 on these Donors, then getting the Donors is worth more than $531,000 to them. And we know that, because they got all the donations from those Donor over the years, right? So they got what they paid for, and they're continuing to get what they're paying for now: the relationship with the Donors." (Day 4, Page 183 – 184:6).

Plaintiff took multiple statements out of context that make perfect sense when read in connection with the entire argument.  This is why Defendant believes Plaintiff is intentionally misleading.

### B.  Plaintiff is not entitled to a new trial because of erroneous evidentiary rulings. Plaintiff could not have asked for a better set of rulings heading into trial.

Plaintiff argues that it was denied the opportunity to introduce "key evidence" in its case and chief.  Nothing could be further from true.  The three so called key pieces of evidence suggested by Plaintiff are (1) external threats, (2) filing of expert report on public docket, and (3)

$100,000 commission for Giles gift.   None of these are issues related to the claims Plaintiff presented in its case.

Plaintiff had every opportunity to present evidence demonstrating the reason why so-called "public dissemination" was dangerous to MEF.  MEF could not give even one example of harm MEF suffered because of any disclosure of public information.  Defendant asked both Gregg Roman and Daniel Pipes to provide examples of the harm.  Defendant actually opened the door and gave Plaintiff the opportunity to testify about harm and Plaintiff testified that it was not aware of any harm.  Plaintiff could not give a single example of something bad that happened to MEF because Lisa Barbounis sent an email to Amy Mekelburg that Ms. Mekelburg testified she did not recall seeing.  There was no evidence of lost profits.  There was no evidence of diminution of value.  There was no evidence of lost donations.  There was no evidence of reputational harm.  There was no evidence that a donor got angry because MEF could not protect private information.  There was  no evidence of diminishment in the marketplace.  There was no evidence of damages.  Plaintiff's Motion asks for a new trial because Plaintiff was not permitted to present evidence of hypothetical harm.  The Court would have allowed Plaintiff to present any and all evidence MEF could muster of actual harm.  Defendant tried with all her ability to find out if this type of harm occurred and it did not.  From the pleading to verdict, Plaintiff never identified any damages.  This is the reason Plaintiff failed to prove its case and no other.  Plaintiff's case was brought in bad faith because it knew it did not have this evidence and proceeded anyway.

The Court also did not allow Plaintiff to tell the jury about a discovery issue, when an expert report was inadvertently filed on thew docket.  Plaintiff did not include a single allegation in its complaint about this Defendant suggests that it would not have changed the outcome and

verdict.  This inadvertent fling is a microcosm of the entire case.  Without harm, damages, or any change in position to any person on the planet, this inadvertent filing is without significance. The Court did not deny Plaintiff the opportunity to present evidence.

The third example is actually leans toward the absurd.  Plaintiff suggests entitlement to a new trial because it could not inform the jury about something that never occurred.  Terry Giles never gifted a penny to the Middle East Forum.  Lisa Barbounis never received a penny from Terry Giles, much less $100,000.  MEF has never accused Mr. Giles of giving money to Lisa Barbounis.  MEF has never claimed Mr. Giles donated money to MEF.  Terry Giles is not implicated in any of the breach of contract or trade secrets allegations.  Certainly Mr. Giles is not implicated in the computer fraud and abuse allegations.  The only count that MEF could even argue applied to facts involving Mr. Giles is the breach of duty of loyalty.

What has been established is that MEF already attempted to use this information to prove breach of fiduciary duty, breach of loyalty.  This was the counterclaim that Judge Wolson dismissed. By trying to argue it again at trial in the trade secrets case, Middle East Forum attempted to relitigate an issue adjudicated when Judge Wolson dismissed the Counterclaims with prejudice. (Document 135).  Paragraphs 277, 278, 279, and 280 (2:19-cv-05030 Document 111) are the same allegations concerning Terry Giles, presented to the Court in MEF's Statement of Facts that accompanied MEF's dispositive motion.  MEF's attempt to prove that Lisa Barbounis wanted to each money in a lawful manner is not probative to any of the allegations in MEF's case.

**C.  MEF is not entitled to a new trial because its direct examination was limited as to Plaintiff's expert.**

Plaintiff, Middle East Forum presented an expert to the jury that was unable to substantiate his own conclusions.  Plaintiff was never denied the opportunity to present its expert's conclusions

to the jury.  To the contrary, Plaintiff's expert informed the jury in detail about his two calculations: (1) unjust enrichment and (2) reasonable royalty.  Both theories were presented to the jury without limitation.  At no time did the Court deny Plaintiff's expert from discussing his methodology.  A review of the direct examination of Mr. Steven Holzen confirms that Mr. Holzen was afforded the opportunity to explain precisely how he arrived at the two calculations. Even the parts of the transcript cited to by Plaintiff do not support's Plaintiff's argument.   First, the Court allowed Mr. Holzen to continue and testify about his own methodology.  The Court's instruction was that Mr. Holzen not testify about what happened in other cases.  Expert witnesses are not presented to a jury in order to tell the jury about caselaw from other cases.  Experts are presented so that they can testify as to their expert report.   Steven Holzen was presented to testify about the calculations Mr. Holzen performed regarding damages.  The Court permitted Mr. Holzen to do just that, and the jury heard and considered it.  Middle East Forum's Motion does not present an accurate picture.   Mr. Holzen was permitted t testify about the factors including Georgia-Pacific factors.  The Court only disallowed Mr. Holzen from testifying about the facts in the other case.  The Court required Mr. Holzen to stay on topic and testify as to what was done in this case, which Mr. Holzen did.

### D.  Middle East Forum was afforded every opportunity to cross-examine Lisa Barbounis.

Next, MEF argues entitlement to a new trial because MEF did not have the opportunity to cross examine Lisa Barbounis.  This argument ignores that Plaintiff crossed Lisa Barbounis twice: first on direct examination, and then on cross examination.  Plaintiff was given great leeway in its cross examination of Lisa Barbounis and Plaintiff is not entitled to a new trial on this issue.  There was no allegation in Plaintiff's complaint that Lisa Barbounis breached a contract with Meltwater.   Notwithstanding, Plaintiff was still permitted to present a great deal of

evidence in connection with Plaintiff's Meltwater account.  Plaintiff also presented evidence in

its case-in-chief about communications pre-lawsuit.  What the Court did not allow was for Lisa

Barbounis to be questioned about emailed sent to Ms. Barbounis' attorney.  These questions

implicated attorney-client privilege, and they had nothing to do with the case.  Moreover, it was

Plaintiff's choice to cross Lisa Barbounis on direct, where Plaintiff was afforded to present

evidence of pre-trial contracts signed.  The Court simply did not allow Plaintiff to present the

same information again that had already been presented days before.  That is the choice a

Plaintiff makes when it decides to cross on direct.   Also, at no time when the Court sustained

Defendant's objections did Plaintiff argue or preserve an objection as to this issue.  Plaintiff

accepted that it had already covered this information on its direct examination of Lisa Barbounis

and moved on without comment.  Plaintiff is not complaining that it did not have the opportunity

to impeach Defendant.  Plaintiff is complaining that it did not have the opportunity to impeach

Defendant twice in connection with the same issue.  The Court's ruling was not based only upon

relevant but on the fact that Plaintiff had covered this same information on direct.  Moreover, the

Court ruling on relevance was correct as Plaintiff did not bring a single allegation against

Defendant for breaching a contract with a third party – Meltwater.  The Court provided Plaintiff

with great leeway with regard to the Meltwater issue.  The Court would have been in its right to

exclude all of this evidence as failing the probative value vs prejudicial effect test.

Plaintiff's second argument with regard to pre-trial communications is very misleading.

If Plaintiff could present evidence that information was sent to Plaintiff, the Court would have

allowed it.  Plaintiff was trying to get Lisa Barbounis to testify about documents that she could

only have learned about through privileged communications with counsel.  Plaintiff did not

present a single document that was sent to Lisa Barbounis.  All the communications were sent to

Defendant's lawyers.  This includes the affidavit.  The statements that Lisa Barbounis made were that she did not personally receive any communications from MEF and this statement is still unrebutted.

 **E.  The Court afforded MEF every argument and every opportunity to prove the information was trade secrets.  Plaintiff's arguments were not compelling.**

One of the primary issues in a trade secrets case is whether the information is available to the public by proper means.  Lisa Barbounis has never wavered that she used publicly available resources like tax returns and websites to create the list.  Plaintiff's attempt to call this testimony "inappropriate" is highly puzzling.  It is directly on point.  Lisa Barbounis was permitted to state that she obtained the information using publicly available information.   Lisa Barbounis was not the only person who admitted this.  Gregg Roman admitted to knowledge about public information.  Daniel Pipes admitted to knowledge about public information.  Plaintiff is suggesting that the only way that Defendant can put facts into evidence is through a document. In fact, Mr. Roman was shown documents and confirmed the availability of donor names and donations in the public sphere.  Day 2 of the trial (Page 129) Gregg Roman confirmed that non-profits are required to report donation names, amounts, and contact information in the public sphere.

> Q. All right. So if all these organizations on the list are 501(c)(3)s and fall
>   -- or Foundations that fall into that tax level, then they would all have to
>   report it?
> A. The question is, if they were all 501(c)(3)s -
> Q. Right.
> A. - they would have to report it?
> Q. Right.
> A. Yes.
>
> (Day 2, Page 130:11 – 15).

Gregg Roman also confirmed that some of the organizations on the list of so-called "trade

secrets, do not even try to hide that they are MEF supporters.

> Q. Right; and some of these organizations actually, they don't hide at all
>    that they support The Middle East Forum, correct?
> A. No, some reveal the amount of the gift. And some reveal the name of
>    the Foundation.
> (Id. Page 133:11 – 13).

Gregg Roman also confirmed information that MEF was attempted to label "trade secrets was in

fact available to anyone with an internet connection.

> Q. And they publish that information on their website that's available
>    to anyone with an internet connection, when they give that
>    money, right?
> A. Correct.
>
> (Id. Page 135:4 – 7).

It was this testimony from Gregg Roman (which supported Lisa Barbounis' testimony) that

Defendant made reference to in Defendant's closing remarks.  Plaintiff argued in its Motion that

Defendant was offering information that was not part of the evidentiary record, but was

incorrect.  Gregg Roman made it part of the evidentiary record when he conceded it on cross

examination.   Gregg Roman did not stop there.

> A. There is a email account which is for general applications. And there's another
>    one, which goes directly to him.
> Q. Right; and that's on the website, right, both of them?
> A. I don't know. I'd have to see the website.
> Q. Okay. So if it's on the website, then that's not a crucial piece of information
>    that turns it into a trade secret, is it?
> A. No, it's the compilation of the information that turns it into a trade secret.
>
> (Id. Page 137:6 – 15).

When asked about the contract information, Gregg Roman was referring to documents that were

not entered into evidence, but that were presented to impeach.  Gregg Roman confirmed that

contact information is also part of the public record and that it is not the name, donation amount,

and contact information but the compilation that made it a trade secret.  Gregg Roman's

testimony supported and lent credibility to the testimony of Lisa Barbounis.  Plaintiff's argument

that Defendant did not establish that the list could have been made using publicly available

information ignores the entire record of the trial.

   **F.  Plaintiff's argument regarding refreshment of recollection does not entitle
        Plaintiff to a new trial.**

This is another argument that Plaintiff is raising for the first time in post-trial briefs.  The Court

did in fact require Defense counsel to use refreshing recollection properly.  The Court repeatedly

required Defense counsel to hand the witness the document, provide the witness with an

opportunity to review the document, take the document back, and then ask the question.  The

court enforced this procedure throughout the trial.

   **G.  The jury got it right and Plaintiff was denied the opportunity to become unjustly
        enriched through its bad faith use of the civil litigation system.**

Plaintiff's issue with the jury verdict does not entitled Plaintiff to a new trial.  There were

significant issues with Plaintiff's case, that were present when the case was filed, and never

cured.  Many of the counts could have been dismissed on summary judgment including

Conversation under the gist of the action doctrine.  Also the computer fraud counts were

improper given that Lisa Barbounis only used emails which she had a legal right to use.

Supreme Court caselaw does not permit Plaintiff the right to a trial given the facts at issue in this

case.  In Buren v. United States, a 6-3 majority of the U.S. Supreme Court adopted a restrictive

view of the CFAA, making it more difficult for employers to invoke the statute in cases arising

from the theft of trade secrets.  Plaintiff's breach of contract allegations failed for lack of any and

all evidence of damages.  The Court would have been in its right to dismiss these counts on

summary judgment.  The trade secrets were readily available by proper means.  Defendant's

Motion for Summary Judgment presented evidence that would have required dismissal of the trade secrets counts, but the Court permitted Plaintiff to try its case to the jury. The jury heard the evidence and found against Plaintiff for the same reasons that Plaintiff knew or should have k known its case was questionable all along. Plaintiff did not prove its case. Cases require damages and Plaintiff's lawsuit fell apart here. A simple review of the pleading (Document 20) confirms that Plaintiff had no clue whether there were damages when the case was filed. There is not a single factual averment describing harm. Plaintiff should not have filed its case for this reason and certainly should not have tried it even once.

The arguments that Plaintiff suggests the Court should accept would deny Lisa Barbounis from even defending herself. Plaintiff suggests that the jury should award damages because Plaintiff's expert did some math. Before the jury can award damages, Plaintiff has to prove there were damages. This is where Plaintiff failed 100%. Plaintiff's expert performed his calculations. The jury did not agree they should apply because nobody that Plaintiff presented could provide a legitimate reason for why those numbers were even relevant. Just because it costs MEF $531,000 to attract and maintain 26 donors, who over the years donated millions upon millions to MEF, does not mean that MEF is entitled to forgo that expense. That is what MEF asked the jury to do. MEF asked the jury for an award that would have had Lisa Barbounis paying the past decade of MEF's marketing expenses. Lisa Barbounis gained nothing and was asked to pay everything. This is not a reasonable ask and it's the reason MEF lost its case. MEF's narrative never made sense to anyone other than MEF.

### H. MEF is not entitled to a new trial because 2 questions were not submitted during VOIR Dire.

This is another argument that fails for lack of evidence. Plaintiff suggests that the jury was impartial but presents no examples how or why. Defendant does not agree that questions

about Israel would have made any difference and Plaintiff fails to state the basis for this

assertion.  Plaintiff received a fair trial from a fair jury.  Plaintiff received the best possible jury

instructions a party could ask for.  I believe that every jury instruction Plaintiff asked for was

read to the jury.  It was not a small number.  Plaintiff's argument suggests that if only the jury

pool were asked about Israel and military service, it would have made all the difference in the

verdict.  There is no indication that either of these two questions would have changed the

makeup of the jury.   Plaintiff has not identified what evidence was presented during the trial that

implicated Israel or the military.  Defense counsel can think of none.

### IV.    CONCLUSION

For the reasons set forth above, Plaintiff has not demonstrated entitlement to a new trial

and Plaintiff's Motion should be denied.


**DEREK SMITH LAW GROUP, PLLC**


BY: _____/s/ Seth D. Carson_____
        Seth D. Carson, Esquire
        Derek Smith Law Group, PLLC
        1835 Market Street, Suite 2950
        Philadelphia, PA 19103
        Phone: 215.391.4790
        Email: Seth@ DerekSmithLaw.com
        Counsel for Plaintiff


DATED: January 27, 2022

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date that I caused a true and correct copy of Defendant's Motion to be served via ECF.

Sidney L. Gold sgold@discrimlaw.
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

BY:   /s/  Seth D. Carson
        SETH D. CARSON
        Derek Smith Law Group, PLLC
        1835 Market Street
        Suite 2950
        Philadelphia, PA 19103
        Phone: 215.391.4790
        Facsimile: 215.893.5288
        Email: Seth@DerekSmithLaw.com

DATED: January 27, 2022