**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE MIDDLE EAST FORUM, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LISA REYNOLDS-BARBOUNIS, | :   Civil Action No.: 19-5697 |
| | : |
| Defendant. | : |
| | : |

**PLAINTIFF MIDDLE EAST FORUM'S SUPPLEMENTAL OPPOSITION**
**TO DEFENDANT'S SUPPLEMENTAL FEE MEMORANDUM**


Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes, III
abarnes@wiley.law
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*

Plaintiff The Middle East Forum ("Plaintiff" or "MEF"), by counsel and pursuant to this Court's Order dated April 13, 2022, files this Supplemental Opposition to Defendant's Supplemental Fee Memorandum.  *See* Def.'s Suppl. Fee Mem, ECF No. 210 ("Def.'s Mem."); Order (Apr. 13, 2022), ECF No. 207 ("To the extent that Mr. Carson's reply raises new arguments, or there are points MEF must make regarding the more detailed accounting of time requested, the Court will permit brief supplemental briefing.").

## PRELIMINARY STATEMENT

The lack of bad faith ends this fee dispute.  In its Opposition, MEF showed that its PUTSA[1] claim was neither objectively nor subjectively specious because the evidence showed that MEF acted reasonably to protect its confidential donor information.  *See* Pl.'s Opp'n Mot. Fees, ECF No. 198 ("Pl.'s Opp'n").  Indeed, after an evidentiary preliminary injunction hearing, this Court determined that MEF was likely to succeed on its PUTSA claim, and MEF's donor lists constitute trade secrets.  Prelim. Inj. Op. 8, ECF No. 91.  Defendants' reply (ECF No. 201) and supplemental memorandum (ECF No. 210), however, seek to rewrite history.  In her reply, Defendant abandons her initial theory of bad faith (i.e., MEF's unsuccessful position at trial) in favor of a new one (i.e., MEF's alleged perjury in its complaint).  Neither theory has merit.  Merely because a party does not prevail on a claim at trial does not entitle the other party to fees.  In fact, no judge in this Circuit has awarded bad-faith fees for a jury-tried PUTSA claim, and there is no reason to make new law.

Despite multiple bites at the apple—a fee petition, reply brief, and 51-page supplemental memorandum—Defendant has not established any legal entitlement to attorneys' fees or the

---

[1]  Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. §§ 5301–5308.  MEF's PUTSA claim (Count 4 of a 9-count complaint), is the only claim that could support a fee petition, although not under the facts of this case.  Nevertheless, despite prior notice in MEF's Opposition, Defendant did not attempt to allocate the claimed time descriptions to this single claim, rendering Defendant's entire submission—for recovery of seemingly every minute defense counsel claims to have worked on all counts of this dispute—impossible to decipher and therefore an overreaching nullity.

reasonableness of the claimed fees. Instead, each new iteration raises more questions and concerns. For instance, defense counsel (Mr. Carson) now seeks $1,386,450, shockingly more than the $985,000 he represented in December and without any explanation for the discrepancy. Moreover, the "detailed accounting" he submitted with his third bite at the apple is riddled with errors and appears not to be supported by contemporaneous time records, but instead created solely for this motion two years after this case was filed. In the short time MEF has been able to assess Defendant's 51-page submission—even though the submission is undecipherable and unsupported—MEF has, to date, identified at least eight major deficiencies that prevent any recovery even if Defendant could establish entitlement (which she cannot):

1. **Hours Discrepancy**. Mr. Carson inexplicably adds over $400,000 to his new estimate. Apparently recognizing the absurdity, Mr. Carson tries to pass this discrepancy off (on the last page of his brief) as duplicate ESI charges and post-trial work. But he never specifies *which* ESI charges are duplicates, or explains how 71.5 hours of post-trial work accounts for the difference—unless Mr. Carson's rate for 2022 is $5,595 per hour.

2. **Padded Hours**. Up from the 1700 hours claimed in December, Mr. Carson now claims to have billed 2442.9 hours. But his itemizations only account for 2047 hours, meaning that he inflated his claim by hundreds of hours. His staggering total cannot be squared with the fact that he appeared as counsel of record in 51 other cases in the Eastern District of Pennsylvania during the pendency of this case. Either his hours in this case are overstated or he devoted almost no time to his other matters. Several of his other cases involved hotly contested disputes with MEF, so one can only conclude that Mr. Carson padded his time spent on this matter with time spent on unrelated litigation involving MEF, particularly when the documents he claims to have reviewed for this matter were used in the other litigation with MEF, and Mr. Carson has not allocated any portion of that review time to other matters.

3. **Conflicting Hours**. Mr. Carson offers conflicting time totals, making it impossible to tally his time (e.g., 111.8 *and* 151.8 hours for June 2020; 105.1 *and* 75.1 hours for August and September 2020; 110.9 *and* 108.9 hours for December 2020; 218.4 *and* 18.4 hours for March and June 2021; 217.2 *and* 17.2 hours for June and August 2021; and 192.2 *and* 112.2 hours for November 2021). Such "accounting" cannot be trusted.

4. **Inadequate Descriptions**. Mr. Carson's task descriptions are largely missing, inadequate, or unintelligible. Mr. Carson offers no descriptions, much less sufficient descriptions, for over 400 hours. He offers general descriptions for 650.5 hours that spanned multiple days and tasks. This number balloons to 1840.9 hours when it includes the 1190.4 hours Mr. Carson claims to have spent reviewing ESI, far

2

exceeding any reasonable time considering his inability to manage e-discovery.  Other descriptions make no sense.  *See* Def.'s Mem. 45 ("November 24 entry, 3 November 29 and 3 November 30").  This is gobbledygook, not the kind of proof required for a fee submission, much less one for over a million dollars.

5. **Unreasonable Hours**.  Mr. Carson attempts to charge plainly unreasonable time.  His records include roughly (1) 154.3 hours spent on clerical tasks like saving and organizing files; (2) 1190.4 hours reviewing ESI; (3) 100.2 hours as legal counsel to clients other than the Defendant in this matter; (4) time spent by *MEF's* counsel; and (5) time allegedly spent in *2021* for a new trial opposition that was filed in *2022*.

6. **Not Limited to PUTSA**.  Only MEF's PUTSA claim (not the other eight counts in the complaint) can serve as a discretionary basis for fees.  Even if Defendant could show bad faith (she cannot), this provision limits fees to only those incurred defending against the PUTSA claim.  Mr. Carson's claimed hours do not even attempt to allocate the hours spent on the PUTSA count as opposed to the other eight counts.

7. **Poor Quality**.  Mr. Carson's supplemental petition is riddled with errors.  It mirrors the quality of the petition filed in *McKenna v. City of Philadelphia*, No. 07-110, 2008 WL 4435939, at *7 (E.D. Pa. Sept. 30, 2008).  On appeal, the Third Circuit held that "a court can consider the quality of an attorney's filings when fixing fees." *McKenna v. City of Philadelphia*, 582 F.3d 447, 456 n.9 (3d Cir. 2009).

8. **Unreasonable Rates**.  Neither Mr. Carson nor Mr. Diamond attempt to justify their rates according to the community-market rule, which requires affidavits proving that the claimed rates mirror rates charged by attorneys of the same skill, experience, and reputation in the community.  Defendant has provided no such proof.

Fortunately, this Court need not wade into the erroneous and unreasonable time descriptions because there is no proof that MEF brought its PUTSA claim in bad faith.  Even if this Court were to consider the descriptions, it is impossible to assess the reasonableness of the newly minted fee request due to its incomprehensible, incomplete, and inconsistent time entries.  For the reasons stated more fully below, this Court should deny Defendant's motion.

## **ARGUMENT**

## I. UNDISPUTED EVIDENCE PROVES THAT MEF DID NOT BRING ITS PUTSA CLAIM IN BAD FAITH, WHICH CATEGORICALLY BARS DEFENDANT FROM ANY FEE AWARD.

Defendant has offered no proof that MEF brought its PUTSA claim in bad faith.  Nor can she.  The standard for bad faith is exceedingly high, and no court has awarded bad-faith fees under

PUTSA after permitting that claim to be tried by a jury. Moreover, MEF's fee opposition marshals undisputed facts that prove MEF's good faith. *See* Pl.'s Opp'n 3–11. Defendant's reply and "accounting" memorandum do not counter these undisputed facts. Neither submission offers a plausible basis for bad faith—indeed, the supplemental memorandum barely mentions bad faith— and Defendant cannot recover some fees by simply submitting a huge dollar amount.

To begin with, Defendant's reply does not respond to any of the arguments MEF made in its opposition. *See* Pl.'s Opp'n Def.'s Mot. Leave 5–6, ECF No. 202. Accordingly, this Court should treat MEF's arguments on the lack of bad faith as unopposed. *Cf. Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 384 (E.D. Pa. 2019) ("[F]ailure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.").

In addition to ignoring MEF's arguments, Defendant's reply abandons the theory of bad faith she presented in her initial fee petition. In her initial petition, she argued that MEF's inability "to convince the jury" constituted categorical evidence of bad faith. *See* Def.'s Mot. Fees 5, ECF 187. But this view would result in a loser-pays regime that gets the American Rule backwards. *See* Pl.'s Opp'n 7–8; *see also Acumed LLC v. Advanced Surgical Servs., Inc.*, No. 05-2711, 2007 WL 1500051, at *4 (E.D. Pa. May 18, 2007) (Sánchez, J.) (rejecting argument that prevailing party is "entitled to attorneys' fees . . . because the jury did not find in Acumed's favor," especially where "the case was close"); *id.* ("I have no difficulty finding this case unexceptional and denying attorneys' fees."); *Sweet Street Desserts, Inc. v. Better Bakery, LLC*, No. 12-6115, 2017 WL 6311664, at *4 (E.D. Pa. 2017) ("Although Sweet Street was not ultimately successful in its claims, that fact alone does not establish that Sweet Street acted in bad faith or misconduct in bringing its claim. . . . Better Bakery's motion to recover attorney's fees under PUTSA is denied.").

Faced with this reality, Defendant changes course in her reply and cobbles together statements from MEF's complaint, which she now posits had no "facts upon which to base [MEF's] case." Def.'s Reply 1. This is absurd. Almost a year after MEF filed its complaint, this Court found after an evidentiary hearing that the "Middle East Forum has . . . shown a reasonable probability of success on the merits for its . . . Pennsylvania Uniform Trade Secrets Act (PUTSA) claim[ ]." Prelim. Inj. Op. 8, ECF No. 91. Additionally, the time and place for testing the sufficiency of a complaint is either in a motion to dismiss or a motion for summary judgment, not in a post-trial motion for fees. Moreover, this Court did not grant Defendant's motion for summary judgment or her motion in limine to strike MEF's evidence. As evidenced by these prior rulings, MEF had ample "facts upon which to base its case."

Next, Defendant hurls wild and unsubstantiated accusations of perjury against MEF and its principals, hoping this will make the case for bad faith. It does not. Neither MEF nor its principals committed perjury, by filing the complaint or otherwise. For instance, Defendant argues that MEF committed perjury by alleging that "MEF did not require Barbounis to use her ***personal*** e-mail accounts . . . in accordance with the Personnel Manual." Def.'s Reply 1–2 (quoting Compl. ¶ 38, ECF No. 20).[2] But the Personnel Manual expressly states that "***MEF's*** e-mail and voice systems and access to the Internet are provided to employees for MEF business." Pl.'s Mot. Summ. J. Ex. 6, at 12, ECF No. 112. Moreover, as the Court will recall, at no time did MEF personnel testify that Ms. Barbounis could use her personal e-mail to transfer sensitive donor information to a third party, nor retain sensitive donor information in her personal Gmail account after departing MEF. Ms. Barbounis further conceded in sworn testimony that she was not authorized by anyone at MEF

---

[2] Unless otherwise noted, all emphasis in this brief has been added, and all internal quotations, citations, and alterations have been omitted.

to send donor information to third parties.  Pl.'s SUMF ¶¶ 39 (citing Barbounis Dep. Tr., at 251:20–252:1), ECF No. 112-2.  At any rate, "conflicting accounts of events does not demonstrate perjury."  *Ke v. Edinboro Univ. of Pa.*, No. 08-268, 2012 WL 4076185, at *1 (W.D. Pa. Sept. 17, 2012); *see also Kissinger–Campbell v. C. Randall Harrell, M.D.*, 418 Fed. App'x 797, 805 (11th Cir. 2011) ("The testimony of Zbella and DeLuca merely indicates that there are conflicting accounts on precisely when certain past events occurred.  This is not evidence of perjury or a conspiratorial scheme to concoct a false story, as Defendants allege.").[3]  In sum, Defendant has not established bad faith.  This failure bars Defendant from recovering any fees.

## II.   DEFENDANT CANNOT RECOVER ANY FEES BECAUSE MR. CARSON'S "DETAILED ACCOUNTING" IS EXCESSIVE, UNREASONABLE, RIDDLED WITH ERRORS, AND APPEARS NOT TO BE BASED ON CONTEMPORANEOUS TIME RECORDS.

This Court need not reach the issue of reasonableness because Defendant has not proven bad faith.  Setting that dispositive failure aside, Mr. Carson's "detailed accounting" is "a cascade of carelessness, confusion, and cursoriness."  *McKenna v. City of Philadelphia*, No. 07-110, 2008 WL 4435939, at *7 (E.D. Pa. Sept. 30, 2008) ["*McKenna I*"].  The Third Circuit has made clear that "the burden remains on the party requesting the fee to prove its reasonableness."  *Interfaith Comm. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 713 (3d Cir. 2005).  "To meet its burden, the fee petitioner must submit evidence supporting the hours worked and the rates claimed."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The Court should exclude hours that are "excessive, redundant, or otherwise unnecessary," as well as hours that "the fee petition **inadequately documents**."  *Id.*  Rates must be justified

---

[3] Defendant's reply also attempts to recycle her tired argument about the supposed lack of damages. Def.'s Reply 6.  MEF, however, has already shown why this argument is incorrect and cannot serve as proof of bad faith.  Pl.'s Opp'n 8.  Defendant never responded to MEF's arguments and, regardless, the nature of a general verdict form makes it "impossible to discern the basis of the jury's verdict."  *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1007 (3d Cir. 1998).

according to the community-market rule and adjusted downward for clerical or preparatory tasks. *See id.*; *see also McKenna I*, 2008 WL 4435939, at *7. It is also entirely appropriate for the court to "consider the quality of an attorney's filings when fixing fees." *McKenna v. City of Philadelphia*, 582 F.3d 447, 456 n.9 (3d Cir. 2009) ["*McKenna II*"].

When reviewing petitions for reasonableness, this Circuit has "stressed that it is necessary that the District Court 'go line, by line, by line' through the billing records supporting the fee request." *Interfaith*, 426 F.3d at 713. Courts have "a positive and affirmative function in the fee fixing process, not merely a passive role." *Id.* Failure to explain an award at a granular level constitutes reversible error. *See id.* ("Where the opinion of the District Court is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order . . . .").

Nothing about Defendant's fee petition is reasonable. While seeking over $1,300,000 in fees, the bloated time entries are so mangled that it is impossible for MEF or this Court to meaningfully assess them.[4] And Defendant never justifies Mr. Carson's or Mr. Diamond's rates according to the strictures of the community-market rule. This Court should end Defendant's charade by finding that she failed to prove bad faith, which bars any recovery. Neither MEF—nor the Court—should be forced to spend further resources on this frivolous fee request.

### A.   Defense Counsel's Hours Are Unreasonable.

Mr. Carson and Mr. Diamond's time entries are "a mis-mash of misdirections, misnomers, and mistakes." *McKenna I*, 2008 WL 4435939, at *6. Indeed, most, if not all, the entries display some deficient characteristic. ***First***, Mr. Carson's math does not add up. After reaching the end

---

[4] Even setting aside the lack of bad faith, an award of any amount on this record almost certainly constitutes reversible error. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("[T]he District Court . . . should reduce the hours claimed . . . for which the fee petition inadequately documents."); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000) ("[I]f a district court does not fulfill its duty to apply the relevant legal precepts to a fee application, it abuses its discretion by not exercising it.").

of his 51-page tome, it seems to dawn on him that this estimate exceeds the old one by over $400,000. *See* Def.'s Mem. 50 ("It should be noted that Defendant's Fee Petition had [sic] increased somewhat . . . ."). Realizing that he has some explaining to do, he blames the discrepancy on duplicate ESI charges and post-trial work. *See id.* But Mr. Carson never identifies *which* ESI charges are duplicates, forcing MEF and the Court to play a guessing game, contrary to satisfying his burden. And his claim about post-trial work cannot account for the difference. According to his own records, he only worked 71.5 hours on this matter since he filed the fee petition. Def.'s Mem. 46–47. Mr. Diamond only worked 40 hours during this period. Setting aside the conclusory justifications for these hours, they hardly account for the $400,000 spike.

The most likely explanation for this colossal blunder—indeed, the most likely explanation for all of Mr. Carson's accounting errors—is the lack of contemporaneous timesheets. If Mr. Carson had kept contemporaneous time entries, he could have provided an accurate account of his initial estimate, as well as at least redacted records. Instead, "[t]he time and date variances . . . and the failure to claim for time actually spent suggest post-date whimsy, albeit down to the tenth of an hour, rather than accurate, contemporaneous notations. *McKenna I*, 2008 WL 4435939, at *15. The argumentative, past-tense tone in many of Mr. Carson's entries seems to confirm his revisionist timekeeping approach. *See, e.g.*, Def.'s Mem. 35 ("Email from Denise Drages with 2 letter attachments. . . . The letters indicated a disconnect as Defendant had furnished responses to Plaintiff's only discovery requests over a month earlier."). In this Circuit, "contemporaneous records" have "long been the preferred practice." *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 401 (3d Cir. 2018). Accordingly, "reconstructed records . . . warrant more exacting scrutiny than . . . contemporaneous and detailed records." *Id.* At the very least, the discrepancies

show that Mr. Carson's hours are "not reliable and . . . cast[ ] doubt on all of Mr. Carson's time records." *McKenna I*, 2008 WL 4435939, at *15.

**Second**, Mr. Carson appears to have padded his hours.  For instance, he claims to have billed 2442.9 hours on this matter.  Def.'s Mem. 48.  But his itemizations only account for 2047 hours, meaning that he has pulled roughly 400 hours from the ether.  Moreover, this new estimate represents a 700 hour increase over the 1700 hours he claimed in December.  Def.'s Mot. Ex. B at ¶ 8.  On top of this, Mr. Carson's alleged totals cannot be squared with the fact that he appeared as counsel of record in 51 other cases in the Eastern District of Pennsylvania during the pendency of this case.  *See* Pl.'s Opp'n 14 n.5.  Either his hours in this case are overstated or he devoted almost no time to his other cases.  Of course, as excuses for missing deadlines and violating court orders in this case, Mr. Carson routinely cited his other time-consuming cases (including other cases against MEF), all suggesting his hours are fluffed.

**Third**, Mr. Carson offers contradictory time totals, making it impossible to tally his time.  For June 2020, he claims 111.8 hours.  Def.'s Mem. 18.  But then he states that "the total for the month of June is 151.8 hours."  *Id.* at 26.  For August and September 2020, he claims 105.1 hours.  *Id.* at 26.  But then he states that "[t]he total hours worked in August and September 2020, was 75.1 hours."  *Id.*  The title for Section II.A.11 claims Mr. Carson spent "110.9 hours" in December 2020, but the following text claims that the "total hours worked in December 2020 was 108.9 hours."  *Id.* at 32.  For March and June 2021, he claims 218.4 hours.  *Id.* at 38.  But then he states that "[t]he total hours worked between March 1, 2021, and June 30, 2021, was 18.4 hours."  *Id.* For July and August 2021, he claims 217.2 hours.  *Id.* at 41.  But then he claims that "[t]he total hours worked in July and August 2021, was 17.2 hours."  *Id.*  And for November 2021, he claims

192.2 hours.  *Id.* at 45.  But then he claims that "[t]he total hours worked in November 2021, was

112.2 hours."  These Janus-like entries prove that Mr. Carson's hours cannot be trusted.

*Fourth*, Mr. Carson's task descriptions are largely missing, inadequate, or unintelligible.

As the following table illustrates, Mr. Carson offers no descriptions for over 400 hours:

| Date | Claimed Hours | Itemized Hours | Discrepancy |
|---|---|---|---|
| 10/01/2019–11/01/2019 | 17.1 | 10.5 | -6.6 |
| 12/01/2019–12/31/2019 | 76.9 | 65.6 | -11.3 |
| 01/31/2020–01/31/2019 | 96.5 | 7 | -89.5 |
| 03/01/2020–03/31/2020 | 127.4 | 91.3 | -36.1 |
| 06/01/2020–06/30/2020 | 118.8 | 151.8 | +40 |
| 07/01/2020–07/30/2020 | 20 | 25.4 | +5.4 |
| 12/01/2020–12/31/2020 | 110.9 | 82.2 | -28.7 |
| 10/01/2021–10/31/2021 | 120.8 | 120 | -.8 |
| 11/01/2021–11/30/2021 | 192.2 | 0 | -192.2 |
| 12/01/2021–12/31/2021 | 193.6 | 184 | -9.6 |
| 01/01/2022–Present | 71.5 | 0 | -71.5 |
| | | **Total** | **-400.9** |

Mr. Diamond claims an exact 220 hours without any itemization, much less

contemporaneous records.  Def.'s Mem. 48–49.  In addition to entries with no descriptions, Mr.

Carson attempts to justify 650.5 hours in unspecified blocks of time that encompass days

(sometimes months) of work.  Consider Mr. Carson's justification for 120.8 hours in October 2021:

> More than 80 of the 120.8 hours billed in the month of October 2021, involved
> researching, investigating, drafting, editing, and finalizing the memorandums and
> fact statements in connection with dispositive motions. The other 40 hours were
> spend receiving or drafting emails from Plaintiff, reviewing the docket and all
> docketing filings in October 2021.

Def.'s Mem. 44–45.  Such "block-billed" time balloons to 1840.9 hours when it factors in the

stupefying 1190.4 hours requested for ESI review.  Mr. Carson previously balked at a fee petition

from MEF that did not initially "provide itemizations and descriptions of the work claimed," and

stated that "broad, generalized categories of information with total sums" did not even give him

enough information to form a response.  Def.'s Resp. Pl.'s Fee Estimate 1, ECF No. 131.  Mr.

Carson and Mr. Diamond cannot now hold themselves to a lesser standard. *See Wang v. Chapei LLC*, 849 Fed. App'x 360, 361 (3d Cir. 2021) (affirming denial of fees where "critical deficiencies in the fee petition" and "one of the attorneys failed to provide a detailed bill for his time").

On top of block-billed entries and entries with no descriptions, Mr. Carson offers entries that make no sense. This how he attempts to justify 192.2 hours in November 2021:

> The following is a list of dates and entries to Defendant's time sheet: 4 entries on November 1, 2021, November 2 entry, November 3 entry, 2 November 4 entries, November 5 entry, 2 November 8 entries, November 9 entry, 2 November 10 entries, 11 entries on November 11, 3 November 12 entries . . . .

Def.'s Mem. 45–46. Mr. Carson offers no decryption key. He just leaves it to the Court's own "effort and imagination." *McKenna I*, 2008 WL 4435939, at *2. This falls far short of meeting his burden of establishing a reasonable basis for an award of any amount.

*Fifth*, Mr. Carson also hawks plainly unreasonable time. A few categories to illustrate:

ESI Processing & Review. All told, Mr. Carson has attempted to smuggle in roughly 1110.4 hours in ESI-related costs. The vast majority of these hours lack any specificity. *See, e.g.*, Def.'s Mem. 18 ("There was [sic] 200 hours spent in April and May for a total of 400 hours reviewing e-discovery . . . ."); *id.* 40–41 ("Seth Carson spent another 200 hours reviewing this information for relevance and use."). Billing deficiencies aside, these hours—which represent almost half the time Mr. Carson allegedly spent on this matter—reveal how little Mr. Carson understands about discovery. Indeed, they vindicate Judge Wolson's decision to order Mr. Carson to "take six hours of CLE on e-discovery" due to his "lack of facility with some of the core e-discovery concepts that have given rise to where we find ourselves here." Hr'g Tr. 77:12–16, *Barbounis v. The Middle East Forum*, No. 19-cv-5030 (E.D. Pa. Dec. 4, 2020); *see also* Ex. A (Chart of Carson Reprimands).

As this Court is well-aware, many of Mr. Carson's claimed discovery hours, if they were accurate and even if they related to this case, are self-inflicted due to his inexperience, refusal to cooperate, and failure to follow Court orders.  *See, e.g.*, Order (Feb. 19, 2020), ECF No. 38 (granting MEF's motion to compel discovery); Order (June 25, 2020), ECF No. 58 (granting MEF's motion to compel and ordering Defendant to transfer ESI from Capsicum to Cornerstone); Order 1 n.1 (Nov. 25, 2020), ECF No. 75 ("[T]he Court is troubled by defense counsel's apparent disregard of multiple attempts by plaintiff's counsel and Cornerstone to resolve the aforementioned collection issues without intervention. . . . ").

Clerical Tasks.  An attorney should not "be paid his top rate by his opponent for doing ho-hum work."  *McKenna I*, 2008 WL 4435939, at *9.  "[R]outine administrative work—the kind generally performed by a secretary or office clerk"—includes "time spent on emails, faxes, filing, scanning, assembling, and conforming."  *Id.*  Here, Mr. Carson's records reveal that he spent roughly 154.3 hours on routine administrative work.  *See* Ex. B at § 1 (Chart of Fee Deficiencies). Take this entry for 5.5 hours:  "Organized case file, files and folders.  Compared the paper file to the difital [sic] file and made sure that all documents were downloaded and organized into the correct file and folder. . . ."  Def.'s Mem. 29.  These "ho-hum" tasks are not worth $500 an hour.

Third Parties / Other Matters.  "It is axiomatic that the burden is on a prevailing party to provide evidence of hours spent on his or her case as contrasted with the hours spent on other tasks for other parties.  Here there was no such evidence."  *McKenna I*, 2008 WL 4435939, at *13. Indeed, Mr. Carson seems to have billed roughly 100.2 hours representing or assisting third parties, none of which was necessary for his representation of Ms. Barbounis.  *See* Ex. B at § IV.

Questionable Entries.  Some entries defy belief.  Consider the entries where Mr. Carson appears to be charging hours incurred by MEF's counsel.  *See, e.g.*, Def.'s Mem. 21 ("Attison

Barnes drafted and sent a response notifying Defendant of Plaintiff's position."); *id.* at 28 ("Attison Barnes drafts and sends a second letter dated August 12, 2020."). Other entries are impossible due to date mismatches—like Mr. Carson billing five hours in January 2021 regarding a motion filed in 2022. Def.'s Mem. 37. And incredibly, Mr. Carson is charging for time spent responding to motions for sanctions and contempt. *See, e.g.*, *id.* at 28. He cannot force MEF to pay for his own mistakes that stem from his inability to follow this Court's rules and orders.

**Sixth**, Mr. Carson's time entries make no effort to carve out the time he spent defending MEF's PUTSA claim. This makes it impossible for MEF or the Court to determine a single hour related to the PUTSA claim. *See Contract Materials Processing, Inc. v. Kateleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 750 (D. Md. 2002) (excluding hours not related to misappropriation claim). Because Mr. Carson rolled everything together, any award of fees for work done on the PUTSA claim would be pure speculation.

**Seventh**, even if a fee award were warranted (it is not), the overall poor quality of Mr. Carson's work product warrants a downward adjustment to any fee award. *See McKenna II*, 582 F.3d at 456 n.9 ("[P]laintiff's attorney originally submitted . . . an uncorrected and mistake-filled draft of his fee application. That Court understandably was disturbed by this submission and by what it perceived as counsel's sloppy work throughout the case. We are satisfied that a court can consider the quality of an attorney's filings when fixing fees."). From the beginning of this dispute to his latest filing, Mr. Carson has shown a disregard for this Court's rules and orders, as well as controlling law and careful proofreading. *See* Ex. C (Timeline of Carson Misconduct). For example, Mr. Carson routinely violated his discovery obligations, violated the protective order by publicly filing MEF's AEO expert report, failed to appear at a court-ordered settlement conference, and failed to timely produce and submit trial exhibits as ordered by the Court. Indeed, Mr.

Carson's tactics are "a vast mystery" and his request for exorbitant fees should be denied outright. *McKenna I*, 2008 WL 4435939, at *6.

**B.      Defense Counsel's Rates are Unreasonable.**

Neither Mr. Carson nor Mr. Diamond justified their billing rates.  Proof of a reasonable rate requires "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "This burden can be sustained by submitting affidavits of other attorneys in the area who represent [individuals] in similar matters." *Wang v. Chapei, LLC*, No. 15-2950, 2020 WL 5500428, at *4 (D.N.J. Sept. 10, 2020).  Citing to rates awarded in other cases, or to rates charged by an attorney's opponent, "fails to establish the prevailing market rate"—especially in cases "where attorneys' fees are merely permissive." *Id.*

Here, Mr. Carson attempts to justify his and his colleagues' rates by pointing to the rates charged by attorneys at Wiley Rein LLP.[5]  This does not suffice because he fails to draw comparisons between the attorneys in terms of "skill, experience, and reputation," and he offers no supporting affidavits from attorneys in his community.  *Blum*, 465 U.S. at 895 n.11.  Indeed, MEF's counsel has far more experience than defense counsel, especially in the realm of trade secret litigation.  Mr. Carson admitted that this was his first time defending a case (much less a trade secret claim) and has been openly reprimanded by judges in this District for his inability to manage cases and discovery.   Additionally, Mr. Carson has repeatedly conceded that he represented Ms. Barbounis on a ***pro bono basis***, meaning that she is certainly not paying the claimed rates for this matter.  *See* Sanctions Hr'g Tr. 32:21–23 (Nov. 1, 2021); *cf. Maldonado v.*

---

[5]  The name "Wiley Rein" has proven a constant challenge for Mr. Carson, who refers to it as both "Weily Rein," Def.'s Mem. 47, and "Willey Rein," Def.'s Pretrial Mem. 11, ECF No. 154.

*Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) ("Hours that would not generally be billed to one's own client are not properly billed to an adversary.").  The pro bono representation meant that there was no agreement on a chargeable rate for defense counsel's time, and any assistance defense counsel provided in this matter was apparently captured in a contingency fee arrangement for another lawsuit filed against MEF.  Recovery of fees in this matter at a billable rate would therefore permit Mr. Carson to double dip on the fee arrangement he reached with Defendant.

The numerous flaws in Mr. Carson's time records make it impossible for MEF or the Court to reliably decipher Defendant's claim for fees.  Indeed, it would be prejudicial to award anything on this record, even if Defendant could meet the high burden for an award in this unusual, discretionary posture.  Defendant, however, has not carried her burden and is entitled to no fees.

*      *      *

Defendant's quixotic quest for fees has no merit whatsoever.  She has not, and cannot, prove bad faith.  The fact that Defendant forced MEF to slog through 51 pages of post-hoc, puzzling records is disappointing and a waste of resources.  The records are unreasonable, rife with errors, and demonstrate—once again—Mr. Carson's approach to practicing law.  Judge Ditter put it best:

> A long time ago in a galaxy far, far away, each lawyer knew he and she could not nail any old slap-dash parchment to the church door and expect someone else to pay for it.  Most lawyers who practice in this court know that.

> They all should.

*McKenna I*, 2008 WL 4435939, at *17.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Attorneys' Fees and grant such other relief as this Court deems proper.

15

Dated: April 26, 2022                                 THE MIDDLE EAST FORUM

                                                      By counsel

                                                      /s/ Sidney L. Gold, Esquire
                                                      Sidney L. Gold
                                                      sgold@discrimlaw.net
                                                      Sidney L. Gold & Associates P.C.
                                                      1835 Market Street, Suite 515
                                                      Philadelphia, PA 19103
                                                      Tel: (215) 569-1999
                                                      Fax: (215) 569-3870

                                                      Attison L. Barnes, III
                                                      abarnes@wiley.law
                                                      Wiley Rein LLP
                                                      2050 M Street NW
                                                      Washington, DC 20036
                                                      Tel: (202) 719-7000
                                                      Fax: (202) 719-7049

                                                      *Counsel for The Middle East Forum*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 26, 2022, a true and correct copy of the foregoing was filed and served on all parties by electronic mail.

<u>/s/ Sidney L. Gold, Esquire</u>
Sidney L. Gold
sgold@discrimlaw.net
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870

Attison L. Barnes III
abarnes@wiley.law
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for The Middle East Forum*