

June 29, 2022

*Via E-filing*

United States District Court
Eastern District of Pennsylvania
Honorable Juan R. Sanchez
601 Market Street
Room 14613
Philadelphia, PA 19106-1726

                RE:     Middle East Forum v. Lisa Reynold-Barbounis
                          No. 2:19-cv-05697-JS

Dear Judge Sanchez:

Defendant, Lisa Barbounis ("Ms. Barbounis" or "Defendant") responds to Plaintiff, Middle East Forum's ("MEF" or "Plaintiff") most recent filing (Document 219). Plaintiff filed a letter notifying the Court about Judge Bibas' Opinion in Elmagin Capital, LLC v. Chen, No. 20-2576 (E.D. Pa. June 17, 2022), ECF No. 322. Elmagin v. Chen underscores the stark difference between a legitimate trade secrets case and MEF's deficient attempt to subject Barbounis to retaliation. A comparison confirms the only common thread between these cases is the law.

Elmagin is a for-profit company that trades wholesale power contracts using proprietary trading strategies. Elmagin initiated a lawsuit against its former President, Chen, and co-defendant, Petty, Chen's former classmate. Chen divested all interest in Elmagin and signed a Non-Compete Agreement. Nine days after the Non-Compete expired, Chen and Petty started ENTERGRID PARTIES, a company in direct competition with Elmagin. Elmagin's lawsuit claimed Chen and Petty used Elmagin's proprietary trading strategies Chen learned during his employment with Elmagin. When the lawsuit was filed, Chen and Petty had been in business for more than a year, using trading strategies Elmagin claimed were "functionally identical to and directly derived" from Elmagin. Elmagin sought to stop Chen and Petty from competing in the same market using Elmagin's trade secrets.

Using the good-old "recipe for Coke" comparison: Elmagin's lawsuit was tantamount to Coke's president quitting Coke and starting a soft-drink company. If this new soft-drink company's first product was a cola-flavored soda that tasted like Coke. and was made using Coke's recipe, Coke would of course sue under trade secrets laws.

Comparing Elmagin v. Chen with MEF v. Barbounis illustrates MEF's bad faith in filing a trade secrets lawsuit with no evidence to support its claims.

New York City Office: One Penn Plaza, Suite 4905, New York, NY 10119 | (212) 587-0760 Philadelphia Office: 1835 Market Street, Suite 2950, Philadelphia, PA 19103 | (215) 391-4790
Miami Office: 100 SE 2nd Street, Suite 2000, Miami, FL 33131 | (305) 946-1884
New Jersey Office: 73 Forest Lake Drive, West Milford, NJ 07421 | (973) 388-8625
Website: www.discriminationandsexualharassmentlawyers.com

**If Lisa Barbounis' case was similar to Elmagin**:   Ms. Barbounis would have quit working for MEF and started her own non-profit organization.  When MEF filed suit, Barbounis' newly formed Non-Profit would have been in existence for about a year.  Ms. Barbounis' non-profit would have been in direct competition with MEF.  In suing Barbounis, MEF would have proven Barbounis' non-profit used secret fundraising strategies learned during her employment with MEF.  MEF would have proven Barbounis' Non-Proft was in direct competition with MEF, using MEF trade secrets and strategies to procure donations from MEF donors.

Of course this is a far cry from the facts in MEF v. Barbounis.

**If Elmagin was similar to Lisa Barbounis v. MEF**:    Chen would have left Elmagin and immediately secured reemployment in a different industry with no connection to Elmagin.  No information Chen learned with Elmagin would have been useful to Chen's new employment.  After a two-year forensic investigation into every device, email, cloud storage, and social media account, there would have been no evidence that Chen profited from information learned with Elmagin.  Moreover, Elmagin would have admitted it lost no money because of Chen.  Elmagin would have admitted it lost no customer because of Chen. Finally, there would have been no evidence that Chen, or any person related to Chen competed with Elmagin or ever used any Elmagin trade secrets.

If these were the facts of Elmagin v. Chen, Judge Bibas would not have awarded attorney's fees, ***because Elmagin would never have sued Chen to begin with***. (Emphasis added).

Of course if Elmagin v. Chen  were similar to MEF v. Barbounis, Chen would have also sued Elmagin for sexual harassment just weeks before Elmagin initiated its trade secrets case.

Lisa Barbounis' petition for attorney's fees is based on the complete lack of evidence that MEF presented to sustain its trade secrets lawsuit.  The law on misappropriation clearly defines a prima facie case and confirms that "Failure to establish any one of the elements defeats the claim." Block v. Blakely, No. 02-8053, 2004 WL 1902520, at *3 (E.D. Pa. Aug. 25, 2004).  There was never a time when MEF could reasonably claim to have satisfied the elements needed to sustain its trade secrets lawsuit.  MEF tried to cure these deficiencies through the intentional false testimony of Gregg Roman.

Through the trial-testimony of Gregg Roman, MEF admitted to zero damages sustained, zero damages threatened, zero evidence that any party ever used, relied on, or profited from MEF trade secrets, and no evidence of any past, present, or future harm.  Both Gregg Roman and Daniel Pipes admitted to this at trial.  (Trial Day 2, 156:23 – 157:3; 158:8-11; 192:16-19).  See also Id. 54:8 – 16; 65:1 – 66:24; 67:9 – 14.

The Verified Averments in the Initial and First Amended Complaints (Document 1, ¶¶ 16[1], 15[2], 71, 72, 80, 90, 104, 112, 116, 117)[3] and (Document 20, same averments repeated) were directly contradicted by Gregg Roman during his cross-examination.

Elmagin v. Chen is nothing like MEF v. Barbounis.  There was never a time when MEF had a legitimate basis to begin a trade secrets lawsuit.  This is the objective speciousness.  The subjective speciousness is demonstrated by deceptive testimony to make up for the lack of evidence.  It is clear that Gregg Roman had no regard for the truth when he Verified the Complaints.

> (Document 1 and 20, ¶ 38).  "MEF did not require Barbounis to use her personal email account and Barbounis was not authorized to use her personal email account for MEF business."

Roman knew Barbounis was authorized and required to use her personal Google account.  On cross, Roman admitted Barbounis and other employees were required to use personal Google accounts.

> "Q.   Yeah, and she used that personal Gmail account to deal with MEF Donors and MEF lists, and the Gala List, just like everyone that was required to use Google Docs, right?
> A.   Correct."    Trial Day 2 (Roman Tr) 90:13 - 20

Roman repeatedly contracted the Verified Complaint. Day 2 79:9 – 80:22; 81:5 – 21.

Roman's testimony was a pattern of continuous and intentionally false statements designed to fill in the holes of Plaintiff's lawsuit.  Roman repeatedly denied employees were required to use Google Docs.  Minutes later Roman offered vivid detail confirming that he, Barbounis, and other employees all used Google-Docs.

> Q.   Another application that Middle East Forum required Employees to use personal email accounts for is Google Docs, right?
> A.   That's incorrect.   Trial Transcript Day 2 (Roman Cross) 81:19 – 25.
> …
> A.   We required Employees to use Google Docs on MEF's Google Workspace. It's called Google, I think, Professional Docs.
> Q.   You're under oath right now. You're sure that what you're saying is correct?

---

[1] Count I, Page 19 of 44.
[2] Count II, Page 2 of 44.
[3] MEF's Civil Action Complaints are mis-numbered, particularly starting on Page 17 of 41 in Document 1 and Page 15 of 44 in Document 20.  The paragraphs referenced all relate to the Paragraphs in Count I, II, III, IV, V, VI, VII, VIII, and IX.  This is where Plaintiff's Civil Action Complaints are mis-numbered, however, all of the damages averments were proven false and lacking all evidence at trial, which was admitted to by MEF and Roman.

    A.       I think that we sent a Memo. I remember that a Memo was sent asking all Employees to transition from their personal Gmail addresses to the corporate Google workspace, which was activated, I think, on March 8th, 2019. Trial Transcript Day 2 (Roman Cross) 82:1 – 10.

…

    Q.       This is the question I'm asking: did The Middle East Forum require Employees to use their personal Gmail accounts so that they could use Google Docs?

    A.       Yes.   Trial Transcript Day 2 (Roman Cross) 84:13 – 16

Once he admitted to using Google Docs, a flood of relevant and concerning admissions poured out. Roman admitted that documents containing hundreds of donor names and information were authored using personal Google Docs accounts. Id. 84:17 – 85:2. This was after Roman told the jury that there was no conceivable reason for the documents to be on Ms. Barbounis' personal account. Id. 85:4 – 11. The exact opposite was true. Ms. Barbounis was required by MEF to originate these documents on her personal account.

Roman's deceit cannot be understated. Roman used his personal Google account and was one of several former and current employees with access to this so-called sensitive information on the day of Roman's cross examination. See Id. 85:18 – 25. And see Id. 85:25 – 86:25; 89:4 – 90:16.

Roman's deception continued. After admitting that hundreds of donor names and information were shared using personal accounts by past and present employees, Roman also admitted that the cyber security measures described on direct were false. Id. 87:1 – 5 and 88:12 – 15.

If MEF had evidence, it would not have resorted to ill-advised tactics like false testimony to fill the holes in its case.

In MEF v. Barbounis, MEF's Verified Complaint was conclusively proven false at trial. MEF's primary witness, Gregg Roman, admitted that sworn statements in the Verified Complaint were false, as described above. There was never a time when MEF could reasonably claim that the prima facie elements of a misappropriation claim were satisfied, as there was a complete lack of evidence with regard to key elements, like damages. MEF and Gregg Roman thought to deceive their way through these deficiencies. These facts demonstrate both the objective and subjective requirements to prove Plaintiff's bad faith.

For these reasons, and all of the reasons presented in numerous prior filings, Defendant has demonstrated that MEF's lawsuit was filed in bad faith, without any evidence to prove either of its counts under the DTSA and the PUTSA.

                                                      Very Truly Yours,
                                                      **DEREK SMITH LAW GROUP, PLLC**

BY: /s/ Seth D. Carson
     Seth D. Carson, Esquire

CC: Sidney Gold