IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-5697 |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | |

### MEMORANDUM

**Chief Judge Juan R. Sánchez**  August 31, 2022

The Middle East Forum ("MEF") brought this trade secret and breach of contract action against Lisa Reynolds-Barbounis.[1] On December 17, 2021, the jury returned a verdict in favor of Barbounis on all counts. MEF filed a Motion for New Trial asserting (1) defense counsel's closing argument was unfairly prejudicial; (2) the Court made several erroneous evidentiary rulings; (3) the verdict was against the weight of the evidence; and (4) the Court failed to ask two jointly submitted voir dire questions. Barbounis opposes the Motion on all grounds. Because there were no errors warranting a new trial, the Motion is denied.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 59(a), the "court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The "decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992). Nonetheless, this power is limited "to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.*, 980

---

[1] There were other claims not directly related to trade secret misappropriation or breach of contract presented at trial. This characterization is for brevity, as the focus of MEF's Motion for New Trial is the trade secret and breach of contract claims.

1

F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (en banc)).

**DISCUSSION**

Each of MEF's arguments is without merit. Defense counsel's closing remarks were passionate but not unfairly prejudicial. The Court's evidentiary rulings were proper. The verdict was sufficiently supported by the evidence. And the Court's voir dire questioning, taken as a whole, was enough to impanel an impartial jury. The Court will address each argument in turn.

**A.     Closing Argument**

MEF asserts counsel improperly (1) labeled MEF's witnesses as "liars," (2) referenced facts not supported by admissible evidence, (3) alluded to a wealth disparity between the parties, and (4) proclaimed his client's cause was just. Each of these statements falls within the realm of allowable argument properly made before the jury.

The line between zealous advocacy and improper commentary can be blurry. "[N]ot all improper remarks will engender sufficient prejudice to mandate the granting of a new trial." *Fineman*, 980 F.2d at 207. Instead, the "test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Id.* (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978)). Consequently, "the trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial." *Draper*, 580 F.2d at 94.

Barbounis' counsel, Mr. Carson, advocated passionately for his client, but his conduct was neither unfairly prejudicial nor improperly influential on the jury. MEF first argues that Mr. Carson's repeated characterization of MEF's witnesses as "liars" rises to the level of impropriety

found in *Fineman*.[2] Although the misconduct of counsel need not reach the alarming level that occurred in *Fineman*, Mr. Carson's closing argument falls far short of the "reasonably probable" standard articulated there. Mr. Carson raised concerns about the credibility, veracity, and candor of the witnesses. Inconsistent testimony certainly casts doubt on a witness's credibility, and Mr. Carson was entitled to comment on the inaccuracies in Mr. Roman's testimony and encourage the jury to consider the implications of those inconsistencies. Accordingly, this aspect of Mr. Carson's closing argument was appropriate.

MEF next complains Mr. Carson "made improper references to the disparities in wealth between Defendant and MEF that were highly prejudicial." Pl.'s Mot. New Trial 8. As an initial matter, "[a]ppealing to the sympathy of jurors through references to financial disparity is improper." *Draper*, 580 F.2d at 95. This is because "justice is not dependent upon the wealth or poverty of the parties and a jury should not be urged to predicate its verdict on a prejudice against bigness or wealth." *Id.* In *Draper*, as in *Fineman*, the closing remarks were extreme.[3] *Id.* Mr. Carson's comments were far less inflammatory.[4] Further, in *Draper,* counsel argued "that because

---

[2] In *Fineman*, counsel's behavior was extreme. The attorney railed against the "nerve of [opposing] witnesses to lie on the stand or perjure themselves with a straight face," discussed how what was said could not be said "with a straight face in front of a federal judge and a federal jury," stated "every time we get to a crucial spot, things disappear," and accused witnesses of theft, conspiracy, and other crimes. *See Fineman*, 980 F.2d at 207-209. Particularly egregiously, counsel suggested "that one defense attorney either counseled a witness to lie . . . or engaged in sexual misconduct with a witness." *Fineman v. Armstrong World Industries, Inc.*, 774 F. Supp. 266, 271 (D.N.J. 1991) (trial court discussing the nature of the remarks).

[3] During closing, counsel in *Draper* said, "I brought you the giants, the giants of the industrial world" and "I am going to ask you to tumble the magnificent big company here with all their engineers." 580 F.2d at 95. Counsel also referred to the seven-million-dollar contract ten times, mentioned the opposing parties' four thousand acres of land, called the opposing party "or its parent company" the "biggest electrical contractor in the world," and stated, "on that side of the room are bills of dollars, on this side of the room is the equalizer." *Id.*

[4] Mr. Carson stated "[w]hy are they presenting false information in a court, when they're trying to make a public servant, someone who's worked for a Senator, a Congressman, another

the defendants were rich . . . and because the plaintiff was poor, the jury should base its verdict in favor of plaintiff on this financial disparity." *Id.* Even if Mr. Carson had made more extreme references to wealth disparity, these were isolated comments, unlike the overarching trial theme of wealth disparity present in *Draper*. Finally, the *Draper* court noted "this argument . . . would *not* require reversal [on the motion for a new trial] if counsel had not gone beyond the brink of rational argument in other aspects." *Id.* (emphasis added). Without more, even the comments of counsel in *Draper*, much more extreme than those of Mr. Carson, would not be sufficient to warrant a new trial.

MEF next alleges "defense counsel's closing improperly asserted the justness of his client's cause." Pl.'s Mot. New Trial 9. The Court must draw the line between "the advocate's art to argue before a jury in order to persuade them regarding the credibility of particular witnesses" and "excessive" behavior. *See, e.g.*, *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-cv-2284, 2017 WL 1196510, at *18 (M.D. Pa. Mar. 31, 2017). Mr. Carson did not assert his "personal opinion as to the justness of a cause."[5] *Id.* (quoting Pa. R. Pro. Conduct 3.4(c)). Instead, the comments cited by MEF reflect Mr. Carson's theory of the case and his argument that MEF had not satisfied its burden of proof. This is not improper.

---

Congressman, a nonprofit group, and then another Congressman, they're trying to make her pay a half a million dollars in damages that they paid an expert $130,000 to come up with and write a report*."* Pl's Mot. New Trial, 8-9 (citing Trial Tr. vol. 4, 172:1-6). He also referenced the $130,000 cost of the expert report five times. Trial Tr. vol. 4, 172:6, 174:6, 174:7, 175:24, 183:22. This is not the same as *Draper*.

[5] Mr. Carson said, "[w]e're asking that you come back with a verdict that lets my Client just walk away and go home. For two years, she's been plagued with this case. A case with no evidence, a case with no legal support, no foundation." Trial Tr. vol. 4, 186:21-187:1. He also said ""you don't sue somebody in court and accuse them of 10 different things – or eight different things and ask for a half a million dollars, right?" *Id.* at 183:16-19.

MEF finally argues a new trial is warranted because Mr. Carson made "repeated references in his closing to documents not in evidence." Pl.'s Mot. New Trial 6. "The remarks of counsel [are] required to be confined to the evidence admitted in the case and reasonable inferences drawn therefrom." *Watn v. Penn. R.R. Co.*, 255 F.2d 854 (3d Cir. 1958); *Robinson v. Penn. R.R. Co.*, 214 F.2d 798 (3d Cir. 1954). "Reversible error is committed when counsel's closing argument to the jury introduces extraneous matter which has a reasonable probability of influencing the verdict." *Ayoub v. Spencer*, 550 F.2d 164, 170 (3d Cir. 1977).

MEF cites three instances where Mr. Carson discussed the "public availability" of the alleged trade secret, and how quickly and inexpensively the same information could be obtained online. Pl.'s Mot. New Trial 7 (citing Trial Tr. vol. 4, 176:19-25, 180:21-181:6, 186:10-18). Ms. Barbounis had previously testified to exactly this point, and her testimony was the basis for Mr. Carson's statements. *After* Mr. Carson's closing remarks, the Court instructed the jury to disregard Barbounis' testimony on this issue because she did not produce any evidence of public availability. *See* Trial Tr. vol. 4, 199:2-6. Even if the evidence that he relied on was subsequently stricken, Mr. Carson's closing argument did not refer to any facts not in evidence at the time of closing.

None of defense counsel's allegedly improper assertions during closing argument made it "reasonably probable" that the verdict was influenced by prejudicial statements. They were permissible argument and do not warrant a new trial.

**B.    Evidentiary Rulings**

MEF asserts the Court erred when it (1) excluded evidence in MEF's case-in chief, (2) limited MEF's direct examination of its expert, (3) restricted MEF's cross-examination of Barbounis, (4) permitted Barbounis' testimony regarding public availability and failure to mitigate

5

harm, and (5) allowed Barbounis' counsel to refresh a witness' recollection with documents not previously produced.

When considering a motion for new trial based on evidentiary rulings, the Court must consider "(1) whether an error was in fact committed; and (2) whether that error was so prejudicial that the denial of a new trial would be 'inconsistent with substantial justice.'" *Mozingo v. Oil Services*, 341 F. Supp. 3d 534, 545 (W.D. Pa. 2018) (quoting *Reynolds v. Univ. of Pa.*, 684 F. Supp. 2d 621, 627 (E.D. Pa. 2010)).

First, MEF argues it was wrongfully precluded from introducing evidence at trial of external threats to MEF, defense counsel's improper filing of an expert report on the public docket, and an alleged $100,000 commission received by Ms. Barbounis for a gift to MEF. As to the issue of external threats, MEF claims Director Gregg Roman's testimony regarding "external threats that MEF faces [would have been] critical evidence for the jury to understand why MEF insists on strict confidentiality (to, among other things, protect the safety of MEF and its donors)." Pl.'s Mot. New Trial 12 (citing Trial Tr. vol. 1, 61:6-8). The Court excluded this evidence because it was not relevant to the claims at issue and could unduly prejudice the jury. As the Court explained, "[t]here may be a myriad of reasons for the companies or the nonprofits wanting not to disclose their Donor list" and even simple business reasons, which MEF testified to, would satisfy the claim requirements. Trial Tr. Vol. 1, 61:6-8. There was no evidence that these threats were in any way related to Barbounis' alleged disclosures, so they were not probative of any claim or defense.

As for defense counsel's erroneous filing of a sealed document on the public docket, the Court excluded this information out of concern the jury would conflate counsel's clerical error with the central misappropriation allegations in the case. MEF claims this information was "relevant and probative to the actions of Defendant and her [counsel] with respect to MEF's

6

confidential information."[6] Pl.'s Mot. New Trial 12. This is misleading and would confuse the issues before the jury. Defense counsel's 2021 filing error is not at all "relevant and probative" of Barbounis' treatment of confidential information in 2019, and the Court rightly excluded this information.

MEF also argues it should have been able to introduce evidence of a $100,000 commission Barbounis allegedly sought for soliciting a donation. According to MEF, this information would have been critical "to establish a financial motive [for] why Defendant misappropriated MEF's information." Pl.'s Mot. New Trial 13. However, during a sidebar at trial, MEF's counsel admitted Barbounis never received the allegedly sought commission. Trial Tr. vol. 2, 20:8-21:21. Because there was a danger of this evidence being unduly prejudicial, and its probative value was limited by the fact that the commission was never received, it was rightfully excluded.

Second, MEF alleges the Court erred when it prevented Mr. Holzen, MEF's expert witness, from discussing "the methodology he used to calculate MEF's damages, specifically the cost approach," and instead only allowed "his damages calculations without explanation." Pl.'s Mot. New Trial 14 (citing Trial Tr. vol. 3, 41:3-42:13). This is incorrect. The Court explicitly allowed: "[Mr. Hozen may] tell us what the calculations were on the unjust enrichment and the other calculation he made, *and tell us the basis for those calculations.*" Trial Tr. vol. 3, 43:1-8 (emphasis added). In fact, Mr. Holzen discussed the methodology of his calculations extensively, including why he selected an unjust enrichment analysis instead of reasonable royalty analysis, what conclusions he drew, how he measured damages, and the amount of said damages. Mr. Holzen also reviewed the equation he used to perform the calculations, the five elements of cost he

---

[6] MEF's brief refers to "Defendant and her *client*" but the court attributes this to a mere scrivener's error and has edited the quote accordingly. Pl.'s Mot. New Trial 17.

included in his "cost-buildup methodology," and an individual walkthrough of each element. Trial Tr. vol. 3, 43:1-54:6. MEF's assertions of Court error with regards to Mr. Holzen's testimony are without merit.

Neither did the Court err in excluding Mr. Holzen's testimony about *Georgia Pacific*. Mr. Holzen began his explanation by stating "so there's a very famous case known as the Georgia Pacific case. It's from the 1970s. . ." Trial Tr. vol. 3, 57:10-25. The Court noted the law was in the Court's domain, not that of the expert. *Id.* Rather than simply describing the factors as they were used in his analysis, Mr. Holzen referenced legal authority and even assigned it weight by calling the case "famous" and referring to its longevity in the case law. Nonetheless, the court did not exclude all of Mr. Holzen's testimony about the "foundations of his analysis," as MEF claims. *Id.* Instead, the Court told counsel "[Mr. Holzen] could mention the factors and simply the factors, because I will give the[j]ury the law." *Id.* at 58:1-25. Precluding an expert from naming and citing one case is not the same as preventing all testimony about the "foundation of his analysis." Pl.'s Mot. New Trial 15. The Court had no issue with Mr. Holzen discussing the fifteen factors he considered—but he was not entitled to emphasize the "legal precedent" his methodology stemmed from. Similarly, because the demonstratives contained citations to the legal precedent from which Mr. Holzen allegedly drew his factors, the Court had the demonstratives removed to avoid prejudice. Restricting the expert's reference to legal precedent was not an error.

Third, the Court properly excluded testimony MEF attempted to use to impeach Barbounis on: (1) the Meltwater contract and (2) whether MEF had attempted to retrieve its data from Barbounis prior to the lawsuit. Pl.'s Mot. New Trial 16-18. Under Federal Rule of Evidence 404, character evidence may not be used to prove a person acted in accordance with the character. FED. R. EVID. 404. The Court sustained the objection to cross-examination on the Meltwater Agreement

8

because MEF's counsel told the Court it went "to not only her credibility but it goes to the fact that *she signs [a]greements and then doesn't comply with them*." Trial Tr. vol. 4, 82:22-25 (emphasis added). Doubling down, counsel stated "it's credibility and . . . *this is how she operates*. And she *doesn't comply with [c]ontracts*." *Id.* at 83:1-12 (emphasis added). Plaintiff's counsel's statements make clear the evidence was being introduced to show conformity with past acts and paint a prejudicial picture of Barbounis' character. This evidence was properly excluded.

The Court also properly excluded evidence about whether MEF had contacted Barbounis prior to the lawsuit. During cross-examination, MEF's counsel asked Ms. Barbounis about an unsigned affidavit not yet admitted into evidence. Trial Tr. vol. 4, 85:13-25; 86:1-25; 87:1-12. During sidebar, MEF sought to admit the evidence because Barbounis "testified that she was never contacted by MEF. And that can't be unrebutted. I'm entitled to cross that we sent her an Affidavit before this." *Id.* at 88:4-25. However, MEF's counsel noted the affidavit was sent to defense counsel directly. *Id*. The unsigned affidavit did not clearly contradict Barbounis' actual testimony that *she* had not received communication from MEF and was thus not relevant as impeachment evidence.

Fourth, MEF alleges the Court should have struck Barbounis' testimony regarding the public availability of donor information earlier. MEF takes issue with the Court's declining to exclude this testimony "at the time Plaintiff's counsel objected" and instead waiting to give a jury instruction until "one full day" later, when "the impressions that this testimony had on the jury was already made." Pl.'s Mot. New Trial 18. However, MEF did not object or move to strike Barbounis' testimony during cross examination when she discussed public availability. Trial Tr. vol. 3, 171:19-25; 172:1-25. Without objection, her testimony continued until the lunch recess. *See id.* Only after an extended delay due to a witness testing positive for COVID-19, when the jury

had already been sent home, did Mr. Barnes object to the testimony regarding public availability.[7] *Id.* at 178:5-25; 179:1-25; 180:1-25. The next morning, MEF provided the Court with proposed language for a curative jury instruction which the Court agreed to consider. Trial Tr. Vol. 4, 28:8-25; 29:1-18. During closing arguments, MEF did not object to any of Mr. Carson's statements about the public availability of the information. Later that same day, after closing arguments, the Court read MEF's proposed jury instruction to the jury and further advised the jury to "not consider or be influenced in any way by the testimony or other evidence that I told you to disregard." *Id.* at 197:17-21. The Court instructed the jury exactly how MEF requested; any delay in giving this instruction was due to MEF's failure to object at the time of Ms. Barbounis' testimony and Mr. Carson's closing arguments on the subject. Even with the delay, the Court's jury instructions were curative of any potential incidental prejudice.

MEF also alleges the Court erred when it limited the scope of the public availability jury instruction to only Defendant's testimony, rather than also striking Mr. Carson's statements during closing argument.[8] However, the Court utilized MEF's own proposed jury instruction, which it presented to the Court earlier that morning. Prior to closing, the Court informed MEF it would include their requested public availability jury instruction in the charge. Despite this, MEF did not raise an objection to any of Mr. Carson's arguments about how public availability. Nor did MEF ask for a sidebar and request an amendment to the jury instruction to include references by Mr. Carson. The jury was aware Mr. Carson's closing remarks were argument—and not evidence—and were advised to "to decide this case when you go back into the Jury Room based only on the

---

[7] MEF claims there were "multiple discussions" about the impropriety of such testimony. The first they cite to is the third day of trial at 173:1-6, which would predate this objection. However, there is no objection or discussion of impropriety at that citation in the record.

[8] The Court also incorporates by reference its earlier discussion of Mr. Carson's closing remarks containing references to facts not in the record.

*evidence that you heard together.*" Trial Tr. Vol. 4, 193:4-5; 194:20-22 (emphasis added). The Court also reminded the jury "[t]he evidence presented to you from which you could find the facts consists of the testimony of the witnesses, documents, and other exhibits that were received as exhibits. . . . I told you at the beginning that the statements, arguments, and questions of the Lawyers by the respective parties are not evidence . . . . And any testimony I told you to disregard is not evidence that you could consider." *Id.* at 194:23-25; 195:1-10. In context, failing to sua sponte revise MEF's jury instruction to include defense counsel's references to stricken testimony was not unfairly prejudicial.

Fifth, the Court properly permitted Barbounis' counsel to refresh Dr. Pipes' recollection with numerous unproduced emails during cross-examination. "[A]n adverse party is entitled to have [a] writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness['] testimony." FED. R. EVID. 612. In the Third Circuit, "[w]itnesses may use any aid to refresh their recollections," including inadmissible evidence that "might never be shown in open court." *U.S. v. Lnu*, 575 F.3d 298, 307 (3d Cir. 2009) (citing *U.S. v. Booz*, 451 F.2d 719, 724 (3d Cir. 1971)). MEF argues Rule 612 "assumes that the writing has been produced and the opposing party is aware of the specific document." Pl.'s Mot. New Trial 19. However, MEF cites no authority for this proposition. Additionally, the vast majority of the emails presented were written by or sent to Dr. Pipes himself. Permitting counsel to refresh Dr. Pipes' recollection was not an error. In sum, the Court finds each of MEF's arguments as to errors in evidentiary rulings at trial to be unpersuasive.

**C.     Weight of the Evidence**

In the Third Circuit, "[a] District Court should overturn a jury verdict only when "the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if

11

the verdict were to stand.'" *Jester v. Hutt*, 937 F.3d 233, 239 (3d Cir. 2019) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)). In fact, "[n]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, *cries out to be overturned or shocks our conscience*." *Williams v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991) (emphasis added).

After reviewing the transcripts in their entirety, as well as MEF's "Chart of Trial Evidence" submission, the Court disagrees with MEF's contention that "Defendant failed to introduce any evidence at trial contradicting MEF's claims." Pl.'s Mot. New Trial 22. Barbounis' testimony and testimony solicited on cross-examination are evidence, and the jury was able to assign that evidence the weight it believed it merits regardless of relative quantity. This verdict does not "cry out to be overturned," and should not be disturbed.

**D.     Voir Dire**

"The trial court's duty to seat an impartial jury requires that it test prospective jurors for actual bias and strike for cause those persons 'who will not be able to impartially follow the court's instructions.'" *Butler v. City of Camden, City Hall*, 352 F.3d 811, 815 (3d Cir. 2003) (quoting *Rosales-Lopez v. U.S.*, 451 U.S. 182, 188 (1981)). As the Third Circuit has noted, "the method of conducting the voir dire is left to the sound discretion of the district court. Generally, a district judge need not pursue any specific line of questioning on voir dire. Any method is sufficient provided it is probative on the issue of impartiality." *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993).

MEF argues it is entitled to a new trial because the Court declined to ask prospective jurors if (1) they had any negative feelings towards Israel, and (2) they or their immediate family member

12

had served in the military. MEF claims the Court needed to ask about Israel because "Plaintiff does policy work and has stated certain positions related to Middle East countries, and key evidence in the case relates to such work." Pl.'s Mot. New Trial 22-23. During voir dire, the Court considered the proposed question about Israel and rejected it because it was not relevant to the heart of the case: the use of trade secrets in the United States. Similarly, it is not clear to the court how military service is relevant to a case that has absolutely nothing to do with the military. Declining to ask those two questions was well within the bounds of the Court's discretion during voir dire. Accordingly, MEF is not entitled to a new trial on these grounds.

**CONCLUSION**

MEF is not entitled to a new trial on any of the asserted bases. While defense counsel gave an impassioned closing, the remarks were not unfairly prejudicial. The Court's evidentiary rulings were just and proper. The verdict is not contrary to the weight of the evidence. Finally, the Court's decisions during voir dire were sufficient to probe impartiality. Consequently, the Motion for a New Trial is denied.

An appropriate order follows.

BY THE COURT:

  /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.